# EXHIBIT B



Commonwealth of Massachusetts
Public Employee Retirement Administration Commission
5 Middlesex Avenue, 3rd Floor
Somerville, MA 02145
(617) 591-8956
Fax (617) 628-4414

COMM. OF MASS.
P.E.R.A.C.

2003 JUL 28 A 9:52

RECEIVED

## APPLICANT INFORMATION

**PERAC ID:** 2003237650    **TYPE OF DISABILITY:** ACC (M)

**SOCIAL SECURITY NUMBER:** 017565959

**MEMBER:** Terri James

**MEMBER ADDRESS:** 1204 S.W. 28th Street

Cape Coral, FL 33914

**RETIREMENT BOARD:** Revere Retirement Board

**OCCUPATION:** POLICE

**EMPLOYER:** Chief Terrance Reardon

**REGIONAL MEDICAL PANEL PHYSICIAN:**
Susannah Sherry, M.D. — PSYCHI
Mark Friedman, M.D. — INTERN
George Dominiak, M.D. — PSYCHI

**MEDICAL PANEL SPECIALTY:** PSYCHI

**EXAMINATION LOCATION:** 575 Mount Auburn Street
Suite 201
Cambridge, MA 02138

**DATE:** Friday, June 13, 2003

**TIME:** 02:30 PM

# COMMONWEALTH OF MASSACHUSSETTS
## PUBLIC EMPLOYEE RETIREMENT ADMINISTRATION COMMISSION
### REGIONAL MEDICAL PANEL CERTIFICATE

COMM. OF MASS.
P.E.R.A.C.

**MEMBER:** Terri James
**PERAC ID:** 200323.7650

**S.S. #:** 017565959
**TYPE OF DISABILITY:** ACC

2001 JUL 28 A 9:52

The member's retirement board will provide you with all information relating to the member's claimed disability and the current job description. This information is critical to your ability to perform a comprehensive medical evaluation and assess the member's ability to perform the essential duties of his/her job. If this information has not been received, please contact the PERAC Medical Panel Unit.

---

**DID THE MEDICAL PANEL REVIEW THE MEMBER'S JOB DESCRIPTION?**

YES ☑    NO ☐

**DID THE MEDICAL PANEL RECEIVE AND REVIEW MEDICAL RECORDS IDENTIFIED ON THE TRANSMITTAL OF BACKGROUND INFORMATION TO A REGIONAL MEDICAL PANEL FORM PRIOR TO RENDERING A MEDICAL OPINION IN THIS CASE?**

YES ☑    NO ☐

**PLEASE LIST ANY RECORDS NOT LISTED ON THE TRANSMITTAL OF BACKGROUND INFORMATION TO A REGIONAL MEDICAL PANEL FORM, WHICH THE PANEL REVIEWED.**


1. **IS THE MEMBER MENTALLY OR PHYSICALLY INCAPABLE OF PERFORMING THE ESSENTIAL DUTIES OF HIS OR HER JOB AS DESCRIBED IN THE CURRENT JOB DESCRIPTION?**

   YES ☑    NO ☐

   Please continue ONLY if you answered yes to question #1.

2. **IS SAID INCAPACITY LIKELY TO BE PERMANENT?**

   YES ☑    NO ☐

**PERMANENCY:** A disability is permanent if it will continue for an indefinite period of time which is likely never to end even though recovery at some remote, unknown time is possible. If the medical panel is unable to determine when the applicant will no longer be disabled, they must consider the disability to be permanent. However, if the recovery is reasonably certain after a fairly definite time, the disability cannot be classified as permanent. It is imperative that the medical panel make its determination based on the actual examination of the applicant and other available medical tests or medical records which have been provided. It is *not* the physician's task to look into employment possibilities that may become available to an applicant at some future point in time.

