# PERAC

**COMMONWEALTH OF MASSACHUSETTS | PUBLIC EMPLOYEE RETIREMENT ADMINISTRATION COMMISSION**

DOMENIC J. F. RUSSO, *Chairman* | A. JOSEPH DeNUCCI, *Vice Chairman*
KENNETH J. DONNELLY | EFIC A. KRISS | JAMES M. MACHADO | DONALD R. MARQUIS

JOSEPH E. CONNARTON, *Executive Director*

June 3, 2004

Carolyn M. Russo
Board Administrator
Revere Retirement Board
281 Broadway
Revere, MA 02151

*rec'd
6/4/04*

Dear Ms. Russo:

Pursuant to G.L. c. 32, 21(1)(d), we have concluded our review of the accidental disability retirement application of your member, Terri James. This application has been approved, and the Disability Transmittal is enclosed with this letter.

In a letter to the Commission dated April 21, 2004, you inquired as to what the effective date of Ms. James' retirement allowance should be.

Ms. James served as a Revere police officer from September 21, 1995 to March 13, 2001. On July 17, 2002, Police Chief Terence Reardon submitted an application for Ms. James to be involuntarily retired. The Board voted to deny the Chief's application without convening a medical panel. A hearing was held at the Division of Administrative Law Appeals on that issue on February 4, 2003. While the DALA magistrate still had the matter under advisement, Ms. James filed an application for accidental disability retirement on February 20, 2003. On March 7, 2003, DALA upheld the Board's determination not to convene a medical panel in 2002. However, based on new information obtained at the DALA hearing, the magistrate ordered a medical panel to be convened. A medical panel was convened on June 13, 2003. A clarification from the medical panel was issued on March 30, 2004. The Board approved Ms. James application on April 14, 2004. The application was received by the Commission on April 23, 2004, remanded on May 21, 2004. The Revere Retirement Board forwarded additional information to the Commission on May 27, 2004.

General Laws Chapter 32, Section 7(2) provides, in part:

> Upon retirement under the provisions of this section a member shall receive an accidental disability retirement allowance to become effective on the date the injury was sustained or the hazard on account of which he is being retired was undergone, or on the date six months prior to the filing




Carolyn M. Russo
Board Administrator
Revere Retirement Board
June 3, 2004
Page Two

of the written application for such retirement with the board and his respective employer, or on the date for which he last received regular compensation for his employment in the public service, whichever date last occurs...

As provided above, there are three possible dates to be used in establishing the effective date of an accidental disability retirement: the date of the injury, the date six months prior to filing the application, or the date on which the individual last received regular compensation, whichever date last occurs.

The nature of Ms. James' injury precludes identifying an exact date and time. This means her date of retirement will be either the date she last received regular compensation or the date six months prior to the filing of the application for accidental disability retirement, whichever date last occurs. The date she last received regular compensation was March 13, 2001. The date six months prior to the filing of the Chief's application is January 17, 2002. The date six months prior to the filing of Ms. James' application is September 20, 2002. As there is no indication that the Chief's application was ever withdrawn, and there is no evidence that the two applications are not based upon the same events, it is the opinion of the Commission that Ms. James' retirement allowance should be effective as of January 17, 2002.

If you have any questions about this, please contact the office.

Sincerely,

Joseph E. Connarton

Joseph E. Connarton
Executive Director

JEC/jac
p:\legal\disabilities\correspondence\jamesdor.doc

Enclosure: Disability Transmittal

# Involuntary Retirement Application (To Be Filed by an Employer)

**Updated August, 2003**

| **Retirement Board:** Please place your address and phone number here ▸ | Revere Retirement Board<br>281 Broadway, City Hall<br>Revere, MA 02151<br><br>(781) 286-8173 |
|---|---|

**To:** [ Revere ] Retirement Board

This is an application to involuntarily retire the member named below. Attached is an explanation of the member's rights to a hearing and to appeal, and a brief statement of the member's retirement options. The member should contact his/her retirement board for further information or assistance.

A fair summary of the reasons for filing this application is below. The retirement board will review this application, together with information supplied by the employer and, if desired, by the member. If appropriate, the retirement board may then request a regional medical panel be convened. Based on the information gathered and the medical panel's opinion, the board will vote whether to approve or deny this application. The application will then be forwarded to the Public Employee Retirement Administration Commission for review and approval.

Pursuant to G.L. c. 32, §16(1), I respectfully request that [ Sonia Fernandez ] (name of member), whose Social Security Number is [ 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 ], be retired on the basis of (please check one):

☐ Ordinary Disability    ☑ Accidental Disability    ☐ Superannuation

I offer the following fair summary of facts as the basis for my opinion that the member should be involuntarily retired:

> Please See Fair Summary of Facts attached as Addendum Item

Has this employee been officially investigated for or charged with misappropriation of funds from his/her employer or convicted of any crime related to his/her office or position? ☐ Yes ☑ No
If **yes**, please provide documentation.

I am submitting this form and the following attachments to the member's retirement board:

- A description of the member's job that includes all of his/her duties and responsibilities. I have specified those duties that are considered to be essential.

- Copies of all applicable medical information and accident reports.

- I will send a copy of this application form, a brief statement of the member's retirement options, and a statement of the member's rights to a hearing and review to the member by certified mail. I will then file a notice of delivery, including the certified mail return receipt, with the member's retirement board.

| Terence K. Reardon | Chief of Police |
|---|---|
| Name of Department Head (print) | Title of Department Head |

Signature of Department Head _____    Date ___6/8/04___

 

**Involuntary Retirement Application** (to be filed by an employer)    2

---

Chapter 32: Section 16 of the General Laws of Massachusetts Involuntary Retirement; Right to a Hearing; Right of Review or Appeal.

## Section 16 (1): Involuntary Retirement and Right to a Hearing

(a) Any head of a department who is of the opinion that any member employed therein should be retired for superannuation, ordinary disability or accidental disability, in accordance with the provisions of section five, six, or seven, as the case may be, may file with the board on a prescribed form a written application for such retirement. Such application shall include a fair summary of the facts upon which such opinion is premised.

The applicant shall forthwith deliver to such member by registered mail, with a return receipt requested, a true copy of such application, together with a brief statement of the options available to such member on his retirement and a statement of his right, if any, to request a hearing with regard to such retirement and of the right, if any, of review available to him, as provided for in this section, in case he is aggrieved by any action taken or decision of the board rendered or by failure of the board to act upon his request or to render a decision within the time specified in this subdivision. Upon such delivery to such member the head of the department, or one acting in his behalf, shall file with the board under the penalties of perjury a written notice of such delivery, including the date thereof.

(b) Any member in service classified in Group 1, Group 2 or Group 4 who has attained age fifty-five and completed fifteen or more years of creditable service, or any member in service so classified who has not attained age fifty-five but who has completed twenty or more years of creditable service, for whom an application for his retirement is filed by the head of his department as provided for in paragraph (a) of this subdivision, may, within fifteen days of the receipt of his copy of such application, file with the board a written request for a private or public hearing upon such application. If no such request is so filed, the facts set forth in such application shall be deemed to be admitted by such member; otherwise such hearing shall be held not less than ten nor more than thirty days after the filing of the request. The board, after giving due notice, shall conduct such hearing in such manner and at such time or times as the best interests of all parties concerned may require. The board shall prepare and file with its clerk or secretary a certificate containing its findings and decision, copies of which shall be sent to the proper parties within fifteen days after completion of such hearing.

(c) If the board finds that any member should be retired under the provisions of this subdivision, he shall receive the same retirement allowance as he would have received had the application been made by himself. If the board finds that such member should not be retired, he shall continue in his office or position without loss of compensation, subject to the provisions of sections one to twenty-eight inclusive, as though no such application had been made.

(There is no subdivision (2))

## Section 16 (3): Right of Review by District Court

(a) Any member classified in Group 1, Group 2 or Group 4 who has attained age fifty-five and completed fifteen or more years of creditable service, or any member so classified who has not attained age fifty-five but who has completed twenty or more years of creditable service, or any such member who is a veteran and has completed ten or more years of creditable service, and who is aggrieved by any action taken or decision of a board or the public employee retirement administration commission rendered with reference to his involuntary retirement under the provisions of subdivision (1) or to his removal or discharge as set forth in subdivision (2), or any member who is aggrieved by any action taken or decision of a board or the public employee retirement administration commission rendered with reference to his dereliction of duty as set forth in section fifteen, may, within thirty days after the certification of the decision of the board, bring a petition in the

**Involuntary Retirement Application** (to be filed by an employer)                    3

---

## Section 16 (3): Right of Review by District Court (Continued)

district court within the territorial jurisdiction in which he resides praying that such action and decision be reviewed by the court.

After such notice as the court deems necessary, it shall review such action and decision, hear any and all evidence and determine whether such action was justified. If the court finds that such action was justified the decision of the board or the public employee retirement administration commission shall be affirmed; otherwise it shall be reversed and of no effect. If the court finds that such member was unjustifiably retired, removed or discharged from his office or position he shall be reinstated thereto without loss of compensation. The decision of the court shall be final.

(b) Any member whose office or position is subject to chapter thirty-one or to the rules and regulations made under authority thereof, who is aggrieved by any action taken or decision of a board or the public employee retirement administration commission rendered as described in paragraph (a) of this subdivision shall, for the purposes of sections one to twenty-eight, inclusive, have and retain such of the rights provided by sections forty-two A, forty-two B, forty-three and forty-five of chapter thirty-one as applied to his particular office or position, and the court shall, in addition to the matters it is required to review under such sections of chapter thirty-one, affirm or disaffirm the decision of the board or the public employee retirement administration commission as provided for in paragraph (a) of this subdivision.

## (4): Right of Appeal to Contributory Retirement Appeal Board

There shall be an unpaid contributory retirement appeal board which shall consist of three members as follows: an assistant attorney general who shall be designated in writing from time to time by the attorney general who shall act as chairman, the public employee retirement administration commission or an assistant who shall be designated in writing, from time to time, by the said commission, and a member appointed by the governor for a term of five years. In the event the matter before the contributory retirement appeal board deals with any matter related to disability retirement or interim benefits as awarded by the division of administrative law appeals, the commissioner of public health or his designee shall substitute for the public employee retirement administration commission.

The members of the contributory retirement appeal board shall be compensated for any expenses incurred in the performance of their official duties. On matters other than those subject to review by the district court as provided for in subdivision (3), or other than those which would have been subject to review had the requirement for the minimum period of creditable service been fulfilled, any person when aggrieved by any action taken or decision of the retirement board or the public employee retirement administration commission rendered, or by the failure of a retirement board or the public employee retirement administration commission to act, may appeal to the contributory retirement appeal board by filing therewith a claim in writing within fifteen days of notification of such action or decision of the retirement board or the commission, or may so appeal within fifteen days after the expiration of the time specified in sections one to twenty-eight, inclusive, within which a board or the commission must act upon a written request thereto, or within fifteen days after the expiration of one month following the date of filing a written request with the board or the commission if no time for action thereon is specified, in case the board or the commission failed to act thereon within the time specified or within one month, as the case may be. The contributory retirement appeal board, after giving due notice, shall not less than ten nor more than sixty days after filing of any such claim of appeal, assign such appeal to the division of administrative law appeals for a hearing. The division of administrative law appeals shall maintain the official records of the contributory retirement appeal board. After the conclusion of such hearing, the division of Administrative Law Appeals shall submit to the parties a written decision which shall be final and binding upon the board involved and upon all other parties, and shall be complied with by such

## Section 16 (4): Right of Appeal to Contributory Retirement Appeal Board (Continued)

board and by such parties, unless within fifteen days after such decision, (1) either party objects to such decision, in writing, to the contributory retirement appeal board, or (2) the contributory retirement appeal board orders, in writing, that said board shall review such decision and take such further action as is appropriate and consistent with the appeal provided by this section. The contributory retirement appeal board shall then pass upon the appeal within six months after the conclusion of such hearing, and its decision shall be final and binding upon the board involved and upon all other parties, and shall be complied with by such board and by such parties. Any person, upon making an appeal involving a disability retirement allowance, shall be permitted to retire for superannuation retirement, if otherwise eligible, pending the decision of the contributory retirement appeal board, but in no event shall such action prejudice the person from receiving any further benefits which the contributory retirement appeal board may grant in its decision nor shall the person upon a finding in favor of the employer be required to reimburse the employer for payments made prior to the decision of the contributory retirement appeal board.

