3.    With regard to the 6/1/01 letter denying Officer Pechner's injury claim, the City stands on its response to her of that date. A copy of which has been provided to you.

Given the above, there is no contract violation, and, as such, the grievance is denied.

As usual, should you have any questions, comments or concerns, or wish to meet with me regarding this matter, please feel free to contact me.

*Frederick v Roland*

Frederick v Roland
Captain in Charge

Cc:    Officer Pechner
       Mr. John Murphy, Business Agent Local 25    (by FAX)
       Meditrol Inc.
       File

Enclosures: Officer Pechner's ltr. Dated October 11, 2001
            Officer Pechner's Grievance dated October 17, 2001
            Police Department response to Officer Pechner's ltr. October 11, 2001
            M.G.L. chapter 41, section 100
            City of Revere response to Pechner complaint to MCAD docket #01130666
            Chief Colannino's ltr. Of June 1, 2001

# Teamsters Local 25
# International Brotherhood of Teamsters

544 MAIN STREET • BOSTON, MASSACHUSETTS 02129-1113 • 617-241-8825 • Fax 617-242-4284
www.teamsterslocal25.com

GEORGE W. CASHMAN
*President / Principal Officer*

JOSEPH C. CONLON
*Secretary-Treasurer*

WILLIAM H. CARNES
*Vice President / Business Agent*

RITCHIE E. REARDON
*Recording Secretary / Business Agent*

MARK A. HARRINGTON
*Trustee / Business Agent*

LOU DiGIAMPAOLO
*Trustee / Director of Organizing / Field Representative*

ERNEST C. SHEEHAN JR
*Trustee / Business Agent*

VINCENT J. PISACRETA
*Business Agent*

JOHN A. MURPHY
*Business Agent*

ARTHUR J. LAZAZZERO
*Field Representative*

November 9, 2001

Captain Frederick Roland
The City of Revere
Police Department
23 Pleasant Street
Revere, MA 02151

Re: Pechner Grievance

Dear Captain Roland:

Please consider this communication as the Unions request to move Officer Pechner's grievance to the 3rd step under Article 8.1.1 of the current contract between the City of Revere and Teamsters Local 25.

Please contact Business Agent John A. Murphy at your earliest convenience to schedule a date.

Very truly yours,

*George W. Cashman*

George W. Cashman
President

JAM:jc

cc: Thomas G. Ambrosino, Mayor
    Officer Terri Pechner

*We will only accept deliveries from UNION carriers! All other deliveries will be refused!*

# REVERE POLICE

| **Personnel Order** | NO. P02-03 | **Date of issue** 01/08/02 | **Effective Date** 01/08/02 |
|---|---|---|---|

| Subject | RETIREMENT | | New ☑   Amends   Recinds |
|---|---|---|---|

| Reference(s) | | **Page** 1 of 1 | **Distribution:** All personnel |
|---|---|---|---|

Acting Chief Roy Colannino was granted a superannuation retirement effective Sunday, January 6, 2002.

We extend our best wishes to him and hope he will have a great retirement.

 # REVERE POLICE

# Personnel Order  NO. PO2-04

| | | Date of issue 01/15/02 | Effective Date 01/15/02 |
|---|---|---|---|

| Subject | APPOINTMENT | New ☑ | Amends | Recinds |
|---|---|---|---|---|

| Reference(s) | | Page 1 of 1 | Distribution: All personnel |
|---|---|---|---|

Terence K. Reardon was sworn in today as our Chief of Police.

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| TERRI PECHNER-JAMES and SONIA FERNANDEZ, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 03-12499-MLW |
| CITY OF REVERE, THOMAS AMBROSINO, MAYOR, CITY OF REVERE POLICE DEPARTMENT, TERRENCE REARDON, CHIEF OF POLICE, BERNARD FOSTER, SALVATORE SANTORO, ROY COLANNINO, FREDERICK ROLAND, THOMAS DOHERTY, JOHN NELSON, JAMES RUSSO, MICHAEL MURPHY and STEVEN FORD, | ) ) ) ) ) ) ) ) ) | |
| Defendants, | ) | |

## AFFIDAVIT OF THOMAS AMBROSINO

I, Thomas Ambrosino, do hereby depose and state:

1.    I have been the Mayor of the City of Revere since my swearing in on January 3, 2000. Attached hereto is a copy of the record of my swearing in as maintained by the City Clerk for the City of Revere who conducted the same.

2.    In my capacity as Mayor of the City of Revere, I am the Executive Officer for the City of Revere. I am not responsible for the day-to-day supervision, management or operation of the Revere Police Department. These responsibilities are entrusted to the Police Chief pursuant to Section 2.60.030 of the Revised Ordinances of the City of Revere. I was not and have never been a Supervisor of either Officer Terri Pechner or Officer Sonia Fernandez. The allegation in paragraph 1 on page 1 of the Complaint that "at all relevant times and for all relevant purposes [I was the] supervisor[] of the Plaintiffs" is not a correct statement of my duties and responsibilities as the Mayor of the City of Revere.

3.    At the time I assumed the office of Mayor on January 3, 2000, the Acting Police Chief was Roy Colannino. Acting Chief Colannino had been appointed to that position by my predecessor, Mayor Robert Haas. On August 31, 2000, Chief Colannino began a period of sick leave which ultimately extended until his retirement on January 6, 2002. During Chief Colannino's absence, Captain Frederick Roland, the senior Captain of the Revere Police Department, was designated as the Captain in Charge and

assumed responsibility for the supervision, management and operation thereof until the appointment of Chief Terence Reardon on January 15, 2002.

4.      The events that occurred between 1995 through 1999 as alleged in paragraphs 16-104 of the Complaint herein occurred prior to my assuming office. In addition, both Officers Pechner and Fernandez were hired over four years prior to my election and swearing in to office. (See Complaint, paragraphs 14 & 80.)

5.      The complaint in this matter alleges the following incidents involving Officer Pechner that occurred after I assumed office on January 3, 2000.

        a.      The so-called "underwear incident" of February 28th- March 1st of 2001 (Complaint, paragraphs 74-77 and 94-97) (Although the complaint alleges that the underwear was hung-up on or about February 26th the report attached to the complaint as Exhibit "E" and to Pechner's Motion for Partial Summary Judgment as Exhibit "20" reflects that the actual date was February 28, 2001, a Wednesday. A more legible copy of this document is attached hereto.)

        b.      The Christopher Daly incident of March 12, 2001 involving an unnamed Detective (Complaint, paragraph 45). According to the complaint, the next day was the last day that Ms. Pechner was able to work at the Revere Police Department. (Complaint, paragraphs 16, 78 & 79; see also and read in conjunction with paragraphs 45 and 79).

        c.      The vacation day incident of June 26, 2001 involving Lieutenant Murphy (Complaint, paragraph 34). It appears that the date for this incident must be misstated inasmuch as Ms. Pechner alleges repeatedly in her Complaint that the "last day [she] was able to work at the Revere Police Department was March 13, 2001", a date which is over three months previous to this incident. (Complaint, paragraphs 16, 78 & 79; see also and read in conjunction with paragraphs 45 and 79).

6.      The complaint in this matter alleges the following incidents involving Officer Fernandez that occurred after I assumed office on January 3, 2000.

        a.      The hair incident of February 28, 2000 involving Lieutenant Foster (Complaint, paragraph 100).

        b.      The radio room scheduling incident of February 29, 2000 involving Lieutenant Foster (Complaint, paragraph 101).

        c.      The derogatory comments incident of July 1, 2000 involving Lieutenant Ford (Complaint, paragraph 99).

d.    The hearing aid incident of January 23, 2001 involving Lieutenant Foster (Complaint, paragraph 102).

e.    The so-called "underwear incident" of February 26th- March 1st of 2001 (Complaint, paragraphs 74-77 and 94-97).

f.    The hearing impairment comment on March 1, 2001 involving Lieutenant Foster (Complaint, paragraph 102).

g.    The incident of December 7, 2001 involving Officer Crevoiserant (Complaint, paragraph 103).

h.    The incident of December 16, 2001 involving Officer Crevoiserant (frankly it is not clear from the face of the complaint if this is a separate incident from the December 7, 2001 incident or not) (Complaint, paragraph 103).

7.    Sometime during March or April of 2001, I met with Officers Terri Pechner-James and Sonia Fernandez to discuss their requests for paid administrative leave. To the best of my recollection, this is the one and only time I met with Ms. Pechner and Ms. Fernandez. The Complaint makes reference to this meeting in paragraphs 49, 105,116 and 134. During the course of this meeting some of the events identified in paragraphs 5 and 6 above may have been discussed. (Obviously, this would exclude the incidents of December 2001 involving Officer Fernandez which had not yet occurred). This would have been the first time I would have been notified of these events, if they were in fact discussed during this meeting. I was not personally aware of the incidents alleged in the complaint on file herein and only learned of these alleged incidents through the combination of my meeting with Officers Pechner and Fernandez, their filing of the their complaints with the Massachusetts Commission Against Discrimination and their filing of the instant complaint.

8.    On April 2, 2001 I sent Ms. Fernandez a letter approving a three months leave of absence without pay. A true and correct copy of said letter is attached hereto.

9.    On April 9, 2001 I sent Ms. Fernandez a letter adjusting the effective dates of her previously approved three months leave of absence without pay. A true and correct copy of said letter is attached hereto.

10.    On April 23, 2001 I sent Ms. Pechner a letter denying her request for a paid leave of absence. A true and correct copy of said letter was attached

to Plaintiff Pechner's Motion for Partial Summary Judgment as Exhibit 24 and is also attached hereto.

11.     On July 5, 2001 I sent Ms. Fernandez a letter approving an additional three months leave of absence without pay. A true and correct copy of said letter is attached hereto.

12.     On October 6, 2001, at the conclusion of Ms. Fernandez' six months leave without pay she was authorized to return to work effective Monday, October 8, 2001. A true and correct copy of my memorandum to Captain in Charge (Acting Chief) Frederick Roland to that effect is attached hereto.

13.     On November 13, 2001 I received a formal request by Officer Pechner to move her grievance to step 3 under the Union contract. A true and correct copy of said request is attached hereto.

14.     On November 13, 2001 I responded to the formal request to move Officer Pechner's grievance to step 3 by scheduling a hearing in my office for November 21, 2001. A true and correct copy of the letter to this effect is attached hereto.

15.     I conducted the Pechner grievance hearing as scheduled on November 21, 2001. On November 26, 2001 I rendered my decision which was conveyed to Ms. Pechner the same date by cover letter. A true and correct copy of said decision and cover letter are attached hereto.

16.     On December 27, 2001 I sent Ms. Fernandez a letter approving a two weeks leave of absence without pay. A true and correct copy of said letter is attached hereto.

17.     In my letter of April 23, 2001 to Ms. Pechner, which is attached hereto, I make reference to "the policy that has been applied to similarly situated police officers" concerning unpaid leaves of absence. Since assuming the office of Mayor in January, 2000 I have authorized unpaid leaves of absence to Revere City police officers without regard to race or gender. I have also approved paid leaves of absence without regard to race or gender. Paid leaves of absence typically arise in the context of an officer who is under investigation based upon some allegation of misconduct. Under the circumstances, an Officer accused of misconduct must be relieved from duty as a matter of course pending the outcome of the investigation. Since this action is taken before a determination of culpability has been made and before the appropriate civil service disciplinary rules have been complied with, the leave involved must necessarily be leave with pay. Paid leaves of absence may also arise in the context of an officer who is injured on duty as defined by the relevant

4

statutes and has submitted the requisite medical reports to substantiate the on duty injury and his or her entitlement to paid leave pending recuperation and return to duty.

18.    During calendar year 2001 while Acting Chief Colannino was on extended sick leave pending retirement, I worked with the Revere City Council and the State Legislature to secure legislation that would remove the Chief of Police from the State Civil Service System and allow the City to hire its next Chief under contract.  My efforts in this regard resulted in the passage of Senate Bill 1886 on October 11, 2001 (Statutes 2001, Chapter 102) which effected this change.

19.    With respect to the Revere Retirement Board, my only involvement with said Board is to select the second member thereof pursuant to General Law Chapter 20, section (4)(b) and to receive their annual request for appropriation under General Law Chapter 20, section (5)(f), which is then evaluated as part of the annual budget process.  I do not participate in, nor do I attempt to influence the Board in the performance of its duties under General Law Chapter 20, section (5).

Signed under the pains and penalties of perjury this 28th of March, 2005.

