UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

TERRI PECHNER-JAMES and
SONIA FERNANDEZ,
      Plaintiffs

V

CITY OF REVERE et al
      Defendants

## PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ROOKER-FELDMAN DOCTRINE

Now come the Plaintiffs, Terri Pechner-James and Sonia Fernandez, and file this Supplemental Memorandum in Support of their Request for Rooker-Feldman Ruling and Further Instructions. The Plaintiffs state that the Defendants have filed two memorandums in opposition to the Plaintiffs request and the Plaintiffs need to respond to the latest memorandum filed by the Defendants in opposition to Plaintiffs Request.

## PROCEDURAL BACKGROUND

The Plaintiffs filed a Verified complaint dated September 30, 2003 in Suffolk Superior Court. The Plaintiff's Complaint stated that (1) they were subjected to a hostile work environment while employed as law enforcement officers for the City of Revere (Count 1); (2) that they were constructively discharged from their employment with the city of Revere (Count 2); (3) that they were subjected to disparate treatment (Count 3); and (4)

1

that they were subjected to the impermissible and intentional infliction of emotional distress (Count 4). The Plaintiffs attached Exhibits A & B to their complaint in support of the allegations contained in their complaint. These Exhibits included determinations of the Division of Administrative Law Appeals(DALA) and the Public Employee Retirement Administration Commission(PERAC). These adjudicatory bodies had determined that both Plaintiffs, Terri Pechner-James, in particular, had suffered post-traumatic stress disorder; that her disability was caused by the hostile work environment she experienced as an employee of the Revere Police Department; that she was mentally incapable of performing the essential functions of her job; that such incapacity was likely to be permanent; and that her past clinical history revealed no alternate origin for her anxiety disorder. These adjudicatory determinations were not appealed and, in due course, both Plaintiffs were awarded disability retirement.

The determinations of these administrative bodies were judicial in nature and became final and binding state decisions after the expiration of the appeal period. Injury and causation could have been appealed to the Superior Court and subsequently to the Supreme Judicial Court of Massachusetts. The Defendants did not appeal. However, the Defendants, the losing party in the state court, have propounded a combined total of three hundred and thirty four (334) interrogatories plus Request for Production of Documents and numerous other pleadings in an effort to relitigate the issues of injury and causation in the Federal District Court of Massachusetts.

## ARGUMENT

### Introduction

The Defendants rely on the cases of Exxon-Mobil Corp. v Saudi Basic Industries Corp., 544 U.S. ---, 125 S. Ct. 1517, 1526 (2005) and Verizon Md. Inc. v Public Serv. Comm'n of Md. 535 U.S. 635, 644 (2002) to support their position that, as state court losers, they can relitigate in the Federal District Court the issues of injury and causation that have already been decided in a state forum. Neither case supports their position.

Injury and causation could have been appealed to the Superior Court and subsequently to the Supreme Judicial Court of Massachusetts. The Defendants did not appeal. Appeal from a final decision of the Supreme Judicial Court of Massachusetts can only be obtained in the United States Supreme Court. Neither the facts nor the holding of Exxon-Mobil nor Verizon has changed or can change the grant of original jurisdiction that the Congress provided to the federal district courts.

The following are the facts of the Exxon-Mobil case. Two subsidiaries of petitioner, Exxon-Mobil formed joint ventures with Respondent, Saudi Basic Industries Corp., (SABIC) to produce polyethylene in Saudi Arabia. When a dispute arose over royalties that SABIC had charged the joint ventures, SABIC preemptively sued the two subsidiaries of Exxon-Mobil in a Delaware state court seeking declaratory judgment that royalties were proper.

Exxon-Mobil and the subsidiaries then countersued in the Federal District Court, alleging that SABIC overcharged them. The state court trial yielded a verdict of over $400 million for the Exxon-Mobil subsidiaries. Before that trial, SABIC filed, in the Federal District Court, a motion to dismiss the Exxon-Mobil suit. The court denied the motion.

