# EXHIBIT "A"

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**TERRI PECHNER-JAMES and**
**SONIA FERNANDEZ,**
**Plaintiffs,**


**v.**                                              **C.A. NO. 03-12499-MLW**


**CITY OF REVERE, THOMAS AMBROSINO,**
**MAYOR, CITY OF REVERE POLICE**
**DEPARTMENT, TERRENCE REARDON,**
**CHIEF OF POLICE, BERNARD FOSTER,**
**SALVATORE SANTORO, ROY COLANNINO,**
**FREDERICK ROLAND, THOMAS DOHERTY,**
**JOHN NELSON, JAMES RUSSO, MICHAEL**
**MURPHY and STEVEN FORD,**
                            **Defendants,**

## DEFENDANT, CITY OF REVERE'S, FIRST SET OF
## INTERROGATORIES TO PLAINTIFF, SONIA FERNANDEZ

Pursuant to Federal Rules of .Civil Procedure, Rules 26 and 33, and Local Rule 26.5, Plaintiff, Sonia Fernandez, hereby responds to the following interrogatories propounded upon her by the Defendant, City of Revere.

## DEFINITIONS

Pursuant to Local Rule 26.5(a), the definitions set forth in Local Rule 26.5(c) are hereby incorporated herein by reference. The term Plaintiff shall mean the undersigned Sonia Fernandez and Plaintiff will use the third person singular to refer to herself throughout these responses.

## INTERROGATORIES

1. IDENTIFY the "seven female officers who were hired by the Revere Police Department" as set forth in paragraphs 14 and 80 of your COMPLAINT.

A. 1. The seven female officers who were hired by the Revere Police Department as set forth in paragraphs 14 and 80 are listed below:

P.O. Pechner-James
P.O. Fernandez
P.O. Curcio
P.O. Malatesta
P.O. Downing
P.O. Fish
P.O. Carey

2. IDENTIFY the three female officers who "have filed complaints with the Massachusetts Commission Against Discrimination" as set forth in paragraph 14 of your COMPLAINT.

A. 2. The three female officers who filed complaints with the Massachusetts Commission Against Discrimination are P.O. Pechner-James, P.O. Fish and P.O. Fernandez.

3. **STATE THE BASIS** for your allegation that you "experienced discrimination" based upon your race as set forth in paragraph 14 of your **COMPLAINT.**

A. 3. The Revere Police Department was not free of workplace discrimination. On or about November 1998, a superior, Lt. Ford asked the Plaintiff, in the presence of Officer Burke: "What are you? Spanish, Mexican, or Cuban. You 're all alike a bunch of cockroaches." On or about July 1, 2000, the Plaintiff was at roll call. Officer Curcio, Malvarosa, Mason, Graff, Sgt. Randall and Lt McLaughlin were present. The officer in charge was reading the arrest log. He mentioned several people who were from the City of Chelsea. Lt. Ford remarked loudly: "The sewerage people." In 1995, Chief Russo called the Plaintiff into his office and asked her to sit down. The Chief told her, but did not show her, that he received an anonymous letter which stated that Plaintiff was suicidal and a drug user and that her family was known to the police. The Chief notified the Plaintiff that he was going to record the interview.

4. Reference is made to the last paragraph of page 11 of your **COMPLAINT** which states:"Facts: Sonia Fernandez. The facts that give rise to the claim of Sonia Fernandez incorporate the paragraphs stated above and the events described in detail below:" Identify each and every event alleged in paragraphs 17 - 79 of the **COMPLAINT** which you witnessed personally.
A.4 Paragraphs 17 – 79 of the complaint detail the experiences of Terri Pechner-James. However, her personal experiences occurred in an environment that affected all members of the Department.

5. Reference is made to the last paragraph of page 11 of your **COMPLAINT** which states:"Facts: Sonia Fernandez. The facts that give rise to the claim of Sonia Fernandez incorporate the paragraphs stated above and the events described in detail below:"

Identify each and every event alleged in paragraphs 17 - 79 of the **COMPLAINT** which you did not witness personally, but of which you were informed by a third party.

A.5 Paragraphs 17-79 on the Plaintiff's complaint detail the experiences of Terri Pechner-James. However, her personal experiences occurred in an environment that affected all members of the Department.

6. Reference is made to the last paragraph of page 11 of your **COMPLAINT** which states: "Facts: Sonia Fernandez. The facts that give rise to the claim of Sonia Fernandez incorporate the paragraphs stated above and the events described in detail below:" For each event alleged in paragraphs 17 - 79 of the **COMPLAINT** which you did not witness personally, but of which you were informed by a third party, **IDENTIFY** the third-party who so informed you and the state the exact date, or the closest approximation you have thereof, upon which you were so informed.

A. 6 Paragraphs 17 to 33 describe incidents that occurred between Terri Pechner-James and Lt Foster during the course of employment at the Revere Police Department. The Plaintiff learned of these events from the CoPlaintiff. The Plaintiff learned of these events on or close to the date of their occurrence as stated. Some incidents were included in the January 14, 1999 report on sexual harassment by the Department.

7. **STATE THE BASIS** for your allegation that "[during the years of [your] employment [you] experienced intimidation, humiliation, and stigmatization" as set forth in paragraph 81 of your **COMPLAINT.**

A. 7 Paragraph 81 of Plaintiff's complaint refers to the effects of the hostile work environment that the plaintiff experienced at the Revere Police Department. Plaintiff personally experienced intimidation by Chief Russo about the time she started her employment. She was humiliated by her experience on Shirley Avenue in May 1996. Her work was stigmatized when she was asked to appear at the crime scene, in civilian clothes only for the purpose of translating. Also present at the crime scene was Luis Rodriguez, a City of Chelsea police officer. He was present when the comment about my working as an undercover hooker was made. The Department had previously identified two other officers as capable of speaking Spanish.

8. **STATE THE BASIS** for your allegation that the "conduct of the Defendants posed a formidable barrier to [your] full participation in the workplace" as set forth in paragraph 81 of your **COMPLAINT.**

A. 8 The Plaintiff is entitled to a workplace that is free of sexual harassment or racial harassment. The Revere Police Department was not such a workplace. The Plaintiff was summoned to the scene by Captain Roland. She asked if she should wear her uniform. He told her no. She asked whether she should wear her service weapon. He told her no. The Plaintiff arrived at the scene and realized that it was an active crime scene. It was dangerous for the Plaintiff to be at an active crime scene without a service weapon. Lt

Wallace and Sgt. Picardi later confirmed that the Captain's instructions had placed the Plaintiff in a dangerous situation.

9. **IDENTIFY** "the Defendants" to whom you are referring in paragraph 81 of your **COMPLAINT.**

A. 9  The Defendants are Bernard Foster, Salvatore Santoro, Roy Colannino, Frederick Roland, Thomas Doherty, John Nelson, James Russo, Michael Murphy and Steven Ford.

10. **IDENTIFY** "the supervisors and ranking officers" who "created a hostile environment" as set forth in paragraph 82 of your **COMPLAINT.**

A. 10 The supervisors and ranking officers who created a hostile work environment include Defendants named in the response to Interrogatory No.9.

11. **STATE THE BASIS** for your allegation that you were constructively discharged as set forth in paragraph 82 of your **COMPLAINT.**

A. 11 The working environment was abusive and so intolerable that taking a leave of absence even without pay was a fitting response. The unpaid leave caused the Plaintiff to lose her home and suffer financial losses. Plaintiff was returned to work in October 2002 in a position that caused her to face unbearable working conditions and union opposition.

