# EXHIBIT "B"

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

### CIVIL ACTION NO. 03-12499 MLW

TERRI L. PECHNER-JAMES )
and SONIA FERNANDEZ )
    **Plaintiffs** )
     )
VS. )
     )
CITY OF REVERE, THOMAS )
AMBROSINO, MAYOR, CITY )
OF REVERE POLICE DEPT. )
TERRENCE REARDON, CHIEF )
OF POLICE, BERNARD FOSTER)
SALVATORE SANTORO, ROY )
COLANNINO, FREDERICK )
ROLAND, THOMAS DOHERTY )
JOHN NELSON, JAMES RUSSO )
MICHAEL MURPHY and )
STEVEN FORD )
    **Defendants** )

*'05 DEC -8 AM 11:01 RECEIVED CITY OF REVERE SOLICITOR*

## PLAINTIFF TERRI PECHNER JAMES ANSWERS TO INTERROGATORIES

Pursuant to Federal Rules of Civil Procedure, Rules 26 and 33, and Local rule 26.5, Plaintiff, Terri Pechner-James, hereby responds to the following interrogatories propounded upon her by the Defendant, City of Revere.

### DEFINITIONS

Pursuant to Local Rule 26.5(a), the definitions set forth in Local Rule 26.5(c) are hereby incorporated herein by reference. The term Plaintiff shall mean the undersigned Terri Pechner-James and Plaintiff will use the third person singular to refer to herself throughout these responses.

### INTERROGATORIES

1. Identify the " seven female officers who were hired by the Revere Police Department" as set forth in paragraph 14 of your Complaint.

A.1     The names of the "seven female officers who were listed by the Revere Police Department" are listed below:
     P.O. Curcio

P.O. Pechner
P.O. Fish
P.O. Malatesta
P.O. Carey
P.O. Downing
P.O. Fernandez

2.  Identify the three female officers who " have filed complaints with the
    Massachusetts Commission Against Discrimination" as set forth in paragraph 14
    of your Complaint.

**A.2** The names of the three female Officers who " have filed complaints with the
Massachusetts Commission against Discrimination" are listed below:

1. P.O. Fish
2. P.O. Fernandez
3. P.O. Pechner

3.  State the exact date, or the closest approximation you have thereof, of the first
    incident which you contend started the" prolonged, severe, pervasive, hostile, and
    abusive work environment" as alleged in paragraph 14 of your Complaint.

**A.3** On August 21, 1996, a newspaper article that was cut out and photocopied on
white paper and was hang up in the Shirley Avenue Substation. The picture consisted
of a picture of the Plaintiffs son and officer Mark James (husband). On the picture it
contained several captions which stated: **"No I am not your Daddy!**" Those words
were in a balloon that came from officer James' mouth. The balloon from the
Plaintiffs son's mouth stated: **"You are not? Then who is?**" The Plaintiff reported
the incident to Captain Roland and Captain Chaulk. The Plaintiff became aware that
Officer John Burns was responsible for this incident. The Plaintiff was very upset
about this incident. She confronted Officer Burns. He apologized when confronted
but the incident was an expression of meanness, hostility and demeaning treatment
the Plaintiff experienced in the Department.

4.  State the basis for your allegation that the " last day that Plaintiff was able to work
    at the Revere Police Department was March 13, 2001" as set forth in paragraph
    16 of your Complaint.

**A.4** On or about December 11, 1998, the Plaintiff was working the midnight to 8:00
a.m. shift. Plaintiff was assigned to the Patrol car. The Department had arrested a
John Barker and Christopher Daley on outstanding warrants. Lieutenant Santoro
ordered the Plaintiff to return to the station. Plaintiff returned to the station. The
Plaintiff went to the cell block. She spoke with John Barker. She knew him because
they attended School together. John Barker told the Plaintiff that the Officer is change
( Lieutenant Santoro) has asked him if he had sex with the Plaintiff. The Plaintiff did
not answer Lieutenant Santoro. The prisoner in the cell next to John Barker was
Christopher Daley. He overheard the remarks of Lieutenant Santoro. The Plaintiff

2

was emotionally devastated. The Plaintiff was distraught and became physically ill.
She withdrew because she was emotionally devastated. This hostile and inappropriate
inquiry in to the personal sexual history of the Plaintiff laid the foundation for the
impact of the events of March 13,2001. On or about March 12 and 13,2001,
Christopher Daley was in the cell block of the Revere Police Station.  He told the
Plaintiff that the detective upstairs asked him if he ever screwed the Plaintiff.
Christopher Daley remarked: "What's up with the place anyway? Why are those
people so concerned with who you have been with." The Plaintiff was emotionally
devastated. She was to upset to continue to  perform her duties; she reported the
incident to her supervisor, she received permission to leave the place of employment
because she was to distraught to finish her shift. The inappropriate inquiries into the
Plaintiffs personal history, the sexual innuendo and the demeaning comments that the
Plaintiff experienced was both objectively and subjectively hostile and made it
impossible for the Plaintiff to work at the Revere Police Department after March 13,
2001.

5.   State the basis for your allegation that Lt. Foster "was consistently hostile and
     punitive" as sat forth in paragraph 17 of your Complaint.

A 5 On about August 9, 1997, the Plaintiff returned to the day shift. Lieutenant Foster
     .was her direct supervisor. Several fellow officers made her aware that Lieutenant
     Foster was out to get her. The Plaintiff was unaware that she had offended
     Lieutenant Foster. On August 24, 1997, Lieutenant Foster called the Plaintiff into
     the Booking area and shut the door. Lieutenant Foster began screaming at the
     Plaintiff. He stated: "I have done a lot for you and you turn around and stab me in
     my back, I am putting you on a walking route until further notice. I don't want to
     see your face inside the station and you are not to go into the substation while on
     the route. Do not bother to speak to me and you can disregard  the invitation to
     my daughters wedding." The Plaintiff asked Lieutenant Foster to state the cause
     of his anger and personal dissatisfaction. He did not respond but stated instead:" I
     have nothing else to say go to your assignment and make sure you are there
     because I will be checking." On August 7, 1997, Lieutenant Foster assigned me
     the walking route on Shirley Avenue: he followed me, I received more intense
     surveillance from Lieutenant Foster than other officers. His intense surveillance
     and his personal hostility caused the Plaintiff great emotional distress. On August
     30, 1997, the Plaintiff went to speak with Capt. Roy Colannino. The Plaintiff had
     been unable to sleep and was emotionally distraught because Lieutenant Foster
     had failed to explain the cause of the anger and hostility directed against her. The
     Plaintiff requested that Capt. Colannino intervene to resolve the obvious and long
     standing tension with Lieutenant Foster. The Captain reassured her that the matter
     would be handled properly. On September 2, 1997, the Plaintiff was again
     working the walking route. Lt. Foster in the consistent and punitive manner called
     the Plaintiff into the guardroom with Lt. Ford. Lieutenant Foster stated to the
     Plaintiff: " Who do you think you are jumping the chain of command and going to
     Captain Colannino. Listen you are nothing than a time bomb waiting to blow up
     just like that Brian Chatman." Lt. Foster also stated that I was very unprofessional

3

voice on the radio either!" Lieutenant Foster then consistent with his hostile and intimidating manner stated: " I have pictures of you on a recent vacation smoking marijuana." This statement was false. Plaintiff offered to take a drug test but Lt. Foster declined; he also declined to produce the pictures. This defamatory accusation is another example of Lt. Foster's hostility to the Plaintiff. On September 19, 1997, the Plaintiff was once again assigned to the Shirley Avenue walking route. Lt. Foster followed her and on one point yelled at her. Other members of the Department noticed Lt. Foster's hostility to the Plaintiff. On September 19, 1997, the Plaintiff spoke with Sgt. Millerick. He did not know the source or reason for Lt. Foster's hostility, but he confirmed: "I am not sure but he is angry with you."

6.  State the basis for your allegation that Lt. Foster "treated [you] in a harsh and demeaning manner" as set forth in paragraph 17 of your Complaint.

**A6** Lt. Foster unexplained anger, his personal attacks, his intense surveillance, his false and unsubstantiated accusation of drug abuse constitute and demeaning conduct.

7.  State the basis for your allegation that Lt. Foster " intentionally deprived [you] of full participation in the work of the Revere Police Department" as set forth in paragraph 17 of your Complaint.

**A.7** Full participation in the work of the Revere Police Department required working closely with supervisors and more seasoned police officers to learn the work of the Department and eventually to earn promotions, increased compensation, access to paid detail work and favorable assignments. . Lt. Foster used his superior position and his anger to isolate the Plaintiff, deprive her of the opportunity to require police skills and make unfounded accusations of drug use. Full participation is not possible in a workplace that is not free of the kind of harassment and discrimination routinely practiced by Lt Foster.

8.  State the basis for your allegation that Lt. Foster "routinely allowed male officers to watch television while working in the radio room" as set forth in paragraph 18 of your Complaint.

**A.8** On July 5, 1999, Lt. Foster called the Plaintiff into the office of the officer in charge of the shift. He asked the Plaintiff if she had any problem with being assigned inside the radio room. The Plaintiff replied:" no not at all it does not matter to me." Plaintiff then went to sit in the corner of the radio room where the general public could not see me. Officers assigned to the room usually their feet on the desk shift superiors or usually sleep on cots behind the partition in the radio room. The television was turned on when Plaintiff entered the room for her tour of duty. The television was always turned on, the officers from the morning shift had left it on. Lt. Foster came into the radio room and started screaming at the Plaintiff. He shouted

4

among other things: "Why don't you get your feet down from the desk, shut the
television off and act like a professional." The Plaintiff looked at officer Lyn Curcio,
who was also present, in disbelief at Lt. Fosters outburst.

9.  State the basis for your allegation that "Lieutenant Foster's conduct clearly
deprived [you] of full participation in the work of the Revere Police Department"
as set forth in paragraph 21 of your Complaint.

A.9 Lt. Foster stated to the Plaintiff on August 24, 1997, that (1) she would put on a
walking route to the exclusion of other assignments until further notice; (2) her
face should not be seen inside the station; (3) she should not go into the Shirley
Avenue substation while on her route. Full participation is not possible in a
workplace that is not free of harassment and discrimination. This lack of full
participation was caused by the policymakers of the City of Revere. Neither
Mayor Ambrosino, his immediate predecessor, Mayor Haas or any of their
predecessors created a policy that ensured a harassment free workplace. They
created no mechanism by which the Plaintiff could have Lt Foster's violation of
the harassment free workplace reported, investigated and punished.

10.  State the basis for your allegation that Lieutenant Foster's "decision was not
based on the public interest" as set forth in paragraph 21 of your Complaint.

