# EXHIBIT "C"

# THE CITY OF REVERE, MASSACHUSETTS



**281 Broadway
Revere, MA 02151**

OFFICE OF THE CITY SOLICITOR

**Paul Capizzi
Walter H. Porr, Jr.**
(781) 286-8166
(781) 286-8205 (FAX)

**Thomas G. Ambrosino
Mayor**

December 15, 2005

James S. Dilday, Esq.
Grayer & Dilday, LLP
27 School Street, Suite 400
Boston, MA 02108

Re:    Pechner-James ,et al., v. City of Revere, et al.
       USDC MA Case No. 03-12499-MLW

Dear Mr. Dilday:

The purpose of this letter is to address the interrogatory responses of Sonia Fernandez and more particularly those responses that are legally deficient and in need of supplementation and/or amendment. I write this letter pursuant to Fed. R.Civ.P. 37(a)(2)(B) and Local Rules 7.1 and 37.1(A). Attached hereto you will find a document which takes each questionable interrogatory in order, formatted as follows: the interrogatory number and text, the interrogatory response and then the argument as to why the response is subject to supplementation and/or amendment. I have structured the document to comply with Local Rule 37.1(B)(4) & (5). I believe the document speaks for itself.

I invite your response within the seven (7) days allotted by Local Rule 37.1(A). In the absence of such a response, I will proceed in the manner provided by Local Rule 37.1(B)(I).

Thank you for your attention to this matter. Should you have any questions, please do not hesitate to contact me.

Sincerely,

Walter H. Porr, Jr.
Assistant City Solicitor

Cc:    Michael J. Akerson, Esq.

4.    Reference is made to the last paragraph of page 11 of your **COMPLAINT** which states: "Facts: Sonia Fernandez. The facts that give rise to the claim of Sonia Fernandez incorporate the paragraphs stated above and the events described in detail below:" Identify each and every event alleged in paragraphs 17 – 79 of the **COMPLAINT** which you witnessed personally.

Answer:    Paragraphs 17 – 79 of the complaint detail the experiences of Terri Pechner-James. However, her personal experiences occurred in an environment that affected all members of the Department.

Argument:    The answer is non-responsive. It goes without saying that paragraphs 17 –79 of the complaint detail the experiences of Terri Pechner-James. However, the last paragraph on page 11 is where the complaint transitions to allegations made on behalf of Plaintiff Sonia Fernandez. In this context, the complaint states that "The facts that give rise to the claim of Sonia Fernandez incorporate the paragraphs stated above," i.e., paragraphs 17 –79. The interrogatory simply seeks an identification of the events described in paragraphs 17 – 79, if any, personally witnessed by Plaintiff, Sonia Fernandez. Clearly the present answer is non-responsive. Moreover, Fed.R.Civ.P. Rule 37(a)(3) states that "For purposes of this subdivision an evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond." Again, simply stating that "Terri Pechner-James . . . experiences occurred in an environment that affected all members of the Department" does not respond to an interrogatory asking Plaintiff Sonia Fernandez which of the experiences of Terri Pechner-James alleged in paragraphs 17 – 79 of the complaint she, Sonia Fernandez, witnesses personally.

5.    Reference is made to the last paragraph of page 11 of your **COMPLAINT** which states: "Facts: Sonia Fernandez. The facts that give rise to the claim of Sonia Fernandez incorporate the paragraphs stated above and the events described in detail below:" Identify each and every event alleged in paragraphs 17 – 79 of the **COMPLAINT** which you did not witness personally, but of which you were informed by a third party.

Answer:    Paragraphs 17 – 79 on (sic) the Plaintiff's complaint detail the experiences of Terri Pechner-James. However, her personal experiences occurred in an environment that affected all members of the Department.

Argument:    What is true of Plaintiff's answer to interrogatory no. 4 is true of her answer to interrogatory no. 5. If she did not witness the event herself, then presumably she was told of the event by a third party. Defendants are entitled to know which events of alleged discrimination involving Terri Pechner-James which are incorporated into Plaintiff Sonia Fernandez's complaint were personally witnessed by Plaintiff Fernandez versus which events she was only told about later.

6.    Reference is made to the last paragraph of page 11 of your **COMPLAINT** which states: "Facts: Sonia Fernandez. The facts that give rise to the claim of Sonia Fernandez incorporate the paragraphs stated above and the events described in detail below:" For each event alleged in paragraphs 17 – 79 of the **COMPLAINT** which you did not witness personally, but of which you were informed by a third party, **IDENTIFY** the third-party who so informed you and the

state the exact date, or the closest approximation you have thereof, upon which you were so informed.

Answer:    Paragraphs 17 – 33 describe incidents that occurred between Terri Pechner-James and Lt. Foster during the course of employment at the Revere Police Department. The Plaintiff learned of these events from the CoPlaintiff. The Plaintiff learned of these events on or close to the date of their occurrence as stated. Some incidents were included in the January 14, 1999 report on sexual harassment by the Department.

Argument:    Plaintiff's response is incomplete. The interrogatory is addressed to all of the events alleged in paragraphs 17 – 79 of the complaint. The response only addresses the events in paragraphs 17 – 33. Defendants are entitled to a response as to the events alleged in paragraphs 34 – 79.

12.    **IDENTIFY** "the Revere Police Officer[ who] looked at [you] and asked [you] if [you were] working as an undercover hooker that night" as set forth in paragraph 83 of your **COMPLAINT**.

Answer:    The Revere Police Officer who looked at the Plaintiff and asked her if she was working as an undercover hooker was present at the scene on Shirley Avenue. Officer Luis Rodriquez of Chelsea was also present at the scene and heard the remark. He asked the Plaintiff how she was able to put up with this kind of behavior.

Argument:    The answer is non-responsive. The allegation from the complaint which is the subject of the interrogatory itself identifies the speaker as a Revere Police Officer. Obviously, to have seen the Plaintiff and made the comment attributed to him, he would have had to have been "present at the scene on Shirley Avenue." Plaintiff's failure to provide the name of the individual is evasive and incomplete and Defendants are entitled to a full and complete response.

14.    **IDENTIFY** the "[o]ther officers at the scene [who] commented on [your] diminished status" as set forth in paragraph 83 of your **COMPLAINT**.

Answer:    The other officers at the scene were members of the Revere Police Department and Officer Luis Rodriquez of the Chelsea Police Department.

Argument:    The answer is non-responsive. The allegation from the complaint which is the subject of the interrogatory itself suggests that the "other officers at the scene" were Revere Police Officers. Obviously, to have made the comment attributed to them, they would have had to have been "at the scene" in the first instance. Plaintiff's failure to provide the names of the "other officers" is evasive and incomplete and Defendants are entitled to a full and complete response.

15.    State the exact dates, times and locations, or the closest approximation you have thereof, for each "occasion[] during 1996 and 1997 [that] Lieutenant Ford routinely made personal and hostile comments about [your] physical appearance, hair and weight" as set forth in paragraph 84 of your **COMPLAINT**.

2

Answer:    During 1996 and 1997, the Defendant, City of Revere and Revere police Department did not have a policy to maintain a harassment free workplace; it did not have a reporting or investigating mechanism and it had not given each officer who joined the Department a copy of its sexual harassment policy. The Plaintiff was unable to report violations of the harassment free workplace by Lt. Ford and other superiors and the Defendant had no identify (sic) and punish violators.

Argument:    The answer is non-responsive. The allegation from the complaint which is the subject of the interrogatory itself states that the alleged events happened in 1996 and 1997. The interrogatory seeks the date of each such event, or the closest approximation thereof which the Plaintiff can provide. Furthermore, Plaintiff's "Policy diatribe" is fatuous and has no place in her response and must be stricken there from.

17.    **IDENTIFY** each and every person who witnessed or overheard each and/or any of Lieutenant Ford's hostile comments as set forth in paragraph 84 of your **COMPLAINT**.

Answer:    Hostile comments did not only come from Lt. Ford. On or about February 1996, the Plaintiff had a friendly relationship with Sgt. Picardi. During the summer of 1996, Sgt. Picardi was on the Department's softball team. During a softball game with the Saugus Police Department a sergeant from the Revere Police Department made a disparaging comment about the Plaintiff's relationship with Sgt. Picardi. The Saugus softball player said he heard that the Revere Department had a lot of women on the force. Sgt. Griffin agreed and added "this one [referring to Sgt. Picardi is fucking the Spanish one'] (sic) referring to the Plaintiff.

Argument:    The answer is non-responsive. Paragraph 84 of the complaint alleges that during 1996 and 1997 Lieutenant Ford routinely made personal and hostile comments about Plaintiff Sonia Fernandez's physical appearance, hair and weight. The interrogatory seeks the name of each and every person who may have witnessed or overheard such remarks. Plaintiff's failure to provide the names of any such witnesses or to indicate that there are no such witnesses is evasive and incomplete and Defendants are entitled to a full and complete response.

21.    **IDENTIFY** the person(s) who caused or contributed to the event(s) or incident(s) which occurred on or before June 24, 1997, which caused you to go to the hospital as set forth in paragraph 85 of your **COMPLAINT**.

Answer:    The Defendants named in this case, particularly Chief Russo, Lt. Ford and Chief Roy Colannino caused the Plaintiff to be anxious and insecure about her employment.

Argument:    Paragraph 85 of the complaint alleges in relevant part that "The Plaintiff experienced repeated emotional trauma as a result of her working environment. On June 24, 1997, Plaintiff went to the hospital. She was experiencing loss of appetite, sleeplessness, and crying spells. The hospital recommended she be excused from work for the next four days." The interrogatory seeks the names of the individuals, if any, who Plaintiff alleges were responsible for the events that caused her to go to the hospital. Her response "The Defendants named in this case, particularly . . ." is evasive. One of the Defendants named in this case is Mayor Thomas Ambrosino. But Mayor Ambrosino did not become the Mayor of the City of

Revere until 2000. Thus, he could in no way be responsible for any events preceding June 24, 1997. Likewise, Defendant Terence Reardon was not appointed Chief of Police until January, 2002. There are absolutely no allegations in the complaint concerning anything Chief Reardon did or did not do prior to his appointment as Chief. Thus, he could in no way be responsible for any events preceding June 24, 1997. Plaintiffs response "The Defendants named in this case, particularly . . ." is therefore evasive and the Defendants are entitled to a non-evasive response.

