# EXHIBIT A

4.      Reference is made to the last paragraph of page 11 of your **COMPLAINT** which states: "Facts: Sonia Fernandez. The facts that give rise to the claim of Sonia Fernandez incorporate the paragraphs stated above and the events described in detail below:" Identify each and every event alleged in paragraphs 17 – 79 of the **COMPLAINT** which you witnessed personally.

Answer:       Paragraphs 17 – 79 of the complaint detail the experiences of Terri Pechner-James. However, her personal experiences occurred in an environment that affected all members of the Department.

Argument:      The answer is non-responsive. It goes without saying that paragraphs 17 –79 of the complaint detail the experiences of Terri Pechner-James. However, the last paragraph on page 11 is where the complaint transitions to allegations made on behalf of Plaintiff Sonia Fernandez. In this context, the complaint states that "The facts that give rise to the claim of Sonia Fernandez incorporate the paragraphs stated above," i.e., paragraphs 17 –79. The interrogatory simply seeks an identification of the events described in paragraphs 17 – 79, if any, personally witnessed by Plaintiff, Sonia Fernandez. Clearly the present answer is non-responsive. Moreover, Fed.R.Civ.P. Rule 37(a)(3) states that "For purposes of this subdivision an evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond." Again, simply stating that "Terri Pechner-James . . . experiences occurred in an environment that affected all members of the Department" does not respond to an interrogatory asking Plaintiff Sonia Fernandez which of the experiences of Terri Pechner-James alleged in paragraphs 17 – 79 of the complaint she, Sonia Fernandez, witnesses personally.

5.      Reference is made to the last paragraph of page 11 of your **COMPLAINT** which states: "Facts: Sonia Fernandez. The facts that give rise to the claim of Sonia Fernandez incorporate the paragraphs stated above and the events described in detail below:" Identify each and every event alleged in paragraphs 17 – 79 of the **COMPLAINT** which you did not witness personally, but of which you were informed by a third party.

Answer:       Paragraphs 17 – 79 on (sic) the Plaintiff's complaint detail the experiences of Terri Pechner-James. However, her personal experiences occurred in an environment that affected all members of the Department.

Argument:     What is true of Plaintiff's answer to interrogatory no. 4 is true of her answer to interrogatory no. 5. If she did not witness the event herself, then presumably she was told of the event by a third party. Defendants are entitled to know which events of alleged discrimination involving Terri Pechner-James which are incorporated into Plaintiff Sonia Fernandez's complaint were personally witnessed by Plaintiff Fernandez versus which events she was only told about later.

6.      Reference is made to the last paragraph of page 11 of your **COMPLAINT** which states: "Facts: Sonia Fernandez. The facts that give rise to the claim of Sonia Fernandez incorporate the paragraphs stated above and the events described in detail below:" For each event alleged in paragraphs 17 – 79 of the **COMPLAINT** which you did not witness personally, but of which you were informed by a third party, **IDENTIFY** the third-party who so informed you and the

state the exact date, or the closest approximation you have thereof, upon which you were so informed.

Answer: Paragraphs 17 – 33 describe incidents that occurred between Terri Pechner-James and Lt. Foster during the course of employment at the Revere Police Department. The Plaintiff learned of these events from the CoPlaintiff. The Plaintiff learned of these events on or close to the date of their occurrence as stated. Some incidents were included in the January 14, 1999 report on sexual harassment by the Department.

Argument: Plaintiff's response is incomplete. The interrogatory is addressed to all of the events alleged in paragraphs 17 – 79 of the complaint. The response only addresses the events in paragraphs 17 – 33. Defendants are entitled to a response as to the events alleged in paragraphs 34 – 79.

~~12. **IDENTIFY** "the Revere Police Officer[ who] looked at [you] and asked [you] if [you were] working as an undercover hooker that night" as set forth in paragraph 83 of your **COMPLAINT**.~~

~~Answer: The Revere Police Officer who looked at the Plaintiff and asked her if she was working as an undercover hooker was present at the scene on Shirley Avenue. Officer Luis Rodriquez of Chelsea was also present at the scene and heard the remark. He asked the Plaintiff how she was able to put up with this kind of behavior.~~

~~Argument: The answer is non-responsive. The allegation from the complaint which is the subject of the interrogatory itself identifies the speaker as a Revere Police Officer. Obviously, to have seen the Plaintiff and made the comment attributed to him, he would have had to have been "present at the scene on Shirley Avenue." Plaintiff's failure to provide the name of the individual is evasive and incomplete and Defendants are entitled to a full and complete response.~~

~~14. **IDENTIFY** the "[o]ther officers at the scene [who] commented on [your] diminished status" as set forth in paragraph 83 of your **COMPLAINT**.~~

~~Answer: The other officers at the scene were members of the Revere Police Department and Officer Luis Rodriquez of the Chelsea Police Department.~~

~~Argument: The answer is non-responsive. The allegation from the complaint which is the subject of the interrogatory itself suggests that the "other officers at the scene" were Revere Police Officers. Obviously, to have made the comment attributed to them, they would have had to have been "at the scene" in the first instance. Plaintiff's failure to provide the names of the "other officers" is evasive and incomplete and Defendants are entitled to a full and complete response.~~

15. State the exact dates, times and locations, or the closest approximation you have thereof, for each "occasion[] during 1996 and 1997 [that] Lieutenant Ford routinely made personal and hostile comments about [your] physical appearance, hair and weight" as set forth in paragraph 84 of your **COMPLAINT**.

