UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 03-12499 MLW

TERRI L. PECHNER-JAMES )
and  SONIA FERNANDEZ )
    Plaintiffs )
     )
     )
VS. )
     )
CITY OF REVERE, THOMAS )
AMBROSINO, MAYOR, CITY )
OF REVERE POLICE DEPT. )
TERRENCE REARDON, CHIEF )
OF POLICE, BERNARD FOSTER )
SALVATORE SANTORO, ROY )
COLANNINO, FREDERICK )
ROLAND, THOMAS DOHERTY )
JOHN NELSON, JAMES RUSSO )
MICHAEL MURPHY and )
STEVEN FORD )
    Defendants )

## PLAINTIFFS OPPOSITION TO DEFENDANTS, BERNARD FOSTER, SALVATORE SANTORO ET AL MOTION FOR SANCTIONS

Now come the Plaintiffs and hereby oppose the Defendants motion for sanctions and award of expenses. The Plaintiffs state the following as grounds for their opposition:

1. The Plaintiffs filed the present complaint in the Suffolk Superior Court by verified complaint dated September 30, 2003. The Plaintiffs complaint stated four (4) causes of action.

2. The Plaintiffs complaint and the state and federal causes of action contained therein arise from the same nucleus of operative facts as the Plaintiffs respective adjudications of disability.

3. The Defendants removed this case from the Suffolk Superior Court to the United States District Court where, for the last three years, they have tried to relitigate the issues of injury and causation that they lost in the state adjudication of disability.

4. In a letter dated November 14, 2005, attorneys for the Defendant officers who filed this motion, stated 14 items they were seeking from the plaintiff, Sonia Fernandez and 11 items he was seeking from plaintiff, Terri Pechner-James. **See Defendants Exhibit A attached**. In a response dated December 5, 2005, counsel for the Plaintiffs provided a detailed response to the Defendants letter of November 14, 2005 and included an exhaustive list of medical documents, including detailed records on a rib fracture from a motor vehicle accident that is not related to this case. **See Defendants Exhibit B attached.**

5. The Defendants discovery efforts seem designed to obtain documents that they can use for "impeachment purposes" and consideration of pre-existing conditions or subsequent intervening events" as well as "their physical and mental condition".

6. The discovery that the Defendants seek can be obtained from Dr. Barry of Stoneham. Dr. Barry examined Plaintiff, Sonia Fernandez, before she entered police training, he examined her again on the orders of Chief James Russo while she was in training, he examined again before she began her employment as a Revere Police Officer, he examined her again on several occasions during the period of her employment.

7. Dr. Barry similarly provided examination and medical services to Plaintiff, Terri Pechner-James prior to her police training, prior to the commencement of her employment as a Revere Police Officer and on several occasions during her employment as a Revere Police Officer.

8. The Plaintiffs have been unable to obtain these records. The Plaintiffs do not control or have access to the records of Dr. Barry. He provided services to the City of Revere.

Argument:

The Plaintiffs did not file this civil action to establish Post Traumatic Stress Disorder or any other medical condition. The Plaintiffs Post Traumatic Stress Disorder and its causation were the subject of prior state adjudications. The Plaintiffs also do not seek to establish that they are unable to work as a result of Post Traumatic Stress Disorder and they were forced to leave their employment as a result of this condition. This latter fact has also been the subject of prior state adjudication.

The Plaintiffs seeks to establish that (1) the hostile environment that caused their disability and loss of employment is also a violation of the civil rights laws of the Massachusetts and the United States, and (2) to determine the damages that naturally flow from their disability and loss of their employment at the Revere Police Department.

