**EXHIBIT C**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**


**TERRI PECHNER-JAMES and
SONIA FERNANDEZ,
Plaintiffs**


**V**

**CITY OF REVERE et al
Defendants**


## PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ROOKER-FELDMAN DOCTRINE


Now come the Plaintiffs, Terri Pechner-James and Sonia Fernandez, and file this

Supplemental Memorandum in Support of their Request for Rooker-Feldman Ruling and

Further Instructions. The Plaintiffs state that the Defendants have filed two

memorandums in opposition to the Plaintiffs request and the Plaintiffs need to respond to

the latest memorandum filed by the Defendants in opposition to Plaintiffs Request.


## PROCEDURAL BACKGROUND

The Plaintiffs filed a Verified complaint dated September 30, 2003 in Suffolk Superior

Court. The Plaintiff's Complaint stated that they were subjected to a hostile work

environment while employed as law enforcement officers for the City of Revere (Count

1); that they were constructively discharged from their employment with the city of

Revere (Count 2); that they were subjected to disparate treatment (Count 3); and that they

1

were subjected to the impermissible and intentional infliction of emotional distress (Count 4). The Plaintiffs attached Exhibits A & B to their complaint in support of the allegations contained in their complaint. These Exhibits included determinations of the Division of Administrative Law Appeals(DALA) and the Public Employee Retirement Administration Commission(PERAC). These adjudicatory bodies had determined that both Plaintiffs, Terri Pechner-James, in particular, had suffered post-traumatic stress disorder; that her disability was caused by the hostile work environment she experienced as an employee of the Revere Police Department; that she was mentally incapable of performing the essential functions of her job; that such incapacity was likely to be permanent; and that her past clinical history revealed no alternate origin for her anxiety disorder. These adjudicatory determinations were not appealed and, in due course, both Plaintiffs were awarded accidental disability retirement.

The determinations of these administrative bodies were judicial in nature and became final and binding state decisions after the expiration of the appeal period. Injury and causation could have been appealed to the Superior Court and subsequently to the Supreme Judicial Court of Massachusetts. The Defendants did not appeal. However, the Defendants, the losing party in the state court, have propounded a combined total of three hundred and thirty four (334) interrogatories plus Request for Production of Documents and numerous other pleadings in an effort to relitigate the issues of injury and causation in the Federal District Court of Massachusetts.

2

**ARGUMENT**

**Introduction**

The Defendants rely on the cases of  Exxon-Mobil Corp. v Saudi Basic Industries Corp.,

544 U.S. ---, 125 S. Ct. 1517, 1526 (2005) and Verizon Md. Inc. v Public Serv. Comm'n

of Md. 535 U.S. 635, 644 (2002) to support their  position that, as state court losers,  they

can relitigate in the Federal District Court the issues of injury and causation that have

already been decided in a state forum. Neither case supports their position.

 Appeal from final determinations of  a state court can only be obtained in the United

States Supreme Court. Neither the facts nor the holding of Exxon-Mobil nor Verizon has

changed or can change the grant of original jurisdiction that the Congress provided to the

federal district courts.

The following are the facts of the Exxon-Mobil case. Two subsidiaries of petitioner,

Exxon-Mobil formed joint ventures with Respondent, Saudi Basic Industries Corp.,

(SABIC) to produce polyethylene in Saudi Arabia. When a dispute arose over royalties

that SABIC had charged the joint ventures, SABIC preemptively sued the two

subsidiaries of Exxon-Mobil in a Delaware state court seeking declaratory judgment that

royalties were proper.

Exxon-Mobil and the subsidiaries then countersued in the Federal District Court, alleging that SABIC overcharged them. The state court trial yielded a verdict of over $400 million for the Exxon-Mobil subsidiaries. Before that trial, SABIC filed, in the Federal District Court, a motion to dismiss the Exxon-Mobil suit. The court denied the motion.

On interlocutory appeal, over eight months after the state-court jury verdict, the Third Circuit, on its own motion, raised the question whether subject matter jurisdiction over the federal suit failed under the Rooker-Feldman doctrine because the Exxon-Mobil claims had already been litigated in state court. The court did not question the District Court's subject matter jurisdiction at the suit's outset, but held that federal jurisdiction terminated when the Delaware court entered judgment on the jury verdict.

 The Verizon case involved a State of Maryland agency interpreting a federal law. There was a federal question which gave the federal district court jurisdiction. Public employee retirement in Massachusetts is committed by the legislature to the Public Employee Retirement Administration Commission. There is no federal question.

(1) Adjudicatory decisions are judicial in nature; the decisions of the Division of Administrative Law Appeals and the Public Employee Retirement Administration Commission are adjudicatory;  they become final  state judgments after the expiration of the appeal period.

Retirement disability hearings are adjudicatory in nature according to M.G.L. c. 30A § 1(1) and the findings of hearing officers made incident to conducting such hearings pursuant to M.G.L.c. 30A § 14 are judicial in nature. Feldman clearly establishes that the

4

pivotal question of whether official action is judicial does not turn on whether the actor is

technically a court but on whether the action in question is judicial in nature. The

Feldman court wrestled with the question of whether the lower court acted judicially or

legislatively and hence whether the nature of the court's action was judicial or legislative.

The court concluded that the action was judicial.


Judicial and prosecutorial immunity law is instructive with regard to the well-settled fact

that it is not the nature of the actor or body but the substance of their action or functional

capacity that determines whether the action in question is judicial or not for legal

purposes. In Namey v Reilly, 926 F. Supp. 5 (D.Mass. 1996), parole commission hearing

officers were granted absolute immunity because their function was considered judicial.

The court in Cignetti v Healy, 89 F. Supp. 106 (D.Mass. 2000) acknowledged that

prosecutorial immunity depends on the nature of the function being performed not on the

identity of the actor.  The hearings conducted by DALA and PERAC and the findings

made by those agencies are judicial in nature pursuant to M.G.L.c. 30A § 14.



M. G. L. c. 7 § 4H provides:

> There shall be within the executive office of administration and finance a division
>
> of administrative law appeals under the direction of a chief administrative
>
> magistrate who shall be appointed by the secretary of the executive office of
>
> administration and finance with the approval of the governor....

The section further provides:

> Any officer or agency of the commonwealth authorized to conduct adjudicatory proceedings or to hear appeals from such proceedings may, subject to the approval of the secretary of the executive office within which such officer is employed or such agency is located, request the division to conduct one or more classes of such proceedings or appeals on behalf of the officer or agency.

The section further provides:

> The division may summons witnesses, administer oath and require the production of books, records and papers at any hearing before the division upon any matter within its jurisdiction. Witnesses may be summoned by any party to the proceedings in the same manner, be paid the same fees and be subject to the same penalties as witnesses in civil cases before the courts of the commonwealth.

The division's proceedings are subject to the standard adjudicatory rules of practice and procedure as promulgated in 801 Code of Massachusetts Regulations (CMR) 1:00 et seq and the procedural requirements of 801 CMR 1:01 to 1:04.

M.G.L.c. 7 § 49 provides:

> There shall be within the executive office of administration and finance, but not subject to its control, a public employee retirement administration commission.

Section 50 provides: The public employee retirement administration commission ...shall have general responsibility for the efficient administration of the public employee retirement system....... The public employee retirement administration commission powers and duties shall include, but not be limited to:

(a) promulgating rules and regulations governing administrative procedures…(b) approving the rules and regulations of individual retirement boards, as to conformity with law and regulations;

The commissions proceedings are subject to the standard adjudicatory rules of practice and procedure as promulgated in 840 Code of Massachusetts Regulations §1:00 and particularly 840 CMR § 10.01 to 10.15.

The Executive Office For Administration and Finance has promulgated regulations that govern all adjudicatory proceedings held by its agencies. These standard adjudicatory rules apply to the decisions made by the Division of Administrative Appeals and the Public Employee Retirement Administration Commission.

