UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TERRI PECHNER-JAMES and SONIA FERNANDEZ,<br>    Plaintiffs,<br><br>v.<br><br>CITY OF REVERE, THOMAS AMBROSINO, MAYOR, CITY OF REVERE POLICE DEPARTMENT, TERRENCE REARDON, CHIEF OF POLICE, BERNARD FOSTER, SALVATORE SANTORO, ROY COLANNINO, FREDERICK ROLAND, THOMAS DOHERTY, JOHN NELSON, JAMES RUSSO, MICHAEL MURPHY and STEVEN FORD,<br>    Defendants, | C.A. No. 03-12499-MLW |

**DEFENDANTS, CITY OF REVERE'S, CITY OF REVERE POLICE DEPARTMENT'S, MAYOR THOMAS AMBROSINO'S AND POLICE CHIEF TERENCE REARDON'S, STATUS REPORT**

NOW COME Defendants, City of Revere, City of Revere Police Department, Mayor Thomas Ambrosino and Police Chief Terence Reardon, and hereby submit their Status Report pursuant to the Court's Second Order on Discovery Motion dated January 27, 2006, and entered herein on January 31, 2006 (Docket No. 110).

**Status Conference Dates**

In its Second Order on Discovery Motion (Docket No. 110, page 2, paragraph 6), the Court set a status conference for Monday, March 13, 2006, at 3:00 p.m. and directed the parties to file status conference reports by Wednesday, March 1, 2006. Said status reports were to address "the status of discovery and/or any other issues." Id.

Previously, during the status conference conducted on November 29, 2005, the Court set a status conference for Monday, March 27, 2006, at 2:00 p.m. See Notice of

Electronic Filing entered on November 30, 2005, at 9:47 a.m.; see also Notice of Electronic Filing entered on November 30, 2005, at 9:49 a.m re: "granting [89] Motion for Modification of the scheduling order."

This reporting party presumes that the Status Conference on March 13, 2006, will most likely obviate the need for the Status Conference scheduled for March 27, 2006.

### Discovery Issues

A.  **Interrogatories:**

By virtue of its Order on Motion for Sanctions entered herein on February 17, 2006 (Docket No. 115), the Court has ordered the Plaintiffs and their counsel to appear in Court on Friday, March 3, 2006, at 9:00 a.m. to sign their supplemental interrogatory answers under oath as required by Fed.R.Civ.P. 33(b)(1). Docket No. 115, page 6.

**NOTE:** Upon further review of counsel's file, it appears that Plaintiffs did **not** sign their original responses under oath either.

**FURTHER NOTE: As this pleading was being prepared, the City received in the mail interrogatory responses, supplemental responses and additional supplemental responses purportedly signed under oath by each Plaintiff. For the reasons more fully set forth below (Other Issues, Section E), the City requests that the Plaintiffs be required to verify their signatures under oath in open Court on March 3, 2006.**

B.  **Document Production – Medical Records:**

The separately represented officer defendants have taken the laboring oar in securing Plaintiffs' medical records. It goes without saying that they have had little better success in obtaining the Plaintiffs' medical records than the City has had in

obtaining their answers to its interrogatories. As a result, the Plaintiffs have been ordered to personally appear in Court with counsel to execute the necessary releases for the defendants to be able to obtain their medical records. Docket No. 115, page 6.

The City will defer to the status report of the officer defendants in terms of any remaining or outstanding issues related to this aspect of discovery.

**C.      Document Production – The Pechner Calendars:**

Over one year ago, on February 17, 2005, the officer defendants propounded their First Request for Production of Documents on the Plaintiffs. See Exhibit "A" hereto which is a true and accurate copy of same. Plaintiff Pechner's response included neither her contemporaneously kept calendars, nor her type written notes compiling the information contained within these calendars. Moreover, Plaintiff Pechner lodged no objection to their production, choosing rather to ignore their existence all together. Both were subject to production in response to request numbers 7, 12, 17, 18 and 21.

It was not until the first session of her deposition on January 10, 2006, however, that defendants' counsel learned of both the calendars and the type written notes when Plaintiff Pechner referred to them at her deposition. See Exhibit "B" hereto which are true and accurate copies of the relevant pages from the deposition transcript for that session and more particularly pages 40 through 92. Although the type written notes were turned over at the deposition (Exhibit "B", pages 3 and 89-92), the calendars were not.

