# EXHIBIT C





NO. BD-2005-016

### IN RE: CARLTON J. DASENT

S.J.C. Judgment of Disbarment entered by Justice Cowin on May 13, 2005, with an effective date of June 12, 2005.[1]

### MEMORANDUM OF DECISION

This matter comes before me on an information, record of proceedings, and a vote of the Board of Bar Overseers (board). The matter was initiated by bar counsel's petition for discipline brought before a hearing committee of the board. The petition alleged that Carlton J. Dasent (respondent) violated various disciplinary rules arising out of his mishandling of client funds in two separate incidents. As to the first matter, the hearing committee concluded that the respondent intentionally misused funds retained for payment of his client's medical bills; neglected promptly to pay his client's medical bills; failed to return money owed to his client when he paid her medical bills at a reduced rate; failed to deposit his client's money in an IOLTA account; failed to provide his client and bar counsel with an accounting of the client's funds; made misrepresentations to bar counsel and the court; failed to comply with a bar counsel subpoena; and filed an improper ex parte motion. On the second matter, the hearing committee concluded that the respondent took legal fees without the knowledge or consent of his clients and without providing a timely bill or accounting; misrepresented to his clients that his fees had been used to reduce their indebtedness; and made misrepresentations and false accountings to bar counsel.

By a two-to-one vote, the hearing committee concluded that the respondent's actions in both matters constituted the violation of several ethical rules[2] and warranted the sanction of disbarment. Essentially, the hearing committee concluded that the respondent intentionally misused his client's funds in the first matter and never repaid them, and tried to obstruct bar counsel's investigation by fabricating evidence and engaging in an ex parte communication with the court. In the second matter, the committee concluded that the respondent had, without his client's knowledge, taken fees for work he had performed, and made false accountings and misrepresentations to bar counsel. The dissenting committee member did not find credible the testimony of the client in the first matter that the respondent had not fully paid her the amount he owed her, see infra, and thus believed that the respondent made full restitution of the amount owed and should receive only an indefinite suspension.

Both bar counsel and the respondent appealed from the hearing committee report. After oral argument and ordering that the parties file supplementary material on the first matter, an appeal panel of the board adopted the hearing committee report. However, because the respondent had provided service to the community of New Bedford, which the panel considered a "special mitigating factor," it chose to impose a sanction of indefinite suspension, rather than disbarment.

Both bar counsel and the respondent objected to the appeal panel's report, and appealed to the board. The board voted, with four dissenting votes and one abstention, to suspend the respondent indefinitely. The board then filed an information with the county court pursuant to S.J.C. Rule 4:01, § 8 (4), as appearing in 425 Mass. 1309 (1997). The board disagreed with the appeal panel that the respondent's

service to his community warranted a departure from the presumptive sanction of disbarment, but was reluctant to disbar the respondent where it "lacked sufficient confidence" in the testimony of the client in the first matter that she had not received the full amount of money that the respondent owed her. The dissenting members preferred disbarment. Bar counsel now seeks an increased sanction of disbarment; the respondent requests that I remand the matter for a resolution of the credibility issue or declare the prior proceedings void, or, in the alternative, that a private reprimand be imposed.[3]

1. Facts. The hearing committee made the following findings of fact, which I find are warranted. These findings were adopted by the appeal panel and the board, except that the board "lacked sufficient confidence" in the factual finding in the first count that the respondent had not fully paid his client.

In 1991, Bridget C. Carter was injured in a car accident. Ms. Carter retained the respondent to represent her in the matter on a contingent fee basis which entitled the respondent to one-third of any recovery. As a result of binding arbitration, Ms. Carter was awarded $7,950 for property damage, medical bills, and pain and suffering. She had incurred a total of $3,005.69[4] in medical bills: a doctor's bill of $314, a hospital bill of $369.69, a Radiology Associates bill of $37, and a bill from Southeast Massachusetts Work Hardening & Physical Therapy (SEMA) of $2,285. The respondent paid a $400 arbitration fee. The insurance company of the at-fault driver issued a check payable to Ms. Carter for $7,950.

