## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

### CIVIL ACTION NO. 03-12499 MLW

| | |
|---|---|
| **TERRI L. PECHNER-JAMES** | ) |
| **and  SONIA FERNANDEZ** | ) |
| **Plaintiffs** | ) |
| | ) |
| **VS.** | ) |
| | ) |
| **CITY OF REVERE, THOMAS** | ) |
| **AMBROSINO, MAYOR, CITY** | ) |
| **OF REVERE POLICE DEPT.** | ) |
| **TERRENCE REARDON, CHIEF** | ) |
| **OF POLICE, BERNARD FOSTER** | ) |
| **SALVATORE SANTORO, ROY** | ) |
| **COLANNINO, FREDERICK** | ) |
| **ROLAND, THOMAS DOHERTY** | ) |
| **JOHN NELSON, JAMES RUSSO** | ) |
| **MICHAEL MURPHY and** | ) |
| **STEVEN FORD** | ) |
| **Defendants** | ) |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS MOTION FOR SUMMARY JUDGMENT ON LESS THAN ALL ISSUES PURSUANT TO FED. R. CIV. P. 56(c)

Introduction:

On September 21, 1995, both Plaintiffs, Terri Pechner-James and Sonia Fernandez were

sworn in as Revere Police Officers. **[Exhibit 6]**.  They were among a group of seven (7)

female officers who were hired by the Revere Police Department on the same date. When

they began their employment, the Department did not provide them with a copy of a

sexual harassment policy. The first sexual harassment policy they saw was dated April 1,

1999. **[Exhibit 22]** They both experienced the January 7, 1999 meeting at the Revere

Beachmont station. They both read the report that Captain Chaulk and Captain Roland

prepared at the conclusion of the meeting. They were both at the Department when the two Department cruisers assigned to female officers were vandalized. Both Plaintiffs were traumatized by their experiences at the Revere Police Department.

On July 17, 2002, Chief Reardon filed an Involuntary Accidental disability application on behalf of Terri Pechner-James on the basis that she was suffering from "significant emotional stress" and referenced a diagnosis of "post traumatic stress disorder." In 2003, he filed a similar Involuntary Accidental disability  application for Sonia Fernandez. Terri Pechner-James' first administrative hearing was with the Massachusetts Division of Administrative Law  Appeals (DALA). All parties were represented by counsel. All parties submitted documentary evidence; attorney for Defendant officers submitted affidavits. In a decision dated March 7, 2003, DALA made the following FINDING OF FACTS based upon the evidence submitted at the hearing:

> 1. The Petitioner, Terri Pechner-James, d.o.b 4-29-73 became a police officer in the City of Revere on September 21, 1995.

> 2. During the six (6) years of her employment, the Petitioner complained of prolonged, severe, hostile and abusive work environment and gender discrimination. She also complained of the resultant intimidation, humiliation and stigmatization.

> 3. Officer James stopped working on March 14, 2001, and filed an injury report wherein she stated that her disability first began on that date and had resulted from a "cumulative condition."

> 4. Terri James began treating with Eric J. Keroack, M.D. in March 2001. At that time, he reported that she was unable to carry out her police duties because her

mental condition was a significant detriment to her safety and to the safety of the public at large. He reported that she was experiencing panic attacks including shortness of breath, rapid heartbeat, dizziness, nausea (sometimes vomiting) blurring vision, and trembling hands whenever she was faced with encounters involving the police precinct station or the alleged offenders, i.e. male police officers in the City of Revere. Dr. Keroack stated further that Ms. James' panic attacks also occurred following phone calls to her home from superior officers or from incidental meetings with officers against whom she had lodged complaints of harassment. These encounters occurred both on and off duty.

5. On June 3, 2002, Dr. Keroack, who was still Ms. James treating physician, reported to Revere Police Chief, Terence Reardon, that his patient had a real desire to return to work. The doctor noted further that his patient might be able to return in the next three months.