# COMMONWEALTH OF MASSACHUSETTS
## PUBLIC EMPLOYEE RETIREMENT ADMINISTRATION COMMISSION
### CERTIFICATE FOR ACCIDENTAL DISABILITY

COMM. OF MASS.
PERAC

**MEMBER:** Terri James
**PERAC ID:** 2003237650      **S.S. #:** 017565959      **TYPE OF DISABILITY:** ACC

2003 JUL 28 A 9: 52
RECEIVED

PLEASE CONSIDER POINTS A AND B BEFORE RESPONDING TO QUESTION #3.
POINTS A AND B SHOULD ALSO BE DISCUSSED IN YOUR NARRATIVE.

A. Whether there is any other event or condition in the member/applicant's medical history, or in any other evidence provided to the panel, other than the personal injury sustained or hazard undergone upon which the disability retirement is claimed, that might have contributed to or resulted in the disability claimed.

B. Whether it is more likely than not that the disability was caused by the condition or event described in (A) rather than the personal injury sustained or hazard undergone which is the basis for the disability claim, and the basis for your conclusion.

3. IS SAID INCAPACITY SUCH AS MIGHT BE THE NATURAL AND PROXIMATE RESULT OF THE PERSONAL INJURY SUSTAINED OR HAZARD UNDERGONE ON ACCOUNT OF WHICH RETIREMENT IS CLAIMED?*

YES [✓]    NO [ ]

**Aggravation of a Pre-Existing Condition Standard:** If the acceleration of a pre-existing condition or injury is as a result of an accident or hazard undergone, in the performance of the applicant's duties, causation would be established. However, if the disability is due to the natural progression of the pre-existing condition, or was not aggravated by the alleged injury sustained or hazard undergone, causation would not be established.

*__PLEASE NOTE:__ When constructing your response to the question of causality (#3) in accidental disability narrative reports, your opinion must be stated in terms of medical possibility and not in terms of medical certainty.

COMMONWEALTH OF MASSACHUSETTS
PUBLIC EMPLOYEE RETIREMENT ADMINISTRATION COMMISSION

COMM. OF MASS.
P.E.R.A.C.

## CERTIFICATION OF MEDICAL PANEL FINDINGS

2003 JUL 28 A 9:52

MEMBER: Terri James
PERAC ID: 2003237650

S.S. #: 017565959
TYPE OF DISABILITY: ACC

RECEIVED

### MAJORITY OPINION

*In the case of a joint examination, all three physicians must sign if they are in agreement with the majority opinion.*

I hereby certify that I have examined the member named on this certificate, and that the findings stated in this certificate and narrative express my professional medical opinion which was arrived at in an independent manner and free of undue influence.

_____ M.D.
_____ M.D.
_____ M.D.

### MINORITY OPINION

*To be completed only if a joint examination is conducted by all three physicians.*
*The dissenting physician MUST also complete the Medical Panel Certification Minority Report.*

I hereby certify that I have examined the member along with the other members of the medical panel and that I respectfully disagree with the Majority findings.

_____ M.D.

### APPLICANT PHYSICIAN AND/OR EMPLOYER'S PHYSICIAN

I hereby certify that I was present at the examination conducted by the Regional Medical Panel Physician(s). I understand that I have a right to submit a written opinion to the Retirement Board.

_____ M.D.
_____ M.D.

COM. OF MASS.
P.E.R.A.C.

# GEORGE M. DOMINIAK, M.D.
### 300 Mount Auburn Street
### Suite 307
### Cambridge, MA 02138

2003 JUL 28 A 9: 52

(617) 686-7299

RECEIVED

**APPLICANT:** Terri James
**PERAC NO.:** 2003237650
**EXAM DATE:** Friday, June 13, 2003, 02:30 PM
**IN ATTENDANCE:** Ms. James, Attorney Carlton Dasent, Panel MD's

**HISTORY OF ILLNESS:** Ms. James is a 30 y.o. Police Officer serving Revere, MA for approximately 6 years between 1995 and 2001. She is applying for Accidental Disability Retirement on the basis of Posttraumatic Stress Disorder (PTSD), Depression and Anxiety related symptoms such as Irritable Bowel Syndrome, migraine headaches and panic attacks.