On appeals involving disability or where medical reports are part of the proceedings, the contributory retirement appeal board may request further information from the members of the appropriate regional medical panel, or may employ a registered physician to advise them in determination of an appeal.

The contributory retirement appeal board shall have the power to subpoena witnesses, administer oaths and examine such parts of the books and records of the parties to a proceeding as relate to questions in dispute. Fees for such witnesses shall be the same as for witnesses before the courts in civil actions, and shall be paid from the Appropriation Fund of the division of administrative law appeals.

The contributory retirement appeal board, acting through the division of administrative law appeals, shall arrange for the publication of its decisions and the cost of such publication shall be paid from the Appropriation Fund of the division of administrative law appeals.

The contributory retirement appeal board shall establish a fee structure for appeals brought under this section, which shall be subject to the approval of the commissioner of administration.

The division of administrative law appeals shall submit to the contributory retirement appeal board on an annual basis a report on the status of all cases that have been assigned to the division of administrative law appeals for a hearing.

## (5): Provisions Not Applicable to Certain Members

The provisions of this section relative to the right of any member to a hearing or to the right of review by the district court shall not apply in the case of the removal or discharge of any state official or of any official of any political subdivision of the commonwealth for which provision is otherwise made in any general or special law, anything in this section to the contrary notwithstanding. The provisions of this section relative to the right of any member to a hearing or to the right of review by the district court shall not apply to any teacher or principal or superintendent of schools employed at discretion or any superintendent employed under a contract, for the duration of his contract, or any principal or supervisor, who has been dismissed, demoted, or removed from a position by a vote of a school committee under the provisions of section forty-two, forty-two A or section sixty-three of chapter seventy-one. The provisions of this section shall not apply to any member classified in Group 3.

**Involuntary Retirement Application** (to be filed by an employer)                    5

## Information About Retirement Options

Your retirement board will provide you with a Choice of Retirement Option Form, and will assist you in making an informed selection about selecting the option that is best for you, but a brief description of the options available to you is included here. Any public employee who retires on the basis of ordinary or accidental disability or superannuation may elect to have his or her retirement allowance paid according to one of the three following Options. If you fail to select an Option, the allowance will be paid under Option B.

## Option A

Election of Option A means that you will receive the full retirement allowance in monthly payments as long as you live. Allowance payments will cease upon your death and no benefits will be provided to your survivors.

## Option B

Option B provides you with a lifetime allowance which is 3% to 5% less per month than Option A. The annuity portion of your allowance will be reduced to allow a benefit for your beneficiary. If your death occurs before the total payments of the annuity portion of your allowance equal your total accumulated deductions at your retirement, the unexpended balance of your total accumulated deductions will be paid to your surviving beneficiary of record, (or, if there is no beneficiary living, the person or persons who appear to be entitled in the judgement of your retirement board).

## Option C

Selecting Option C means that the allowance payments that you receive during your lifetime will be approximately 20% less than those you would have received under Option A. Upon your death, your designated beneficiary will be paid a monthly allowance for the remainder of his or her lifetime. That allowance will be equal to two-thirds of the allowance which was being paid to you at the time of your death. Only your spouse, former spouse who has not remarried, child, father, mother, sister or brother may be your beneficiary.

## Spousal Acknowledgment

The retirement option election of any married member is not valid unless the signature of the member's spouse indicating the member's spouse's knowledge and understanding of the retirement option selected accompanies it

# Disability Transmittal to the Commission

Updated August, 2003

*12)26)04*

| Retirement Board: Please place your address and phone number here. ▶ | **REVERE RETIREMENT BOARD**<br>**281 BROADWAY**<br>**REVERE, MA 02151**<br>**(781)286-8173** |
| --- | --- |

| FERNANDEZ | SONIA | ☐ | REVERE |
| --- | --- | --- | --- |
| Member's Last Name | First | M.I. | Retirement Board |

| 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 | ☑Accidental Disability | ☐Ordinary Disability | ☐ Accidental Death |
| --- | --- | --- | --- |
| Social Security # | (Please check one) | | |

## Retirement Board Decision

To the Commission:

We hereby certify that we have received the application of the above named member for a disability retirement/accidental death benefit and have voted to grant the benefit in accordance with the provisions of M.G.L. chapter 32, section [ 7 ] . Pursuant to G.L. c. 32, § 21(I)(d), § 21(4) and PERAC regulations 840 CMR 10.13(1)(A) and 840 CMR 9.02, we are hereby forwarding our decision to you for your review.

If this application is based on a presumption under G.L. c. 32, § 94 or § 94A or § 94B, we made the following findings of fact. (By placing a check mark in the box to the left of the finding, the board certifies that it has made the finding of fact.):

☐ The member successfully passed a physical examination upon entry to service or subsequent thereto, which failed to reveal evidence of such a condition.

☐ There is no contrary evidence sufficient to overcome the applicable presumption.

☐ Other causal factors related to the member's physical or mental condition did not contribute to the member's disability.

☐ No event other than the accident or hazard upon which the disability retirement is claimed contributed to the member's disability.

If the member is claiming the presumption contained in Section 94B:

☐ He(she) did respond to calls in the line of duty that would have involved the inhalation of or exposure to noxious fumes or poisonous gases.

☐ He(she) has served in a position that renders him(her) eligible for the application of the presumption for at least five years and regularly responded to calls of fire during some portion of his(her) service.

☐ The condition upon which the presumption is based was discovered within five years of the last date on which the member actively served.

| _____ Chair | _____ Member |
| --- | --- |
| _____by Chair_____ Member | _____ Member |
| _____ Member | ___11/10/04___ Date of Vote |



**Disability Transmittal to the Commission**                                              2

| | | | |
|---|---|---|---|
| FERNANDEZ | SONIA | | 030 560666 |
| Member's Last Name | First | M.I. | Social Security # |

| | |
|---|---|
| CITY OF REVERE | POLICE OFFICER |
| Name of Unit | Job Title/Group |

| | | |
|---|---|---|
| 10/22/65 | | 9/20/95 |
| Date of Birth | Date of Retirement | Date of Membership |

Years: 9     Months: 2     ☐ Yes  ☑ No
Total Creditable Service              Veteran Status

☐ Annual rate of regular compensation on date of injury, **or**

☐ Average annual rate of regular compensation for 12-month period last received

In case of an accidental disability/accidental death (other than in presumption cases), check appropriate provision:

☐ Notice to board within 90 days?

☐ Accident occurred within 2 years preceding date of application?

☑ Group 4 member: is the record of the injury on file in the official records of his/her department?

## Information required in connection with G.L. c. 152 (Workers' Compensation) and G.L. c. 41, § 111F (Injured On Duty)

Covered by the Workers' Compensation Act?                    ☐ Yes   ☑ No

Date compensation first received in connection with this accident? ▢

At what weekly rate? ▢

What period covered? ▢

Receiving G.L. c. 41, § 111F benefits?                          ☑ Yes   ☐ No

## G.L. c. 32, § 15

Has the Retirement Board been made aware that this employee has been officially investigated for or charged with misappropriation of funds from his/her employer or convicted of any crime related to his/her office or position?                          ☐ Yes   ☑ No
If **yes**, please provide documentation.

**Disability Transmittal to the Commission**                                                3

| FERNANDEZ | SONIA | | 030560666 |
|---|---|---|---|
| Member's Last Name | First | M.I. | Social Security # |

After completing this form, submit it and the following attachments to PERAC for approval:

- Statement of facts found by the retirement board

- Certificate and narrative report of the regional medical panel

- Certificate and narrative report of the applicant's physician

- Description of the accident, if applicable

- Injury report(s) from official department files

- All descriptions of the applicant's essential duties

- The employer's statement

- Applicant's complete disability retirement application

- Proof of veteran's status including dates of active service, if applicable

- Proof of physical examination upon entry to service or subsequent to entry, if applying under a presumption

- Death certificate, if applicable

## Commission Approval

To the Retirement Board:

Pursuant to the authority granted to the Commission by G.L. c. 32, § 21(1)(d) and § 21(4), the Commission has reviewed your decision to grant a disability/~~accidental death~~ benefit to: Sonia Fernandez .
The retirement board's decision is hereby **approved.**

12/57/04          *Joseph E. Connarton*
Date              Executive Director, Public Employee Retirement Administration Commission

Upon receipt of this approval, the retirement board shall complete and submit the following attachments to PERAC for approval: the appropriate PERAC calculation sheet, annuity card, dependent children's birth certificate(s), and proof of physical incapacity of any children.

Send To:
    Public Employee Retirement Administration Commission
    Actuarial Unit
    5 Middlesex Avenue, Third Floor
    Somerville, MA 02145

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| TERRI PECHNER-JAMES and SONIA FERNANDEZ, | ) ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 03-12499-MLW |
| | ) | |
| CITY OF REVERE, THOMAS AMBROSINO, MAYOR, CITY OF REVERE POLICE DEPARTMENT, TERRENCE REARDON, CHIEF OF POLICE, BERNARD FOSTER, SALVATORE SANTORO, ROY COLANNINO, FREDERICK ROLAND, THOMAS DOHERTY, JOHN NELSON, JAMES RUSSO, MICHAEL MURPHY and STEVEN FORD, | ) ) ) ) ) ) ) ) ) | |
| Defendants, | ) | |

## AFFIDAVIT OF MICHAEL MURPHY

I, Michael Murphy, do hereby depose and state:

1.     I have been a member of the City of revere Police Department since 1986.  On August 9, 2001 I was promoted to the rank of Captain.  A true and correct copy of Revere Police Personnel Order No. P01-15 reflecting this promotion is attached hereto.  On January 17, 2002 I was designated the Executive Officer for said Department and have continuously served in this capacity until the present.  A true and correct copy of Revere Polce Department Personnel Order No. P02-05 reflecting this designation is attached hereto.

2.     In my capacity as Executive Officer for the City of Revere Police Department, I assist the Police Chief in the daily supervision and operation of the Department.  In addition, I am responsible for setting the shift schedules and establishing the assignments of Revere Police Officers for the various shifts and for the re-assignment of Officers on an as needed basis.  In the performance of my duties, I either maintain in my office, or otherwise, have access to the records of the Revere Police Department maintained by subordinates under my supervision.

3.     As part of my responsibilities as Executive Officer, I also serve as one of two grievance officers for resolution of greiveable matters pursuant to the Union Contract between the City of Revere and its Police Officers.  Attached hereto is a true and correct copy of the Union Contract for the period of July 1, 2000 through June 30, 2003.

4.      On August 31, 2000 Acting Chief Roy Colannino began was what originally
        anticipated to be a two and one-half week period of sick leave.  At that time,
        Captain Frederick Roland, who was the senior Captain in the Department, was
        named as the Captain in Charge of the Revere Police Department and assumed
        responsibility for the day-to-day supervision and operation of the Department.  A
        true and correct copy of Revere Police Personnel Order P00—12 issued on
        August 31, 2000 reflecting this appointment is attached hereto.  When Acting
        Chief Colannino was unable to return as previously anticipated, Captain Roland's
        appointment as the Captain in Charge was extended.  A true and correct copy of
        Personnel Order P00—13 issued on September 18, 2000 reflecting this extension
        of Captain Roland's appointment is attached hereto.  Ultimately, Acting Chief
        Colannino was unable to return to full duty and began an extended period of sick
        leave pending retirement.  As a result thereof, Captain Roland's appointment as
        the Captain in Charge was once again extended until Acting Chief Colannino's
        retirement and the appointment of Chief Terence Reardon in January 2002.  A
        true and correct copy of Personnel Order P01—07 issued on June 27, 2001
        reflecting this final extension of Captain Roland's appointment is attached hereto.
        Captain Roland retired on December 1, 2002 and the Personnel Order regarding
        his retirement references his service as Captain in Charge during Acting Chief
        Colannino's extended absence.  A true and correct copy of Personnel Order
        C2002—30 issued on December 4, 2002 regarding Captain Roland's retirement is
        attached hereto.