Respectfully submitted

Thomas Ambrosino
Mayor, City of Revere

5

This is to certify that on January 3, 2000, I administered the Oath of Office to the following:

Thomas G. Ambrosino, Mayor

Mark Casella, City Councillor

George V. Colella, City Councillor

Joseph A. DelGrosso, City Councillor

Michael A. Ferrante, City Councillor

Al Fiore, City Councillor

Donald E. Goodwin, City Councillor

Arthur F. Guinasso, City Councillor

John P. Jordan, City Councillor

Richard A. Penta, City Councillor

John J. Perez, City Councillor

Anthony T. Zambuto, City Councillor

SCHOOL COMMITTEE MEMBERS

Thomas P. Caporale, School Committeeman

Michael E. Ciarlone, School Committeeman

Gerry D'Ambrosio, School Committeeman

Joseph A. Giannino, School Committeeman

Peter A. Martino, School Committeeman

Donna Wood Pruitt, School Committeewoman

BY:  John J. Henry, City Clerk

City Councillor Al Fiore resigned his position of Councillor-at-Large on March 31, 2000.  At a special meeting of the Revere City Council on March 31, 2000 Daniel Rizzo was elected Councillor at Large.  On March 31, 2000 I administered the Oath of Office to Daniel Rizzo.

_____        _____
Daniel Rizzo                   John J. Henry, City Clerk

City Councillor Donald E. Goodwin, Jr. resigned his position as Councillor of Ward Five on January 10, 2000.  At a Special Election on May 02, 2000 John F. Powers was elected Councillor of Ward Five.  On May 15, 2000 I administered the Oath of Office to John F. Powers as Councillor of Ward Five.

_____        _____
John F. Powers                 John J. Henry
City Councillor                City Clerk

Case 1:03-cv-12499-MLW    Document 38    Filed 04/12/2005    Page 11 of 71

REVERE POLICE DEPARTMENT
date: 02/28/01, WEDNESDAY

TTY 501-849
org/lst

----------------------------------------------------------------------

********** FC     910    POLICE-GENERAL REQ FOR                    **rcv*clr*
  01:51 * 23 PLEASANT ST   REV                                      910 910
 233983 * ITEM LEFT IN THE GUARD ROOM                                141
        * ID #:   20656                                            268-849
        : REVERE POLICE STATIO,
        call-back#        284-1212
*** COMMENTS ***
104   REV    ON THE ABOVE DATE AND TIME I OBSERVED A PAIR OF LEOPARD    215-
104   REV    UNDERWEAR (FEMALE TYPE). THE UNDERWEAR WAS HANGING UP ON THE 215-
104   REV    WALL. THE UNDERWEAR WAS HANGING UP IN PLAIN VIEW RIGHT     215-
104   REV    WERE THE PUBLIC COULD SEE THEM. THERE WAS ALSO A PAPER     215-
104   REV    RIGHT ALONG SIDE OF THE UNDERWEAR WITH WRITING ON IT.      215-
104   REV    THE WRITING STATED "LANGONE'S JEALOUS".                    215-
104   REV                                                               215-


--------------------------------------------          -----------------
              officer's signature                            date

11/7/99
Chuck Roland
Beccan



*The City of* REVERE, MASSACHUSETTS

Office of the Mayor

281 Broadway, Revere, MA 02151

(781) 286-8110    Fax (781) 286-8199

THOMAS G. AMBROSINO
Mayor

April 2, 2001

Ms. Sonia Fernandez
34 Burrett Road
Revere, Massachusetts 02151

Re:    *Leave of Absence*

Dear Ms. Fernandez:

Upon consideration of the written request from your physician, and acting pursuant to M.G.L. c. 31, §37, I hereby grant you a three-month unpaid leave of absence effective Friday, March 16, 2001 until Saturday, June 16, 2001 due to medical reasons.

Very truly yours,

Thomas G. Ambrosino
Mayor

Cc:    Chief Roy Colannino
Captain Fred Roland



*The City of* REVERE, MASSACHUSETTS

Office of the Mayor

281 Broadway, Revere, MA 02151

(781) 286-8110    Fax (781) 286-8199

THOMAS G. AMBROSINO
Mayor

April 9, 2001

Ms. Sonia Fernandez
34 Burnett Road
Revere, Massachusetts 02151

   Re: *Leave of Absence*

Dear Ms. Fernandez:

  Upon consideration of the written request from your physician, and acting pursuant to M.G.L. c. 31, §37, I hereby grant you a three-month unpaid leave of absence effective Sunday, April 1, 2001 until Sunday, June 30, 2001 due to medical reasons. These dates are revised from my original April 2, 2001 letter, which is null and void.

      Very truly yours,

      Thomas G. Ambrosino
      Mayor

Cc: Chief Roy Colannino
  Captain Fred Roland

## The City of REVERE, MASSACHUSETTS

Office of the Mayor
281 Broadway, Revere, MA 02151
(781) 286-8110    Fax (781) 286-8199

THOMAS G. AMBROSINO
Mayor

April 23, 2001

Ms. Terri Pechner
63 Lancaster Avenue
Revere, Massachusetts 02151

Re:    *Leave of Absence*

Dear Ms. Pechner:

I am writing in response to your oral request that I provide you with a paid leave of absence for the next three months.

After careful review of the situation, I deny your request for a paid leave of absence. However, consistent with the policy that has been applied to similarly situated police officers and City employees, I am willing to provide you with an *unpaid* leave of absence for a period of three months. Please let me know promptly if you will take advantage of this offer.

You should know that this letter is written solely in response to your oral request directly to me for a paid leave. I understand that since that request, you have filed a written request with the Chief of Police for Chapter 41, Section 111F benefits. The Police Department will handle that specific request in accordance with the City's practice for dealing with Section 111F claims. This letter is not intended in any way as a response to that claim.

Very truly yours,

Thomas G. Ambrosino
Mayor

Cc:    Chief Roy A. Colannino
       Paul Mulkern, Esq.



**The City of REVERE, MASSACHUSETTS**
Office of the Mayor
281 Broadway, Revere, MA 02151
(781) 286-8110    Fax (781) 286-8199

THOMAS G. AMBROSINO
Mayor

July 5, 2001

Ms. Sonia Fernandez
34 Burnett Road
Revere, Massachusetts 02151

Re:    *Extension of Leave of Absence*

Dear Ms. Fernandez:

Based upon our recent discussion concerning your current health status, and acting pursuant to M.G.L. c. 31, §37, I hereby grant you an additional three-month unpaid leave of absence effective Sunday, July 1, 2001 until Sunday, September 30, 2001 due to medical reasons.

Very truly yours,

Thomas G. Ambrosino
Mayor

Cc:    Captain Fred Roland



*The City of* REVERE, MASSACHUSETTS
Office of the Mayor
281 Broadway, Revere, MA 02151
(781) 286-8110    Fax (781) 286-8199

THOMAS G. AMBROSINO
Mayor

## MEMORANDUM

**TO:**      Acting Chief Fred Roland

**FROM:**   Mayor Thomas G. Ambrosino

**RE:**      **Sonia Fernandez**

**DATE:**    October 6, 2001

---

This memorandum will confirm that Patrol Officer Sonia Fernandez has been given permission to return to work from her leave of absence. I understand that Ms. Fernandez will work her first shift on Monday, October 8, 2001.

# Teamsters Local 25
# International Brotherhood of Teamsters

544 MAIN STREET • BOSTON, MASSACHUSETTS 02129-1113 • 617-241-8825 • Fax 617-242-4284
www.teamsterslocal25.com

GEORGE W. CASHMAN
*President / Principal Officer*

JOSEPH C. CONLON
*Secretary-Treasurer*

WILLIAM H. CARNES
*Vice President / Business Agent*

RITCHIE E. REARDON
*Recording Secretary / Business Agent*

MARK A. HARRINGTON
*Trustee / Business Agent*

LOU DiGIAMPAOLO
*Trustee / Director of Organizing / Field Representative*

ERNEST C. SHEEHAN JR.
*Trustee / Business Agent*

VINCENT J. PISACRETA
*Business Agent*

JOHN A. MURPHY
*Business Agent*

ARTHUR J. LAZAZZERO
*Field Representative*

November 9, 2004

MAYOR'S OFFICE RECEIVED
2004 NOV 13 P 4:12

Captain Frederick Roland
The City of Revere
Police Department
23 Pleasant Street
Revere, MA 02151

Re: Pechner Grievance

Dear Captain Roland:

Please consider this communication as the Unions request to move Officer Pechner's grievance to the 3rd step under Article 8.1.1 of the current contract between the City of Revere and Teamsters Local 25.

Please contact Business Agent John A. Murphy at your earliest convenience to schedule a date.

Very truly yours,

*George W. Cashman*

George W. Cashman
President

JAM:jc

cc:  Thomas G. Ambrosino, Mayor
     Officer Terri Pechner

*We will only accept deliveries from UNION carriers! All other deliveries will be refused!*



### *The City of* REVERE, MASSACHUSETTS
**Office of the Mayor**
281 Broadway, Revere, MA 02151
(781) 286-8110    Fax (781) 286-8199

THOMAS G. AMBROSINO
Mayor

November 13, 2001

Mr. John A. Murphy
Business Agent
International Brotherhood of Teamsters, Teamsters Local 25
544 Main Street
Boston, Massachusetts 02129-1113

   Re: *Pechner Grievance Hearing*

Dear Mr. Murphy:

  I am writing to confirm that the hearing on the Grievance filed by Officer Terri Pechner will be held in my office on Wednesday, November 21, 2001 at 10:00 a.m.

       Very truly yours,

       Thomas G. Ambrosino
       Mayor

TGA/ijg

Cc: Captain Fred Roland



*The City of* REVERE, MASSACHUSETTS

Office of the Mayor
281 Broadway, Revere, MA 02151
(781) 286-8110    Fax (781) 286-8199

THOMAS G. AMBROSINO
Mayor

November 26, 2001

Ms. Terri Pechner
63 Lancaster Avenue
Revere, Massachusetts 02151

     Re:    *Decision on Grievance Hearing*

Dear Ms. Pechner:

     Enclosed you will find a copy of my Decision following the grievance hearing held on November 21, 2001.

Sincerely,

Thomas G. Ambrosino
Mayor

Cc:    Mr. John Murphy, Business Agent, Teamsters Local #25
      Captain Fred Roland



**THOMAS G. AMBROSINO**
Mayor

## *The City of* REVERE, MASSACHUSETTS

### Office of the Mayor
### 281 Broadway, Revere, MA 02151
### (781) 286-8110    Fax (781) 286-8199

### <u>DECISION</u>

On Wednesday, November 21, 2001, I conducted a hearing pursuant to STEP 3 of Article 8.1.1 of the Agreement between the City of Revere and the Teamsters Local 25 on the grievance filed on behalf of Officer Terri Pechner received on October 17, 2001. I heard testimony from John Murphy on behalf of the Union and Captain Fred Roland on behalf of the Police Department. The Teamsters stipulated that the grievance was limited to the denial of benefits under M.G.L. c. 41, §§100, 111F. Based upon the testimony and documentary evidence, I make the following findings.

1.  M.G.L. c. 41, §100 provides a defined statutory scheme for injury on duty claims by police officers, including an opportunity for appeal to the Massachusetts Superior Court when such claims are denied. Because of this statutory scheme for resolving such claims, I find that this is not a matter within the purview of the Agreement between the City and the Teamsters, and therefore no contractual violation exists.

2.  Although I do not rely upon this ground for my decision given the independent grounds for denial set forth above, I do further find that the grievance was not timely filed. Article 8.1.8 specifically requires that grievances be filed within sixty (60) calendar days from the date the employee or Union had reason to know of the grounds for the grievance. Here, the denial of Chapter 41, Section 100 benefits occurred on June 1, 2001, yet the grievance was not filed until mid-October. Consequently, the grievance is untimely.

Based upon the above, I deny the grievance.

Dated: November 26, 2001

Thomas G. Ambrosino
Mayor



### The City of REVERE, MASSACHUSETTS
#### Office of the Mayor
281 Broadway, Revere, MA 02151
(781) 286-8110    Fax (781) 286-8199

THOMAS G. AMBROSINO
Mayor

December 27, 2001

Ms. Sonia Fernandez
c/o Revere Police Station
23 Pleasant Street
Revere, Massachusetts 02151

      Re:    *Leave of Absence*

Dear Ms. Fernandez:

    Upon consideration of your request, and acting pursuant to M.G.L. c. 31, §37, I hereby grant you a two week unpaid leave of absence effective Monday, December 24, 2001 until the end of the day on Sunday, January 6, 2002 due to personal reasons.

        Very truly yours,

        Thomas G. Ambrosino
        Mayor

Cc:    Captain Fred Roland
       Lt. Terence Reardon

**The Commonwealth of Massachusetts**
**Commission Against Discrimination**
**1 Ashbuton Place, Boston, MA 02108**

03-12-2001

C-City Of Revere-Police
Department
Mayor's Office - City Hall
281 Broadway
Revere, MA 02151

RE: Terri Lynne Pechner
vs.: C-City Of Revere Police Department
Docket No: 01130666
EEOC/HUD No:

Dear Sir/Madam:

Please be advised that the Massachusetts Commission Against
Discrimination (MCAD) has received the above referenced complaint of
discrimination which alleges that you have committed an act of
discrimination. A copy of that complaint is enclosed.

State law requires the Commission to impartially review the
allegations in that complaint. The Commission has assigned one of
its staff, Allison Hope, to investigate the complaint. This MCAD
investigator will keep the parties informed of developments arising
from that investigation.