On interlocutory appeal, over eight months after the state-court jury verdict, the Third Circuit, on its own motion, raised the question whether subject matter jurisdiction over the federal suit failed under the Rooker-Feldman doctrine because the Exxon-Mobil claims had already been litigated in state court. The court did not question the District Court's subject matter jurisdiction at the suit's outset, but held that federal jurisdiction terminated when the Delaware court entered judgment on the jury verdict.

The Verizon case involved a State of Maryland agency interpreting a federal law. There was a federal question which gave the federal district court jurisdiction. Public employee retirement in Massachusetts is committed by the legislature to the Public Employee Retirement Administration Commission. There is no federal question.

(1) Adjudicatory decisions are judicial in nature; the decisions of the Division of Administrative Law Appeals and the Public Employee Retirement Administration Commission are adjudicatory; they become final state judgments after the expiration of the appeal period.

Retirement disability hearings are adjudicatory in nature according to M.G.L. c. 30A § 1(1) and the findings of hearing officers made incident to conducting such hearings pursuant to M.G.L.c. 30A § 14 are judicial in nature. Feldman, infra, clearly establishes

4

that the pivotal question of whether official action is judicial does not turn on whether the actor is technically a court but on whether the action in question is judicial in nature. The Feldman court wrestled with the question of whether the lower court acted judicially or legislatively and hence whether the nature of the court's action was judicial or legislative. The court concluded that the action was judicial.

Judicial and prosecutorial immunity law is instructive with regard to the well-settled fact that (1) bodies other than courts can make judicial decisions and (2) it is not the nature of the actor or body but the substance of their action or functional capacity that determines whether the action in question is judicial or not for legal purposes. The First Circuit in Namey v Reilly, 926 F. Supp. 5 (D.Mass. 1996), acknowledged the "functional view." It granted immunity to "all actions taken by the parole board members (an administrative agency) in the course of their official duties." Id at p.8. It affirmed the principle that prosecutorial immunity depends on the nature of the function being performed not on the identity of the actor. The parole commission hearing officers were granted absolute immunity because their function was considered judicial. The First Circuit in Cignetti v Healy, 89 F. Supp 2d 106 (D.Mass. 2000) acknowledged that "courts have applied a "functional approach" in determining whether or not a prosecutor enjoys absolute immunity from 1983 liability. The availability depends on the nature of the function being performed rather than the identity of the actor who performed it. (citing Buckley v Fitzsimmons, 509 U.S. 259, 269, 113 S. Ct. 2602, 125 L.Ed 2d 209 (1993).

The hearings conducted by DALA and PERAC and the findings made by those agencies are performed pursuant to adjudicatory rules and are therefore judicial in nature pursuant to M.G.L.c. 30A § 14.

M. G. L. c. 7 § 4H provides:

> There shall be within the executive office of administration and finance a division of administrative law appeals under the direction of a chief administrative magistrate who shall be appointed by the secretary of the executive office of administration and finance with the approval of the governor....

The section further provides:

> Any officer or agency of the commonwealth authorized to conduct adjudicatory proceedings or to hear appeals from such proceedings may, subject to the approval of the secretary of the executive office within which such officer is employed or such agency is located, request the division to conduct one or more classes of such proceedings or appeals on behalf of the officer or agency.

The section further provides:

> The division may summons witnesses, administer oath and require the production of books, records and papers at any hearing before the division upon any matter within its jurisdiction. Witnesses may be summoned by any party to the proceedings in the same manner, be paid the same fees and be subject to the same penalties as witnesses in civil cases before the courts of the commonwealth.

The division's proceedings are subject to the standard adjudicatory rules of practice and procedure as promulgated in 801 Code of Massachusetts Regulations (CMR) 1:00 et seq and the procedural requirements of 801 CMR 1:01 to 1:04.

M.G.L.c. 7 § 49 provides:

> There shall be within the executive office of administration and finance, but not subject to its control, a public employee retirement administration commission.