12. **IDENTIFY** "the Revere Police Officer[ who] looked at [you] and asked [you] if [you were] working as an undercover hooker that night" as set forth in paragraph 83 of your **COMPLAINT.**

A. 12. The Revere Police Officer who looked at the Plaintiff and asked her if she was working as an undercover hooker was present at the scene on Shirley Avenue. Officer Luis Rodriguez of Chelsea was also present at the scene and heard the remark. He asked the Plaintiff how she was able to put up with this kind of behavior.

13. **IDENTIFY** "the supervisor [who] had devalued [your] professional skills and abilities" as set forth in paragraph 83 of your **COMPLAINT.**

A. 13. The supervisor that evening was Captain Roland. He called the Plaintiff to the scene. The Plaintiff was summoned to the scene but she was specifically instructed not to wear her uniform and not to carry her firearm. Her presence and her duties were reduced to translation. The Department had previously identified two other officers who were "Spanish-speaking", Officer Arcos and Officer Kevin Colannino. Neither of those officers were at the scene. Officer Luis Rodriguez of the Chelsea Police Department was

at the scene. When Captain Roland summoned the Plaintiff to the scene, she asked if she should wear he duty weapon. He told he no. She asked if she should wear her police uniform. He told her no. The Plaintiff did not realize that she was being called to an active crime scene. The Captain's instructions that the Plaintiff, someone known to be a police officer, report to an active crime scene without uniform and without a duty weapon, placed her life and safety in jeopardy.

14. **IDENTIFY** the "[other officers at the scene [who] commented on [your] diminished status" as set forth in paragraph 83 of your **COMPLAINT.**

A. 14 The other officers at the scene were members of the Revere Police Department and Officer Luis Rodriguez of the Chelsea Police Department.

15. State the exact dates, times and locations, or the closest approximation you have thereof, for each "occasion[] during 1996 and 1997 [that] Lieutenant Ford routinely made personal and hostile comments about [your] physical appearance, hair and weight" as set forth in paragraph 84 of your **COMPLAINT.**

A. 15 During 1996 and 1997, the Defendant, City of Revere and Revere Police Department did not have a policy to maintain a harassment free workplace; it did not have a reporting or investigating mechanism and it had not given each officer who joined the Department a copy of its sexual harassment policy. The Plaintiff was unable to report violations of the harassment free workplace by Lt Ford and other superiors and the Defendant had no identify and punish violators.

16. State the substance of each "hostile comment[] about [your] physical appearance, hair and weight" made by Lieutenant Ford during 1996 and 1997 as set forth in paragraph 84 of your **COMPLAINT.**

A. 16 Lt Ford's commented that Plaintiff was short a implied that she could not do the job of a police officer because of her size.

17. **IDENTIFY** each and every person who witnessed or overheard each andlor any of Lieutenant Ford's hostile comments as set forth in paragraph 84 of your **COMPLAINT.**

A. 17 Hostile comments did not only come from Lt. Ford. On or about February 1996, the Plaintiff had a friendly relationship with Sgt. Picardi. During the summer of 1996, Sgt. Picardi was on the Department's softball team. During a softball game with the Saugus Police Department a sergeant from the Revere Police Deartment made a disparaging comment about the Plaintiff's relationship with Sgt. Picardi. The Saugus softball player said that he heard that the Revere Police Department had a lot of women on the force. Sgt Griffin agreed and added " this one [referring to Sgt Picardi is fucking the Spanish one'] referring to the Plaintiff.

18. **STATE THE BASIS** for your allegation that you "experienced hardship and stress because of working conditions at the Revere Police Station" as set forth in paragraph 84 of your **COMPLAINT.**

A. 18 The Plaintiff experienced personal and financial hardship. She lost her home because she was unable to make the payments. The abusive working environment of the Revere Police Department was so intolerable that seeking leave was a fitting response. The Plaintiff's financial hardship and absence of income also created hardship for the Plaintiff and her family.

19. **STATE THE BASIS** for your allegation that you "experienced repeated emotional trauma as a result of [your] working environment" as set forth in paragraph 85 of your **COMPLAINT.**

A. 19 The repeated emotional trauma the Plaintiff describes in paragraph 85 of her complaint refer to the events that the Plaintiff experienced since 1995 when she became employed by the Defendants. They include Plaintiff's interrogation by Chief Russo in 1995. At the Police Academy Plaintiff was called to the drill instructors office at least twice a week and she was eventually told by Ms. Pires that if she couldn't handle the academy she should quit. It appeared that there was an effort to get me to quit. Chief Russo then told her that in order to continue at the academy she should go see Dr. Barry. The Plaintiff went to see Dr. Barry. Unlike Chief Russo, he showed he the anonymous and defamatory letter that had been written about the Plaintiff. The Plaintiff did not lose her employment then but was stigmatized by unfounded and unproven allegations of drug use.   The sexual innuendo by Sgt. Griffin in 1996, the racial slurs of Lt Ford and punishment assignments by Lt Foster were individually and cumulatively traumatic events.

20. Describe in detail the event(s) or incident(s) which occurred on or before June 24, 1997, which caused you to go to the hospital as set forth in paragraph 85 of your **COMPLAINT.**

A. 20 The Plaintiff experienced a panic attack and feelings of depression. She received counseling. During the period covered by this question, the policymakers of the City of Revere did not have a policy to maintain a harassment free workplace; they did not have a reporting or investigating mechanism. The Defendants had no mechanism by which they could identify and punish the violators who caused the plaintiffs panic disorder and depression.

21. **IDENTIFY** the person(s) who caused or contributed to the event(s) or incident(s) which occurred on or before June 24, 1997, which caused you to go to the hospital as set forth in paragraph 85 of your **COMPLAINT.**

A. 21 The Defendants named in this case, particularly Chief Russo, Lt Foster, Lt Ford and Chief Roy Colannino caused the Plaintiff to be anxious and insecure about her employment.

22. **IDENTIFY** the hospital to which you went on June 24, 1997, as set forth in paragraph 85 of your **COMPLAINT.**

A. 22 On June 25, 1997, Plaintiff went to the community health center.

23. If you contend that you were "experiencing loss of appetite, sleeplessness, and crying spells" as a result of the event(s) or incident(s) which occurred on or before June 24, 1997, which caused you to go to the hospital as set forth in paragraph 85 of your **COMPLAINT, STATE THE- BASIS** for this contention.

A. 23 The Plaintiff was treated for loss of appetite, sleeplessness, crying spells, anxiety attacks during the period stated in the question.

24. **IDENTIFY** all health care professional(s) who you contend made a diagnoses that your "loss of appetite, sleeplessness, and crying spells" was caused by the event(s) or incident(s) which occurred on or before June 24, 1997, which caused you to go to the hospital as set forth in paragraph 85 of your **COMPLAINT.**

A. 24 The health care professional at the East Boston Neighborhood Health Center were among the professional who treated the Plaintiff during the period stated in the question.

25. **STATE THE BASIS** for your allegation that "on or about November 11, 1997, [you] went to the hospital suffering from work-related stress" as set forth in paragraph 85 of your **COMPLAINT.**

A. 25. On November 11, 1997, the Plaintiff was treated for her anxiety at the East Boston Neighborhood Center. Valium was prescribed and she sought counseling for her work related stress.

26. Describe in detail the event(s) or incident(s) which occurred on or before November 11, 1997, which caused you to go to the hospital as set forth in paragraph 85 of your COMPLAINT.

A. 26 The Plaintiff was affected both by the events and the incidents that occurred and the general non-harassment free workplace of the Revere Police Department. The Shirley Avenue incident with Captain Roland, the Plaintiff's interrogation by Chief Russo, the sexual innuendo at the softball game, Lt Ford's racial slurs both individually and cumulatively caused the Plaintiff emotional distress.

27. IDENTIFY the person(s) who caused or contributed to the event(s) or incident(s) which occurred on or before November 11, 1997, which caused you to go to the hospital as set forth in paragraph 85 of your COMPLAINT.