A.10 Lt. Foster's decision of August 24, 1997 was prompted by personal anger not by
the requirement of the job. He screamed at the Plaintiff: " I have done a lot for
you and you turn around and stab me in the back." He then said :" Do not bother
to speak to me and you can disregard the invitation to my daughter's wedding."
His decision to "put her on the walking route until further notice" and to withdraw
the invitation to his daughter's wedding at the same time, was clearly motivated
by personal anger, not by the interests of the Department or the public it serves.
His final statement " I have nothing else to say to you, go to your assignment, and
make sure you are there because I will be checking." " Do not bother to speak to
me" and " I have nothing else to say to you" are not decisions that foster
professional communication or that are based on the public interest.

11.  State the basis for your allegation that Lieutenant Foster's "order to [you] had no
relationship to the bona fide occupational qualifications of [yours] or to the
requirements or the job" as set forth in paragraph 21 of your Complaint.

A.11 Lt. Foster's decision: " I am putting you on a walking route until further notice"
and " go to your assignment and make sure you are there because I will be
checking." These decisions were made because Lt. Foster felt that the Plaintiff
had stabbed him the back. His orders :" Do not bother to speak to me or you can
disregard the invitation to my daughter's wedding; and I have nothing else to say
to you." The professional requirement of police work require communication. Lt
Foster's personal anger at feeling "stabbed in the back"; his withdrawal of a

5

personal invitation to his daughter's wedding have no relationship to bona fide occupational qualifications.

12. State the basis for your allegation that "on August 26, 1997, [you were] experiencing great emotional distress because of Lieutenant Foster's 'punishment program' " as set forth in paragraph 22 of your Complaint.

**A. 12** On August 26, 1997, the Plaintiff went to work. The cumulative effect of her experiences with Lt. Foster including the events of August 24, 1997, proved overwhelming. She was unable to complete her shift. The emotional distress was the result of the tension created by Lt. Foster's treatment of the Plaintiff, and the difficulties he created for her in the Department.

13. State the basis for your allegation that on August 26, 1997, you had been assigned "excessive walking assignments" as set forth in paragraph 22 of your Complaint.

**A. 13** On August 24, 1997, Lt. Foster told the Plaintiff that : "I am putting you on a walking route until further notice." The Plaintiff was assigned to a walking route on Shirley Avenue, with Lt. Foster driving back and forth while Plaintiff walked the Avenue . The remainder of August 1997, September 1997 and up to October 12, 1997 most of the Plaintiff's assignment was the walking route on Shirley Avenue under the constant surveillance of Lt. Foster.

14. State the basis for your allegation that "these kind of assignments are well-known within the Department as 'punishment' "as set forth in paragraph 22 of your Complaint.

**A.14** On August 9, 1997, several fellow Officers told the Plaintiff that Lt. Foster was out to get her. Soon thereafter she was assigned to a walking route until further notice. The answer to this question is a function of the culture of the Revere Police Department. On September 17, 1997, the Plaintiff was assigned to the Shirley Avenue walking route this time with five junior police officers. All the junior officers and members of the Department knew that Plaintiffs assignment to this route was punishment by Lt. Foster. It is also well known that cruiser patrol, bike patrol are preferred to a walking route on the same stretch of Shirley Avenue.

15. State the basis for your allegation that you " felt constantly humiliated" as set forth in paragraph 22 of your Complaint.

**A.15** Constant humiliation describes the Plaintiff's experience of her Shirley Avenue assignments. It also describes her experience of the tension created by Lt. Foster. Lt. Foster used his position as a supervisor to repeatedly inform other members of the Department of his displeasure with the Plaintiff.

6

16. State the basis for your allegation that you "survived by switching shifts with other officers and by taking sick days in order to avoid Lieutenant Foster" as set forth in paragraph 23 of your Complaint.

**A.16** On August 30, 1997, the Plaintiff swapped shifts with Officer O'Malley. On September 1, 1997, Plaintiff swapped with Officer Macaskill, on September 6, 1997, Plaintiff swapped with Officer Malone, on September 10,1997 Plaintiff worked for Officer Malone, on September 14, 1997, Plaintiff swapped and worked the evening shift for Officer Kevin Colannino. On September 1997, Plaintiff worked the evening shift for Officer Malone. Plaintiff continued to swap shifts until October 12, 1997. The Plaintiff reported this situation to Chief Russo. She informed him that she could not eat, sleep and that she was intimidated , insulted and ridiculed by Lt. Foster. Plaintiff told the Chief that she could not longer work her regular shift. She also informed him that she had used all her sick time and was doing shift swaps on a regular basis to get away from Lt. Foster. She told Chief Russo that it was common within the police station what Lt. Foster was doing to her. Chief Russo did not report this matter to the Mayor or the City Council who are the policymakers for the City of Revere because the policymakers had not created a policy or a mechanism by which such harassment could be reported, investigated and punished.

17. In reference to paragraph 23 of your·Complaint, if you contend that Lieutenant Foster's alleged conduct caused your Irritable Bowel Syndrome, State the basis for such contention.

**A.17** On August 6, 1998, the Plaintiff went to see Dr. Pieter Andres, M.D. from the G.I. clinic for ongoing stomach problems. She was sent to have a flexible sigmoidoscopy because of the pain and severity of bowel habits. The Plaintiff was diagnosed with Irritable Bowel Syndrome. The Plaintiff also received medical attention from Massachusetts General Hospital. That institution also diagnosed her with intestinal problems due to the stress of work. As a result of the prolonged tension with Lt. Foster, the Plaintiff required medical attention. She received medical attention from Dr. Eric Keroack, M.D.. This Doctor also confirmed the diagnosis of Irritable Bowel Syndrome and he included it in a medical opinion dated January 23, 2003.

18. State the basis for your allegation that you "attempted to seek a remedy from the clearly humiliating and hostile environment created by her supervisor, Lieutenant Foster" as set forth in paragraph 24 of your Complaint.

**A.18** On August 30, 1997, The Plaintiff went to speak with Captain Roy Colannino regarding her working conditions and Lt. Foster. Plaintiff told the Captain about the way Lt. Foster was treating her. She told the Captain that she was seeking a solution. She reported to the captain that Lt. Foster had made her working conditions intolerable. The Plaintiff reported to the captain that she was unable to sleep and that she was emotionally upset about the situation. Plaintiff informed the Captain that everyone in the department knew of the conflict and tension

7

between the Plaintiff and Lt. Foster. The Plaintiff requested that the Captain intervene and try to determine the source of Lt. Foster's anger toward her and attempt to reach a quick resolution to the problem. The Captain reassured her that the matter would be handled properly. The treatment hat the Plaintiff received would be considered hostile by any reasonable person. The policymakers of the City of Revere had not created a policy or a mechanism for addressing the Plaintiff's problem or for providing redress.

19. State the basis for your allegation that the environment created by Lieutenant Foster was "clearly humiliating and hostile" as set forth in paragraph 24 of your Complaint.

**A.19** Lt. Foster created a hostile environment by subjecting the Plaintiff to an unusual level of scrutiny , spreading, rumors about drug use within the department, the excessive walking routes and by sabotaging her attempts at professional growth.

**Misnumbered Interrogatory No: 16**: State the basis for your allegation that Lieutenant Foster " learned of [your] efforts to seek assistance and redress and retaliated against [you]" as set forth in paragraph 24 of your Complaint.

**Answer To Misnumbered Interrogatory No: 16:** On August 30, 1997, the Plaintiff went to speak with Captain Roy Colannino because of the sustained hostility she was experiencing from Lt. Foster. She told Captain Colannino that she was emotionally upset suffering from sleeplessness and she uncomfortable in the department because Lt. Foster had made her an object of ridicule within the department. She asked the Captain to assist her in finding out the cause of Lt. Foster's intense anger toward her. Captain Colannino reassured her that the matter would be handled properly. On September 2, 1997, Lt. Foster and Lt. Ford called the Plaintiff into the guardroom of the Revere Police Station. Lt. Foster leaned about the Plaintiff's seeking assistance and redress from Captain Colannino. Lt. Foster stated to the Plaintiff:" Who do think you are jumping the chain of command and going to Captain Colannino. Listen here you are nothing but a time bomb waiting to blow up just like Brian Chatman. Lt. Foster also retaliated by accusing the Plaintiff of smoking marijuana on an unidentified recent vacation. Lt. Foster made demeaning remarks about her professional performance.

20. State the basis for your allegation that Lieutenant Foster " made several other humiliating remarks to [you]" as set forth in paragraph 26 of your Complaint.

**A.20** Lt. Foster, in the presence of Lt. Ford made several negative comments about my abilities and my performance as a police officer.

8

21. State the exact date, time and location, or the closest approximation you have thereof, of Lieutenant Foster's alleged accusation that you smoked marijuana on your vacation as set forth in paragraph 26 of your Complaint.

A.21 Lt. Foster made the accusation of drug abuse on September 2, 1997 in the guardroom of the Revere Police Station. He failed to identify the exact time, date and location of the drug use and identity of the particular vacation.

22. State the basis for your allegation that Captain Colannino "failed to remedy Lieutenant Foster's punishment of [you]" as set forth in paragraph 27 of your Complaint.

A.22 The Plaintiff reported Foster's harassment to Captain Colannino, the result was that Lt. Foster and Ford confronted the Plaintiff and Lt. Foster continued to harass and intimidate the Plaintiff. This departmental response was the result of the Defendants, policymakers deliberate indifference. There was no policy to prevent the kind of harassment that the Plaintiff had experienced and no mechanism for processing in a proper manner the complaint made by the Plaintiff.

23. State the basis for your allegation that Lieutenant "Foster's punishment of [you] was well known within the Department" as set forth in paragraph 27 of your Complaint.

A.23 The Plaintiff's position is based upon Lt. Fosters assignment of walking routes to the exclusion of other assignment, his angry and derogatory remarks and his stated intent to use his position to prevent the Plaintiff's professional growth in the department.

24. State the basis for your allegation that Lieutenant Foster's punishment of you " had become a department scandal" as set forth in paragraph 27 of your Complaint.

A.24 Lt. Foster made it clear to everyone in the Department that he wanted the Plaintiff out on walking route because he could not stand her voice. On or about September 17, 1997 he assigned her a walking route with five junior officers not as a trainer or supervisor but as a member of the group. All the members of that group knew of Lt. Foster's antipathy and hostility toward the Plaintiff. On September 19, 1997, Sgt. Millerick confirmed that Lt. Foster continued to be angry at the plaintiff. On August 10, 1999, several officers confirmed for Plaintiff that Lt. Foster had stated: "Pechner is going to be assigned inside until further notice because she left early and only certain people where assigned inside are going to be allowed to operate the radio. Lt. Foster had assigned the Plaintiff outside, now he assigned her inside but denied her the ability to use the radio. Full participation in the work of a dispatcher involved use of the radio. Lt. Foster once again employed a personal reason to deny the Plaintiff full participation in a professional opportunity.