22. **IDENTIFY** the hospital to which you went on June 24, 1997, as set forth in paragraph 85 of your **COMPLAINT**.

<u>Answer</u>:    On June 25, 1997, Plaintiff went to the community health center.

<u>Argument</u>:    The answer is so patently non-responsive as to defy the need for further argumentation. The Plaintiff is obligated to identify the community health center in question.

24. **IDENTIFY** all health care professional(s) who you contend made a diagnoses that your "loss of appetite, sleeplessness, and crying spells" was caused by the event(s) or incident(s) which occurred on or before June 24, 1997, which caused you to go to the hospital as set forth in paragraph 85 of your **COMPLAINT**.

<u>Answer</u>:    The health care professional at the East Boston Neighborhood Health Center were among the professional (sic) who treated the Plaintiff during the period stated in the question.

<u>Argument</u>:    The answer is so patently non-responsive as to defy the need for further argumentation. The Plaintiff is obligated to identify the health care professionals in question.

27. **IDENTIFY** the person(s) who caused or contributed to the event(s) or incident(s) which occurred on or before November 11, 1997, which caused you to go to the hospital as set forth in paragraph 85 of your **COMPLAINT**.

<u>Answer</u>:    The Defendants named in this case, including Captain Roland, Chief Russo and Lt. Ford.

<u>Argument</u>:    Paragraph 85 of the complaint alleges in relevant part that "Again, on or about November 11, 1997, the Plaintiff went to the hospital suffering from work related stress. The hospital prescribed Valium and recommended counseling." The interrogatory seeks the names of the individuals, if any, who Plaintiff alleges were responsible for the events that caused her to go to the hospital. Her response "The Defendants named in this case, particularly . . ." is evasive. One of the Defendants named in this case is Mayor Thomas Ambrosino. But Mayor Ambrosino did not become the Mayor of the City of Revere until 2000. Thus, he could in no way be responsible for any events preceding June 24, 1997. Likewise, Defendant Terence Reardon was not appointed Chief of Police until January, 2002. There are absolutely no allegations in the complaint concerning anything Chief Reardon did or did not do prior to his appointment as Chief. Thus, he could in no way be responsible for any events preceding June 24, 1997. Plaintiffs response "The Defendants named in this case, particularly . . ." is therefore evasive and the Defendants are entitled to a non-evasive response.

4

30.    **IDENTIFY** all health care professional(s) who you contend made a diagnoses that your "work-related stress" was caused by the event(s) or incident(s) which occurred on or before November 11, 1997, which caused you to go to the hospital as set forth in paragraph 85 of your **COMPLAINT.**

Answer:    The health care professionals diagnosed the plaintiff's loss of appetite, sleeplessness and anxiety. They prescribed the requisite medication. Nancy Aranoff of the East Boston Health Center was the Plaintiff's (sic) for a while. She recognized the Plaintiff's work condition as intolerable. The Plaintiff brought her friend Carmen DelValle to a session with Nancy Aranoff because she felt overwhelmed by the circumstances. Nancy Aranoff subsequently left the Center.

Argument:    The answer is incomplete. Although Nancy Aranoff is identified, her status as a health care provider is not clear. If Ms. Aranoff is indeed a health care provider, her status must be clearly articulated.

31.    With reference to paragraph 86 of the **COMPLAINT**, state the dates during which you received counseling from the North Suffolk Counseling Services of Chelsea, Massachusetts.

Answer:    The North Suffolk Counseling Services indicate that they began treating the plaintiff on April 14, 2003.

Argument:    The answer is so patently non-responsive as to defy the need for further argumentation. The Plaintiff is obligated to identify not simply the date she began treating, but all dates of such treatment.

38.    **STATE THE BASIS** for your allegation that "[i]n the winter of 1997, [you] were placed on 'walking routes (sic) more frequently than the male members of the Department" as set forth in paragraph 87 of your **COMPLAINT.**

Answer:    While Plaintiff was on one of her walking routes in December 1997, she became visibly upset and confided in Officer Kevin Colannino that she was upset because these walking routes were being assigned as punishment. He confided that he did not understand why she was being given so many walking routes.

Argument:    The answer is non-responsive. The allegation of paragraph 87 of the complaint is that the Plaintiff was "placed on 'walking (sic) routes more frequently than the male members of the Department." The interrogatory sought the facts supportive of this allegation. Plaintiffs response that Officer Kevin Colannino "did not understand why she was being given so many walking routes" is no response at all. Defendants are entitled to a full and complete response.

39.    State the exact date, or the closest approximation you have thereof, for the date to which you are referring when you state that "[o]n one occasion, that winter, the Captain ordered [you] out of a cruiser and placed [you] of 1997" (sic) as set forth in paragraph 87 of your **COMPLAINT.**

5

Answer:    The occasion on which Captain Chaulk ordered the Plaintiff out of the cruiser, placed on a walking route was in December 1997, prior to the incidents of December 1997.as spics and African-American as Niggers (sic).

Argument:    The answer is confusing and seems to be internally inconsistent. Plaintiff seems to be simultaneously saying that the incident occurred in December of 1997 and at the same time prior to December of 1997. Defendants are entitled to an answer that is unambiguous.

44.    State the exact date, or the closest approximation you have thereof, for the date to which you are referring when you state that "[p]rior to [your] withdrawal, [you] requested a leave of absence with pay" as set forth in paragraph 88 of your **COMPLAINT**.

Answer:    In a letter dated April 2, 2001, Mayor Thomas Ambrosino acknowledged unpaid leaves of absence effective Friday, Mrch (sic) 16, 2001 until June 16, 2001 due to medical reasons. Present at the meeting with the (sic) Chief Reardon, was Attorney Dilday, Captain Murphy and the Plaintiff.

Argument:    The answer is non-responsive. The interrogatory seeks the date that Plaintiff requested a leave of absence with pay, not the date the Mayor granted her a leave of absence without pay. The response answers a question that simply was not asked. Defendants are entitled to an answer to they question they asked.

45.    **STATE THE BASIS** for your allegation that being offered a leave of absence without pay "constituted disparate treatment of [you]" as set forth in paragraph 88 of your **COMPLAINT**.

Answer:    .Plaintiff requested leave with pay for medical reasons.  Mayor Ambrosino provided leave without pay. The decision was based on a policy used by the Revere Police Department that does not recognize the parity between physical injury and psychological injury. This policy is a violation if (sic) state law and decisions based on this policy are invalid.

Argument:    The answer is non-responsive.  Plaintiff has alleged disparate treatment with respect to the leave with pay/leave without pay issue. Her answer does not respond to the call of the question as to disparate treatment. Defendants are entitled to a full and complete answer.

48.    **STATE THE BASIS** for your allegation that you were "unable to return to [your] usual work in an environment free from sexual hostility" as set forth in paragraph 88 of your **COMPLAINT**.

Answer:    The Chief of Police offered the Plaintiff "light duty" when she returned in October 2001. The Plaintiff still had the medical condition that caused her to leave in March 2001. The Union objected because the plaintiff was unable to perform the regular duties of a police officer. The environment at the Revere Police Department had not changed. The Plaintiff was caught between the Chief who coerced her into returning to "light duty" and the Union rules that required her to perform the regular duties of a police officer. The plaintiff met with the

6

Union representative and its legal counsel. The situation created a stressful and tense situation for the plaintiff.

Argument:    The answer is non-responsive. Plaintiff's reference to a dispute with her Union over her "light duty" status has nothing to do with her returning to a work "environment free from sexual hostility." Plaintiff alleges that she returned to a work environment that was not free from sexual hostility. The interrogatory seeks the facts in support of this allegation. The answer fails to provide these facts. Defendants are entitled to a full and complete answer.

49.    **IDENTIFY** the supervisors who referred to "Hispanics as 'Spics' and African-Americans as 'Niggers'" as set forth in paragraph 90 of your **COMPLAINT**.

Answer:    On or about November 1998, Lt. Ford asked the plaintiff in the presence of Officer Burke, "what are you spanish, mexican, cuban? You're all a bunch of cockroaches!" On July 1, 2000, Lt. Ford made his "sewerage people" remark referring to Hispanics from (sic) City of Chelsea. The policymakers of the City of Revere did not have an anti-harassment policy and no complaint reporting mechanism. The Plaintiff had not received a copy of the Defendants policy when she became a member of the Department. This policy of deliberate indifference caused the environment that caused the Plaintiff's constructive discharge. The Plaintiff was unable to work in an environment free of supervisors and agents of the policymakers who used racially and sexually offensive language and who described Hispanics as Spics and African-Americans as Niggers.

Argument:    The answer is non-responsive. Plaintiff's references to other comments not encompassed within paragraph 90 of the complaint which is the subject of the interrogatory is evasive. Defendants are entitled to an answer to the question asked. Furthermore, Plaintiff's "Policy diatribe" is fatuous and has no place in her response and must be stricken there from.

50.    **IDENTIFY** the coworkers who referred to "Hispanics as 'Spics' and African-Americans as 'Niggers'" as set forth in paragraph 90 of your **COMPLAINT**.

Answer:    The coworkers were officers of the Revere Police Department who, without a policy to maintain a harassment free environment and a complaint reporting mechanism and a mechanism for punishing violators, felt free to be offensive and to refer to Hispanics (sic)

Argument:    The answer is non-responsive. It is obvious from the complaint that the coworkers referred to must, by definition, be "officers of the Revere Police Department." Defendants are entitled to know who these Officers are in particular. Furthermore, Plaintiff's "Policy diatribe" is fatuous and has no place in her response and must be stricken there from.