Answer: During 1996 and 1997, the Defendant, City of Revere and Revere police Department did not have a policy to maintain a harassment free workplace; it did not have a reporting or investigating mechanism and it had not given each officer who joined the Department a copy of its sexual harassment policy. The Plaintiff was unable to report violations of the harassment free workplace by Lt. Ford and other superiors and the Defendant had no identify (sic) and punish violators.

Argument: The answer is non-responsive. The allegation from the complaint which is the subject of the interrogatory itself states that the alleged events happened in 1996 and 1997. The interrogatory seeks the date of each such event, or the closest approximation thereof which the Plaintiff can provide. Furthermore, Plaintiff's "Policy diatribe" is fatuous and has no place in her response and must be stricken there from.

~~17. **IDENTIFY** each and every person who witnessed or overheard each and/or any of Lieutenant Ford's hostile comments as set forth in paragraph 84 of your **COMPLAINT**.~~

~~Answer: Hostile comments did not only come from Lt. Ford. On or about February 1996, the Plaintiff had a friendly relationship with Sgt. Picardi. During the summer of 1996, Sgt. Picardi was on the Department's softball team. During a softball game with the Saugus Police Department a sergeant from the Revere Police Department made a disparaging comment about the Plaintiff's relationship with Sgt. Picardi. The Saugus softball player said he heard that the Revere Department had a lot of women on the force. Sgt. Griffin agreed and added "this one [referring to Sgt. Picardi is fucking the Spanish one'] (sic) referring to the Plaintiff.~~

~~Argument: The answer is non-responsive. Paragraph 84 of the complaint alleges that during 1996 and 1997 Lieutenant Ford routinely made personal and hostile comments about Plaintiff Sonia Fernandez's physical appearance, hair and weight. The interrogatory seeks the name of each and every person who may have witnessed or overheard such remarks. Plaintiff's failure to provide the names of any such witnesses or to indicate that there are no such witnesses is evasive and incomplete and Defendants are entitled to a full and complete response.~~

~~21. **IDENTIFY** the person(s) who caused or contributed to the event(s) or incident(s) which occurred on or before June 24, 1997, which caused you to go to the hospital as set forth in paragraph 85 of your **COMPLAINT**.~~

~~Answer: The Defendants named in this case, particularly Chief Russo, Lt. Ford and Chief Roy Colannino caused the Plaintiff to be anxious and insecure about her employment.~~

~~Argument: Paragraph 85 of the complaint alleges in relevant part that "The Plaintiff experienced repeated emotional trauma as a result of her working environment. On June 24, 1997, Plaintiff went to the hospital. She was experiencing loss of appetite, sleeplessness, and crying spells. The hospital recommended she be excused from work for the next four days." The interrogatory seeks the names of the individuals, if any, who Plaintiff alleges were responsible for the events that caused her to go to the hospital. Her response "The Defendants named in this case, particularly . . ." is evasive. One of the Defendants named in this case is Mayor Thomas Ambrosino. But Mayor Ambrosino did not become the Mayor of the City of~~

~~Revere until 2000. Thus, he could in no way be responsible for any events preceding June 24, 1997. Likewise, Defendant Terence Reardon was not appointed Chief of Police until January, 2002. There are absolutely no allegations in the complaint concerning anything Chief Reardon did or did not do prior to his appointment as Chief. Thus, he could in no way be responsible for any events preceding June 24, 1997. Plaintiffs response "The Defendants named in this case, particularly . . ." is therefore evasive and the Defendants are entitled to a non-evasive response.~~

~~22. **IDENTIFY** the hospital to which you went on June 24, 1997, as set forth in paragraph 85 of your **COMPLAINT**.~~

~~Answer: On June 25, 1997, Plaintiff went to the community health center.~~

~~Argument: The answer is so patently non-responsive as to defy the need for further argumentation. The Plaintiff is obligated to identify the community health center in question.~~

24. **IDENTIFY** all health care professional(s) who you contend made a diagnoses that your "loss of appetite, sleeplessness, and crying spells" was caused by the event(s) or incident(s) which occurred on or before June 24, 1997, which caused you to go to the hospital as set forth in paragraph 85 of your **COMPLAINT**.