These Defendants state that they seek medical records for the purpose of impeaching prior state adjudications. The Plaintiffs have filed a detailed response to the Defendants request in its response attached as **Exhibit B**. The most likely source of the records that these Defendants seek are the records of Dr. Barry of Stoneham, as stated earlier. The Plaintiffs does not have the ability to produce Dr. Barry's records but the Defendant, City of Revere does. Dr. Barry provided services to the City of Revere and the Plaintiffs included this information in their response to the Defendants request for medical records. It is unreasonable to expect the Plaintiffs to provide the Dr. Barry's records, it would be unfair to sanction them for their inability to do so.

The medical records these Defendants seek are not the same as the tax returns that the Defendants sought in Torres-Vargas v Pereira, 2005 WL 3454686 at *4. Vargas neglected his case. His case was ultimately dismissed for failure to prosecute including neglecting to provide income tax returns that were either in his possession or under his control. The comparison will not hold. These Plaintiffs have not neglected this case. On the contrary, the Defendants have at time neglected this case. The Plaintiffs filed this case in the Suffolk Superior Court by filing a verified complaint in September 2003. The Defendants filed no responsive pleadings for several months.

The Defendants first action was to remove this case to Federal District Court for the purpose of relitigating the issues that had already been adjudicated in state forums. The Plaintiffs then filed a Motion For Partial Summary Judgment. The Defendants did not respond. The Defendants filed their answer to the complaint several months after the complaint had been filed. Neither Torres-Vargas nor Rosario-Diaz v Gonsales, 140 F.3d 312, 315 (1998) involve documents over which the Plaintiffs did not have control.

The Defendants motion for sanctions is both unnecessary and unfair. This is the second time that they have filed this motion. The Plaintiffs have made a good faith effort to provide the documents requested. If the Defendants are still unsatisfied with the documents that they have received it may be because their request is unduly burdensome and the Plaintiffs do not have the ability to provide what they seek.

This second request for sanction is both frivolous and unnecessary. The Plaintiffs response attached as **Exhibit B** was adequate and legally sufficient. The Plaintiffs further move this court, pursuant to Fed. R. Civ. P. 37(b)(2) to order the Defendants to pay Plaintiffs reasonable expenses, including attorneys fees, incurred in the preparation and presentation of these pleadings, responding to the multiplication of litigation created by these Defendants, and the rejection of all efforts, formal and informal, to produce a resolution through good faith and cooperation in the spirit of the Federal Rules of Civil Procedure. Given the Defendants actions and multiple pleadings and the resultant unnecessary work for Plaintiffs attorney, the Plaintiffs suggest a reasonable award of Eight Thousand Seven Hundred and Fifty ($8,750) Dollars as attested to by the attached affidavit of James S. Dilday attached.

Conclusion:

The medical records sought by these Defendants are being sought for the purpose of impeaching prior state adjudications. The burden placed upon these Plaintiffs is both unduly burdensome and unreasonable. The Defendants are requesting sanctions against Sonia Fernandez because of her inability to provide medical records that are more than thirty years old and that are not within either her possession or control and the Defendants have access to that information from their own sources. Sanctions are

inappropriate because the Plaintiff have made exhaustive efforts. They request that this court find that they have acted in good faith and have complied with the order of the court.

Terri Pechner-James and
Sonia Fernandez
By their attorney

*/s/ James S. Dilday*

James S. Dilday, Esq.
27 School Street, Suite 400
Boston, MA 02108
(617) 227-3470

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 03-12499 MLW

| | |
|---|---|
| TERRI L. PECHNER-JAMES and SONIA FERNANDEZ<br>    Plaintiffs | )<br>)<br>)<br>) |
| VS. | )<br>) |
| CITY OF REVERE, THOMAS AMBROSINO, MAYOR, CITY OF REVERE POLICE DEPT. TERRENCE REARDON, CHIEF OF POLICE, BERNARD FOSTER, SALVATORE SANTORO, ROY COLANNINO, FREDERICK ROLAND, THOMAS DOHERTY, JOHN NELSON, JAMES RUSSO, MICHAEL MURPHY and STEVEN FORD<br>    Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**AFFIDAVIT OF JAMES S. DILDAY**

Now comes the undersigned affiant duly sworn depose and say:

1. My name is James S. Dilday and I have been an attorney licensed to practice law in Massachusetts for the past thirty years.