The adjudicatory decisions of these agencies are subject to judicial review on the grounds that they were taken:

(a) In violation of constitutional provisions; or

(b) In excess of statutory authority or jurisdiction of the agency; or

(c) Based upon an error of law; or

(d) Made upon unlawful procedure; or

(e) Unsupported by substantial evidence; or

(f) Unwarranted by facts found by the court on the record as submitted; or

(g) Arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law.   M.G.L. c. 30A § 14(7).

An appeal from the decisions of the agencies described above could have been taken to the Superior Court and subsequently to the Supreme Judicial Court within the time for appeal provided by the statute. The Defendants did not appeal to either the Suffolk Superior Court or to the Supreme Judicial Court of Massachusetts. The adjudicatory decisions of these agencies are therefore final and binding judicial state determinations.

Retirement decisions are committed to PERAC by law. Reviewing courts seldom substitute their judgments for that of the commission. Barnstable County Retirement Board v Contributory Retirement Appeal Board (1997) 683 N.E.2d 290, 43 Mass App.Ct 341, review denied 686 N.E.2d 200, 426 Mass. App. 1101. The Court also stated that agencies like PERAC have considerable leeway in interpreting the statute it is charged with enforcing and that a reviewing court will not second guess the agency even if its decisions are susceptible of reasonable debate. An appeal may not have changed the outcome of the Plaintiff's cases but, contrary to the Defendant's claim, in the absence of an appeal these agency decisions are final and binding state court determinations.

(2) Neither the Exxon-Mobil case nor the Verizon case support the Defendants attempt to relitigate the issues of injury and causation in a federal district court.

On April 14, 2004, the Revere Retirement Board voted to grant the application of the Plaintiff, Terri Pechner-James for accidental disability retirement. The decision was preceded by adjudicatory decisions of DALA-Division of Administrative Law Appeals and PERAC-Public Employee Retirement Administration Commission. The final

decisions of these agencies were neither  administrative nor legislative, they were judicial.

Ms. James became a police officer on September 21, 1995. Her last day of work at the Revere Police Department was March 13, 2001. On July 17, 2002. chief Terence Reardon submitted an application for Ms. James to be involuntarily retired. DALA held an adjudicatory hearing and on October 23, 2002  determined that there was insufficient evidence on the issue of permanence. It denied the application without convening a medical panel. The Revere Retirement Board followed suit.

 The Plaintiff, Terri Pechner-James filed an appeal of the Board's decision. DALA held a hearing on February 4, 2003. At this adjudicatory hearing, the Plaintiff entered forty-five (45) exhibits, including a letter from Dr. Keroack dated January 22, 2003. These proceedings were tape recorded. The Defendants was represented by counsel at this hearing, their counsel cross-examined the Plaintiff, he also submitted evidence but did not subsequently file an appeal.

After adequate notice and an opportunity to be heard, the Magistrate found Dr. Keroack's letter to be sufficient and therefore remanded the matter to the Revere Retirement Board for the convening of a Medical Panel.

The Medical Panel examined the Plaintiff, Terri Pechner-James, on June 13, 2003. The Defendant received notice of the Medical Panel examination. The Defendants chose not

to be  represented at the examination; they also chose not to pursue a separate medical

opinion. The medical panel physicians concluded unanimously that (1) the Plaintiff was

mentally incapable of performing the essential duties of her job as described; (2) the

incapacity was likely to be permanent; and (3) said incapacity was such as might be the

natural and proximate result of emotional (post traumatic stress disorder) sustained or

hazard undergone on account of which retirement is claimed. There was no other likely

factor apparent in Ms. James clinical history. The Defendants did not appeal the DALA

decision of March 7, 2003. They did not appeal the unanimous decision of the medical

panel. They used the adjudicatory rules to request a clarification; the medical panel

provided the clarification.


The disability retirement determination of  Co-Plaintiff, Sonia Fernandez were made by

the same adjudicatory process. The Plaintiffs now receives disability retirement based

upon the decisions described earlier.  The decisions of DALA, PERAC the Revere

Retirement Board have all become final. The appeal periods have expired; the Plaintiffs

now receives benefits and have a property interest in the continued receipt of those

benefits. These decisions are final and binding state determinations.


(3) The Exxon-Mobil decision cannot and does not give the Defendants the right to
relitigate the issues of injury and causation already adjudicated at the state level.


The Defendants in this case are state court losers; they are seeking to "review and

reverse" unfavorable state court judgments.  The Plaintiffs commenced their causes of

action in the Suffolk County Superior Court. The Defendants moved the case to the

10

Federal District Court of Massachusetts. As state court losers, they now seek to undo the state determination of injury and causation and to relitigate the issues in the Federal District Court of Massachusetts.

The parties in Rooker v Fidelity Trust Co., 263 U.S. 413, who were defeated in state court, turned to a Federal District Court for relief. They alleged that the adverse state court judgment was rendered in contravention of the Constitution and asked the Federal District Court to declare it "null and void." Id at 414-415. If the state court decision was wrong, the Court explained, "that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding. Ibid. Federal district courts, the Rooker Court recognized, lacked the requisite appellate authority, for their jurisdiction was "strictly original." Id at 416. Among federal courts, the Rooker Court clarified, Congress had empowered only this Court, the U.S. Supreme Court said, to exercise appellate authority "to reverse or modify" a state court judgment. Ibid. Accordingly, the Court affirmed a decree dismissing the suit for lack of jurisdiction. Id. at 415, 417.

The Exxon-Mobil case  protects the Plaintiffs who are the state court winners and prevents the Defendants who are the state court losers from relitigating issues that have already been decided by a state judicial proceeding.  Exxon-Mobil filed suit in federal district court (only two weeks after SABIC filed in Delaware state court and well before any judgment in state court. It filed to protect itself in the event it lost in state court on

11

grounds (such as the state statute of limitations) that might not preclude relief in the federal venue.

This case is factually and procedurally different from <u>Exxon-Mobil</u> or <u>Verizon</u>. The Plaintiffs, Terri Pechner-James and Sonia Fernandez, and the Defendants in this case did not file simultaneously in the state and the federal courts. The Plaintiffs filed their cause of action in the Suffolk Superior Court. The Defendants failed to file a timely answer in the state court, then moved the cause of action to the federal court. They also failed to file a timely answer in the federal court. They filed an answer only after the Plaintiff, Terri Pechner-James, had filed a Motion For Partial Summary Judgment. The Defendants then filed a response to the Plaintiff's motion and answer to the complaint. They now seek to relitigate, in the federal court, not an independent claim, but the identical issues of injury and causation decided by prior state adjudication.

<u>(4) Both Suffolk Superior Court and the Federal District Court of Massachusetts have concurrent jurisdiction over this case. The Defendants decision to move the case from Suffolk Superior Court to Federal District Court was motivated by forum-shopping and was an attempt to relitigate issues lost in a state judicial proceeding.</u>

Most state courts are courts of general jurisdiction. The presumption is that they have subject matter jurisdiction over the particular controversy unless a showing is made to the contrary. Wright, Miller & Cooper, <u>Federal Practice and Procedure</u>, § 3522 p. 60. Federal and state courts have concurrent jurisdiction to try federal, unless Congress makes federal court jurisdiction exclusive. <u>Gulf Shore Co. v Mobil Oil Corp.</u>, (1981) 101 S.Ct. 2870, 453 U.S. 473, 69 L.Ed.2d 784 in which the U.S. Supreme Court acknowledged that Texas state court had jurisdiction over personal injury arising under

12

the Outer Continental Shelf Lands Act. The ability of state courts to hear matters that involved federal laws was acknowledged in Charles Dowd Box Co., v Courtney, (1962) 82 S.Ct 519, 368 U.S. 502, 7 L. Ed 2d 483 and again in Ted's Tire Serv. Inc. v Chevron USA Inc., D.C. Conn. (1979) 470 F. Supp. 163.