With respect to the calendars, Plaintiff's counsel represented that he had "no problem" giving them to the defendants and would in fact do so (Exhibit "B", page 72, lines 11-20). Yet, to date, the calendars have not been produced.

Accordingly, the defendants request an order directing Plaintiff Pechner to produce her calendars no later than at the Status Conference Hearing set for March 13, 2006.

**D.    Depositions of the Plaintiffs:**

1.    Scheduling.

Despite their repeated efforts to get the depositions of the Plaintiffs underway, to date, the defendants have only been able to start the deposition of Plaintiff Pechner. Despite the defendants' good faith efforts at coordinating calendars, invariably a new calendar conflict arises for Plaintiffs' counsel and the deposition dates are cancelled. Once again, since counsel for the individual defendant officers are taking the laboring oar on scheduling the depositions, counsel for the City will defer to their status report for the particulars on scheduling.

2.    Time Limitations.

In the Order on Motion for Sanctions, the Court observed that at the January 25, 2006, hearing, "the Court explained that Plaintiffs' answers to the City's interrogatories were deficient." Docket No. 115, page 2-3. Additionally, the Court further observed in its Order on Motion for Sanctions that "orally in court and later in a written order, the Court ordered that . . . each plaintiff serve further supplemental responses addressing the problems identified by the Court by February 1, 2006 (Discovery Order, Docket #110, entered January 31, 2006)." Docket No. 115, page 3-4. When the Plaintiffs failed to comply with this order, the City filed *ex parte* pleadings to address the issue (Docket No. 111) and the Court issued its Third Discovery Order (Docket No. 112). See Docket No. 115, page 4.

Based upon the foregoing, the Court correctly observed in the Order on Motion For Sanctions that "Plaintiffs have repeatedly declined the numerous opportunities offered to resolve the interrogatory issue in a simple and straightforward manner. Electing to engage in a pattern of behavior that has resulted in needless expense and delay." Docket No. 115, page 4.  Likewise, the Order on Motion for Sanctions further observed that "Plaintiffs' counsel has disregarded the plain terms of Rule 33 and this Court (sic) Orders." *Id*. Finally, the Order on Motion for Sanctions further observed that the "Plaintiffs have pursued a similar course regarding their medical records." Docket No. 115, page 5.

Notwithstanding the foregoing, and despite a year long effort (an effort involving multiple Court hearings and orders compelling compliance with the Rules and previous orders) to obtain answers to legitimate interrogatories to which the parties stipulated (Docket No. 115, page 1; see also page 6 ("The City embarked on this course in order to save litigation expense and focus the depositions.")), the long and the short of the matter boils down to the Court's conclusion that "No further litigation of the interrogatory issue will be fruitful" and Plaintiff's counsel is sanctioned $500.00.  Docket No. 115, page 6.

IN OTHER WORDS, for the paltry sum of $500.00, Plaintiffs have effectively eviscerated Fed.R.Civ.P 33 and 37, their own stipulation and multiple Court orders, despite the fact that their conduct could and should have resulted in a dismissal of this action, OR AT A MINIMUM, in issue and evidentiary sanctions.

Instead, the defendants, on whose behalf the City has taken the lead vis-à-vis these interrogatories, are left with seeking the answers to these interrogatories through the more time consuming and costly deposition process.  Docket No. 115, page 6.  In other

words, a legitimate discovery process which should have cost the defendants nothing (interrogatories), will now cost the defendants far in excess of the $500.00 in sanctions awarded (deposition fees to the court stenographer, plus attorney time charged to clients – indeed, as the defendants' sanctions motions amply demonstrated, the $500.00 sanction is only a meager fraction of the costs their clients' have born).

Presumably, since the Court has relegated the defendants to obtaining the answers to their interrogatories through depositions, relief from the time limits related thereto (Docket No. 87) are also in order and to be expected.

### Other Issues

**A.**     **Service of Papers, Etc.:**

Plaintiffs' counsel has the annoying habit of sending documents to either counsel for the City defendants or counsel for the individual officer defendants, but not to both. For instance, and by way of just one of many examples, Plaintiffs' recent supplemental interrogatory responses were served upon the City Solicitor's Office, but not upon the Office of Reardon, Joyce and Akerson. Likewise, what few medical records and/or releases have been produced have been served upon the Office of Reardon, Joyce and Akerson, but not upon the Office of the City Solicitor. As a result of the foregoing, counsel for the defendants are constantly having to call one another to determine if they have both received the latest from Plaintiffs' counsel. Requests/reminders to Plaintiffs' counsel to please serve both parties have gone unheeded.