On April 22, 1992, Ms. Carter met the respondent at his office, where each of them signed the award check. They then walked to a branch of the New Bedford Institute for Savings, where the respondent deposited the $7,950 into his checking account. This account was not an IOLTA account or one accruing interest to the client, and the respondent used it to pay personal, business, and client expenses. The respondent told Ms. Carter that his fee was $2,650, and that he would use the remainder of the proceeds to pay her medical expenses. The respondent made out a check for $3,637 to cash, and cashed the check. The respondent testified that he paid Ms. Carter $3,637 in cash, while she testified that she received only about $2,200 in cash. The hearing committee credited Ms. Carter's testimony. The hearing committee did not rely on a receipt the respondent later produced for $3,637 which appeared to bear Ms. Carter's signature, as she did not recollect signing it and there was no evidence offered as to when it had been filled out or signed.

In June, 1992, the respondent paid Ms. Carter's hospital bill of $369.69 and her Radiology Associates bill of $37, and settled her doctor's bill for a reduced amount of $157 (half of the billed amount of $314). Thus, the total paid out of Ms. Carter's funds by the respondent at this point was $563.69. The respondent refused to pay the SEMA bill in full, wrote SEMA a letter stating that there was not enough money to pay the total amount owed, and requested that SEMA accept a reduced payment of $1,100. SEMA refused, and continued billing Ms. Carter for the full amount. Between June and November, 1992, the respondent intentionally misused the remaining funds, which should have been paid to SEMA, to pay expenses unrelated to Ms. Carter. The amount of money remaining in the account dropped to less than $200 by November, 1992. In 1993, Ms. Carter questioned the respondent about the SEMA bill, and the respondent stated that he intended to pay SEMA. On November 5, 1994, Ms. Carter requested an accounting of the settlement funds, and the respondent refused to comply.

In 1995, Ms. Carter filed a grievance with the Office of Bar Counsel. On the same day that bar counsel forwarded the grievance to the respondent, the respondent sent a check for $1,100 to SEMA, which SEMA then agreed to accept in full satisfaction of its claim. In correspondence, bar counsel informed the respondent that his response to the allegations was insufficient and that an accounting and documentation of funds received and disbursed on Ms. Carter's behalf was necessary, but the respondent failed to answer the communication. The respondent subsequently failed to comply with a bar counsel subpoena to appear at the Office of Bar Counsel with specified records, and filed an ex parte motion with the Supreme Judicial Court to quash the subpoena. The motion was denied.

The respondent subsequently appeared before bar counsel in response to the subpoena, but did not produce the records requested. During his interview with bar counsel, the respondent intentionally misrepresented that he had paid Ms. Carter's medical bills by means of money orders. He later purchased

money orders and manufactured cover letters to support this misrepresentation. The hearing committee credited Ms. Carter's testimony that the respondent called her in July, 1995, and offered to pay her in exchange for a statement to bar counsel that she had received more money from him in 1992 than she actually had.

The hearing committee found in relation to the second count that the respondent contracted with another client, Judith Treadwell,[5] to file a bankruptcy petition to protect the family house from foreclosure, for which the respondent would charge $1,000. The respondent subsequently filed an adversary proceeding against the Treadwells' bank, and, without informing the Treadwells, took a further $4,610 in additional attorney's fees. The respondent subsequently returned the $4,610 to the Treadwells, less a refinancing charge. As a result of the respondent's actions, the Treadwells were able to save about $20,000 from the amount owed their bank, and the hearing committee credited expert testimony that a legal fee of around $4,600 was small for the type of work performed and results achieved by the respondent.

2. Substantial evidence. The respondent argues that there is no substantial evidence to justify the hearing committee's conclusion that he intentionally misused Ms. Carter's funds with actual deprivation resulting, and thus no basis for its recommendation of disbarment. The defendant draws support for this contention from the dissenting committee member's decision not to credit Ms. Carter's testimony; the statement of the appeal panel that Ms. Carter's testimony was "stretching credulity;" and the board's decision to impose an indefinite suspension because it "lacked sufficient confidence" in the hearing committee's decision to credit Ms. Carter.