6. On July 17, 2002, Chief Reardon filed an Involuntary Accidental Disability application on behalf of Terri Pechner-James on the basis that she was suffering from "significant emotional stress" and referenced a diagnosis of "post traumatic stress disorder."

7. The Revere Retirement Board denied Chief Reardon's application on October 23, 2002 without having convened a Regional Medical Panel.

8. By late 2002 and 2003, Dr. Keroack noted that Terri James continued to experience a decline in her mental and physical health whenever the prospect of return to work was discussed.

9. On January 23, 2003, Dr. Keroack reported that she had begun to avoid being out in public, even to buy gasoline or groceries. The doctor noted that the Petitioner had also developed crippling anxiety and worries which have not abated and have led to increased insomnia and fatigue. He concluded at this time that the loss of her ability to perform her duties as a police officer resulted in a significant insult to Officer James identity and self-worth. As a result, the doctor stated, she had become increasingly depressed and withdrawn.

Dr. Keroack went on to report that the compounding effect of multiple stressors has further deteriorated his patient's physical health and that every time she discusses possible return to work, her physical health deteriorated further.

> In my opinion, Officer Pechner-James will most likely never be able to return to any form of duty within the police department....To attempt such a future reassignment involves risks to Officer Pechner-James' life that are unacceptable...But now, Officer Pechner-James is a fragile, injured, physically and mentally ill woman. This condition has most likely occurred as the direct result of failure to address the reported sexualized behaviors within a professional organization of law enforcement personnel (within the Revere Police Department.)

23. On the basis of these Findings Of Fact the Magistrate made a Conclusion of Law that there could be total and permanent disability and the possibility of a causal connection. The Magistrate reversed the Revere Retirement Board and remanded Officer James' application for the purpose of convening a Regional Medical Panel of experts in psychiatry in order to evaluate Chief Reardon's application for Section 7 retirement. **[Exhibit 9]**

On June 13, 2003, at 2:30 p.m. a panel of three doctors from the Public Employee Retirement Retirement Administration Commission (PERAC)held a hearing at 575

Mount Auburn Street, Suite 201, Cambridge, MA. The Plaintiff presented evidence and responded to the examination of the doctors.

After hearing, the Medical Panel made a unanimous recommendation to PERAC. PERAC reviewed the Medical Panel Certificate and on July 28, 2003 issued a decision that included the following finding of facts stated below [**Exhibit 10**]:

The Prognosis section of the report stated that "Ms. James meets the DSM /IVTR criteria for Anxiety Disorder NOS with features of PTSD and features of panic disorder."

The Conclusion stated:

> 1. DISABILITY: It is the unanimous opinion of our Panel that Ms. James is mentally incapable of performing the essential duties of her job as described in the current job description [**Exhibit 16**] on the basis of Anxiety Disorder NOS with features of PTSD and panic disorder. The symptoms would interfere with her capacity to react safely in emergency situations and in her ability to trust her fellow officers.

> 2. PERMANENCE: The incapacity mentioned above is likely to be permanent in that the anxiety symptoms mentioned in the Prognosis section above are likely to persist for an indefinite period of time even with continued treatment.

> 3. CAUSALITY: The said incapacity is such as might be the natural and proximate result of the personal (emotional) injury sustained or hazard undergone on account of which retirement is claimed. There are no other likely causative factors apparent in Ms. James's clinical history to substantiate an alternate etiology.

The Defendants requested from PERAC a Clarification of the Medical Panel's opinion. On March 29, 2004, the Medical panel issued the Clarification requested by the Defendants. The Clarification confirmed the Panel's earlier findings. [**Exhibit 12**]

PERAC approved the Medical Panel's recommendation on July 28, 2004, [**Exhibit 10**]

and informed the Plaintiff, Terri Pechner-James. The finding of facts by PERAC confirms that the personal (emotional) injury was found because the "predominant contributing cause" (M.G.L.c. 32 § 7(1) and M.G.L.c. 152 § 1 (7A)) of that injury is an event or series of events occurring within her employment at the Revere Police Department. This is the same conclusion stated in the finding of facts by DALA. The Defendants did not appeal this decision and did not appeal the DALA decision.