Ms. James had no past psychiatric history prior to working as a police officer. She reports persistent abusive behavior by her superiors and fellow officers. She alleges discrimination and threatening behavior. She felt demeaned and that her privacy was threatened. As an example she related the story of a prisoner who was someone Ms James knew as a friend from the past. He was allegedly questioned openly about having ever had a sexual relationship with Ms. James and about graphic details regarding sexual behaviors with her. She felt this was crude, abusive, humiliating, invading her privacy, hurtful. She alleges there was no basis for the questioning. Numerous examples were provided during the interview such as finding a bullet hole in her bumper and having tires slashed.

As a result of these kind of experiences she reports she had developed sleep disturbance (insomnia and nightmares), anxiety, fear of retaliation from other police officers, genuine concern for her safety leading her to move to another state, panic attacks, anxiety, uncontrolled crying, depressed mood and hopelessness. She wanted to try to return to work but felt she could not. In 2001, she attended a police sponsored treatment program "On-site Academy" for 1 solid week and 4 additional days later. EMDR (a treatment used to control symptoms of PTSD) was attempted during that time.

Ms. James also described developing loss of appetite, and problems with gastrointestinal discomfort and control. She was evaluated in 1998 at the MGH GI Clinic and followed at the MGH Revere Health Care Center. Irritable Bowel Syndrome was diagnosed. Her PCP, Dr. Wald diagnosed Major Depression and anxiety (office note 05/30/00) and prescribed Zoloft and Trazodone for depression, anxiety and insomnia. She had been seeing Susan Rudman, EdD in psychotherapy since 03/21/01 and Dr. Eric Keroack (gynecologist and counselor) for medication management.

COMM. OF MASS.
P.E.R.A.C.

2003 JUL 28 A 9: 52

RECEIVED

In sum, Ms. James feels she could not perform safely as a police officer because of anxiety and depression and in particular because she could not trust that she would be given adequate back-up when needed.

**CURRENT SYMPTOMS:** Ms. James reports ongoing anxiety symptoms with sleep disturbance and fearfulness for her safety and the safety of her family. She avoids police related activities or TV programs, crowds or open public places. Since her move she has continued contact with her previous psychiatric providers by phone essentially weekly and infrequently in person when she returns locally. She has not been able to find providers in her new location as of yet. Her medication regimen includes Xanax 2 mg daily for anxiety and sleep and Lexapro (she could not recall the dose) for depression and anxiety. She also takes medication for migraine and irritable bowel. She denied alcohol use.

**PAST MEDICAL HISTORY:** Non-contributory other than mentioned above with the addition of a history of hypothyroidism.

**MEDICAL RECORD REVIEW:** All available medical records and a job description were reviewed by the members of the Panel. Documents from Dr. Keroack 06/03/02 and 02/18/03 describe the diagnoses of "complex" PTSD, panic symptoms with an initially attempted return to work date of September 2002. She was not able to return after meeting with the Chief. Dr. Keroack's letter of 02/18/03 labeled her work experience as "repetitive trauma of harassment" leading to the interview with our panel. Therapist Rudman's records describe the same clinical picture.

**EXAMINATION:** Ms. James presented as pleasant attractive and cooperative. She showed some lability (shifting) of affect, anxiety and some tearfulness. Her symptoms were described as above. There were no signs of psychosis, mania or obvious intellectual impairment.

**RELEVANT PERSONAL AND FAMILY HISTORY:** Non contributory.

**DIAGNOSES:** Ms. James meets the DSM IVTR criteria for Anxiety Disorder NOS with features of PTSD and features of panic disorder.

**PROGNOSIS:** As compared to the reported clinical history, Ms. James has already shown significant remission in depressive symptoms. The anxiety symptoms as they relate to her work experiences including sleep disturbance, irrational fears, avoidance and emotional numbing, will likely persist and may exacerbate in the context of a police environment. It is impossible to accurately opine regarding prognosis for these symptoms Living in a new community and not entering this kind of work or activity would be essential in healing.