6.      On October 17, 2001 the Revere Police Department received a letter dated
        October 11, 2001 from Officer Terri Pechner seeking an appointment with the
        City of Revere's doctor.  A true and correct copy of said letter is attached hereto.

7.      On October 17, 2001 the Revere Police Department received an undated letter
        from Officer Terri Pechner invoking the grievance procedure under the union
        contract with the City of Revere.  A true and correct copy of said letter is attached
        hereto.

8.      On October 22, 2001 Captain Roland responded in writing to Officer Pechner's
        letter of October 11, 2001.    A true and correct copy of said letter is attached
        hereto.

9.      On October 24, 2001 Captain Roland denied Officer Pechner's grievance in
        writing.    A true and correct copy of said letter is attached hereto.

10.     On November 9, 2001 the Revere Police Department received Officer Pechner's
        demand that her grievance be advanced to step 3 under the union contract.    A
        true and correct copy of said letter is attached hereto.

11.     Acting Chief Roy Colannino retired on January 6, 2002.  A true and correct copy
        of Revere Police Personnel Order P02-03 reporting this retirement is attached
        hereto.

12.     On January 15, 2002 Terence K. Reardon was appointed to the position of Chief of Police of the Revere Police Department. A true and correct copy of Revere Police Personnel Order P02-04 reporting this appointment is attached hereto.

Signed under the pains and penalties of perjury this ___29___ day of March, 2005.

Respectfully submitted,

Michael Murphy

3

# REVERE POLICE

| **Personnel Order** NO. P01-15 | Date of issue 08/10/01 | Effective Date 08/10/01 |
|---|---|---|

| Subject ASSIGNMENT CHANGES | New ☑  Amends  Rescinds |
|---|---|

| Reference(s) | Page 1 of 1 | Distribution: All Personnel |
|---|---|---|

I'm pleased to announce the appointment of Michael Murphy to the rank of Captain effective 8/9/01. Captain Murphy will be in charge of the Bureau of Operations. His radio call sign will be "Alpha 3".

Effective today, Sergeant John Goodwin is assigned officer-in-charge of the Traffic/Records Bureau. His radio call sign will be "Tango 1".



# REVERE POLICE

| **Personnel Order** NO. P02-05 | **Date of issue** 01/17/02 | **Effective Date** 01/'7/02 |
|---|---|---|
| **Subject** ASSIGNMENT | **New** ☑  **Amends**  **Recinds** | |
| **Reference(s)** | **Page** 1 of 1 | **Distribution:** All personnel |

Captain Michael Murphy shall be the Department's Executive Officer.



# A G R E E M E N T

## -BETWEEN-

## TEAMSTERS LOCAL 25
### International Brotherhood of Teamsters

## AND

## CITY OF REVERE
## (PATROL OFFICERS)
### For The Period

## JULY 1, 2000 to JUNE 30, 2003

**George W. Cashman**
**President/Principal Officer**

**Joseph C. Conlon**
**Secretary-Treasurer**

**Printed & Assembled by**
**Teamsters Local 25**
**Office Staff**

# TABLE OF CONTENTS

## Teamsters Local 25 – Patrol Officers

| ARTICLE 1. | PERSONS COVERED BY THIS AGREEMENT | 1 |
| ARTICLE 2. | NON-DISCRIMINATION | 2 |
| ARTICLE 3. | EMPLOYEE RIGHTS AND REPRESENTATION | 2 |
| ARTICLE 4. | MANAGEMENT RIGHTS | 3 |
| ARTICLE 5. | STABILITY OF AGREEMENT | 4 |
| ARTICLE 6. | COURT TIME | 5 |
| ARTICLE 7. | HOURS OF WORK AND OVERTIME | 6 |
| ARTICLE 8. | GRIEVANCE PROCEDURE AND ARBITRATION | 9 |
| ARTICLE 9. | PAYING POLICE DETAILS | 11 |
| ARTICLE 10. | COMPENSATION | 13 |
| ARTICLE 11. | CLOTHING ALLOWANCE | 17 |
| ARTICLE 12. | HEALTH AND INSURANCE PLAN | 17 |
| ARTICLE 13. | SICK LEAVE | 17 |
| ARTICLE 14. | OTHER LEAVES OF ABSENCE | 18 |
| ARTICLE 15. | INJURED LEAVE | 20 |
| ARTICLE 16. | PROCEDURE FOR CONDUCTING INVESTIGATIONS | 21 |
| ARTICLE 17. | MISCELLANEOUS | 24 |
| ARTICLE 18. | HOLIDAYS AND HOLIDAY PAY | 27 |
| ARTICLE 19 | PAYROLL DEDUCTION OF DUES AND AGENCY FEE | 27 |
| ARTICLE 20. | ALCOHOL AND DRUG TESTING | 29 |
| ARTICLE 21. | DURATION OF AGREEMENT/ NEW PROPOSALS | 31 |

# TEAMSTERS/-POLICE PATROL OFFICERS

This AGREEMENT, by and between the City of Revere, hereinafter called the "City" or the "Municipal Employer", acting by and through its Mayor (and Chief of Police), and the Teamsters Local 25, hereinafter called the "Union", "Patrol Officers" or "Teamsters".

## WITNESS

WHEREAS, the well-being of the employees covered by this Agreement and the efficient and economic operation of the Police Department require that an orderly and constructive relationship be maintained between the parties; and

WHEREAS, the participation of employees in the collective bargaining process contribute to the effective conduct of the police business and public administration; and

WHEREAS, the parties to this Agreement consider themselves mutually responsible to establish stable and meaningful relations based on this Agreement;

NOW, THEREFORE, in consideration of the mutual promises and agreements herein contained, the parties mutually agree as follows:

## ARTICLE 1.- PERSONS COVERED BY THIS AGREEMENT

1.1. The City recognizes the Teamsters as the exclusive representative for the purposes of collective bargaining relative to wages, hours and other conditions of employment, of all PATROL OFFICERS, employed by the Police Department of and in the service of the City. The Municipal Employer and the Teamsters agree not to discriminate against employees covered by this Agreement on account of membership or non-membership in the Union. The use of the pronoun he rather than she or rather than he/she is not to be construed in any discriminatory way and is used only for purposes of clarity and refers equally to male and female patrol officers.

1.2. The City agrees that work presently being performed by any such employees shall not be assigned to, or performed by, persons other than those covered by this Agreement, except in cases of emergency or extreme need in the judgment of the Police Chief when insufficient employees are available. Notwithstanding the foregoing statement to the contrary, the City shall have the right to hire a civilian as a mechanic, parking meter repairman, and assistant to the detail assignment officer.

1

1.3. Additionally, effective 25 July 1995, the function of Call taking may be assigned at the option of the City to civilians not to be covered by this Agreement. It is to be clearly understood that two members of the Federation used exclusively in such function on 1/1/94 will continue to be used in such function until they terminate their employment or voluntary ask to be reassigned to other duties in the Department. Such two members will be given the right of first refusal in overtime opportunities afforded in the function when taken over by the City. It is also understood, that effective upon execution of this Agreement, current employees of the Association will not be laid off for lack of money prior to all civilians that may be retained under the provisions of this Article 1.3, and this lay-off policy shall continue through 12/31/96.

## ARTICLE 2. – **NON-DISCRIMINATION**

2.1. The Municipal Employer and the Union agree not to discriminate in any way against employees covered by this Agreement on account of race, religion, creed, color, national origin, sex or age.

## ARTICLE 3. – **EMPLOYEE RIGHTS AND REPRESENTATION**

3.1. Employees have, and shall be protected in the exercise of the right, freely and without fear of penalty or reprisal, to join and assist the Union. The freedom of employees to assist the Union shall be recognized as extending to participating in the management of the Union and acting for the Union in any official capacity, and including the right to present Union views and positions to the public, to officials of the City and the Police Department, to members of the City Council of the City and to the General Court, or to any other appropriate authority or official.

3.1.1. Without limiting the foregoing, the City agrees that it will not aid, promote or finance any labor group or organization purporting to engage in collective bargaining or make any agreement with any such group or organization which would violate any rights of the Union under this Agreement or the law.

3.1.2. Further, the City agrees that neither it, nor any representative, Department official or agent of the City, shall violate any rights of employees or of the Union as provided for and guaranteed by the provisions of G.L. Chapter 150 E, Section 2, as amended, or commit any prohibited act or practice against employees or the Union as proscribed by the provisions of G.L. Chapter 150 E, Section 10, as amended (which statutory laws are by this reference incorporated herein and made part of this Agreement). Any non-compliance with or violation of the provisions of this Section by the City, its representatives, Department officials or agents, shall constitute a grievance under this Agreement, which may be filed by an employee or the Union.

2

3.2. The members of the union Bargaining Committee, not to exceed four (4), who are scheduled to work a day tour of duty during collective bargaining negotiations or who are on a "short day", so-called, between two night tours of duty, shall be granted leave of absence without loss of pay for all meetings between the City and the Union for the purpose of negotiating the terms of a contract, or supplements thereto. Such meetings shall normally be scheduled for the day-time but if such negotiations continue into the evening hours, such members then working a night tour of duty shall similarly be granted leave of absence without loss of pay or benefits for all such meetings.

3.3. Union officers, representatives or grievance committee members, not to exceed two (2), shall be granted leave of absence without loss of pay for time required to discuss and process grievances with the employee or others involved, and to participate in any grievance steps as described in Article 8. hereof, or in arbitration proceedings consequent thereupon. Such officers, representatives or grievance committee members who work with any night platoon shall have their hours and schedule of work accordingly adjusted to effectuated the purpose of this Section.

3.4. Union officers shall be permitted to discuss official Union Business with the Chief of Police at all mutually convenient times; and with employees prior to on-duty roll call or following off-duty roll call.

3.5. Union officers, representatives and grievance committee members, up to a maximum of two (2) in any one instance, shall be granted leave of absence, shall be granted leave of absence, without pay, but with no loss of benefits, if they so request, to attend meetings of the City Council of the City,the General Court or other public body, subject to the reasonable discretion of the Chief of Police.

## ARTICLE 4. MANAGEMENT RIGHTS

4.1. The Union recognizes that the prime responsibility to provide police protection for the citizens of and the people within the City of Revere and their property, rests upon the Mayor, the Chief of Police and the Police Officers of the Revere Police Department and this agreement shall not be deemed to limit the Municipal Employer in the performance of such management responsibility, to wit:

4.2. The terms and provisions of this Agreement are intended to implement the capacity of the City of Revere to discharge this duty; and this Agreement, as a charter of police employees-employer relations, is purposed to enable the parties to meet modern and changing needs of and in law-enforcement and employee management relations. Accordingly, the participation of covered employees and this Union in the collective bargaining process relating to wages, hours and conditions of employment and other matters calling for their mutual aid and protection is hereby provided to implement management administration of the Police Department. Matters not dealt with in this agreement or regulated by ordinance, rule or regulation or by state statue are deemed reserved to the management authority, subject to applicable collective bargaining law.

4.3. The Municipal Employer reserves the exclusive right to issue reasonable department rules and regulations governing the conduct of the Police Department, provided they are not and shall not be in conflict or inconsistent with the terms or provisions of this Agreement. The rules and regulations of the Police Department are, by this reference, incorporated herein and made a part of this Agreement; and such rules, regulations and orders may be applied when not inconsistent or in conflict with this agreement.

4.4. Subject to this Agreement and applicable law, the City reserves and retains the regular and customary rights and prerogatives of municipal management.

## ARTICLE 5. – STABILITY OF AGREEMENT

5.1. No amendment, alteration or variation of the terms or provisions of this Agreement shall bind the Parties hereto unless made and executed in writing by said parties.

5.2. The failure of the Municipal Employer or the Union to insist, in any one or more situations, upon performance of any of the terms or provisions of this Agreement shall not be considered as a waiver or relinquishment of the right of the Municipal Employer or the Union to future performance of any such terms or provisions, and the obligations of the Union and the Municipal Employer to such future performance shall continue in full force and effect.