State law requires that you submit a formal written answer to the
complaint in the form of a Position Statement. This written answer
should be submitted to MCAD Investigator within twenty-one (21) days
of receipt of this notification. A copy must also be forwarded to
the Complainant at the address listed on the enclosed complaint.

In order to reduce the time necessary to investigate and resolve
complaints of discrimination, the MCAD schedules an Investigative
Conference with the parties shortly after the complaint is filed.
Information about that Conference is included with this notice.

An Investigative Conference regarding the above complaint will be
held at the Commission's Offices, 1 Ashbuton Place, Boston, MA
02108, at 09:00AM on 04-11-2001. You are required to attend this
Conference.

One important purpose of this Conference will be to determine
whether the parties are willing to consider a rapid, informal and
voluntary resolution of this dispute. The Commission encourages such
resolutions as an alternative to the often lengthy and expensive
litigation process.

If you have any questions pertaining to the Investigative
Conference, please contact Allison Hope at (617) 727-3990 Ext.
26085.

Sincerely,

Allison Hope
Investigator

The Commonwealth of Massachusetts
Commission Against Discrimination

*16CA11129*

DOCKET NUMBER: 01130666
FILING DATE: 03-12-2001

EEOC/HUD NUMBER:
VIOLATION DATE: 02/26/01

--------------------------------------------------------------------

Name of Aggrieved Person or Organization:
Terri Lynne Pechner
63 Lancaster Avenue
Revere, MA 02151
Telephone Number: (781) 284-2720

--------------------------------------------------------------------

Named is the employer, labor organization, employment agency, or state/local
government agency who discriminated against me:
C-City Of Revere Police
Department
Mayor's Office - City Hall
281 Broadway
Revere, MA 02151
Telephone Number: (617) 284-1212        No. of Employees: 20 +

Work Location: Revere, MA

--------------------------------------------------------------------

Cause of Discrimination based on:
Other
Sex.
(Paragraph 4, Retaliation
Sex discrimination / Sexual Harassment).

--------------------------------------------------------------------

The particulars are:
I, Terri Lynne Pechner, the Complainant believe that I was
discriminated against by C-City Of Revere Police Department, on the
basis of Other Sex. This is in violation of M. G. L. Chapter 151B S
P.

In April, 2000 my two immediate supervisors Sal Santoro and Jerry
Goodwin were accused of having a sexual relationship with me because
we had lunch together. Mr. Goodwin filed a complaint against the
department and Captain's Clark and Colinino who had accused them of
this. I let the incident go because it seemed to go away and because
I was not told about this by anyone but Santoro and Goodwin.
Recently, Captain Chalk has tried to get back at Mr. Goodwin for
personal reasons and the issue has resurfaced. This time, Captain
Roland, spoke directly to me and basically stated that because I was
a woman I couldn't have dinner, coffee or other social interactions
with my male co-workers. The behavior of the department has been
ridiculous on all matters of female officers. At one point, all of
the females in the department got together and demanded that a
sexual harassment policy exist and that we get a bathroom. We got
those things, but there is still no maternity policy or other
compensations. Male officers of all different ranks are allowed to
eat and socialize, but females are not, and if we do, we're accused
of having sexual relationships with them. Once I got into an
altercation with another female officer, Kathy Fish, and we both
were written up for this, even though males constantly fight in very
public manners and are never written up. Once a pair of women's

underwear was left on the bulletin board for a week. Another female officer and I had our tires slashed, we think by other male officers. This list goes on and on. There are two different standards for men and women at the police department and it's unlawful sex discrimination.

---------------------------------------------------------------

I swear or affirm that I have read this complaint and that it is true to the best of my knowledge, information, and belief.

_(Signature of Complainant)_

SWORN TO AND SUBSCRIBED BEFORE ME THIS 12th Day of March, 2001

NOTARY PUBLIC: _Huyette L. Hobbs_

SIGNATURE    NOTARY    PUBLIC: _____MY    COMMISSION
EXPIRES: ____July 26, 2007____

Commonwealth of Massachusetts
Commission Against Discrimination
One Ashburton Place, Boston, MA 02108

03-14-2001

C - Revere Police Department
Attn:Department Headquarters
23 Pleasant Street
Revere, MA 02151

RE:Sonia Fernandez
vs.:C - Revere Police Department
Docket No:01130696
EEOC/HUD No:

Dear Sir/Madam:

Please be advised that the Massachusetts Commission Against Discrimination (MCAD) has received the above referenced complaint of discrimination which alleges that you have committed an act of discrimination. A copy of that complaint is enclosed.

State law requires the Commission to impartially review the allegations in that complaint. The Commission has assigned one of its staff, Edward Cassella, to investigate the complaint. This MCAD investigator will keep the parties informed of developments arising from that investigation.

State law requires that you submit a formal written answer to the complaint in the form of an affirmed Position Statement. This written answer should be submitted to MCAD Investigator within twenty-one (21) days of receipt of this notification. A copy must also be forwarded to the Complainant at the address listed on the enclosed complaint.

It is our policy to determine whether the parties are willing to consider a rapid, informal and voluntary resolution of this dispute. The Commission encourages such resolutions as an alternative to the often lengthy and expensive litigation process. To discuss the possibility of settlement, please contact the Investigator named below.

If you have any questions pertaining to the Investigation, please contact Edward Cassella at (617) 727-3990 Ext. 26079.

Sincerely,

Edward Cassella
Investigator

From: MCAD Complaint; Ltr.to.Resp

Case 1:03-cv-12499-MLW   Document 88   Filed 09/12/2005   Page 26 of 71

*16CA/1158*

| | |
|---|---|
| DOCKET NUMBER: 01130696 | EEOC/HUD NUMBER: |
| FILING DATE: 03-14-2001 | VIOLATION DATE: 02/26/01 |

------------------------------------------------------------

**Name of Aggrieved Person or Organization:**
Sonia Fernandez
34 Burnette Road
Revere, MA 02151
Telephone Number: (781) 286-2286

------------------------------------------------------------

**Named is the employer, labor organization, employment agency, or state/local government agency who discriminated against me:**
C - Revere Police Department
Attn: Department Headquarters
23 Pleasant Street
Revere, MA 02151
Telephone Number: (781) 284-1212      No. of Employees: 20 +

Work Location: Revere, MA

------------------------------------------------------------

**Cause of Discrimination based on:**
Sex
Disability
Race, Color.
(Female
Other hearing problem
Hispanic).

------------------------------------------------------------

**The particulars are:**

I, Sonia Fernandez, the Complainant believe that I was discriminated against by C - Revere Police Department, on the basis of Sex Disability Race, Color. This is in violation of M. G. L. Chapter 151B S4 P1,1,16.

I believe I am being discriminated against by my employer C - Revere Police Department due to my sex, Female hearing problem, and my race/color, Hispanic. This is in violation of MGL CH.151B Section 4 Paragraphs 1,1,16 Title VII and The ADA. I have served on the C - Revere Police Department for over five (5) years. I was pulled aside by Leuitenant, Bernard Foster who told me I did not write enough citations, and was put on desk duty for two weeks. There was a male officer who committed the same alleged act, yet he was only spoken to and at the time was not disciplined in the same manner as myself. In my five (5) years with the department the only officers put on the desk were officers who on punishment. The situation was brought to the union's attention. The union went to Chief, Roy Colannino who said they "would try to resolve it". I have been continously harassed by Lt. Foster due to my hearing problem. Lt. Foster has made inappropriate comments such as "turn up your hearing aide". "Why don't you put the phone in your good ear". For several months during 2000, I was not given dispatch duty. On or about 4/5/00, Lt. Foster took me off dispatch, and made hand gestures mocking me due to my hearing problem. I have been the subject of offensive comments by Leuitenant Steven Ford due to my race/color, Hispanic. Lt. Ford

asked me about my national origin, then said you are a bunch of "cockroaches". On or about 8/7/00, Lt. Ford while in the presence of another male officer said "the next female that complains will be downstairs working as a matron". I took these comments as a threat because I was the only female officer present. On or about 8/13/00, while eating lunch Lt. Ford took a knife and made a stab towards me. On or about 10/12/00, I filed a formal complaint of harassment against Lt. Ford. Someone had drawn a dildo on the chalkboard facing the radioroom. On or about 2/26/01, my firstday in there was womens underwear hanging in the guard room during roll - call. On 2/27/01, I noticed the underwear were still there. The underwear were finally removed after roll - call on 2/28/01. I found this act very offensive, and disrespectful towards female officers. I have attempted to persue the internal chain of command in search of a resolution to this matter, with no results. The harassment I have endured has caused a hostile work environment that has become intolerable.

--------------------------------------------------------------

I swear or affirm that I have read this complaint and that it is true to the best of my knowledge, information and belief.

_Sonia Fernand_
(Signature of Complainant)

SWORN TO AND SUBSCRIBED BEFORE ME THIS 14th Day of March, 2001

NOTARY PUBLIC: _Jerome E. Mack_

SIGNATURE    NOTARY    PUBLIC: _Jerome E. Mack_ MY    COMMISSION
EXPIRES: _7/14/06_

# City of Revere
## Police Department

## Application For Indemnification Under Massachusetts General Laws Chapter 41, Section 100

To Whom It May Concern:

I hereby make application for indemnification under Massachusetts General Law Chapter 41, Section 100. I certify that the expenses for which payment is sought are the natural and proximate result of an accident occurring or of undergoing a hazard peculiar to my employment, while acting in the performance and in the scope of my duty without fault of my own.

I hereby release to the City of Revere's designated physician(s) all information in the City's possession regarding my medical condition. I hereby expressly waive any privilege which I may have relative to this information.

Signature _Jerri Rechner_    Date _4·19·2001_

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## Department Recommendation

Approved _____      Denied _____

Signature _____    Date _____





## The City of REVERE, MASSACHUSETTS
### Office of the Mayor
281 Broadway, Revere, MA 02151
(781) 286-8110    Fax (781) 286-8199

THOMAS G. AMBROSINO
Mayor

April 23, 2001

Ms. Terri Pechner
63 Lancaster Avenue
Revere, Massachusetts 02151

Re:    *Leave of Absence*

Dear Ms. Pechner:

I am writing in response to your oral request that I provide you with a paid leave of absence for the next three months.

After careful review of the situation, I deny your request for a paid leave of absence. However, consistent with the policy that has been applied to similarly situated police officers and City employees, I am willing to provide you with an *unpaid* leave of absence for a period of three months. Please let me know promptly if you will take advantage of this offer.

You should know that this letter is written solely in response to your oral request directly to me for a paid leave. I understand that since that request, you have filed a written request with the Chief of Police for Chapter 41, Section 111F benefits. The Police Department will handle that specific request in accordance with the City's practice for dealing with Section 111F claims. This letter is not intended in any way as a response to that claim.

Very truly yours,

Thomas G. Ambrosino
Mayor

Cc:    Chief Roy A. Colannino
       Paul Mulkern, Esq.



# *The City of* REVERE, MASSACHUSETTS

### POLICE DEPARTMENT
ROY J. COLANNINO • ACTING CHIEF OF POLICE
23 PLEASANT STREET, REVERE, MA 02151

(781) 284-1212   FAX (781) 286-8328

**THOMAS G. AMBROSINO**
**Mayor**

June 1, 2001

Officer Terri Pechner
63 Lancaster Avenue
Revere, Massachusetts

Re: Request to be carried as Injured in the Line of Duty

Dear Officer Pechner,

Please consider this letter as written acknowledgment of your request to be carried as injured in the line of duty while you are recuperating from what your physician, Dr. Keroack, states is "significant emotional stress. He further goes on to state that you are suffering from a form of "occupational burn out". I have also reviewed the note, which you provided from Dr. Susan Rudman, licensed psychologist. She states that you are having "psychological difficulties related to the work setting and dealings with others".

I have been advised by our Third Party Claims Administrator that in order to be eligible for compensation under M.G.L. Chapter 41, section 111f, one must first provide medical data which satisfies the criteria of M.G.L. Chapter 41, Section 100, I have been further advised that the data provided by you to this point does not satisfy that criteria in that your physician provided inconclusive and speculative data clearly stating that he could not validate the accusations involved. In addition, purely psychological disorders are normally not considered as work related. As such, the Revere Police Department will not be accepting your claim.

Given the above you will continue to be carried on the personal sick leave roster. Any medical bills incurred by you should be paid for through your group health benefit. During the next several weeks, I will be corresponding with your treating physician and psychologist for the purpose of obtaining an update as to your status relative to a foreseeable return to work possibility. Given the operational needs of the City of Revere Police Department, should a return to work not appear to be foreseeable, or in your best interest, or in the public safety interests of the City of Revere, I will make a determination as to whether or not it is appropriate to seek some form of retirement on your behalf.

I have attached a copy a copy of M.G.L. Chapter 41, Section 100 for your review. As you will note, should you not agree with the above determination, you have two (2) years to pursue a remedy by taking action in Superior Court.

As usual, should you have any questions, please feel free to contact me at your convenience.