Section 50 provides: The public employee retirement administration commission ... shall have general responsibility for the efficient administration of the public employee retirement system....... The public employee retirement administration commission powers and duties shall include, but not be limited to:

> (a) promulgating rules and regulations governing administrative procedures...(b) approving the rules and regulations of individual retirement boards, as to conformity with law and regulations;

The commission's proceedings are subject to the standard adjudicatory rules of practice and procedure as promulgated in 840 Code of Massachusetts Regulations §1:00 and particularly 840 CMR § 10.01 to 10.15.

The Executive Office For Administration and Finance has promulgated regulations that govern all adjudicatory proceedings held by its agencies. These standard adjudicatory rules apply to the decisions made by the Division of Administrative Appeals and the Public Employee Retirement Administration Commission.

The adjudicatory decisions of these agencies are subject to judicial review on the grounds that they were taken:

    (a) In violation of constitutional provisions; or

    (b) In excess of statutory authority or jurisdiction of the agency; or

    (c) Based upon an error of law; or

    (d) Made upon unlawful procedure; or

    (e) Unsupported by substantial evidence; or

    (f) Unwarranted by facts found by the court on the record as submitted; or

    (g) Arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law. M.G.L. c. 30A § 14(7).

An appeal from the decisions of the agencies described above could have been taken to the Superior Court and subsequently to the Supreme Judicial Court within the time for appeal provided by the statute. The Defendants did not appeal to either the Suffolk Superior Court or to the Supreme Judicial Court of Massachusetts. The adjudicatory decisions of these agencies are therefore final and binding judicial state determinations.

Retirement decisions are committed to PERAC by law. Reviewing courts seldom substitute their judgments for that of the commission. <u>Barnstable County Retirement Board v Contributory Retirement Appeal Board</u> (1997) 683 N.E.2d 290, 43 Mass App.Ct 341, review denied 686 N.E.2d 200, 426 Mass. App. 1101. The Court also stated that agencies like PERAC have considerable leeway in interpreting the statute they are charged with enforcing and that a reviewing court will not second guess the agency even

if its decisions are susceptible of reasonable debate. An appeal may not have changed the outcome of the Plaintiff's cases but, contrary to the Defendant's claim, in the absence of an appeal these agency decisions are final and binding state court determinations.

(2) Neither the Exxon-Mobil case nor the Verizon case support the Defendants' attempt to relitigate the issues of injury and causation in a federal district court.

On April 14, 2004, the Revere Retirement Board voted to grant the application of the Plaintiff, Terri Pechner-James for accidental disability retirement. The decision was preceded by adjudicatory decisions of DALA-Division of Administrative Law Appeals and PERAC-Public Employee Retirement Administration Commission. The final decisions of these agencies were neither administrative nor legislative, they were judicial.

Ms. James became a police officer on September 21, 1995. Her last day of work at the Revere Police Department was March 13, 2001. On July 17, 2002. chief Terence Reardon submitted an application for Ms. James to be involuntarily retired. DALA held an adjudicatory hearing and on October 23, 2002 determined that there was insufficient evidence on the issue of permanence. It denied the application without convening a medical panel. The Revere Retirement Board followed suit.

The Plaintiff, Terri Pechner-James filed an appeal of the Board's decision. DALA held a hearing on February 4, 2003. At this adjudicatory hearing, the Plaintiff entered forty-five (45) exhibits, including a letter from Dr. Keroack dated January 22, 2003. These

9

proceedings were tape recorded. The Defendants was represented by counsel at this hearing, their counsel cross-examined the Plaintiff, he also submitted evidence but did not subsequently file an appeal.

After adequate notice and an opportunity to be heard, the Magistrate found Dr. Keroack's letter to be sufficient and therefore remanded the matter to the Revere Retirement Board for the convening of a Medical Panel.