A. 27 The Defendants named in this case, including Captain Roland, Chief Russo and Lt. Ford.

28. IDENTIFY the hospital to which you went on or about November 11, 1997, as set forth in paragraph 85 of your COMPLAINT.

A. 28 Plaintiff went to the East Boston Neighborhood Health Center.

29. If you contend that you were "suffering work-related stress" as a result of the event(s) or incident(s) which occurred on or before November 11, 1997, which caused you to go to the hospital as set forth in paragraph 85 of your COMPLAINT, STATE THE BASIS for this contention.

A. 29 The events or incidents occurred at the Revere Police Department or in connection with the work of the Revere Police Department.

30. IDENTIFY all health care professional(s) who you contend made a diagnoses that your "work-related stress" was caused by the event(s) or incident(s) which occurred on or before November 11, 1997, which caused you to go to the hospital as set forth in paragraph 85 of your COMPLAINT.

A. 30 The health care professionals diagnosed the plaintiff's loss of appetite, sleeplessness and anxiety. They prescribed the requisite medication. Nancy Aranoff of the East Boston Health Center was the Plaintiff's for a while. She recognized the Plaintiff's work condition as intolerable. The Plaintiff brought her friend Carmen DelValle to a session with Nancy Aranoff because she felt overwhelmed by the circumstances. Nancy Aranoff subsequently left the Center.

31. With reference to paragraph 86 of the COMPLAINT, state the dates during which you received counseling from the North Suffolk Counseling Services of Chelsea, Massachusetts.

A. 31 The North Suffolk Counseling Services indicate that they began treating the plaintiff on April 14, 2003.

32. With reference to paragraph 86 of the COMPLAINT, IDENTIFY the health care professional(s) and/or counselor(s) from whom you received counseling from the North Suffolk Counseling Services of Chelsea, Massachusetts.

A. 32 Dr. Christopher Harmon, M.D. is the health care professional from whom Plaintiff received treatment at the North Suffolk Counseling Services. Prior to Dr. Harmon, there

was Darlene Millman and Elsi Parilla of Beth Israel Deaconess Hospital, for a short and unproductive period.

33. Describe in detail the physical disability which prevents you from "perform[ing] the essential tasks of a Police Officer without posing a risk to [yourself], [your] fellow officers and/or the public at large" as set forth in paragraph 86 of your COMPLAINT.

A. 33 The conclusion that the Plaintiff had a physical disability which prevented her from "performing the essential tasks of a Police Officer without posing a risk to [yourself], [your] fellow officers and/or the public at large" was made by Dr. Geurrini. The Plaintiff fell and hurt her left thigh on the metal bleachers at Ft Devens.

34. State the exact date, or the closest approximation you have thereof, upon which you became physically disabled as set forth in paragraph 86 of your COMPLAINT.

A. 34 The Plaintiff was physically injured on September 10, 2002.

35. Has the physically disability from which you allegedly suffer as set forth in paragraph 86 of your COMPLAINT been continuous and uninterrupted to the present date from the date of onset identified in response to interrogatory 34?

A. 35 The Plaintiffs physical disability has been continuous and uninterrupted since September 10, 2002.

36. If the physically disability from which you allegedly suffer as set forth in paragraph 86 of your COMPLAINT has not been continuous and uninterrupted to the present date from the date of onset identified in response to interrogatory 34, state the inclusive dates of each and every period of said disability.

A. 36. The Plaintiff's physical disability has been continuous and uninterrupted since September 10, 2002.

37. State the exact date, or the closest approximation you have thereof, for the date to which you are referring when you state "[in the winter of 1997" as set forth in paragraph 87 of your COMPLAINT.

A. 37 On or about December 15, 1997, Captain Chaulk again assigned plaintiff to a walking route and sat in his cruiser and observed her as she walked back and forth. He had previously ordered her out of a cruiser, ordered her to do a walking route and gave the cruiser to a male officer who appeared intoxicated. The male officer, Kelly, appeared intoxicated and the Plaintiff could smell alcohol on his breath.

38. **STATE THE BASIS** for your allegation that "[in the winter of 1997, [you] were placed on 'walking routes (sic) more frequently than the male members of the Department" as set forth in paragraph 87 of your **COMPLAINT.**

A. 38 While Plaintiff was on one of her walking routes in December 1997, she became visibly upset and confided in Officer Kevin Colaninno that she was upset because these walking routes were being assigned as punishment. He confided that he did not understand why she was being given so many walking routes.

39. State the exact date, or the closest approximation you have thereof, for the date to which you are referring when you state that "[on one occasion, that winter, the Captain ordered [you] out of a cruiser and placed [you] of 1997" as set forth in paragraph 87 of your **COMPLAINT.**

A. 39 The occasion on which  Captain Chaulk ordered the Plaintiff out of the cruiser, placed on a walking route was in December 1997, prior to the incidents of December 15, 1997.as spics and African-American as Niggers.

40. **STATE THE BASIS** for your allegation that you were placed on the walking route "without work related justification" as set forth in paragraph 87 of your **COMPLAINT.**

A. 40 The interruption of cruiser patrol and its replacement with a walking route, the frequency of the walking routes appeared to the Plaintiff to be motivated by a desire to harass and punish rather than a need to protect the public or educate the officer. Lt Murphy had ordered walking routes and Sgt Doherty confirmed this fact although he did not know the reason for the decision.

41. Describe in detail "the physical and emotional strain of the job" to which you refer in paragraph 87 of your **COMPLAINT.**

A. 41 The physical and emotional strain of the Plaintiff's job was cumulative. It was caused by an environment in which there was no anti-discrimination or harassment policy, no complaint reporting mechanism, and no commitment to maintaining a harassment free workplace. The following emotionally charged incidents are among the incidents that  increased the strain on the Plaintiff. Chief Russo's recorded interrogation and the veiled threat of early termination; Lt Ford's racial slurs; sexual innuendo and name-calling at the softball game. The absence of a sexual harassment policy and the absence of a reporting mechanism aggravated the stress and the sense of isolation experienced by the Plaintiff. The policymakers of the City of Revere and the supervisors upon whom it conferred authority caused the physical and emotional strain experienced by the plaintiff.

42. State the exact date, or the closest approximation you have thereof, for the date to which you are referring when you state that "[as a direct and proximate cause of the

Defendant's conduct [you were] forced to withdraw from the Revere Police Department" as set forth in paragraph 88 of your **COMPLAINT.**

A. 42 In a letter dated April 2, 2001, Mayor Thomas Ambrosino acknowledged unpaid leave of absence for the Plaintiff effective Friday, March 16, 2001 until June 16, 2001 due to medical reasons. The reason for the Plaintiff's request was that her work conditions had become so intolerable that she had become ill and unable to function at the Revere Police Department. The mayor's acknowledgement of an unpaid leave of absence was tantgible and the equivalent of a termination.

43. **STATE THE BASIS** for your allegation that "[as a direct and proximate cause of the Defendant's conduct [you were] forced to withdraw from the Revere Police Department" as set forth in paragraph 88 of your **COMPLAINT.**

A. 43 The sexual harassment experienced by the Plaintiff was so intolerable that she and two other female police officers filed complaints with the Massachusetts Commission Against Discrimination and accepted unpaid leaves of absence which is the functional equivalent of a termination. Except for the conduct of the Defendants the Plaintiff would have continued her employment as a police officer.

44. State the exact date, or the closest approximation you have thereof, for the date to which you are referring when you state that "[prior to [your] withdrawal, [you] requested a leave of absence with pay" as set forth in paragraph 88 of your **COMPLAINT.**

A. 44 In a letter dated April 2, 2001, Mayor Thomas Ambrosino acknowledged unpaid leaves of absence effective Friday, Mrch 16, 2001 until June 16, 2001 due to medical reasons. Present at the meeting with the Chief Reardon, was Attorney Dilday, Captain Murphy and the Plaintiff.