9

25. Describe in detail the "menial assignments" to which you refer in paragraph 27 of your Complaint.

A.25 The term "menial assignment" describes assignments like the assignment in which Lt. Foster assigned the Plaintiff walking route as five officers her junior on September 19, 1997.

26. For each "menial assignment" identified in response to Interrogatory No. 25, state the exact date, time and location, or the closest approximation you have thereof, for each such assignment.

A.26 The menial assignment identified in response to Interrogatory 25 were the Shirley Avenue assignment on September 17, 1997.

27. State the basis for your allegation that your "punishment continued through the end of September 1997, and beyond" as set forth in paragraph 28 of your Complaint.

A.27 The Plaintiff remained under the direct supervision of Lt. Foster through the end of September 1997. Her direct exposure to Lt. Foster did not change until October 12, 1997, where she most transferred to Platoon 1, Group Two. The shift consisted of two morning and two afternoon shifts under the direct supervision of Lt. Santoro. There were several supervisors on this shift as well. Lt. Peter Bernard, Sgt. Jeremiah Goodwin, Sgt. Thomas Doherty, Sgt. Joseph Cafarelli and Sgt. Carl Ruggiero.

28. State the basis for your allegation that " on August 4, 1999, [you] became sick on the job because of the stressful conditions created by Lieutenant Foster" as set forth in paragraph 30 of your Complaint.

A.28 The affect of the tension and stressful conditions created by Lt. Foster was cumulative. The events of August 4, 1999 was a specific set of circumstances that contributed to the Plaintiff returned to the station at 3:30 p.m. She went into the station to the traffic department to enter her citations for the day. The Plaintiff went next door to the nurse, Peggy Resca's, office. The nurse took her blood pressure and did a physical exam. She then returned to the station shortly before the end of the shift. The Plaintiff informed her fellow officers that she was not feeling well. As soon as the Plaintiff tried to leave the premises officer Malatesta told her that Lt. Foster thought she was leaving and had an angry outburst. Lt. Foster walked over to the Plaintiffs vehicle and confronted her in the presence of all the officers gathered for the change of shift. Lt. Foster was not the senior officer present. Captain Roland who outranks Lt. Foster was present. Lt Foster ordered the Plaintiff to return to her sector which was ten to fifteen minutes away. After his tirade Lt. Foster left the scene. Captain Roland witnessed directly Lt. Foster's harassment of the Plaintiff.

29. State the basis for your allegation that on August 4, 1999, you were experiencing stressful job conditions created by Lieutenant Foster as set forth in paragraph 30 of your Complaint.

**A.29** On August 4, 1999, the Plaintiff experienced stressful job conditions created by Lt. Foster who bypassed his superior Captain Roland to make a direct attack on the Plaintiff. Lt. Foster's outburst:" was that Pechner just left?" and his direct confrontation and demand that, with ten minutes left in her shift, she returned to a sector that was more then ten minutes away created a stressful situation.

30. State the basis for your allegation that on August 4, 1999, Lieutenant Foster "berated and demeaned [you] in the presence of the entire shift of mostly male officers" as set forth in paragraph 30 of your Complaint.

**A.30** It is a well-known fact that most of the Officers in Revere Police offices are male. Lt. Foster's outburst and his confrontation with the Plaintiff took place in the presence of officers assembled for a change of shift. The number of officers present was increased because Lt. Foster's outburst took place during a change of shift when both outgoing and incoming officers were present.

31. Identify the "mostly male officers" referred to in paragraph 30 of your Complaint.

**A.31** The mostly male officers referred to in paragraph 30 were all members of the Revere Police Department.

32. Identify the female officer(s) who witnesses the incident set forth in paragraph 30 of your Complaint.

**A.32** The female officers who witnessed the incident of August 4, 1999 and described in paragraph 30 are listed below:
Officer Curcio
Officer Lavita
Officer Sobolewski
Officer Malatesta

33. State the basis for your allegation that "on August 7, 1999, Lieutenant Foster made [you]work inside as punishment" as set forth in paragraph 31 of your Complaint.

**A.33** On August 5, 1999, Plaintiff reported to work as usual. Sgt. Millerick told her that Lt. Foster wanted her assigned inside because he claimed that she left early on August 4 ,1999. Plaintiff became upset by what she experienced and what a reasonable person would experience as harassment by Lt. Foster. She became physically ill, suffered dizziness and was forced to leave work. Plaintiff was notified Sgt. Millerick, he allowed her to take a sick day. On August 7, 1999,

the Plaintiff was again assigned to inside duty. On August 10, 1999, Plaintiff was again assigned to work inside. While working inside, there were several fellow officers, Malatesta, Brian Chatman and John Macrae. These Officers confirmed that Lt. Foster had stated:" Pechner is going to be assigned inside until further notice because she left early and that only certain people when assigned inside are going to be allowed to operate the radio." It was clear to the Plaintiff and to any reasonable person that Plaintiff's inside assignment was punishment for perceived as having left early; it was also clear to Plaintiff and would be to any reasonable person that Plaintiff was being assigned inside but was being deprived of the opportunity to operate the radio.

34. Describe in detail the "inside" assignment to which you refer in paragraph 31 of your Complaint.

**A.34**. The inside assignment referred to in paragraph 31 include radio dispatcher, it involves the operation of the radio.

35. Identify the " several members of the Department" who approached you on August 12, 2999, and told you that Lieutenant Foster had stated in their presence: "Pechner is going to be assigned inside until further notice because she left early and that only certain people when assigned inside are going to be allowed to operate the radio" as set forth in paragraph 32 of your Complaint.

**A.35**. The officers who told the Plaintiff about Lt. Foster's statement were Lyn Malatesta, Brian Chatman, and John Macrea.

36. Identify the "male officer who turned on the television" as set forth in paragraph 33 of your Complaint.

**A.36**. The officers from the previous shift turned on the television. The television usually stayed on, it was unusual for it to be turned off.

37. State the basis for your allegation that "Lieutenant Foster had previously ordered [you] not to watch the same television" as set forth in paragraph 33 of your Complaint.

**A.37.** On July 5, 1999, Lt. Foster came into the radio room and yelled at the Plaintiff. Plaintiff was sitting in the corner of the radio room where the general public could not see her. She had her feet on the desk in the manner practiced by other officers. The television was turned on. It was on when Plaintiff started her shift. Lt. Foster screamed and insulted Plaintiff. His statement included:" Why don't you get your feet down from the desk, shut the television off and act like a professional." The Plaintiff and officer Lyn looked at Lt. Foster in disbelief.

12

38. State the basis for your allegation that "Lieutenant Murphy responded [ to your vacation day request] in a condescending and demeaning manner" as set forth in paragraph 34 of your Complaint.

**A.38.** Lt. Murphy implied by his statement that the Plaintiff, by wanting to take a vacation day, was suited to be a secretary but not a police officer.

39. State the basis for your allegation that "Lieutenant Santoro played a pivotal role in creating the hostile work environment experienced" by you as set forth in paragraph 35 of your Complaint.

**A.39.** The incident on the weekend of December 12, 1998 in which Lt. Santoro was involved was pivotal to the constructive discharge of the Plaintiff from her employment at the Revere Police Department. On the weekend of December 12, 1998, the Plaintiff worked the 4pm-12pm shift, then the 12am to 8am shift on December 13, she then returned and worked the 4pm to 12 pm shift. John Barker and Christopher Daley were taken into custody by the Revere Police Department. The Plaintiff knew both parties. During the morning hours of December 13, 1998, Lt. Santoro called the Plaintiff to the station. She was working the cruiser in the section she was assigned. When the Plaintiff arrived at the station, Lt. Foster said to her:" Go take care of your friend Barker, he was asking for you." The Plaintiff went down to the cellblock and took John Barker into the booking area where he was allowed t make a phone call. During the brief conversation John Barker told the Plaintiff that Lt. Santoro had asked him how he knew the Plaintiff. The Plaintiff asked Barker how he responded. Barker told Lt. Santoro that he grew up with the Plaintiff in Lynn, Massachusetts. Barker also stated that Lt. Santoro said:" man to man, was she a good fuck?" Barker told the Plaintiff that he was taken back by the question; he did not respond, he tried to ignore Lt. Santoro. Barker stated that Lt. Santoro kept drilling him. The Lieutenant began questioning Barker about Louis Ortiz(Father of Plaintiffs son). John Barker has been friends with Louis Ortiz for about fifteen years and did not want to pursue the conversation with Lt. Santoro. Lt. Santoro stated to Barker that Plaintiff had a baby by him(Ortiz). Barker was outraged by the conversation. The Plaintiff put Barker back in the cell. She then went upstairs to the radio room where Lt. Santoro was assigned as the duty supervisor of the shift. The Plaintiff asked Lt. Santoro why would he asked a prisoner if she was a good fuck. She asked why was his relationship with Barker any of his business. She expressed outrage that he would humiliate her in front of an entire cell block. She informed Lt. Santoro that Christopher Daley overheard the whole conversation between him and Barker. Lt. Santoro did not deny the conversation with Barker but did asked the Plaintiff whether she was going to believe a scumbag prisoner over him. It was well known that Lt. Santoro commented on a regular basis about his sexual life and about his penis. Lt. Santoro calling Baker a "scumbag" was not enough to discount Barker's detailed story in the mind of the Plaintiff. This incident caused the Plaintiff great distress. The Plaintiff was unable to work her shift on December 15, 1998. This incident was traumatic. It was pivotal and set the stage for the events of March 13, 2001 which

13

was subjectively and objectively so traumatic that the Plaintiff was unable to continue to work at Revere Police Department after that date.

40. State the basis for your allegation that "Lieutenant Santoro played a pivotal role in creating the hostile work environment experienced" by other female officers as set forth in paragraph 35 of your Complaint.

**A.40**. Interrogatory 40 as the same as Interrogatory 39. The response to Interrogatory 40 is the same as the response to Interrogatory 39 above.

41. State the basis for your allegation that you reported the incident described in paragraphs 35-41 of your Complaint to Captains Roland and Chaulk as set forth in paragraph 42 of your Complaint.

**A.41.**The Plaintiff made Captain Roland and Chaulk aware of the events of December 12-13, 1998. The Plaintiff provided the information prior to the sexual harassment report they prepared for the Department.

42. State the basis for your allegation that the incident described in paragraph 35-41 of your complaint " affected members of the Revere Police Department who became aware of the rumor" as set forth in paragraph 42 of your Complaint.