51.    State the exact dates, or the closest approximation you have thereof, for the dates upon which either a supervisor or coworker referred to "Hispanics as 'Spics' and African-Americans as 'Niggers'" as set forth in paragraph 90 of your **COMPLAINT** and provide the identity for the speaker(s) for such date(s).

Answer:    The Defendants, policymakers, had no policy, no complaint reporting mechanism and method for identifying and punishing the officers and supervisors who created the offensive and hostile work environment where the terms Spics and Niggers were used. The policymakers deliberate indifference to this condition caused injury to the Plaintiff.

Argument:    The answer is non-responsive. Furthermore, Plaintiff's "Policy diatribe" is fatuous and has no place in her response and must be stricken there from.

52.    State the exact date(s), or the closest approximation you have thereof, for the date(s) upon which or during which the altered booking photo was "circulat[ed] within the Revere Police Department" as set forth in paragraph 90 of your **COMPLAINT**.

Answer:    The Defendants, policymakers, had no policy, no complaint reporting mechanism, no investigating mechanism and no plan by which to identify the officers and supervisors who circulated the racially offensive material attached as Exhibit H to plaintiff's complaint.

Argument:    The answer is non-responsive. Furthermore, Plaintiff's "Policy diatribe" is fatuous and has no place in her response and must be stricken there from.

53.    **IDENTIFY** the person(s) who created the altered booking photo was (sic) "circulat[ed] within the Revere Police Department" as set forth in paragraph 90 of your **COMPLAINT**.

Answer:    The persons who created the racially offensive material attached as Exhibit H to plaintiff's complaint were members of the Revere Police Department who had access to the booking photograph. The Defendants, policymakers, had no policy, no complaint mechanism, no investigative mechanism and plan that would identify and punish the officers and supervisors who created such a racially offensive caricature of an African-American.

Argument:    The answer is non-responsive. Defendants are entitled to know the name(s) of the "members of the Revere Police Department" who allegedly created Exhibit H or, in the alternative, if Plaintiff does not know who created Exhibit H, then they are entitled to know that as well. Furthermore, Plaintiff's "Policy diatribe" is fatuous and has no place in her response and must be stricken there from.

54.    **IDENTIFY** the person(s) who circulated the altered booking photo "within the Revere Police Department" as set forth in paragraph 90 of your **COMPLAINT**.

Answer:    The person or persons who circulated the racially offensive booking photo within the Revere Police Department were members of the Revere Police Department. The Defendants, policymakers, had no policy, no complaint mechanism, no investigative mechanism and plan that would identify and punish the officers and supervisors who created such a racially offensive caricature of an African-American.

Argument:    The answer is non-responsive. Defendants are entitled to know the name(s) of the "members of the Revere Police Department" who allegedly circulated Exhibit H or, in the alternative, if Plaintiff does not know who circulated Exhibit H, then they are entitled to know

8

that as well. Furthermore, Plaintiff's "Policy diatribe" is fatuous and has no place in her response and must be stricken there from.

62. If you contend that the vandalism of the assigned cruiser as set forth in paragraph 93 of your **COMPLAINT** was caused by any employee of the City of Revere Police Department, **STATE THE BASIS** for this contention.

Answer:    All eight tires of the two cruisers assigned to the two females were slashed in the parking lot of the International house (sic) of Pancakes. The Defendants, policymakers, had no policy, no complaint mechanism, no investigative mechanism and no plan that would identify and punish the officers and supervisors who intimidated the female (sic), vandalized their vehicle and rendered them immobile. The policymakers are responsible for creating an environment in which such a brazen act of intimidation can occur without the offending parties being investigated, identified or punished.

Argument:    The answer is non-responsive. Defendants are entitled to know if the Plaintiff is contending that Officers of the Revere Police Department caused the alleged vandalism and the factual basis for any such contention. Furthermore, Plaintiff's "Policy diatribe" is fatuous and has no place in her response and must be stricken there from.

63. If your answer to Interrogatory No. 62 is an affirmative of the contention, **IDENTIFY** the employee(s) of the City of Revere Police Department who caused or contributed to the vandalism set forth in paragraph 93 of your **COMPLAINT**.

Answer:    Because of the deliberate indifference of the policymakers of the City of Revere, this brazen act of vandalism and intimidation remains uninvestigated and the perpetrators unidentified and unpunished.

Argument:    The answer is non-responsive. If the Plaintiff is contending that Officers of the Revere Police Department caused the alleged vandalism, then Defendants are entitled to know the name(s) of the Officer(s) of the Revere Police Department who allegedly caused the vandalism or, in the alternative, if Plaintiff does not know who caused the vandalism, then they are entitled to know that as well. Furthermore, Plaintiff's "Policy diatribe" is fatuous and has no place in her response and must be stricken there from.

64. If you contend that the vandalism of the assigned cruiser as set forth in paragraph 93 of your **COMPLAINT** was caused by any employee of the City of Revere other than an employee of the Police Department, **STATE THE BASIS** for this contention.

Answer:    Because of the deliberate indifference of the policymakers of the City of Revere, it is not known whether the perpetrators were employees of the City of Revere other than employees of the Revere Police Department.

Argument:    The answer is non-responsive. If the Plaintiff is contending that employees of the City of Revere other than Officers of the Revere Police Department caused the alleged vandalism, then Defendants are entitled to know the factual basis for this contention. If Plaintiff

is not so contending, then Defendants are entitled to know this as well. Furthermore, Plaintiff's "Policy diatribe" is fatuous and has no place in her response and must be stricken there from.

65.    If your answer to Interrogatory No. 64 is an affirmative of the contention, **IDENTIFY** the employee(s) of the City of Revere who caused or contributed to the vandalism set forth in paragraph 93 of your **COMPLAINT.**

Answer:    The parties who contributed to the vandalism set forth in paragraph 93 of plaintiff's complaint are the policymakers whose policy of deliberate indifference created the environment in which such an act could be committed and remain uninvestigated and unpunished.

Argument:    The answer is non-responsive. If the Plaintiff is contending that employees of the City of Revere other than Officers of the Revere Police Department caused the alleged vandalism, then Defendants are entitled to know the name(s) of these employees or, in the alternative, if Plaintiff does not know who caused the vandalism, then they are entitled to know that as well. Furthermore, Plaintiff's "Policy diatribe" is fatuous and has no place in her response and must be stricken there from.

69.    **IDENTIFY** the person(s) who hung the women's underwear on the bulletin board in the guard room of the Revere Police Department as alleged in paragraph 94 of your **COMPLAINT.**

Answer:    On or about February 26, 2001, a pair of women's undergarments were hung on the bulletin board in the guard room where they were visible to the Department and the general public. This act was an obvious violation of the sexual harassment policy which was dated April 1, 1999. The Defendants, policymakers, had a stated policy but no complaint mechanism, no investigative mechanism and no plan that would identify and punish the officers and supervisors who were responsible for this obvious violation af (sic) an existing policy. The policymakers are responsible for creating an environment in which such an obvious violation of a stated policy could occur without the offending parties being investigated, identified or punished.

Argument:    The answer is non-responsive. If the Plaintiff is alleging, as it appear she must be, that Officers of the Revere Police Department hung the women's underwear on the bulletin board, then Defendants are entitled to know the name(s) of these Officer(s) or, in the alternative, if Plaintiff does not know who hung the underwear on the bulletin board, then they are entitled to know that as well. Furthermore, Plaintiff's "Policy diatribe" is fatuous and has no place in her response and must be stricken there from.

70.    **STATE THE BASIS** for your identification of the person(s) named in response to interrogatory No. 69.

Answer:    The basis of the identification of the person named in Answer 69 would have been known if an investigation had been conducted. The Plaintiff, other female officers, identified, photographed and stored the article. Its presence was known to Lt Foster and other supervisors. There was no mechanism to investigate the reason for its presence or the party responsible for its presence. The policymakers are responsible for creating an environment in which such an

obvious violation of a stated policy could occur without the offending parties being investigated, identified or punished.

Argument:    The answer is non-responsive. Plaintiff can either identify the individual(s) who hung the women's underwear in the guard room or she can not. If she can, Defendants are entitled to know the factual basis for such an identification. If she can not, then obviously there is no factual basis for the identification because there is no identification. In either case, Defendants are entitled to an answer which is not evasive. Furthermore, Plaintiff's "Policy diatribe" is fatuous and has no place in her response and must be stricken there from.

73.    State the exact date, or the closest approximation you have thereof, for the date in 1998 on which "[you] observed a penis drawn on the chalk board located by the radio communication room" as set forth in paragraph 96 of your **COMPLAINT**.

Answer:    During 1998, the plaintiff observed a penis drawn on the chalk board by the communications room.

Argument:    The answer is so patently non-responsive as to defy the need for further argumentation. The Plaintiff is obligated to provide her closest approximation of the date in question.

75.    **IDENTIFY** the person(s) who drew the penis "on the chalk board located by the radio communication room" as set forth in paragraph 96 of your **COMPLAINT**.

Answer:    The act in 1998 of drawing a penis in a place that was highly visible to both the Department and the public was an obvious violation of a workplace free of sexual harassment. The person who drew the penis has not been identified because The (sic) policymakers of the City of Revere had no sexual harassment policy, had not handed out to members of the Department a copy of a sexual harassment handbook, and had no mechanism for reporting, investigating, or punishing such obvious violations of the stated policy. The policymakers are responsible for creating an environment in which such an obvious violation of a stated policy could occur without the offending parties being investigated, identified or punished.

Argument:    The answer is so patently non-responsive as to defy the need for further argumentation. The Plaintiff is obligated to provide the name(s) of the individual(s) who drew the penis on the chalk board or to state that she does not know the name(s). Furthermore, Plaintiff's "Policy diatribe" is fatuous and has no place in her response and must be stricken there from.

79.    **IDENTIFY** the officer in charge of roll call referred to in paragraph 99 of your **COMPLAINT**.