Answer: The health care professional at the East Boston Neighborhood Health Center were among the professional (sic) who treated the Plaintiff during the period stated in the question.

Argument: The answer is so patently non-responsive as to defy the need for further argumentation. The Plaintiff is obligated to identify the health care professionals in question.

27. **IDENTIFY** the person(s) who caused or contributed to the event(s) or incident(s) which occurred on or before November 11, 1997, which caused you to go to the hospital as set forth in paragraph 85 of your **COMPLAINT**.

Answer: The Defendants named in this case, including Captain Roland, Chief Russo and Lt. Ford.

Argument: Paragraph 85 of the complaint alleges in relevant part that "Again, on or about November 11, 1997, the Plaintiff went to the hospital suffering from work related stress. The hospital prescribed Valium and recommended counseling." The interrogatory seeks the names of the individuals, if any, who Plaintiff alleges were responsible for the events that caused her to go to the hospital. Her response "The Defendants named in this case, particularly . . ." is evasive. One of the Defendants named in this case is Mayor Thomas Ambrosino. But Mayor Ambrosino did not become the Mayor of the City of Revere until 2000. Thus, he could in no way be responsible for any events preceding June 24, 1997. Likewise, Defendant Terence Reardon was not appointed Chief of Police until January, 2002. There are absolutely no allegations in the complaint concerning anything Chief Reardon did or did not do prior to his appointment as Chief. Thus, he could in no way be responsible for any events preceding June 24, 1997. Plaintiffs response "The Defendants named in this case, particularly . . ." is therefore evasive and the Defendants are entitled to a non-evasive response.

30. **IDENTIFY** all health care professional(s) who you contend made a diagnoses that your "work-related stress" was caused by the event(s) or incident(s) which occurred on or before November 11, 1997, which caused you to go to the hospital as set forth in paragraph 85 of your **COMPLAINT**.

Answer: The health care professionals diagnosed the plaintiff's loss of appetite, sleeplessness and anxiety. They prescribed the requisite medication. Nancy Aranoff of the East Boston Health Center was the Plaintiff's (sic) for a while. She recognized the Plaintiff's work condition as intolerable. The Plaintiff brought her friend Carmen DelValle to a session with Nancy Aranoff because she felt overwhelmed by the circumstances. Nancy Aranoff subsequently left the Center.

Argument: The answer is incomplete. Although Nancy Aranoff is identified, her status as a health care provider is not clear. If Ms. Aranoff is indeed a health care provider, her status must be clearly articulated.

31. With reference to paragraph 86 of the **COMPLAINT**, state the dates during which you received counseling from the North Suffolk Counseling Services of Chelsea, Massachusetts.

Answer: The North Suffolk Counseling Services indicate that they began treating the plaintiff on April 14, 2003.

Argument: The answer is so patently non-responsive as to defy the need for further argumentation. The Plaintiff is obligated to identify not simply the date she began treating, but all dates of such treatment.

38. **STATE THE BASIS** for your allegation that "[i]n the winter of 1997, [you] were placed on 'walking routes (sic) more frequently than the male members of the Department" as set forth in paragraph 87 of your **COMPLAINT**.

Answer: While Plaintiff was on one of her walking routes in December 1997, she became visibly upset and confided in Officer Kevin Colannino that she was upset because these walking routes were being assigned as punishment. He confided that he did not understand why she was being given so many walking routes.

Argument: The answer is non-responsive. The allegation of paragraph 87 of the complaint is that the Plaintiff was "placed on 'walking (sic) routes more frequently than the male members of the Department." The interrogatory sought the facts supportive of this allegation. Plaintiffs response that Officer Kevin Colannino "did not understand why she was being given so many walking routes" is no response at all. Defendants are entitled to a full and complete response.

39. State the exact date, or the closest approximation you have thereof, for the date to which you are referring when you state that "[o]n one occasion, that winter, the Captain ordered [you] out of a cruiser and placed [you] of 1997" (sic) as set forth in paragraph 87 of your **COMPLAINT**.

Answer: The occasion on which Captain Chaulk ordered the Plaintiff out of the cruiser, placed on a walking route was in December 1997, prior to the incidents of December 1997.as spics and African-American as Niggers (sic).

Argument: The answer is confusing and seems to be internally inconsistent. Plaintiff seems to be simultaneously saying that the incident occurred in December of 1997 and at the same time prior to December of 1997. Defendants are entitled to an answer that is unambiguous.