2. I am the attorney of record for the Plaintiffs Terri Pechner-James and Sonia Fernandez.

3. My current billable rate on this case is three hundred and fifty ($350.00) dollars an hour.

4. In connection with this litigation and as part of the discovery process I have attempted in good faith to resolve the current discovery dispute and to resolve this litigation but the Defendants have stated in pleadings filed with the court that their policy is "all efforts at settlement or negotiation are hereby rejected."

5. The Plaintiffs do not seek to retry the Post Traumatic Stress Disorder adjudication and the determination of disability made by the requisite state agencies. The Defendants did not appeal those adjudications. At the end of the appeal period those adjudication became final judgments. The Defendants now seek medical records for the purpose of impeaching those prior state adjudications. Relitigating state adjudications in a Federal District Court is a violation of the statute that created the federal court system.

6. This motion is both frivolous and unnecessary. When the Plaintiffs filed this civil action, the state adjudications had not been completed. The adjudications have now been completed and have been in effect for years. The state adjudications are based on the same nucleus of operative fact relied upon in the Plaintiffs complaint. The only issues that remain are (1) whether the facts and findings that support the state adjudications also support a violation of state and federal civil rights laws, and (2) what are the damages that naturally flow from such violations. The medical records pursued by these Defendants are not relevant to these questions but the Plaintiffs have, in good faith, tried to comply with the orders of this court.

7. I have expended in excess of twenty-five (25) hours in my efforts to produce an informal remedy, court appearances, attorney office consulting and review and preparing Opposition to Defendants Motion . I have incurred expenses and fees well in excess of the eight thousand seven hundred and fifty ($8,750) dollars requested in Plaintiffs Motion for Sanctions and Opposition To Defendants Motion For Sanctions an Award of Expenses.

Signed under the pains and penalties of perjury.

_____
James S. Dilday

# EXHIBIT A

# REARDON, JOYCE & AKERSON, P.C.

EDWARD P. REARDON (Retired)
AUSTIN M. JOYCE
MICHAEL J. AKERSON
JOHN K. VIGLIOTTI
ANDREW J. GAMBACCINI

ATTORNEYS AT LAW
(A PROFESSIONAL CORPORATION)
FAX: (508) 754-7220

397 GROVE STREET
WORCESTER, MASSACHUSETTS
01605
(508) 754-7285

November 14, 2005

**VIA FACSIMILE AND FIRST CLASS MAIL**

James S. Dilday, Esq.
Grayer & Dilday
27 School Street, Suite 400
Boston, MA 02108

    RE:   Pechner-James and Fernandez v. City of Revere, et al.

Dear Attorney Dilday:

    The December 6, 2005 deadline for producing the medical documents that were subject to the Defendants' Motion to Compel, which was heard and allowed by the court on October 6, 2005, is quickly approaching. I wanted to make sure you understand which records we are claiming were not produced pursuant to the Defendants' Request for Production of Documents and were the subject of the motion to compel. In order to accomplish this I have put together a detailed list to avoid any confusion over the issue.

    The following is a list of the records that have not been provided for Sonia Fernandez:

1.     <u>Chelsea Health Center</u>: Ms. Fernandez reported to her therapist, Nancy Aronoff, on July 3, 1997, that she had received treatment about 6 years earlier at Chelsea Health Center's mental health department. We do not have these records.

2.     <u>Nancy Aronoff, LICSW</u>: Ms. Aronoff reported in her social service record dated June 25, 1997, that Ms. Fernandez was seen in Urgent Care on June 24, 1997, having a panic attack. I am not sure which facility she is referring to, but we do not have this record. On November 19, 1997, Ms. Aronoff writes that Ms. Fernandez was treated in Urgent Care two weeks ago and received Valium. We do not have these records.