The Plaintiffs commenced their causes of action in the Suffolk Superior Court. Their complaint consisted of four (4) counts. They attached Exhibits A & B to their complaints. These Exhibits included determinations of DALA and PERAC acting in their adjudicatory capacity. These adjudicatory bodies had determined that both Plaintiffs, Terri Pechner-James, in particular, had suffered post-traumatic stress disorder, that her disability made her mentally incapable of performing the essential functions of her job, that her disability was caused by the hostile work environment she experienced as an employee of the Revere Police Department, that her past clinical history revealed no alternate origin for her anxiety disorder and that such incapacity was likely to be permanent.

The Plaintiffs allege, in their complaint, that the injury and its causation violate the requisite provisions of both M.G.L.c. 151B and 42 USC § 2000e and any other anti-discrimination statutes cited by the Plaintiffs because the federal statutes had not preempted the field. See Cumberland Farms, Inc., v Milk Control Comm'n, 340 Mass 672, 675, 166 N.E.2d 356, 358 (1960). Jurisdiction over the Plaintiffs causes of action existed in both the state and the federal courts. See also Schaffer v Leimberg, 318 Mass 396, 405, 62 N.E2d 193, 197-198 (1945).

13

The Defendants could have litigated both the state and the federal claims in the Suffolk Superior Court. However, the Defendants, losers in the state adjudicatory proceedings, moved the case to the Federal District Court of Massachusetts and, in an obvious attempt at forum-shopping for a better result, now seek to relitigate the issues of injury and causation. These are the identical issues that the state judicially determined and that constitute the basis of both Plaintiffs receipt of retirement disability benefits.

Conclusion

The United States Supreme Court's ruling in the Exxon-Mobil case does not, contrary to Defendants suggestion, provide them with the authority to relitigate the identical issues of injury and causation that were adjudicated in a state forum. The issue is jurisdictional. The issue of liability for individual supervisors of the Plaintiffs is inextricably intertwined with the municipal liability of their employers, the City of Revere and the Revere Police Department and does not require separate litigation.   Neither Exxon-Mobil case nor the Verizon case   overruled either Rooker or Feldman; they did not change the federal statutes and they did not give state court losers, like the Defendants,  the right to relitigate prior state judicial decisions.

 Federal district courts still lack the requisite appellate authority to hear state appeals or to relitigate state decisions because their jurisdiction is "strictly original." Congress has empowered only the United States Supreme Court to exercise appellate authority to

14

reverse or modify a state court judgment. Neither the <u>Exxon-Mobil</u> case or the <u>Verizon</u>

case has changed this statutory reality.


Terri Pechner-James and
Sonia Fernandez, Plaintiffs
By their attorney


_____

James S. Dilday, Esq.
27 School Street, Suite 400
Boston, MA 02108
(617) 227-3470


15

## CERTIFICATE OF SERVICE

I, James S. Dilday, hereby certify that on August 15, 2005 I served a copy of Plaintiff's Supplemental Memorandum in Support of Rooker-Feldman Doctrine by first class mail as follows:

Walter H. Porr, Esquire
Paul Capizzi, Esquire
Office of City Solicitor
281 Broadway
Revere, MA 02151

Michael Akerson, Esquire
John H. Vigliotti, Esquire
397 Grove Street
Worcester, MA 01605

James S. Dilday
Grayer & Dilday
27 School Street
Boston, MA 02108
(617) 227-3470
BBO# 124360

DATED: 8/15/05

**EXHIBIT D**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

FILED
IN CLERKS OFFICE

**TERRI PECHNER-JAMES and**
**SONIA FERNANDEZ**
**Plaintiffs**

2005 OCT 20  P 3: 42

**C.A. No: 03-12499-MLW** DISTRICT COURT
DISTRICT OF MASS.

**V**

**CITY OF REVERE et al**
**Defendants**

## NOTICE OF APPEAL OF ORDER ON DISCOVERY MOTIONS  PURSUANT TO RULE 72

Plaintiffs, Terri Pechner-James and Sonia Fernandez hereby appeal the following recommendation of the Magistrate Judge entered on October 12, 2005 on Docket # 53, Docket No.# 46, Docket # 33, Docket # 34, Docket # 50 in the above entitled action. Docket #53 is the pivotal request and is related to all other docket cited herein. The Plaintiffs state the following in support of their appeal.

The Magistrate judge ruled as follows:

Plaintiffs Request For Rooker Feldman Ruling is DENIED. (Docket #53)

The Plaintiffs filed a Request For Rooker-Feldman Ruling and Further Instructions (Docket #53) for the purpose of (1) seeking federal recognition of state determinations; (2) raising the jurisdictional issue and (3) preventing relitigation of the issues of injury and causation and (4) avoiding  a result from the federal court that conflicts with the state determination on the same issue.

The Magistrate Judge, during the hearing, erroneously referred to the Plaintiffs Request as seeking preclusion. Preclusion can be waived, jurisdiction cannot.  The Magistrate Judge identified the wrong issue and rendered a decision that is erroneous and  contrary to law.  The decision must be rejected and a de novo review conducted.

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**TERRI PECHNER-JAMES and**
**SONIA FERNANDEZ**
       **Plaintiffs**               **C.A. No: 03-12499-MLW**

**V**

**CITY OF REVERE et al**
       **Defendants**


## NOTICE OF APPEAL OF ORDER ON DISCOVERY MOTIONS  PURSUANT TO RULE 72

Plaintiffs, Terri Pechner-James and Sonia Fernandez hereby appeal the following recommendation of the Magistrate Judge entered on October 12, 2005 on Docket # 53, Docket No.# 46, Docket # 33, Docket # 34, Docket # 50 in the above entitled action. Docket #53 is the pivotal request and is related to all other docket cited herein. The Plaintiffs state the following in support of their appeal.

The Magistrate judge ruled as follows:

      Plaintiffs Request For Rooker Feldman Ruling is DENIED. (Docket #53)


The Plaintiffs filed a Request For Rooker-Feldman Ruling and Further Instructions (Docket #53) for the purpose of (1) seeking federal recognition of state determinations; (2) raising the jurisdictional issue and (3) preventing relitigation of the issues of injury and causation and (4) avoiding a result from the federal court that conflicts with the state determination on the same issue.


The Magistrate Judge, during the hearing, erroneously referred to the Plaintiffs Request as seeking preclusion. Preclusion can be waived, jurisdiction cannot. The Magistrate Judge identified the wrong issue and rendered a decision that is erroneous and contrary to law. The decision must be rejected and a de novo review conducted.

Background:

The Plaintiffs were subjected to a hostile work environment while employed as law enforcement officers of the City of Revere. As a result of their experiences they suffered Post Traumatic Stress Disorder (PTSD) and eventually were adjudicated as disabled and awarded disability retirement.

They used the same fact pattern stated in their complaint as the basis for obtaining disability retirement. The Magistrate Judge acknowledged during the hearing that both the state adjudications and the case that the Defendants moved to federal court arise from the "same common nucleus of operative fact." The following state adjudicatory bodies made the determinations that granted the Plaintiffs their disability retirement.

1. Division of Administrative Law Appeals (DALA)
2. Regional Medical Panel
3. Public Employee Retirement Administration Commission (PERAC)

The adjudicatory bodies made the following decisions:

1. On March 7, 2003, DALA ordered the convening of a Medical Panel of experts.
2. On July 28, 2003, the Medical Panel filed with PERAC a unanimous decision and made the following findings: **(See Attached Exhibit A)**

   (a) DISABILITY: It is the unanimous opinion of our Panel that Ms. James is mentally incapable of performing the essential duties of her job as described in the current job description on the basis of Anxiety Disorder NOS with features of PTSD and panic disorder. The symptoms would interfere with her capacity to react safely in emergency situations and in her ability to trust her follow officers.