It is respectfully requested that the Court issue an order that *ALL* communications of any nature between Plaintiffs' counsel and the defendants' counsel be copied to *BOTH* sets of defense counsel.

**B.      Plaintiffs' Permission to Appeal:**

On January 23, 2006, Plaintiffs' filed a request for interlocutory appeal. Docket Nos. 108 and 109. At the hearing on January 25, 2006, the Court indicated that a response from the Defendants would not be necessary unless and until solicited by the Court. To date, there has been no ruling from the Court on this matter.

**C.      Outstanding Orders and Reports and Recommendations Before Judge Wolf:**

On October 12, 2005, the Court issued its Discovery Order (Docket No. 87) and its Report and Recommendation (Docket No. 88) on the summary judgment motions of Chief Reardon (Docket No. 29) and Mayor Ambrosino (Docket No. 37). Plaintiff filed objections to both actions of the Court (Docket Nos. 90 and 91) to which the defendants responded (Docket Nos. 92 – 95). To date, there has been no ruling from the Court on these matters.

**D.      The Role of Disbarred Attorney Carlton Dasent:**

When the instant action was filed, Mr. Dasent was on the verified complaint as co-counsel. Although apparently not a member of the firm of Grayer & Dilday, Mr. Dasent's office was located in the same office suite as Grayer & Dilday. Despite the fact that on May 13, 2005, an SJC Order of Disbarment was entered against Mr. Dasent, with an effective date of June 12, 2005 (see Exhibit "C" hereto), neither Attorney Dilday nor Mr. Dasent bothered to inform the Court of this event. Moreover, despite the fact that counsel for these reporting Defendants informed the Court of Mr. Dasent's disbarment in its June 29, 2005, Supplemental Status Report (Docket No. 51), Mr. Dasent did not withdraw as attorney of record herein until September 12, 2005 (Docket No. 82).

Nonetheless, and despite his disbarment (a fact commented and relied upon by the Court at the October 12, 2005 hearing), Mr. Dasent has continued to be present, though presumably as a member of the public, at all subsequent Court hearings in this case. Moreover, Mr. Dasent appeared in Worcester at the deposition of Plaintiff Pechner, though Attorney Dilday explicitly stated that Mr. Dasent was <u>not</u> employed by his firm, Grayer & Dilday (Exhibit "B", pages 4-12; see particularly page 4, line 1 to page 8, line 6).

Yet, despite the foregoing, the City's counsel received two documents on Tuesday, February 21, 2006, which are not only puzzling, but extremely troubling as well as concerns Mr. Dasent's continuing role in this case. The first, was a faxed letter on Grayer & Dilday letterhead presumably signed by Attorney Dilday and faxed to the City Solicitor's office at 2:47 p.m. on Friday, February 17, 2006. Because the Solicitor's Office closes at noon on Fridays, this fax sat in the output tray of the fax machine until Tuesday morning, February 21, 2006 (Monday, February 20, 2006, being the President's Day holiday), when it was stamped in at 8:24 a.m. and given to Assistant City Solicitor Walter H. Porr, Jr. A true and accurate copy of that fax is attached hereto as Exhibit "D". Approximately one hour later, the City Solicitor's Office received its mail delivery and the purported original of the fax from Friday was contained therein. **Except, instead of the original containing the signature of Mr. Dilday, as in the fax, it instead bore the signature of Mr. Dasent**. A true and accurate copy of that original is attached hereto as Exhibit "E".

Needless to say, this anomaly raises a myriad of questions regarding the prosecution of the Plaintiffs' case. More particularly, a review of the correspondence and

8

pleadings from the Grayer & Dilday firm reflect that the purported signature of Attorney Dilday on these documents is wildly inconsistent and presumably incapable of being from the same hand.  Compare, for instance, the purported signature of Attorney Dilday on the Complaint (Docket No. 2) and on the Interrogatory Stipulation (Docket No. 31) attached hereto as Exhibit "F" with his purported signature on Exhibit "D".  They are not the same and Defendants have multiple copies of correspondence suggesting that some other than Attorney Dilday is signing documents, including pleadings, on his behalf.