The respondent's contention ignores the fact that, in bar disciplinary proceedings, the hearing committee is the sole judge of the credibility of witnesses appearing before it. See S.J.C. Rule 4:01, § 8 (4); Matter of Saab, 406 Mass. 315, 328 (1989). The deference owed to hearing committee findings is comparable to the deference owed to the findings of a jury, see Matter of McCabe, 13 Mass. Att'y Discipline Rep. 501, 507 (1997), and is a result of the fact that the hearing committee has the opportunity to observe witnesses as they testify. See Matter of Saab, supra, citing Salem v. Massachusetts Comm'n Against Discrimination, 404 Mass. 171, 174 (1989) (mere reading of transcript not adequate substitute to hearing and observing witnesses in credibility assessment). Thus the board may not reject a credibility finding "unless it can 'be said with certainty1 that the finding is 'wholly inconsistent with another . . . finding.1" Matter of McCabe, supra at 507, quoting Matter of Hachey, 11 Mass. Att'y Discipline Rep. 102, 103 (1995).

The dissenting hearing committee member, the appeal panel, and the board all were apparently troubled by the inconsistency between Ms. Carter's testimony and the receipt seeming to bear her signature for $3,637. However, that the hearing committee chose to credit Ms. Carter's testimony is not inconsistent with its findings as to the receipt. The committee chose not to rely on the receipt due to Ms. Carter's lack of memory of signing it and the absence of evidence of when it was completed or signed. Given the committee's other findings that the respondent purchased money orders and fabricated documents in a deliberate attempt to mislead bar counsel, the committee was warranted in viewing with skepticism the respondent's production of a potentially exonerating receipt. The appeal panel acknowledged as much in its decision, where, despite its doubts about Ms. Carter's testimony,[6] it chose to defer to the credibility determination of the hearing committee. The committee's choice to believe Ms. Carter is not inconsistent with the other findings, and provides substantial evidence that the respondent deprived his client of funds.[7]

3. The appropriate sanction. The recommendations of the board are entitled to substantial deference. See Matter of Foley, 439 Mass. 324, 333 (2003). Each case must be determined on its own facts and circumstances, but one of the primary aims in bar discipline cases "is to ensure that the disposition imposed should not be markedly disparate from the dispositions imposed on attorneys in similar cases." Matter of the Discipline of an Attorney, 392 Mass. 827, 834 (1984), citing Matter of Alter, 389 Mass. 153, 156 (1983).

Disbarment or indefinite suspension is the presumptive sanction where "an attorney intended to deprive

the client of funds, permanently or temporarily, or if the client was deprived of funds (no matter what the attorney intended)." Matter of Schoepfer, 426 Mass. 183, 187 (1997), citing Matter of the Discipline of an Attorney, supra at 836. See Matter of Luongo, 416 Mass. 308, 309 (1993). "I look to the hearing committee's findings concerning the respondent's intent and whether the client was deprived of funds." Matter of Gonick, 15 Mass. Att'y Discipline Rep. 230, 234 (1999). In this case, the hearing committee explicitly found that the respondent engaged in "intentional misuse of funds retained for payment of Ms. Carter's medical bills . . . resulting in actual deprivation." Based on this finding, the case falls squarely within Schoepfer.

The board did not reject the hearing committee's findings, but stated that it "lacked sufficient confidence" in the credibility determination of the hearing committee. While the board "shall review, and may revise, the findings of fact" of the hearing committee, it must pay "due respect to the role of the hearing committee …as the sole judge of the credibility of the testimony presented at the hearing." S.J.C. Rule 4:01, § 8(4). Thus, the board is bound by the legally sufficient findings of the committee, see Matter of McCabe, supra at 507, and the committee's findings "will not be disturbed absent some clear error." Matter of Provanzano, 5 Mass. Att'y Discipline Rep. 300, 304 (1987). Characterizing a finding as not confidence-inspiring does not equate with a determination that the evidence is not sufficient to support that finding. The board may not substitute its judgment on credibility for that of the committee.

Based on the committee's findings, the board should impose a disposition not markedly disparate from the dispositions imposed in similar cases. The board cannot impose a different penalty simply because of its displeasure with the warranted findings of the committee, findings which it did not (and could not) reject.

Disbarment is appropriate where, as here, restitution has not been made. See Matter of Bryan, 411 Mass. 288, 292 (1991) ("absence of restitution is a factor in choosing between disbarment and indefinite suspension"). Cf. Matter of Gonick, supra at 235. The respondent has never returned to Ms. Carter the difference between the original amount of her medical bills and the reduced amount he negotiated. Accordingly, I conclude that the board was in error when, because it doubted a credibility determination of the hearing committee, it departed from the presumptive sanction.