The application that Chief Reardon filed for Sonia Fernandez was heard by the Regional Medical Panel on August 13, 2004.   On August 13, 2004, a three doctor panel of the Regional Medical Panel of PERAC examined her and accepted evidence at a hearing held at the Sancta Maria Nursing Facility, 799 Concord Avenue, Cambridge, MA 02183.

The Medical Panel made a unanimous recommendation to PERAC.[Exhibit 11] PERAC reviewed the Medical Panel Certificate and on September 20, 2004 issued a decision. That decision made the following finding of facts:

> The psychiatric medical panel concluded that the patient met the criteria for a post traumatic stress disorder (PTSD).
>
> 1. The psychiatric medical panel concluded that the patient was mentally incapable of performing the essential duties of her job as a Police Officer [Exhibit 16] as described in the current job description. The panel based this conclusion on the severity of the patient's psychiatric complaints.
>
> 2. The panel concluded that the said incapacity is likely to be permanent, and unlikely to respond to further rehabilitation efforts.
>
> 3. The appeal panel concluded that the said incapacity is such as might be the natural and proximate result of the personal injury sustained or hazard undergone on account of which retirement is claimed. The panel based this conclusion on the specific related "gruesome" events that the patients experienced.

This decision, too, was based upon the finding of a personal (emotional) injury as defined by M.G.L.c. 32 § 7 (1) and M.G.L.c. 152 § 1 (7A). Under the statute, such an injury is found only when the "predominant contributing cause" is "an event or series of events occurring within,' in this case, the employment of Sonia Fernandez at the Revere Police Department. The Defendants did not appeal this decision.

The Plaintiffs filed a complaint in the Suffolk Superior Court on the grounds that the hostile work environment that had disabled them was a violation of M.G.L.c. 151B § 4 and 42 U.S.C. § 2000(e)(2). The Plaintiff, Terri Pechner-James, attached the DALA and PERAC decisions [Exhibit 9 & 10] to the complaint filed in the Suffolk Superior Court. The Plaintiff, Sonia Fernandez could not attach her PERAC decision because PERAC issued its decision on September 20, 2004.    The Defendants moved that case to the federal district court on December 11, 2003. [Exhibit 14].

## Argument: Res Judicata

The Plaintiffs motion seeks to apply res judicata in a federal court to issues of disability, permanence, causality and loss of employment, previously adjudicated in Massachusetts state administrative proceedings and for  summary judgment, interlocutory in character, on the issue of the municipal liability  of the policymakers of the City of Revere, although there is a genuine issue as to the amount of damages. Fed. R. Civ.P. 56(c).

Fed. R. Civ. P. 56(c) provides that the judgment sought shall be rendered forthwith if the pleadings.... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. It also  provides that a summary

judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

The core concept is that the district court may enter summary judgment when the motion papers, affidavits, and other evidence submitted to the court show that no genuine issue exists as to any material fact, and that the moving party is entitled to judgment as a matter of law.

A genuine issue exists where the evidence before the court is of such a nature that a reasonable jury could return a verdict in favor of the non-moving party. See Anderson v Liberty Lobby, Inc. 477 U.S. 242, 254, 106 S. Ct. 2505, 2513, 91 L.Ed. 2d 202 (1986). A fact is material if it might affect the outcome of the case. Hoffman-Dombrowski v Arlington Int'l Racecourse, Inc. 254 F.3d 644, 650(2001).

Summary judgment is particularly appropriate in cases where the remaining disputes are primarily legal, rather than factual in nature. Koehn v Indian Hills Corp. 371 F. 3d 394, 396 (2004).

The motion papers, affidavits, and other evidence submitted to the court show that Massachusetts administrative agencies have made final and binding adjudications on the issues of the plaintiffs disability, permanence, causality and loss of employment. The principles of stare decisis and res judicata exist on these issues, even though the Defendants have moved this case to the federal district court.[Exhibit 14]. There is no genuine issue; the issues identified have already been adjudicated. The non-moving party cannot expect a verdict in its favor on these issues. See Anderson v Liberty Lobby, Inc.