## CONCLUSIONS:

1. **DISABILITY:** It is the unanimous opinion of our Panel that Ms. James is mentally incapable of performing the essential duties of her job as described in the current job description on the basis of Anxiety Disorder NOS with features of PTSD and panic disorder. The symptoms would interfere with her capacity to react safely in emergency situations and in her ability to trust her fellow officers.
2. **PERMANENCE:** The incapacity mentioned above is likely to be permanent in that the anxiety symptoms mentioned in the Prognosis section above are likely to persist for an indefinite period of time even with continued treatment.
3. **CAUSALITY:** The said incapacity is such as might be the natural and proximate result of the personal (emotional) injury sustained or hazard undergone on account of which retirement is claimed. There are no other likely causative factors apparent in Ms. James' clinical history to substantiate an alternate etiology for the anxiety disorder.

*[signature]*

George M. Dominiak, M.D.
Panel Chair

COMM. OF MASS.
A.C.
2003 JUL 28 A 9: 53
RECEIVED

COMM. OF MASS.
P.E.R.A.C.

2003 JUL 28  A 9: 53

Member Name: TERRI JAMES

PERAC ID: 2003257650

Date: 06/13/03

RECEIVED

I have reviewed the attached report and agree with the opinions expressed therein.

Panel Physicians:

_____
Mark Friedman, M.D.

_____
Susannah Sherry, M.D.

_____
George Dominiak, M.D.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Terri Pechner-James and        C.A. #03-1249MLW
Sonia Fernandez
    Plaintiff

V

City of Revere et al.
    Defendants

## MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR PROTECTIVE ORDER PURSUANT TO FED. R. CIV.P. 26(c) and REQUEST FOR HEARING

### Facts

Defense counsels, Walter H. Porr, Jr.Esq. and Paul Capizzi Esq. have served the Plaintiffs, during the month of March 2005 alone, a total of three hundred and eleven (311) interrogatories, a motion for summary judgment by the Chief of Police, Terrence Reardon, a motion for summary judgment by Thomas Ambrosino, Mayor of the City of Revere and other documents. In addition, defense counsels responded to Plaintiffs limited eleven point request for production of documents with the categorical statement: **"The documents, to the extent they exist, will not be produced."**

Defense counsels then filed a Certification with this Court that they had complied with Local Rule 7.1(a)(2). This Certification is in violation of Rule 26(g) and Local Rule 7.1(a)(2). Defense counsels did not confer or attempt to confer with Plaintiffs prior to serving or filing the documents enumerated in the attached motion. There was an unproductive attempt to confer by letter after the serving and filing had been completed. There has never been a meeting.

Defense counsels have served and filed these pleadings for the improper purpose of causing delay and causing the Plaintiffs the burden of unnecessary expenses. Defense counsels discovery request is duplicative of the discovery requested by the law offices of Edward P. Reardon, P.C. Defense counsels response to the Plaintiffs limited request for production of documents is unsupported by existing law, unwarranted by the facts of this case, and unprotected by any privilege recognized by law.

**Argument**

**1. Failure to disclose or produce materials requested in discovery constitutes misconduct; the Plaintiffs are entitled to redress.**

The Rules of discovery contemplate and the courts expect that counsel will work out the difference without the need for judicial intervention. Defense counsels, in this case, have worked to frustrate this self-policing mechanism created by the rules. Without a sustainable claim of privilege or a defense based in existing law, defense counsels have categorically stated that: **"The documents, to the extent that they exist, will not be produced."** Defense counsels deliberate refusal to cooperate with discovery violates the Court's pretrial order, Rule 26 and the Local Rules concerning discovery.

The Court of Appeals of the first Circuit has explained "failure to disclose or produce materials requested in discovery can constitute misconduct…..Moreover, misconduct does not demand proof of nefarious intent or purpose as a prerequisite to redress.." See Gonsalves v City of New Bedford, 168 F.R.D. at 115 citing Anderson v Cryovac, 862 F2d 910, 923 (1st Cir 1988). The term "misconduct" has been given a rather expansive meaning and does include the deliberate nondisclosure of defense counsels as stated in Exhibit A. See Rozier v Ford Motor Co., 573 F2d 1332 (1978). The more vexing question is whether nondisclosure by defense counsels will be allowed to prevent Plaintiffs from fully and fairly presenting their case. Rozier at 1342.