4

## ARTICLE 6. COURT TIME

6.1   An employee on duty at night or on vacation, furlough or on a day off, who attends as a witness or in other capacity for or on behalf of the Commonwealth or the City in a criminal or other matter pending in any court of the Commonwealth, or before any grand jury proceeding, or in conference with a District Attorney or Assistant District Attorney, or at any pretrial Court conference or any other related hearing or proceeding, or who is required or requested by any city, county, state or the federal government or any subdivision or agency of any of the foregoing to attend or appear before any administrative or quasi-judicial body thereof, or who attends as a witness or in any other capacity for or on behalf of the Government of the United States, the Commonwealth or the City in a criminal or other matter pending in a Federal District Court, or before a federal grand jury proceeding, or a United States Commissioner, or in conference with a United Stated Attorney or Assistant United Stated Attorney, or any Federal Court pre-trial conference or any other related hearing or proceeding, shall be entitled to and shall receive, in addition to his regular weekly compensation, overtime compensation for every hour or fraction thereof during which he was in such attendance or appearance, but in no event shall such compensation be less than four (4) hours such pay on an overtime service basis; provided, however that any such employee who so attends or appears in any court of the Commonwealth in other than a criminal matter, or in a Federal District Court, or who so attends or appears before any administrative or quasi-judicial body of any city, county, state or the federal government or any subdivision or agency of any of the foregoing, shall be compensated in accordance with the provisions of this Article only when such attendance or appearance has been authorized, approved or consented to by such employee's superior officers (including the Chief of Police), which authorization, approval or consent shall not unreasonably be withheld; and provided, further, that if any such occasion occurs on a holiday which falls on any employee's day off, or during his vacation, the employee shall receive the additional pay or other benefits due or provided for under the Holiday and Vacation provisions of this Agreement.

6.1.1. An employee performing court-time duty to 12:00 noon or thereafter after completing a last-half tour of duty and scheduled to report for his regular tour of duty at 4:00P.M. on the same day may at his option report for work at 6:00 P.M. and work until the end of his scheduled tour of duty, provided he has notified the station to such effect prior to 2:00P.M. on such day. If an employee is in Court beyond 3:00 p.m., the employee may report for work at 8:00 p.m. provided that such employee has notified the station prior to 4: 00p.m..

5

## ARTICLE 7. – HOURS OF WORK AND OVERTIME

7.1. SCHEDULED WORK SHIFTS, WORK WEEK, etc.—The regular work week for employees shall consist of not more than forty (40) hours; all employees shall receive not less than two (2) consecutive days off weekly. Employees shall be scheduled to work on regular work shifts or tours of duty and each work shift or tour of duty shall have the following regular starting and quitting time. Work schedules shall be posted on the Department bulletin board and a copy shall be given to the Union.

7.1.(a). The work shifts (tours of duty) and hours of work of the day and the two alternating Night Shifts are as follows:

7.1.(a).1. The hours of the Day Shift (Shift 3) are from 8:00A.M. to 4:00 P.M. The hours of the Night Shifts (Shifts 1 and 2) are, for the first half, from 4:00P.M. to 12:00 A.M., and, for the last half, from 12:00 A.M. to 8:00 A.M. Employees working in the Night Shifts shall alternate between the first and last half tours of duty in accordance with present practice.

7.1.(a).2. In addition to the above major tours of duty, there are the following other work shifts or tours of duty, applicable to certain assignments, as follows:

    (i)      4:00 P.M. to 12:00 A.M. Shift

    (ii)     7:00 P.M. to 3:00 A.M. Shift

    (iii)    The Detective Bureau:
              Day Shift – 9:00 A.M. to 5:P.M.
              Night Shift- 5:00P.M. to 1:00 A.M.

    (iv)    Such other work shifts or tours of duty, of not more than eight (8) consecutive hours duration, applicable to other than the uniformed force, with such starting and quitting times as the Chief of Police in his sole discretion shall determine.

7.1.(b). The work schedules, day- off or squad schedules of employees are as follows:

6

7.1.(b).1. All employees shall receive one hundred twenty-one and one-third (121 1/3) days off annually and no less than two (2) consecutive days off weekly, in accordance with and characteristic of the four-on, two-off work schedule which is the present practice, which practice shall continue in force and effect during the term of this Agreement. Under such four-on, two-off work schedule, the "four and two" work week so-called, all employees shall receive fourteen (14) days off in each six week period; within each such six week period, the work cycle for the four and two work week shall be completed. An employee's days off drop back one (1) day every week. Employees working the two alternating Night Shifts (1 and 2) shall go on days off after a first half tour of duty and shall return from days off for a last half tour of duty.

7.1.(c). The City agrees that all work shifts, work week and day off schedule specified in or refereed to by this article 7. shall remain in force and effect during the term of this Agreement, unless changed by mutual agreement of the parties.

7.1. (d). If a situation of an emergency nature occurs, the Department may put into effect two (2) twelve (12) hour tours of duty, with such starting and quitting times as the Chief of Police shall determine, in which event all service in excess of eight (8) hours on any such tour shall be deemed overtime service.

7.2. OVERTIME SERVICE. All assigned, authorized or approved service outside or out-of-turn of an employee's regular scheduled tour of duty or shift (other than paying police details), including service on an employee's scheduled day off, or during his vacation, and service performed prior to the scheduled starting time for his regular tour of duty, and service performed subsequent to the scheduled time for conclusion of his regular tour of duty or shift and including Court-time, shall be deemed overtime service and paid for as such.

7.2.(a). Overtime service shall not include:

7.2.(a).1. An out-of-turn work shift or tour of duty which is substituted for a regular scheduled work shift or tour of duty at the request of an employee (subject to Department approval); or

7.2.(a).2. Swapped tour(s) of duty or work shift(s) between individual employees by their mutual agreement (subject to Department approval); or

7.2.(a).3. A change in the schedule of an employee who is shifted from one tour of duty or work shift to another tour of duty or work shift for a period of twenty-eight (28) or more consecutive calendar days if for the purpose of in-service training or courses.

7.3. RECALL If an employee who has left his last place of employment or last duty assignment after having completed work on his regular work shift or tour of duty and is recalled, he shall be paid on an overtime basis for all such time and shall be guaranteed a minimum of hour (4) hours of overtime recall pay therefore.

7.4. SCHEDULING OVERTIME. In emergencies or as the needs of the service require, all employees may be required to perform overtime work. All employees shall be given as much advance notice as possible of overtime work opportunities. Scheduled overtime shall be posted and distributed to all employees on an equitable and fair basis, commensurate with their rank. Employees, other than those required to work beyond their normal work shift or tour of duty due to the exigencies of their workday (such as required reports, an accident, an investigation, etc.) shall have the option of declining offered overtime; but in the event that sufficient personnel do not accept such offered overtime on a voluntary basis, or in the event of emergency situations where time is of the essence in executing the overtime job, such additional personnel as are deemed necessary by the City may be required to work overtime on an assigned basis. All employees shall be afforded the opportunity to accept overtime service, but there shall be no discrimination against any employee who declines to work overtime on a voluntary basis. The Police Department will seek to avoid assigning overtime (as contrasted with voluntary overtime) to employees working a "short-day" so-called, on days off or working with night shifts who are required to attend court, etc. (see Article 6.) between their tours of duty or shifts or on days off, so that such employees may be afforded every opportunity for required rest or to attend to their personal business before and after working hours or on a day off.

7.5. OVERTIME COMPENSATION, METHOD OF. An employee who performs overtime service in accordance with the provisions of this Agreement shall receive, in addition to his regular weekly compensation, time and one-half his straight-time hourly rate for each hour of overtime service. The straight-time hourly rate shall be computed as one-fortieth of an employee's regular weekly compensation.

7.5.(A). Employees shall not be required to accept compensatory time off in lieu of monetary compensation for overtime service.

7.5 (B). Pay for overtime service shall be in addition to and not in lieu of vacation pay, and shall be remitted to employees on a weekly basis.

7.6. NON-AVOIDANCE OF OVERTIME PROVISIONS. The scheduled work shifts or tours of duty and day off schedules of individual employees or group of employees will not be changed or altered for the purpose of avoiding the overtime provisions of this Article.

8

## ARTICLE 8. <u>GRIEVANCE PROCEDURE AND ARBITRATION</u>

8.1. Complaints, disputes or controversies of any kind, which arise between one or more employees and the City or its agents (inclusive of the Chief of Police), concerning the working conditions, hours of work, wages, fringe benefits or rates of pay referred to or specified in this Agreement, or which are provided for by any statute, effective in the City, Charter provision, Ordinance, Rule, Regulation or Policy, which is not in conflict with this Agreement, may be processed as a grievance under the following procedures:

8.1.1.<u>STEP 1</u>   Grievances may be first presented by the employee and/or the Union representative to the Captain designated by the Chief as in charge of the employee's shift or such other Captain so designated, and an earnest effort shall be made within the next forty-eight (48) hours to adjust the grievance in an informal manner.

8.1.1.<u>STEP 2</u>  If the grievance is not resolved in Step 1 within 48 hours, the grievance shall then be reduced to writing by the Union and presented to the Chief of Police within seven (7) days after said 48 hours. The Chief of Police shall meet with the Grievance Committee and/or the employee(s) involved within five (5) days from the time the grievance is presented to him to discuss and attempt to adjust the grievance, and he shall answer the grievance within seven (7) days after the meeting.

8.1.1.<u>STEP 3</u> If the grievance is not resolved in Step 2, or answered by the Chief of Police within the time limits set forth above, the written grievance shall be submitted to the Mayor or his representative by the Grievance Committee within fourteen (14) calendar days after the last aforementioned seven (7) day period. The Mayor or his representative shall meet with the Grievance Committee within fourteen (14) days after receipt of the written grievance to discuss and attempt to adjust the grievance, and will answer the grievance within twenty-one (21) days after the meeting, or within thirty-six (36) days after his receipt of the written grievance.

8.1.1.<u>STEP 4</u> If the grievance is not satisfactorily adjusted in Step 3, or answered by the Mayor or his representative within the time limits set forth above, the written grievance may thereafter be submitted by the Union, and only by the Union, to arbitration, within sixty (60) days after the answer of the Mayor is due, provided however, that if a disciplinary action is involved, the employee may submit the grievance to arbitration. Written notice of said submission shall be given to the City by delivery in hand or by mail, postage prepaid, addressed to the attention of the Mayor.

9

8.1.2. The arbitrator shall be selected by mutual agreement of the parties. If the parties fail to agree on the selection of a single arbitrator, the Union may request the State Board of Conciliation and Arbitration to arbitrate the matter, or either party may request the American Arbitration Association to provide a panel of arbitrators from which a selection of a single arbitrator shall be made in accordance with its voluntary labor arbitration rules, or may so request the Federal Mediation and Conciliation Services. Each party hereto shall bear the expense of preparing and presenting its own case. The parties shall share equally in the cost, if any, of the arbitrator's services.

8.1.3. Any arbitration hearing shall be held during weekdays, if at all possible, and the grieving employee(s), the members of the Federation's Grievance Committee (not to exceed two (2) in number), and any other employee called as a witness by such Committee shall be granted leave of absence without loss of pay while participating in arbitration proceedings.

8.1.4. The decision of the arbitrator shall be final and binding upon the parties.

8.1.5. The time limits established by this Article may be extended by mutual consent of those parties participating at each Step in the grievance and arbitration procedure.

8.1.6. The arbitrator shall make no decision which alters, amends, adds to or detracts from this Agreement.

8.1.7. Any grievance of a general nature affecting a large group of employees may, at the option of the Union, be filed at Step 2 of the grievance procedure.

8.1.8. All grievances must be filed at Step 1 or Step 2 as provided above, no later than sixty (60) calendar days from the date that the event occurred or the employee or the Union had knowledge or reason to know of the occurrence of facts upon which the grievance is based.