Sincerely,

Roy Colannino

Chief of Police

Copy: James Dilday Esquire
      Robert Marra  (City Solicitor)
      Meditrol Inc.
      File

Enclosures: One

**1**

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                                         SUPERIOR COURT
                                                    CIVIL ACTION NO. 01-5837

TERRI L. PECHNER-JAMES        )
    Plaintiff              )
                              )
VS.                           )                     VERIFIED COMPLAINT
                              )
FREDERICK ROLAND, ACTING )
CHIEF REVERE POLICE           )
DEPARTMENT AND THOMAS )
AMBROSINO, MAYOR              )
CITY OF REVERE,               )
    Defendants            )

1.   Plaintiff, Terri L. Pechner-James is a resident of the City of Revere, Suffolk, County, Massachusetts.

2.   Defendants Frederick Roland and Thomas Ambrosino are respectively the acting Police Chief of Revere, Massachusetts and the Mayor of Revere, Massachusetts. They are sued in their official capacities.

3.   Plaintiff was sworn in as a Revere police office in September, 1995 and has held the title of patrol office since that time.

4.   Plaintiff brings this action pursuant to M.G.L. C. 41, Section 111F which provides for leave without loss of pay for certain incapacitated police officers and firefighters.

5.   Plaintiff has suffered undue treatment and harassment since August of 1997 when Lieutenant Foster put her on a walking route for no apparent reason.

6.   In September, 1997, Lieutenant Foster told the plaintiff he had pictures of her smoking marijuana and when plaintiff demanded a drug test, the request was denied.

7.   On or about December 11, 1998, while plaintiff was working the night shift, Lieutenant Santoro told her to go to the cell block because someone wanted to talk to her. When plaintiff arrived to talk to the prisoner who went to grade school with Plaintiff, then prisoner told Plaintiff that Lt. Santoro had asked

WHERFORE, Plaintiff respectfully requests this Honorable Court:

1. Enter a preliminary injunction and thereafter a permanent injunction against Defendants from denying her benefits under c. 41, Section 111F.

2. That a Short Order of Notice issue.

3. Order the Defendants to reimburse Plaintiff for lost wages since April, 2001.

4. Declare that Post-Traumatic Stress Disorder is an incapacitation covered by M.G.L. c. 41, Section 111F,

5. Enter such other further relief as this Court deems just.

SUFFOLK, ss.    SUPERIOR COURT DEPT.

(date) *Dec 21, 2001*

Notice ordered issued hereon returnable at the *H Session, Courtroom 16* on *January 10, 2001 at 2PM* to show cause why *a preliminary injunction* should not *be granted*

By the Court, ( *taher, J.*)

ATTEST:

Assistant Clerk

DATED: *12/20/01*

Terri Pechner-James
By her attorney,

*James S. Dilday*

James S. Dilday
Grayer & Dilday
27 School Street, Suite 400
Boston, MA 02108
(617) 227-3470
BBO# 124360

*Summons and order of notice issued* (handwritten, left margin)

I HEREBY ATTEST AND CERTIFY ON
MARCH 28, 2005, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY.

ASSISTANT CLERK

| Retirement Board: Please [your address] [phone] number here. | Revere Retirement Board 281 Broadway City Hall Revere, MA 02151 (781) 285-8173 |
|---|---|

To: | Revere | Retirement Board

This is an application to involuntarily retire the member named below. Attached is an explanation of the member's rights to a hearing and to appeal, and a brief statement of the member's retirement options. The member should contact his/her retirement board for further information or assistance.

A fair summary of the reasons for filing this application is below. The retirement board will review this application, together with information supplied by the employer and, if desired, by the member. If appropriate, the retirement board may then request a regional medical panel be convened. Based on the information gathered and the medical panel's opinion, the board will vote whether to approve or deny this application. The application will then be forwarded to the Public Employee Retirement Administration Commission for review and approval.

Pursuant to G.L. c. 32, §16(1) I respectfully request that | Terri Pechner-James | (name of member), whose Social Security Number is | 017 - 56 - 5959 |, be retired on the basis of (please check one):

[ ] Ordinary Disability       [✓] Accidental Disability       [ ] Superannuation

I offer the following fair summary of facts as the basis for my opinion that the member should be involuntarily retired:

| see fair summary of facts attached |

I am submitting this form and the following attachments to the member's retirement board:

- A description of the member's job that includes all of his/her duties and responsibilities. I have specified those duties that are considered to be essential.

- Copies of all applicable medical information and accident reports.

- I will send a copy of this application form, a brief statement of the member's retirement options, and a statement of the member's rights to a hearing and review to the member by certified mail. I will then file a notice of delivery, including the certified mail return receipt, with the member's retirement board.

| Terence K. Reardon | | Chief of Police |
|---|---|---|
| Name of Department Head (print) | | Title of Department Head |

Signature of Department Head

07/17/02
Date

COMMONWEALTH OF MASSACHUSETTS | PUBLIC EMPLOYEE RETIREMENT ADMINISTRATION COMMISSION
WEB | WWW.MASS.GOV/PERAC

Chapter 32: Section 16 of the General Laws of Massachusetts Involuntary Retirement; Right to a Hearing; Right of Review or Appeal.

## on 16 (1): Involuntary Retirement and Right to a Hearing

y head of a department who is of the opinion that any member employed therein should be retired for superannuation, ordinary disability or accidental disability, in accordance with the provisions of section five, six, or seven, as the case may be, may file with the board on a prescribed form a written application for such retirement. Such application shall include a fair summary of the facts upon which such opinion is premised.

The applicant shall forthwith deliver to such member by registered mail, with a return receipt requested, a true copy of such application together with a brief statement of the options available to such member on his retirement and a statement of his right, if any, to request a hearing with regard to such retirement and of the right, if any, of review available to him, as provided for in this section, in case he is aggrieved by any action taken or decision of the board rendered or by failure of the board to act upon his request or to render a decision within the time specified in this subdivision. Upon such delivery to such member the head of the department, or one acting in his behalf, shall file with the board under the penalties of perjury a written notice of such delivery, including the date thereof.

b) Any member in service classified in Group 1, Group 2 or Group 4 who has attained age fifty-five and completed fifteen or more years of creditable service, or any member in service so classified who has not attained age fifty-five but who has completed twenty or more years of creditable service, for whom an application for his retirement is filed by the head of his department as provided for in paragraph (a) of this subdivision, may, within fifteen days of the receipt of his copy of such application, file with the board a written request for a private or public hearing upon such application. If no such request is so filed, the facts set forth in such application shall be deemed to be admitted by such member; otherwise such hearing shall be held not less than ten nor more than thirty days after the filing of the request. The board, after giving due notice, shall conduct such [...]ng in such manner and at such time or times as the best interests of all parties concerned may require. [...]oard shall prepare and file with its clerk or secretary a certificate containing its findings and decision, [...]s of which shall be sent to the proper parties within fifteen days after completion of such hearing.

c) If the board finds that any member should be retired under the provisions of this subdivision, he shall receive the same retirement allowance as he would have received had the application been made by himself. the board finds that such member should not be retired, he shall continue in his office or position without loss of compensation, subject to the provisions of sections one to twenty-eight inclusive, as though no such application had been made.

There is no subdivision (2))

## Section 16 (3): Right of Review by District Court

) Any member classified in Group 1, Group 2 or Group 4 who has attained age fifty-five and completed fifteen r more years of creditable service, or any member so classified who has not attained age fifty-five but who as completed twenty or more years of creditable service, or any such member who is a veteran and has completed ten or more years of creditable service, and who is aggrieved by any action taken or decision of a board or the public employee retirement administration commission rendered with reference to his involuntary retirement under the provisions of subdivision (1) or to his removal or discharge as set forth in subdivision ), or any member who is aggrieved by any action taken or decision of a board or the public employee retirement administration commission rendered with reference to his dereliction of duty as set forth in section teen, may, within thirty days after the certification of the decision of the board, bring a petition in the

## Section 16 (3): Right of Review by District Court (Continued)

district court within the territorial jurisdiction in which he resides praying that such action and decision be reviewed by the court.

...such notice as the court deems necessary, it shall review such action and decision, hear any and all evidence and determine whether such action was justified. If the court finds that such action was justified the decision of the board or the public employee retirement administration commission shall be affirmed; otherwise it shall be reversed and of no effect. If the court finds that such member was unjustifiably retired, removed or discharged from his office or position he shall be reinstated thereto without loss of compensation. The decision of the court shall be final.

(b) Any member whose office or position is subject to chapter thirty-one or to the rules and regulations made under authority thereof, who is aggrieved by any action taken or decision of a board or the public employee retirement administration commission rendered as described in paragraph (a) of this subdivision shall, for the purposes of sections one to twenty-eight, inclusive, have and retain such of the rights provided by sections forty-two A, forty-two B, forty-three and forty-five of chapter thirty-one as applied to his particular office or position, and the court shall, in addition to the matters it is required to review under such sections of chapter thirty-one, affirm or disaffirm the decision of the board or the public employee retirement administration commission as provided for in paragraph (a) of this subdivision.

## 4): Right of Appeal to Contributory Retirement Appeal Board

here shall be an unpaid contributory retirement appeal board which shall consist of three members as follows: an assistant attorney general who shall be designated in writing from time to time by the attorney general who shall act as chairman, the public employee retirement administration commission or an assistant who shall be designated in writing, from time to time, by the said commission, and a member appointed by the governor for a term of five years. In the event the matter before the contributory retirement appeal board deals with any matter related to disability retirement or interim benefits as awarded by the division of administrative law ... the commissioner of public health or his designee shall substitute for the public employee retirement ...stration commission.

...e members of the contributory retirement appeal board shall be compensated for any expenses incurred in ... performance of their official duties. On matters other than those subject to review by the district court as ...nt for the minimum period of creditable service been fulfilled, any person when aggrieved by any action ...en or decision of the retirement board or the public employee retirement administration commission ...dered, or by the failure of a retirement board or the public employee retirement administration commission ...ct, may appeal to the contributory retirement appeal board by filing therewith a claim in writing within ...en days of notification of such action or decision of the retirement board or the commission, or may so ...al within fifteen days after the expiration of the time specified in sections one to twenty-eight, inclusive, ...in which a board or the commission must act upon a written request thereto, or within fifteen days after ...expiration of one month following the date of filing a written request with the board or the commission if ...ime for action thereon is specified, in case the board or the commission failed to act thereon within the ...specified or within one month, as the case may be. The contributory retirement appeal board, after giving ...notice, shall, not less than ten nor more than sixty days after filing of any such claim of appeal, assign such ...al to the division of administrative law appeals for a hearing. The division of administrative law appeals ...maintain the official records of the contributory retirement appeal board. After the conclusion of such ...ng, the division of Administrative Law Appeals shall submit to the parties a written decision which shall ...al and binding upon the board involved and upon all other parties, and shall be complied with by such

## Section 16 (4): Right of Appeal to Contributory Retirement Appeal Board (Continued)

board and by such parties, unless within fifteen days after such decision, (1) either party objects to such decision, in writing, to the contributory retirement appeal board, or (2) the contributory retirement appeal board orders, in writing, that said board shall review such decision and take such further action as is appropriate and consistent with the appeal provided by this section. The contributory retirement appeal board shall then pass upon the appeal within six months after the conclusion of such hearing, and its decision shall be final and binding upon the board involved and upon all other parties, and shall be complied with by such board and by such parties. Any person, upon making an appeal involving a disability retirement allowance, shall be permitted to retire for superannuation retirement, if otherwise eligible, pending the decision of the contributory retirement appeal board, but in no event shall such action prejudice the person from receiving any further benefits which the contributory retirement appeal board may grant in its decision nor shall the person upon a finding in favor of the employer be required to reimburse the employer for payments made prior to the decision of the contributory retirement appeal board.

On appeals involving disability or where medical reports are part of the proceedings, the contributory retirement appeal board may request further information from the members of the appropriate regional medical panel, or may employ a registered physician to advise them in determination of an appeal.

The contributory retirement appeal board shall have the power to subpoena witnesses, administer oaths and examine such parts of the books and records of the parties to a proceeding as relate to questions in dispute. Fees for such witnesses shall be the same as for witnesses before the courts in civil actions, and shall be paid from the Appropriation Fund of the division of administrative law appeals.

The contributory retirement appeal board, acting through the division of administrative law appeals, shall arrange for the publication of its decisions and the cost of such publication shall be paid from the Appropriation Fund of the division of administrative law appeals.

The contributory retirement appeal board shall establish a fee structure for appeals brought under this section, which shall be subject to the approval of the commissioner of administration.

The division of administrative law appeals shall submit to the contributory retirement appeal board on an annual basis a report on the status of all cases that have been assigned to the division of administrative law appeals for a hearing.