The Medical Panel examined the Plaintiff, Terri Pechner-James, on June 13, 2003. The Defendant received notice of the Medical Panel examination. The Defendants chose not to be represented at the examination; they also chose not to pursue a separate medical opinion. The medical panel physicians concluded unanimously that (1) the Plaintiff was mentally incapable of performing the essential duties of her job as described; (2) the incapacity was likely to be permanent; and (3) said incapacity was such as might be the natural and proximate result of emotional (post traumatic stress disorder) sustained or hazard undergone on account of which retirement is claimed. There was no other likely factor apparent in Ms. James' clinical history. The Defendants did not appeal the DALA decision of March 7, 2003. They did not appeal the unanimous decision of the medical panel. They used the adjudicatory rules to request a clarification; the medical panel provided the clarification.

The disability retirement determination of Co-Plaintiff, Sonia Fernandez were made by the same adjudicatory process. The Plaintiffs now receives disability retirement based

10

upon the decisions described earlier. The decisions of DALA, PERAC the Revere Retirement Board have all become final. The appeal periods have expired; the Plaintiffs now receive benefits and have a property interest in the continued receipt of those benefits. These decisions are final and binding state determinations.

(3) The Defendants are state court losers; neither the Exxon-Mobil nor the Verizon case support their attempt to review and reverse unfavorable state judgments.

The Defendants in this case are state court losers; they are seeking to "review and reverse" unfavorable state court judgments. The Plaintiffs commenced their causes of action in the Suffolk County Superior Court. The Defendants moved the case to the Federal District Court of Massachusetts. As state court losers, they now seek to undo the state determination of injury and causation and to relitigate the issues in a federal district forum.

The parties in Rooker v Fidelity Trust Co., 263 U.S. 413, who were defeated in state court, turned to a Federal District Court for relief. They alleged that the adverse state court judgment was rendered in contravention of the Constitution and asked the Federal District Court to declare it "null and void." Id at 414-415. If the state court decision was wrong, the Court explained, "that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding. Ibid. Federal district courts, the Rooker Court recognized, lacked the requisite appellate authority, for their jurisdiction was "strictly original." Id at 416. Among federal courts, the Rooker Court clarified, Congress had empowered only this Court, the U.S. Supreme

11

Court said, to exercise appellate authority "to reverse or modify" a state court judgment. Ibid. Accordingly, the Court affirmed a decree dismissing the suit for lack of jurisdiction. Id. at 415, 417.

The Exxon-Mobil case protects the Plaintiffs who are the state court winners and prevents the Defendants who are the state court losers from relitigating issues that have already been decided by a state judicial proceeding. Exxon-Mobil filed suit in federal district court (only two weeks after SABIC filed in Delaware state court and well before any judgment in state court. It filed to protect itself in the event it lost in state court on grounds (such as the state statute of limitations) that might not preclude relief in the federal venue.

The case at bar is factually and procedurally different from Exxon-Mobil or Verizon. The Plaintiffs, Terri Pechner-James and Sonia Fernandez, and the Defendants in this case did not file simultaneously in the state and the federal courts. The Plaintiffs filed their cause of action in the Suffolk Superior Court. The Defendants failed to file a timely answer in the state court, then moved the cause of action to the federal court. They also failed to file a timely answer in the federal court. They filed an answer only after the Plaintiff, Terri Pechner-James, had filed a Motion For Partial Summary Judgment. The Defendants then filed a response to the Plaintiff's motion and answer to the complaint. They now seek to relitigate, in the federal court the identical issues of injury and causation decided by prior state adjudication.

<u>(4) Both Suffolk Superior Court and the Federal District Court of Massachusetts have concurrent jurisdiction over this case. The Defendants decision to move the case from Suffolk Superior Court to Federal District Court was motivated by forum-shopping and was an attempt to relitigate issues lost in a state judicial proceeding.</u>