45. **STATE THE BASIS** for your allegation that being offered a leave of absence without pay "constituted disparate treatment of [you]" as set forth in paragraph 88 of your **COMPLAINT.**

A. 45 Plaintiff requested leave with pay for medical reasons. Mayor Ambrosino provided leave without pay. The decision was based on a policy used by the Revere Police Department that does not recognize the parity between physical injury and psychological injury. This policy is a violation if state law and decisions based on this policy are invalid.

46. **STATE THE BASIS** for your allegation that you were "constructively discharged" as set forth in paragraph 88 of your **COMPLAINT.**

A. 46 The Plaintiff requested a leave of absence for medical reasons because her working environment was intolerable and had made her ill. She constantly required

medication to function in that environment. Being forced to leave her employment under these circumstances constitutes constructive discharge. The action of Mayor Ambrosino was the equivalent of a termination. The Plaintiff was forced to leave the job without pay and without income. She lost her home and suffered related financial adversity as a result of her constructive discharge. The loss of her job was a traumatic decision that continues to affect her financially and psychologically to this day.

47. State the exact dates, or the closest approximation you have thereof, for the dates to which you are referring when you state that "[you] returned to work temporarily" as set forth in paragraph 88 of your **COMPLAINT.**

A. 47. On or about October 2001, the plaintiff returned to the Revere Police Department.

48. **STATE THE BASIS** for your allegation that you were "unable to return to [your] usual work in an environment free from sexual hostility" as set forth in paragraph 88 of your **COMPLAINT.**

A. 48. The Chief of Police offered the Plaintiff "light duty" when she returned in October 2001. The Plaintiff still had the medical condition that caused her to leave in March 2001. The Union objected because the plaintiff was unable to perform the regular duties of a police officer. The environment at the Revere Police Department had not changed. The Plaintiff was caught between the Chief who coerced her into returning to "light duty" and the Union rules that required her to perform the regular duties of a police officer. The plaintiff met with the Union representative and its legal counsel. This situation created a stressful and tense situation for the plaintiff.

49. **IDENTIFY** the supervisors who referred to "Hispanics as 'Spics' and African-Americans as 'Niggers'" as set forth in paragraph 90 of your **COMPLAINT.**

A. 49. On or about November 1998, Lt. Ford asked the plaintiff, in the presence of Officer Burke, "what are you spanish, mexican, cuban? You're all a bunch of cockroaches!" On July 1, 2000, Lt Ford made his "sewerage people" remark referring to Hispanics from City of Chelsea. The policymakers of the City of Revere did not have an anti-harassment policy and no complaint reporting mechanism. The Plaintiff had not received a copy of the Defendants policy when she became a member of the Department. This policy of deliberate indifference caused the environment that caused the Plaintiff's constructive discharge. The Plaintiff was unable to work in an environment free of supervisors and agents of the policymakers who used racially and sexually offensive language and who described Hispanics as Spics and African-Americans as Niggers.

50. **IDENTIFY** the coworkers who referred to "Hispanics as 'Spics' and African-Americans as 'Niggers'" as set forth in paragraph 90 of your **COMPLAINT.**

A. 50 The coworkers were officers of the Revere Police Department who, without a policy to maintain a harassment free environment and a complaint reporting mechanism

and a mechanism for punishing violators, felt free to be offensive and to refer to Hispanics

51. State the exact dates, or the closest approximation you have thereof, for the dates upon which either a supervisor or coworker referred to "Hispanics as 'Spics' and African-Americans as 'Niggers'" as set forth in paragraph 90 of your **COMPLAINT** and provide the identity for the speaker(s) for such date(s).

A. 51. The Defendants, policymakers, had no policy, no complaint reporting mechanism and method for identifying and punishing the officers and supervisors who created the offensive and hostile work environment where the terms Spics and Niggers were used. The policymakers deliberate indifference to this condition caused injury to the Plaintiff

52. State the exact date(s), or the closest approximation you have thereof, for the date(s) upon which or during which the altered booking photo was "circulat[ed] within the Revere Police Department" as set forth in paragraph 90 of your **COMPLAINT.**

A. 52 The Defendants, policymakers, had no policy, no complaint reporting mechanism, no investigative mechanism and no plan by which to identify the officers and supervisors who circulated the racially offensive material attached as Exhibit H to plaintiff's complaint.

53. **IDENTIFY** the person(s) who created the altered booking photo was "circulat[ed] within the Revere Police Department" as set forth in paragraph 90 of your **COMPLAINT.**

A. 53 The persons who created the racially offensive material attached as **Exhibit H** to plaintiff's complaint were members of the Revere Police Department who had access to the booking photograph. The Defendants, policymakers, had no policy, no complaint mechanism, no investigative mechanism and plan that would identify and punish the officers and supervisors who created such a racially offensive caricature of an African-American.

54. **IDENTIFY** the person(s) who circulated the altered booking photo "within the Revere Police Department" as set forth in paragraph 90 of your **COMPLAINT.**

A. 54 The person or persons who circulated the racially offensive booking photo within the Revere Police Department were members of the Revere Police Department. . The Defendants, policymakers, had no policy, no complaint mechanism, no investigative mechanism and plan that would identify and punish the officers and supervisors who circulated such a racially offensive caricature of an African-American.

55. **STATE THE BASIS** for your allegation that you "experience (sic) stress, fatigue, loss of appetite and sleeplessness as a direct result of this offensive and discriminatory environment" as set forth in paragraph 90 of your **COMPLAINT.**

A. 55 The environment of the Revere Police Department was offensive and discrimatory. The Plaintiff's subjective experience of this environment caused stress, fatigue, loss of appetite and sleeplessness.

56. **IDENTIFY** all health care professional(s) who you contend made a diagnoses that your "stress, fatigue, loss of appetite and sleeplessness" was caused by the "offensive and discriminatory environment" as set forth in paragraph 90 of your **COMPLAINT.**

A. 56 Health care professionals have provided objective confirmation that the Plaintiff's subjective experiences are causally connected to the offensive and discriminating environment in which she worked. The following health care professionals have confirmed the Plaintiff's subjective experiences: Dr. Jason Merola, M.D.; Dr. Darlene Millman. M.D.; Dr. Christopher Harmon, M.D.; Dr. Joseph Albeck, M.D.; Dr. Thomas Sciascia, M.D.; Dr. Ivyn Lurie, M.D. These health car professionals have confirmed the causal relationship between the plaintiff's injury and the hostile work environment/sexual harassment that caused the disability. The Commonwealth of Massachusetts, in its adjudication of Plaintiff's retirement disability, also found this causal connection.

57. **STATE THE BASIS** for your allegation that City of Revere Police Department did not have a sexual harassment policy as of January 7, 1999, as set forth in paragraph 91 of your **COMPLAINT.**

A. 57 The Plaintiff did not receive a sexual harassment handbook when she joined the Revere Police Department on September 21, 1995. The Plaintiff is aware of a sexual harassment policy dated April 1, 1999, more than four years after the Plaintiff started her employment with the Revere Police Department. The absence of a sexual harassment policy and a maternity leave policy were among the grievances discussed at the Department meeting on January 7, 1999.

58. **STATE THE BASIS** for your allegation that City of Revere Police Department did not have a maternity leave policy as of January 7, 1999, as set forth in paragraph 91 of your **COMPLAINT.**

A. 58 The Plaintiff was unaware of the existence of a maternity leave policy at the Revere Police Department. The absence of a maternity leave policy was a topic discussed at the January 7, 1999 meeting. The topic was also discussed on a regular basis during the word day at the Department because Lt. Foster's daughter, on of the seven recruits, was pregnant during this period and it was known that no such policy existed.