**A. 42**. Public use if the Plaintiff's sexual history is a violation of the sexual harassment Policy now in tense at the Revere Police Department. The Policy was not in an existence at the time the incident described in paragraph 35-41 of the Plaintiff's complaint accord. Sexual harassment diminished the Plaintiff and other female members of the Revere Police Department.

43. State the basis for your allegation that "Lieutenant Santoro routinely subjected females in the Department to sexually offensive behavior" as set forth in paragraph 43 of your Complaint.

**A.43**. The sexual harassment report dated December 21, 1998 and January 14, 1999 as well as the Plaintiff's personal experience provide the bases for the Plaintiff's knowledge of Lt. Santoro's sexual offensive behavior.

44. Identify the "subjected females in the Department" to whom you are referring in the first sentence of paragraph 43 of your Complaint.

**A.44**. There was not many females in the Department. There were seven female officer's hired on September 21, 1995, the same date as the Plaintiff.

45. State the basis for your allegation that Lieutenant Santoro " made daily remarks about the length and size of his penis" as set forth in paragraph 43 of your Complaint.

14

**A.45.** The basis for paragraph 43 of plaintiff's complaint is personal experience. Her experience is substantiated by the department's reports. See **Exhibits C & D of Plaintiff's complaint.**

46. State the exact date, time and location, or the closest approximation you have thereof, for each occasion upon which you heard Lieutenant Santoro " remark about the length and size of his penis" as set forth in paragraph 43 of your Complaint.

**A.46.** The remarks by Lt. Santoro were made at the Revere Police Station.

47. For each incident identify in response to Interrogatory No. 46, state the substance of Lieutenant Santoro's " remark about the length and size of his penis" as set forth in paragraph 43 of our Complaint.

**A.47.** The meaning of the term "substance" in the context is not clear. Paragraph 43 of the Plaintiff is clear on its face.

48. For each incident identify in response to Interrogatory No. 46, identify all witnesses to Lieutenant Santoro's " remark about the length and size of his penis" as set forth in paragraph 43 of your Complaint.

**A.48.** Lt. Santoro's conduct is a violation of the present sexual harassment policy of the City of Revere. At the time the remark were made, the defendant had no sexual harassment policy. The Department was made aware of the incident by reports dated December 12, 1998 and January 14, 1999. It has had a duty to investigate since April 1, 1999. The policymakers of the City of Revere, despite the physical existence of a sexual harassment policy after April 1, 1999 have not created a mechanism by which Lt Santoro's remarks could have been investigated and remedial action taken.

49. Identify the "female officers in the Department" about whom Lt Santoro made disparaging comments concerning their bodies as set forth in paragraph 43 of your Complaint.

**A.49.** Making disparaging remarks and sexual comments about female Officers violates the current sexual harassment Policy of the Revere Police Department. For the first four years of the Plaintiff's employment, neither the Plaintiff nor fellow female officers were able to make complaints, pursue investigations or get redress.

50. Identify the "disparaging comments" Lieutenant Santoro allegedly made concerning the bodies of the "female officers in the Department" as set forth in paragraph 43 of your Complaint.

**A.50.** The Defendants now have a sexual harassment policy but at time of the events enumerated in paragraph 43 the Department's had no policy for redress of sexual harassment for investigating such incidents. This policy or deliberate indifference

environment in which Lt. Santoro made the remarks that injured the plaintiff. The Plaintiff and other female officers mentioned Lt Santoro's disparaging remarks during the January 7, 1999 meeting. There was no mechanism for them to pursue complaints or investigations of this treatment prior to that meeting. This policy of deliberate indifference caused the officers affected to be unwilling to risk public identification of such conduct by a superior officer.

51. State the basis for your allegation that " on several occasions [you] and other female officers complained to Lieutenant Santoro about the sexually offensive remarks made by other male officers" as set forth in paragraph 44of your Complaint.

**A.51.** The Revere Police Department Sexual Harassment Reports attached to Plaintiff's complaint as exhibits **C & D** document the events of paragraph 44. At the time of those events the Department had no sexual harassment policy. Investigation on report to Mayor or City Council. This environment combined with the deliberate indifference of the Mayor and City Council caused the Plaintiff's injury and provided no avenue of redress.

52. Identify the "other female officers" to whom you are referring in paragraph 44 of your Complaint.

**A.52.** There were seven females including the Plaintiff's who joined the Revere Police Department on September 15, 1995. They experienced the hostile work environment created by the deliberate indifference of the policymaker of the City of Revere, Mayor and City Council.

53. Identify the "other male officers" who made "sexually offensive remarks" as set forth in paragraph 44 of your Complaint.

**A.53.** The sexually offensive remarks of Thomas Doherty, John Nelson, James Russo. Michael Murphy and Steven Ford described in the Plaintiff's complaint and are not limited to paragraph 44.

54. State the exact date, time and location, or the closest approximation you have thereof, for each occasion upon which you heard "other male officers" make "sexually offensive remarks" as set forth in paragraph 44 of your Complaint.

**A.54.** Sexually offensive remarks created a hostile work environment even if they were not aimed directly at the Plaintiff's. These remarks are now a violation of the present sexual harassment policy. At the time the Defendants made those remarks and engaged in the offending conduct, the defendants only had no sexual harassment policy. The Plaintiff experienced a hostile work environment created the actions and the remarks of Defendants and the deliberate indifference of the policymakers of the City of Revere.

55. For each incident identified in response to Interrogatory No. 54, state the substance of the "sexually offensive remarks" as set forth in paragraph 44 of your Complaint.

**A.55.** The sexually offensive conduct include remarks by Defendant in paragraph 60 of Plaintiff's complaint, use of pornography by John Nelsen in paragraph 63 of Plaintiff's complaint. Chief James Russo's conduct as stated in paragraph 62 to 69; and the underwear incident which was sexually hostile.

56. For each incident identified in response to Interrogatory No. 54, identify all witnesses to the "sexually offensive remarks" as set forth in paragraph 44 of your Complaint.

**A.56.** Sexually offensive remarks affect not only witnesses but members of the Department who are part of the environment.

57. Identify the "Detective" who spoke to Christopher Daley as set forth in paragraph 45 of your Complaint.

**A.57.** The name of the detective was Goodwin.

58. Identify the person who "instructed [you] to prepare warrants for the arrest of Christopher Daley" as set forth in paragraph 45 of your Complaint.

**A.58.** Christopher Delay was arrested on outstanding warrants by Detective Brian Goodwin on March 13, 2001.

59. Identify the supervisor to whom you reported the incident alleged in paragraph 45 of your Complaint and who authorized you to leave because you were unable to finish your shift as set forth in paragraph 46 of your Complaint.

**A.59.** Sgt. Nelson was the officer in charge of the shift that evening. Sgt. Caffarelli authorized the Plaintiff to leave because she was to emotionally devastated to finish the shift.

60. State the basis for your allegation that "other ranking officers contributed to the climate of sexual innuendo and hostility that permeated the work environment in the Revere Police Department" as set forth in paragraph 47 of your Complaint.

**A.60.** The supervisor who contributed to the climate of sexual hostility that permeated the work of the Revere Police Department are named in the Plaintiff's complaint. Defendants Doherty, Nelson, Santoro, Russo, Foster, Murphy, Ford and Colannino.

61. Identify the "other ranking officers" who allegedly "contributed to the climate of sexual innuendo and hostility that permeated the work environment in the Revere Police Department" as set forth in paragraph 47 of your Complaint.

17

**A.** The other ranking officers the named as defendants in this case.

62. Identify the "relevant times" to which you are referring in paragraph 48 of your Complaint.

**A.62.** The relevant times include the times during which the Plaintiff was an employee of the Revere Police Department, September 21, 1995 to the date of the award of her retirement disability and to the present for purposes of deliberate indifference to sexual harassment and maternity leave policies.

63. State the exact date, time and location, or the closest approximation you have thereof, for you meeting with the Mayor as set forth in paragraph 49 of your Complaint.

**A.63.** On April 17, 2001, at 2:00 pm the Plaintiff had a meeting with Mayor Ambrosino. She discussed her complaint to the Massachusetts Commission Against Discrimination. The Plaintiff handed the Mayor a letter regarding her return to work. She informed him of the instances of sexual harassment that she has experienced. She discussed the incident with Lt. Santoro and Detective Goodwin. She requested a paid leave of absence from him. Mayor Ambrosino told the Plaintiff that he could not give an answer at that time but it more probable that not he would be able to give paid leave. The mayor explained the he had no faith in the administration at the police department. He advised the Plaintiff to let the Massachusetts Commission Against discrimination handle the case. Mayor Ambrosino acknowledged by his response that although a sexual harassment policy had been published since April 1, 1999, he was still pursuing the policies of Mayor Haas and their predecessors. He recommended the Plaintiff to the MCAD because as policymakers, neither he nor the City Council had created a mechanism to ensure a workplace free from sexual harassment.

64. State the exact date, time and location, or the closest approximation you have thereof, for you meeting with Captain Roland as set forth in paragraph 49 of your Complaint.

**A.64.** On April 26, 2001, at 12:30 pm Plaintiff entered the rear of the police station where Captain Roland was just entering his vehicle with the chiefs secretary, Connie Anderson. Ms. Anderson stated: "Oh Terri, I have the letter that the chief wanted you to have, you need to sign it." The Plaintiff and Ms Anderson went into the station and retrieved the letter. After retrieving the letter, the Plaintiff also asked Captain Roland if she could speak with him. The Plaintiff asked Captain Roland for a copy of the letter that Christopher Daley wrote in regard to the events of March 13, 2001. Captain Roland replied that he knew nothing about any investigation or letter, he told her that she would have to speak with Captain Gerald Chaulk. The Plaintiff asked again for the letter. Captain Roland replied: No. Walked away. On October 11, 2001, the Plaintiff sent a letter to Captain Roland requesting an appointment to be examined by the City of Revere's doctor. She also requested information on her sexual harassment

complaint. On October 24, 2001, Captain Roland sent a letter in response to her request. On September 5, 2001, the Plaintiff again requested from Captain Roland any and all information that pertained of the investigation of her sexual harassment complaint based on the events of March 13, 2001. Captain Roland was acting chief of police at the time. She received no response. The way in which the Revere Police Department handled the Plaintiff's complaint is the direct consequence of the deliberate indifference and the failure of the policymakers of the City of Revere to establish policies and procedures for the proper investigation of sexual harassment complaints.

65. State the basis for your allegation that you "complained about the prolonged, severe, pervasive, hostile, and abusive work environment [that] had caused [you] injury" as set forth in paragraph 49 of your Complaint.

**A.65**. The Plaintiff was hired on September 21, 1995. Her last day of employment was March 13, 2001. The Plaintiff complained to the Mayor Ambrosino about the facts included in her complaint. She complained about the sexual harassment from supervisors and the hostile environment. She complained about her constructive discharge from her employment because no reasonable person could be expected to endure the working conditions she experienced at Revere Police Department. She complained about the disparate treatment, the distress it caused and the injury it caused her.