Answer:    The members of the Department present at roll call were Officers Curcio, Malvarosa, Graff, Sgt Randall and Lt McLaughlin.

11

Argument:   The answer is so patently non-responsive as to defy the need for further argumentation. Paragraph 99 of the complaint states in relevant part "On or about July 1, 2000, the Plaintiff was present at roll call. The officer in charge mentioned that several of the people arrested were from the City of Chelsea. Lieutenant Ford commented: "The sewerage people." The Plaintiff is obligated to identify "the officer in charge." Simply reciting who was present at the roll call does not respond to the interrogatory.

80.   **IDENTIFY** the "white female officers" to whom you are referring in paragraph 100 of your **COMPLAINT**.

Answer:   The Plaintiff is Hispanic; she is the only female officer who could not be described as a white female. The term refers to all other female officers in the Department. Specifically, two female officers in the Department wore their hair in the same manner as the Plaintiff to see if they too would be reprimanded. They were not.

Argument:   The answer is non-responsive. Paragraph 100 alleges in part that "On or about February 28, 2000, Lieutenant Foster walked into the radio room and angrily told Plaintiff to pick up her hair. He remarked "What do you think, you're special?" Plaintiff replied that her hair was up. Lieutenant Foster responded that Plaintiff should get it of her shoulders or get it cut. Plaintiff was hurt and humiliated by this remark because Lieutenant Foster did not make the same demand of white female officers." The response fails to answer the call of the question. Defendants are entitled to know which "white female officers" had hair styles similar to the Plaintiffs since only similarly situated persons would form the foundation for any reasonable comparison. Moreover, the response fails to identify the "two [presumably white] female officers" who apparently deliberately wore their hair like the Plaintiffs to see if they would be treated similarly.

81.   **IDENTIFY** the "other male officers" to whom you are referring in paragraph 100 of your **COMPLAINT**.

Answer:   The other male officers were not identified by name but are the male officers present in the room at the time of the incident.

Argument:   The answer is non-responsive. Paragraph 100 alleges in part that "Lieutenant Foster made this remark in front of other male officers." Defendants are entitled to know who these male officers allegedly were.

98.   **IDENTIFY** the "male offers injured on the job" who were given "paid leave" as set forth in paragraph 105 of your **COMPLAINT**.

Answer:   The information on the male officers injured on the job are (sic) under the custody and control of the Defendants. This act constitutes discrimination. The policymakers of the city (sic)of Revere did not have an anti-discrimination policy, no mechanism for reporting, investigating or punishing acts of discrimination. Their deliberate indifference and persistence in this practice caused injury ti (sic) the plaintiff.

<u>Argument</u>:    The answer is non-responsive.    Paragraph 105 states in relevant part that "The Plaintiff, Sonia Fernandez, also requested the paid leave normally given to male officers injured on the job.    The Mayor offered the Plaintiff only an unpaid leave of absence."    Obviously, Plaintiff is comparing herself to a group of male officers who requested and were given paid leave and stating that they got it while she did not.    Defendants are entitled to know just which male officers she is referring to.    It is not enough to simply say that the City knows which male officers received paid leave.    The real issue here is Plaintiff's allegation that she was in the same class as some/all of these male officers and deserved the same treatment.    The Defendants are entitled to know which male officers she is comparing herself to by name.    She must know of whom she speaks, or how else could she make the allegation under oath (the complaint is verified as was the MCAD charge).    Thus, Defendants are entitled to a full and complete answer.

99.    For each male officer identified in response to Interrogatory No. 98, describe in detail the date and circumstances of their injury which resulted in their receiving paid leave.

<u>Answer</u>:    The Defendants have under their custody and control details, the dates and the circumstances of their injury which resulted in their receiving paid leave.

<u>Argument</u>:    The answer is non-responsive.    What is true about interrogatory 98 is true here. Defendants are entitled to a full and complete answer.

102.    Do the allegations of paragraph 105 of your **COMPLAINT** describe the same incident or event as alleged in paragraph 88 of your **COMPLAINT**?

<u>Answer</u>:    The environment in which the Plaintiff was unable to work is present in both paragraphs 88 and 105.

<u>Argument</u>:    The answer is non-responsive.    Paragraph 88 of the complaint states:

> As a direct and proximate cause of the Defendant's conduct the Plaintiff was forced to withdraw from the Revere Police Department.    Prior to her withdrawal, she requested a leave of absence with pay.    The Defendants offered the Plaintiff leave without pay.    This decision constituted disparate treatment of Plaintiff.    The Defendants constructively discharged the Plaintiff. Even though the Plaintiff returned to work temporarily, she was unable to return to her usual work in an environment free from sexual hostility.

Paragraph 105 states:

> The barriers created by the Defendants were so formidable that the Plaintiffs went to see Mayor Thomas Ambrosino.    The Plaintiff, Sonia Fernandez, also requested the paid leave normally given to male officers injured on the job.    The Mayor offered the Plaintiff only an unpaid leave of absence.    Three female officers, including

the Plaintiff, Sonia Fernandez, filed complaints with the MCAD based on facts arising out of the hostile environment that existed in the Revere Police Department. The Plaintiff subsequently returned to work but was unable to work in the environment of the Revere Police Department.

On the face of it, it appears that the allegations in these paragraphs relate to the same events, particularly as it relates to the meeting with the Mayor and Plaintiff Fernandez's return to work. The interrogatory naturally asks if the allegations do in fact relate to the same events. The response that "The environment in which the Plaintiff was unable to work is present in both paragraphs 88 and 105" fails to respond to the question as asked. Defendants are entitled to know if the allegations in these paragraphs relate to the same or different events.

116. If you answer to interrogatory No. 113 is in the affirmative, state the exact date, or the closest approximation you have thereof, of the alleged incident involving Sergeant Nelson as set forth in paragraph 63 of your **COMPLAINT**

Answer:    The incident involving Sgt Nelson occurred after the Plaintiff began her employment and before the existence of the sexual harassment policy. This behavior was condoned by the policymakers who were deliberately indifferent to the environment created and to the injury suffered by the Plaintiff. The emotional disability suffered by the Plaintiff was caused by the policy makers because they had no investigative mechanism, no reporting mechanism and no mechanism for punishing violators of the law. Their deliberate indifference deprived the Plaintiff of her right to participate fully in the compensation, terms and conditions of her employment at the Revere Police Department and her right to a harassment free environment.

Argument:    The answer is non-responsive. According to paragraph 80 of the complaint, Plaintiff "was sworn in as a Revere Police Officer on September 21, 1995." According to Plaintiff's answer to interrogatory 57, she is aware of a sexual harassment policy dated April 1, 1999.    Piecing these two sources of information together, one possible interpretation of Plaintiff's answer is that the incident involving Sgt Nelson occurred between September 21, 1995 and April 1, 1999. But Defendants are forced to speculate to come to this conclusion and surely Plaintiff can be more explicit than to suggest a nearly four year time-frame to her response. Surely, if Sgt. Nelson's conduct was as traumatic and injurious as Plaintiff would have the Court believe, then she should be able to be more specific in her date. Moreover, Exhibit D to the complaint is a report of a meeting requested by the female officers of the Revere Police Department concerning complaints of sexual harassment held on January 7, 1999. The incident involving Sgt. Nelson is addressed on page 5 at lines 194-203 of that report. Thus, the incident predates January 7, 1999. Defendants are entitled to a more reasonable and realistic statement of the date of this alleged incident. Furthermore, Plaintiff's "Policy diatribe" is fatuous and has no place in her response and must be stricken there from.

117.    **STATE THE BASIS** for your allegation that Lieutenant Salvatore Santoro's behavior towards you was hostile as set forth in paragraph 131 of your **COMPLAINT**.

14

Answer:     The Plaintiff, Sonia Fernandez, has her own experiences with Lt Santoro but the innuendo of sexual relations with prisoners in paragraph 131 referred to the experience of Co-Plaintiff, Terri Pechner-James.

Argument:     The answer is non-responsive. Paragraph 131 is the first substantive paragraph of count II, the Constructive Discharge Count, alleged on behalf of Plaintiff Fernandez. In part, paragraph 131 alleges "Lieutenant Salvatore Santoro's hostile behavior and his devastating accusations that the Plaintiff had sexual relations with prisoners, . . ." Plaintiff makes at least two allegations against Lieutenant Santoro. First, that he behaved hostilely towards her and second, that he accused her of sexual relations with a prisoner. The interrogatory clearly addresses the first allegation by asking the Plaintiff to state the factual basis for her allegation that Lieutenant Salvatore Santoro's behavior towards her was hostile. Plaintiff responds that she "has her own experiences with Lt Santoro," but fails to specify what experience she is referring to. Her disclaimer that the innuendo regarding sexual relations referred to Co-Plaintiff Pechner is irrelevant because the interrogatory did not ask about that aspect of Lieutenant Santoro's alleged behavior. Thus, Defendants are entitled to a full and complete response concerning Plaintiff's "own experiences with Lt Santoro."

123.   **IDENTIFY** the "male employees" to whom you are referring in paragraph 134 of your **COMPLAINT**.

Answer:     The male employees referred to in paragraph 134 are police officers who requested leave with pay prior to the date of the Plaintiff's employment.

Argument:     The answer is non-responsive. It must go without saying that the male employees referred to in paragraph 134 are police officers. The question is which police officers in particular. Again, Plaintiff is comparing herself to a group of male police officers and saying that she is similarly situated and thus, should have been treated the same. Defendants are entitled to know which male officers she contends she is similarly situated to. The answer is also incomprehensible. Plaintiff states that the male officers in question are "officers who requested leave with pay *prior to* the date of the Plaintiff's employment." Emphasis added. Plaintiff was employed on September 21, 1995. Complaint, paragraph 80. Yet, the Plaintiff did not request leave with pay until sometime in March or April of 2001, some five and one-half years later. Response to Interrogatory No. 42. Given this disparity in time, Defendants are all the more entitled to know precisely to whom the Plaintiff is comparing herself.