~~44. State the exact date, or the closest approximation you have thereof, for the date to which you are referring when you state that "[p]rior to [your] withdrawal, [you] requested a leave of absence with pay" as set forth in paragraph 88 of your **COMPLAINT**.~~

~~Answer: In a letter dated April 2, 2001, Mayor Thomas Ambrosino acknowledged unpaid leaves of absence effective Friday, Mrch (sic) 16, 2001 until June 16, 2001 due to medical reasons. Present at the meeting with the (sic) Chief Reardon, was Attorney Dilday, Captain Murphy and the Plaintiff.~~

~~Argument: The answer is non-responsive. The interrogatory seeks the date that Plaintiff requested a leave of absence with pay, not the date the Mayor granted her a leave of absence without pay. The response answers a question that simply was not asked. Defendants are entitled to an answer to they question they asked.~~

45. **STATE THE BASIS** for your allegation that being offered a leave of absence without pay "constituted disparate treatment of [you]" as set forth in paragraph 88 of your **COMPLAINT**.

Answer: Plaintiff requested leave with pay for medical reasons. Mayor Ambrosino provided leave without pay. The decision was based on a policy used by the Revere Police Department that does not recognize the parity between physical injury and psychological injury. This policy is a violation if (sic) state law and decisions based on this policy are invalid.

Argument: The answer is non-responsive. Plaintiff has alleged disparate treatment with respect to the leave with pay/leave without pay issue. Her answer does not respond to the call of the question as to disparate treatment. Defendants are entitled to a full and complete answer.

48. **STATE THE BASIS** for your allegation that you were "unable to return to [your] usual work in an environment free from sexual hostility" as set forth in paragraph 88 of your **COMPLAINT**.

Answer: The Chief of Police offered the Plaintiff "light duty" when she returned in October 2001. The Plaintiff still had the medical condition that caused her to leave in March 2001. The Union objected because the plaintiff was unable to perform the regular duties of a police officer. The environment at the Revere Police Department had not changed. The Plaintiff was caught between the Chief who coerced her into returning to "light duty" and the Union rules that required her to perform the regular duties of a police officer. The plaintiff met with the

Union representative and its legal counsel. The situation created a stressful and tense situation for the plaintiff.

Argument: The answer is non-responsive. Plaintiff's reference to a dispute with her Union over her "light duty" status has nothing to do with her returning to a work "environment free from sexual hostility." Plaintiff alleges that she returned to a work environment that was not free from sexual hostility. The interrogatory seeks the facts in support of this allegation. The answer fails to provide these facts. Defendants are entitled to a full and complete answer.

49. **IDENTIFY** the supervisors who referred to "Hispanics as 'Spics' and African-Americans as 'Niggers'" as set forth in paragraph 90 of your **COMPLAINT**.

Answer: On or about November 1998, Lt. Ford asked the plaintiff in the presence of Officer Burke, "what are you spanish, mexican, cuban? You're all a bunch of cockroaches!" On July 1, 2000, Lt. Ford made his "sewerage people" remark referring to Hispanics from (sic) City of Chelsea. The policymakers of the City of Revere did not have an anti-harassment policy and no complaint reporting mechanism. The Plaintiff had not received a copy of the Defendants policy when she became a member of the Department. This policy of deliberate indifference caused the environment that caused the Plaintiff's constructive discharge. The Plaintiff was unable to work in an environment free of supervisors and agents of the policymakers who used racially and sexually offensive language and who described Hispanics as Spics and African-Americans as Niggers.

Argument: The answer is non-responsive. Plaintiff's references to other comments not encompassed within paragraph 90 of the complaint which is the subject of the interrogatory is evasive. Defendants are entitled to an answer to the question asked. Furthermore, Plaintiff's "Policy diatribe" is fatuous and has no place in her response and must be stricken there from.

50. **IDENTIFY** the coworkers who referred to "Hispanics as 'Spics' and African-Americans as 'Niggers'" as set forth in paragraph 90 of your **COMPLAINT**.

Answer: The coworkers were officers of the Revere Police Department who, without a policy to maintain a harassment free environment and a complaint reporting mechanism and a mechanism for punishing violators, felt free to be offensive and to refer to Hispanics (sic)

Argument: The answer is non-responsive. It is obvious from the complaint that the coworkers referred to must, by definition, be "officers of the Revere Police Department." Defendants are entitled to know who these Officers are in particular. Furthermore, Plaintiff's "Policy diatribe" is fatuous and has no place in her response and must be stricken there from.

51. State the exact dates, or the closest approximation you have thereof, for the dates upon which either a supervisor or coworker referred to "Hispanics as 'Spics' and African-Americans as 'Niggers'" as set forth in paragraph 90 of your **COMPLAINT** and provide the identity for the speaker(s) for such date(s).

Answer: The Defendants, policymakers, had no policy, no complaint reporting mechanism and method for identifying and punishing the officers and supervisors who created the offensive and hostile work environment where the terms Spics and Niggers were used. The policymakers deliberate indifference to this condition caused injury to the Plaintiff.

Argument: The answer is non-responsive. Furthermore, Plaintiff's "Policy diatribe" is fatuous and has no place in her response and must be stricken there from.