3.     <u>Revere Counseling Center</u>: Ms. Aronoff references discussing Ms. Fernandez's dealings with Revere Counseling Center pertaining to her son. Later records suggest that this is where Ms. Fernandez's son attends school, but it is unclear whether they also attended any therapy at this location.

4. <u>Darlene Millman, M.D.</u>: In her Progress Note dated February 12, 2001, Dr. Millman notes that the patient was seen on July 11, 2000 for an initial appointment. We do not have the records from this appointment. We only have two records from Dr. Millman, the above-mentioned Progress Note and a "To Whom It May Concern Letter" dated March 23, 2001. We are requesting any further records from this provider.

5. <u>Jason Merola, M.D.</u>: In his letter to Mayor Ambrosino dated March 18, 2001, Dr. Millman states that Ms. Fernandez has been under his and Darlene Millman's care over the last year for symptoms of weight loss, depression and anxiety. We only have this record and a later letter to the Mayor dated March 29, 2001. No copies of treatment / therapy notes or office visit records have been produced.

6. <u>Christopher Harmon, M.D.</u>: Dr. Harmon reports that he has been treating Ms. Fernandez for PTSD and Panic Disorder since April 14, 2003. The only other record from this provider is a letter to Chief Reardon dated August 27, 2003. We do not have copies of any of his therapy records or office notes detailing Ms. Fernandez's treatment.

7. <u>Blair Manning / Elsie Parrilla, LICSW</u>: In an unsigned Beth Israel Deaconess Medical Center Hospital Progress Note dated September 29, 2003, reference is made to Ms. Fernandez seeing a therapist, Blair Manning, every two weeks. It does not appear that we have any of Mr. Manning's records. In addition, Dr. Millman's letters dated February 12, 2001, and March 23, 2001, also reference a referral to a social worker (Elsie Parrilla, LICSW) as does Dr. Merola's letter dated March 18, 2001 (unspecified social worker). The latest social work record we have is of an appointment with J. Skolnick, LICSW on September 22, 1998. We are requesting any further records of therapy.

8. <u>Peptic Ulcer Disease</u>: We to not have records regarding this condition. The records refer to it only in terms of her medical history.

9. <u>Primary Care Physicians</u>: It does not appear that we have records from Ms. Fernandez's PCPs. In the records, her PCP's are listed as 1) Ursula Kelly (Kelley) and 2) Dr. Marcus.

10. <u>1999 Injury</u>: An Occupational Health Center Progress Note dated October 24, 2002, references a prior injury wherein the patient was hit by a car and spun around. We have no records relative to this injury.

11. <u>Dr. Stein</u>: Both Beth Israel Deaconess Medical Center Progress Note (unsigned) dated September 29, 2003 and James Geurrini's Office Note dated October 9, 2003, reference a referral to neurologist, Dr. Stein. This referral was made in connection with Ms. Fernandez's complaints of "restless leg syndrome" and balance issues. We are requesting all records from Dr. Stein.

12. John Buress: In a Meditrol, Inc. letter dated June 18, 2003, reference is made to an evaluation of Ms. Fernandez by John Burress at Occupational Health and Rehabilitation, Inc. on January 24, 2003. We do not have a copy of Dr. Burress' report.

13. Hearing Loss / Lead Poisoning: We do not have any records in the file which specifically detail the extent of Ms. Fernandez's lead poisoning issues. Several references were made to chronic lead poisoning and hearing loss as part of her medical history. We are requesting her records regarding this topic.

14. We have not received all of the records submitted to PERAC for Ms. Fernandez's retirement.

The following is a list of records pertaining to Terri Pechner-James that have not been produced:

1. Eric J. Keroack, M.D., FACOG: Ms. Pechner-James was treated by Dr. Keroack in connection with her alleged psychological injuries. Although copies of Dr. Keroack's reports were provided, no office notes or records generated during her treatment sessions were provided. Dr. Keroack stated in his letter dated January 22, 2003, that he began treating the patient on March 22, 2001.