   (b) PERMANENCE: The incapacity mentioned above is likely to be permanent in that anxiety symptoms mentioned in the Prognosis section above are likely to persist for an indefinite period of time even with continued treatment.

   ( c) CAUSALITY: The said incapacity is such as might be the natural and proximate result of the personal (emotional) injury sustained or hazard undergone on account of which retirement is claimed. There is no other likely causative factors apparent in Ms. James clinical history to substantiate an alternate etiology for the anxiety disorder.

The Defendants requested a Clarification of the findings of the Regional Medical Panel. On March 1, 2004, the Medical Panel responded to the Defendants Request for Clarification **(See Attached Exhibit B)** .

The Medical Panel addressed the five questions raised by the Defendants and provided in depth answers to each inquiry. The Panel's entire clarification contradicted the decision of the Magistrate Judge and Inquiry No 5, in particular. That Response directly addressed the discovery issues considered by the Magistrate Judge:

Query No: 5.

> Could there have been other private factors in Ms. James life that could be the source of Ms. James difficulties. Would such private concerns not possibly produce the condition that was diagnosed? Did the Panel inquire of Ms. James as to whether she experienced any of these difficulties?

The Regional Panel provided the following unequivocal reply:

> The symptoms Ms. James described and that were recorded in her records appeared to be related to events specific to her occupation. We did conduct a general review of psychiatric history and nothing of note was found in the records or discovered in our examination. In similar cases, when there is a history of depression or past traumas, the individual is rendered more vulnerable to the effects of later traumatic events but the psychopathology at the later time is specific to the stress of the contemporary experiences and not considered to be "produced or "caused" by previous symptoms.

The Clarifications, including the response to Query No:5 are consistent with the Panel's findings of July 28, 2003.

The Plaintiffs Rooker-Feldman Request sought recognition and comity from the federal district court for the findings and the determinations made by DALA, PERAC, the initial decision of the Regional Medical Panel and the findings provided by the Clarification of the Panel.

Those state determinations are entitled to finality and comity from the federal courts. The Magistrate Judge acted contrary to law when he failed to provide that recognition. Federal review of state court decisions lies only with the United States Supreme Court. 28 U.S.C. § 1257(a). Congress has empowered the federal district courts to exercise only original, not appellate jurisdiction. 28 U.S.C. § 1331, 1332. Direct review of state court

decisions is barred. See Brown & Root, Incorporated v Breckenridge, 211 F. 3d 194, 198 (4th Cir. 2000). This doctrine is one of a number of doctrines reflecting, some courts say "safeguarding" our dual system of government.   The United States Supreme Court in Atlantic Coastline R.R. v Brotherhood of Locomotive Eng'rs,  398 U.S. 281, 286 (1970) stated:

> From the beginning we have had in this country essentially two legal systems. Each system proceeds independently of the other with ultimate review in the [Supreme] Court of the federal questions raised in either system.

The majority of the issues in this case are state issues.  Each Plaintiff filed a four (4) count complaint: Count 1-Hostile Work Environment/Sexual Harassment; Count 2- Constructive Discharge; Count 3-Disparate Treatment; Count 4-Infliction of Emotional Distress. At the time the complaint was prepared, Plaintiff, Terri Pechner-James has been adjudicated as disabled.  The Regional Medical Panel of PERAC made a finding that the Plaintiff suffered from  Post Traumatic Stress Disorder (PTSD) as a result of the hostile environment she encountered in the Revere Police Department. These finding were attached as **Exhibit B** to the Plaintiffs complaint.  Plaintiff, Sonia Fernandez, has also been adjudicated with PTSD as a result of the hostile environment she encountered in the Revere Police Department. **See Attached Exhibit C.**

All four counts of both Plaintiffs complaints are based upon the state adjudication that the injury to both Plaintiffs (PTSD) is based on the hostile work environment created by the Defendants in the Revere Police Department. The violations of M.G.L.c 151B § 4 and the parallel violations of 42 U.S.C 2000(e)-2 are based upon the same state determinations. The federal claims are not only based upon but are"inextricably intertwined" with the findings of injury and causation made as a result of the state adjudication. The Defendants have made no allegation that the state court decisions on injury and causation were wrongly decided. They moved the case to federal court and are seeking  to relitigate the issue.

4

The Defendants are barred from pursuing an appellate review of the state court findings. Pennzoil Co., v Texaco, 481 U.S. 1, 25 (1987). The doctrine enunciated in Atlantic Coastline, supra. bars not only review of state court decisions but also issues that are inextricably intertwined with the state court decision. The Defendants federal claim is "inextricably intertwined " with the state court decision because what the Defendants seek from the federal district court is a ruling that would effectively reverse the state adjudication on injury and causation and void that ruling.

**Conclusion:**

The findings of the state adjudicatory bodies of injury and causation and the medical findings of the Regional Medical Panel are not subject to appellate review by the federal court. This issue is jurisdictional. They are entitled to recognition and comity. The magistrate's decision, if allowed to stand, would effectively reverse the state decisions and void their rulings. The best the Magistrate Judge's decision can accomplish is to create, from the same admitted "nucleus of operative facts" conflicting decisions. This outcome is contrary to the Congressional intent of safeguarding our dual system of government and the historical operation of the two separate legal systems.

The only issue that remains to be litigated is whether the PTSD suffered by the Plaintiffs is a violation of M.G.L. c. 151B § 4, its federal parallel 42 U.S.C. § 2000(e)-2 and the common-law theories contained in the Plaintiffs complaint. The Magistrate Judge's Order  on Discovery must be rejected and the issues subjected to a de novo review.

TERRI PECHNER-JAMES and
SONIA FERNANDEZ
By their attorney

_____
James S. Dilday, Esq.
27 School Street, Suite 400
Boston, MA 02018
(617) 227-3470

5

## LIST OF EXHIBITS

A   Terri Pechner-James –PERAC Certificate dated July 28, 2003.

B.  Clarification of Pechner-James Medical Panel Certificate dated March 29, 2004.

C.  Sonia Fernandez-PERAC Medical Panel Certificate dated September 20, 2004

PERAC

**COMMONWEALTH OF MASSACHUSETTS | PUBLIC EMPLOYEE RETIREMENT ADMINISTRATION COMMISSION**

JOSEPH F. CONNARTON, *Executive Director*

TO:        REVERE RETIREMENT BOARD

FROM:      MEDICAL PANEL UNIT

DATE:      July 28, 2003

RE:        REVIEW OF MEDICAL PANEL CERTIFICATE

Please be advised that P.E.R.A.C. has completed its review of the following Medical Panel Certificate(s) and found the Certificate(s) to be in order: **Drs. Sherry-Friedman-Dominiak**

## TERRI JAMES

**Your retirement board is encouraged to review the attached report(s) to determine if it is completed to your satisfaction.**

If upon review of the enclosed report, your board determines that additional information or clarification is required, the board may submit to PERAC in writing, a request which identifies the additional information which is desired. The board's request will then be forwarded by this office to the physicians.

Your retirement board may also choose to write directly to the medical panel for clarification. **PERAC must be provided with a copy of all correspondence between the board and the medical panel.**

If you should have any questions regarding the enclosed material, please do not hesitate to contact this office.

BL/kmh
Enclosure



COMM. OF MASS.
P.E.R.A.C.