Thus, at this stage of the proceedings, Defendants are genuinely concerned that Mr. Dasent is acting in the shadows as a ghost attorney for the Plaintiffs.

**E.**     **Questionable Plaintiffs' Signatures:**

As troubling as the implications are concerning the veracity of Attorney Dilday's signatures, they have lead to an even more disturbing finding concerning the signatures of the Plaintiffs themselves, signatures presumably given under oath in many cases.

In this context, attached hereto as Exhibits "G" and "H" respectively are the signature pages for each plaintiff from the following documents:

1. MCAD complaint.

2. Civil complaint (the instant action).

3. Interrogatory responses to interrogatories from individual defendants.

4. Affidavit in Support of Summary Judgment (Pechner only).

5. Interrogatory responses to interrogatories from City.

6. Supplemental Interrogatory responses to interrogatories from City.

7. Workers compensation leave application.

8. Disability Retirement Application (Pechner only).

9. Affidavits served with Plaintiffs' proposed Motion for Summary Judgment.

10. Statements of Material Fact signed by Plaintiffs and served with Plaintiffs' proposed Motion for Summary Judgment.

11. Interrogatory responses, supplemental interrogatory responses and additional supplemental interrogatory responses.

A review of these documents reflects that there are significant discrepancies in the signatures, particularly in the case of Plaintiff Pechner. It does not take an expert questioned documents examiner to recognize that some of these signatures can not be genuine. The question, of course, is which ones. The answer, no doubt, will have to be determined through deposition testimony, resulting in the waste of more time and money, all at defendants' expense.

**Additional Requested Relief**

1. That an order issue directing that Attorney Dilday cease and desist from allowing Mr. Dasent to perform any work or services in relation to this matter and that Attorney Dilday inform Mr. Dasent that he, Dasent, will not be allowed to attend any depositions in this matter.

2. That an order issue directing Plaintiffs' and their counsel, jointly and severally, to pay for the costs of the stenographer for their depositions.

3. That an order issue relieving Defendants of the deposition time limitations due to the fact that Plaintiffs' depositions will necessarily be much longer because of the Plaintiffs' litigation conduct.

      4.      That as an alternative to no. 2 immediately above, an order issue directing Plaintiffs' and their counsel, jointly and severally, to pay the Office of the City Solicitor for the City of Revere $5,000.00 and the Office of Reardon, Joyce and Akerson $5,000.00.

      5.      That during their appearance on March 3, 2006, or at the status conference set for March 13, 2006, the Plaintiffs be obligated to be present and to testify under oath as to the genuineness, or lack thereof, of the questioned signatures identified herein.

For the Defendants, CITY OF REVERE, CITY OF REVERE POLICE DEPARTMENT, MAYOR THOMAS AMBROSINO and POLICE CHIEF TERENCE REARDON,

      By their Attorneys,

      /s/ Walter H. Porr, Jr.
      Paul Capizzi, Esq.
      City Solicitor
      BBO#: 646296
      pcapizzi@rvere.org
      Walter H. Porr, Jr., Esq.
      Assistant City Solicitor
      BBO#: 659462
      wporr@revere.org
      City Hall, 281 Broadway
      Revere, MA 02151
      781-286-8166

Dated: February 28, 2006.

## CERTIFICATE OF SERVICE

I, Walter H. Porr, Jr., Assistant City Solicitor and counsel of record for the Defendants, City of Revere, City of Revere Police Department, Mayor Thomas Ambrosino and Police Chief Terence Reardon, hereby certify that I have electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. I caused to be served upon counsel of record, at the address stated below, via the method indicated, a true copy of same:

| | |
|---|---|
| James S. Dilday, Esq. | Michael J. Akerson, Esq. |
| Carlton J. Dasent, Esq. | Reardon, Joyce and Akerson, P.C. |
| 27 School Street, Suite 400 | 397 Grove Street |
| Boston, MA 02108 | Worcester, MA 01605 |
| Atttorneys for the Plaintiffs | Attorneys for Defendants |
| Via CM/ECF e-mail | Bernard Foster, Salvatore Santoro, |
| | Roy Colannino, Frederick Roland, |
| | Thomas Doherty, John Nelson, |
| | James Russo, Michael Murphy, |
| | and Steven Ford |
| | Via CM/ECF e-mail |

  /s/  Walter H. Porr, Jr.
Walter H. Porr, Jr.,

Dated:  February 28, 2006