The board's decision not to disbar the respondent is not justified by the respondent's service to his community. See Matter of Finn, 433 Mass. 418, 425 (2001) ("However commendable his service has been, and however much the temporary loss of that service will burden an under-served community, this is not an appropriate mitigating factor"); Matter of Kennedy, 428 Mass. 156, 159 (1998) ("Community service, pro bono representation of clients, and a favorable reputation in the community are commendable, but they cannot alone offset the consequences of serious unethical conduct which otherwise calls for disbarment").

In contrast, there are several factors in aggravation in this case, including the respondent's multiple misrepresentations to bar counsel, see Matter of Saab, 406 Mass. 315, 327 (1989) ("consideration of the cumulative effect of several violations is proper"), the respondent's lack of insight into or appreciation of his misconduct, see Matter of Clooney, 403 Mass. 654, 657 (1988), and the fact that the respondent received an informal admonition in 1993. At that time, he had asked his client to sign over a settlement check to him so he could collect his fee, filed a collection action against the client and her husband (the husband did not owe any fees), and charged a fee in excess of that allowed under a referral agreement. See Matter of Palmer, 423 Mass. 647, 650-651 n.l (1996) (prior disciplinary record a factor in aggravation). Given the hearing committee's warranted findings, based on its belief in Ms. Carter's testimony, the board should have imposed the presumptive sanction of disbarment.

A judgment shall enter disbarring the respondent from the practice of law.

By the Court

Judith A. Cowin
Associate Justice

Entered: May 13, 2005 FOOTNOTES:

[1] The complete Order of the Court is available by contacting the Clerk of the Supreme Judicial Court for Suffolk County.

[2] Specifically, the hearing committee found that the respondent violated Canon 1, DR 1-102(A)(4) (fraud, misrepresentation, deceit, or dishonesty), (5) (conduct interfering with the administration of justice), (6) (conduct adversely reflecting on fitness to practice); Canon 2, DR 2-101(B) (communication shall contain name of lawyer responsible for communication); Canon 6, DR 6-101(A)(3) (neglect of legal matter entrusted to lawyer); Canon 7, DR 7-101(A)(1) (intentional failure to seek lawful objectives of client), (2) (intentional failure to carry out contract of employment), (3) (prejudice or damage to client); Canon 7, DR 7-110(B) (in adversary proceeding, lawyer shall not communicate with a judge without notice to opposition); Canon 9, DR 9-102(A) (client funds to be held separately in trust account); Canon 9, DR 9-102(B) (failure to maintain records of handling of client funds and promptly pay such funds to client as requested or when due); Canon 9, DR-102[C]) (failure to deposit client funds into IOLTA account or separate, interest bearing account), S.J.C. Rule 4:01, § 3, as amended, 430 Mass. 1314 (1999) (failure to cooperate with bar counsel).

[3] While the respondent's counsel requested an alternative imposition of a "public reprimand" at oral argument, it appears clear from the respondent's memorandum that he in fact seeks a private reprimand.

[4] The hearing committee lists the total medical bills as $3,007.69. If the component figures on which this total is based are correct, this appears to overstate the sum of Ms. Carter's medical bills by $2.

[5] Although the hearing committee states that the respondent initially contacted only Judith Treadwell, it describes the respondent as being hired "to protect the Treadwells' home from foreclosure." We presume this refers to Judith Treadwell and her husband, and the hearing committee treats the Treadwells (plural) as clients of the respondent.

[6] The appeal panel also remarked that the amount retained by the respondent according to Ms. Carter's testimony, $1,437, is an odd amount. This number makes sense if one assumes that the respondent was anticipating paying Ms. Carter's medical bills in full, rather than paying the reduced amounts he eventually negotiated. Seven thousand nine hundred fifty dollars in the total award minus $3,005.69 in total medical fees minus $2,650 in legal fees (which the respondent claims includes a $400 payment from his own pocket of Ms. Carter's bills) equals $2,294.31. Ms. Carter did not remember the exact figure, but maintained consistently that the respondent paid her around $2,000 or more.

[7] As the hearing committee's recommendation of disbarment was based only on the respondent's actions in the first matter, the respondent does not contest the hearing committee's conclusions in the second matter.

---

BBO/OBC Privacy Policy. Please direct all questions to webmaster@massbbo.org.
© 2005. Board of Bar Overseers. Office of Bar Counsel. All rights reserved.