These issues cannot be tried and therefore cannot affect the outcome of the case. Hoffman-Dombrowski v Arlington Int'l Racecourse, Inc.

The Plaintiffs assert in their complaint that the personal (emotional) injury they suffered, their current disability  and their loss of employment are violations of M.G.L.c. § 151B and 42 U.S.C. § 2000(e)(2). These are legal issues that can be resolved by the rules of summary judgment. Even if all inferences are drawn in the Defendants-nonmoving party's favor, the Plaintiffs are entitled to summary judgment because of prevailing law. Koehn v Indian Hills Cmty Coll. 371 F3d 394, 396 )2004). See also Celotex Corp v Catrett, 477 U.S. 317, 323 (1986).

(1) Prevailing Massachusetts and Federal law support summary judgment for the Plaintiffs.

28 U.S.C. § 1738 provides that " The judicial proceedings of any court of any such state … shall have the same full faith and credit in every court within the United States.. as they have by law or usage in the courts of such State. " This statute requires federal courts to give the same preclusive effect to the state judgments that those judgments would be given in the courts of the State from which the judgment emerged. Kremer v Chemical Construction Corp., 456 U.S. 461 (1982). "The comity and federalism interests embodied in 1738 are not compromised by the application of res judicata and collateral estoppel in Title VII cases… To deprive state judgments of finality… would violate the basic tenets of comity and federalism." Id at 462.

In addition, the definition of "state court judgments" has been broadened by the United States Supreme Court to include decisions of state administrative agencies. Federal

common law generally requires that federal courts accord the decisions of administrative agencies acting in a judicial capacity, "the same preclusive effect to which it would be entitled in State's courts. Univ of Tenn v Elliott, 478 U.S. 788, 799 (1986). Further, the United States Supreme Court has stated that in order for a state agency to qualify as "acting in a judicial capacity" their decisions "need do no more than satisfy the minimum procedural requirement of the Fourteenth Amendment's Due Process clause in order for the full faith and credit guaranteed by the federal law". Kremer at 481 -482.

The Division of Administrative Law Appeals(DALA) and the Public Employee Retirement Administration Commission (PERAC) were created by M.G.L.c. 7 § 4H and M.G.L.c. 7 § 49 respectively. Their procedural requirements outlined in 801 CMR 1.00 et seq. and 840 CMR 10:00 et seq. **[Exhibits 7 & 8]** are quite detailed and "satisfy more than the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause in order for the full faith and credit guaranteed by federal law." Kremer at 481-482. These administrative agencies were acting in a judicial capacity when they adjudicated the Plaintiffs' cases.

It is applicable state law that determines whether res judicata applies. The United States Supreme Court in Kremer citing Allen v McCurry, 449 U.S. at 96 states: " It has long been established that 1783 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken. Congress has specifically required that all federal courts give

preclusive effect to state court judgments whenever the courts of the state from which the judgments emerged would do so.

## (2) The preclusive effect of the decisions of administrative agencies in Massachusetts is well established.

It is a well-established rule in Massachusetts that the decisions of administrative agencies, like DALA, PERAC and the Massachusetts Commission Against Discrimination (MCAD) must be given preclusive effect. That rule bars maintaining a de novo civil action in the Superior Court Department.

M.G.L.c. 7 § 4H created the Division of Administrative Law Appeals (DALA); the regulations that established the adjudicatory structure by which the agency makes its decisions are delineated in 801 CMR 1.00 et seq. **[Exhibit 7].** M. G. L. c. 7 § 49 created the Public Employee Retirement Administration Commission (PERAC); the regulations that established the adjudicatory structure by which the agency makes its decisions are delineated in 840 CMR 10:00 et seq. **[Exhibit 8].** These agencies are "courts of competent jurisdiction" in Massachusetts. The Supreme Judicial Court defined "court of competent jurisdiction" as "a tribunal recognized by law as possessing the right to adjudicate the controversy. Where power or jurisdiction over a subject is delegated to any public officer or tribunal and its exercise is confided to his or their discretion, the facts necessarily established by decisions lawfully made pursuant to that authority are binding and conclusive, except on appeal." Almeida v Travelers Ins. Co. 283 Mass. At 231 (1981).