It is a well-known fact that income from paid details and overtime have, in some cases doubled and tripled the base salary of police officers. It is, therefore, not possible to fully and fairly present the Plaintiffs case for damages without this basic information. This

2

information is discoverable and would be admissible as business records to prove the Plaintiffs damages. The admissibility of evidence is irrelevant in the discovery process so long as "the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R.Civ. P 26(b)(1).

The Plaintiffs request for production of documents seeks information that is reasonably calculated to lead to the discovery of evidence that would be admissible on the issue of damages. It is also possible that information and documents discovered could, by itself be admissible on the issues of damages and disparate treatment and the effects of a hostile work environment. Defense counsels deliberate refusal to provide relevant documents constitutes misconduct and is a clear violation of Fed. R. Civ. P. 26(b)(1).

Defense counsels are aware of the documents that the Plaintiff seeks and their relevance to this case. They are also aware that these documents are part of the discovery order and are covered by both the Federal Rules of Procedure and the Local Rules. Their statement: The documents, to the extent that they exist, will not be produced" defies the Court's pretrial order, violates both the Local Rules and the Federal Rules of Procedure, constitutes misconduct and is a clear violation of Fed, R.Civ. P. 26(b)(1). See <u>Gonsalves v City of New Bedford</u>, 168 F.R.D. at 115 citing <u>Anderson v Cryovac</u>, 862 F2d 910, 923 (1st Cir.1931); <u>Rozier v Ford Motor Co.</u>, 573 F2d 1332 (1978). The Plaintiffs are entitled to redress and a new pretrial order from this court.

### 2. Defense counsels filing a second frivolous motion for summary judgment further compounds the need for a protective order.

On or about the beginning of March 2005, defense counsels filed their first motion for summary judgment seeking judgment in favor of Terrence Reardon on all counts. They subsequently filed a notice of compliance with this Court, even though they had not attempted to comply until after they had served and filed their pleadings. On or about the end of March 2005, they served the Plaintiffs with yet another motion for summary judgment. This motion sought summary judgment on all counts for Thomas Ambrosino, Mayor of the City of Revere. This motion was accompanied by a notice of compliance

3

even though defense counsels had not yet conferred or attempted to confer as required by Local Rule 7.1(a)(2).

In the interim, defense counsels served the plaintiffs with three hundred and eleven (311) interrogatories to be answered a thirty day period. At the same time, defense counsels responded to the plaintiffs limited request for production of documents with a defiant: "The documents, to the extent that they exist, will not be produced."

Rule 26(g) is similar to Rule 11 except that it pertains to the signing of disclosure and discovery papers. Every discovery request, response or objection must be signed by an attorney of record. The required signature constitutes a certification that to the best of the signer's knowledge, information and belief, the document is complete and correct and is being served for proper purposes. A party who makes a certification in violation of Rule 26 (g) and without substantial justification is subject to an appropriate sanction including payment of the opposing parties costs incurred due to the violation, including reasonable attorney fees. See Fed. R. Civ. P. 26(g)(3). The First Circuit Court of Appeals in Legault v Zambarano, 105 F3d, 24,27 (1st Cir. 1997) provided significant guidance on the question of defendants who improperly fail to produce documents in response to plaintiff's legitimate discovery requests.

The Legault Court found that the documents were in possession of the defendants and that a reasonable search would have located them. The Court relied on the standard stated in the Advisory Committee Notes on Rule 26. It stated:" The Advisory Committee's Notes to the 1983 amendments to Rule 26 spell out the obvious: a certifying lawyer must make a reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand."

The Legault Court upheld the District Court finding that no such effort was made and that the imposition of sanctions under Rule 26(g)(3) should be upheld. Defense counsels have clearly not made a "reasonable effort" to assure that their clients provided all the documents available and that are responsive to Plaintiffs discovery demand. On the contrary, they have defiantly refused to make any effort or to provide any documents.

4

The conduct of defense counsels have provided this Court with a clear example of the kind of defiance that requires sanctions pursuant to Rule 26(g)(3).