8.1.9. Employees shall not be disciplined except for just cause. If an employee so elects, as provided in General Laws, Chapter 150 E, Section 8, arbitration shall be the exclusive procedure for resolving any grievance involving disciplinary action, notwithstanding any contrary provisions of General Laws, Chapter 31. In disciplinary matters, an employee shall make his election after whatever step pursuant to Civil Service law the employee obtains the right to appeal the City's decision to the Civil Service Commission. If an employee elects arbitration, any action previously taken by the City pursuant to Chapter 31 will be considered the equivalent of a Step 3 determination; and his election in writing will constitute the grievance hereunder.

10

ARTICLE 9. **PAYING POLICE DETAILS**

9.1. The following procedure will be adhered to in the assignment and recording of all paying police details, along with "Detail Rules" – referred to as – revised and issued 7/22/94, Memorandum No. M85-94 on file with the Union and the Chief. Such Detail Rules are incorporated herein by reference and may be changed, from time to time, only by the mutual consent of the Union and the Chief.

9.1.(A). All employees will signify in writing from time to time their desire to accept or not to accept paying police details, and a current file on this subject will be maintained at police headquarters, and made available upon request to the Union.

9.1.(A).(1) The exchange of paying details or the use of substitutes between employees is permitted if the officer of rank or superior officer assigning details as hereinafter mentioned shall make reassignment accordingly.

9.1.(B) All assignments to paying police details shall be made by an officer of rank or a superior officer designated by and responsible to the Chief of Police for the equitable and fair distribution of such details. All paying police details will be distributed fairly and equitably as to the number of details, type, hours and compensation as stated in the Detail Rules.

9.1.(C) Such officer of rank or superior officer assigning all paying police details shall be responsible for having recorded all assigned paying details and shall have such assignments posted on detail distribution forms acceptable to the parties, daily for the attention of all employees, and said detail distribution forms placed on a bulletin board at the Station. Said forms shall contain sufficient information to determine whether detail assignments are being made in accordance with the provisions of this Article 9.. and shall include, among other information, the employee's name, detail worked, name of person, firm, corporation or entity served, number of hours worked, type and compensation received per detail, detail refusals and applicable dates.

9.1.(D) Any employee who performs a paying detail not officially assigned by an officer of rank or a superior officer and not recorded and reported as required by this Agreement will not be protected by the provisions of G.L. Chapter 41, sections 100 and 111 F, as amended.

11

9.1.(E) Any employee who knowingly performs a paying detail not officially fully recorded and reported on such forms within twenty-four (24) hours after performance may be subject to Department disciplinary action. The assignment of such a detail by an officer of rank or superior officer may, at the Union's option, constitute a grievance under this Agreement.

9.1.(F) An employee's claim that he has not received his fair share of details pursuant to the provisions of this Article 9. shall constitute a grievance under this Agreement. The Union's claim that paying details are not being distributed fairly and equitably to employees pursuant to the provisions of this Article 9. shall similarly constitute a grievance under this Agreement.

9.1.(G) Detail distribution forms shall be official records of the Department and shall be made available to the Union for its inspection and use, upon its request, when and if removed from the bulletin board or other place of posting.

9.1.(H) No paying detail assignments shall be made until the person, firm, corporation or entity requesting or required to have such detail has agreed to pay the following rate of pay per employee therefore, namely:

Minimum Detail Hourly Rate for Patrol Officers - $26.00

with a guaranty of a minimum of four (4) hour's pay per detail for each employee so assigned. (See also Subparagraph 9.1.(J) below)

9.1.(H)(1). The applicable detail hourly rate cited above in 9.1. (H), may be revised, from time to time during the term of this Agreement, as the Executive Board of the Union shall determine, which revised rate shall become effective seven (7) days after the City's receipt of written notice from the Union, and the rate in 9.1.(H), above shall be deemed amended accordingly.

9.1.(H).(2). Notwithstanding any of the foregoing provisions of this Article 9., in the event that a paid detail assignment continues for more than eight (8) hours, employees so assigned shall be paid time and one-half the applicable detail rate for all such hours worked in excess of eight (8).

9.1.(I). Paying police details shall be assigned only to employees referred to in this Agreement. Only in the event insufficient employees are available for or desirous of working paying police details shall such details, be offered to Non-disability retired City of Revere police officers under age sixty-five, after having been approved by the Chief and the City Solicitor to perform such services, and then to reserve police officers, and to auxiliary police officers, in such order, on the same fair and equitable basis referred to elsewhere in this Article 9.

12

9.1.(J).In accordance with past practice, a fee has been established, in the amount of ten (10) per cent, which shall be added to the amount of each paid detail invoice and/or payment, and shall be credited as general funds of the City.

9.1.(K). The City agrees to maintain a Detail Fund in the amount of $25,000.00 to facilitate payment of detail moneys consistent with Chapter 98 of the Acts of 1980. (See also G.L. Chap 44 Sec. 53 C.)
FUNDING OF REVOLVING ACCOUNT.
On or before July 1, 2002, the Mayor will request that the City Council appropriate an additional $25,000.00 to further fund the revolving account known as the "Detail Fund."

## ARTICLE 10. - COMPENSATION
### 10.1. REGULAR SALARY

10.1.(A) Effective July 1, 2000 as indicated below, the salaries of employees in the rank of Patrol Officers, employed upon execution of this Agreement or thereafter, shall be as follows:

ANNUAL RATE

| TITLE PATROL OFFICER | EFFECTIVE 1/1/00 | EFFECTIVE 1/1/01 | EFFECTIVE 7/1/01 | EFFECTIVE 1/1/02 | EFFECTIVE 7/1/02 | EFFECTIVE 1/1/03 |
|---|---|---|---|---|---|---|
| 1ST YEAR OF SERVICE | $30,585 | $31,196.70 | $31,820.63 | $32,136.84 | $33,100.95 | $33,431.96 |
| 2ND YEAR OF SERVICE | $32,595 | $33,246.09 | $33,911.01 | $34,250.12 | $35,277.62 | $35,630.40 |
| 3RD YEAR OF SERVICE | $34,502 | $35,192.04 | $35,895.88 | $36,254.84 | $37,342.49 | $37,715.91 |

10.1.(B) In addition to the salaries set out above, effective January 1,1996, employees who qualify for the "Career Incentive Pay Program" as per general laws chapter 41 section 108L will receive such additional annual percentages (paid on a weekly basis) as provided therein, after acceptance by the city and upon certification by the board of higher education, in one of the amounts as follows:

13

1) Associate's degree in law enforcement-
   Or 60 points earned to a baccalaureate
   Degree in law enforcement:--------------------Ten percent (10%)
2) A baccalaureate degree
   In law enforcement: ----------------------------Twenty percent (20%)
3) A master's degree in law enforcement-
   Or a degree in law:------------------------------Twenty-five percent (25%)

10.1.(C) Notwithstanding any court decision or opinion to the contrary, the "Career Incentive Pay Program", as above shall not be included in the base in determining overtime rates, holiday pay or other benefits but will be included only for purposes of computing retirement pay. If the Commonwealth agrees to participate in reimbursing the City for one half of any benefits based upon including such amounts, then the City will include such amounts in computing the fringes excluded as aforesaid.

10.1.(D). It is understood that if the Commonwealth for any reason fails to reimburse the city for one half of the above on an annual basis, then the city will only pay one half of the amounts set out and will recapture from the employee any amounts over the one half that may have been paid to employees representing the Commonwealth's share.

10.2. <u>ASSIGNMENT DIFFERENTIAL SCHEDULE</u>:  Effective 1 January 1996, employees of the Police Department shall also receive the additional salary provided below, prorated on a weekly basis and paid only when so assigned.

| TECHNICAL TITLE | | |
|---|---|---|
| Hazardous Duty- (Motorcycles- Exclude Bicycles) | $1,000.00 | Per Annum |
| I.D. Technician | $1,000.00 | Per Annum |
| Prosecutor | $1,000.00 | Per Annum |
| Detective | $1,000.00 | Per Annum |

10.3. <u>NIGHT SHIFT DIFFERENTIAL</u>: An employee who is regularly scheduled to work on a night shift (any shift or tour commencing at or after 4:00 P.M. and prior to 8:00A.M.), and effective January 1,1995 – any other officer who has ten years consecutive service with the Revere Police Department-, shall receive, in addition to his regular weekly salary, a weekly night shift differential equivalent to six (6) percent of his regular weekly salary. Night shift differential shall be considered as regular compensation for retirement/pension purposes.

10.4. <u>EDUCATION INCENTIVE PLAN AND CAREER AWARDS PROGRAM:</u> An education incentive plan and career awards program are hereby continued but apply only to employees who were eligible as of July 1, 1994 and such employees will forfeit all payments hereunder when they become eligible for the "Career Incentive Pay Program" as set out above.

14

10.4(A). Subject to provisions of this Section 10.4., employees who have earned associate or baccalaureate degrees from an accredited institution of higher learning shall receive an annual payment in accordance with the following schedule:

| EDUCATION INCENTIVE PLAN | ANNUAL PAYMENT |
| --- | --- |
| Associate Degree | $ 900. |
| Baccalaureate Degree | $1,500. |

10.4.(B) Subject to the provisions of this Section 10.4., except as hereinafter provided, employees with the following requisite years of service shall receive an annual payment in accordance with the following schedule:

## CAREER AWARDS PROGRAM

## SCHEDULE A: THROUGH JUNE 30, 1998

| YEARS OF SERVICE | ANNUAL PAYMENT |
| --- | --- |
| Over   9yrs continuous service | $400.00 |
| Over 14 yrs continuous service | $800.00 |
| Over 19 yrs continuous service | $1,200.00 |
| Over 24 yrs continuous service | $1,800.00 |
| Over 29 yrs continuous service | $2,000.00 |
| Over 34 yrs continuous service | $2,500.00 |

## SCHEDULE B: EFFECTIVE JULY 1, 1998

| DURING YEAR | ANNUAL RATE | DURING YEAR | ANNUAL RATE | DURING YEAR | ANNUAL RATE |
| --- | --- | --- | --- | --- | --- |
| 10------ | $  500 | 19----- | $1,900 | 28------ | $3,700 |
| 11 | $  600 | 20 | $2,100 | 29 | $3,900 |
| 12 | $  700 | 21 | $2,300 | 30 | $4,100 |
| 13 | $  800 | 22 | $2,500 | 31 | $4,300 |
| 14 | $  900 | 23 | $2,700 | 32 | $4,500 |
| 15 | $1,100 | 24 | $2,900 | 33 | $4,700 |
| 16 | $1,300 | 25 | $3,100 | 34 | $4,900 |
| 17 | $1,500 | 26 | $3,300 | 35 | $5,100 |
| 18 | $1,700 | 27 | $3,500 | | |

10.4.(B). The provisions relative to military service in Section G-3 of Appendix-Division 1 of Table III of the Revised Ordinances of the City are applicable to this Sub-section 10.4.(B).

15

10.4.(C). Each employee, if eligible as in sub-sections 10.4.(A) & (B) above provided, shall be paid an additional amount weekly, commencing with the first pay period following eligibility, at a weekly rate of pay computed from the annual payments provided in (A) & (B) above as applicable.

10.4.(D) Those employees who qualify for payment under both the Plan and the Program shall receive the higher payment to which they are entitled, but not both. Notwithstanding the above sentence, an employee who qualifies for payments under the Plan (M.G.L. c. 41, Section 1081) and who has completed the following number of years of service as a permanent member of the Revere Police Department shall receive the following annual payments, effective July 1, 2002, prorated on a weekly basis, commencing with the first pay period following the employee's applicable anniversary date of employment with the Department:

| Years of Service Completed | Annual Rate |
|---|---|
| 10 | $500 |
| 15 | 1100 |
| 20 | 2100 |
| 25 | 3100 |
| 30 | 4100 |

Amounts paid under this sub-section shall be considered as regular compensation for retirement and pension purposes, but not for other purposes.

10.4.(E). Any amounts paid under the provisions of sub-sections 10.4.(A) or (B) above shall be considered as regular compensation for retirement and pension purposes.

10.4.(F). Employees entitled to receive payments under the provisions of sub-section (B) hereof shall become forthwith eligible on the anniversary date of their said requisite years of service. Employees entitled to receive payments under the provisions of sub-section (A) hereof shall become forthwith eligible upon attainment of associate or baccalaureate degree status; employees shall forthwith notify the Chief of Police of their eligibility.