## (5): Provisions Not Applicable to Certain Members

The provisions of this section relative to the right of any member to a hearing or to the right of review by the district court shall not apply in the case of the removal or discharge of any state official or of any official of any political subdivision of the commonwealth for which provision is otherwise made in any general or special law, anything in this section to the contrary notwithstanding. The provisions of this section relative to the right of any member to a hearing or to the right of review by the district court shall not apply to any teacher or principal or superintendent of schools employed at discretion or any superintendent employed under a contract, for the duration of his contract, or any principal or supervisor, who has been dismissed, demoted, or removed from a position by a vote of a school committee under the provisions of section forty-two, forty-two A or section sixty-three of chapter seventy-one. The provisions of this section shall not apply to any member classified in Group 3.

## Information About Retirement Options

Your retirement board will provide you with a Choice of Retirement Option Form, and will assist you in making an informed selection about selecting the option that is best for you, but a brief description of the options available to you is included here. Any public employee who retires on the basis of ordinary or accidental disability or superannuation may elect to have his or her retirement allowance paid according to one of the three following Options. If you fail to select an Option, the allowance will be paid under Option B.

## Option A

Election of Option A means that you will receive the full retirement allowance in monthly payments as long as you live. Allowance payments will cease upon your death and no benefits will be provided to your survivors.

## Option B

Option B provides you with a lifetime allowance which is 3% to 5% less per month than Option A. The annuity portion of your allowance will be reduced to allow a benefit for your beneficiary. If your death occurs before the total payments of the annuity portion of your allowance equal your total accumulated deductions at your retirement, the unexpended balance of your total accumulated deductions will be paid to your surviving beneficiary of record, (or, if there is no beneficiary living, the person or persons who appear to be entitled in the judgement of your retirement board).

## Option C

Selecting Option C means that the allowance payments that you receive during your lifetime will be approximately 20% less than those you would have received under Option A. Upon your death, your designated beneficiary will be paid a monthly allowance for the remainder of his or her lifetime. That allowance will be equal to two-thirds of the allowance which was being paid to you at the time of your death. Only your spouse, former spouse who has not remarried, child, father, mother, sister or brother may be your beneficiary.

## Spousal Acknowledgment

A retirement option election of any married member is not valid unless the signature of the member's spouse indicating the member's spouse's knowledge and understanding of the retirement option selected accompanies it.



# POLICE DEPARTMENT

**Terence K. Reardon • CHIEF OF POLICE**

23 PLEASANT STREET, REVERE, MA 02151

(781) 284-1212  FAX (781) 286-8328

07/17/02

> Certified Mail Return Receipt Requested
> Receipt No. 7001 1140 0003 0342 4185

Officer Terri Pechner-James
63 Lancaster Avenue
Revere, MA 02151

RE:  Involuntary Application for Accidental Disability Retirement

Dear Officer Pechner-James:

 have prepared, and am hereby providing you with your copy of the
Application for Involuntary Accidental Disability Retirement, in accordance
with the provisions of M.G.L. Chapter 32, Section 16.

I am also enclosing a copy of M.G.L. Chapter 32, Section 16 for your records.
I have been advised that the Revere Retirement Board will be sending, directly
to you, a letter with your particular financial data as well as options forms, etc..

In the interim, should you have any questions, comments, or concerns, please
do not hesitate to contact the Revere Retirement Board.

Sincerely,

Terence K. Reardon
Chief of Police



3.

**POLICE DEPARTMENT**

Terence K. Reardon • CHIEF OF POLICE

23 PLEASANT STREET, REVERE, MA 02151

(781) 284-1212   FAX (781) 286-8328

ROSINO

07/17/02

Carolyn M. Russo
Revere Retirement Board
281 Broadway
City Hall
Revere, MA 02151

    RE:  Notice of Delivery – Terri Pechner-James

Dear Ms. Russo:

Please be advised that I have sent, as of this date, via
Certified Mail, Return Receipt Requested, a copy of the
Attached, Involuntary Application for Accidental Disability Retirement
to the above referenced individual.

It is my understanding that you will be mailing
Directly to Officer Pechner-James, the financial information which she
will require in order to make informed decisions with regard to her various options.  I
would ask that you also send to her, the various other options forms including the
beneficiary form etc.....

In addition, the individual was provided with her rights in
accordance with the applicable provisions of Massachusetts
General Law, Chapter 32.

Should you have any questions, comments, or concerns, please feel
free to contact me at your convenience.

Sincerely,

Terence K. Reardon
Chief of Police

Addendum Sheet
To the
Involuntary Retirement Application

In the Matter of:

Terri Pechner-James
SS# 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

See Fair Summary of Facts Hereunder

Fair Summary of Facts
Terri Pechner-James
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

Terri Pechner-James is employed by the Revere Police Department in the capacity of Police Officer.   On April 19th, 2001, Officer Pechner-James filed a Public Safety Injury Report along with applications for indemnification of wages for any lost time, as provided by M.G.L. Chapter 41, Section 111F, and for indemnification of medical bills as provided for by M.G.L. Chapter 41, Section 100. (Copies attached.) In her injury report, Officer Pechner-James indicated that her disability first began on 3/14/2001, and resulted from a "cumulative condition". In a letter accompanying her report, Officer Pechner-James attached a letter from Dr. Eric Keroack, indicating that Officer Pechner-James was suffering from "significant emotional stress".  Further in his letter, Dr. Keroack explains that this condition resulted from a combination of environmental stressors that exist in the internal arena of her employment. He further stated that she had revealed to him that she had been subjected to significant episodic sexual harassment and persistent emotional pressure from fellow male officers. (Copy of Letter attached.)  Officer Pechner-James' report also made reference to two additional doctors, however, no additional medical information was included with her initial report.

Given the above circumstances, then Chief Roy Colannino consulted with the City's Third Party Claims Administrator, Meditrol, Inc., for the purpose of obtaining Meditrol's guidance as to whether or not Officer Pechner-James' claim should be treated as duty related, or, in the alternative, as a personal illness. Meditrol, Inc., recommended, and Chief Colannino followed a recommendation of, contacting Officer Pechner in writing, and indicating that her claim was under review and that, given the fact that additional doctors were involved, to seek additional information from any other doctor who might have a bearing on Officer Pechner's claim. (Copy of letter attached dated 4/25/01.)

On or about April 27, 2001, Officer Pechner provided a letter to the Revere Police Department from Dr. Susan Rudman, Licensed Psychologist, indicating that Officer Pechner first came to see her on March 21, 2001, concerning work related stressors. Officer Pechner had reported physical as well as psychological difficulties related to the work setting and dealings with colleagues. (See copy attached.)

After careful review and consideration of the medical data available, Meditrol, Inc., recommended a denial of the claim for recognition as injured in the line of duty.  Said denial was based on the criteria as set forth in M.G.L. Chapter 41, Section 100, and took into consideration interpretive case law as well as guidelines provided through the Police Chief's Guide to Handling Injured on Duty Claims. (See copy of pertinent section of Atty. Collins Treatise attached, as well as letter of denial to Officer Pechner dated June 1, 2001.)

On or about June 15th, 2001, The Revere Police Department received additional correspondence from Dr. Eric J. Keroack.. In his letter, Dr. Keroack, further stated that "I

am sure that you would agree that this brain disability could potentially place her "at-risk on the streets", and such a risk is too high to take." While Dr. Keroack's letter was optimistic in terms of a prognosis, it nonetheless did not provide any insight as to when a .rn to work might be possible. (Copy of Letter Attached.)

On July 11th, 2001, based on a recommendation from Meditrol, Inc., the Revere Police Department sent a letter of acknowledgment to Dr. Keroack pertaining to his June 15th letter, along with a request for additional information pertaining to Officer Pechner-James' status at that point in time.

Dr. Keroack responded on July 17th, 2001, by making his entries and comments directly onto the July 11th letter. (See copy attached.) In his response, Dr. Keroack questioned the meaning of "foreseeable future" as it pertained to a possible return to work scenario.

On August 13th, 2001, based on a recommendation from Meditrol, Inc., Capt. Frederick Roland of the Revere Police Department sent a clarifying letter to Dr. Kerouac, attempting to address his comments pertaining to a possible return to work in the "foreseeable future". Dr. Keroack responded on or about the 17th of August, 2001. A copy of his response is attached.

During October of 2001, based on a recommendation by Meditrol, Inc., Capt. Roland wrote to Dr. Keroack to obtain an update as to Officer Pechner-James status at that point in time. Dr. Keroack responded on October 29th, 2001.

In the second paragraph of his letter, Dr. Keroack states:

> *"On a less encouraging note, Officer Pechner-James
> continues to experience debilitating symptoms associated
> with any type of encounter that requires her to interact
> with the Revere Police Department (such as official
> meetings, filling out forms in the precinct, contact with
> the persons that initiated her PTSD reactions, and even
> chance encounters with persons that remind her of these
> events.)"*

Further in his letter, Dr. Kerouac goes on to state that:

> *"Officer Pechner-James should not return to work at the
> Revere Police Department at any foreseeable time in the
> future. Such a situation will only serve to destroy her
> chances for a complete recovery from PTSD and her
> return to a productive professional life."*

During April of 2002, in an effort to determine Officer Pechner-James status at that point in time, I wrote to Dr. Keroack, and asked that he provide me with an update as to her condition. Dr. Keroack responded on June 3rd, 2002. A copy of his letter is attached.

In his response to me, Dr. Keroack stated that:

> "At present, Officer Pechner-James seems to be doing
> well on medication for her PTSD.  She is taking Paxil at
> 20mg. per day, and she has no significant problems with
> this treatment.  Her "panic attacks" are well controlled,
> and her overall level of functioning is markedly improved.
> She is essentially on "maintenance management" of her
> PTSD and I do not expect that her present life
> circumstances should exacerbate her steady recovery.
> This is, however, a lifestyle that does not include
> performing the duties of a Revere Police Officer... a
> challenging and demanding job."

Further in his letter, Dr. Keroack states the following:

> "One will not be able to guarantee that Officer Pechner-
> James is "immune" to a possible relapse of PTSD (as only
> the return to the exact environment can predict the
> potential for relapse of PTSD, i.e., Vietnam veterans can
> acutely relapse during trips to Vietnam................"

Given the above, coupled with the fact that Officer Pechner-James has been unable to
report for duty, as needed and as required in the public safety interests and operational
needs of the City of Revere, I hereby respectfully request that consideration be given to
providing this individual with a retirement which would then allow me to fill her slot
with an individual capable of reporting for duty on a regularly scheduled basis.  As the
Chief of Police, I have concerns, given Dr. Keroack's assessment that, under certain
circumstances, Officer Pechner could "snap" should she have a relapse while on duty.
Should that occur, she could imperil herself, her fellow officers and/or the public at large.

While I have been advised that to date, no appellate court decision has recognized a
purely psychological disability as coming under M.G.L. Chapter 41, Section 111f, I have
also been advised that decisions relative to retirements are not always held to the same
standard.

As such, again, I respectfully request that consideration be given this individual for an
appropriate form of retirement and that a three physician medical panel be scheduled on
her behalf for the purpose of opining as to whether or not, in their best medical opinion,
this individual is disabled; whether or not her disability is likely to be permanent, if in
fact she is disabled; and, if so, whether or not her disability, if she is disabled, is deemed
to be duty related or, in the alternative, the result of a personal illness.

Thanking you in advance for your consideration with regard to this matter, I remain

Respectfully,

Terence K. Reardon
Chief of Police

Addendum Sheet
To the
Involuntary Retirement Application

In the Matter of:

Terri Pechner-James
SS# 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

Medical Data filed hereunder

# Eric J. Keroack, M.D., FACOG

Gynecology and Counseling

(781) 289-2683
Fax: (781) 284-1167
Office Hours: M,T,Th,F  9-5

103 Broadway
Revere, Massachusetts 02151

June 3, 2002

Police Chief Terence K. Reardon
City of Revere Police Department
23 Pleasant St.
Revere, Massachusetts 02151

RE: Officer Terri Pechner-James

Dear Chief Reardon,

I am sorry that this letter is late in coming, but my schedule has been quite hectic these days. I hope that the following information will still be useful to your decision making process.

I last saw Officer Pechner-James on 5/16/02 and her next appointment is scheduled for 6/10/02. At present, Officer Pechner-James seems to be doing well on medication for her PTSD. She is taking Paxil at 20mg. Per day, and she has no significant problems with this treatment. Her "panic attacks" are well controlled, and her overall level of functioning is markedly improved. She is essentially on "maintenance management" of her PTSD and I do not expect that her present life circumstances should exacerbate her steady recovery. This is, however, a lifestyle that does not include performing the duties of a Revere Police Officer...a challenging and demanding job.

I know that you have shared my concerns for her ability to perform in The Revere Police Department and that you do not want to place any of your officers in harm's way. With that in mind, I have addressed the option of "returning to work" with her and we have explored the potential risks and benefits of such a plan. She informs me that there have been leadership changes since her disability began, and that these have been a positive force within the department. She seems to have especially high regard for your abilities and had supported your promotion to Police Chief. Those are clearly good signs with regards to her potential relapse into PTSD upon a return to work. Although there is no way to absolutely predict her response to reentry into the precinct, these changes seem to be important to her sense of trust and safety within the Police Department.