Most state courts are courts of general jurisdiction. The presumption is that they have subject matter jurisdiction over the particular controversy unless a showing is made to the contrary. Wright, Miller & Cooper, <u>Federal Practice and Procedure</u>, § 3522 p. 60. Federal and state courts have concurrent jurisdiction to try federal, unless Congress makes federal court jurisdiction exclusive. <u>Gulf Shore Co. v Mobil Oil Corp.</u>, (1981) 101 S.Ct. 2870, 453 U.S. 473, 69 L.Ed.2d 784 in which the U.S. Supreme Court acknowledged that Texas state court had jurisdiction over personal injury arising under the Outer Continental Shelf Lands Act. The ability of state courts to hear matters that involved federal laws was acknowledged in <u>Charles Dowd Box Co., v Courtney</u>, (1962) 82 S.Ct 519, 368 U.S. 502, 7 L. Ed 2d 483 and again in <u>Ted's Tire Serv. Inc. v Chevron USA Inc.</u>, D.C. Conn. (1979) 470 F. Supp. 163.

The Plaintiffs commenced their causes of action in the Suffolk Superior Court. Their complaint consisted of four (4) counts. They attached Exhibits A & B to their complaints. These Exhibits included determinations of DALA and PERAC acting in their adjudicatory capacity. These adjudicatory bodies had determined that both Plaintiffs, Terri Pechner-James, in particular, had suffered post-traumatic stress disorder, that her disability made her mentally incapable of performing the essential functions of her job, that her disability was caused by the hostile work environment she experienced as an employee of the Revere Police Department, that her past clinical history revealed no

alternate origin for her anxiety disorder and that such incapacity was likely to be permanent.

The Plaintiffs allege, in their complaint, that the injury and its causation violate the requisite provisions of both M.G.L.c. 151B and 42 USC § 2000e and any other anti-discrimination statutes cited by the Plaintiffs because the federal statutes had not preempted the field. See Cumberland Farms, Inc., v Milk Control Comm'n, 340 Mass 672, 675, 166 N.E.2d 356, 358 (1960). Jurisdiction over the Plaintiffs causes of action existed in both the state and the federal courts. See also Schaffer v Leimberg, 318 Mass 396, 405, 62 N.E2d 193, 197-198 (1945).

The Defendants could have litigated both the state and the federal claims in the Suffolk Superior Court. However, the Defendants, losers in the state adjudicatory proceedings, moved the case to the Federal District Court of Massachusetts and, in an obvious attempt at forum-shopping for a better result, now seek to relitigate the issues of injury and causation. These are the identical issues that the state judicially determined and that constitute the basis of both Plaintiffs' receipt of retirement disability benefits.

Conclusion

The United States Supreme Court's ruling in the Exxon-Mobil case does not, contrary to Defendants contention, provide them with the authority to relitigate the identical issues of injury and causation that were adjudicated in a state forum. The issue is jurisdictional. The issue of liability for individual supervisors of the Plaintiffs is inextricably intertwined with the municipal liability of their employers, the City of Revere and the Revere Police Department and does not require separate litigation. Neither the Exxon-Mobil case nor the Verizon case overruled either Rooker or Feldman; they did not change the federal statutes and they did not give state court losers, like the Defendants, the right to relitigate prior state judicial decisions.

Federal district courts still lack the requisite appellate authority to hear state appeals or to relitigate state decisions because their jurisdiction is "strictly original." Congress has empowered only the United States Supreme Court to exercise appellate authority to reverse or modify a state court judgment. Neither the Exxon-Mobil case or the Verizon case has changed this statutory reality.

Terri Pechner-James and
Sonia Fernandez, Plaintiffs
By their attorney

_____
James S. Dilday, Esq.
27 School Street, Suite 400
Boston, MA 02108
(617) 227-3470

## CERTIFICATE OF SERVICE

I, James S. Dilday, hereby certify that on August 9, 2005 I served a copy of Plaintiff's Supplemental Memorandum in Support of Rooker-Feldman Doctrine by first class mail as follows:

Walter H. Porr, Esquire
Paul Capizzi, Esquire
Office of City Solicitor
281 Broadway
Revere, MA 02151

Michael Akerson, Esquire
John H. Vigliotti, Esquire
397 Grove Street
Worcester, MA 01605

James S. Dilday
Grayer & Dilday
27 School Street
Boston, MA 02108
(617) 227-3470
BBO# 124360

DATED: 8/9/05