59. **STATE THE BASIS** for your allegation that City of Revere Police Department was in violation of M.G.L.c 151 § 3 (a)(l) as of January 7, 1999, as set forth in paragraph 91 of your **COMPLAINT.**

A. 59  M.G.L.c. 151B § 3A requires all employers to promote a workplace free of sexual harassment. Section (b) requires that every employer adopt a policy against sexual harassment which must include a statement that sexual harassment in the workplace is unlawful. The law also requires a statement that retaliation against an employee who files a complaint or cooperates in an investigation. The requirements of the contents of sexual harassment policy are stated in detail in M.G.L.c. 151B § 3A (b)(1)(i-vi).  As of January 7, 1999, the Plaintiff had not been handed such a policy and was unaware of the existence of such a policy. This policy of deliberate indifference by the policy makers of the City of Revere caused the Plaintiff's injury.

60. **STATE THE BASIS** for your allegation that City of Revere Police Department took no action on the report and recommendations of January 14, 1999, as set forth in paragraph 93 of your **COMPLAINT.**

A. 60  The Plaintiff did not experience any change or see any actions taken as a result of the meeting on January 7, 1999. a report was published on January 14, 1999.

61. **STATE THE BASIS** for your allegation that the "environment seemed to become more hostile" after the January 7, 1999 meeting as set forth in paragraph 93 of your **COMPLAINT.**

A. 61  After the January 7, 1999 meeting, two female officers, while working the night shift, had all eight tires of their two cruisers slashed in the parking lot of the International House of Pancakes. The slashing of all the tires on the cruisers was an intentional act. The incident created great fear.  The intensity of the verbal assaults also seemed to increase. On February 28, 2000, Lt Foster walked into the radio room and angrily demanded that the plaintiff "pick up her hair." Plaintiff responded that her hair was up. The remark seemed personal. The Plaintiff was unaware that she was in violation of any work-related dress code. Lt Fster also repeatedly ridiculed the Plaintiff's hearing disability instead of using his position to provide reasonable accommodation. On January 23, 2001, he remarked loudly, " why don't you turn up those hearing aids". On March 1, 2001, Lt Foster made a similar remark; "why don't you put the phone in you good ear." These public remarks did not constitute reasonable accommodation to the plaintiff's disability. During the week of December 16, 2001, Officer Crevoiserat had been abusive rude and insulting to the Plaintiff using the Department's radio waves. The outburst was heard by Maria Rizzo, a local business person who approached the Plaintiff and expressed outrage at the conduct of Officer Crevoiserat. This exchange was also heard by the owner of EMS towing and Sgt Picardi. All parties approached the Plaintiff and expressed outrage at the disrespectful treatment she received from Officer Crevoiserat.

62. If you contend that the vandalism of the assigned cruiser as set forth in paragraph 93 of your **COMPLAINT** was caused by any employee of the City of Revere Police Department, **STATE THE BASIS** for this contention.

A. 62 All eight tires of the two cruisers assigned to the two female officers were slashed in the parking lot of the International house of Pancakes. The Defendants, policymakers, had no policy, no complaint mechanism, no investigative mechanism and no plan that would identify and punish the officers and supervisors who intimidated the female, vandalized their vehicle and rendered them immobile. The policymakers are responsible for creating an environment in which such a brazen act of intimidation can occur without the offending parties being investigated, identified or punished.

63. If your answer to Interrogatory No. 62 is an affirmative of the contention, **IDENTIFY** the employee(s) of the City of Revere Police Department who caused or contributed to the vandalism set forth in paragraph 93 of your **COMPLAINT.**

A. 63 Because of the deliberate indifference of the policymakers of the City of Revere, this brazen act of vandalism and intimidation remains uninvestigated and the perpetrators unidentified and unpunished.

64. If you contend that the vandalism of the assigned cruiser as set forth in paragraph 93 of your **COMPLAINT** was caused by any employee of the City of Revere other than an employee of the Police Department, **STATE THE BASIS** for this contention.
A. 64 Because of the deliberate indifference of the policymakers of the City of Revere, it is not known whether the perpetrators were employees of the City of Revere other than employees of the Revere Police Department.

65. If your answer to Interrogatory No. 64 is an affirmative of the contention, **IDENTIFY** the employee(s) of the City of Revere who caused or contributed to the vandalism set forth in paragraph 93 of your **COMPLAINT.**

A. 65 The parties who contributed to the vandalism set forth in paragraph 93 of plaintiff's complaint are the policymakers whose policy of deliberate indifference created the environment in which such an act could be committed and remain uninvestigated and unpunished.

66. **STATE THE BASIS** for your allegation that you "began to fear for [your] physical safety" as set forth in paragraph 93 of your **COMPLAINT.**

A. 66 Fearing for one's physical safety is a state of mind caused by an intentional act of vandalism. That vandalism was an intentional act of hostility. The Plaintiff had a

reasonable basis to fear that a cruiser to which she was assigned could be vandalized in a similar fashion and she could be isolated immobile and in physical danger.

67. **STATE THE BASIS** for your allegation that "other females in the Department began to fear for their physical safety" as set forth in paragraph 93 of your **COMPLAINT.**

A. 67 The incident of vandalism was aimed at females in two cruisers. Other female officers in the Department heard of this incident. They were afraid with good reason that could be subject to the same vandalism and be placed in physical danger.

68. **IDENTIFY** the "other females in the Department" to whom you are referring in paragraph 93 of your **COMPLAINT.**

A. 68 The other females in the Department were
    P.O. Pechner-James
    P.O. Fernandez
    P.O. Curcio
    P.O. Malatesta
    P.O. Downing
    P.O. Fish
    P.O. Carey

69. **IDENTIFY** the person(s) who hung the women's underwear on the bulletin board in the guard room of the Revere Police Department as alleged in paragraph 94 of your **COMPLAINT.**

A. 69 On or about February 26, 2001, a pair of women's undergarments were hung on the bulletin board in the guard room where they were visible to the Department and the general public. This act was an obvious violation of the sexual harassment policy which was dated April 1, 1999. The Defendants, policymakers, had a stated policy but no complaint mechanism, no investigative mechanism and no plan that would identify and punish the officers and supervisors who were responsible for this obvious violation af an existing policy.. The policymakers are responsible for creating an environment in which such an obvious violation of a stated policy could occur without the offending parties being investigated, identified or punished.

70. **STATE THE BASIS** for your identification of the person(s) named in response to interrogatory No. 69.

A. 70 The basis of the identification of the person named in Answer 69 would have been known if an investigation had been conducted. The Plaintiff, and other female officers, identified, photographed and stored the article. Its presence was known to Lt Foster and other supervisors. There was no mechanism to investigate the reason for its presence or the party responsible for its presence. The policymakers are responsible for creating an

environment in which such an obvious violation of a stated policy could occur without the offending parties being investigated, identified or punished.

71. State the exact date and time, or the closest approximation you have thereof, for when you first noticed the underwear which was hung on the bulletin board in the guard room of the Revere Police Department as alleged in paragraph 94 of your **COMPLAINT.**

A. 71 The Plaintiff observed the underwear hung on the bulletin board on February 26, 2001.

72. Describe in detail what, if any, actions you took as a result of seeing the underwear hanging on the bulletin board in the guard room of the Revere Police Department as alleged in paragraph 94 of your **COMPLAINT.**

A. 72 The Plaintiff took picture of the underwear. Plaintiff, along with Officer Malatesta retrieved a plastic bag, put the underwear in it and took it in to custody.