66. Identify any and all documents you presented to the Mayor during the meeting referred to in paragraph 49 of your Complaint.

**A.66**. The Plaintiff provided Mayor Ambrosino with a copy of her discrimination complaint to the Massachusetts Commission Against Discrimination and a letter requesting leave with pay.

67. Identify any and all documents you presented to Captain Roland during the meeting referred to in paragraph 49 of your Complaint.

**A.67**. On October 11, 2001, the Plaintiff sent a letter requesting to be examined by the city's doctor for purpose of obtain leave with pay. Plaintiff request information on the investigation of her harassment complaint.

68. State the basis for your allegation that the "decision [to offer you and Sonia Fernandez leaves of absence without pay] constituted disparate treatment" as set forth in paragraph 49 of your Complaint.

**A.68**. The defendants have offered disabled members of the Revere Police Department leave with pay. The decision to deny leave without pay to these female officers who applied is a demonstration of disparate treatment. Historically, there were no women in the department to apply for leave with pay.

69. State the basis for your allegation that the decision to offer you and Sonia Fernandez leaves of absence without pay constructively discharged you and Sonia Fernandez as set forth in paragraph 49 of your Complaint.

**A. 69**. Plaintiffs Terri James and Sonia Fernandez were constructively discharged because the denial of their request was a tangible job action. It permanently terminated the employment of Terri James and terminated the employment of Sonia Fernandez for a period of more that six month. They were injured by their working environment. State forums have adjudicated that their working conditions were so intolerable that they were unable to continue to perform as police officers.

70. State the basis for your allegation that the "denial of leaves of absence with pay was not an isolated act of disparate treatment" as set forth in paragraph 50 of your Complaint.

**A.70**. The defendant had a policy in place that denied leave with pay for purely psychological injuries such as Post Traumatic Stress Disorder.

71. State the basis for your allegation that "for many years [] these superior officers practiced a double standard on (sic) their dealings with [you] and other female officers" as set forth in paragraph 50 of your Complaint.

**A.71**. The female officer who joined the Revere Police Department on September 21, 1995 experienced discrimination from the supervisor named in the Plaintiffs complaint. The Plaintiff and Kathy Fish filed complaints with the Massachusetts Commission Against Discrimination to document their experiences. The male officers had locker rooms and toilet facilities. The Department was ordered by the Commonwealth to provide toilet facilities for female officers. It did not. The Department had no maternity leave policy during the period of Plaintiff's employment. It still may not.

72. Identify the "superior officers" to whom you are referring in paragraph 50 of your Complaint.

**A.72**. The superior officers referred to in paragraph 58 are named as Defendants in the case.

73. Identify the "other female officers" to whom you are referring in paragraph 50 of your Complaint.

**A.73.** The other female officers are Officer Fish, Officer Curcio, Officer Malatesta, Officer Downing.

74. Describe in detail each and every act of "disparate treatment" to which you are alluding in paragraph 50 of your Complaint.

**A. 74.** Disparate treatment is the experience at the heart of discrimination, sexual harassment and the other negative experiences on which the Plaintiffs Complaint is based.

75. For each act of "disparate treatment" identified in response to Interrogatory No. 74, state the exact date, time and location for each act, or the closest approximation you have thereof.

**A. 75** Disparate treatment in response to Interrogatory 74 existed throughout the period of the Plaintiff's employment. There were individual acts but those individual acts were the result of the policy of deliberate indifference by the policymakers of the City of Revere. The absence and subsequent non-enforcement of a sexual harassment policy affected all female members of the Department; the absence of a maternity leave policy affected all female members of the Department; the absence of toilet facilities for female officers despite an order by the Commonwealth. The disparate treatment of female police officers has it origins in the environment created by the policymakers through their deliberate indifference to these conditions.

76. For each act of "disparate treatment" identified in response to Interrogatory No. 74, identify the person(s) responsible for the act.

**A.76** The persons responsible for the disparate treatment as identified in Interrogatory 74 are Mayor Thomas Ambrosino, his immediate predecessor, Mayor Haas and any Mayor whose tenure included September 21, 1995 to present. It also includes the Revere City Council and its members during this period.

77. For each act of "disparate treatment" identified in response to Interrogatory No. 74, identify each and every witness to each and every act so identified.

**A. 77** Both Plaintiffs and the other female members of the Department witnessed and were affected by the policy of deliberate indifference identified in the Plaintiff's answer to Interrogatory 74.

78. State the basis for your allegation that you and Sonia Fernandez "made [your] supervisors aware this environment posed a formidable barrier to [your] full participation in the work of the Revere Police Department" as set forth in paragraph 51 of your Complaint.

**A. 78** Full participation is not possible in a workplace that is not free from harassment and discrimination. The Plaintiffs both made Mayor Ambrosino, Captain Roland, Roy Colannino, during the period that he was chief of police and other supervisors of the obstacles they faced in the Department. These supervisors were all aware that they filed complaints with the Massachusetts Commission Against Discrimination. The Plaintiffs have also filed a cause of action against the Defendants because their deliberate indifference deprived the Plaintiffs of their right to participate fully in the compensation, terms and conditions of their employment at the Revere

21

Police Department. The compensation of members of the Revere Police Department is influenced by promotion, overtime assignments, access to paid detail work and favorable assignments. A hostile environment and workplace not free of sexual harassment affects promotion, compensation, overtime assignments, access to paid detail work and favorable assignments.

79. Identify the "superior officers" to whom you are referring in paragraph 51 of your Complaint.

A. 79  The superior officers are included as Defendants in this complaint.

80. State the basis for your allegation that your "superior officers took no remedial action" as set forth in paragraph 51 of your Complaint.

A.80 The Chief of Police and his superior offices have an obligation to report acts of discrimination and other breaches of policy to the policymakers of the City of Revere. The Plaintiffs and Kathy Fish are the parties who notified the policymakers of sexual harassment within the department. The policymakers, including Mayor Ambrosino, had no policy to investigate or otherwise redress the complaints made by the Plaintiffs and Kathy Fish. The only action that Mayor took was to refer the officers to the Massachusetts Commission Against Discrimination. The policy of deliberate indifference provided no mechanism for investigating, redressing or taking remedial action.

81. Identify the "male officers" to whom you are referring in the third sentence of paragraph 51 of your Complaint.

A. 81 The male officers referred to in the third sentence of Paragraph 51 are all male officers of the Revere Police Department.

82. State the basis for your allegation that you "experienced intimidation, humiliation, and stigmatization" as set forth in paragraph 51 of your Complaint.

A.82 The Plaintiff experienced intimidation because Acting Chief Colannino and Captain Roland allowed Lt. Foster to scream and yell at the Plaintiff. Yelling and screaming at junior officers creates an atmosphere of intimidation. The Plaintiff was held up to ridicule in the eyes of prisoner by Lt Foster and Detective Goodwin. Her work was stigmatized by Lt Foster with the approval of the Department.

83. Identify the "other ranking officers" who allegedly "practiced the double standard toward females that helped to create a hostile work environment that [you] experienced" as set forth in paragraph 52 of your Complaint.

A. The other ranking officers the named as defendants in this case.

84. State the basis for your allegation that there was a double standard toward females that helped to create a hostile work environment that [you] experienced as set forth in paragraph 52 of your Complaint.

**A.84** The double standard referred to in paragraph 52 identifies Sgt. Doherty, as a superior officer, who  stated that he did not expect women to use language he considered profane   but he and male officers routinely used the same language. On April 18, 1997 Sgt. Doherty received a complaint from some youths, that one of three female officers had used language that he considered profane. Sgt. Doherty conducted a line-up of officers Curcio, Fish and Malatesta. He paraded the female officers past on open door until the youths identified officer Curcio. He reprimanded her and issued a personal order. Sgt. Doherty's line-up and personal order was not a department approved policy. It was a personal procedure that Sgt. Doherty adopted based on his belief about female roles and behavior. Sgt. Doherty made his review about this subject clear. In October 1997, several members of the Department were watching the world series. Sgt. Doherty made several sexually offensive remarks in a loud and distinctly hostile manner.  A female sports reporter was commenting on  the game. This fact upset Sgt. Doherty who said: " She was no fucking good, women should not be allowed to comment on sports events and this bitch probably gave sex or a blow job to someone for the job. Anyway she was probably related to someone and that how she got the job. There were several female officers present during the tirade. Sgt. Doherty's comments are a violation  of the current sexual harassment policy. At the time he made the comments, the policymakers of the municipality had not established a sexual harassment policy.

85. State the basis for your allegation that "Sergeant Doherty deliberately embarrassed female officers, screamed at them, made remarks about their abilities and conduct and did not treat them the same manner he treated male officers" as set forth in paragraph 52 of your Complaint.

**A. 85** Sgt. Doherty embarrassed officer Curcio, Fish and Malatesta, he screamed at them. We made remarks about the abilities of the sports reporter, he did not think that the reporter was as capable as her male counterparts.

86. Identify the "female officers" to whom you are referring in paragraph 52 of your Complaint.

**A.** The female officers are the Plaintiffs, Officers Curcio, Fish and Malatesta.

87. State the exact date, time and location, or the closest approximation you have thereof, for each incident when Sergeant Doherty "deliberately embarrassed female officers, screamed at them, made remarks about their abilities and conduct and did not treat them the same manner he treated male officers" as set forth in paragraph 52 of your Complaint.

A. **87** The events that involved Curcio, Fish and Malatesta occurred on or about April 18, 1997. The incident that involved the sports reporter occurred on or about October 1997 during the world series.

88. Identify the "female officers" who Sergeant Doherty "deliberately embarrassed []. Screamed at [], made remarks about their abilities and conduct and did not treat [] in the same manner he treated male officers" as set forth in paragraph 52 of your Complaint.

**A.88** The officers set forth in paragraph 52 are plaintiffs, officer Curcio, Fish and Malatesta and any female officer who said anything he considered profanity.

89. Identify the "one officer" to whom you are referring in the second sentence of paragraph 53 of your Complaint.

**A.89** The officers and the superiors conducting the January 7, 1999 meeting agreed to protect the anonymity of the officers who participated in the meeting.

90. State the basis for your allegation that "Sergeant Doherty's double standard was well known as it pertains to the use of profanity" as set forth in paragraph 53 of your Complaint.

**A.90** The basis for the Plaintiff is her personal experience. On one occasion the Plaintiff said something that Sgt Doherty considered profane. He said to the Plaintiff " Young lady you will not we that kind of language in front of me and if you do again I am sending you home." Her other basis is Sgt. Doherty's treatment of Curcio, Fish and Malatesta when the youth reported to use of what he considered profanity to him. He has stated publicly his personal position on women and what he considers profanity.