# EXHIBIT "D"

# THE CITY OF REVERE, MASSACHUSETTS



281 Broadway
Revere, MA 02151

OFFICE OF THE CITY SOLICITOR

Paul Capizzi
Walter H. Porr, Jr.
(781) 286-8166
(781) 286-8205 (FAX)

Thomas G. Ambrosino
Mayor

December 16, 2005

James S. Dilday, Esq.
Grayer & Dilday, LLP
27 School Street, Suite 400
Boston, MA 02108

Re:     Pechner-James ,et al., v. City of Revere, et al.
        USDC MA Case No. 03-12499-MLW

Dear Mr. Dilday:

        The purpose of this letter is to address the interrogatory responses of Terri Pechner and
more particularly those responses that are legally deficient and in need of supplementation and/or
amendment. I write this letter pursuant to Fed. R.Civ.P. 37(a)(2)(B) and Local Rules 7.1 and
37.1(A). Attached hereto you will find a document which takes each questionable interrogatory
in order, formatted as follows: the interrogatory number and text, the interrogatory response and
then the argument as to why the response is subject to supplementation and/or amendment. I
have structured the document to comply with Local Rule 37.1(B)(4) & (5). I believe the
document speaks for itself.

        I invite your response within the seven (7) days allotted by Local Rule 37.1(A). In the
absence of such a response, I will proceed in the manner provided by Local Rule 37.1(B)(I).

        Thank you for your attention to this matter. Should you have any questions, please do
not hesitate to contact me.

Sincerely,

Walter H. Porr, Jr.
Assistant City Solicitor

Cc:     Michael J. Akerson, Esq.

31.  **IDENTIFY** the "mostly male officers" referred to in paragraph 30 of your **COMPLAINT**.

Answer:    The mostly male officers referred to in paragraph 30 were all members of the Revere Police Department.

Argument:    The answer is non-responsive.  Paragraph 30 alleges in part that "Lieutenant Foster called Plaintiff at home and ordered her back to the Station.  When she arrived, he berated her and demeaned her in the presence of the entire shift of mostly male officers."  It should go without saying that the "mostly male officers" referred to in paragraph 30 of the complaint were obviously Revere Police Officers.  The question is who, among those officers, is Plaintiff referring to?  Defendants are entitled to a full and complete answer to this question.

36.  **IDENTIFY** the "male officer who turned on the television" as set forth in paragraph 33 of your **COMPLAINT**.

Answer:    The officers from the previous shift turned on the television.  The television usually stayed on, it was unusual for it to be turned off.

Argument:    The answer is non-responsive.  Paragraph 33 alleges "On or about August 13, 1999, Plaintiff was working in the radio room.  She experienced disparate treatment.  A male officer turned on the television.  The Lieutenant on duty did not reprimand him or ask him to turn off the television.  Lieutenant Foster had previously ordered the plaintiff not to watch the same television."  The only fair and reasonable interpretation of this allegation is that Plaintiff knows who the "male officer who turned on the television" is.  Defendants are entitled to a full and complete answer to this question.

42.  **STATE THE BASIS** for your allegation that the incident described in paragraphs 35-41 of your complaint "affected members of the Revere Police Department who became aware of the rumor" as set forth in paragraph 42 of your **COMPLAINT**.

Answer:    Public use (sic) if the Plaintiff's history is a violation of the sexual harassment Policy now in tense (sic) at the Revere Police Department.  The Policy was not in an (sic) existence at the time of the incident described in paragraph 35-41 of the Plaintiff's complaint accord. (sic)  Sexual harassment diminished the Plaintiff and other female members of the Revere Police Department.

Argument:    The answer is both non-responsive and incomprehensible.  Paragraph 42 alleges "Plaintiff reported the incident to Captain Roland [the incident described in paragraphs 35-41].  Lieutenant Santoro's conduct diminished the stature of the Plaintiff.  It undermined her effectiveness.  The rumor affected the prisoner to whom it was made.  It affected the prisoner who overheard the remark.  It affected members of the Revere Police Department who became aware of the rumor."  The interrogatory clearly seeks the factual basis for Plaintiff's allegation that the incident involving Lieutenant Santoro "affected members of the Revere Police Department."  Defendants are entitled to a full and complete answer to this question.

46.    State the exact date, time and location, or the closest approximation you have thereof, for each occasion upon which you heard Lieutenant Santoro "remark[] about the length and size of his penis" as set forth in paragraph 43 of your **COMPLAINT**.

Answer:    The remarks by Lt. Santoro were made at the Revere Police Station.

Argument:    The answer is only partially responsive. Defendants are entitled to know the dates and times when Plaintiff allegedly heard Lieutenant Santoro make the remarks in question.

47.    For each incident identified in response to Interrogatory No. 46, state the substance of Lieutenant Santoro's "remark[] about the length and size of his penis" as set forth in paragraph 43 of your **COMPLAINT**.

Answer:    The meaning of the term "substance" is not clear. Paragraph 43 of the Plaintiff (sic) is clear on its face.

Argument:    The answer is non-responsive. The meaning of the term "substance" in this context can not seriously be in dispute. Defendants are entitled to know what Lieutenant Santoro allegedly said each time he made the alleged remarks.

48.  ·  For each incident identified in response to Interrogatory No. 46, **IDENTIFY**· all witnesses to Lieutenant Santoro's "remarks about the length and size of his penis" as set forth in paragraph 43 of your **COMPLAINT**.

Answer:    Lt. Santoro's conduct is a violation of the present sexual harassment policy of the City of Revere. At the time the remark were (sic) made, the defendant had no sexual harassment policy. The Department was made aware of the incident by reports dated December 12, 1998 and January 14, 1999. It has had a duty to investigate since April 1, 1999. The policymakers of the City of Revere, despite the physical existence of a sexual harassment policy after April 1, 1999 have not created a mechanism by which Lt. Santoro's remarks could have been investigated and remedial action taken.

Argument:    The answer is non-responsive. Defendants are entitled to know the names of all persons who witnessed (i.e., heard) the remarks allegedly made by Lieutenant Santoro. Furthermore, Plaintiff's "Policy diatribe" is fatuous and has no place in her response and must be stricken there from.

49.    **IDENTIFY** the "female officers in the Department" about whom Lieutenant Santoro "made disparaging comments" concerning their bodies as set forth in paragraph 43 of your **COMPLAINT**.

Answer:    Making disparaging remarks and sexual comments about female Officers violates the current sexual harassment Policy of the Revere Police Department. For the first four years of the Plaintiff's employment, neither the Plaintiff nor fellow female officers were able to make complaints, pursue investigations or get redress.

Argument:    The answer is non-responsive. Defendants are entitled to know who Lieutenant Santoro was allegedly making the disparaging remarks about. Furthermore, Plaintiff's "Policy diatribe" is fatuous and has no place in her response and must be stricken there from.

50.    **IDENTIFY** the "disparaging comments" Lieutenant Santoro allegedly made concerning the bodies of the "female officers in the Department" as set forth in paragraph 43 of your **COMPLAINT**.

Answer:    The Defendants now have a sexual harassment policy but at the time of the events enumerated in paragraph 43 the Department's (sic) had no policy for redress of sexual harassment for investigating such incidents. This policy or (sic) deliberate indifference (sic) environment in which Lt. Santoro made the remarks that injured the plaintiff. The Plaintiff and other female officers mentioned Lt Santoro's disparaging remarks during the January 7, 1999 meeting. There was no mechanism for them to pursue complaints or investigations of this treatment prior to that meeting. This policy of deliberate indifference caused the officers affected to be unwilling to risk public identification of such conduct by a superior officer.

Argument:    The answer is non-responsive. Defendants are entitled to know what Lieutenant Santoro allegedly said that was disparaging. Furthermore, Plaintiff's "Policy diatribe" is fatuous and has no place in her response and must be stricken there from.

51.    **STATE THE BASIS** for your allegation that "on several occasions [you] and other female officers complained to Lieutenant Santoro about the sexually offensive remarks made by other male officers" as set forth in paragraph 44 of your **COMPLAINT**.

Answer:    The Revere Police Department Sexual Harassment Reports attached to Plaintiff's complaint as exhibits C & D document the events of paragraph 44. At the time of those events the Department had no sexual harassment policy. Investigation on report to Mayor or City Council (sic). This environment combined with the deliberate indifference of the Mayor and City Council caused the Plaintiff's injury and provided no avenue of redress.

Argument:    The answer in non-responsive and incomprehensible. Defendants are entitled to know the factual basis for the allegations set forth in paragraph 44. Furthermore, Plaintiff's "Policy diatribe" is fatuous and has no place in her response and must be stricken there from.

52.    **IDENTIFY** the "other female officers" to whom you are referring in paragraph 44 of your **COMPLAINT**.

Answer:    There were seven females including the Plaintiff's (sic) who joined the Revere Police Department on September 15, 1995. They experienced the hostile work environment created by the deliberate indifference of the policymaker of the City of Revere, Mayor and City Council.

Argument:    The answer in non-responsive and/or ambiguous. If Plaintiff means to answer by asserting that all six of the other females are the other females to whom she is referring in paragraph 44, then Defendants are entitled to a clear statement to that effect. If it is some group

3

less than all six, then the individuals who make up the group need to be identified. Furthermore, Plaintiff's "Policy diatribe" is fatuous and has no place in her response and must be stricken there from.

54.    State the exact date, time and location, or the closest approximation you have thereof, for each occasion upon which you heard "other male officers" make "sexually offensive remarks" as set forth in paragraph 44 of your **COMPLAINT**.

Answer:    Sexually offensive remarks created a hostile work environment even if they were not aimed directly at the Plaintiff's. These remarks are now a violation of the present sexual harassment policy. At the time the Defendants made those remarks and engaged in the offending conduct, the defendants only (sic) had no sexual harassment policy. The Plaintiff experienced a hostile work environment created (sic) the actions and the remarks of Defendants and the deliberate indifference of the policymakers of the City of Revere.