52. State the exact date(s), or the closest approximation you have thereof, for the date(s) upon which or during which the altered booking photo was "circulat[ed] within the Revere Police Department" as set forth in paragraph 90 of your **COMPLAINT**.

Answer: The Defendants, policymakers, had no policy, no complaint reporting mechanism, no investigating mechanism and no plan by which to identify the officers and supervisors who circulated the racially offensive material attached as Exhibit H to plaintiff's complaint.

Argument: The answer is non-responsive. Furthermore, Plaintiff's "Policy diatribe" is fatuous and has no place in her response and must be stricken there from.

53. **IDENTIFY** the person(s) who created the altered booking photo was (sic) "circulat[ed] within the Revere Police Department" as set forth in paragraph 90 of your **COMPLAINT**.

Answer: The persons who created the racially offensive material attached as Exhibit H to plaintiff's complaint were members of the Revere Police Department who had access to the booking photograph. The Defendants, policymakers, had no policy, no complaint mechanism, no investigative mechanism and plan that would identify and punish the officers and supervisors who created such a racially offensive caricature of an African-American.

Argument: The answer is non-responsive. Defendants are entitled to know the name(s) of the "members of the Revere Police Department" who allegedly created Exhibit H or, in the alternative, if Plaintiff does not know who created Exhibit H, then they are entitled to know that as well. Furthermore, Plaintiff's "Policy diatribe" is fatuous and has no place in her response and must be stricken there from.

54. **IDENTIFY** the person(s) who circulated the altered booking photo "within the Revere Police Department" as set forth in paragraph 90 of your **COMPLAINT**.

Answer: The person or persons who circulated the racially offensive booking photo within the Revere Police Department were members of the Revere Police Department. The Defendants, policymakers, had no policy, no complaint mechanism, no investigative mechanism and plan that would identify and punish the officers and supervisors who created such a racially offensive caricature of an African-American.

Argument: The answer is non-responsive. Defendants are entitled to know the name(s) of the "members of the Revere Police Department" who allegedly circulated Exhibit H or, in the alternative, if Plaintiff does not know who circulated Exhibit H, then they are entitled to know

that as well. Furthermore, Plaintiff's "Policy diatribe" is fatuous and has no place in her response and must be stricken there from.

62. If you contend that the vandalism of the assigned cruiser as set forth in paragraph 93 of your **COMPLAINT** was caused by any employee of the City of Revere Police Department, **STATE THE BASIS** for this contention.

Answer: All eight tires of the two cruisers assigned to the two females were slashed in the parking lot of the International house (sic) of Pancakes. The Defendants, policymakers, had no policy, no complaint mechanism, no investigative mechanism and no plan that would identify and punish the officers and supervisors who intimidated the female (sic), vandalized their vehicle and rendered them immobile. The policymakers are responsible for creating an environment in which such a brazen act of intimidation can occur without the offending parties being investigated, identified or punished.

Argument: The answer is non-responsive. Defendants are entitled to know if the Plaintiff is contending that Officers of the Revere Police Department caused the alleged vandalism and the factual basis for any such contention. Furthermore, Plaintiff's "Policy diatribe" is fatuous and has no place in her response and must be stricken there from.

63. If your answer to Interrogatory No. 62 is an affirmative of the contention, **IDENTIFY** the employee(s) of the City of Revere Police Department who caused or contributed to the vandalism set forth in paragraph 93 of your **COMPLAINT**.

Answer: Because of the deliberate indifference of the policymakers of the City of Revere, this brazen act of vandalism and intimidation remains uninvestigated and the perpetrators unidentified and unpunished.

Argument: The answer is non-responsive. If the Plaintiff is contending that Officers of the Revere Police Department caused the alleged vandalism, then Defendants are entitled to know the name(s) of the Officer(s) of the Revere Police Department who allegedly caused the vandalism or, in the alternative, if Plaintiff does not know who caused the vandalism, then they are entitled to know that as well. Furthermore, Plaintiff's "Policy diatribe" is fatuous and has no place in her response and must be stricken there from.

64. If you contend that the vandalism of the assigned cruiser as set forth in paragraph 93 of your **COMPLAINT** was caused by any employee of the City of Revere other than an employee of the Police Department, **STATE THE BASIS** for this contention.

Answer: Because of the deliberate indifference of the policymakers of the City of Revere, it is not known whether the perpetrators were employees of the City of Revere other than employees of the Revere Police Department.

Argument: The answer is non-responsive. If the Plaintiff is contending that employees of the City of Revere other than Officers of the Revere Police Department caused the alleged vandalism, then Defendants are entitled to know the factual basis for this contention. If Plaintiff

is not so contending, then Defendants are entitled to know this as well. Furthermore, Plaintiff's "Policy diatribe" is fatuous and has no place in her response and must be stricken there from.