2. Susan P. Rudman, Ed.D: Dr. Rudman's letter dated January 23, 2003, provides that she has treated Ms. Pechner-James since March 21, 2001. The above-mentioned letter was, however, the only record produced from this provider. No copies of therapy or office notes were provided.

3. Dr. Barry, Stoneham: Dr. Rudman's letter dated January 23, 2003, provides that Ms. Pechner-James was treated by Dr. Barry of Stoneham in 1999. No records regarding this provider have been produced.

4. Dr. Elizabeth Miller: The records provided indicate that this was Ms. Pechner-James PCP, but not records have been produced.

5. Additionally, George M. Dominiak, M.D.'s report prepared in conjunction with Ms. Pechner-James' application for Accidental Disability Retirement notes that Ms. Pechner-James has continued contact with her previous providers by phone weekly and, infrequently, in person. No records regarding these telephone communications have been provided. Nor have any records from providers outside of Massachusetts been produced.

6. There are notations in the records provided which indicate that Ms. Pechner-James received counseling through work. These records have not been produced.

7. Dr. Farrell (MGH/Boston): MGH/Ambulatory Care Division record dated July 21, 1998 indicates that Ms. Pechner-James received a GI evaluation from Dr.

Farrell at MGH/Boston. It also indicates that she has had diarrhea symptoms since March [1998]. No records of this earlier GI evaluation have been provided.

8. George M. Dominiak, M.D.'s report (6/13/03) and Eric J. Keroack's report (1/22/03) indicate that Ms. Pechner-James has been diagnosed with hypothyroidism. Dr. Keroack's report also references a possible diagnosis of Grave's Disease. No records regarding these diagnoses have been produced.

9. MGH record dated August 6, 1998, indicates that Ms. Pechner-James has a prior history of an MVA with a rib fracture. No records regarding this prior injury have been produced.

10. In several MGH records from 1999, there are references to Ms. Pechner-James having abdominal pain and ovarian cyst(s). She was referred to gynecology. No gynecology records have been produced.

11. We have not received all of the records submitted to PERAC for Ms. Pechner-James' retirement.

Therefore, please ensure that you produce these records pursuant to the Court's order on the Defendants' Motion to Compel.

Should you have any questions or concerns please feel free to contact me at any time.

Very truly yours,

John K. Vigliotti

cc: Paul Capizzi, City Solicitor

# EXHIBIT B

# Grayer & Dilday, LLP

COUNSELLORS-AT-LAW
27 SCHOOL STREET – SUITE 400
BOSTON, MASSACHUSETTS 02108
TEL. (617) 227-3470 • FAX (617) 227-9231

December 5, 2005

John K. Vigliotti, Esq.
Reardon, Joyce & Akerson, P.C.
397 Grove Street
Worcester, MA 01605

Re: November 14, 2005 Request for additional documents

Dear Attorney Vigliotti:

The purpose of this letter is respond to your letter dated November 14, 2005 and to the additional documents you requested on Terri Pechner-James. Below is our response to your numbered request.

1. Eric Keroack, M.D.: Enclosed is a "To Whom It May Concern" letter dated April 3, 2001 and a Letter to Chief Colannino dated June 15, 2001. We have no office notes or records generated during treatment sessions." Enclosed also is a letter and a release that this office has sent to Dr. Keroack.

2. Susan P. Rudman, Ed. D. Enclosed is a copy of a letter and release that this office has sent to her office. We have no copy of therapy or office notes.

3. Dr Barry, Stoneham: Dr. Barry, 290 Main Street, Stoneham, MA was the City of Revere's psychologist during the period of the Plaintiff's employment. He may still be the City's psychologist. When the Plaintiff, Terri Pechner-James, met with Chief Colannino to address issues of sexual harassment, he gave her Dr. Barry's number and asked her to contact him. The Plaintiff met with Dr. Barry on January 6, 2000 and December 6, 1999. We have no records from this provider. It is not clear, if you need the Plaintiff's release since he is the City's psychologist. We can provide it, if needed.