**Commonwealth of Massachusetts**
**Public Employee Retirement Administration Commission**
5 Middlesex Avenue, 3rd Floor
Somerville, MA 02145
(617) 591-8956
Fax (617) 628-4414

2003 JUL 28  A 9: 52

RECEIVED

## APPLICANT INFORMATION

**PERAC ID:**  2003237650    **TYPE OF DISABILITY:**    ACC (M)

**SOCIAL SECURITY NUMBER:**        017565959

**MEMBER:**                Terri James

**MEMBER ADDRESS:**          1204 S.W. 28th Street

                  Cape Coral, FL 33914

**RETIREMENT BOARD:**          Revere Retirement Board

**OCCUPATION:**            POLICE

**EMPLOYER:**              Chief Terrance Reardon

**REGIONAL MEDICAL PANEL**
**PHYSICIAN:**              Susannah Sherry, M.D. -- PSYCHI
                  Mark Friedman, M.D. -- INTERN
                  George Dominiak, M.D. -- PSYCHI

**MEDICAL PANEL SPECIALTY:**      PSYCHI

**EXAMINATION LOCATION:**        575 Mount Auburn Street
                  Suite 201
                  Cambridge, MA 02138

**DATE:**                Friday, June 13, 2003

**TIME:**                02:30 PM

## COMMONWEALTH OF MASSACHUSSETTS
### PUBLIC EMPLOYEE RETIREMENT ADMINISTRATION COMMISSION
### REGIONAL MEDICAL PANEL CERTIFICATE

COMM. OF MASS.
P.E.R.A.C.

**MEMBER:** Terri James

**PERAC ID:** 2003237650

S.S. #: 017565959

TYPE OF DISABILITY: ACC

2003 JUL 28  A 9:52

The member's retirement board will provide you with all information relating to the member's claimed disability and the current job description. This information is critical to your ability to perform a comprehensive medical evaluation and assess the member's ability to perform the essential duties of his/her job. If this information has not been received, please contact the PERAC Medical Panel Unit.

---

**DID THE MEDICAL PANEL REVIEW THE MEMBER'S JOB DESCRIPTION?**

YES ☑    NO ☐

**DID THE MEDICAL PANEL RECEIVE AND REVIEW MEDICAL RECORDS IDENTIFIED ON THE TRANSMITTAL OF BACKGROUND INFORMATION TO A REGIONAL MEDICAL PANEL FORM PRIOR TO RENDERING A MEDICAL OPINION IN THIS CASE?**

YES ☑    NO ☐

**PLEASE LIST ANY RECORDS NOT LISTED ON THE TRANSMITTAL OF BACKGROUND INFORMATION TO A REGIONAL MEDICAL PANEL FORM, WHICH THE PANEL REVIEWED.**

**1. IS THE MEMBER MENTALLY OR PHYSICALLY INCAPABLE OF PERFORMING THE ESSENTIAL DUTIES OF HIS OR HER JOB AS DESCRIBED IN THE CURRENT JOB DESCRIPTION?**

YES ☑    NO ☐

Please continue ONLY if you answered yes to question #1.

**2. IS SAID INCAPACITY LIKELY TO BE PERMANENT?**

YES ☑    NO ☐

**PERMANENCY:** A disability is permanent if it will continue for an indefinite period of time which is likely never to end even though recovery at some remote, unknown time is possible. If the medical panel is unable to determine when the applicant will no longer be disabled, they must consider the disability to be permanent. However, if the recovery is reasonably certain after a fairly definite time, the disability cannot be classified as permanent. It is imperative that the medical panel make its determination based on the actual examination of the applicant and other available medical tests or medical records which have been provided. It is *not* the physician's task to look into employment possibilities that may become available to an applicant at some future point in time.

COMMONWEALTH OF MASSACHUSETTS
PUBLIC EMPLOYEE RETIREMENT ADMINISTRATION COMMISSION
CERTIFICATE FOR ACCIDENTAL DISABILITY

**MEMBER:** Terri James
**PERAC ID:** 2003237650          **S.S. #:** 017565959          **TYPE OF DISABILITY:** ACC

2003 JUL 28 A 9: 52

**PLEASE CONSIDER POINTS A AND B BEFORE RESPONDING TO QUESTION #3.**
**POINTS A AND B SHOULD ALSO BE DISCUSSED IN YOUR NARRATIVE.**

**A.** Whether there is any other event or condition in the member/applicant's medical history, or in any other evidence provided to the panel, other than the personal injury sustained or hazard undergone upon which the disability retirement is claimed, that might have contributed to or resulted in the disability claimed.

**B.** Whether it is more likely than not that the disability was caused by the condition or event described in (A) rather than the personal injury sustained or hazard undergone which is the basis for the disability claim, and the basis for your conclusion.

**3. IS SAID INCAPACITY SUCH AS MIGHT BE THE NATURAL AND PROXIMATE RESULT OF THE PERSONAL INJURY SUSTAINED OR HAZARD UNDERGONE ON ACCOUNT OF WHICH RETIREMENT IS CLAIMED?***

YES ☑          NO ☐

**Aggravation of a Pre-Existing Condition Standard:** If the acceleration of a pre-existing condition or injury is as a result of an accident or hazard undergone, in the performance of the applicant's duties, causation would be established. However, if the disability is due to the natural progression of the pre-existing condition, or was not aggravated by the alleged injury sustained or hazard undergone, causation would not be established.

***PLEASE NOTE:** When constructing your response to the question of causality (#3) in accidental disability narrative reports, your opinion must be stated in terms of medical possibility and not in terms of medical certainty.

COMMONWEALTH OF MASSACHUSETTS
PUBLIC EMPLOYEE RETIREMENT ADMINISTRATION COMMISSION

## CERTIFICATION OF MEDICAL PANEL FINDINGS

COMM. OF MASS.
P.E.R.A.C.

2003 JUL 28  A 9: 52

**MEMBER:** Terri James

**PERAC ID:** 2003237650

**S.S. #:** 017565959

**TYPE OF DISABILITY:** ACC

RECEIVED

---

### MAJORITY OPINION

*In the case of a joint examination, all three physicians must sign if they are in agreement with the majority opinion.*

I hereby certify that I have examined the member named on this certificate, and that the findings stated in this certificate and narrative express my professional medical opinion which was arrived at in an independent manner and free of undue influence.

_____M.D.

_____M.D.

_____M.D.

---

### MINORITY OPINION

*To be completed only if a joint examination is conducted by all three physicians.*
*The dissenting physician MUST also complete the Medical Panel Certification Minority Report.*

I hereby certify that I have examined the member along with the other members of the medical panel and that I respectfully disagree with the Majority findings.

_____M.D.

---

### APPLICANT PHYSICIAN AND/OR EMPLOYER'S PHYSICIAN

I hereby certify that I was present at the examination conducted by the Regional Medical Panel Physician(s).  I understand that I have a right to submit a written opinion to the Retirement Board.

_____M.D.

_____M.D.

COMM. OF MASS.
P.E.R.A.C.

# GEORGE M. DOMINIAK, M.D.
### 300 Mount Auburn Street
### Suite 307
### Cambridge, MA 02138

2003 JUL 28  A 9: 52

---

**(617) 686-7299**

| | | |
|---|---|---|
| **APPLICANT:** | Terri James | RECEIVED |
| **PERAC NO.:** | 2003237650 | |
| **EXAM DATE:** | Friday, June 13, 2003, 02:30 PM | |
| **IN ATTENDANCE:** | Ms. James, Attorney Carlton Dasent, Panel MD's | |

**HISTORY OF ILLNESS:** Ms. James is a 30 y.o. Police Officer serving Revere, MA for approximately 6 years between 1995 and 2001. She is applying for Accidental Disability Retirement on the basis of Posttraumatic Stress Disorder (PTSD), Depression and Anxiety related symptoms such as Irritable Bowel Syndrome, migraine headaches and panic attacks.

Ms. James had no past psychiatric history prior to working as a police officer. She reports persistent abusive behavior by her superiors and fellow officers. She alleges discrimination and threatening behavior. She felt demeaned and that her privacy was threatened. As an example she related the story of a prisoner who was someone Ms James knew as a friend from the past. He was allegedly questioned openly about having ever had a sexual relationship with Ms. James and about graphic details regarding sexual behaviors with her. She felt this was crude, abusive, humiliating, invading her privacy, hurtful. She alleges there was no basis for the questioning. Numerous examples were provided during the interview such as finding a bullet hole in her bumper and having tires slashed.