Both DALA and PERAC are tribunals recognized by their enabling legislation **[Exhibits 7 & 8]** as possessing the right to adjudicate the personal (emotional) injury, the disability, permanence, the causality and the claims of disability retirement made in this case. The power and the jurisdiction over these issues are delegated to the magistrates and hearing officers of these agencies; the adjudicatory rules are delineated in 801 CMR 1:00 and 840 CMR 10:00; the exercise of this power is confided to the discretion of the  magistrates and hearing officers by statute. The facts that they establish, by decisions lawfully made pursuant to their grant of authority, are binding and conclusive. They can be appealed pursuant to M.G.L.c.30A § 14.

### (3) M.G.L.c. 30A § 14 provides judicial review of agency decisions; Massachusetts law does not provide trial de novo or jury trial as a review of agency decisions

Pursuant to the Administrative Procedure Act, judicial review of an agency decision is confined to the administrative record. G.L.c. 30A §§ 14(4), 14(5)**[Exhibit 13].**    A reviewing court may set aside or modify a decision of an administrative agency only if it finds that the plaintiff's substantial rights were prejudiced because the decision of the agency was,

> (a) in violation of constitutional provisions;
> (b) in excess of statutory authority;
> (c) based upon an error of law;
> (d) made upon unlawful procedure;
> (e) unsupported by substantial evidence;
> (f) unwarranted by the facts found by the Court in the records;or
> (g) arbitrary or capricious or an abuse of discretion.

See Ruth Horgan v Contributory Retirement Appeal Board et al, 2001 Mass. Super. LEXIS 304.

The court in Horgan  gave due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it. Evans v Contributory Retirement Appeal Board., 46 Mass. App. Ct. 229, 233, 704 N.E.2d 1199 (1999) and affirmed the decision of the Contributory Retirement Appeal Board (CRAB). The Defendants in this case did not seek judicial review of the administrative decisions of DALA and PERAC.

(4) Failure to seek judicial review pursuant to M.G.L.c. 30A § 14 does not alter preclusive effect; jury trial is not available on previously adjudicated issues under Massachusetts state law.

The Defendants did not seek judicial review of the administrative decisions. The Supreme Judicial Court in Brunson v Wall, 405 Mass. 446, 451 (1989) upheld the preclusive effect of findings by the Massachusetts Commission Against Discrimination (MCAD) in subsequent litigation and explicitly stated that "the fact that the party chose not to seek judicial review of the MCAD decision pursuant to [its relevant statutes] does not change the court's view."

The Defendants had the right to appeal the DALA decision on Terri Pechner-James to the Contributory Retirement Appeal Board (CRAB) and then to the Superior Court Department[Exhibit 17].   The Defendants had the right to appeal the PERAC decision on Terri Pechner-James to the Superior Court Department; the Defendants  had the right to appeal the PERAC decision on Sonia Fernandez to the Superior Court Department. [Exhibit 13].   They filed no appeal of these decisions.   On December 11, 2003, the Defendants removed this case to the federal court. They now seek to establish a new "predominant contributory cause" of the Plaintiffs disabilities. Such a decision would

conflict with the administrative decisions of DALA and PERAC. The Defendants seek to relitigate, by means of a jury trial, the issues of personal (emotional) injury, disability, permanence, causality and loss of employment. This remedy is not available under Massachusetts state law.