Defense counsels second motion for summary judgment is the most recent demonstration of their defiance of the rules of procedure. The First Circuit of Appeals in <u>Silva Witschen</u>, 19 F3d 725 (1994) held that an attorney who filed a groundless complaint without reasonable inquiry and for an improper purpose is not exonerated from sanctions because he had a second proper motive.

Defense counsels, like the parties in <u>Silva</u>, "failed to make the reasonable legal inquiry required under our case law." Id at 729. A reasonable legal inquiry into <u>Gonsalves v City of New Bedford</u>, 939 F. Supp. 915 (1991) would have clarified the theory of municipal liability that governs this case and the role of the final policymakers in the determination of that liability.

The Plaintiff in <u>Gonsalves</u> sued John Bullard, Mayor of the City of New Bedford, and who remained a named defendant until the end of the trial, she also sued Richard Benoit, Chief of Police, who remained a named defendant until the end of the trial. There were also several subordinate officers who were named in the suit.

The Court in <u>Gonsalves</u> emphasized that "the actions of subordinate officials alone cannot create municipal liability." Citing <u>Jett v Dallas Independent School District,</u> 491 U.S. 701, 737, 109 S.Ct. 2702 (1989). The Court further stated "the City is potentially liable only for the conduct of its final policymakers or policymakers concerning the conduct in question." Citing <u>City of St. Louis v Proprotnik,</u> 485 U.S. at 126. Under a heading entitled: Identifying the Relevant Policymaker or Policymakers, the Court stated: "It is the duty of the court to interpret state law and decide before instructing the jury who the policymaker is for the purpose of the area of the City's business at issue in this case." As the U.S. Supreme Court noted <u>in Proprotnik,</u> and the First Circuit found in <u>Bordanaro</u>, Policymaking can be shared. In deciding who the final policymaker is, <u>Jett</u> instructs the courts to look at the relevant positive law, and also the custom in the City of New Bedford.

5

In deciding who the final policymaker is, <u>Jett</u> instructs this court to look at the relevant positive law, and also the custom in the City of Revere. The Court in <u>Gonsalves</u> found that " the New Bedford City Council and the Mayor were the final policymakers for the matters at issue in this case." A reasonable inquiry into the principles stated in <u>Gonsalves</u> would have shown the defense counsels that, until the Court made a determination on the final policymaker or policymakers, their motion to strike both the Chief of Police and the Mayor of the City of Revere were premature. Their failure to make reasonable inquiry renders defense counsels liable for sanctions pursuant to Rule 11(b).

**Improper Purpose**

The improper purpose for defense counsels' serial filings demands appropriate sanctions.

> Pleader may not escape liability because he did not intend to bring about additional delay or expense. If reasonable preparatory steps would have avoided those consequences, sanctions are appropriate. <u>Lieb v Topstone Indus. Inc</u>., 788 F. 2d 151, 157 (1986).

Defense counsels intended to cause delay and expense when they prepared, served and filed two baseless motions for summary judgment without taking reasonable preparatory steps to ascertain the legal basis for said motions; and when they prepared the three hundred and eleven (311) interrogatories and the numerous other pleadings served and filed on or about March 2005. Responsible preparatory steps, like the proper use of Local Rule 7.1(a)(2) and a reading of <u>Gonsalves</u> suggested by the Court at the last pretrial conference would avoided the groundless and frivolous pleading filed by defense counsels.

Sanctions are appropriate because defense counsels failed to take reasonable preparatory steps and instead defied the pretrial order of the Court, and multiplied litigation for the purpose of causing the Plaintiffs unnecessary and unreasonable delay and expense.

**<u>Conclusion:</u>**

Given the needs of this case, the discovery already requested, the need to determine the final policymakers and to establish municipal liability, the parties need Court intervention

to impose sanctions on defense counsels, to curtail the spate of baseless and frivolous pleadings being filed by defense counsels and to establish a discovery schedule that will lead to the prompt resolution of this case.

Terri Pechner-James and
Sonia Fernandez
By their attorneys

_____

James S. Dilday, Esq.
Carlton J. Dasent, Esq.
27 School Street, Suite 400
Boston, MA 02108
(617) 227-3470
(617) 227-2087