10.5 Effective July 1, 2001, each member of the bargaining unit shall receive a hazardous duty differential in the amount of one percent (1%) of the base pay of a patrolman at the maximum step (from the schedule at Section 10.1. (A). Said differential shall be paid on a weekly basis. The differential payments shall be considered as regular compensation for retirement and pension purposes, but for no other purposes. Effective July 1, 2002, the differential shall be increased to three and three-fourths percent (3-3/4%) of the base pay of a patrolman at the maximum step.

## ARTICLE 11. – CLOTHING ALLOWANCE

11.1. Each employee shall receive an annual clothing allowance of One Thousand Fifty Dollars ($1,050.00), in two equal cash payments of Five Hundred and Twenty-Five Dollars ($525.00), payable in December and June to employees of record on the first day of December and June respectively. It is understood that such clothing allowance is for the purchase or replacement of uniforms, rubber boots, shoes and other outer clothing necessary for his use as a police officer in the employee of the City. Uniforms will be worn as prescribed by the Chief. Employees agree to comply with departmental regulations on proper dress and the Union will cooperate in effecting such compliance. Only employees who actually work sixty (60) days, exclusive of details, during the five (5) months preceding each payment shall be eligible for the clothing allowance as aforesaid.

## ARTICLE 12. – HEALTH AND INSURANCE PLAN

12.1 – The City's group insurance plan options, providing hospital, surgical, medical and other health insurance coverage, together with the employee and City premium rates, are set out below:

| | EMPLOYEE SHARE | CITY SHARE |
|---|---|---|
| INDEMNIY PLAN: BLUE CHOICE- | 25.% | 75.% |
| HEALTH MAINTENANCE ORGANIZATION | | |
| BAY STATE- | 10.% | 90.% |
| HARVARD COMMUNITY | 10.% | 90.% |

12.2. Accidental Death Insurance- Pursuant to the provisions of General Laws, Chapter 32 B, Section 11D, the City shall provide each employee with, and shall pay seventy-five percent (75%) of the premium cost for service-connected group accidental death insurance in the amount of $20,000.00 per employee.

## ARTICLE 13. SICK LEAVE

13.1. – Each employee shall be, when entitled thereto, granted sick leave aggregating not more than fifteen (15) days in any year, without loss of pay. Sick days shall accrue to each employee on the basis of one and one quarter (1-1/4) days for every month of continuous service. Sick leave allowances not used in any particular year may be accumulated up to three hundred (300) days.

13.2. – Sick Leave Incentive program:

13.2.A – <u>Annual "Buy Back" Program-</u> The program commences with the first tracking year April 1, through December 31, 1996, thereafter the tracking year will be the calendar year. The following parameters will apply:

. 0-2 sick days he/she may buy back one regular week's salary

0-3 sick days he/she may buy back 80% or 4 days, whichever applies, of a regular week's salary.

0-4 sick days he/she may buy back 60% or 3 days, whichever applies, of a regular week's salary

To be eligible to participate in the program, employees must have a minimum of Thirty (30) sick days accumulated.

This incentive is available only to those employees who use 4 or fewer sick days in a calendar year.

13.2.B – Retirement "Buy Back" Program- If an employee has a minimum of fifty (50) sick days accrued as of his/her retirement date, he/she may receive a cash payment in accordance with the following:

100 or less accumulated sick days by back rate is $30.00 per day

100-200 accumulated sick days buy back rate is $30.00 per day for first 100 days and $40.00 per day for accumulated time between 101 and 200

More than 200 accumulated sick days buy back first 100 at $30.00 per   day, 101-200 at $40.00 per day and $55.00 per day for accumulated time between 201 and 300.

13.3.- In the event of any employee's death, payment for such accumulated sick leave shall be made to a beneficiary designated by the employee in writing to the Police Department, or in the absence thereof, to his estate.

## ARTICLE 14. – <u>OTHER LEAVES OF ABSENCE</u>

14.1 Permitted Leaves – Subject to the operating needs of the Police Department, determined by the Chief of Police, leave of absence without loss of pay will be permitted for the following reasons:

18

14.1.(A) Attendance, by an employee who is a veteran as defined in Section 1, Chapter 31, of the General Laws, as a pallbearer, escort, bugler, or member of a firing squad or color detail, at the funeral or memorial service of a veteran, as so defined, or of any person who dies under other than dishonorable circumstances while serving in the armed services of the United States in time of war or insurrection;

14.1(B) Attendance, by an employee who is a veteran as defined in Section 1, Chapter 31, of the General Laws, as a delegate or alternate to state or national conventions of certain veteran's organizations as designated, from time to time, during the life of this Agreement, by the Mayor of the City;

14.1.(C) Inoculation required by the Municipal Employer;

14.1.(D) Promotional examinations conducted under Civil Service Law and rules for promotion to any position in the service of the Department;

14.1.(E) Red Cross blood donations authorized by the Department, not to exceed three (3) in a year;

14.1.(F) Medical examinations for retirement purposes; and

14.1 (G) Attendance at educational programs required or authorized by the City or the Department.

14.2. <u>Military Leave.</u> Every employee covered by this Agreement who is a member of a reserve component of the armed forces of the United States shall be granted, in accordance with Section 59 of Chapter 33 of the General Laws, leave of absence with pay, during the time of his annual tour of duty as a member of such reserve component; provided, however, that such leave shall not exceed seventeen (17) calendar days.

14.3. <u>Leave For Death in Family</u>. In the event of the death of a spouse, father, mother, child, brother, sister, father-in-law, mother-in-law, or of any person residing with the family of an employee, such employee shall be entitled to receive five (5) days' leave without loss of pay or benefits for the purpose of attending funeral services or arranging for burial, and as a period of bereavement. For the purposes of this Section, the words "person residing with the family of an employee" shall be deemed to refer to (a) a blood or non-blood relative who is domiciled with the family of an employee, or (b), any person who lives with the family of and is dependent upon such employee. In the event of a death of a brother-in-law, sister-in-law, grandparent or aunt or uncle of an employee not residing with such employee's family, such employee shall be entitled to three (3) days' leave without loss of pay or benefits for the purpose of attending funeral services or arranging for burial, and as a period of bereavement. It is understood that these days will be consecutive and will include days off falling within such period. Leave without loss of pay under this section shall not be deducted from sick leave or vacation leave.

14.3.(A). If an employee entitled to leave without loss of pay or benefits under this Section 14.3. requires additional leave for such purpose, or in the event of a death in the immediate family of an employee not entitled to leave without loss of pay or benefits under this Section 14.3., leave for such purpose may be permitted without loss of pay or benefits in the discretion of the Chief of Police.

14.4. <u>Personal Leave</u> - Each employee covered by this Agreement shall be granted one (1) personal day with pay per year after giving reasonable notice to the Police Chief. Unless otherwise authorized by the Police Chief, only one (1) employee shall be allowed to use personal leave for a given tour of duty on a first-come first-served basis. Effective for FY 99, a second personal day per year is added hereto with the further understanding that such a request will be denied if it serves as a trigger to cause overtime, call backs, extra hires or any other form of expense to the City.

# ARTICLE 15. <u>INJURED LEAVE</u>

15.1 An employee absent from duty on account of sickness, injury, or disability incurred in the performance of his duty shall receive full pay during such absence.

20

15.2 An employee so absent from duty may be examined by a physician designated by the City, at City expense, but shall be entitled to examination and treatment by a physician of his own choice. His physician shall be afforded full opportunity to consult with any physician designated by the City prior to any determination by such City Physician as to the employee's fitness to resume police duty. If the employee's physician and such City Physician disagree as to such "fitness", they shall thereupon jointly designate a physician agreeable to both who shall examine the employee and render an advisory written medical opinion as to the employee's fitness to return to duty, copies of which shall be transmitted by him to both the City's Physician and the employee's physician. In the event of their inability to agree upon a third physician, a physician shall be jointly selected by them from a list or panel pf physicians established or suggested by the Commissioner of Public Health for the Commonwealth of Massachusetts in cooperation with the parties hereto, upon which event such physician shall so examine the employee and render his opinion as aforesaid; The City agrees to pay up to twenty dollars ($20.00) of such physician's bill, the employee being responsible for any amount in excess of twenty dollars ($20.00). Pending receipt of such advisory opinion and action of the City Physician thereupon, the City shall not require the employee to return to duty and shall continue to compensate him fully on paid injury leave for lost time due to any such absence.

## ARTICLE 16. PROCEDURE FOR CONDUCTING INVESTIGATIONS

16.1 The wide ranging powers and duties given to the Police Department and its members involve them in all manner of contacts and relationships with the public. Out of these contacts come many questions concerning the actions of members of the force. These questions often require immediate investigation by superior officers designated by the Police Chief. In an effort to insure that these investigations are conducted in a manner which is conductive to good order and discipline, the following guidelines are promulgated:

16.1.(A). The interrogation of a member of the force shall be at a reasonable hour, preferably when the member of the force is on duty, unless the exigencies of the investigation dictate otherwise. When practicable, interrogations should be scheduled for the daytime and the reassignment of the member of the force to a day tour of duty should be employed. No member shall suffer loss of pay for the time spent under interrogation.

16.1.(B). The interrogation shall take place at a location, designated by the investigating officer. Usually it will be at the station.

21

16.1.(C). The member of the force shall be informed of the rank, name and command of the officer in charge of the investigation, as well as the rank, name and command of the interrogating officer and all persons present during the interrogation. If a member of the force is directed to leave his post and report for interrogation other than at the station, the station shall be promptly notified of his whereabouts.

16.1.(D). The member of the force shall be informed of the nature of the investigation before any interrogation commences, including the name of the complainant. The address of complainants and/or witnesses need not be disclosed; however, sufficient information to apprise reasonably the member of the allegations should be provided. If the complaint is filed in writing, or statement of the complainant is or has been recorded stenographically or mechanically, a copy should be furnished to said member(s); if it is known that the member of the force being interrogated is a witness only, he should be so informed at the initial contact.

16.1.(E). The questioning shall not be overly long. Reasonable respites shall be allowed. Time shall also be provided for personal necessities, meals, telephone calls and rest periods as are reasonably necessary.

16.1(F). The member of the force shall not be subject to any offensive language, nor shall he be threatened with transfer, dismissal or other disciplinary punishment. Nor promises of reward shall be made as an inducement to answering questions.

16.1.(G) The complete interrogation of the member of the force shall be recorded mechanically or by a department stenographer. There will be no "off-the-record" questions. All recesses called during the questioning shall be recorded.

16.1.(H). If a member of the force is under arrest or is likely to be, that is, if he is a suspect or the target of a criminal investigation, he shall be given his rights pursuant to the Miranda decision.

22

16.1.(I). In all other cases, the law imposes no obligation, legal or otherwise, on the Police Department, to provide an opportunity for a member of the force to consult with counsel or anyone else when questioned by a superior officer about his employment or matters relevant to his continuing fitness for police service. Nevertheless, the Police Department shall afford an opportunity for a member of the force, if he so requests, to consult with council before being questioned concerning a serious violation of the Rules and Regulations, provided the interrogation is not unduly delayed. However, in such cases, the interrogation may not be postponed for purpose of counsel past 10:00 A.M. of the day following the notification of interrogation. Counsel, if available, and a representative of the Union may be present during the interrogation of a member of the force. Requests for an opportunity to consult with counsel and have counsel present in connection with minor violations, such as absence from post, failure to respond to recall lights, etc., will be denied unless sufficient reasons are advanced.

16.1.(J) In any case, the refusal by a member of the force to answer pertinent questions may result in disciplinary action.

16.1.(K). In the event that any employee claims that there have been violations of any provision of this Article 16., such employee, either alone or together with his employee organization representative, may file a signed, written complaint with the Mayor against the person committing the alleged violation. The Mayor shall investigate such written complaint and may hold a hearing on such complaint within ten (10) days of receipt thereof if he is of the opinion a hearing is necessary. The complainant may be accompanied and/or represented at such hearing by his Union representative. Notice of the time and place of the hearing shall be furnished to all interested parties not less than forty-eight (48) hours prior to the scheduled time. No party or witness who participated in any such hearing shall suffer loss in leave or pay for time spent in any such hearing nor coercion nor reprisal on account of any such participation.