In addition, Officer Pechner-James expresses a real desire to return to police work. She feels that she is a police officer at heart and wants to regain this position in her life. She states that she has worked hard to become a good police officer and that she is not prepared to end her career at this time. She believes that, if the previous conditions that potentiated her illness have been addressed and rectified, then she can resume her duties as a Revere Police Officer. I can support this position.

Consequently, I have begun to adjust our treatment strategy towards "management of returning to work" and preparing to confront the potential stresses of such a move. I believe that Officer Pechner-James will be able to return to work in 2-3 months if all goes well with this phase of her treatment. There is only one condition that

I will ask you to keep in mind. One will not be able to guarantee that Officer Pechner-James is "immune" to a possible relapse of PTSD (as only the return to the exact environment can predict the potential for relapse of PTSD, i.e. Vietnam veterans can acutely relapse during trips to Vietnam—not a great comparison, but it makes the principle clear). Consequently, I believe that during her first 90 days back on duty, she should have evaluations of her PTSD performed on at least an every 30 days basis. In that way, if she *is* beginning a subtle relapse, it can be discovered before any lives are at risk. I think this may be a bit "conservative" but in police work there isn't always a chance to "have a second opportunity" to review problems.

In essence, I believe that Terri Pechner-James will be able to successfully return to duty late August/mid September providing that we all stay alert to her initial entry back into police work. I do not foresee Officer Pechner-James failing to traverse the road back to her position, I merely wish to take all the necessary precautions to insure her safety and the safety of all of those involved with her. If you have any questions, please feel free to contact me.

Sincerely,

Eric J. Keroack, M.D.

Gynecology and Counseling

(781) 289-2683
Fax (781) 284-1167
Office Hours: M,T,Th,F 9-5

103 Broadway
Revere, Massachusetts 02151

October 29, 2001

Dear Chief Colannino;

I am writing to you in order to bring you up-to-date on the condition of Officer Terri Pechner-James. As you are well aware, Officer Pechner-James has been attempting to recover from Post-Traumatic Stress Disorder (PTSD) since being diagnosed in March 2001. Her present condition is a combination of good news and bad news. On the positive side, in matters that do not involve interaction with the Revere Police Department, Officer Pechner-James has shown substantial improvement. Her overall anxiety level has diminished, her ability to function has partially normalized, and her general prognosis is encouraging. I am sure that her recent heroic efforts to rescue injured motorists exemplify the level of improvement that her "ordinary" life has achieved. Certainly, a person who had the level of brain trauma she displayed 3-4 months ago would not have been able to react so calmly under these demanding conditions. I am pleased that she has progressed in this area of her life.

On a less encouraging note, Officer Pechner-James continues to experience debilitating symptoms associated with any type of encounter that requires her to interact with the Revere Police Department (such as official meetings, filling out forms in the precinct, contact with the persons that initiated her PTSD reactions, and even chance encounters with persons that remind her of these events). These types of circumstances cause her to have severe physical reactions as well as mental ones—typical symptoms seen in the category of "PTSD-signs" known as "re-experiencing" reactions. The intensity of these reactions has not significantly decreased for Officer Pechner-James over the previous 3-4 months and I am concerned that there may not be any further progress in this arena for some time to come.

To this end, I began a discussion with Officer Pechner-James and her spouse concerning potential options for enhancing her recovery from PTSD. After the tragic events of 9/11/2001 at The World Trade Center, much attention has been focused on the debilitating effects of PTSD. In connection with this, about 4 weeks ago, I began to suggest to Officer Pechner-James that in order to recover from the effects of PTSD, in her case, she might have to seriously consider dropping her harassment case against The Revere Police Department. And while her initial reaction was not very flexible, I have spent hours explaining that continued exposure to the "place of her trauma" could prolong her recovery from PTSD and perhaps even prohibit it. Her reluctance to "drop" the case was based on her firm conviction that she has been wronged and that no appropriate punitive measures have been meted out to the culprits of her trauma. And although I will not argue with her position from a moral standpoint, on a medical basis, I must advise her of the course of action that I believe is in the best interest of her health. And I believe, even though her claims are potentially justified, this process of vindication is undermining her physical and mental well-being. In short, the "stand-off" between The Revere Police Department and Officer Pechner-James is exacerbating this specific disabling aspect of her PTSD.

Consequently, I have suggested that, regardless of the outcome of this dispute, Officer Pechner-James should not return to work at The Revere Police Department at any foreseeable time in the future. Such a situation will only serve to destroy her chances for a complete recovery from PTSD and her return to a productive professional life. In light of my opinion. I advised Officer Pechner-James to apply for 111F Disability for PTSD (a well established cause for disability in most major Massachusetts Police Forces). In addition to applying for 111F Disability, I have also strongly requested her to withdraw her grievances against the RPD and move on with her life. It is my belief that if 111F Disability were an option for Officer Pechner-James, then she would in fact cease her harassment case. Such a withdrawal would be done in order to facilitate the recovery of her health and would not represent a belief that the events had not occurred as she has claimed. She continues to confidently assert that persons within the Department did indeed harass her on many occasions, but she concedes that her health should take precedence over the justice of these events. I believe that this willingness to place health over "being proven right" is a wise decision and I support it fully. Please contact me to let me know how we can work together to achieve this end. I believe that an outcome that accomplishes the two objectives of preserving the integrity of the Revere Police Department and encouraging the recovery of Officer Pechner-James, a fine public servant, will benefit all of the parties involved in this unfortunate sequence of events. I look forward to your perspective on this opinion. I realize that I am not a lawyer or a law enforcement expert and that my position might not even make sense in these realms. However, as a physician, who is responsible for the care of this courageous police officer, I believe that "good old common sense" can prevail. When a problem has two possible solutions, and one of the two solutions will cause harm to both participants while the alternative will spare both persons involved from harm, wisdom demands choosing the path of least resistance. I would very much like to see these events fade away into the past and I am willing to expedite this in any way that I can. I am certain that you must feel similarly to this as well.

Sincerely,

Eric J. Kerosck, M.D., FACOG

ROY J. COLANNINO • ACTING CHIEF OF POLICE
23 PLEASANT STREET, REVERE, MA 02151

THOMAS G. AMBROSINO
Mayor

(781) 284-1212  FAX (781) 286-8328

August 13, 2001

Dr. Eric J. Keroack, M.D.
103 Broadway
Revere, MA 02151

RE:  Your Patient, Revere Police Officer, Terri Pechner

Dear Dr. Keroack:

Thank you for your letter dated July 11th, 2001, wherein you addressed my concerns in
connection with Officer Pechner's current status.

In my letter to you, I had asked if, in your opinion, Officer Pechner would, in fact, be
able to return and perform the essential tasks of a Police Officer in the forseeable future.
Apparently, my letter was confusing in that I did not clarify or define "forseeable".  In
order to clarify, I will re-phrase the question as follows:

If, in your best medical opinion, Officer Pechner, will, in fact, be able to return and
perform all of the essential tasks of a police officer, including the ability to interact with
her peers and superior officers, without experiencing "panic attacks" which could result
in her posing a risk to herself, her fellow officers, or the public at large, would you expect
her return within the next six months?

Once again, thank you for taking the time to provide me with this information.

Sincerely,

Frederick Roland
Captain in Charge

CC: Officer Pechner
     Atty. James Dilday
     File

*I expect this Time frame IS quite Reasonable and possible, but I cannot guarantee it. None the less this would be a distinct possibility EJK*

POLICE DEPARTMENT
ROY J. COLANNINO • ACTING CHIEF OF POLICE
23 PLEASANT STREET, REVERE, MA 02151

G. AMBROSINO
Mayor

(781) 284-1212   FAX (781) 286-8328

July 11, 2001

Dr. Eric J. Keroack, M.D., FACOG
103 Broadway
Revere, Massachusetts 02151

COPY

RE: Your Patient, Revere Police Officer, Terri Pechner

Dear Dr. Keroack:

On behalf of the Revere Police Department, please accept our sincerest thanks for taking the time to articulate, in laymen's terms, the characteristics and nature of "occupational burn out" and "emotional stress". Your letter was informative, and provides us with a better sense as to Officer Pechner's current status.

In your letter of explanation dated June 15th, 2001, you state that:

> "Presently, Officer Pechner is responding to the medications used to aid her Serotonin, but she persists in experiencing "panic attacks" whenever she interacts with the police precinct. This indicates that the re-writing of her brain is still incomplete. Consequently, I cannot in good faith allow her to return to work in this environment (especially in light of the life threatening nature of police work). I am sure that you would agree that this brain disability could potentially place her "at-risk on the streets", and such a risk is too high to take. After all this is not a desk job, it is a job that requires people to endanger their lives in order to protect us. Police Officers must be in peak condition in order to respond correctly to various situations that can unpredictably arise in the course of their daily duties."

Given the above, I am interested in learning of the following:

1.   In your best medical opinion, what is Officer Pechner's prognosis?

*prognosis is an expected full recovery from Her PTSD*

S/

3.    When was she last seen by you? *7/17/01*    STRESSES *(See my letter)*

4.    When is her next scheduled appointment? *-7/31/01*

5.    In your best medical opinion, will Officer Pechner ever be able to return and perform all of the essential tasks of a Police Officer, including the ability to interact with her peers and superior officers, without experiencing "panic attacks" which could result in her posing a risk to herself, her fellow officers, or the public at large? See essential task list attached to assist in your evaluation?    *To be offi'ker* *YES / She will be Able To Do this At Some Time*

6.    If, in your best medical opinion, Officer Pechner will, in fact, be able to return and perform all of the essential tasks of a police officer, including the ability to interact with her peers and superior officers, without experiencing "panic attacks" which could result in her posing a risk to herself, her fellow officers, or the public at large, is this return to duty in the foreseeable future?    *5 yrs it while* *What Does this mea*

7.    On the other hand, if, in your best medical opinion, Officer Pechner will not be able to return and perform the essential tasks of a police officer, including the ability to interact with her peers and superior officers, without experiencing "panic attacks" which could result in her posing a risk to herself, her fellow officers, or the public at large, would you consider her condition likely to be permanent?    *NO,*    COPY

Given the public safety interests of the City of Revere, coupled with the operational needs of the Revere Police Department, manning levels are of utmost concern to us. I would ask that you respond to the above no later than Friday, July 20th, 2001, in anticipation of reviewing and scheduling our manpower requirements for the Fall/Winter 2001 time frame.

Please feel free to merely place your response beside the question appearing hereinabove. Upon completion, please sign in the area afforded you below.

A signed Medical Release Authorization is enclosed herewith for your records.

*The Foreseeable Future contains an Environment within the police Department That does not include the stress or abuse, harassment, or interpersonal conflict of a ___ nature then Officer Pechner will be able be exposed to ___*

Conditions and thus would be able to function fully as a Police Officer. Just when such conditions will exist is impossible to accurately predict, perhaps you could assist me in such an assessment.

COPY

Gynecology and Counseling.

(781) 289-2683                                                          103 Broadway
Fax (781) 284-1167                                            Revere, Massachusetts 02151
Office Hours: M,T,Th,F  9-5

June 15, 2001

Dear Police Chief Colannino,

    I was recently asked to review your letter to Officer Terri Pechner dated June 1, 2001. It appears that my use of the laymen's terms of "occupational burn out" and "emotional stress" have perhaps caused a misunderstanding concerning Officer Pechner's medical condition. I had hoped that these relatively common terms might make it easier to grasp the extent of Officer Pechner's neurochemical disorder, but they seem to have accomplished the opposite result. We are all aware that lay-terminology with its vague, yet commonly understood meanings, is often utilized in medical practice in order to convey the nature of complex physiologic concepts to non-medical individuals (i.e. "stomach flu" is used to describe a wide array of gastrointestinal infections and conditions, and "lock-jaw" is used to explain the intense titanic muscle contractions of the mandibular muscles due to the tetanus bacteria). However, these terms can occasionally under-emphasize the importance of the illness being discussed. As the Chief of Police, responsible for the safety and security of your subordinate officers, your position warrants a more thorough explanation of Officer Pechner's disability. Without the following crucial information, it would be unreasonable to expect you to make the important decisions concerning the officer under your command. I apologize for failing to realize the exact nature of this inquiry earlier, and I hope that the following explanation will clarify any questions or concerns that you may have about Officer Pechner.

    The majority of the terminology used to describe brain disorders (mental illness, "psychological" diseases) was developed well before today's advanced understanding of brain chemistry and physiology. Consequently, terms like "panic attacks" and "post-traumatic stress disorder" do not accurately explain the complex nature of the Central Nervous System (CNS) Disorders that they represent. Nonetheless, these terms are still in use because they are easier to convey than the newer medical terms might be (i.e. MedioCorticoLimbic Imbalance of the Serotonin/Norepinephrine Axis resulting in a Synaptic Re-alignment and Hyper-responsive Neuronal Pathways controlling the Sympathetic Responses of the Human Body—*a real mouthful*). But in order to understand the causes and treatments of these conditions, a general understanding of the nature of brain function is required. I will try not to bore you with too many details.