73. State the exact date, or the closest approximation you have thereof, for the date in 1998 on which "[you] observed a penis drawn on the chalk board located by the radio communication room" as set forth in paragraph 96 of your **COMPLAINT.**

A. 73 During 1998, the plaintiff observed a penis drawn on the chalk board by the communications room.

74. **IDENTIFY** the "other female officers" who "observed [the] penis drawn on the chalk board located by the radio communication room" as set forth in paragraph 96 of your **COMPLAINT.**

A. 74 Officer Malatesta and Officer Carey also observed the penis drawn on the chalk board by the communications room.

75. **IDENTIFY** the person(s) who drew the penis "on the chalk board located by the radio communication room" as set forth in paragraph 96 of your **COMPLAINT.**

A. 75 The act in 1998 of drawing a penis in a place that was highly visible to both the Department and the public was an obvious violation of a workplace free of sexual harassment. The person who drew the penis has not been identified because The policymakers of the City of Revere had no sexual harassment policy, had not handed out to members of the Department a copy of a sexual harassment handbook, and had no mechanism for reporting, investigating, or punishing such obvious violations of the stated policy. The policymakers are responsible for creating an environment in which such an obvious violation of a stated policy could occur without the offending parties being investigated, identified or punished.

76. **STATE THE BASIS** for your identification of the person named in response to

interrogatory No. 70.

A. 76 The person or person remain unidentified for the reasons stated in answer to Interrogatory No 75.

77. Identify the "incidents" to which you are referring in the first sentence of paragraph 97 of your **COMPLAINT.**

A. 77 The incidents include the underwear incident and the penis incident.

78. **IDENTIFY** the "other female officers" who "found these incidents offensive, demeaning, and intimidating" as set forth in paragraph 97 of your **COMPLAINT.**

A. 78 The other female officers are:

> P.O. Pechner-James
> P.O. Fernandez
> P.O. Curcio
> P.O. Malatesta
> P.O. Downing
> P.O. Fish
> P.O. Carey

79. **IDENTIFY** the officer in charge of roll call referred to in paragraph 99 of your **COMPLAINT.**

A. 79 The members of the Department present at roll call were Officers Curcio, Malvarosa, Graff, Sgt Randall and Lt McLaughlin.

80. **IDENTIFY** the "white female officers" to whom you are referring in paragraph 100 of your **COMPLAINT.**

A.80  The Plaintiff is Hispanic; she is the only female officer who could not be described as a white female.  The term refers to all other female officers in the Department. Specifically, two other female officers in the Department wore their hair in the same manner as the Plaintiff to see if they too would be reprimanded. They were not.

81. **IDENTIFY** the "other male officers" to whom you are referring in paragraph 100 of your **COMPLAINT.**

A. 81 The other male officers are not identified by name but are the male officers present in the room at the time of the incident.

82. **STATE THE BASIS** for your allegation that your "hairstyle is not a bona fide personnel decision for Lieutenant Foster" as set forth in paragraph 100 of your **COMPLAINT.**

A.82 Lt Foster stated no reason why the Plaintiff's hairstyle was a bonafide personnel issue.

83. **STATE THE BASIS** for your allegation that your non-assignment to work the radio from March to May, 2000 "posed a formidable barrier to [your] full participation in the work of the Revere Police Department" as set forth in paragraph 101 of your **COMPLAINT.**

A. 83 The ability to operate the radio and communications system is an important part of the work of the Revere Police Department. Lt Foster's decided to ridicule the Plaintiff instead of providing reasonable accomodations for her disability. Because of Lt Foster's position this deprivation was formidable barrier to her full participation in the communications work of the Department. This decision deprived her of the opportunity to gain valuable skills, experience and confidence in an important area of police work. The Plaintiff was substituting for Officer Malvarosa on the radio. Lt Foster called the station and asked Lt McLaughlin to get her off the radio. Lt McLaughlin communicated Lt Foster's orders to the Plaintiff. The Plaintiff asked Lt McLaughlin the reason for the change. He told her that Lt Foster did not want her on the radio. Later that day, Lt Foster, who does not know sign language, came in to the radio room and started making hand gestures and that resembled, but were not sign language, at Plaintiff.

84. **STATE THE BASIS** for your allegation that your non-assignment to work the radio from March to May, 2000 was not a bona fide personnel decision as set forth in paragraph 101 of your **COMPLAINT.**

A. 84 The Plaintiff's non-assignment to work the radio and communications systems deprived her of valuable work experience. This decision was simply a deprivation. It did not constitute reasonable accommodation.

85. State the exact dates, or the closest approximation you have thereof, for the dates upon which "Lieutenant Foster routinely made disparaging remarks and mocking sign language gestures" in relation to your hearing impairment as set forth in paragraph 102 of your **COMPLAINT** and provide the substance of the remark and or the nature of the "mocking sign language gesture" for each and every such date(s).

A. 85 September 2000, January 2001, and March 2001 are some of the dates on which Lt Foster made inappropriate gestures and comments about the Plaintiff's hearing disability. The mocking sign language, as stated, consisted of making gestures with his hands that looked like sign but were not. He would at the same time mouth words without making any sounds and then remark why don't you turn up your hearing aid.

86. **IDENTIFY** the "other officers" to whom you are referring in paragraph 102 of your

**COMPLAINT.**

A. 86 Lt Foster made the remark in the presence of Officer Bruker, Officer Malvarosa, and Lt McLaughlin on March 1, 2001. He made the remark on a day when the printer was working, Officer Bruker was speaking to the plaintiff and there was in general a lot of noise in the room.

87. State the exact dates, or the closest approximation you have thereof, for the dates upon which "[d]isrespectful treatment was practiced by male officers" as set forth in paragraph 103 of your **COMPLAINT** and describe in detail the "disrespectful treatment ·for each and every such date(s).

A. 87 Paragraph 103 describes in detail disrespectful treatment practiced by Officer Crevoiserat on or about December 7, 2001. Officer Crevoiserat used the radio system to yell and engage in abusive conduct toward the plaintiff. Members of the public overheard his outburst on the radio scanner. Two business owners, and Sgt Picardi expressed outrage at the disrespectful manner in which Officer Crevoiserat had treated the plaintiff on the Department radio system. Lt. John Goodwin acknowledged that Plaintiff had a rough night and inquired whether I was she was alright.

88. **IDENTIFY** the "male officers" who practiced disrespectful treatment as set forth in paragraph 102 of your **COMPLAINT.**

A. 88 Paragraph identified Lt Foster as a male officer who practiced disrespectful treatment.

89. State the exact date, or the closest approximation you have thereof, for the date of your meeting with Chief Russo as set forth in paragraph 104 of your **COMPLAINT**

A. 89 Chief Russo ordered the Plaintiff into his office for the interrogation on or about September 21, 1995.

90. **STATE THE BASIS** for your allegation that you were intimidated by your meeting with Chief Russo as set forth in paragraph 104 of your **COMPLAINT.**

A. 90 The Plaintiff was a new recruit. She was summoned to the Chief's office and confronted with the existence of an anonymous letter that accused her of being suicidal and a drug user. The Plaintiff did not want or seek the meeting or seek to have the interrogation recorded. The Plaintiff was alone and unrepresented. She felt intimidated by the Chief and the entire proceeding. Dr Barry, the Department's psychologist, saw the anonymous letter and agreed that the contents were designed to hurt me and maybe even to get me fired from my employment.

91. **STATE THE BASIS** for your allegation that Chief Russo increased your fear by asking to record the meeting as set forth in paragraph 104 of your **COMPLAINT.**

A. 91 The Plaintiff was a new recruit. She was summoned to Chief Russo's office. This event , by itself, is intimidating. The chief confronted her with allegations of drug use and being suicidal; then insisted on recording the interrogation thereby creating a record that could be used against the Plaintiff. The Plaintiff had reason to fear job loss. Soon after this meeting there was a surprise drug test. The Plaintiff passed.