91. Identify the "other female officers" to whom you are referring in paragraph 54 of your Complaint.

**A.91** Other female officers are Curcio, Fish and Malatesta.

92. State the basis for your allegation that Sergeant Doherty had a double standard as set forth in paragraph 54 of your Complaint.

**A.92** The basis of the assertion that Sgt. Doherty has a double standard as based on his statement to the Plaintiff that the punishes his girls/ daughters for using foul language and that he would send her home if she used such language in his presence.

93. State the basis for your implied allegation that Sergeant Doherty threatened female officers with dismissal as set forth in paragraph 54 of your Complaint.

**A.93** Paragraph 54 does not state that Sgt. Doherty threatened female officers with dismissal.

94. Identify each and every female officer who you contend Sergeant Doherty threatened with dismissal as impliedly set forth in paragraph 54 of your Complaint.

**A. 94** Your term "impliedly set forth" is ambiguous. Sgt Doherty told that Plaintiff that if she used language that he considered profane, he would send her home. That statement is clear.

95. State the exact date, time and location, or the closest approximation you have thereof, for each incident when Sergeant Doherty threatened a female officer with dismissal as impliedly set forth in paragraph 54 of your Complaint.

**A.95** The term "impliedly set forth" is ambiguous. Sgt Doherty told that Plaintiff that if she used language that he considered profane, he would send her home. That statement is clear.

96. Identify the "other female officers" to whom you are referring in paragraph 54 of your Complaint.

**A.96** There were only six other female officers who joined the Department the same time as the Plaintiff. Officer Curcio, Fish, Malatesta, Fernandez, Downing and Carey.

97. State the basis for your allegation that Sergeant Doherty's alleged double standard "had a negative impact on the terms and conditions of [your] employment" as set forth in paragraph 54 of your Complaint.

**A.97** The Plaintiff is entitled to a workplace that of free of sexual harassment and any kind of discrimination whether based on race, sex or national origin. The application of a double standard is discrimination.

98. Identify the location where Sergeant Doherty allegedly made the "several sexually offensive remarks" about the female sports commentator for the 1998 super bowl as set forth in paragraph 59 of your Complaint.

**A.98** Sgt. Doherty remark about the sports commenter was made at the police station in the radio room where personnel often watch television. It was October 1998 and several officers and superiors were watching the world series.

99. Identify the "several female officers" to whom you are referring in paragraph 60 of your Complaint.

**A.99** Officer Malatesta, Curcio and the Plaintiff.

25

100. State the basis for your allegation that "Sergeant Doherty's negative opinion of female professionals abilities, including the professional abilities of Plaintiff's, heightened the hostility, humiliation, and degradation that permeated the workplace environment" as set forth in paragraph 61 of your Complaint.

**A.100** Sgt. Doherty was a high ranking officer in the Revere Police Department. He expressed his negative opinion of female professional abilities. The Plaintiff had experienced hostility from Lt. Foster, the negative opinion of other department superior only served to higher and intensity the hostile environment that already existed. The policymaker of the City of Revere are strictly liable for injury caused by those on whom the have conferred authority, like Sgt Doherty.

101. If you contend that Sergeant Doherty expressed a negative opinion of your professional ability as implied in paragraph 61 of your Complaint, state the basis for your contention.

**A.101** Paragraph 61 does not make statement relied upon by the Defendant as the basis for its question.

102. State the date of the alleged incident involving Sergeant Nelson as set forth in ·paragraph 63 of your Complaint.

**A.102** The incident involving Sgt. Nelson as set forth in paragraph 63 was included in the sexual harassment report dated January 7, 1999. The specific date was not stated.

103. State the basis for your allegation that "Chief Russo's treatment of female officers gave permission to his male subordinates to treat female officers in a demeaning and humiliating manner" as set forth in  paragraph 65 of your Complaint.

**A.103** James Russo was a Chief of Police of the City Revere. He was appointed by the Mayor and confirmed by the Revere City Council.  The Chief of Police had a position of influence in Revere Police Department. He was the agent of the policymakers.  By his actions he gave permission to subordinate officers. On February 23, 1997, Chief Russo and Captain Roy Colannino were at the  Police Academy. They were introducing members of the police force to the public. Chief Russo praised Sgt. Papasodora at great length. He appeared to forget officer Mangino and O'Hara. When the chief was reminded, he remarked that officer Mangino and O'Hara were the first females he hired. He also commented about the good old days when the department was all men and female were not hired. Both the officer and the public heard the chief's comment. During the tenure as chief of police, the Revere Police Department had no sexual harassment policy, the members of the Police Department knew that there was nothing to prevent sexual harassment and no punishment or consequence for committing such acts. For example on or about September 30, 1997, the Plaintiff went to the office of James Russo. She gave him an account of her experiences of harassment in the Revere Police Department. She informed him that she could not eat, sleep and that she was being intimidated, insulted and ridiculed by Lt. Foster. She told him that she could not longer

work the shift to which she was assigned. She also told the chief that she had used all her sick time and that she was swapping shifts on a regular basis to get away from Lt. Foster. Chief Russo did not report the Plaintiff's complaint to the Mayor or the City Council because he was executing their policy of deliberate indifference to sexual harassment. The Plaintiff was unable to file or written sexual harassment report because the policymaker of the City of Revere had a policy of deliberate indifference to sexual harassment. They had no policy form for reporting or system for investigation such reports.

104. Identify the "male subordinates [who] treat[ed] female officers in a demeaning and humiliating manner" as set forth in paragraph 65 of your Complaint.

A.104 The male subordinates are the supervisors named as defendant in the case.

105. Identify the "female officers" who were allegedly treated "in a demeaning and humiliating manner as set forth in paragraph 65 of your Complaint.

A.105 The female officers present at the citizens forum were Michelle Mangino and officer O'Hara.

106. Identify each act by a male subordinate which you contend constituted treatment "in a demeaning and humiliating manner" as set forth in paragraph 65 of your Complaint.

A.106 Paragraph 65 addresses the environment; it does not addresses individual acts.

107. Identify each comment by Chief Russo which you contend "stigmatized female officers, including [yourself]" as set forth in paragraph 65 of your Complaint.

A.107 The chief's comments, ever though they were not aimed directly at the Plaintiff, are a violation of the present sexual harassment policy. At the time he made the comments the department had no sexual harassment policy but his comments made the female officers present and the officers who learned about the comments feel welcome in the department.

108. Identify the conduct by Chief Russo which you contend "stigmatized female officers including [yourself]" as set froth in paragraph 65 of your Complaint.

A.108 The Chief's reference to a group of four (4) female police officers as a WIC meeting casts the officers in a negative light. WIC is an acronym for Women, Infants and Children's program. It was a federal program that assisted low-income women who were pregnant and in need of nutritional assistance. The comparison of police officers to low-income pregnant women is a comparison that communicates a negative image of the police officers. The comment creates a stigma and casts them in a negative light. The Chief's public expression of nostalgia for the good old days

when he did not have to hire female officers communicates reluctance and places a negative value on the female officers hired.

109. State the basis for your allegation that "Chief Russo's demeanor created the impression that female officers, including [yourself], were less capable, competent, members of the Department" as set forth in paragraph 65 of your Complaint.

A.109 Chief Russo expressed nostalgia for the good old days of an all male police department created the public impression that the presence of female officers had diminished the ability and competence of the Department.

110. Identify the "several female officers" to whom you are referring in paragraph 68 of your Complaint.

A.110 The female police officers present at the meeting in paragraph 68 were Mangino and O'Hara. The phrase "several female officers " does not occur in paragraph 68.

111. Identify the "four (4) female officers" to whom you are referring in paragraph 69 of your Complaint.

A.111 The four female officers referred in Paragraph 69 spoke on the condition of anonymity at the sexual harassment meeting on January 7, 1999. Their names were not included in the report.

112. State the date of the alleged incident involving Chief Russo as set forth in paragraph 69 of your Complaint.

A.112 The date of the incident stated in paragraph 69 February 23, 1997.

113. State the basis for your allegation that the City of Revere Police Department did not have a sexual harassment policy as of January 7, 1999, as set forth in paragraph 70 of your Complaint.

A.113 The present sexual harassment policy is dated April 1, 1999. Prior to that date the policymakers exhibited   deliberate indifference and had no policy and no mechanism for addressing, investigating or redressing complaints of sexual harassment.

114. State the basis for your allegation that the City of Revere Police Department did not have a maternity leave policy as of January 7, 1999, as set forth in paragraph 70 of your Complaint.

A.114 The City of Revere Police Department does still not have a maternity leave policy.

115. State the basis for your allegation that the City of Revere Police Department was in violation of M.G.L.c 151 § 3(a) (1) (2) as of January 7, 1999, as set forth in paragraph 70 of your Complaint.

**A.115** M.G.L.c. 151 B § 3(a) requires all employees to promote a work place free of sexual harassment. Section (b) requires that every employed adopt a policy against sexual harassment which must include a statement that sexual harassment in the workplace in unlawful. It also requires a statement that prohibits retaliation against an employee who files a complaint or cooperates in an investigation. The requirements of the sexual harassment policy is stated in detail in M.G.L.c. 151 B § 3(b) (1) (i)-vi). Section 2 of the chapter requires that the employer provide annually to all employees an individual written policy against sexual harassment. The Plaintiffs did not annually receive a written copy of the Defendant's policy against sexual harassment. . This deliberate indifference of the policymakers to the provisions of M.G.L.c. 151 B § 3(a) caused injury to the plaintiffs.

116. State the basis for your allegation that the City of Revere Police Department took no action on the report and recommendations of January 14, 1999, as forth in paragraph 72 of your Complaint.

**A.116** The Plaintiff did not experience any change in her treatment and the leave of harassment she experienced after the January 7, 1999 meeting and the January 14, 1999 report.

117. State the basis for your allegation that the "environment seemed to become more hostile as a result of the [January 7, 1999] meeting and subsequent report [of January 14, 1999]" as set forth in paragraph 73 of your Complaint.

**A.117** The acts of hostility in the Revere Police Department changed from verbal attacks to physical attacks. Two cruisers assigned to female officers had all eight of their tires slashed. The Plaintiff found a bullet hole in the bumper of her personal automobile. The officers reported these incidents but the Department never investigated or identified the perpetrators. In addition, the verbal attacks continued. On August 10, 1999 at 1.00 pm, Lt. Foster and Sgt. Kevin Millerick called her into the office of the officer in charge. Lt. Foster used the opportunity to attack the Plaintiff again. He continued to pursue the Plaintiff in an effort to find something negative to put in her professional record at the Department. These incidents helped to create an intolerable work environment. The Plaintiff filed her complaint with the Massachusetts Commission Against Discrimination as suggested by the Mayor. By March 13, 2001, the Plaintiffs work conditions were both subjectively and objectively such that a reasonable person could not continue to work under such conditions.