Argument:    The answer is non-responsive. Defendants are entitled to know the dates and times of the events alleged in paragraph 44 of the complaint. Furthermore, Plaintiff's "Policy diatribe" is fatuous and has no place in her response and must be stricken there from.

56.    For each incident identified in response to Interrogatory No. 54, **IDENTIFY** all witnesses to the "sexually offensive remarks" as set forth in paragraph 44 of your **COMPLAINT**.

Answer:    Sexually offensive remarks affect not only witnesses but members of the Department who are part of the environment.

Argument:    The answer is non-responsive. Defendants are entitled to know the names of the witnesses to the events alleged in paragraph 44 of the complaint.

58.    **IDENTIFY** the person who "instructed [you] to prepare warrants for the arrest of Christopher Daley" as set forth in paragraph 45 of your **COMPLAINT**.

Answer:    Christopher Delay (sic) was arrested on outstanding warrants by Detective Brian Goodwin on March 13, 2001.

Argument:    The answer is non-responsive. Plaintiff alleges she was instructed to prepare the warrant in question. The interrogatory seeks the name of the person who so instructed her. If it was Detective Goodwin, then the answer needs to state that unambiguously.

60.    **STATE THE BASIS** for your allegation that "other ranking officers contributed to the climate of sexual innuendo and hostility that permeated the work environment in the Revere Police Department" as set forth in paragraph 47 of your **COMPLAINT**.

Answer:    The supervisors who contributed to the climate of sexual hostility that permeated the work of the Revere Police Department are named in Plaintiff's complaint. Defendants Doherty, Nelson, Santoro, Russo, Foster, Murphy, Ford and Colannino.

4

Argument:    The answer is non-responsive. It appears that this should be the answer to interrogatory no. 61, which, as set forth below, is also subject to amendment or supplementation. In any event, Defendants are entitled to know the factual basis for the allegation as made.

61.    **IDENTIFY** the "other ranking officers" who allegedly "contributed to the climate of sexual innuendo and hostility that permeated the work environment in the Revere Police Department" as set forth in paragraph 47 of your **COMPLAINT**.

Answer:    The other ranking officers the (sic) named as defendants in this case.

Argument:    The answer is non-responsive. As noted immediately above, it appears that the answer to this interrogatory was given in response to interrogatory no. 60. In any event, the Mayor is a named Defendant in this case, but was/is not a "ranking officer" of the Police Department. Also, the context of paragraph 47 differentiates Lieutenant Santoro from the "other ranking officers." Thus, simply referring to the named defendants is non-responsive. Defendants are entitled to a full and complete answer to the interrogatory.

62.    **IDENTIFY** the "relevant times" to which you are referring in paragraph 48 of your **COMPLAINT**.

Answer:    The relevant times include the times during which the Plaintiff was an employee of the Revere Police Department, September 21, 1995 to the date of the award of her retirement disability and to the present for the purposes of deliberate indifference to sexual harassment and maternity leave policies.

Argument:    The answer is non-responsive. Paragraph 48 alleges "At all relevant times, Roy Colannino held the title of Captain and Acting Chief of Police of the Revere Police Department. Frederick Roland held the title of Captain in the Revere Police Department." The interrogatory seeks a clarification of precisely which "times" Plaintiff is referring to since the complaint itself acknowledges that James Russo was also Chief of the Revere Police Department at some relevant times. See paragraphs 9, 65-69, 104 and 109. Moreover, Captain Roland also served as the Acting Chief for a period of time. Finally, Chief Reardon was appointed in January of 2002. Thus, the allegation of paragraph 48 necessitated clarification through an appropriate interrogatory. Defendants are entitled to a full and complete answer to this interrogatory.

63.    State the exact date, time and location, or the closest approximation you have thereof, for you meeting with the Mayor as set forth in paragraph 49 of your **COMPLAINT**.

Answer:    On April 17, 2001, at 2:00 pm the Plaintiff had a meeting with Mayor Ambrosino. She discussed her complaint to the Massachusetts Commission Against Discrimination. The Plaintiff handed the Mayor a letter regarding her return to work. She informed him of the instances of sexual harassment that she has experienced. She discussed the incident with Lt. Santoro and Detective Goodwin. She requested a paid leave of absence from him. Mayor Ambrosino told the Plaintiff that he could not give an answer at that time but it more (sic) probable that (sic) not he would be able to give paid leave. The mayor explained that he had no faith in the administration as the police department. He advised the Plaintiff to let the

Massachusetts Commission Against discrimination (sic) handle the case. Mayor Ambrosino acknowledged by his response that although a sexual harassment policy had been published since April 1, 1999, he was still pursuing the policies of Mayor Haas and their predecessors. He recommended the Plaintiff to the MCAD because as policymakers, neither he nor the City Council had created a mechanism to ensure a workplace free from sexual harassment.

Argument:    Only the first sentence of the answer is responsive. The remaining diatribe is non-responsive and should be stricken. Interrogatories are not invitations for ad hominem diatribes.

64.    State the exact date, time and location, or the closest approximation you have thereof, for you (sic) meeting with Captain Roland as set forth in paragraph 49 of your **COMPLAINT**.

Answer:    On April 26, 2001, at 12:30 pm Plaintiff entered the rear of the police station where Captain Roland was just entering his vehicle with the chiefs (sic) secretary, Connie Anderson. Ms. Anderson stated: "Oh Terri, I have the letter that the chief wanted you to have, you need to sign it." The Plaintiff and Ms. Anderson went into the station and retrieved the letter. After retrieving the letter, the Plaintiff also asked Captain Roland if she could speak with him. The Plaintiff asked Captain Roland for a copy of the letter Christopher Daley wrote in regards to the events of March 13, 2001. Captain Roland replied that he knew nothing about any investigation or letter, he told her that she would have to speak with Captain Gerald Chaulk. The Plaintiff asked again for the letter. Captain Roland replied: No. Walked away. On October 11, 2001, the Plaintiff sent a letter to Captain Roland requesting an appointment to be examined by the City of Revere's doctor. She also requested information on her sexual harassment complaint. On October 24, 2001, Captain Roland sent a letter in response to her request. On September 5, 2001, (sic ??) the Plaintiff again requested from Captain Roland any and all information that pertained to the investigation of her sexual harassment complaint based on the events of March 13, 2001. Captain Roland was acting chief of police at the time. She received no response. The way in which the Revere Police Department handled the Plaintiff's complaint is the direct consequence of the deliberate indifference and the failure of the policymakers of the City of Revere to establish policies and procedures for the proper investigation of sexual harassment complaints.

Argument:    Only the first sentence of the answer appears to be responsive. However, the chronology of events which follows confuses the issue. It appears that this rambling discourse is non-responsive and should be stricken. Moreover, Plaintiff's policy diatribe which concludes the answer is similarly non-responsive and must be stricken.

68.    **STATE THE BASIS** for your allegation that the "decision [to offer you and Sonia Fernandez leaves of absence without pay] constituted disparate treatment" as set forth in paragraph 49 of your **COMPLAINT**.

Answer:    The defendants have offered disabled members of the Revere Police Department leave with pay. The decision to deny leave without pay to these female officers who applied is a demonstration of disparate treatment. Historically, there were no women in the department to apply for leave with pay.

Argument:   The answer is non-responsive and incomprehensible.   Merely restating the allegation is not an answer.  Defendants are entitled to know the factual basis for the allegation itself.  Thus, Defendants are entitled to a full and complete response.

70.   **STATE THE BASIS** for your allegation that the "denial of leaves of absence with pay was not an isolated act of disparate treatment" as set forth in paragraph 50 of your **COMPLAINT**.

Answer:   The defendant had a policy in place that denied leave with pay for purely psychological injuries such as Post Traumatic Stress Disorder.

Argument:   The answer is non-responsive and incomprehensible.  The allegation asserts that the complained of conduct "was not an isolated act of disparate treatment."  Defendants are entitled to know the factual basis for the allegation itself.  The fact, if it is one, that purely psychological injuries did not merit leave with pay does not respond to the allegation that the conduct was not isolated, meaning and/or implying that it was regular, ongoing or commonplace. Thus, Defendants are entitled to a full and complete response.

71.   **STATE THE BASIS** for your allegation that "for many years [ ] these superior officers practiced a double standard on (sic) their dealings with [you] and other female officers" as set forth in paragraph 50 of your **COMPLAINT**.

Answer:   The female officer who joined the Revere Police Department on September 21, 1995 experienced discrimination from the supervisor named in the Plaintiffs (sic) complaint. The Plaintiff and Kathy Fish filed complaints with the Massachusetts Commission Against Discrimination to document their experiences.  The male officers had locker rooms and toilet facilities.  The Department was ordered by the Commonwealth to provide toilet facilities for female officers.  It did not.  The Department had no maternity leave policy during the period of Plaintiff's employment.  It still may not.

Argument:   The answer is non-responsive.  The allegation concerns an alleged double standard that allegedly existed over many years.  The interrogatory seeks the factual basis for the allegation.  The answer fails to respond to the interrogatory as framed.

72.   **IDENTIFY** the "superior officers" to whom you are referring in paragraph 50 of your **COMPLAINT**.

Answer:   The superior officers referred to in paragraph 58 are named as Defendants in the case.

Argument:   The answer is non-responsive.  The Mayor is a named Defendant, but is not a superior officer of the Police Department.  Simply stating the Defendants in the case evades answering the question.  Moreover, the events alleged in the complaint do not support a claim that each and every superior officer named in the case employed a double standard.  Defendants are entitled to a full and complete answer.

74.    Describe in detail each and every act of "disparate treatment" to which you are alluding in paragraph 50 of your **COMPLAINT**.

<u>Answer</u>:    Disparate treatment is the experience at the heart of discrimination, sexual harassment and other negative experiences on which the Plaintiffs Complaint is based.