~~65. If your answer to Interrogatory No. 64 is an affirmative of the contention, **IDENTIFY** the employee(s) of the City of Revere who caused or contributed to the vandalism set forth in paragraph 93 of your **COMPLAINT.**~~

~~Answer: The parties who contributed to the vandalism set forth in paragraph 93 of plaintiff's complaint are the policymakers whose policy of deliberate indifference created the environment in which such an act could be committed and remain uninvestigated and unpunished.~~

~~Argument: The answer is non-responsive. If the Plaintiff is contending that employees of the City of Revere other than Officers of the Revere Police Department caused the alleged vandalism, then Defendants are entitled to know the name(s) of these employees or, in the alternative, if Plaintiff does not know who caused the vandalism, then they are entitled to know that as well. Furthermore, Plaintiff's "Policy diatribe" is fatuous and has no place in her response and must be stricken there from.~~

69. **IDENTIFY** the person(s) who hung the women's underwear on the bulletin board in the guard room of the Revere Police Department as alleged in paragraph 94 of your **COMPLAINT**.

Answer: On or about February 26, 2001, a pair of women's undergarments were hung on the bulletin board in the guard room where they were visible to the Department and the general public. This act was an obvious violation of the sexual harassment policy which was dated April 1, 1999. The Defendants, policymakers, had a stated policy but no complaint mechanism, no investigative mechanism and no plan that would identify and punish the officers and supervisors who were responsible for this obvious violation af (sic) an existing policy. The policymakers are responsible for creating an environment in which such an obvious violation of a stated policy could occur without the offending parties being investigated, identified or punished.

Argument: The answer is non-responsive. If the Plaintiff is alleging, as it appear she must be, that Officers of the Revere Police Department hung the women's underwear on the bulletin board, then Defendants are entitled to know the name(s) of these Officer(s) or, in the alternative, if Plaintiff does not know who hung the underwear on the bulletin board, then they are entitled to know that as well. Furthermore, Plaintiff's "Policy diatribe" is fatuous and has no place in her response and must be stricken there from.

70. **STATE THE BASIS** for your identification of the person(s) named in response to interrogatory No. 69.

Answer: The basis of the identification of the person named in Answer 69 would have been known if an investigation had been conducted. The Plaintiff, other female officers, identified, photographed and stored the article. Its presence was known to Lt Foster and other supervisors. There was no mechanism to investigate the reason for its presence or the party responsible for its presence. The policymakers are responsible for creating an environment in which such an

obvious violation of a stated policy could occur without the offending parties being investigated, identified or punished.

Argument: The answer is non-responsive. Plaintiff can either identify the individual(s) who hung the women's underwear in the guard room or she can not. If she can, Defendants are entitled to know the factual basis for such an identification. If she can not, then obviously there is no factual basis for the identification because there is no identification. In either case, Defendants are entitled to an answer which is not evasive. Furthermore, Plaintiff's "Policy diatribe" is fatuous and has no place in her response and must be stricken there from.

~~73. State the exact date, or the closest approximation you have thereof, for the date in 1998 on which "[you] observed a penis drawn on the chalk board located by the radio communication room" as set forth in paragraph 96 of your **COMPLAINT**.~~

~~Answer: During 1998, the plaintiff observed a penis drawn on the chalk board by the communications room.~~

~~Argument: The answer is so patently non-responsive as to defy the need for further argumentation. The Plaintiff is obligated to provide her closest approximation of the date in question.~~

75. **IDENTIFY** the person(s) who drew the penis "on the chalk board located by the radio communication room" as set forth in paragraph 96 of your **COMPLAINT**.

Answer: The act in 1998 of drawing a penis in a place that was highly visible to both the Department and the public was an obvious violation of a workplace free of sexual harassment. The person who drew the penis has not been identified because The (sic) policymakers of the City of Revere had no sexual harassment policy, had not handed out to members of the Department a copy of a sexual harassment handbook, and had no mechanism for reporting, investigating, or punishing such obvious violations of the stated policy. The policymakers are responsible for creating an environment in which such an obvious violation of a stated policy could occur without the offending parties being investigated, identified or punished.

Argument: The answer is so patently non-responsive as to defy the need for further argumentation. The Plaintiff is obligated to provide the name(s) of the individual(s) who drew the penis on the chalk board or to state that she does not know the name(s). Furthermore, Plaintiff's "Policy diatribe" is fatuous and has no place in her response and must be stricken there from.