4. Dr. Elizabeth Miller: The Plaintiff's main treating physician is Dr. Deborah Wald. Enclosed a seven (7) pages with dates ranging from May 2001 to July 2001.

John K. Vigliotti, Esq.
December 5, 2005
Page Two

5. Dr. Dominiak did question the Plaintiff about providers outside of Massachusetts. The Plaintiff did not develop a relationship with a provider outside of Massachusetts. Post Traumatic Stress Disorder does not require intense treatment when the affected person is far away from the environment that caused the trauma. The Plaintiff remained under the care of Dr. Keroack during this period.

6. Any counseling the Plaintiff received through work would have been through Dr. Barry described in the answer to question 3.

7. Dr. Farrell appears to be a physician at M. G.H. We have no time, date or record of the earlier GI evaluation.

8. Dr. Dominiak referenced hypothyroidism in his report. Dr. Keroack also referenced hypothyroidism in his report. We have already provided you with both of these reports. Dr. Pietro Andres in a report dated 8-6-98 diagnosed the Plaintiff with Irritable Bowel Syndrome- a symptom of stress. In regard to hypothyroidism, he stated as follows: "Her thyroid exam was normal without masses or nodules. Laboratory Values: She has a recent thyroid screen which showed TSH low at .14. the remainder of her thyroid function with a free T4 of 6.2 and a free thyroxine index of 6.6. Her total T3 was 116. Her CBC was normal" He stated that it is possible that the low TSH she has a component of hypothyroidism. See Enclosed report No.8.

9. Motor Vehicle Accident with rib fracture: The Plaintiff was involved in a motor vehicle accident while in the course of her employment. The accident took place on March 13, 1998. Below are all the documents that we have on the motor vehicle accident.

   1. Date of accident 3-14-98; Date of Accident report 3-15-98. Emergency Room Whidden Memorial- 6 pages.

   2. Discharge Instructions from Whidden Memorial

   3. 3-30 -98 Worknotes from M.G.H.

   4. 3-20-98 M.G.H. Healthcare Center, Revere-Physical therapy for back pain.

   5. 4-2-98 M.G.H. Healthcare Center, Revere-Back strain

John K. Vigliotti, Esq.
December 5, 2005
Page Three

    6. 4-22-99 M. G. H. Radiological consultation- Right Rib X-ray –No evidence of rib fracture or pneumothorax.

    7. 4.22-99 M.G.H Progress Notes, Wald M.D. Ribs still sore.

    8. 5-5-99 M.G.H Radiological consultation-Bone Scan-Persistent pain.

    9. 5-25-99 M.G.H Rib Injury-followup unrevealing, Wald, M.D.

    10. 7-13-99 Chronic Right upper chest wall pain. Letter to Douglas Mathisen, M.D. from Ahmed, M.D.

    11. 7-29-99 Followup on chest wall pain. Wald, M.D.

    12. 8-6-99 Chronic right upper chest wall pain. Letter to Douglas Mathisen, M.D. from Ahmed, M.D.

    13. 8-19-99 Chronic right upper wall pain. Wald, M.D. Plan to try epidural.

    14. 9-15-99 Chronic pain right upper chest wall. Letter to Mathisen, M.D. from Ahmed, M.D. Paravertebral spinal nerve injection.

10. On October 22-99, the report notes that the right ovary contains a cyst which measures 3 cm in diameter. On 12-27-99 the follow-up report notes a possible referral to GYN but no date, time or referral physician was identified in that report.

11. We have already provided your office, the City of Revere, the Retirement Board and previous counsel with copies of the records submitted to PERAC for Ms. Pechner-James disability retirement. We will provide you with another copy of said records as soon as they have been copied.