As a result of these kind of experiences she reports she had developed sleep disturbance (insomnia and nightmares), anxiety, fear of retaliation from other police officers, genuine concern for her safety leading her to move to another state, panic attacks, anxiety, uncontrolled crying, depressed mood and hopelessness. She wanted to try to return to work but felt she could not. In 2001, she attended a police sponsored treatment program "On-site Academy" for 1 solid week and 4 additional days later. EMDR (a treatment used to control symptoms of PTSD) was attempted during that time.

Ms. James also described developing loss of appetite, and problems with gastrointestinal discomfort and control. She was evaluated in 1998 at the MGH GI Clinic and followed at the MGH Revere Health Care Center. Irritable Bowel Syndrome was diagnosed. Her PCP, Dr. Wald diagnosed Major Depression and anxiety (office note 05/30/00) and prescribed Zoloft and Trazodone for depression, anxiety and insomnia. She had been seeing Susan Rudman, EdD in psychotherapy since 03/21/01 and Dr. Eric Keroack (gynecologist and counselor) for medication management.

COMM. OF MASS.
_ P.E.R.A.C.

In sum, Ms. James feels she could not perform safely as a police officer because of anxiety and depression and in particular because she could not trust that she would be given adequate back-up when needed.

2003 JUL 28  A 9: 52

RECEIVED

**CURRENT SYMPTOMS:** Ms. James reports ongoing anxiety symptoms with sleep disturbance and fearfulness for her safety and the safety of her family. She avoids police related activities or TV programs, crowds or open public places. Since her move she has continued contact with her previous psychiatric providers by phone essentially weekly and infrequently in person when she returns locally. She has not been able to find providers in her new location as of yet. Her medication regimen includes Xanax 2 mg daily for anxiety and sleep and Lexapro (she could not recall the dose) for depression and anxiety. She also takes medication for migraine and irritable bowel. She denied alcohol use.

**PAST MEDICAL HISTORY:** Non-contributory other than mentioned above with the addition of a history of hypothyroidism.

**MEDICAL RECORD REVIEW:** All available medical records and a job description were reviewed by the members of the Panel. Documents from Dr. Keroack 06/03/02 and 02/18/03 describe the diagnoses of "complex" PTSD, panic symptoms with an initially attempted return to work date of September 2002. She was not able to return after meeting with the Chief. Dr. Keroack's letter of 02/18/03 labeled her work experience as "repetitive trauma of harassment" leading to the interview with our panel. Therapist Rudman's records describe the same clinical picture.

**EXAMINATION:** Ms. James presented as pleasant attractive and cooperative. She showed some lability (shifting) of affect, anxiety and some tearfulness. Her symptoms were described as above. There were no signs of psychosis, mania or obvious intellectual impairment.

**RELEVANT PERSONAL AND FAMILY HISTORY:** Non contributory.

**DIAGNOSES:** Ms. James meets the DSM IVTR criteria for Anxiety Disorder NOS with features of PTSD and features of panic disorder.

**PROGNOSIS:** As compared to the reported clinical history, Ms. James has already shown significant remission in depressive symptoms. The anxiety symptoms as they relate to her work experiences including sleep disturbance, irrational fears, avoidance and emotional numbing, will likely persist and may exacerbate in the context of a police environment. It is impossible to accurately opine regarding prognosis for these symptoms. Living in a new community and not entering this kind of work or activity would be essential in healing.

**CONCLUSIONS:**

1. DISABILITY: It is the unanimous opinion of our Panel that Ms. James is mentally incapable of performing the essential duties of her job as described in the current job description on the basis of Anxiety Disorder NOS with features of PTSD and panic disorder. The symptoms would interfere with her capacity to react safely in emergency situations and in her ability to trust her fellow officers.

2. PERMANENCE: The incapacity mentioned above is likely to be permanent in that the anxiety symptoms mentioned in the Prognosis section above are likely to persist for an indefinite period of time even with continued treatment.

3. CAUSALITY: The said incapacity is such as might be the natural and proximate result of the personal (emotional) injury sustained or hazard undergone on account of which retirement is claimed. There are no other likely causative factors apparent in Ms. James' clinical history to substantiate an alternate etiology for the anxiety disorder.

George M. Dominiak, M.D.
Panel Chair

COMM. OF MASS.
P.E.R.A.C.

2003 JUL 28  A 9: 53

Member Name:    TERRI JAMES              RECEIVED

PERAC ID:       2003257650

Date:           06/13/03

I have reviewed the attached report and agree with the opinions expressed therein.

Panel Physicians:

Mark Friedman, M.D.

Susannah Sherry, M.D.

George Dominiak, M.D.



# PERAC

**COMMONWEALTH OF MASSACHUSETTS | PUBLIC EMPLOYEE RETIREMENT ADMINISTRATION COMMISSION**

ROBERT E. TIERNEY, *Chairman* | A. JOSEPH DeNUCCI, *Vice Chairman*          JOSEPH E. CONNARTON, *Executive Director*
C. CHRISTOPHER ALBERTI | KENNETH J. DONNELLY | ERIC A. KRISS | JAMES M. MACHADO | DONALD R. MARQUIS

TO:            REVERE RETIREMENT BOARD

FROM:          MEDICAL PANEL UNIT

DATE:          MARCH 29, 2004

RE:            REVIEW OF MEDICAL PANEL **CLARIFICATION**

---

Please be advised that P.E.R.A.C. has completed its review of the following Medical Panel Clarification(s) and found the **Clarification(s)** to be in order:

> **TERRI JAMES**     SS# 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
> From Drs. Dominiak, S. Sherry and Friedman

**Your retirement board is encouraged to review the attached report(s) to determine if it is completed to your satisfaction.**

If upon review of the enclosed report, your board determines that additional information or clarification is required, the board may submit to PERAC in writing, a request which identifies the additional information which is desired.   This office will forward the retirement board's request to the medical panel physician(s).

Your retirement board may also choose to write directly to the medical panel for clarification. **PERAC must be provided with a copy of all correspondence between the board and the medical panel.**

If you should have any questions regarding the enclosed material, please do not hesitate to contact this office.

Enclosure

KMH




**GEORGE M. DOMINIAK, M.D.**
**300 Mount Auburn Street**
**Suite 307**
**Cambridge, MA 02138**

COMM. OF MASS.
P.E.R.A.C.

2004 MAR 29  A 7 37

RECEIVED

**617 686-7299**

March 01, 2004

Ira H. Zaleznik
Lawson & Weitzen, LLP
88 Black Falcon Avenue
Suite 345
Boston, MA 02210

RE: Panel Examination of Terri James (SS# 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): Request for Clarification

Dear Mr. Zaleznik:

We have revisited the case of Ms. Teri James. The following are clarifying comments to the questions you posed for our Panel in your letter of January 28, 2004.

1. *The Board would like to know whether the opinion that Ms. James' incapacity would persist for an indefinite period of time is based on her receptiveness or lack thereof to treatment or whether the nature of her condition itself precludes recovery in a definite period of time? Dr. Keroack was perceived to shift his position regarding capacity to return to work between the summer of 2002 and January 2003. You asked: "This shift in position suggests that Ms. James was not receptive to treatment that could have permitted her return to work. Is this perception accurate or inaccurate?"*

Receptiveness to treatment may vary widely in individuals with anxiety symptoms similar to Ms. James' condition. Therefore, relative receptivity to treatment in this case is irrelevant to our determination regarding her capacity to perform her job. Also, let me bring to your attention, as mentioned in our report, that after Dr. Keroack opined work capacity, Ms. James did meet with her Chief, consistent with a good faith attempt, as we saw it, to re-enter her workplace. Apparently something went badly then and she was not able to continue/return to her employment. It appears that Dr. Keroack's perceived shift was related to a failed attempt at initiating a return to the workplace.