The Supreme Judicial Court of Massachusetts, in a set of four (4) cases that were argued on February 3, 2004 and decided on May 6, 2004, categorically rejected jury trial as a form of judicial review for administrative decisions. See Stonehill College v Massachusetts Commission Against Discrimination, 2004 Mass. LEXIS 271. In these cases, the employees filed separate complaints with the MCAD alleging that their employers committed illegal discrimination. The MCAD found in favor of the employees in all four cases. The employers requested a jury trial de novo. The Superior Court of Massachusetts, in and for Suffolk, Bristol, and Middlesex (Massachusetts), denied the employers' request for a jury trial de novo. The employers appealed.    The Supreme Judicial Court denied the employers' request for a jury trial and remanded the cases to the superior court for review to determine if the MCAD's decision was supported by adequate evidence and did not violate the law[**Exhibit 13-M.G.L.c. 30A § 14**]. See also Stonehill v MCAD, Wilfert Brothers Co v MCAD, Keyland Corp v MCAD and MBTA v MCAD, SJC-09112, SJC-09081, SJC-09100, SJC-09002.

**Argument: Municipal Liability**

**(1) The legal structure of the Plan B charter of the City of Revere places the responsibility for the Plaintiffs injuries and loss of employment squarely upon the policymakers, the elected officials of the City.**

Defendant, James Russo held the title of chief of police when the Plaintiffs began their employment at the Revere Police Department. Defendants, Roy Colannino and Frederick Roland served as acting chief of police for the period between the retirement of James Russo and the appointment of Terence Reardon. Robert Haas, held the title of mayor when they began their employment. Thomas Ambrosino succeeded Robert Haas as Mayor of the City of Revere and held the title of Mayor when their employment ended with the City of Revere. Terence Reardon held the title of chief of police when the Plaintiffs employment with the city ended.

It is an undisputed fact that the City of Revere adopted a Plan B form of government **[Exhibit 2-Thomas Ambrosino's Statement of Undisputed Facts.]** It is also an undisputed fact that the Plan B form of government was in effect in September 1995 when the Plaintiffs began their employment and was still in effect on their last day of employment. **[Exhibit 2].**

The City of New Bedford also has a Plan B form of government. That form of government was in effect when the events of Gonsalves v City of New Bedford, 939 F. Supp. 915 ( 1966) occurred. **[Exhibits 1& 3]** The Mayor and the City Council of the City of Revere have the same relationship, to the Plaintiffs in this case, under the Plan B charter that Mayor, John Bullard and the New Bedford City Council had to the Plaintiff in the Gonsalves case.

The Mayor of the City of Revere is an elected official, the Mayor of the City of New Bedford is an elected official. The members of the City Council of the City of Revere are elected officials, the members of the City Council of the City of New Bedford are elected officials. The Chief of Police of both cities are appointed by their respective Mayors and confirmed by their respective City Councils. **[Exhibits 1 & 5]**

Plan B charters provide the following in M.G.L.c. 43 **[Exhibit 1]**

> Section 58: There shall be a mayor, elected by and from the qualified voters of the city, who shall be the chief executive officer of the city.

> Section 59: The legislative powers of the city shall be vested in a city council. One of its members shall be elected by the council annually as its president

The Revised Ordinances of the City of Revere provide the following:

> 2:09.10        Mayor- Powers and duties generally.

> > The Mayor shall have the general powers and perform the duties as set forth in the charter and under the General Laws, or as may be prescribed by the provisions of this revision and other ordinances adopted by the city council.

2:60.30        Chief of Police

> A. The chief of police shall have the general charge and supervision of all officers and patrolmen and other personnel of the police department, shall have the precedence and control of the same whenever engaged in the same service and shall report forthwith to the mayor any violation of duty on the part of any member of the department.

> E. The chief shall comply with and execute the orders of the mayor.

In addition, on October 11, 2001, the Massachusetts Senate and the House of representatives in General Court assembled passed Senate Bill 1886-An Act Providing Requirements for Appointment of the Chief of Police of the City of Revere which exempted the chief of police from chapter 31 of the General Laws (civil service system).

16

**[Exhibit 23 - Affidavit of Walter H. Porr, Jr. and copy of the Massachusetts advance Legislative Service 2001 Mass ALS 102. ]**

This legislation underscores the status of the Chief of Police in the City of Revere. The official who holds this position is an agent of the Mayor. He is required to "comply and execute the orders of the mayor"; he is not protected by or subject to the provisions of the civil service system, he is not elected by the people of the City of Revere, he is accountable directly to the mayor who appointed him and the City council that confirmed him.