16.1.(L). The Mayor shall render his final decision with respect to any such complaint within fifteen (15) days after the conclusion of a hearing thereof if he is of the opinion a hearing is necessary or within fifteen (15) days of the filing of the complaint if a hearing is not held thereon; such decision shall be in writing and shall state with particularity the consideration and reasons in support thereof including a statement of the facts found. A copy of such decision shall be given forthwith to both the complainant and his employee organization representative. The Mayor, in his discretion, may endeavor to eliminate any unlawful act or practice which constitutes a violation of this Article 16. by informal methods, or conference, conciliation and persuasion.

23

## ARTICLE 17. MISCELLANEOUS

17.1 – Bulletin Boards. Space will be provided at places of assembly of the employees within the Police Station for Union bulletin boards of reasonable size, to be supplied by the Union, for the posting of announcements or other materials relating to Union business.

17.2. Temporary Service Out Of Rank. Any employee temporarily assuming the duties and responsibilities of a higher rank for a period of thirty (30) days or more shall receive the pay of such higher rank from the thirty-first (31st) such day forward until relieved of such additional duties and responsibilities.

17.3. (A). Vacation Benefits. Whenever the employment of an employee of the Police department is terminated during a year by dismissal through no fault or delinquency on his part or by retirement or death, without his having been granted the vacation to which he is entitled under Section 17.11. hereof, he, or in case of his death, his beneficiary, shall be paid, at the regular rate of compensation payable to him at the termination of his employment, an amount in lieu of such vacation; provided that no monetary or other allowance has already been made therefore. The work "beneficiary" as used in this Section means the surviving beneficiary or beneficiaries, if any, lawfully designated by the employee under the retirement system of which he is a member, or, if there be no such designated beneficiary, the estate of the deceased.

17.3.(B) Vacation Period. The vacation period shall run from January 1 to December 31 each year. One week of an employee's vacation may be taken, at his option, one (1) day at a time.

17.3.(C) Vacation-Exception. Notwithstanding the foregoing provisions of this Section 17.3., an employee shall lose his vacation pay and/or his eligibility for vacation periods in the following calendar year if he is absent from duty for any reason other than injury or illness incurred in the line of duty and/or vacation leave for more than one hundred twenty-two (122) tours of duty in any calendar year.

17.4. Vacancy In Officer Rank. If any vacancy occurs in any of the following officer ranks, sergeant, lieutenant or captain, however occurring, except as a result of illness or injury, and such vacancy exists for a period of thirty (30) days or more, the City shall forthwith request the Director of Civil Service that an examination be forthwith called in order that a list may be established in connection with the filling of such vacancy; and that, on certification of such a list by the Director of Civil Service, the City shall fill all vacancies so occurring within thirty (30) days thereafter.

24

17.5 Statues & Ordinances-Library. The City Agrees to and shall supply for employees' use at the station a complete set of the Massachusetts General Laws Annotated, and shall keep same up to date, provided, however, that the Union, at its sole cost and expense shall replace any book in said set which may become lost as determined by the Chief of Police. The City also agrees to supply a copy of the City Ordinances for employees' use at the station.

17.6 First Aid Kits. The City agrees to and shall issue for use in all cruisers and in the station, first aid kits and related equipment. The City further agrees to and shall maintain and/or replace such first aid kits when necessary or when used or exhausted.

17.7. (A) Seniority-Basis Of. The seniority of patrol officer employees shall date from the time of their permanent original appointment as patrol officer in the employ of the City and its Police Department. Those patrol officer employees so appointed on the same day shall have their relative seniority vis-à-vis each other determined on the basis of their Civil Service mark; if the mark if two or more of said employees is the same, the date of their application for the position of patrol officer in the employ of the City shall govern.

17.7. (B) Seniority – Shift Pick. Employees, within ranks, in the Uniformed Force, shall have the right and option to pick their shift by seniority, with preference given to employees in the order of their seniority. A seniority pick shall be made once in each year, on or about February 1st. Each seniority pick shall remain in force for a one (1) year period. At the end of such one (1) year period and at the end of every consecutive one (1) year period thereafter, there shall be a new pick. The Chief of Police shall assign employees to shifts in accordance with picks hereunder within ten (10) days after a pick is completed. If the Chief fails to assign shifts within ten (10) days of the completion of the shift pick submissions, then such shift pick submissions shall be void. All employees shall be required to make their pick within fifteen (15) days of notice thereof. Notwithstanding the provisions aforementioned that seniority picks shall be made on a yearly basis, when a shift opening becomes available because of a transfer or leave of absence, retirement, death, resignation, or because of a newly authorized or created position('s), or for any other reason, it shall be posted forthwith thereupon, and a seniority pick in accordance with the above provisions in terms of bidding for the shift opening shall thereupon be made. Employees not electing to exercise their seniority rights to fill a shift opening or to make a seniority pick shall maintain their then shift assignments and their seniority rights vis-à-vis other employees in the event of other shift openings or to make a seniority pick.

17.7.(C). Seniority – Shift Pick – Exception. Notwithstanding the foregoing provisions of this Section 17.7., during the first three (3) months of service of a new a Patrol Office, he may be assigned by the Chief of Police for training purposed to any one or more shifts, provided, however, that upon conclusion of said three (3) month training period a seniority pick shall be made for the opening involved in his appointment to the department.

17.8. – Gun Permit Fee.  The City shall pay the annual gun permit fee for all employees holding or applying for a gun permit.

17.8.(A) Batteries. Effective 7/1/98, City will provide batteries for shoulder type radios.

17.9 – Ammunititon for Training. The City agrees to provide ammunition to Police Department employees for in-service training purposes, costing One Thousand Dollars ($1,000.00), yearly, during each year of the term hereof. The City agrees to pay for the expense of renting the range for required training.

17.11. Benefits and Practices.  Except as changed or improved herein, all job benefits and practices enjoyed by employees will continue in force and effect during the term of this Agreement. No employee will suffer a reduction in such benefits and practices as a result of the execution of this Agreement. "Benefits" and "practices" hereunder shall be deemed to include, by way of example and not by way of limitation, sick, leave, vacation leave, paid injured leave, lunch hours, reliefs and legal defense by the City, and be limited to such of such benefits and practices as are applicable on a Department-wide basis. Employees with twenty (20) or more years of service shall receive five (5) weeks of vacation.

17.12. Statutory Benefits, etc. The provisions of this Agreement supersede any conflicting or inconsistent rule, regulation or order promulgated by the Police Department or the Chief of Police. In the event any statute(s), ordinance (s), order(s) or resolution(s) relating to or affecting employees provides or sets forth benefits or terms in excess of or more advantageous than the benefits or terms of this Agreement, the provisions of such statute(s), ordinance(s), order(s) or resolution(s), to the extent not forbidden by law, shall prevail.

17.13. Invalidity of a Provision. Should any provision of this Agreement or any supplement thereto be held invalid by any court or tribunal of competent jurisdiction, or if compliance with or enforcement of any such provision should be restrained by any court, all other provisions of this Agreement and any supplements thereto shall remain in force, and the parties shall negotiate immediately for a satisfactory replacement for any such provisions.

26

17.14. Every five (5) years, the City shall provide a new bulletproof vest to an officer who regularly wears a vest in the performance of his duties and who makes a written request therefor.

17.15. The City shall call for a Sergeant's examination every two (2) years.

## ARTICLE 18. HOLIDAYS AND HOLIDAY PAY.

18.1 Holidays. The following days shall be considered holidays for the purposes enumerated below

| | |
|---|---|
| Independence Day | New Year's Day |
| Labor Day | Martin Luther King Day |
| Columbus Day | Washington's Birthday |
| Veteran's Day | Evacuation Day |
| Thanksgiving Day | Patriot's Day |
| Christmas Day | Memorial Day |
| | Bunker Hill Day |

18.2 Holiday Pay.

18.2(A). Each employee appointed prior to July 1, 1984 shall receive, in addition to his then regular weekly compensation, an additional day and one-half's pay, computed as three tenths (3/10) of his then regular weekly compensation, for each holiday cited in Section 18.1. of this Article. Each employee shall receive a check for six (6) such holidays in a lump sum on the first pay day in December and a check for the remaining seven (7) holidays in one lump sum on the last pay day in June.

18.2.(B). Employees retiring after July 1, 1984 shall receive pay for each of such holidays, not previously paid to him, falling before retirement, computed in accordance with the provisions of Sub-paragraph 18.2. (A).

18.2.(C). Employees appointed after July 1, 1984 shall receive pay for only such holidays falling after their appointment at the times and in accordance with the provisions of Sub-paragraph 18.2.(A).

## ARTICLE 19. PAYROLL DEDUCTION OF DUES AND AGENCY FEE.

19.1 The Employer agrees to deduct from the pay of all employees covered by this Agreement the dues, initiation fees and/or uniform assessments of the Local Union having jurisdiction over such employees and agrees to remit to the Local Union all such deductions taken from the first four payroll periods of each month and remit to the Local Union before the end of the 4th payroll period of each month. Where laws require written authorization by the employee, the same is to be furnished in the form required. No deduction shall be made which is prohibited by applicable law. Where an employee who is on check off is not on the payroll during the week or weeks in which the deduction are

to be made or has no earnings or insufficient earnings during such weeks, or is on a leave of absence. The employee must make arrangement with the Local Union to pay such dues in advance.

19.2. The Employer agrees to deduct from the paycheck of all employees covered by this Agreement voluntary contributions to DRIVE. DRIVE shall notify the Employer of the amounts designated by each contributing employee that are to be deducted from his/her paycheck on a weekly basis for all weeks worked. The phrase "weeks worked" excludes any week other than a week in which the employee earned a wage. The Employer shall transmit to DRIVE Chapter 25 on a monthly basis, in one check the total amount deducted along with the name of each employee on whose behalf a deduction is made, the employee's Social Security number and the amount deducted from the employee's paycheck.

19.3 If by the last day of any given month, the Union is not in receipt of the amounts deducted from the employee's pay for dues, initiation fees and/or assessments, the Local Union shall have the right, after an appropriate 72-hour notice to the Employer, to take whatever steps it deems necessary to secure compliance with this agreement any provisions of this collective bargaining agreement to the contrary notwithstanding, and the Employer shall be responsible to the employees for losses resulting there from. The Employer's liability for payment hereunder shall not be subject to the grievance procedure and/or arbitration provided in this Agreement. The aforesaid 72-hour notice to the Employer shall remain in full force and effect for a period of one year from the date or the occurrence upon which the notice is based.

19.4 Subject to the terms and provisions of M.G.L. Ch. 150E, and regulations promulgated thereunder, the City agrees to require as a condition of employment that each bargaining unit employee become a member on or before the 30th day following the beginning of employment failing to become a union member, shall pay a financial core service fee to the union on or after the 30th day following the beginning of employment or the date of the signing of the collective bargaining agreement, whichever is the later. The amount of the service fee shall be adjusted to the amount required to become a member and remain a member of the Union in good standing. Resignation from the Union or failure to maintain good standing as a Union member shall require the employee to pay the service fee. If an employee does not pay the service fee after the Union has made a written demand to the employee for payment of such fee, the City shall be required, in timely fashion, to meet its obligation.

19.5 The Union may secure authorization for the deduction of Union dues, service fees, initiation fees and/or assessments. Upon the receipt of the authorizations, the City will request the City treasurer to deduct such dues and fees and transmit same in sum total upon collection accompanied by a listing detailing the names and individual amounts to the Union.

## ARTICLE 20 – <u>ALCOHOL AND DRUG TESTING</u>

20.1 <u>Probable Cause</u> – An employee may be tested only after determination by the Police Chief and said person's immediate supervisor, when both independently of each other determine that there is reasonable suspicion to test the employee.

20.2 <u>Post Accident/ Probable Cause</u>- An employee involved in a motor vehicle accident, where the Chief and said employee's immediate supervisor have a reasonable belief that the accident was within the control of the employee and which accident involves substantial bodily injury, or damage to any City property will be tested after the incident.