    When Norepinephrine is released in the CNS, it results in a host of physical responses that dramatically affect a person's existence (increased heart rate, rapid/shallow breathing, dry mouth, constriction of the pupils to increase proximate visual acuity, increased sweating especially of the palms, hyperactive reflex time, muscle tightening, increased metabolic rate, and heightened awareness)— the "fight or flight" response. The release of Norepinephrine in the brain is brought about by external stimuli that are carried to the brain by the peripheral nervous senses (pain, heat, sight, noise, smell, taste). The nature of the stimulation will determine the amount and the time-frame of Norepinephrine release. These external stimuli are typically threatening, frightening,

abusive or threatening family, severe combat, rape, extended torture, sexual assault, torture or witnessing an atrocity (by either hearing the screams or seeing the event) will cause a sudden high-volume release of Norepinephrine and this can result in what is commonly known as "shock". Lesser traumas such as verbal threats, emotional abuse, "close-calls" with danger, or situational conflicts will release smaller amounts of this neurotransmitter.

The brain's neurochemical responses to this release of Norepinephrine are somewhat complex. They include the release of a counteracting neurotransmitter called Serotonin (which is designed to dilute the synaptic responses to Norepinephrine). Serotonin causes the physical reactions of slower breathing, slower heart rates, drowsiness, relaxation, and decreases alertness. Thus, these two chemicals are a good balance for the reactions to "stressful" stimuli. When they are kept in balance, a person will be seen as having "normal" responses to pressures.

The other interesting event that occurs when Norepinephrine is released is that the synaptic "wiring" system of the brain is re-aligned in order to increase the speed and efficiency of the impulses generated by Norepinephrine (i.e. creating faster reflexive responses to persistent, repetitive danger). Consequently, a brain that is frequently over-stimulated to release Norepinephrine will actually redesign itself to "adapt" to this threatening environment and change its physiologic properties. Such a restructuring of the brain is much like other body organs that attempt to absorb injuries (i.e. ligament tears, ruptured discs, concussions).

Furthermore, any environment that involves consistent exposure to abusive or threatening stimuli will result in a depletion of the brain's ability to manufacture adequate amounts of the "counter-transmitter" Serotonin. This deficiency of Serotonin will make it more difficult for the brain to alter the Norepinephrine response to stimuli and thus smaller stimuli will have longer and larger brain effects (due to the unopposed actions of Norepinephrine). This combination of neurological events (Serotonin deficiency and Norepinephrine induced synaptic hyper-responsiveness) is the disorder commonly referred to as Post-traumatic Stress Disorder.

The existence of this neurochemical abnormality and this synaptic "re-wiring" will also make the patient susceptible to acute over-reactions brought about by larger stressors and their subsequent release of larger amounts of unopposed Norepinephrine. These over-reactions begin in the Central Nervous System but are manifested in a physical response that is commonly called a "panic attack" due to its similarity to the previously described "fight or flight" response.

With these basics in mind, one can more easily understand the disorder that Officer Pechner is suffering from. According to her descriptions (corroborated by her husband), she has been in a persistently hostile, abusive and harassing interpersonal environment while within the confines of the precinct and while inside of police patrol cars. She states that the performance of her "public" duties are not the inciting stressors and that her "official, administrative, and interdepartmental" duties are the stimuli that have caused her to feel personally threatened. And while I was not a direct witness to these events (and thus I cannot validate them), I have no reason to suspect that they did not occur as she has perceived. I feel confident that this conclusion is reasonable because Post-traumatic Stress Disorder cannot occur *de novo* (out of thin air). The fact that her identical twin sister shows no signs of this brain disorder confirms this suspicion.

traditionally, Officer Pechner has no previous history that would suggest a traumatic event as the proximate cause of this disorder, and she did not have a previously diagnosed mental health disorder. It appears that this chemical imbalance was most likely the result of her experiences within the precinct while performing her duties as a Police Officer. Since PTSD must be the result of the aftermath of a traumatic event (as described by the person involved) and it cannot appear on its own, the most likely suspect in this instance is the harassment in Officer Pechner's workplace environment. However, I believe that as her commanding officer, you are probably in a better position to judge the validity of her observations. Nonetheless, her perception of this environment has indeed resulted in the symptoms of the previously described brain disorder.

Since I am certain that you are concerned for her well-being, I will explain the nature of the healing process for this brain injury. There are several crucial elements:

1. The threatening or abusive stimuli must be reduced or better yet eliminated so that the brain can be rewired to its original physiologic state.

2. Her Serotonin must be repleted. (Here is where the use of medications has revolutionized the recovery process. Instead of being institutionalized, patients today can use medicines to increase the efficiency of their existing Serotonin molecules, while their brain "factories" regenerate the Serotonin supply).

These steps require time, and each individual case is different depending upon the length of Norepinephrine exposure and the depth of Serotonin deficiency.

Presently, Officer Pechner is responding to the medications used to aid her Serotonin, but she persists in experiencing "panic attacks" whenever she interacts with the police precinct. This indicates that the re-wiring of her brain is still incomplete. Consequently, I cannot in good faith allow her to return to work in this environment (especially in light of the life-threatening nature of police work). I am sure that you would agree that this brain disability could potentially place her "at-risk on the streets", and such a risk is too high to take. After all this is not a desk job, it is a job that requires people to endanger their lives in order to protect us. Police Officers must be in peak condition in order to respond correctly to various situations that can unpredictably arise in the course of their daily duties. I am sure that as her commanding officer, you would not wish to have any unnecessary harm come to one of your subordinate officers.

I will try to keep you up to date on the extent of her progress in this matter, and when her present disability has resolved, I am sure she will be capable to return to work as a dedicated public servant. I thank you for your concern about Officer Pechner, it reveals a deep commitment to protecting your junior officers. Officer Pechner has always spoken highly of you, and I can now see why she does.

Sincerely,

Eric J. Keroack, M.D., FACOG

April 3, 2001

To Whom It May Concern:

I began taking care of Terri Pechner (D/O/B 4/29/73) on 2/5/01. At that visit, it was clear that Ms. Pechner was suffering from significant emotional stress. As we pursued these issues, it became apparent that she was indeed suffering from a form of Posttraumatic Stress Disorder due to constant chronic stress. This condition has resulted from a combination of environmental stressors that exist in the internal arena of her employment, as well as in the field environment that all Police Officers must face. She has revealed to me that much of her work within the precinct has involved significant episodic sexual harassment and persistent emotional pressure from fellow male officers. Although I cannot validate these accusations, it is clear that she is exhibiting the symptoms of PTSD. She is presently responding fairly well to a trial of Effexor XR with occasional supplemental Xanex for bouts of severe anxiety. The ultimate goal of this intervention will be to have her on only Effexor XR. She has also made some progress with decreasing her internal stresses through the therapeutic settings that have been set before her. Nonetheless, she has a fairly long row to hoe. Occupational "Burn-Out" (which is the lay term for PTSD from chronic stress) is quite difficult to recover from...especially if returning to your career can be an actual physical threat to one's life. I cannot, at this time, predict exactly how long her disability will last. But, I suspect that at least 4-6 months will be the minimum. If you have any further questions, please feel free to contact me.

Sincerely,


Eric J. Keroack, M.D.

# Notice of Retirement Board Action on
# Disability Retirement Application

Updated September, 2001

| Retirement Board: Please place your address and phone number here. ▶ | *Revere Retirement Board*<br>*281 Broadway*<br>*Revere, MA 02151* |
|---|---|

Based on the information gathered and the regional medical panel's opinion, the retirement board has voted to deny the disability retirement application of the member noted below. The retirement board must forward a copy of this denial to the member, the member's employer (if the application is of an involuntary nature), the member's attorney, and the Public Employee Retirement Administration Commission. An explanation of the member's rights to appeal G.L. c. 32, § 16(3) and (4) is attached to this document. Upon request, the retirement board shall assist the applicant in the filing of an appeal.

| Pechner-James | Terri | | 017 - 56 - 5959 |
|---|---|---|---|
| Member's Last Name | First | M.I. | Social Security # |

| 157 Conant Street | Revere | MA | 02151 |
|---|---|---|---|
| Member's Street Address | City | State | Zip |

| Patrol Officer | Chief Terence Reardon |
|---|---|
| Job Title | Employer |

To All Parties:

You are hereby notified that on __Oct. 23, 2002__ the __Revere_____ Retirement Board has denied the application of __Chief Reardon for the involuntary__ accidental disability retirement of __Ms. James__ the following reason(s):

____Board did not find substantial evidence to support the Department Head's____
____application for the involuntary accidental disability retirement of Ms. James.____

_Michael P. Bisignani_____            ____10/23/02____
Signature of Board Chairman                              Date

____Andrew R. Bisignani_____
Name of Board Chairman

The member has the right, according to statute, to appeal this decision within 15 days of receipt of this notice to the Contributory Retirement Appeal Board (CRAB), 133 Portland Street, Third Floor, Boston, MA 02114. CRAB's telephone number is (617) 727-7060. Members should contact their retirement board for assistance in filing an appeal.



Chapter 32: Section 16(3) & 16(4) of the General Laws of Massachusetts

3: Right of Review by District Court

(a) Any member classified in Group 1, Group 2 or Group 4 who has attained age fifty-five and completed fifteen or more years of creditable service, or any member so classified who has not attained age fifty-five but who has completed twenty or more years of creditable service, or any such member who is a veteran and has completed ten or more years of creditable service, and who is aggrieved by any action taken or decision of a board or the public employee retirement administration commission rendered with reference to his involuntary retirement under the provisions of subdivision (1) or to his removal or discharge as set forth in subdivision (2), or any member who is aggrieved by any action taken or decision of a board or the public employee retirement administration commission rendered with reference to his dereliction of duty as set forth in section fifteen, may, within thirty days after the certification of the decision of the board, bring a petition in the district court within the territorial jurisdiction in which he resides praying that such action and decision be reviewed by the court.

After such notice as the court deems necessary, it shall review such action and decision, hear any and all evidence and determine whether such action was justified. If the court finds that such action was justified the decision of the board or the public employee retirement administration commission shall be affirmed; otherwise it shall be reversed and of no effect. If the court finds that such member was unjustifiably retired, removed or discharged from his office or position he shall be reinstated thereto without loss of compensation. The decision of the court shall be final.

(b) Any member whose office or position is subject to chapter thirty-one or to the rules and regulations made under authority thereof, who is aggrieved by any action taken or decision of a board or the public employee retirement administration commission rendered as described in paragraph (a) of this subdivision shall, for the purposes of sections one to twenty-eight, inclusive, have and retain such of the rights provided by sections forty-two A, forty-two B, forty-three and forty-five of chapter thirty-one as applied to his particular office or position, and the court shall, in addition to the matters it is required to review under such sections of chapter thirty-one, affirm or disaffirm the decision of the board or the public employee retirement administration commission as provided for in paragraph (a) of this subdivision.

4: Right of Appeal to Contributory Retirement Appeal Board

There shall be an unpaid contributory retirement appeal board which shall consist of three members as follows: an assistant attorney general who shall be designated in writing from time to time by the attorney general who shall act as chairman, the public employee retirement administration commission or an assistant who shall be designated in writing, from time to time, by the said commission, and a member appointed by the governor for a term of five years. In the event the matter before the contributory retirement appeal board deals with any matter related to disability retirement or interim benefits as awarded by the division of administrative law appeals, the commissioner of public health or his designee shall substitute for the public employee retirement administration commission.

The members of the contributory retirement appeal board shall be compensated for any expenses incurred in the performance of their official duties. On matters other than those subject to review by the district court as provided for in subdivision (3), or other than those which would have been subject to review had the requirement for the minimum period of creditable service been fulfilled, any person when aggrieved by any action taken or decision of the retirement board or the public employee retirement administration commission

Section 16(4): Right of Appeal to Contributory Retirement Appeal Board (Continued)

rendered, or by the failure of a retirement board or the public employee retirement administration commission
to act, may appeal to the contributory retirement appeal board by filing therewith a claim in writing within
fifteen days of notification of such action or decision of the retirement board or the commission, or may so
appeal within fifteen days after the expiration of the time specified in sections one to twenty-eight, inclusive,
within which a board or the commission must act upon a written request thereto, or within fifteen days after
the expiration of one month following the date of filing a written request with the board or the commission if
no time for action thereon is specified, in case the board or the commission failed to act thereon within the
time specified or within one month, as the case may be. The contributory retirement appeal board, after giving
due notice, shall, not less than ten nor more than sixty days after filing of any such claim of appeal, assign such
appeal to the division of administrative law appeals for a hearing. The division of administrative law appeals
shall maintain the official records of the contributory retirement appeal board. After the conclusion of such
hearing, the division of Administrative Law Appeals shall submit to the parties a written decision which shall
be final and binding upon the board involved and upon all other parties, and shall be complied with by such
board and by such parties, unless within fifteen days after such decision, (1) either party objects to such deci-
sion, in writing, to the contributory retirement appeal board, or (2) the contributory retirement appeal board
orders, in writing, that said board shall review such decision and take such further action as is appropriate and
consistent with the appeal provided by this section. The contributory retirement appeal board shall then pass
upon the appeal within six months after the conclusion of such hearing, and its decision shall be final and bind-
ing upon the board involved and upon all other parties, and shall be complied with by such board and by such
parties. Any person, upon making an appeal involving a disability retirement allowance, shall be permitted to
retire for superannuation retirement, if otherwise eligible, pending the decision of the contributory retirement
appeal board, but in no event shall such action prejudice the person from receiving any further benefits which
the contributory retirement appeal board may grant in its decision nor shall the person upon a finding in favor
of the employer be required to reimburse the employer for payments made prior to the decision of the
contributory retirement appeal board.