92. **STATE THE BASIS** for your allegation that you reluctantly agreed to allow Chief Russo to record the meeting because you were "afraid that [you] would not be allowed to finish [your] training and would lose the position that [you] had fought so hard to achieve" as set forth in paragraph 104 of your **COMPLAINT.**

A. 92 The Plaintiff had fought hard, prepared herself, pursued the requisite educational opportunities and secured entry to the Police Academy. The interrogation and the creation of the record seemed like the beginning of a process that could derail her career and have other implications.

93. Describe in detail what you mean by the allegation that you "had fought so hard to achieve" your position as an attendee of the Police Academy as set forth in paragraph 104 of your **COMPLAINT.**

A. 93 The Plaintiff had prepared herself and secured admission to the police academy. She studied and worked hard while at the academy and succeeded in becoming a police officer.

94. State the exact date, or the closest approximation you have thereof, on which you saw Mayor Ambrosino as alleged in paragraph 105 of your **COMPLAINT.**

A.94 The Plaintiff had a meeting with Mayor Thomas Ambrosino in March 2001. The Plaintiff told the Mayor that both the Chief and the Captain were aware of her experiences and that those experiences continued. The Plaintiff also told the Mayor that she had spoken with Officer Fish and she knew that Officer Fish had informed him of the intolerable work conditions in the Department. The Mayor told the Plaintiff that she should file a complaint with the Massachusetts Commission Against Discrimination.

95. Is the meeting with the Mayor alleged in paragraph 105 of your **COMPLAINT** the same meeting as the one alleged in paragraph 49 of your **COMPLAINT?**

A. 95 The meeting referred to in paragraph 105 is the same meeting referred to in paragraph 49 of plaintiff's complaint.

96. **IDENTIFY** every person who was present during your meeting with Mayor Ambrosino referred to in paragraph 105 of your **COMPLAINT.**

A. 96 There were no other parties present during the meeting with the Mayor.

97. **STATE THE BASIS** for your allegation that you "requested the paid leave normally given to male officers injured on the job" as set forth in paragraph 105 of your **COMPLAINT.**

A. 97 The request for leave with pay that Plaintiff requested was the same leave that Revere Police Department officers have requested and received back in the "good old days" when there no female officers.

98. **IDENTIFY** the "male offers injured on the job" who were given "paid leave" as set forth in paragraph 105 of your **COMPLAINT.**

A. 98  The information on the male officers injured on the job are under the custody and control of the Defendants. This act constitutes discrimination. The policymakers of the city of Revere did not have an anti-discrimination policy, no mechanism for reporting, investigating or punishing acts of discrimination. Their deliberate indifference and persistence in this practice caused injury ti the plaintiff.

99. For each male officer identified in response to Interrogatory No. 98, describe in detail the date and circumstances of their injury which resulted in their receiving paid leave.

A. 99 The Defendants have under its custody and control the details, the dates and the circumstances of their injury which resulted in their receiving paid leave.

100. State the exact date, or the closest approximation you have thereof, on which you returned to work as alleged in paragraph 105 of your **COMPLAINT.**

A. 100 The Plaintiff returned to work on or about October 2001.

101. **STATE THE BASIS** for your allegation that you were "unable to work in the environment of the Revere Police Department" after your return as set forth in paragraph 105 of your **COMPLAINT.**

A. 101 The environment at the Revere Police Department that Plaintiff returned to was hostile. The Chief insisted that she return even though she was unable to assume the usual duties of a police officer. The Chief insisted that she return, despite medical recommendations to the contrary. The union objected to the Plaintiff being put on light duty. They considered her return to other than regular duty was a violation of the union contract. The Plaintiff was not able to perform her regular duties and she was unable to the job created by the Chief. Her working conditions were both subjectively and objectively intolerable. Insomnia, vomiting, loss of appetite were making it impossible for me to work in this environment.

102. Do the allegations of paragraph 105 of your **COMPLAINT** describe the same incident or event as alleged in paragraph 88 of your **COMPLAINT?**

A. 102 The environment in which the Plaintiff was unable to work is present in both paragraphs 88 and 105.

103. **STATE THE BASIS** for your allegation that you "suffered sexual harassment and a hostile work environment as defined by M.G.L.c. 151B 4" as set forth in paragraph 106 of your **COMPLAINT.**

A. 103 M.G.L.c. 151B §4 makes it an unlawful practice for an employer, by himself or this agent, because of the race...sex, .. to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or p rivileges of employment... M.G.L.c. 151B §3A further refines discrimination on the basis of sex. The provisions of M.G.L.c. 151B §3A(a) requires that "all employers..shall promote a workplace free of sexual harassment. The Plaintiff's experiences at the Revere Police Department fall squarely within the provision of these statutes.

104. **STATE THE BASIS** for your allegation that you "were deprived of full participation in the work of the Revere Police Department by the Defendants acting in their supervisory capacities" as set forth in paragraph 106 of your **COMPLAINT.**

A. 104 The Defendants named in this case were supervisors of the Plaintiff and agents of the policymakers of the City of Revere. It was the duty of the policymakers to provide the Plaintiff with a harassment free environment. Lt Ford made racial slurs, Lt Foster ridiculed the Plaintiff's hearing disability instead of making reasonable accommodations. Full participation is not possible in a workplace that is not free of harassment and discrimination. This lack of full participation was caused by the policy makers because they had no investigative mechanism, no reporting mechanism and no mechanism for punishing violators of the law. Their deliberate indifference deprived the Plaintiff of her right to participate fully in the compensation, terms and conditions of her employment at the Revere Police Department. The compensation of members of the Revere Police Department is influenced by promotion, access to paid detail work and favorable assignments. A hostile environment affects compensation of the Plaintiff by creating an environment hostile to promotion, access to paid detail work and favorable assignments. Lt Foster denied the Plaintiff permission to work in the Teen Center. Plaintiff had to secure permission from the Chief to pursue this assignment.

105. **IDENTIFY** the "defendants" to whom you are referring in the first sentence of paragraph 106 of your **COMPLAINT.**

A. 105 The Defendants acting in their supervisory capacity are named in the complaint: Terrence Reardon, Bernard Foster, Salvatore Santoro, Roy Colannino, Frederick Roland, Thomas Doherty, John Nelson, James Russo, Michael Murphy and Steven Ford.

106. **IDENTIFY** the physician who you contend documented your emotional disability as set forth in paragraph 124 of your **COMPLAINT**.

A. 106 The physicians who documented the Plaintiff's emotional disability are the following: Dr. Jason Merola, M.D.; Dr. Darlene Millman, M.D.; Dr. Christopher Harmon, M.D.; Dr. Joseph Albeck, M.D.; Dr. Thomas Sciascia, M.D; Dr. McIvyn Laurie, M.D. These health car professionals have confirmed the causal relationship between the plaintiff's injury and the hostile work environment/sexual harassment that caused the disability. The Commonwealth of Massachusetts, in its adjudication of Plaintiff's retirement disability, also found this causal connection.

107. **IDENTIFY** all health care professional(s) who you contend made a diagnoses that your "emotional disability" was caused by the alleged hostile work environment and/or the sexual and/or racial harassment as set forth in paragraph 124 of your **COMPLAINT**.

A. 107 The health care professionals named in theAnswer to Interrogatory 106 above, all recognized the causal link between the hostile work environment/sexual harassment and the Plaintiffs emotional disability.

108. Are the alleged incidents set forth in paragraph 125 of your **COMPLAINT** the same incidents as set forth in paragraphs 98 and 90 of your **COMPLAINT**?

A. 108 The offensive remarks and events described in paragraphs 90 and 98 are included in paragraph 125 of the plaintiff's complaint.