118. If you content the vandalism of the assigned automobile as set forth in paragraph 73 of your Complaint was caused by any employee of the City of Revere Police Department, state the basis for this contention.

**A.118** The vandalism of the cruiser that was assigned to the female officers was never investigated. The Plaintiff feared for her safety after that incident.

119. If your answer to Interrogatory No. 118 is an affirmative of the contention, identify the employee(s) of the City of Revere Police Department who caused or contributed to the vandalism set forth in paragraph 73 of your Complaint.

A.119  The Plaintiff reported the vandalism of her vehicle the Revere Police Department. The Revere Police Department failed to determine who caused or contributed to the vandalism.

120. If you contend that the vandalism of the assigned automobile as set forth in paragraph 73 of your Complaint was caused by any employee of the City of Revere other than an employee of the Police Department, state the basis for this contention.

A.120  The Revere Police Department failed to determine the vandalism of two of their vehicles in which all eight tires were slashed. The Revere Police Department failed to investigate or to determine who caused or contributed to the vandalism of its vehicles.

121. If your answer to Interrogatory No. 120 is an affirmative of the contention, identify the employee(s) of the City of Revere who caused or contributed to the vandalism set forth in paragraph 73 of your Complaint.

A.121  The answer to interrogatory 120 can not be affirmative or negative because the Revere Police Department failed to determine who caused or contributed to the vandalism.

122. State the basis for your allegation that you "began to fear for [your] physical safety" as set forth in paragraph 73 of your Complaint.

A.122  "began to fear for [your] physical safety" describes the Plaintiff's state of mind after the vandalism of the cruiser. The change from verbal attacks to tire slashings which remained uninvestigated was an escalation of hostility. This escalation caused the Plaintiff to fear for her safety.

123. State the basis for your allegation that " other females in the Department began to fear for their physical safety" as set forth in paragraph 73 of your Complaint.

A.123  "other females in the Department began to fear for their physical safety" describes the state of mind of some maybe all female officers in the department when they heard about the attack on the cruiser. The attacker chose cruisers with female officers. The fact that the vandalism was not investigated created fear among the female officers of the Department.

124. Identify the "other females in the Department" to whom you are referring in paragraph 73 of your Complaint.

A.124  The other female officers referred to in paragraph 73 are the female police officers who began their employment on September 21, 1995 at the Revere Police

Department. This incident, aimed at police officers, probably created fear in all female officers in the Department.

125. Identify the person who hung the women's underwear on the bulletin board in the guard room of the Revere Police Department as alleged in paragraph 74 of your Complaint.

A.125 The identity of the person who hung the women underwear on the bulletin board in the guard room of the Revere Police Department cannot be determined because the Revere Police Department did not conduct an investigation and did not determine the identity of the person. Lt Foster wrote a short report on the incident, officer Crevoiserat made a log entry of the incident. The incident was never investigated and the person who hung the women's underwear on the bulletin board was never identified.

126. State the basis for your identification of the person(s) named in response to Interrogatory No. 125.

A.126 There is no basis for an identification of the person who hung the women's underwear in the guard room. The incident occured in 2001. The sexual harassment Policy issued on April 1, 1999 was already in effect. This incident was a violation of that policy. The Revere Police Department did not conduct an investigation, did not determine the identity of the violator and did not report the violation to the policymakers. The policymakers, for their part, displayed a deliberate indifference to the affairs of the Police Department and the injury suffered by the Plaintiff.

127. State the exact date and time, or the closest approximation you have thereof, for when you have first noticed the underwear which was hung on the bulletin board in the guard room of the Revere Police Department as alleged in paragraph 74 of your Complaint.

A.127 On February 26, 2001, the Plaintiff observed a pair of female leopard underwear hanging from the wall in the guardroom. The underwear was in plain view so that they were visible to members of the department but also members of the general public.

128. Describe in detail what, if any, actions you took as a result of seeing the underwear hanging on the bulletin board in the guard room of the Revere Police Department as alleged in paragraph 74 of your Complaint.

A.128 The Plaintiff discussed her revulsion at the presence of the leopard underwear with other female officer. She included this underwear incident in her complaint to the Massachusetts Commission against Discrimination.

129. State the basis for your allegation that there was a "culture of degradation, humiliation, and hostility that the Plaintiffs and other females experienced during

the period the(sic) were employed by the Revere Police Department" as set forth in paragraph 75 of your Complaint.

**A.129** The Plaintiff was entitled to a harassment free environment. A Chief who compares female police officers with pregnant low-income women in need of government assistance and publicly waxes nostalgic for the good old days when he did not have to hire females, a Sergeant who publicly uses pornography, a Lieutenant who makes inappropriate inquiries into Plaintiff's sexual history in front of male prisoners, a Department that allows women's underwear to be displayed for several days and then conducts no investigation, a Sergeant who thinks that the only way that women can get responsible jobs is to give some guy a blow job, all combine to create a culture of degradation, humiliation and hostility. This culture of degradation and hostility made working conditions intolerable for female officers. The impact of this culture is enhanced by the deliberate indifference of the policymakers of the City of Revere. Prior to April 1, 1999 there was no stated policy against harassment; after April 1, 1999 there was a stated policy but there was no mechanism that reported, investigated or provided redress for acts of sexual harassment.

130. Identify the "other females" who you contend experienced the "culture of degradation, humiliation, and hostility" as set forth in paragraph 75 of your Complaint.

**A.130** The culture of degradation, humiliation and hostility was created by repeated verbal assaults, uninvestigated acts of vandalism, unfavorable assignments and the deliberate absence of a policy to make the workplace harassment free. All female officers who worked in the Department would be affected by the general environment. On March 31, 1997, Capt Roy Collannino approached officer Downing and grabbed her thigh and stated that "I guess you can handle driving the bike", in response to her request to be assigned to the bicycle unit. Officer Downing reported the matter to her father, Lt. Foster. Lt Foster confronted Capt Collannino and stated that he was going to file a sexual harassment complaint with the MCAD. The matter when the Department gave officer Downing a day off.

131. State the basis for your allegation that the "Revere Police Department did not respond promptly" as set forth in paragraph 76 of your Complaint.

**A.131** The Plaintiff observed the leopard underwear hanging from the wall in the guardroom on February 26, 2001. She observed the underwear on the board for several days. Lt. Bernard Foster wrote a report that stated "on the morning of March 2, 2001 while conducting call, I observed female undergarments hanging from the bulletin board in the guardroom... I removed the garment and placed them in the trash." Lt Foster's response did not take place until several days after the underwear had been hanging on the bulletin board. No investigation was conducted and no the person responsible was not identified.

132. State the basis for your allegation that the Revere Police Department "did not investigate" as set forth in paragraph 76 of your Complaint.

**A.132** Lt. Foster wrote an abbreviated report; Officer Paul Crevoiserat made a log entry into the computer. No investigation was ever conducted. The perpetrator was never identified. The Plaintiff is unaware of any action taken by the Chief of Police to address an obvious violation of the sexual harassment policy dated April 1, 1999.

133. State the basis for your allegation that the Revere Police Department "took no remedial action" as set forth in paragraph 76 of your Complaint.

**A. 133** The Revere Police Department took no other action in response to this incident except the two action described in **A. 132**.

134. State the basis for your allegation that the Revere Police Department "had no policy for dealing with complaints for sexual harassment" as set forth in paragraph 76 of your Complaint.

**A.134** This incident occurred in 2001. There was a sexual harassment policy dated April 1, 1999. The Department did not use the policy in response to this incident.

135. State the basis for your allegation that you "experienced the 'underwear incident' as retaliation against [you] and the females who complained" as set forth in paragraph 77 of your Complaint.

**A.135** The underwear incident occurred after the January 14, 1999 report. The tire slashing incident, the bullet in the bumper incident, and the underwear incident all occurred after the January 14, 1999 meeting. They are more than verbal assaults and represented an escalation in the level of hostility. The Plaintiff experienced the increase in hostility as retaliatory. Some male officers were referring to female officers who attended and spoke the meeting as 'rats.'

136. To which complaint are you referring in the first sentence of paragraph 77 of your Complaint.

**A.136** The female police officers who attended the January 7, 1999 meeting and who spoke on the condition of anonymity are referred to in the first statement of paragraph 77.

137. Identify the "other female officers [who] found the [underwear] incident offensive, demeaning and intimidating" as set forth in paragraph 77 of your Complaint.

**A.137** The other female officers are the same female officers who joined the Revere Police Department with the Plaintiff on September 21, 1995. It is possible that other members of the Department found the underwear incident offensive and demeaning.

138. State the basis for your allegation that the "underwear incident" "had a negative impact on the terms and conditions of the female officers and their effectiveness with the public" as set forth in paragraph 77 of your Complaint.

**A.138**  Part of the terms and conditions of the Plaintiffs employment at the Revere Police Department was a workplace free of sexual harassment. The uninvestigated underwear incident is a violation of the City of Revere's sexual harassment policy and therefore an event that had a negative impact on the Plaintiff's workplace. The female leopard underwear was left in a place where it was visible to members of the Department and the general public. Even though there was a sexual harassment policy dated April 1, 1999, the Defendants did not conduct an investigation, did not attempt to identify the person who had engaged in the offensive conduct or in any way address the clearly offensive conduct.

139. Identify the "female officers" to whom you are referring in the last sentence of paragraph 77 of your Complaint.

**A.139**  The female officers referred to in the last sentence of paragraph 77 are the same officers who joined the Revere Police Department with the Plaintiff on September 21, 1995.

140. State the basis for your allegation that the "barriers created by the Defendants were so formidable that [you] have been unable to work at the Revere Police Department since March 13, 2001" as set forth in paragraph 79 of your Complaint.

**A.140**  The Division of Administrative Law Appeals (DALA) adjudicated the Plaintiff's disability and referred her to the Regional Medical Panel of the Public Employee Retirement Administration Commission (PERAC). The Medical Panel established there was a causal connection between the Plaintiff's disability and the hostile work environment of the Revere Police Department. The Plaintiff's workplace was not free from harassment. The inappropriate inquiries into the personal sexual history of the Plaintiff on December 12, 1998 and March 13, 2001 were so intolerable that it became impossible for the plaintiff or any reasonable person to continue work in that environment.

141. If you witnessed the incident described in paragraph 83 of your Complaint, describe in detail the facts and circumstances surrounding this incident and identify the person(s) who were a party thereto.