<u>Argument</u>:    The answer is non-responsive. Discoursing on the nature of discrimination does not answer a question which asks for a detailed statement concerning each alleged act of a particular form of discrimination, in this case, disparate treatment. Paragraph 50 alleges "The denial of leaves with pay was not an isolated act of disparate treatment. The Plaintiffs experienced for many years that these superior officers practiced a double standard on their dealings with the Plaintiffs and other female officers." The interrogatory seeks an identification of each act of disparate treatment (double standard) to which the Plaintiff is referring in this paragraph of the complaint. Defendants are entitled to a full and complete answer.

75.    For each act of "disparate treatment" identified in response to Interrogatory No. 74, state the exact date, time and location for each act, or the closest approximation you have thereof.

<u>Answer</u>:    Disparate treatment is response to Interrogatory 74 existed throughout the period of the Plaintiff's employment. There were individual acts but those individual acts were the result of the policy of deliberate indifference by the policymakers of the City of Revere. The absence and subsequent non-enforcement of a sexual harassment policy affected all female members of the Department; the absence of a maternity leave policy affected all female members of the Department; the absence of toilet facilities for female officers despite an order by the Commonwealth. The disparate treatment of female police officers has its origins in the environment created by the policymakers through their deliberate indifference to these conditions.

<u>Argument</u>:    The answer is non-responsive. Plaintiff's failure to answer interrogatory 74 leads to her inevitable failure to answer interrogatory 75. While conceding that there were individual acts, she refuses to state the dates and times of these acts. Resorting to her "Policy diatribe" is no substitute for the answer to which Defendants are entitled.

77.    For each act of "disparate treatment" identified in response to Interrogatory No. 74, **IDENTIFY** each and every witness to each and every act so identified.

<u>Answer</u>:    Both Plaintiffs and the other female members of the Department witnessed and were affected by the policy of deliberate indifference identified in the Plaintiff's answer to interrogatory 74.

<u>Argument</u>:    The answer is non-responsive. Plaintiff has claimed she was the victim of disparate treatment. If others witnessed the alleged acts of disparate treatment, Defendants are entitled to know who these witnesses are. Plaintiff's resort to her "Policy diatribe" is no substitute for the answer to which Defendants are entitled.

8

79.    **IDENTIFY** the "superior officers" to whom you are referring in paragraph 51 of your **COMPLAINT**.

Answer:    The superior officers are included as Defendants in this complaint.

Argument:    The answer is non-responsive.    The Mayor is a named Defendant, but is not a superior officer of the Police Department.  Simply stating the Defendants in the case evades answering the question.  Moreover, the events alleged in the complaint do not support a claim that each and every superior officer named in the case failed to take remedial action for the alleged acts of disparate treatment.  Defendants are entitled to a full and complete answer.

81.    **IDENTIFY** the "male officers" to whom you are referring in the third sentence of paragraph 51 of your **COMPLAINT**.

Answer:    The male officers referred to in the third sentence of Paragraph 51 are male officers of the Revere Police Department.

Argument:    The answer is non-responsive. Paragraph 51 alleges in part that "The response of these superior officers did not discourage male officers and supervisory personnel from perpetuating a hostile and discriminating work environment."  Defendants are entitled to know which "male officers" Plaintiff is contending perpetuated a hostile and discriminating work environment.  By definition these "male officers" must be "male officers of the Revere Police Department." Defendants are entitled to a full and complete answer.

83.    **IDENTIFY** the "other ranking officers" who allegedly "practiced the double standard toward females that helped to create a hostile work environment that [you] experienced" as set forth in paragraph 52 of your **COMPLAINT**.

Answer:    The other ranking officers the named (sic) as defendants in this case.

Argument:    The answer is non-responsive.  The Mayor is a named Defendant, but is not a ranking officer of the Police Department.  Simply stating the Defendants in this case evades answering the question.  Moreover, the events alleged in the complaint do not support a claim that each and every ranking officer named in the case "practiced the (sic) double standard toward females that helped to create the hostile environment that the Plaintiff experienced."  Defendants are entitled to a full and complete answer.

88.    **IDENTIFY** the "female officers" who Sergeant Doherty "deliberately embarrassed [ ], screamed at [ ], made remarks about their abilities and conduct and did not treat [ ] in the same manner he treated male officers" as set forth in paragraph 52 of your **COMPLAINT**.

Answer:    The officers set forth in paragraph 52 are plaintiffs, officer Curcio, Fish and Malatesta and any other female officer who said anything he considered profanity.

Argument:    The answer is non-responsive.  The portion of the response which states "and any other female officer who said anything he considered profanity" is evasive.   The complaint

9

alleges that "Sergeant Doherty deliberately embarrassed female officers, screamed at them, made remarks about their abilities and conduct and did not treat them in the same manner he treated male officers." Defendants are entitled to know which female officers Sergeant Doherty allegedly treated in the manner alleged.

89.    **IDENTIFY** the "one officer" to whom you are referring in the second sentence of paragraph 53 of your **COMPLAINT**.

Answer:    The officers and the superiors conducting the January 7, 1999 meeting agreed to protect the anonymity of the officers who participated in the meeting.

Argument:    The answer is non-responsive. The Plaintiff, having brought an action by which she seeks to recover multiple millions of dollars from the Defendants, can not hide behind some alleged confidentiality agreement, which in the context of this Public Entity Defendant and employer would probably be against public policy. In any event, Defendants are entitled to know the name of the "one officer" since Plaintiff has chosen to make allegations about that officer in her complaint.

93.    **STATE THE BASIS** for your implied allegation that Sergeant Doherty threatened female officers with dismissal as set forth in paragraph 54 of your **COMPLAINT**.

Answer:    Paragraph 54 does not state that Sgt. Doherty threatened female officers with dismissal.

Argument:    The answer is non-responsive. Paragraph 54 alleges "Sergeant Doherty did not make the same kind of remark, make the same kind of comparison with his son or father, *or threaten male officers with dismissal for using profanity.* The Plaintiffs and other female officers found Sergeant Doherty's double standard had a negative impact on the terms and conditions of their employment of (sic) the female officers." Emphasis added. The implication is clear. Sergeant Doherty threatened female officers with dismissal for using profanity at a time when he did not threaten male officers with dismissal for using profanity. Hence the double standard alleged in paragraphs 52 and 53 immediately preceding. Defendants are entitled to an answer to the question as framed.

94.    **IDENTIFY** each and every female officer whom you contend Sergeant Doherty threatened with dismissal as impliedly set forth in paragraph 54 of your **COMPLAINT**.

Answer:    Your term "impliedly set forth" is ambiguous. Sgt Doherty told that (sic) Plaintiff that if she used language he considered profane, he would send her home. That statement is clear.

Argument:    The answer is non-responsive. The interrogatory is not ambiguous. The implication from the allegations of paragraph 54 is clear. Sergeant Doherty threatened female officers with dismissal for using profanity at a time when he did not threaten male officers with dismissal for using profanity. Hence the double standard alleged in paragraphs 52 and 53

10

immediately preceding. Defendants are entitled to a full and complete answer to the question as framed.

95.    State the exact dates, times and locations, of the closest approximation you have thereof, for each incident when Sergeant Doherty threatened a female officer with dismissal as impliedly set forth in paragraph 54 of your **COMPLAINT**.

Answer:    The term "impliedly set forth" is ambiguous. Sgt Doherty told that (sic) Plaintiff that if she used language he considered profane, he would send her home. That statement is clear.

Argument:    The answer is non-responsive. The interrogatory is not ambiguous. The implication from the allegations of paragraph 54 is clear. Sergeant Doherty threatened female officers with dismissal for using profanity at a time when he did <u>not</u> threaten male officers with dismissal for using profanity. Hence the double standard alleged in paragraphs 52 and 53 immediately preceding. Defendants are entitled to a full and complete answer to the question as framed.

101.    If you contend that Sergeant Doherty expressed a negative opinion of your professional ability as implied in paragraph 61 of your **COMPLAINT, STATE THE BASIS** for your contention:

Answer:    Paragraph 61 does not make statement (sic) relied upon by the Defendant as the basis for its question.

Argument:    The answer is non-responsive and incomprehensible. Paragraph 61 alleges in pertinent part "Sergeant Doherty's comments [about the female sportscaster] were load, demeaning, deeply offensive, and humiliating to the female officers in the Department, *including Plaintiff.* . . . As a superior officer of the Revere Police Department, Sergeant Doherty's negative opinion of female professional abilities, *including the professional abilities of the Plaintiffs*, heightened the hostility, humiliation, and degradation that permeated the workplace environment. Emphasis added. The implication is clear. Sergeant Doherty expressed a negative opinion of Plaintiff's professional ability. The interrogatory is intended to make the implication express. Plaintiff's answer is non-responsive and evasive. Defendants are entitled to a direct answer.

102.    State the date of the alleged incident involving Sergeant Nelson as set forth in paragraph 63 of your **COMPLAINT**.

Answer:    The incident involving Sgt. Nelson as set forth in paragraph 63 was included in the sexual harassment report dated January 7, 1999. The specific date was not stated.

Argument:    The answer is non-responsive. It was precisely because the date was not stated, in the complaint or the January 14, 1999, report, that the interrogatory was asked in the first place. Defendants are entitled to a full and complete answer to the question.

11

104.   **IDENTIFY** the "male subordinates [who] treat[ed] female officers in a demeaning and humiliating manner" as set forth in paragraph 65 of your **COMPLAINT**.

Answer:        The male subordinates are the supervisors named as defendant (sic) in the case.

Argument:        The answer is non-responsive and incomprehensible. By definition, a subordinate is not a supervisor. The answer is evasive. Alternatively, the complaint is in error and Plaintiff must acknowledge the error if the answer is intended to stand. Defendants are entitled to a full and complete answer to the question.

106.   Identify each act by a male subordinate which you contend constituted treatment "in a demeaning and humiliating manner" as set forth in paragraph 65 of your **COMPLAINT**.