~~79. **IDENTIFY** the officer in charge of roll call referred to in paragraph 99 of your **COMPLAINT**.~~

~~Answer: The members of the Department present at roll call were Officers Curcio, Malvarosa, Graff, Sgt Randall and Lt McLaughlin.~~

~~Argument: The answer is so patently non-responsive as to defy the need for further argumentation. Paragraph 99 of the complaint states in relevant part "On or about July 1, 2000, the Plaintiff was present at roll call. The officer in charge mentioned that several of the people arrested were from the City of Chelsea. Lieutenant Ford commented: "The sewerage people." The Plaintiff is obligated to identify "the officer in charge." Simply reciting who was present at the roll call does not respond to the interrogatory.~~

~~80. **IDENTIFY** the "white female officers" to whom you are referring in paragraph 100 of your **COMPLAINT**.~~

~~Answer: The Plaintiff is Hispanic; she is the only female officer who could not be described as a white female. The term refers to all other female officers in the Department. Specifically, two female officers in the Department wore their hair in the same manner as the Plaintiff to see if they too would be reprimanded. They were not.~~

~~Argument: The answer is non-responsive. Paragraph 100 alleges in part that "On or about February 28, 2000, Lieutenant Foster walked into the radio room and angrily told Plaintiff to pick up her hair. He remarked "What do you think, you're special?" Plaintiff replied that her hair was up. Lieutenant Foster responded that Plaintiff should get it of her shoulders or get it cut. Plaintiff was hurt and humiliated by this remark because Lieutenant Foster did not make the same demand of white female officers." The response fails to answer the call of the question. Defendants are entitled to know which "white female officers" had hair styles similar to the Plaintiffs since only similarly situated persons would form the foundation for any reasonable comparison. Moreover, the response fails to identify the "two [presumably white] female officers" who apparently deliberately wore their hair like the Plaintiffs to see if they would be treated similarly.~~

~~81. **IDENTIFY** the "other male officers" to whom you are referring in paragraph 100 of your **COMPLAINT**.~~

~~Answer: The other male officers were not identified by name but are the male officers present in the room at the time of the incident.~~

~~Argument: The answer is non-responsive. Paragraph 100 alleges in part that "Lieutenant Foster made this remark in front of other male officers." Defendants are entitled to know who these male officers allegedly were.~~

98. **IDENTIFY** the "male offers injured on the job" who were given "paid leave" as set forth in paragraph 105 of your **COMPLAINT**.

Answer: The information on the male officers injured on the job are (sic) under the custody and control of the Defendants. This act constitutes discrimination. The policymakers of the city (sic)of Revere did not have an anti-discrimination policy, no mechanism for reporting, investigating or punishing acts of discrimination. Their deliberate indifference and persistence in this practice caused injury ti (sic) the plaintiff.

Argument: The answer is non-responsive. Paragraph 105 states in relevant part that "The Plaintiff, Sonia Fernandez, also requested the paid leave normally given to male officers injured on the job. The Mayor offered the Plaintiff only an unpaid leave of absence." Obviously, Plaintiff is comparing herself to a group of male officers who requested and were given paid leave and stating that they got it while she did not. Defendants are entitled to know just which male officers she is referring to. It is not enough to simply say that the City knows which male officers received paid leave. The real issue here is Plaintiff's allegation that she was in the same class as some/all of these male officers and deserved the same treatment. The Defendants are entitled to know which male officers she is comparing herself to by name. She must know of whom she speaks, or how else could she make the allegation under oath (the complaint is verified as was the MCAD charge). Thus, Defendants are entitled to a full and complete answer.

99. For each male officer identified in response to Interrogatory No. 98, describe in detail the date and circumstances of their injury which resulted in their receiving paid leave.

Answer: The Defendants have under their custody and control details, the dates and the circumstances of their injury which resulted in their receiving paid leave.

Argument: The answer is non-responsive. What is true about interrogatory 98 is true here. Defendants are entitled to a full and complete answer.

102. Do the allegations of paragraph 105 of your **COMPLAINT** describe the same incident or event as alleged in paragraph 88 of your **COMPLAINT**?

Answer: The environment in which the Plaintiff was unable to work is present in both paragraphs 88 and 105.

Argument: The answer is non-responsive. Paragraph 88 of the complaint states:

> As a direct and proximate cause of the Defendant's conduct the Plaintiff was forced to withdraw from the Revere Police Department. Prior to her withdrawal, she requested a leave of absence with pay. The Defendants offered the Plaintiff leave without pay. This decision constituted disparate treatment of Plaintiff. The Defendants constructively discharged the Plaintiff. Even though the Plaintiff returned to work temporarily, she was unable to return to her usual work in an environment free from sexual hostility.

Paragraph 105 states:

> The barriers created by the Defendants were so formidable that the Plaintiffs went to see Mayor Thomas Ambrosino. The Plaintiff, Sonia Fernandez, also requested the paid leave normally given to male officers injured on the job. The Mayor offered the Plaintiff only an unpaid leave of absence. Three female officers, including

> the Plaintiff, Sonia Fernandez, filed complaints with the MCAD based on facts arising out of the hostile environment that existed in the Revere Police Department. The Plaintiff subsequently returned to work but was unable to work in the environment of the Revere Police Department.