John K. Vigliotti, Esq.
December 5, 2005
Page Four

12. We have also enclosed the following documents:

    8-14-97     MGH Migraine Headache
    7-17-01     MGH Migraine Headache
    5-30-00     MGH Major Depression/Anxiety
    5-26-00     MGH Revere Health-Lots of stress, no sleep, Harassment at work.
    6-23-00     MGH Depression/Anxiety

Very truly yours,

James S. Dilday

# Grayer & Dilday, LLP

COUNSELLORS-AT-LAW
27 SCHOOL STREET – SUITE 400
BOSTON, MASSACHUSETTS 02108
TEL. (617) 227-3470 • FAX (617) 227-9231

December 7, 2005

John K. Vigliotti, Esq.
Reardon, Joyce & Akerson, P.C.
397 Grove Street
Worcester, MA 01605

Re: Pechner-James et al v City of Revere et al.

Dear Attorney Vigliotti,

The purpose of this letter is to respond to your correspondence dated December 6, 2005. This office provided a detailed response to your detailed request. We provided a response from Terri Pechner-James and a separate response from Sonia Fernandez. You made eleven requests from Terri Pechner-James. We provided you with all the records within our possession and under our control from Dr. Keroack and Dr Susan P. Rudman. We will provide additional documents as soon as they become available.

We are requesting your assistance in getting the records from Dr. Barry of Stoneham, MA. He was the psychologist who worked for the City of Revere. Both Plaintiffs were sent to meet with Dr. Barry by the City. He has records that can be helpful to the Plaintiffs and that would satisfy your request. The Plaintiffs have so far been unable to obtain those records. We provided the records from Dr. Elizabeth Miller that we have in our possession and under our control. The Plaintiff's primary care physician was Dr. Wald and we have provided you with extensive records from her.

We provided the report from Dr. Pietro Andres which addressed the hypothyroidism issue raised in your Request No.8. We provided detailed information and records on the MVA with "rib fracture" that you requested in No.9. Neither the motor vehicle accident nor the "rib fracture" have any relationship to the hostile work environment/sexual harassment or any of the Plaintiff's causes of action. We have nevertheless provided a detailed answer to your Request No.9.

We have provided you with all the documents we have concerning the ovarian cyst that your requested in No 10. Plaintiff makes no claim that this condition is related to any of her causes of action. It is not clear that a gynecological referral was made or to whom that referral was made.

It is unclear why you find all the responses made, to date, inadequate. Unlike the Defendant, City of Revere, we have not objected to your discovery requests and we have

provided you with all the information in our possession and under our control. If, however, you continue to find our responses "inadequate", it may be because you are seeking information that is either inadmissible or not reasonably calculated to lead to the discovery of admissible evidence. This kind of information is not discoverable.

Although you have not yet responded to our submissions on Sonia Fernandez, I am certain you will also find those responses "inadequate." We have provided you with all the information that is under our custody and within our control. Some of the information you requested, for example, Nos, 1,8,13 are not in our custody and not under our control; they are also no longer within the statutory preservation period of the medical profession.

We will send you copies of the PERAC submissions and the documents we stated we would send to you in our cover letters. However, if you find the latest information inadequate, your future requests should identify why the information requested is admissible and why it is reasonably calculated to lead to admissible evidence.

Conclusion:

The Plaintiffs are seeking a legal remedy for hostile work environment/sexual harassment which occurred between 1995 and the present. All discovery should be admissible on one of the counts raised in the Plaintiffs complaint. For example, automobile accidents have no relevance. The Plaintiffs have alleged that the Defendants injured them through a hostile work environment and the deliberate indifference of its policymakers, not automobile accidents. We have nonetheless provided you with detailed information that we had on the MVA you identified. We hope that his letter resolves the dispute over the records and documents pursuant to Rule 7.1.

Sincerely,

*James S. Dilday*
James S. Dilday, Esq.