2. *Other circumstances that in the opinion of the Board, as represented by Mr. Zaleznik, "could have an impact upon it's (the Panel's) opinion." Ms. James' husband having served the Revere Police Department, retired on accidental disability and moved to Florida. Ms. James having brought a lawsuit against the City of Revere and members of the Revere Police Department "in which she seeks over two million dollars in damages." According to Mr. Zaleznik's question:*

*"This lawsuit suggests that there could be a conscious or unconscious economic incentive on the part of Ms. James to avoid being receptive to treatment that could lead to her recovery." Would these facts change, in any way, the Panel opinion?*

We were aware that Ms. James' husband was also at one time employed by the Revere Police Department. Our evaluation of Ms. James was based on a face-to-face clinical examination and assessment of available facts. There was no evidence during our evaluation or to our reading of the available medical records of malingering, symptom magnification or the apparent influence of secondary gain.

3. *Was the history as presented by Ms. James and Dr. Keroack decisive in the panel reaching its conclusions? Was there any other history than that provided by Ms. James and Dr. Keroack.*

As described in our report, regarding Dr. Keroack's comments in his letter of 02/18/03: "Therapist Rudman's records describe the same clinical picture." Other than the consistency implied by this corroborating opinion, no other records of clinical assessment were made available to us for consideration.

4. *Were there links of incidents or series of incidents at work with specific anxiety attacks or other problems requiring treatment or would the nature of Ms. James' diagnosed condition not result in specific episodes requiring immediate attention?*

The latter is more typical of a longstanding anxiety disorder with features of PTSD. Though acute stress reactions such as the reported poor outcome of Ms. James' meeting with her Chief around September of 2002 leaving her feeling it would be impossible to return, can occur in the context of a developing impairing anxiety disorder, it is the cumulative effect that leads to persistent symptoms and extreme-reactions to work-related experiences. The extreme-reactions to related "triggering" stimuli themselves often require interventions on a regular basis. During our examination, there was not an obvious correlation made between events and episodes of acute symptom exacerbation.

5. *Could there have been other, private, factors in Ms. James' life that could be the source of Ms. James' difficulties? Would such private concerns not possibly produce the condition that was diagnosed? Did the Panel inquire of Ms. James as to whether she experienced any of these difficulties?*

The symptoms Ms. James described and that were recorded in her records appeared to be related to events specific to her occupation. We did conduct a general review of psychiatric history and nothing of note was found in the records or discovered in our examination. In similar cases, when there is a history of depression or past traumas, the individual is rendered more vulnerable to the effects of later traumatic events but the psychopathology at the later time is specific to the stress of the contemporary experiences and not considered to be "produced" or "caused" by the previous symptoms.

6. *Is it the Panel opinion that Ms. James is permanently disabled from performing police work or that she is permanently disabled from performing police work for the Revere Police Department?*

Ms. James' condition as described in her records and as seen to our examination is such as would likely preclude her from performing the essential duties of her job as described in the current job description, i.e. her occupation of police work, and is not likely to be specific to her work site.

George M. Dominiak, M.D.

Mark Friedman, M.D.

Susannah Sherry, M.D.

# PERAC

**COMMONWEALTH OF MASSACHUSETTS | PUBLIC EMPLOYEE RETIREMENT ADMINISTRATION COMMISSION**

DOMENIC J. F. RUSSO, Chairman | A. JOSEPH DeNUCCI, Vice Chairman
KENNETH J. DONNELLY | ERIC A. KRISS | JAMES M. MACHADO | DONALD R. MARQUIS

JOSEPH E. CONNARTON, Executive Director

TO:       REVERE RETIREMENT BOARD

FROM:   MEDICAL PANEL UNIT

DATE:    SEPTEMBER 20, 2004

RE:       REVIEW OF MEDICAL PANEL CERTIFICATE

*rec'd 9/21/04*

Please be advised that P.E.R.A.C. has completed its review of the following Medical Panel Certificate(s) and found the Certificate(s) to be in order: **Drs. Albeck, Sciascia & Lurie**

### Sonia Fernandez

**Your retirement board is encouraged to review the attached report(s) to determine if it is completed to your satisfaction.**

If upon review of the enclosed report, your board determines that additional information or clarification is required, the board may submit to PERAC in writing, a request which identifies the additional information which is desired. The board's request will then be forwarded by this office to the physicians.

Your retirement board may also choose to write directly to the medical panel for clarification. **PERAC must be provided with a copy of all correspondence between the board and the medical panel.**

If you should have any questions regarding the enclosed material, please do not hesitate to contact this office.

BL/kmh
Enclosure

FIVE MIDDLESEX AVENUE, THIRD FLOOR | SOMERVILLE, MA 02145
PH 617 666 4446 | FAX 617 628 4002 | TTY· 617 591 8917 | WWW.MASS.GOV/PERAC



**Commonwealth of Massachusetts**
**Public Employee Retirement Administration Commission**
5 Middlesex Avenue, 3rd Floor
Somerville, MA 02145
(617) 591-8956
Fax (617) 628-4414

## APPLICANT INFORMATION

**PERAC ID:  2004249790    TYPE OF DISABILITY:    ACC (M)**

**SOCIAL SECURITY NUMBER:**         030560666

**MEMBER:**                        Sonia  Fernandez

**MEMBER ADDRESS:**                197 Ridge Road

                                   Revere, MA 02151

**RETIREMENT BOARD:**              Revere Retirement Board

**OCCUPATION:**                    POLICE

**EMPLOYER:**                      Cheif Terence Reardon

**REGIONAL MEDICAL PANEL**
**PHYSICIAN:**                     Joseph Albeck, M.D. — PSYCHI
                                   Thomas R Sciascia, M.D. — NEUROL
                                   Melvyn Lurie, M.D. — PSYCHI

**MEDICAL PANEL SPECIALTY:**       PSYCHI

**EXAMINATION LOCATION:**          Sancta Maria Nursing Facility
                                   799 Concord Avenue, Ground Floor
                                   Cambridge, MA 02138

**DATE:**                          Friday, August 13, 2004

**TIME:**                          11:30 AM

COMMONWEALTH OF MASSACHUSSETTS
PUBLIC EMPLOYEE RETIREMENT ADMINISTRATION COMMISSION
REGIONAL MEDICAL PANEL CERTIFICATE

**MEMBER:**   Sonia Fernandez                          **S.S. #:** 030560666
**PERAC ID:**   2004249790                             **TYPE OF DISABILITY: ACC**

The member's retirement board will provide you with all information relating to the member's claimed disability and the current job description. This information is critical to your ability to perform a comprehensive medical evaluation and assess the member's ability to perform the essential duties of his/her job. If this information has not been received, please contact the PERAC Medical Panel Unit.

---

DID THE MEDICAL PANEL REVIEW THE MEMBER'S JOB DESCRIPTION?

YES ☑    NO ☐

DID THE MEDICAL PANEL RECEIVE AND REVIEW MEDICAL RECORDS IDENTIFIED ON THE TRANSMITTAL OF BACKGROUND INFORMATION TO A REGIONAL MEDICAL PANEL FORM PRIOR TO RENDERING A MEDICAL OPINION IN THIS CASE?

YES ☑    NO ☐

PLEASE LIST ANY RECORDS NOT LISTED ON THE TRANSMITTAL OF BACKGROUND INFORMATION TO A REGIONAL MEDICAL PANEL FORM, WHICH THE PANEL REVIEWED.

1. IS THE MEMBER MENTALLY OR PHYSICALLY INCAPABLE OF PERFORMING THE ESSENTIAL DUTIES OF HIS OR HER JOB AS DESCRIBED IN THE CURRENT JOB DESCRIPTION?

YES ☑    NO ☐

Please continue ONLY if you answered yes to question #1.