Terrence Reardon, the present Chief of Police, like his predecessors, is an appointed official. He was appointed by the present mayor, Thomas Ambrosino and confirmed by the city council of the City of Revere. **[Exhibit 4-Affidavit of Thomas Ambrosino & Letter of Appointment to Terrence Reardon].** Any Chief of Police, like the Defendant, Terrence Reardon or Chief Richard Benoit in <u>Gonsalves</u> has a duty to "report forthwith to the mayor any violation of duty on the part of any member of the department".

The Defendants published a sexual harassment policy dated April 1, 1999.**[Exhibit 22- Sexual Harassment Policy dated April 1, 1999]** The Defendants Sexual Harassment Policy Section 14.6 provides for contacting the Appointing Authority [Mayor/City Council] or designee, under appropriate circumstances.

The document lists the following as examples of sexual harassment:

> I. Displaying sexually suggestive pictures, objects, cartoons or posters. **[Paragraphs 62, 63, 64 of Exhibit 15-Plaintiffs Complaint]**

M. Sexual epithets, jokes, written or oral references to sexual conduct, gossip regarding one's sex life; comments on an individual's body, comments about an individual's sexual activity, deficiencies or prowess. **[Paragraphs 35, 36-47 of Exhibit 15-Plaintiffs Complaint]**

N. Language in another's presence or conduct even if not directed to said individual-once it is known that [s]he objects. **[Paragraphs 52-64 & Paragraphs 70-77 of Exhibit 15-Plaintiffs Complaint.]**

It was the Plaintiffs and a fellow officer, Kathy Fish, not the Chief of Police, who reported the violations of stated policy to the Mayor. The present Chief of Police, did not, upon taking office, change the existing pattern of behavior that injured the Plaintiffs.

**(2) The Supreme Judicial Court's application of strict liability to employers for employees upon whom authority is conferred is consistent with this court's ruling on policymakers Gonsalves.**

The Plaintiff in <u>Gonsalves</u> brought a civil action against the City of New Bedford and ten other parties that included the Mayor, John Bullard, Richard Benoit, the Chief of Police and several city police officers. The Court found that the officers engaged in a cover-up and therefore it was not possible to identify the individual officers who violated the Plaintiff's civil rights.

The Court examined the relationship between the Mayor, the Chief of Police and the City Council of the City of New Bedford and made four findings stated below:

In these circumstances, the court finds that: (1) New Bedford had a formal policy that required the Chief to cause thorough and impartial investigations to be conducted concerning alleged misconduct by employees of the New Bedford Police Department; (2) New Bedford had a formal policy that required the Chief to report to the Mayor, who would decide whether disciplinary action should be taken and if so, whether a hearing was required; (3) the Mayor, as the executive head and general directing authority in control of the police department, had the power to review whether these policies were being implemented and followed, but did not exercise this power during the pertinent period; and (4) the City

council had the power to investigate whether these policies were being properly implemented and followed, but did not do so. Id at 918.

The relationship between the Mayor, the Chief of Police and the City Council of the City of Revere is similar. The four findings in Gonsalves apply with equal force because the Plan B charter of both cities makes the findings applicable. (1) Prior to April 1, 1999, the City of Revere and the Revere Police Department had no formal policy for dealing with sexual harassment of female officers by police officers and supervisors. After April 1, 1999, the City of Revere, had a formal policy that required the Chief to cause a thorough and impartial investigation of sexual harassment complaints. Neither the present chief, nor his predecessors followed or implemented that policy; (2) the City of Revere had a formal policy that required the Chief to report all violations of policy to the Mayor, who would decide whether disciplinary action should be taken and if so, whether a hearing was required; reports of violations of the sexual harassment policy were not reported to the Mayor by the Chief or Acting Chiefs. It was the Plaintiffs and their fellow officer Kathy Fish who reported these violations to the Mayor. Neither the present chief not his predecessors followed or implemented the policy. (3) The Mayor, as the executive head and general directing authority in control of the police department, had the power to review whether these policies were being implemented and followed. Neither this Mayor nor his predecessors exercised this power during the period of the plaintiffs employment. The Defendant, Thomas Ambrosino, Mayor, advised the Plaintiffs to take their complaints to the Massachusetts Commission Against Discrimination. (4) The Revere City Council had the power to investigate whether these policies were being properly implemented and followed but did not do so.