20.3 <u>Procedures for Alcohol Testing.</u>
20.3.A. A breathalyzer test will be administered to the employee with a .08 or above indicating a positive test for alcohol.

20.4 <u>Procedures for Drug Testing</u>-

20.4.A. The employee to be tested will report to the Chief at the time designated for transportation to the medical facility or laboratory designated by the department. Such laboratory shall be certified in accordance with standards promulgated by the Department of Health and Human Services (HHS).

20.4 B. The department will designate to the testing facility the specific drugs for which the sample is to be analyzed. The testing facility will report findings only as to those specific drugs for which he department requested testing.

20.4.C The employee to be tested will be interviewed to establish the use of any drugs currently taken under medical supervision. Any employee taking drugs by prescription from licensed physician as part of treatment, which would otherwise constitute illegal drug use, must notify the tester in writing and include a letter from the treating physician.

20.4.D Test results will be made available to the employee and the Union President as soon as they are made known to the Department. Employees having negative drug test results shall receive a memorandum stating that no illegal drugs were found.

20.4. E. The testing facility will answer union representative(s) questions regarding the testing procedure followed and other pertinent questions specific to the incident.

29

20.4.F. Each step of the processing of the test sample shall be documented to establish procedural integrity and the chain of custody in accordance with HHS standards. Where a positive result is confirmed, test samples shall be maintained in a secured storage for as long as all parties deem appropriate.

20.4.G. The testing facility shall use a split specimen method of collection as described in HHS guidelines 2.2(h), a copy of which is on file in the office of the City Director of Personnel and is also available in the Chief's office. The provisions of 2.2(h) (6) relative to donor's request to test specimen B are applicable to this policy.

20.5    Consequences of Testing Positive to Alcohol and /or Drugs

20.5.A. First Offense:

20.5.A.1. Five (5) day suspension without pay, or
20.5.A.2. In lieu of such suspension, the Employee shall be offered an opportunity for rehabilitation in an employee assistance program and shall be restored to his position following successful completion of the program.

20.5.B Second Offense:

20.5.B.1. Five (5) day suspension without pay, and
20.5.B.2. Employee is required to seek medical help and may only return to work when medically approved.

20.5.C. Third Offense:

20.5.C.1. Termination

**20.6    Refusal to comply with this policy will result in immediate termination.**

20.7    The provisions contained in this article are not intended to waive any constitutional rights which the individual employee may have, provided that the Union shall not grieve or arbitrate an employee termination in the event the employee refuses to comply with the terms of this policy.

30

# ARTICLE 21. DURATION OF AGREEMENT/NEW PROPOSALS

21.1. <u>Duration of Agreement</u>. The terms of this agreement shall be effective July 1, 2000, or at such later date, as to certain provisions thereof, as may be specifically referred to in this Agreement. As to new patrol officers, benefits under this Agreement will accrue on the date of hire without being retroactive beyond such date of hire. This Agreement shall continue in force and effect until midnight, June 30, 2003. If a successor Agreement has not been executed on or before June 30, 2003, this Agreement shall continue in force and effect until a successor Agreement is executed, or until June 30, 2004, whichever is sooner.

21.2 <u>New Proposals</u>:

21.2.(A). On or after October 1, 2002, the Union shall notify the City of its first proposals for a new Agreement to be effective on the termination of this Agreement. Within thirty (30) days after receipt of the Union's first proposals, the City may notify the Union of its proposals for a new Agreement to be effective on the termination of this Agreement.

21.2.(B). The parties shall proceed forthwith to bargain collectively with respect to proposals submitted to each other. Notification under this Section 21.2 shall be accomplished by the Union's delivery of a copy of its proposals to the Mayor and to the City Negotiator, and by the City's delivery to the Union President and its counsel a copy of its proposals.

31

WITNESS  our hands and seals this _____ day of ~~August~~, 2001

CITY OF REVERE

BY: _____
    THOMAS G. AMBROSINO
    MAYOR

Approved as to form:

_____
City Solicitor

_____

TEAMSTERS LOCAL #25

_____
BUSINESS AGENT

_____

32

# REVERE POLICE

| Personnel Order | NO. P00-13 | Date of issue 09/18/00 | Effective Date 09/18/00 |
|---|---|---|---|

| Subject CAPTAIN-IN-CHARGE | | New ☑    Amends    Rescinds |
|---|---|---|

| Reference(s) | Page 1 of 1 | Distribution: All personnel |
|---|---|---|

Captain Frederick Roland shall be in charge of the Department until further notice.

# REVERE POLICE

| **Personnel Order**    NO.  P01-07 | **Date of issue** 06/27/01 | **Effective Date** 07/01/01 |
|---|---|---|
| **Subject**   CAPTAIN-IN-CHARGE | **New** ☑    **Amends**    **Rescinds** | |
| **Reference(s)** | **Page** 1 of 1 | **Distribution:** All personnel |

Captain Frederick Roland shall be in charge of the Department until further notice.

 **REVERE POLICE**

| **Personnel Order** NO. P00-12 | | **Date of issue** 08/31/00 | **Effective Date** 08/31/00 |
| --- | --- | --- | --- |
| **Subject** CAPTAIN-IN-CHARGE | | New ☑   Amends   Rescinds | |
| **Reference(s)** | **Page** 1 of 1 | **Distribution:** All personnel | |

Captain Frederick Roland shall be in charge of the Department from today until

09/18/00.

# REVERE POLICE

| Personnel Order | NO. G2002- 30 | Date of Issue | Effective Date |
|---|---|---|---|
| | | 12/4/2002 | 12/1/2002 |

| Subject | | New ☒    Amends ☐    Rescinds ☐ |
|---|---|---|
| Captain Roland's Retirement | | |

| Reference(s) | Page | Distribution: |
|---|---|---|
| | 1Of 1 | All Personnel |

Effective Sunday December 01, 2002, Captain Fred Roland is retired from the Revere Police Department.

Captain Roland was sworn as a full time Police Officer on June 20, 1976, he was promoted to Sergeant in February of 1989, Lieutenant in January of 1991 and Captain in September of 1993.

In March of 1999, Captain Roland was named the Executive Officer of the Department.

Captain Roland later served as, "Captain in Charge of the Police Department," during an extended leave of then acting Police Chief Roy Colannino.

We wish Captain Roland and his family a long and happy retirement.

October 11, 2001

Captain Frederick Roland
23 Pleasant Street
Revere, Ma. 02151

Sir:

I formally request an appointment, as soon as possible, to be examined by the City of Revere doctor. I have been diagnosed by two separate doctors (Dr. Eric Keroack and Dr. Susan Rudman. I also attended The On-Site Academy (Dr. Hayden) for stress related reasons. All of these doctors are licensed physicians and have psychological backgrounds. The prognosis from all the doctors have been that I suffer from Post Traumatic Stress Disorder. This condition stems from extreme sexual harassment that has been documented, and the Revere Police Department and the Mayor have failed to deal with. PTSD has been recognized by the Boston Police Department, Salem Police Department as well as many other department as a disability under (111F).

I have also been advised from the letter dated June 1, 2001 that the Third Party Claims Administrator did not except the medical information. The department has also advised me that my physician provided inconclusive and speculative data that could not validate my accusations of sexual harassment  Sir, maybe if there was a formal investigation done by The City of Revere we would be able to better clarify the speculative data. I am also asking that you send me a letter in writing as to what the basis for denial for 111F is.

Respectfully Submitted,

Officer Terri Pechner

Officer Terri Pechner
63 Lancaster Avenue
Revere, Ma. 02151

Officer Charles Callahan
23 Pleasant Street
Revere, Ma. 02151

Sir:

I wish this grievance to be presented in accordance to the grievance portion of the Revere Police Patrol Officers Union contract.

1.)On 03/13/2001 I made a formal complaint of sexual harassment to my superior officers, which to my knowledge I was never kept aware of any findings in the matter.

2.) On 04/19/2001 I submitted an application for Indemnification of Medical Bills and Application for Continuation of Wages.

3.) On 06/01/2001 I received a letter from the Revere Police Department that stated the data provided by me at this point does not satisfy the criteria for 111F disability.
I have been diagnosed with Post Traumatic Stress Disorder by two doctors and also have attended a onsite program for this. The department is in direct violation of the Revere Patrolmans Union contract, under article 15.1 INJURED LEAVE.

4.)I would appreciate that you look into this and begin the grievance process under the procedure in the collective bargaining agreement. It is my understanding that if this grievance is filed that the Local 25 will handle it in an appropriate manner. Sir, time is of essence with this matter I have not received a paycheck from the City of Revere since April 2001. I have also request as you said an evaluation of my condition in writing to Captain Roland.

Respectfully Submitted,

Officer Terri Pechner

Cc: John Murphy

*Received 10/17/01 4PM*



# The City of REVERE, MASSACHUSETTS

## POLICE DEPARTMENT
### ROY J. COLANNINO • ACTING CHIEF OF POLICE
23 PLEASANT STREET, REVERE, MA 02151

(781) 284-1212   FAX (781) 286-8328

**THOMAS G. AMBROSINO**
**Mayor**

October 22, 2001

Officer Terri Pechner
63 Lancaster Avenue
Revere, Massachusetts 02151

Re: Your letter dated October 11, 2001

Dear Officer Pechner:

Please consider this letter as acknowledgement of receipt of your letter dated October 11, 2001.

In your letter, you request an appointment, as soon as possible, with a City of Revere doctor. You have previously provided the Revere Police department with written correspondence from two doctors; Dr. Kerouac and Dr. Rudman, both of whom state that you are unable to work as a result of psychological difficulties. The City of Revere, at this time, is relying on Dr. Kerouac and Dr. Rudman's opinions as they pertain to your abilities. Given that the City of Revere is not disputing either of their opinions, I do not feel that it is necessary to involve any other doctor or doctors at this time.

With regard to your request for clarification as to the basis of the denial for M.G.L. Chapter 41, Section 111f benefits, I would refer you to Chief Colannino's letter to you dated June 1, 2001, wherein he explained to you the basis of your denial to be carried as injured on duty. (A copy of the letter and M.G.L. Chapter 41, Section 100 are attached for your convenience.)

For your information and edification, I will be corresponding with Dr. Kerouac during November of 2001, in order to obtain an update as to your status, and to learn when and if you are going to be able to return and perform the essential tasks of a police officer in the foreseeable future.

Very truly yours,

*Frederick v Roland*

Frederick v Roland
Captain in Charge


Copy: Attorney Dilday
          Charles Callahan Teamsters Local 25
          File


Enclosures: Ltr. To you dtd. 06/01/01
                  Copy M.G.L chapter 41, section 100



# The City of REVERE, MASSACHUSETTS

## POLICE DEPARTMENT

### ROY J. COLANNINO • ACTING CHIEF OF POLICE
23 PLEASANT STREET, REVERE, MA 02151

(781) 284-1212   FAX (781) 286-8328

**THOMAS G. AMBROSINO**
Mayor

Delivered In Hand

October 24, 2001

Charles Callahan
President
Teamsters Local 25
23 Pleasant Street
Revere, MA 02151

RE:    Pechner Grievance received 10/17/01

Please consider this communication as my answer to the above referenced grievance as filed by Officer Terri Pechner.

1.    With regard to the formal complaint of sexual harassment, I have been advised that Officer Pechner had spoken to Chief Colannino in late March or early April, and that she was informed that the Department's investigation resulted in a finding of "unsubstantiated". In addition, the City's Law Department responded to her charges by submitting its answer to the MCAD on April 12th, 2001. An internal investigation had been conducted and a determination was made that there was lack of probable cause. Officer Pechner was provided with a copy of the City's response. To this date, to the best of my knowledge, the MCAD has taken no further action. Should Officer Pechner require additional information, she should seek same from the MCAD. (A copy of said answer to the charges is included herewith for your information and edification.)

2.    With regard to Officer Pechner's application for indemnification of medical bills and continuation of wages, Chief Colannino responded to her application in a timely fashion on June 1, 2001. A copy of said denial of her applications along with a copy of M.G.L. Chapter 41, Section 100 is attached hereto for your information and edification.