On appeals involving disability or where medical reports are part of the proceedings, the contributory retire-
ment appeal board may request further information from the members of the appropriate regional medical
panel, or may employ a registered physician to advise them in determination of an appeal.

The contributory retirement appeal board shall have the power to subpoena witnesses, administer oaths and
examine such parts of the books and records of the parties to a proceeding as relate to questions in dispute.
Fees for such witnesses shall be the same as for witnesses before the courts in civil actions, and shall be paid
from the Appropriation Fund of the division of administrative law appeals.

The contributory retirement appeal board, acting through the division of administrative law appeals, shall
arrange for the publication of its decisions and the cost of such publication shall be paid from the
Appropriation Fund of the division of administrative law appeals.

The contributory retirement appeal board shall establish a fee structure for appeals brought under this section,
which shall be subject to the approval of the commissioner of administration.

The division of administrative law appeals shall submit to the contributory retirement appeal board on an
annual basis a report on the status of all cases that have been assigned to the division of administrative law
appeals for a hearing.

**(5): Provisions Not Applicable to Certain Members**
The provisions of this section relative to the right of any member to a hearing or to the right of review by the district court shall not apply in the case of the removal or discharge of any state official or of any official of any political subdivision of the commonwealth for which provision is otherwise made in any general or special law, anything in this section to the contrary notwithstanding. The provisions of this section relative to the right of any member to a hearing or to the right of review by the district court shall not apply to any teacher or principal or superintendent of schools employed at discretion or any superintendent employed under a contract, for the duration of his contract, or any principal or supervisor, who has been dismissed, demoted, or removed from a position by a vote of a school committee under the provisions of section forty-two, forty-two A or section sixty-three of chapter seventy-one. The provisions of this section shall not apply to any member classified in Group 3.

# Introduction
# Notice of Retirement Board Action on Disability Retirement Application

Updated September, 2001

**Who should use this form?**

If a retirement board decides to deny an application for disability retirement, the *Notice of Retirement Board Action on Disability Retirement Application* shall be sent to all parties (the member, the member's employer (if the application is of an involuntary nature), the member's attorney, and the Public Employee Retirement Administration Commission) within three days of the decision.

**Does a member have any immediate <u>recourse</u> if he(she) feels he(she) should not be retired?**

Under G.L. c. 32, § 16(3) and 16(4), the member may appeal the retirement board's decision. Copies of these sections must be attached to the *Notice of Retirement Board Action on Disability Retirement Application.* Upon request, the retirement board shall assist the applicant in the filing of an appeal.



Revere Police Officer Terri James
157 Conant Street
Revere, Ma. 02151

October 30, 2002

Contributory Retirement Appeal Board
133 Portland Street, Third Floor
Boston, Ma. 02114

Subject:  Right to appeal G.L. chp.32 sect.16(4)

Dear Sir/Madam:

I wish to appeal the decision made by the City of Revere retirement board.  I feel that I should have been afforded the opportunity to be examined by the states medical physicians as requested.

Sincerely,

Revere Police Officer
Terri James

MARK,
I am ONLY sending a few pages let me know if you receive any my cell phone is 781-929-5012



*COMMONWEALTH OF MASSACHUSETTS*
*Division of Administrative Law Appeals*
*133 Portland Street, 3rd Floor*
*Boston, MA 02114*
**www.state.ma.us/dala**

Tel: 617-727-7060

March 7, 2003

Carlton Dasent, Esq.                    Ira H. Zaleznik, Esq.
Grayer & Dilday                          Lawson & Weitzen, LLP
27 School St.                            88 Black Falcon Terminal, Suite 345
Boston, MA 02108                         Boston, MA 02210

Re: Terri James v. Revere Retirement Board, CR-02-1308

Dear Sir/Madam

    Enclosed is a decision in the above-captioned appeal.

    Massachusetts General Laws, Chapter 32, section 16 (4) provides that this decision:

shall be final and binding upon the board involved and upon all other
parties, and shall be complied with by such board and by such parties,
unless within fifteen days after such decision, (1) either party objects to
such decision, in writing, to the contributory retirement appeal
board, or (2) the contributory retirement appeal board orders, in writing,
that said board shall review such decision...

    A party objecting to the enclosed decision shall file **three** copies of specific objections to the decision with the Chairman of the Contributory Retirement Appeal Board ("CRAB"): **Anthony E. Penski, Esq., Administrative Law Division, Office of the Attorney General, Room 2019, One Ashburton Place, Boston, MA 02108.** A copy of the objections must also be sent to all parties.

    The objecting party has an additional 30 days after the 15-day period to forward copies of the exhibits (three sets of exhibits to CRAB c/o Anthony E. Penski, Esq. and a set to the other party). The objecting party should number the exhibits as they were numbered at the hearing. CRAB will not put any case on its agenda until exhibits and copies of the DALA decision have been received.

DIVISION OF ADMINISTRATIVE LAW APPEALS

*Kimberly A. Fletcher*

Kimberly A. Fletcher
First Administrative Magistrate

cc: Anthony E. Penski, Esq.

THE COMMONWEALTH OF MASSACHUSETTS

Suffolk, ss.                                     Division of Administrative Law Appeals

Terri James,
      Petitioner

     v.                                        Docket No. CR-02-1308

Revere Retirement Board,
      Respondent

Appearance for Petitioner:               Carlton Dasent, Esquire
                                         Grayer & Dilday
                                         27 School Street
                                         Boston, MA 02108

Appearance for Respondent:               Ira H. Zaleznik, Esquire
                                         Lawson & Weitzen, LLP
                                         88 Black Falcon Terminal, Suite 345
                                         Boston, MA 02210

Administrative Magistrate:               Judithann Burke

## DECISION

Pursuant to M.G.L.c. 32 s. 16(4), the Petitioner, Terri James, is appealing from the

October 23, 2002 decision of the Respondent, Revere Retirement Board, denying the

involuntary accidental disability retirement application of her former supervisor, Revere

Police Chief Terence K. Reardon. The appeal was timely filed. (Exhibits 1, 6 and 7). A

hearing was held on February 4, 2003 at the offices of the Division of Administrative

Law Appeals (DALA), 133 Portland Street, Boston, MA.

At the hearing, forty-five (45) exhibits were marked. No testimony was taken. The

parties submitted their cases on the documents and argued their respective cases. One (1)

tape was made of the proceedings.

Terri James                                                      CR-02-1308

## FINDINGS OF FACT

Based upon the evidence submitted at the hearing in the above-entitled matter, I

hereby render the following findings of fact:

1.  The Petitioner, Terri James, d.o.b. 4-29-73, became a police officer in the City of

Revere on September 21, 1995.

2.  During the six (6) years of her employment, the Petitioner complained of a pro-

longed, severe, pervasive, hostile and abusive work environment and gender discrim-

ination.  She also complained of the resultant intimidation, humiliation and stigmatiza-

tion.

3.  Officer James stopped working on or about March 14, 2001 and filed an injury

report wherein she stated that her disability first began on that date and had resulted from

a "cumulative condition". (Exhibits 4, 12, 13 and 15).

4.  Terri James began treating with Eric J. Keroack, M.D. in March 2001.  At that

time, he reported that she was unable to carry out her police duties because her mental

condition was a significant detriment to her safety and to the safety of the public at

large.  He reported that she was experiencing panic attacks involving shortness of breath,

rapid heartbeats, dizziness, nausea (and sometimes vomiting), blurring vision, and trem-

bling hands whenever she was faced with encounters involving the police precinct station

or the alleged offenders, i.e. male police officers in the City of Revere.  Dr. Keroack

stated further that Ms. James' panic attacks also occurred following phone calls to her

2

home from superior officers or from incidental meetings with officers against whom she had lodged complaints of harassment. These encounters occurred both on and off duty. (Exhibit 11).

5.  On June 3, 2002, Dr. Keroack, who was still Ms. James' treating physician, reported to Revere Police Chief Terence K. Reardon that his patient had a real desire to return to work. The doctor noted further that his patient might be able to return in the next three (3) months. (Exhibit 5).

6.  On July 17, 2002, Chief Reardon filed an Involuntary Accidental Disability Retirement application on behalf of Terri James on the basis that she was suffering from "significant emotional stress" and referenced a diagnosis of "post traumatic stress disorder". (Exhibits 1-4).

7.  The Revere Retirement Board denied Chief Reardon's application on October 23, 2002 without having convened a Regional Medical Panel. (Exhibit 6).

8.  By late 2002 and early 2003, Dr. Keroack noted that Terri James continue to experience a decline in her mental and physical health whenever the prospect of her return to work was discussed. (Exhibit 11).

9.  On January 23, 2003 Dr. Keroack reported that she had begun to avoid being out in public, even to buy gasoline or groceries. The doctor noted that the Petitioner had also developed crippling anxiety and worries which have not abated and have led to increased insomnia and fatigue. He concluded at this time that the loss of her ability to perform her duties as a police officer resulted in a significant insult to Officer James' identity and

self-worth. As a result, the doctor stated, she had become increasingly depressed and withdrawn.

Dr. Keroack went on to report that the compounding effect of multiple stressors has further deteriorated his patient's physical health and that every time she discusses the possible return to work, her physical health deteriorated further.

> ...In my opinion, Officer Pechner-James will most likely never be able to return to any form of duty within the police department...To attempt such a future reassignment involves risks to Officer Pechner-James' life that are unacceptable...
> ...But now, Officer Pechner-James is a fragile, injured, physically and mentally ill woman. This condition has most likely occurred as the direct result of failure to address the reported sexualized behaviors within a professional organization of law enforcement personnel (within the Revere Department).

(Exhibit 11).

## DECISION

When the Revere Retirement Board reviewed Chief Reardon's application for Involuntary Accidental Disability Retirement on Officer James' behalf in October 2002, she did not meet the requisite criteria set forth in M.G.L.c. 32 s. 7 for the convening of a Regional Medical Panel. Her treating doctor, Dr. Keroack, did not state that she was totally and permanently disabled and that said disability was such as might be the natural and proximate result of the personal injury or hazard undergone on account of which retirement was claimed. As such, the board was correct in failing to convene a Medical Panel.

However, at the de novo hearing at DALA on February 4, 2003, Dr. Keroack's January 22, 2003 report was marked as an exhibit. Based upon Dr. Keroack's findings as

Terri Janes                                              CR-02-1308

to total and permanent disability and the possibility of a causal connection, the threshold

criteria have been met for the convening of a Regional Medical Panel to evaluate her

claim, in accordance with Section 7.

The decision of the Revere Retirement Board is hereby reversed and this matter is

remanded to said board for the purpose of convening a Regional Medical Panel of experts

in psychiatry in order to evaluate Chief Reardon's application for Section 7 retirement.

So ordered.

Division of Administrative Law Appeals,
BY:

Judithann Burke,
Administrative Magistrate

DATED: 3 - 7 - 0 3

5

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.

5.

TERRI L. PECHNER-JAMES,
Plaintiff )

SUPERIOR COURT
DOCKET NO. SUCV 2001-05837

VS. )
)
)
FREDERICK ROLAND, )
ACTING REVERE POLICE )
DEPARTMENT, THOMAS )
AMBROSINO, MAYOR, CITY )
OF REVERE )
Defendant )
)

## STIPULATION OF DISMISSAL

It is hereby stipulated by all parties that the above-entitled action be dismissed without prejudice and without costs to either party.



Notice
3-27-03
J.D.
G+D
PC
C v R (AS
bm)

Terri L. Pechner James
By her attorney,

James S. Dilday
Grayer & Dilday
27 School Street, Suite 400
Boston, MA 02108
(617) 227-3470
BBO# 124360

HEREBY ATTEST AND CERTIFY ON
MARCH 28, 2005 THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY:

ASSISTANT CLERK.

Frederick Roland, et al

Paul Capizzi
City Solictior's Office
City Hall
281 Broadway
Revere, MA 02151
(781) 286-8166
BBO#646296A

DATED: 2-25-03

JUDGEMENT ENTERED ON DOCKET 3-27-03 (AS
PURSUANT TO THE PROVISIONS OF MASS.R.CIV.P.58(b) Amended)
AND NOTICE SENT TO PARTIES PURSUANT TO THE PRO-
VISIONS OF MASS.R.CIV.P.77(d) AS FOLLOWS