109. If you answer to interrogatory No. 107 is in the negative, **STATE THE BASIS** for your allegations as set forth in paragraph 125 of your **COMPLAINT**.

A. 109 The answer to Interrogatory 107 is not negative.

110. Is the incident set forth in paragraph 126 of your **COMPLAINT** the same incident as set forth in paragraph 90 of your **COMPLAINT**?

A. 110 The part of paragraph 125 that is the same as paragraph 90 is the description of the caricature of the African-American with a grass skirt, spear, and flies emanating from his head attached to Plaintiff's complaint as **Exhibit H.**

111. If you answer to interrogatory No. 109 is in the negative, **STATE THE BASIS** for your allegations as set forth in paragraph 126 of your **COMPLAINT**.

A. 111 The answer to Interrogatory 109 is not negative.

112. Are the alleged incidents involving Lieutenant Foster set forth in paragraph 127 of your **COMPLAINT** the same incidents as set forth in paragraphs 100 to 103 of your **COMPLAINT**?

A. 112 The incident in paragraph 100 involved Lt Foster's behavior on February 28, 2000. On that day, Lt Foster walked into the radio room and angrily told Plaintiff to pick up her hair. "What do you think you're special," he asked. Plaintiff replied that her hair was up. He told her that if she did not put her hair up she would have to cut it. He did not make the same demand on Officer Pechner-James when she wore her hair in the same style or Officer Fish when she wore her hair in the same style.  Paragraph 103 involved Lt Foster's remark Why don't you turn up those hearing aids? The latter incident is an example of how Lt Foster ridiculed the Plaintiff's disability instead of making reasonable accommodation. Paragraph 127 also includes an example of Lt Foster using walking assignments as punishment for female officers.

113. If you answer to interrogatory No. 111 is in the negative, **STATE THE BASIS** for your allegations as set forth in paragraph 127 of your **COMPLAINT.**

A. 113 The answer to Interrogatory 111 is not negative.

114. Is the pornography to which you refer in paragraph 128 of your **COMPLAINT** the same pornography to which you refer in paragraphs 62 to 64 of your **COMPLAINT?**

A. 114 The pornography referred to in paragraph 128 is the the pornography used and displayed by Sgt Nelson and mentioned in paragraphs 60 and 64.

115. If you answer to interrogatory No. 113 is in the negative, **STATE THE BASIS** for your allegations as regarding pornography set forth in paragraph 128 of your **COMPLAINT.**

A. 115 The answer to Interrogatory 113 is not negative.

116. If you answer to interrogatory No. 113 is in the affirmative, state the exact date, or the closest approximation you have thereof, of the alleged incident involving Sergeant Nelson as set forth in paragraph 63 of your **COMPLAINT**

A. 116 The incident involving Sgt Nelson occurred after the Plaintiff began her employment and before the existence of the sexual harassment policy. This behavior was condoned by the policymakers who were deliberately indifferent to the environment created and to the injury suffered by the Plaintiff. The emotional disability suffered by the Plaintiff was caused by the policy makers because they  had no investigative mechanism, no reporting mechanism and no mechanism for punishing violators of the law. Their deliberate indifference deprived the Plaintiff of her right to participate fully in the compensation, terms and conditions of her employment at the Revere Police Department and her right to a harassment free environment.

117. **STATE THE BASIS** for your allegation that Lieutenant Salvatore Santoro's behavior towards you was hostile as set forth in paragraph 131 of your **COMPLAINT.**

A. 117 The Plaintiff, Sonia Fernandez, has her own experiences with Lt Santoro but the innuendo of sexual relations with prisoners in paragraph 131 referred to the experience of Co-Plaintiff, Terri Pechner-James.

118. **STATE THE BASIS** for your allegation that Lieutenant Salvatore Santoro devastatingly accused you of having sexual relations with prisoners as set forth in paragraph 131 of your **COMPLAINT.**

A. 118 The Plaintiff, Sonia Fernandez, has her own experiences with Lt Santoro but the references in paragraph 131 are to Co-Plaintiff, Terri Pechner-James.

119. State the date on which you met with the Mayor as alleged in paragraph 134 of your **COMPLAINT.**

A. 119 The Plaintiff met with Mayor Ambrosino in March 2001 and told him of the hostile work environment/sexual harassment that existed in the Department.

120. **IDENTIFY** the Chief of Police to whom you are referring in paragraph 134 of your **COMPLAINT.**

A. 120 Roy Colannino was the Chief of Police referred to in paragraph 134.

121. **IDENTIFY** the "other female officers" to whom you are referring in paragraph 134 of your **COMPLAINT.**

A. 121 Officer Fish and Officer Pechner-James were two other officers that the Plaintiff knows met with Mayor Ambrosino and informed of the hostile work environment/sexual harassment that existed in the Revere Police Department.

122. **IDENTIFY** the documents to which you are referring in paragraph 134 of your **COMPLAINT.**

A. 122 The Plaintiff provided the Mayor with a letter from Dr. Jason Merola, M.D. of Beth Israel Deaconess Medical Center. She subsequently provided him with a medical opinion dated march 23, 2001, a medical opinion from Dr. Jason Merola, M.D. dated March 29, 2001 and progress notes from Dr. Darlene Millman, M.D. dated 2-21-01.

123. **IDENTIFY** the "male employees" to whom you are referring in paragraph 134 of your **COMPLAINT.**

A. 123 The male employees referred to in paragraph 134 are police officers who requested leave with pay prior to the date of the Plaintiff's employment.

124. **STATE THE BASIS** for your allegation that "the Defendants continue to coerce,

threaten and intimidate [you] into returning to a sexually and racially hostile environment" as set forth in paragraph 139 of your **COMPLAINT.**

A. 124 In October 2001, the Plaintiff returned to work at the Revere Police Department. The environment that caused her injury and made it necessary for her to leave in March 2001 had not changed. The Plaintiff lost her home during the unpaid leave. She returned to the Revere Police Department at the insistence of the Chief of Police.

125. **STATE THE BASIS** for your allegation that your "coerced return (on light duty) has created conflict with the Union membership, other officers and is unsupported by medical evidence" as set forth in paragraph 139 of your **COMPLAINT.**

A. 125 The medical opinions that the Chief of Police requested from his sources and the opinion he received from the Plaintiff did not support Plaintiff's return to work. The Union that represent the police officers objected. The Plaintiff was unable to perform her regular duties as a police officer. The Plaintiff met with the legal counsel for the Union to resolve the conflict created by her return.

126. **IDENTIFY** the "Union membership" to whom you are referring in paragraph 134 of your **COMPLAINT.**

A. 126 Paragraph 134 of Plaintiff's complaint states: "The Plaintiff, Sonia Fernandez, met with the Mayor, the Chief of Police and Captain roland and along with other female officers, complained that the prolonged, severe, pervasive, hostile and abusive work environment had caused her injury. This Plaintiff offered medical evidence of her condition and requested leave without pay as done for male employees" The paragraph contains no reference to "Union membership."

127. **IDENTIFY** the "other officers" to whom you are referring in paragraph 134 of your **COMPLAINT.**

A. 127 Paragraph 134 contains no reference to "other officers".

128. Where do you currently reside?

A. 128 The Plaintiff's current address:

      Sonia Fernandez
      300 Commandant's Way, Apt 114
      Chelsea, MA 02150

129. How long have you resided at this address?

A. 129 Plaintiff has resided at this address for almost two years.

130. If you are presently employed, **IDENTIFY** your employer.

A. 130 Plaintiff does not presently have an employer.

131. If you are presently employed, state when this employment began.

A. 131 Plaintiff is not presently employed.

132. If you are presently employed, state the title of your position and provide a description of your job duties.

A. 132 Plaintiff is not presently employed, does not have a title or position and cannot provide a description of job duties.

Sonia Fernandez