**A.141**  The report identified as an OSHA report is a report by the Division of Occupational Safety, an agency of the Commonwealth of Massachusetts.  The remaining parts of paragraph 83 pertain to Sonia Fernandez.

142. If you witnessed the incident described in paragraph 84 of your Complaint, describe in detail the facts and circumstances surrounding this incident and identify the person(s) who were a party thereto.

**A.142** The Plaintiff did not witness the report. On September 14, 1998, the Division of Occupational Safety sent a letter to Chief Russo that required the Department to designate at least one rest room to be used exclusively by female personnel within 30 days. The policymakers remain deliberately indifferent to the Division's recommendations and there is still no rest room to be used exclusively by female personnel.

143. If you witnessed the incident described in paragraph 90 of your Complaint, describe in detail the facts and circumstances surrounding this incident and identify the person(s) who were a party thereto.

**A.143** The caricature of the African- American attacked as **Exhibit G** to Plaintiff's complaint was circulated within the Revere Police Department.

144. If you witnessed the "penis" incident in paragraph 96 of your Complaint, describe in detail the facts and circumstances surrounding this incident and identify the person(s) who were a party thereto.

**A144** The "penis" incident described in paragraph 96 of the complaint occurred in August 1998 and was witnessed by other officers.

145. If you witnessed the incident described in paragraph 98 of your Complaint, describe in detail the facts and circumstances surrounding this incident and identify the person(s) who were a party thereto.

**A.145** The Plaintiff learned of this incident from Co-Plaintiff Sonia Fernandez.

146. If you witnessed the incident described in paragraph 99 of your Complaint, describe in detail the facts and circumstances surrounding this incident and identify the person(s) who were a party thereto.

**A.146** The Plaintiff learned of this incident from  Co-Plaintiff Sonia Fernandez.

147. If you witnessed the incident described in paragraph 100 of your Complaint, describe in detail the facts and circumstances surrounding this incident and identify the person(s) who were a party thereto.

**A.147** The Plaintiff learned of this incident from Co-Plaintiff Sonia Fernandez.

148. If you witnessed the incident described in paragraph 102 of your Complaint, describe in detail the facts and circumstances surrounding this incident and identify the person(s) who were a party thereto.

**A.148** The Plaintiff learned of this incident from Co-Plaintiff Sonia Fernandez.

149. If you witnessed the incident described in paragraph 103 of your Complaint, describe in detail the facts and circumstances surrounding this incident and identify the person(s) who were a party thereto.

**A.149** The Plaintiff learned of this incident from Co-Plaintiff Sonia Fernandez.

150. State the exact date, or the closest approximation you have thereof, on which you met Mayor Ambrosino as alleged in paragraph 105 of your Complaint.

**A.150** Plaintiffs met with the Mayor on April 17, 2001. The Plaintiff met with the Mayor again on November 21, 2001 about a grievance and leave without pay. Their requests were similar but they met with Mayor Ambrosino on separate occasions.

151. Is the meeting with the Mayor alleged in paragraph 105 of your Complaint the same meeting as the one alleged in paragraph 49 of your Complaint?

**A.151** The response to Interrogatory 63 addresses the meeting of Plaintiff, Terry Pechner- James with the Mayor.

152. Identify every person who was present during your meeting with Mayor Ambrosino referred in paragraph 105 of your Complaint.

**A.152** The meeting with the Mayor referred to in paragraph 105 of the complaint is a reference to the meeting of Sonia Fernandez with Mayor Ambrosino.

153. State the basis for your allegation that you "suffered sexual harassment and a hostile work environment as defined by M.G.L.c 151B § 4" as set forth in paragraph 106 of your Complaint.

**A.153** Sexual harassment and hostile work environment are among the workplace harms that M.G.L.c 151 B § 4 is designed to prevent. The Supreme Judicial Court has ruled that employers have a duty to prevent such harms and they are strictly liable for their supervisor that inflict such harm.

154. State the basis for your allegation that you "were deprived of full participation in the work of the Revere Police Department by the Defendants acting in their supervisory capacities" as set forth in paragraph 106 of your Complaint.

**A.154** Full participation in the workplace requires freedom from sexual harassment. The sexual harassment by the supervisors named in the Plaintiffs complaint deprived the Plaintiff of the full participation provided by law.

36

155. Identify the "defendants" to whom you are referring in the first sentence of paragraph 106 of your Complaint.

**A.155** The Defendants referred to in paragraph 106 were the Plaintiffs supervisors: Bernard Foster, Salvatore Santoro, Roy Colannino, Frederick Russo, Michael Murphy and Steven Ford.

156. State each and every date on which you sought medical and hospital attention as alleged in paragraph 110 of your Complaint.

**A.156**

August 14, 1997 – Massachusetts General Hospital
July 21, 1998 – Massachusetts General Hospital
August 6, 1998 - M.G.H. – Abdominal Pain
August 4, 1998 M.H.H. – Reflex
August 13, 1998 M.G.H.
August 21, 1998 M.G.H. – Chronic Diarrhea
October 22, 1999 M.G.H Radiology Pelvic Pain
November 23, 1999 M.G.H Diarrhea
December 27, 1998 M.G.H- Pelvic Pain
January 11, 2000 M.G.H – Abdominal Pain
December 27, 1999 M.G.H – Pelvic Pain
May 30, 2000 M.G.H – Sleeplessness
June 30, 2000 M.G.H – Depression/ Anxiety
September 18, 2000 M.G.H – Knee Pain/ Sleeplessness
May 26, 2000 M.G.H – Stress/ Sleeplessness
August 6, 1998 Dr. Pietro Andres, M.D. – GI treatment

157. For each and every date upon which you sought medical and hospital attention as alleged in paragraph 110 of your Complaint, identify the health care professional or facility which provided such attention.

**A. 157** The date and the health care professional are stated in the Response to Interrogatory 156 above.

158. State the exact date, or the closest approximation you have thereof, on which you met the Mayor as alleged in paragraph 116 of your Complaint.

**A.158**Plaintiff met with Mayor on April 17, 2001, discussed her complaint to the Massachusetts Commission Against Discrimination. She also reported to him on the sexual harassment incident that involved Lt. Santoro and Detective Goodwin. She also request leave with pay.

159. Is the meeting with the Mayor alleged in paragraph 116 of your Complaint the same meeting as the one alleged in paragraph 49 and 105 of your Complaint.

37

**A.159** This meeting with the Mayor is the same meeting that Plaintiff referred to in paragraph 49 and 105.

160. Identify the Chief of Police to whom you are referring in paragraph 116 of your Complaint.

**A.160** The chief referred to in paragraph 116 was Roy Colannino. The Plaintiff met with Mayor Ambrosino.

161. Identify the "other female officers" to whom you are referring in paragraph 116 of your Complaint.

**A.161** Other officers who complained are Kathy Fish, Sonia Fernandez both of whom filed complaints with the Massachusetts Commission Against Discrimination.

162. Identify the documents to which you are referring in paragraph 116 of your Complaint.

**A.162** The medical evidence the Plaintiff provided the Mayor included a medical opinion from Dr. Keroack and notes from Massachusetts General Hospital.

163. Identify the " male employees" to whom you are referring in paragraph 116 of your Complaint.

**A.163** The male employees referred to in paragraph 116 are male employees of the Revere Police Department who have received leave with pay.

164. State the basis for your allegation that "the Defendants have intimidated, threatened and coerced" you as set in paragraph 122 of your Complaint.

**A.164** Paragraph 122 refers in part to the Department conduct during the period that she was applying for disability retirement. The defendants failed to notify her of notices and decision rendered even though they had a duty provide such notifications.

165. Identify "the Defendants" who have allegedly "intimidated, threatened and coerced" you as set in paragraph 122 of your Complaint.

**A.165** The City of Revere and its agents.

166. State the basis for your allegation that the Defendants caused you "to develop Irritable Bowel Syndrome" as set in paragraph 122 of your Complaint.

**A.166** The Plaintiff was diagnosed with Irritable Bowel Syndrome. This medical condition was the result of the stress created by the Defendants in the workplace.

38

167. Identify all health care professionals who you contend made a finding that your Irritable Bowel Syndrome was caused by "the Defendants" as set in paragraph 122 of your Complaint.

**A.167** The Plaintiffs diagnosis of Irritable Bowel Syndrome was made by Dr. Andres M.D. and Dr. Eric Keroack. It is a stress related condition.

168. State the basis for your allegation that the Defendants caused you "to develop... other physical ailments" as set in paragraph 122 of your Complaint.

**A.168** The Plaintiff experienced anxiety depression, sleeplessness and other physical ailment because of the emotional stress created by the Defendants.

169. State the nature of the "other physical ailments" to which you are referring in paragraph 122 of your Complaint.

**A.169** These ailment include abdominal pain, pelvic pain, chronic diarrhea.

170. Identify all health care professionals who you contend made a finding that your "other physical ailments" were caused by "the Defendants" as set in paragraph 122 of your Complaint.

**A.170** The Medical Panel appointed by PERAC made findings that the Plaintiff was injured by the hostile work environment that she experienced while an employee at the Revere Police Department. They found that because of her physical and emotional condition she was disabled an unable to perform her duties as a Revere police officer.

171. State the basis for your allegation that your "emotional distress ... was severe and of a nature that no reasonable person could be expected to endure" as set in paragraph 122 of your Complaint.

**A.171** The conduct that disabled the Plaintiff, the emotional distress experienced in the environment created by the Defendants, the events leading up to and including March 13, 2001 were a breach of the law. A reasonable person would not expect to be treated in that manner in a workplace that was be free from sexual harassment.

172. Is the incident described in paragraph 125 of your Complaint the same incidents which are described in paragraph 90 and 98 of your Complaint?

**A.172** There is some factual overlap between the provisions of paragraph 90 and 98 and the provisions of paragraph 125.

173. Is the incident described in paragraph 126 of your Complaint the same incidents which are described in paragraph 90 of your Complaint?

39

**A.173** There is some factual overlap between the provisions of paragraph 126 and paragraph 90 of the Plaintiffs complaint.

174. Where do you presently reside?

**A.174** Plaintiff present resides in Georgetown, Massachusetts.

175. How long have you reside at this address?

**A.175** Plaintiff has resided at the address for several months.

176. If you own the property where you presently reside, when did you purchase it?

**A.176** Plaintiff does not own the property she presently resides.

177. If you are presently employed, identify your employer.

**A.177** The Plaintiff is not employed. She has been adjudicated as disabled by Post Traumatic Stress Disorder experienced at the Revere Police Department.

178. If you are presently employed, state when this employment began.

**A.178** The Plaintiff is not presently employed.

179. If you are presently employed, state the title of your position and provide a description of your job duties.

A.179 The Plaintiff does not have a title nor does she have job duties. She is not presently employed.

Terri Pechner-James

40