Answer:        Paragraph 65 addresses the environment; it does not address individual acts.

Argument:        The answer is non-responsive. One would think that it is self-evident that "environments" do not exist in a vacuum, but are themselves the product of individual acts. Indeed, a hostile work "environment" results from a combination of hostile acts, as Plaintiff's complaint itself demonstrates. Thus, Plaintiff's response is clearly evasive and Defendants are entitled to a full and complete answer.

107.   Identify each comment by Chief Russo which you contend "stigmatized female officers, including [yourself]" as set forth in paragraph 65 of your **COMPLAINT**.

Answer:        The chief's comments, ever (sic) though they were not aimed directly at the Plaintiff, are a violation of the present sexual harassment policy. At the time he made the comments the department had no sexual harassment policy but his comments made the female officers present and the officers who learned about the comments feel welcome in the department.

Argument:        The answer is non-responsive. Defendants are entitled to know the comments upon which Plaintiff makes the allegation set forth in paragraph 65. Plaintiff's resort to her "Policy diatribe" is no substitute for the answer to which Defendants are entitled.

111.   **IDENTIFY** the "four (4) female officers" to whom you are referring in paragraph 69 of your **COMPLAINT**.

Answer:        The four female officers referred in paragraph 69 spoke on the condition of anonymity at the sexual harassment meeting on January 7, 1999. Their names were not included in the report.

Argument:        The answer is non-responsive. The Plaintiff, having brought an action by which she seeks to recover multiple millions of dollars from the Defendants, can not hide behind some alleged confidentiality agreement, which in the context of this Public Entity Defendant and employer would probably be against public policy. In any event, Defendants are entitled to

know the names of the four female officers since Plaintiff has chosen to make allegations about those officers in her complaint.

118.    If you contend that the vandalism of the assigned automobile as set forth in paragraph 73 of your **COMPLAINT** was caused by any employee of the City of Revere Police Department, **STATE THE BASIS** for this contention.

Answer:    The vandalism of the cruiser that was assigned to the female officers was never investigated. The Plaintiff feared for her safety after that incident.

Argument:    The answer is non-responsive. Defendants are entitled to know if the Plaintiff is contending that Officers of the Revere Police Department caused the alleged vandalism and the factual basis for any such contention.

119.    If your answer to Interrogatory No. 118 is an affirmative of the contention, **IDENTIFY** the employee(s) of the City of Revere Police Department who caused or contributed to the vandalism set forth in paragraph 73 of your **COMPLAINT**.

Answer:    The Plaintiff reported the vandalism of her vehicle the (sic) Revere Police Department. The Revere Police Department failed to determine who caused or contributed to the vandalism.

Argument:    The answer is non-responsive. If the Plaintiff is contending that Officers of the Revere Police Department caused the alleged vandalism, then Defendants are entitled to know the name(s) of the Officer(s) of the Revere Police Department who allegedly caused the vandalism or, in the alternative, if Plaintiff does not know who caused the vandalism, then they are entitled to know that as well.

120.    If you contend that the vandalism of the assigned automobile as set forth in paragraph 73 of your **COMPLAINT** was caused by any employee of the City of Revere other than an employee of the Police Department, **STATE THE BASIS** for this contention.

Answer:    The Revere Police Department failed to determine the vandalism (sic) of two of their vehicles in which all eight tires were slashed. The Revere Police Department failed to investigate or to determine who caused or contributed to the vandalism of its vehicles.

Argument:    The answer is non-responsive. If the Plaintiff is contending that employees of the City of Revere other than Officers of the Revere Police Department caused the alleged vandalism, then Defendants are entitled to know the factual basis for this contention. If Plaintiff is not so contending, then Defendants are entitled to know this as well.

121.    If your answer to Interrogatory No. 120 is an affirmative of the contention, **IDENTIFY** the employee(s) of the City of Revere who caused or contributed to the vandalism set forth in paragraph 73 of your **COMPLAINT**.

13

Answer:      The answer to interrogatory 120 can not be affirmative or negative because the Revere Police Department failed to determine who caused or contributed to the vandalism.

Argument:      The answer is non-responsive. If the Plaintiff is contending that employees of the City of Revere other than Officers of the Revere Police Department caused the alleged vandalism, then Defendants are entitled to know the name(s) of these employees or, in the alternative, if Plaintiff does not know who caused the vandalism, then they are entitled to know that as well.

141.    If you witnessed the incident described in paragraph 83 of your **COMPLAINT**, describe in detail the facts and circumstances surrounding this incident and **IDENTIFY** the person(s) who were a party thereto.

Answer:      The report identified as an OSHA report is a report by the Division of Occupational Safety, an agency of the Commonwealth of Massachusetts. The remaining parts of paragraph 83 pertain to Sonia Fernandez.

Argument:      The answer is non-responsive. Paragraph 83 does not involve the OSHA report at all, but rather the incident when Plaintiff Fernandez was called to a homicide scene. By definition the interrogatory recognizes that "paragraph 83 pertain[s] to Sonia Fernandez." The question was, did Plaintiff Pechner witness this incident and if so, what did she see and hear? Defendants are entitled to a full and complete answer to this question.

151.    Is the meeting with the Mayor alleged in paragraph 105 of your **COMPLAINT** the same meeting as the one alleged in paragraph 49 of your **COMPLAINT**?

Answer:      The response to Interrogatory 63 addresses the meeting of Plaintiff, Terry (sic) Pechner-James with the Mayor.

Argument:      The answer is non-responsive. Interrogatory 63 addressed the allegations of paragraph 49 concerning the Plaintiff's meeting with the Mayor. Paragraph 105 also alleges that there was a meeting with the Mayor. This interrogatory seeks to know if the meeting alleged in paragraph 105 is the same meeting alleged in paragraph 49. If so, then that obviously means there was only one such meeting. If not, then that means there were at least two such meetings. Defendants are entitled to a straight forward answer to the question.

163.    **IDENTIFY** the "male employees" to whom you are referring in paragraph 116 of your **COMPLAINT**.

Answer:      The male employees referred to in paragraph 116 are the male employees of the Revere Police Department who have received leave with pay.

Argument:      The answer is non-responsive. Defendants are entitled to know which "male employees" Plaintiff is contending received leave with pay. By definition these "male employees" must be "male employees of the Revere Police Department." Defendants are entitled to a full and complete answer.

14

165.    **IDENTIFY** "the Defendants" who have allegedly "intimidated, threatened and coerced" you as set forth in paragraph 122 of your **COMPLAINT**.

<u>Answer</u>:      The City of Revere and its agents.

<u>Argument</u>:      The answer is non-responsive.  Defendants are entitled to know which "agents" of the City of Revere allegedly "intimidated, threatened and coerced" the Plaintiff as set forth in paragraph 122 of her complaint.

15

# EXHIBIT "E"

# Grayer & Dilday, LLP

COUNSELLORS-AT-LAW
27 SCHOOL STREET – SUITE 400
BOSTON, MASSACHUSETTS 02108
TEL. (617) 227-3470 • FAX (617) 227-9231

December 20, 2005

Walter H. Porr, Esq.
Paul Capizzi, Esq.
Office of the City Solicitor
281 Broadway
Revere, MA 02151

Re:    Pechner-James et al v City of Revere et al
       USDC # 03-12499-MLW

Dear Attorneys Capizzi and Porr,

I am in receipt of your letters dated December 15, 2005 and December 16, 2005 concerning the Plantiffs in this case. Both letters state that you were writing Pursuant to Fed. R. Civ. P. 37(a)(2)(B) and Local Rules 7.1 and 37.1(A). Rule 37 requires a conference in good faith to be undertaken by the moving party. Local Rule 37.1 (a) also requires the moving party to arrange for a conference.

Your letters contained no request for a conference in good faith "to narrow the areas of disagreement to the greatest possible extent." They also contained no request to meet or confer concerning responses that you claim are legally deficient and in need of supplementation and/or amendment.

We are therefore requesting clarification. If your letter is a request for a conference pursuant to Rule 37 and Local 7, please respond with a time and place for such a conference and we will attend such a meeting. Look forward to hearing from you.

Sincerely,

James S. Dilday, Esq.

SOLICITOR
05 DEC 21 PM 1:43
CITY OF REVERE
RECEIVED

# EXHIBIT "F"

# THE CITY OF REVERE, MASSACHUSETTS



281 Broadway
Revere, MA 02151

OFFICE OF THE CITY SOLICITOR

**Paul Capizzi**
**Walter H. Porr, Jr.**
**(781) 286-8166**
**(781) 286-8205 (FAX)**

**Thomas G. Ambrosino**
**Mayor**

December 21, 2005

James S. Dilday, Esq.
Grayer & Dilday, LLP
27 School Street, Suite 400
Boston, MA 02108

Re:    Pechner-James ,et al., v. City of Revere, et al.
       USDC MA Case No. 03-12499-MLW

Dear Mr. Dilday:

.This letter is written in response to yours of December 20, 2005, and your request for clarification therein. Local Rule 37.1(A) specifically states that the discovery conference contemplated by the rule "may be conducted over the telephone." Thus, I am proposing that we agree upon a date and time to discuss this matter by phone. To facilitate such a discussion, I provided you with a detailed outline of each question, your response and my argument as to why that response must be supplemented or amended. I suspect that it will take a few minutes to discuss each one of these items and suspect that such a phone call may well last an hour or so if we discuss each one individually. On the other hand, my hope in providing you with the detailed outline was that for those questions where there is no disagreement, there would be no need for any extended discussion and you would amend/supplement in the manner required.

I propose that we conduct a telephonic conference on Thursday afternoon, December 29, 2005, of Friday morning, December 30. Please advise as to which of these dates and times would be agreeable to you and I will call you to confer as required by the rule.

Thank you for your attention to this matter. Should you have any questions, please do not hesitate to contact me.

Sincerely,

Walter H. Porr, Jr.
Assistant City Solicitor

Cc:    Michael J. Akerson, Esq.