On the face of it, it appears that the allegations in these paragraphs relate to the same events, particularly as it relates to the meeting with the Mayor and Plaintiff Fernandez's return to work. The interrogatory naturally asks if the allegations do in fact relate to the same events. The response that "The environment in which the Plaintiff was unable to work is present in both paragraphs 88 and 105" fails to respond to the question as asked. Defendants are entitled to know if the allegations in these paragraphs relate to the same or different events.

~~116. If you answer to interrogatory No. 113 is in the affirmative, state the exact date, or the closest approximation you have thereof, of the alleged incident involving Sergeant Nelson as set forth in paragraph 63 of your **COMPLAINT**~~

~~Answer: The incident involving Sgt Nelson occurred after the Plaintiff began her employment and before the existence of the sexual harassment policy. This behavior was condoned by the policymakers who were deliberately indifferent to the environment created and to the injury suffered by the Plaintiff. The emotional disability suffered by the Plaintiff was caused by the policy makers because they had no investigative mechanism, no reporting mechanism and no mechanism for punishing violators of the law. Their deliberate indifference deprived the Plaintiff of her right to participate fully in the compensation, terms and conditions of her employment at the Revere Police Department and her right to a harassment free environment.~~

~~Argument: The answer is non-responsive. According to paragraph 80 of the complaint, Plaintiff "was sworn in as a Revere Police Officer on September 21, 1995." According to Plaintiff's answer to interrogatory 57, she is aware of a sexual harassment policy dated April 1, 1999. Piecing these two sources of information together, one possible interpretation of Plaintiff's answer is that the incident involving Sgt Nelson occurred between September 21, 1995 and April 1, 1999. But Defendants are forced to speculate to come to this conclusion and surely Plaintiff can be more explicit than to suggest a nearly four year time frame to her response. Surely, if Sgt. Nelson's conduct was as traumatic and injurious as Plaintiff would have the Court believe, then she should be able to be more specific in her date. Moreover, Exhibit D to the complaint is a report of a meeting requested by the female officers of the Revere Police Department concerning complaints of sexual harassment held on January 7, 1999. The incident involving Sgt. Nelson is addressed on page 5 at lines 194-203 of that report. Thus, the incident predates January 7, 1999. Defendants are entitled to a more reasonable and realistic statement of the date of this alleged incident. Furthermore, Plaintiff's "Policy diatribe" is fatuous and has no place in her response and must be stricken there from.~~

~~117. **STATE THE BASIS** for your allegation that Lieutenant Salvatore Santoro's behavior towards you was hostile as set forth in paragraph 131 of your **COMPLAINT**.~~

~~Answer: The Plaintiff, Sonia Fernandez, has her own experiences with Lt Santoro but the innuendo of sexual relations with prisoners in paragraph 131 referred to the experience of Co-Plaintiff, Terri Pechner-James.~~

~~Argument: The answer is non-responsive. Paragraph 131 is the first substantive paragraph of count II, the Constructive Discharge Count, alleged on behalf of Plaintiff Fernandez. In part, paragraph 131 alleges "Lieutenant Salvatore Santoro's hostile behavior and his devastating accusations that the Plaintiff had sexual relations with prisoners, . . ." Plaintiff makes at least two allegations against Lieutenant Santoro. First, that he behaved hostilely towards her and second, that he accused her of sexual relations with a prisoner. The interrogatory clearly addresses the first allegation by asking the Plaintiff to state the factual basis for her allegation that Lieutenant Salvatore Santoro's behavior towards her was hostile. Plaintiff responds that she "has her own experiences with Lt Santoro," but fails to specify what experience she is referring to. Her disclaimer that the innuendo regarding sexual relations referred to Co-Plaintiff Pechner is irrelevant because the interrogatory did not ask about that aspect of Lieutenant Santoro's alleged behavior. Thus, Defendants are entitled to a full and complete response concerning Plaintiff's "own experiences with Lt Santoro."~~

123. **IDENTIFY** the "male employees" to whom you are referring in paragraph 134 of your **COMPLAINT**.

Answer: The male employees referred to in paragraph 134 are police officers who requested leave with pay prior to the date of the Plaintiff's employment.

Argument: The answer is non-responsive. It must go without saying that the male employees referred to in paragraph 134 are police officers. The question is which police officers in particular. Again, Plaintiff is comparing herself to a group of male police officers and saying that she is similarly situated and thus, should have been treated the same. Defendants are entitled to know which male officers she contends she is similarly situated to. The answer is also incomprehensible. Plaintiff states that the male officers in question are "officers who requested leave with pay *prior to* the date of the Plaintiff's employment." Emphasis added. Plaintiff was employed on September 21, 1995. Complaint, paragraph 80. Yet, the Plaintiff did not request leave with pay until sometime in March or April of 2001, some five and one-half years later. Response to Interrogatory No. 42. Given this disparity in time, Defendants are all the more entitled to know precisely to whom the Plaintiff is comparing herself.