2. IS SAID INCAPACITY LIKELY TO BE PERMANENT?

YES ☑    NO ☐

PERMANENCY:   A disability is permanent if it will continue for an indefinite period of time which is likely never to end even though recovery at some remote, unknown time is possible. If the medical panel is unable to determine when the applicant will no longer be disabled, they must consider the disability to be permanent. However, if the recovery is reasonably certain after a fairly definite time, the disability cannot be classified as permanent. It is imperative that the medical panel make its determination based on the actual examination of the applicant and other available medical tests or medical records which have been provided. It is *not* the physician's task to look into employment possibilities that may become available to an applicant at some future point in time.

COMMONWEALTH OF MASSACHUSETTS
PUBLIC EMPLOYEE RETIREMENT ADMINISTRATION COMMISSION
CERTIFICATE FOR ACCIDENTAL DISABILITY

**MEMBER:**   Sonia Fernandez
**PERAC ID:**   2004249790      **S.S. #:** 030560666      **TYPE OF DISABILITY:** ACC

PLEASE CONSIDER POINTS A AND B BEFORE RESPONDING TO QUESTION #3.
POINTS A AND B SHOULD ALSO BE DISCUSSED IN YOUR NARRATIVE .

**A.** Whether there is any other event or condition in the member/applicant's medical history, or in any other evidence provided to the panel, other than the personal injury sustained or hazard undergone upon which the disability retirement is claimed, that might have contributed to or resulted in the disability claimed.

**B.** Whether it is more likely than not that the disability was caused by the condition or event described in (A) rather than the personal injury sustained or hazard undergone which is the basis for the disability claim, and the basis for your conclusion.

**3. IS SAID INCAPACITY SUCH AS MIGHT BE THE NATURAL AND PROXIMATE RESULT OF THE PERSONAL INJURY SUSTAINED OR HAZARD UNDERGONE ON ACCOUNT OF WHICH RETIREMENT IS CLAIMED?\***

YES ☑   NO ☐

**Aggravation of a Pre-Existing Condition Standard: If the acceleration of a pre-existing condition or injury is as a result of an accident or hazard undergone, in the performance of the applicant's duties, causation would be established. However, if the disability is due to the natural progression of the pre-existing condition, or was not aggravated by the alleged injury sustained or hazard undergone, causation would not be established.**

**\*PLEASE NOTE:** When constructing your response to the question of causality (#3) in accidental disability narrative reports, your opinion must be stated in terms of medical possibility and not in terms of medical certainty.

COMMONWEALTH OF MASSACHUSETTS
PUBLIC EMPLOYEE RETIREMENT ADMINISTRATION COMMISSION

## CERTIFICATION OF MEDICAL PANEL FINDINGS

**MEMBER:** Sonia Fernandez
**PERAC ID:** 2004249790

**S.S. #:** 030560666
**TYPE OF DISABILITY:** ACC

---

### MAJORITY OPINION

*In the case of a joint examination, all three physicians must sign if they are in agreement with the majority opinion.*

I hereby certify that I have examined the member named on this certificate, and that the findings stated in this certificate and narrative express my professional medical opinion which was arrived at in an independent manner and free of undue influence.

_____ M.D.

_____ M.D.

_____ M.D.

---

### MINORITY OPINION

*To be completed only if a joint examination is conducted by all three physicians.*
*The dissenting physician MUST also complete the Medical Panel Certification Minority Report.*

I hereby certify that I have examined the member along with the other members of the medical panel and that I respectfully disagree with the Majority findings.

_____ M.D.

---

### APPLICANT PHYSICIAN AND/OR EMPLOYER'S PHYSICIAN

I hereby certify that I was present at the examination conducted by the Regional Medical Panel Physician(s). I understand that I have a right to submit a written opinion to the Retirement Board.

_____ M.D.

_____ M.D.

THOMAS SCIASCIA, M.D.
Consulting Neurologist
108 Oliver Road
Belmont, Massachusetts 02478
617/484-2267

September 12th, 2004

Kevin Blanchette
PERAC
5 Middlesex Avenue, 3rd Floor
Somerville, MA 02145

RE: Sonia Fernandez
    SS#: 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

Dear Sir:

I examined the patient Sonia Fernandez with fellow psychiatric medical panel members Dr. Melvyn Lurie and Dr. Joseph Albeck at the Sancta Maria Nursing Facility, located at 799 Concord Avenue in Cambridge, Massachusetts on August 13th, 2004. The purpose of the examination was to determine the patient's degree of medical impairment. The history was obtained from the patient and the medical records that were forwarded to us by your office. Carlton Dasent was present during the 30 minute evaluation.

The patient is a 38 year old right handed woman who became a Police Officer in 1995. Job description for Police Officer was reviewed by the panel.

The patient reports that the work environment was always "unfriendly". She states that by the year 2000, she began suffering from weight loss (weight dropped from 100 to 94 pounds), insomnia, autonomic symptoms such as tachycardia, sweating, vomiting, and diarrhea that would occur several times per day. The patient attributed these symptoms to what she views as unfair reprimands for work related performance and an environment of "harassment".

The patient states that she finally left work without pay between March and October of 2001 for psychiatric related issues. She states that, during this time period, she was under economic stress due to lack of pay. However, the patient reports that her above-noted medical symptoms were not as severe. She states that if she had any contact with the police department, the symptoms as noted would be exacerbated.

The patient worked between October 2001 and January 2002. She reports that the work environment hostility remained unchanged. After a two week work absence in January 2002, she returned to work and then last worked in September of 2002. The patient reports that there is litigation pending regarding her work situation.

Physician Dr. Millman states in a March 23rd, 2001 letter that the patient was initially evaluated in July of 2000 when she was diagnosed with major depressive disorder and panic disorder without agoraphobia.

The patient reports that in the course of her work she experienced multiple gruesome events. She described in detail one event in which an individual shot himself in the head and she was at the crime scene. The patient reports that, as a result of these work related experiences, she began to experience nightmares, intrusive thoughts, and episodes of anxiety during which she relived the experience of being at the crime scenes.

The patient states that she was evaluated by psychiatrist Dr. Harmon in April of 2003 and has continued treatment with him up to the present time. Dr. Harmon states in his August 27th, 2003 handwritten note that the patient had a diagnosis of panic disorder, and post traumatic stress disorder.

In addition to the patient's psychiatric conditions, she has medical diagnoses that are summarized by Dr. Guerrini in an October 9th, 2003 office note.

The patient reports today that she is currently on the medication Clonopin, Ambien, Zantec, and Cleocin.

The patient states that she currently weighs approximately 115 pounds. She states that she still experiences autonomic symptoms as mentioned above, however they are less frequent and severe in nature.

## EXAMINATION

**MENTAL STATUS:** The patient was awake and alert. The patient communicated with no obvious language disturbance. The patient's affect appeared appropriate. The patient was a some what tangential historian.

## IMPRESSION

The psychiatric medical panel concluded that the patient met the criteria for a post traumatic stress disorder (PTSD).

1.     The psychiatric medical panel concluded that the patient was mentally incapable of performing the essential duties of her job as a Police Officer as described in the current job description. The panel based this conclusion on the severity of the patient's psychiatric complaints.

2.     The panel concluded that the said incapacity is likely to be permanent, and unlikely to respond to further rehabilitation efforts.

3.     The panel concluded that the said incapacity is such as might be the natural and proximate result of the personal injury sustained or hazard undergone on account of which retirement is claimed. The panel based this conclusion on the specific work related "gruesome" events that the patient experienced.

The undersigned medical panel members hereby attach their signatures to the A 9

Psychiatric Medical Panel Report on the patient _Sonia Fernandez_, seen

on _Aug 13, 2004_ at the Sancta Maria Nursing Facility, 799 Concord Avenue

in Cambridge, Massachusetts.


Joseph Aibeck, M.D.


Melvyn Lync, M.D.


Thomas Sciascia, M.D.