This Court concluded that the Plaintiff's injuries in <u>Gonsalves</u> were caused by the deliberate indifference of the policy makers. It held the policymakers, the Mayor and the City Council of the City of New Bedford liable for the injuries of the Plaintiff. Id at 920. Likewise, the personal (emotional) injuries of the Plaintiffs, Terri Pechner-James, were caused by the deliberate indifference of the policy makers of the City of Revere. . This conclusion is consistent with the decision of the Massachusetts Supreme Judicial Court in College <u>Town, Div. of Interco., Inc. v Massachusetts Commission Against Discrimination,</u> 400 Mass 156, 508 N.E.2d 587 (1987). The Court held that the employer is strictly liable for discrimination committed by those on whom it conferred authority. Id at 165. The Court also held that strict liability is consistent with the legislative intent of M.G.L.c 151B § 4 cited by the Plaintiff's in their complaint. **[Exhibit 15].**

Both the DALA and the PERAC decisions on Terri Pechner-James are based on personal (emotional) injury as defined by M.G.L.c. 32 § 7 (1) and M.G.L.c. 152 § 1 (7A). The finding of facts by PERAC and DALA confirms that her personal (emotional) injury was only found because the "predominant contributing cause" of her injury was an event or series of events occurring within her employment at the Revere Police Department. This personal (emotional) injury by the agents of the policymakers makes them strictly liable for her injuries. Sonia Fernandez, likewise, lost her employment because of Post Traumatic Stress Disorder. This injury was personal (emotional) and was only found because the "predominant contributing cause" was an event or series of events that occurred within her employment at the Revere Police Department. This personal (emotional) injury by the agents of the policymakers makes them strictly liable for the injuries of Sonia Fernandez. <u>See College Town</u>. The policymakers of the City of Revere

conferred authority upon the Chief of Police and the members of the Police Department.[ **Exhibit 5-Revised Ordinances of the City of Revere, Massachusetts]** The policymakers are strictly liable for the injuries that their employees caused the Plaintiffs.

Conclusion:

The policymakers of the City of Revere, the Mayor and the City Council, are strictly liable to the Plaintiffs for their personal (emotional) injury, their disability and consequent loss of employment. The "fellow officers" in whom the Plaintiff, Terri Pechner-James, lost trust were employees upon whom the policymakers of the City of Revere had conferred authority according to its revised ordinances. [**Exhibit 5**]. See College Town and Gonsalves. PERAC's finding is binding because the Medical Panel found that the Plaintiff did not have a "clinical history to substantiate an alternate etiology for the anxiety disorder". PERAC's finding of Post Traumatic Stress Disorder (PTSD) in the case of Sonia Fernandez is, likewise, binding. The predominant contributing cause of her injury is an event or series of events that occurred within her employment at the Revere Police Department. The cause of the event or series of events were the agents upon whom the policymakers had conferred authority, many of whom were her supervisors. College-Town.

 Massachusetts law precludes the Defendants from seeking and obtaining a jury trial on the issues of disability, permanence, causality and loss of employment. The principles of comity and federalism embodied in 28 U.S.C. §1738 recognize the finality of the administrative decisions of DALA and PERAC. The Plaintiffs are entitled to summary

judgment on the issues of disability, permanence, loss of employment and the liability of

the policymakers of the City of Revere.


Respectfully submitted
Terri Pechner-James
Sonia Fernandez
By their attorney

James S. Dilday

James S. Dilday, Esq.
27 School Street, Suite 400
Boston, MA 02108
(617) 227-3470