UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 03-12499 MLW

TERRI L. PECHNER-JAMES )
and SONIA FERNANDEZ )
    Plaintiffs )
     )
VS. )
     )
CITY OF REVERE, THOMAS )
AMBROSINO, MAYOR, CITY )
OF REVERE POLICE DEPT. )
TERRENCE REARDON, CHIEF )
OF POLICE, BERNARD FOSTER )
SALVATORE SANTORO, ROY )
COLANNINO, FREDERICK )
ROLAND, THOMAS DOHERTY )
JOHN NELSON, JAMES RUSSO )
MICHAEL MURPHY and )
STEVEN FORD )
    Defendants )

### PLAINTIFF, TERRI PECHNER-JAMES, SUPPLEMENTATION OF INTERROGATORIES

Pursuant to Federal Rules of Civil Procedure Rules 26 and 33, and Local Rule 26.5, Plaintiff, Terri Pechner-James, hereby responds to the following interrogatories designated by counsel for the Defendant, City of Revere, Thomas Ambrosino, Mayor, City of Revere Police Department, Terrence Reardon, Chief of Police. The Plaintiff is supplementing her responses in an effort to satisfy inquiries from the Defendants. The Plaintiff received inquiries from the Defendants but said inquiries were not objections as defined by Rule 33 and they were not signed by the attorney making them. The Plaintiff hereby supplements her responses as follows: These responses are signed under pains and penalties of perjury and "relate back" to her initial responses to these interrogatories.

31. Identify the "mostly male officers" referred to in paragraph 30 0f your complaint.

A. 31. The Revere Police Department was mostly male at the time of the incident; it is still predominantly male. The sex of the officers who witnessed the incident is secondary to the fact that Lieutenant Foster attacked and demeaned the Plaintiff in front of her



fellow officers. The names of the officers who were changing shifts at the time of the incident can be determined from the duty rosters. These rosters were requested but not provided by the Defendants. The Plaintiff is entitled to these documents.

36. Identify the "male officer who turned on the television" as set forth in paragraph 33 of the complaint.

A. 36.

42. State the basis of the allegation that the incident described in paragraph 35-41 of your complaint "affected members of the Revere Police Department who became aware of the rumor" as set forth in paragraph 42 of the complaint.

A. 42. The sexual innuendo in paragraphs 35-41 was calculated to make the Plaintiff the object of ridicule in the eyes of her fellow workers. The effect of this sexual innuendo became the final straw that disabled the plaintiff and made it impossible for her to continue her employment at the Revere Police Department.

46. State the exact date, time and location, or the closest approximation you have thereof, for each occasion upon which you heard Lieutenant Santoro's remark about the length and size of his penis as set forth in paragraph 43 of the complaint.

A. 46. Lieutenant Santoro made these kind of remarks frequently during the course of work at the Revere Police Department. The Plaintiff did not note the date of the month or the time of the day when he made those remarks.

47. For each incident identified in response to Interrogatory 46, state the substance of Lieutenant Santoro's remark about the length and size of his penis as set forth in paragraph 43 of the complaint.

A. 47. The substance of what Lieutenant Santoro said can be summarized as follows: My dick is 12 inches long and goes 12 inches deep. An anatomical improbability but sexually inappropriate nonetheless. This kind of remark is a violation of the current sexual harassment policy as written.

48. For each incident identified in response to Interrogatory 46, identify all witnesses to Lieutenant Santoro's remark about the length and size of his penis as set forth in paragraph 43 of the complaint.

A. 48. Some members of the Department who witnessed Lieutenant Santoro's remarks were Jerry Goodwin, Officer Malvarosa, Officer Arsenault, and Officer Malatesta. The Department was made aware of this behavior by reports dated December 12, 1998, and January 14, 1999. the policy makers were indifferent to this conduct.

49. Identify the "female officers in the Department" about whom Lieutenant Santoro "made disparaging comments" concerning their bodies as set forth in paragraph 43 of the complaint.

A. 49 Among the female officers in the Department about whom Lieutenant Santoro made disparaging comments were: Patricia Carey, Julie malvarosa, Kathy fish, maria LaVita, Bernadette (Foster) Downing.

50. Identify the "disparaging comments Lieutenant Santoro allegedly made concerning the bodies of the female officers in the Department" as set forth in paragraph 43 of the complaint.

A. 50. He described Patricia Carey as being a fat pig, Kathy Fish he described as ugly and having a face that could stop time; he wondered aloud why anyone would marry her. He described Bernadette (Foster) Downing as having an ass as big as a house; he also described Amy O'Hara as having an ass as big as a house. He referred to Julie Malvarosa as being a dyke. The Plaintiff restates and reiterates in its entirety he initial response to Interrogatory 50.

51. State the basis for your allegation that "on several occasions you and other female officers complained to Lieutenant Santoro about sexually offensive remarks by other male officers as set forth in paragraph 44 of the complaint.

A. 51. Exhibits C & D attached to the Plaintiff's complaint speak for themselves. In addition, female officers complained about Frank Minnara continued use of the facilities that were supposed to be for the use of the female officers, they complained about Sergeant Doherty's comments and his treatment of female officers. The Plaintiff restates and reiterates her initial response to Interrogatory No 51.

52. Identify the "other female officers" to whom you are referring in paragraph 44 of the complaint.

A. 52 The female officers referred to in paragraph 44 of the complaint are: Curcio, Fernandez, Malatesta, Fish, Pechner, and Downing. The Plaintiff restates and reiterates her initial response to Interrogatory 52.

54. State the exact date, time and location or the closest approximation you have thereof, for each occasion upon which you heard "other male officers" make "sexually offensive remarks" as set forth in paragraph 44 of the complaint.

A. 54. This Interrogatory is overly broad, unduly vague and ambiguous. Plaintiff restates her initial response to this Interrogatory.

56. For each incident identified in response to Interrogatory 54, identify all witnesses to the sexually offensive remarks" as set forth in paragraph 44 of the complaint.

A. 56. This Interrogatory is part of a pattern used by the Defendant in which he takes some words and phrases
from the complaint out of their context, then asks for "exact date, time and location" and "witnesses " in the next Interrogatory. This Interrogatory is incomprehensible and cannot be answered in its present form. It failed to identify the "events" for which it seeks witnesses.

58. Identify the person who instructed toy to prepare warrants for the arrest of Christopher Daley as set forth in paragraph 45 of the complaint.

A. 58. The Plaintiff restates and reiterates her initial response to Interrogatory No 58.

60. State the basis of your allegation that "other ranking officers contributed to the climate of sexual innuendo and hostility that permeated the work of the Revere Police Department" as set forth in paragraph 47 of the complaint.

A. 60 Sergeant Doherty contributed by the hostile comments and negative attitude about the professional abilities of female professionals; Sergent Nelson contributed through his use of pornography; Lieutenant Santoro contributed by his lewd comments and the spreading of sexual innuendo about the Plaintiff; Lieutenant Foster contributed by his general hostility toward the Plaintiff and his use of a double standard; Michael Murphy contributed by his implication that the plaintiff should be a secretary not a police officer; Captain Colannino and Lieutenant Ford contributed by depriving the Plaintiff of valuable experience in areas police work, including working the radio.

61. Identify the "other ranking officers" who allegedly "contributed to the climate of sexual innuendo and hostility that permeated the work environment in the Revere Police Department" as set forth in paragraph 47 of the complaint.

A. 61. The other ranking officers are Defendants, Doherty, Nelson, Santoro, Russo, Foster, Murphy, Ford and Colannino. The Mayor is a policy maker of the City of Revere, he was never identified as a ranking officer.

62. Identify the "relevant times" to which you are referring in paragraph 48 of the complaint.

A. 62. The Plaintiff restates and reiterates the initial response to this Interrogatory. Plaintiff supplements her response by stating that relevant times also refer to the periods during which the Defendants identified in defense counsel's <u>Argument,</u> held the designated titles. The exact dates these Defendants held the titles are within the custody, control and records of the City of Revere.

63. State the exact time, date, and location, or the closest approximation you have thereof for you meeting with the mayor as set forth in paragraph 49 of the complaint.

A. 63 The Plaintiff restates her response to Interrogatory 63 in its entirety. A statement of municipality liability is permitted under rule 33 and the Plaintiffs response is an accurate representation of the law.

64. State the exact date, time, and location, or the closest approximation you have thereof, for your meeting with Captain Roland as set forth in paragraph 49 of the complaint.

A. 64. The Plaintiff restates her initial response to Interrogatory No. 63 in its entirety. The chronology of events is responsive to the Defendants request for date, time and location.

68. State the basis of your allegation that the "decision to offer you and Sonia Fernandez leaves of absence without pay constituted disparate treatment " as set forth in paragraph 49 of the complaint.

A. 68. Officers Rizzutti and Burns were both on leave with pay at the time the Plaintiff made her request. The Plaintiff restates her initial response in its entirety.

70. State the basis for your allegation that the "denial of leaves of absence with pay was not an isolated act of disparate treatment" as set forth in paragraph 50 of the complaint.

A. 70. The policy relied upon to deny the plaintiff's request was submitted by the Defendants to the Division of Administrative Appeals during the hearings on Plaintiff's disability hearings. **See Attached Exhibit A.** The Defendants did not state that this policy was in general use but relied upon it to justify the denial of leave to the Plaintiff. The Plaintiff was forced to quit because of the hostility and the sexual innuendo of supervisors. A fact later adjudicated by the Medical Panel of PERAC. Her request for leave with pay and its denial was another official act. This act made her leave the equivalent of a termination. See Pennsylvania State Police v Suders (U.S.2004).

71. State the basis of your allegation that "for many years these superior officers practiced a double standard in their dealings with you and other female officers" as set forth in paragraph 50 of the complaint.

A.71 The plaintiff restates its initial response to Interrogatory 71 and hereby supplements that response. The Defendants lack of a maternity leave policy and the policymakers indifference to that fact has lasted for many years. The Defendants failure to provide toilet facilities exclusively for female officers despite an order from the Commonwealth of Massachusetts has lasted for many years; failure to locker rooms for the exclusively use of female officers has also lasted for many years; the deliberate indifference of the Defendants to the absence of a sexual harassment policy, failure to educate personnel, and failure to enforce the sexual harassment laws of the Commonwealth have all lasted for many years.

72. Identify the "superior officers" to whom you are referring in paragraph 50 of the complaint.

A. 72. The Mayor is a defendant and a policy maker of the City of Revere. The Chief of Police is an agent of the Mayor by city ordinance. All other Defendants were superior to the Plaintiff but subordinate to the position of the Chief of Police. The complaint supports this Plaintiff's claims against defendants City of Revere, Thomas Ambrosino, Mayor, City of Revere Police Department, Terrence Reardon, Chief of Police, Bernard Foster, Salvatore Santoro, Roy Colannino, Frederick Roland, Thomas Doherty, James Russo, Michael Murphy and Steven Ford.

74. Describe in detail each and every act of "disparate treatment" to which you are alluding in paragraph 50 of the complaint.

A. 74 Disparate treatment is the application of a double standard to similarly situated individuals. The Defendants were required by law to comply with the laws of the Commonwealth of Massachusetts and to provide the Plaintiff with a work place that was free of sexual harassment. By failing to comply with the law, the Defendants injured the Plaintiff. The Mayor is a policy maker of the City of Revere. He is responsible for the policies of the City and the actions of the agents upon whom he conferred authority. The present Mayor and his predecessors displayed deliberate indifference to the unequal facilities for female officers, the absence of sexual harassment policies and practices and the institutional double standard that injured the Plaintiff. The Chief of Police is the highest ranking officer of the Revere Police Department. By ordinance, he is an agent of the Mayor. He is nominated by the Mayor and confirmed by the City Council. Mayor Ambrosino and his predecessors displayed deliberate indifference to the unequal facilities, the absence of sexual harassment policies and the institutional double standard about which the Plaintiff complained. The Mayor failed to correct the injury caused by his agents and abdicated his responsibility to the Massachusetts Commission Against Discrimination. Terrence Reardon and his predecessors, in the position of Chief of Police of the Revere Police Department, maintained the unequal facilities, the absence of sexual harassment policies and the institutional double standard that injured the Plaintiff. Lieutenant Foster was particularly hostile to the Plaintiff. His prolonged use of the walking route as a form of punishment, punishing the Plaintiff for incidents that did not occur on his shift at time when he was not the responsible officer, screaming at the plaintiff and humiliating her in the presence of other officers. He and Steven Ford worked together to deprive the Plaintiff of the opportunity to acquire the professional skill of operating the department radio. Roy Colannino was, for a period, responsible for maintaining unequal facilities, the absence of sexual harassment policies that complied with state law and the perpetuation of the double standard that caused injury to the Plaintiff. Salvatore Santoro's public use of sexual innuendo created the basis for the Plaintiff's constructive discharge. Michael Murphy advised the Plaintiff to become a secretary when she requested a day off. James Russo was the Chief of Police when the Plaintiff began her employment at the Revere Police Department. He maintained the unequal facilities, the absence of sexual harassment policies and training, and by official position and personal behavior practiced the double standard that injured the Plaintiff.

Sergeant Doherty's comments, especially his remarks during the world series contributed to the hostile environment. He stated directly to the Plaintiff that she could not use the same language as her male counterparts. Frederick Roland was, for a period, responsible for the unequal facilities, the absence of sexual harassment policy and training and the institutional double standard practiced by the Revere Police Department.

75. For each act of "disparate treatment" identified in response to Interrogatory 74, state the exact date, time and location for each act or the closest approximation you have thereof.

A. 75. Interrogatory 74 identifies both institutional policy and individual behavior that occurred in reliance upon a policy of deliberate indifference of the policy makers. Both factors affected the Plaintiff and they existed during the period of the Plaintiff's employment and her employment related contact with the City of Revere. The location of the Plaintiff's experiences was at the Revere Police Department or in connection with a Department related activity.

77. For each act of "disparate treatment" identified in response to No. 74, identify each and every witness to each and every act so identified.

A. 77. The Plaintiffs, female police officers, male officers, supervisors, the Chief of Police, the Mayor of the City of Revere, the Revere City Council all witnessed the lack of a maternity leave policy, the unequal facilities, the absence of a sexual harassment policy and training, the violation of the order from the Commonwealth of Massachusetts to provide facilities for the exclusive use of female officers. The Plaintiff restates and incorporates her initial response into this supplemental response to Interrogatory 77.

79. Identify the "superior officers" to whom you are referring in paragraph 51 of the complaint.

A. 79. The Mayor is a policy maker of the City of Revere. The Plaintiff has not identified the Mayor as a superior officer of the Police Department. The superior officers are members of the Police Department named in the complaint. The policy makers are strictly liable for the actions of these supervisors upon whom they have conferred authority. CollegeTown, Div. of Interco.

81. Identify the "male officers" to whom you are referring in the third sentence of paragraph 51 of the complaint.

A.81. A correct paraphrase of paragraph 51 would state that the police officer who occupied the position of Chief of Police gave tacit permission to supervisory personnel, named as Defendants in this case, to continue to engage in behavior that created a hostile and discriminating work environment for the Plaintiff. Tacit permission is given when policy makers and their agents fail to act to correct violations of the law and instead abdicate their responsibility to the Massachusetts Commission Against Discrimination.

83. Identify the "other ranking officers" who "practiced the double standard toward females that helped to create a hostile work environment that you experienced" as set forth in paragraph 52 of the complaint.

A. 83. Neither the Plaintiff's complaint nor the Plaintiff's initial response to Interrogatory 83 identify the Mayor as a "ranking officer". The Mayor is a policy maker of the City of Revere. Contrary to assertions by counsel for the defendants, the Plaintiff's complaint does support a claim for each and every ranking officer named in the case. Counsel for the defendants misstatement is based upon a misunderstanding of the principles of municipal liability. . The Defendants were required by law to comply with the laws of the Commonwealth of Massachusetts and to provide the Plaintiff with a work place that was free of sexual harassment. By failing to comply with the law, the Defendants injured the Plaintiff. The Mayor is a policy maker of the City of Revere. He is responsible for the policies of the City and the actions of the agents upon whom he conferred authority. The present Mayor and his predecessors displayed deliberate indifference to the unequal facilities for female officers, the absence of sexual harassment policies and practices and the institutional double standard that injured the Plaintiff. The Chief of Police is the highest ranking officer of the Revere Police Department. By ordinance, he is an agent of the Mayor. He is nominated by the Mayor and confirmed by the City Council. Mayor Ambrosino and his predecessors displayed deliberate indifference to the unequal facilities, the absence of sexual harassment policies and the institutional double standard about which the Plaintiff complained. The Mayor failed to correct the injury caused by his agents and abdicated his responsibility to the Massachusetts Commission Against Discrimination. Terrence Reardon and his predecessors, in the position of Chief of Police of the Revere Police Department, maintained the unequal facilities, the absence of sexual harassment policies and the institutional double standard that injured the Plaintiff. Lieutenant Foster was particularly hostile to the Plaintiff. His prolonged use of the walking route as a form of punishment, punishing the Plaintiff for incidents that did not occur on his shift at time when he was not the responsible officer, screaming at the plaintiff and humiliating her in the presence of other officers. He and Steven Ford worked together to deprive the Plaintiff of the opportunity to acquire the professional skill of operating the department radio. Roy Colannino was, for a period, responsible for maintaining unequal facilities, the absence of sexual harassment policies that complied with state law and the perpetuation of the double standard that caused injury to the Plaintiff. Salvatore Santoro's public use of sexual innuendo created the basis for the Plaintiff's constructive discharge. Michael Murphy advised the Plaintiff to become a secretary when she requested a day off. James Russo was the Chief of Police when the Plaintiff began her employment at the Revere Police Department. He maintained the unequal facilities, the absence of sexual harassment policies and training, and by official position and personal behavior practiced the double standard that injured the Plaintiff. Sergeant Doherty's comments, especially his remarks during the world series contributed to the hostile environment. He stated directly to the Plaintiff that she could not use the same language as her male counterparts. Frederick Roland was, for a period, responsible for the unequal facilities, the absence of sexual harassment policy and training and the institutional double standard practiced by the Revere Police Department.

88. Identify the "female officers" who Sergeant Doherty "deliberately embarrassed, screamed at, made remarks about their abilities and conduct and did not treat in the same manner he treated male officers" as set forth in paragraph 52 of the complaint.

A. 88. The Plaintiff restates the initial response to Interrogatory 88. She further supplements her response by stating that she is also a female officer who sergeant Doherty confronted about the use of language he considered profane.

89. Identify the "one officer" to whom you are referring in the second sentence of paragraph 53 of the complaint.

A. 89. Officer Malatesta is the one officer referred to in the second sentence of paragraph 53 of the complaint.

93. State the basis for your implied allegation that Sergeant Doherty threatened female officers with dismissal as set forth in paragrtaph 54 of the complaint.

A.93. Sergeant Doherty threatened to "send home" female officers for using profanity. Whatever he intended by "send home", the double standard is clear. He did not threaten to "send home" male officers who used the same language.

94. Identify each and every female officer whom you contend Sergeant Doherty threatened with dismissal as impliedly set forth in paragraph 54 of the complaint.

A.94. Sergeant Doherty stated his policy to the Plaintiff, Terri Pechner-James, Officer Lyn Curcio, and Lyn Malatesta. He told them that if they used language he considered profane he would send them home. This statement is clear.

95. State the exact date, time and location or the closest approximation you have thereof, for each incident when Sergeant Doherty threatened a female officer with dismissal as impliedly set forth in paragraph 54 of the complaint.

A.95. Sergeant Doherty made these statements to female police officers at the Revere Police Department. He made these remarks to Curcio and Malatesta when he conducted a line-up of female police officers who were reported to him as having used profanity. He made similar remarks to the Plaintiff during her work at the Revere Police Department.

101. If you contend that Sergeant Doherty expressed a negative opinion of your professional ability as implied in paragraph 61 of the complaint, state the basis of your contention.

A. 101 Sergeant Doherty expressed a generally negative opinion of female professionals. He comments about the female sports commentator during the world series implied very strongly that female are unqualified for professional jobs and they are unable to obtain those jobs on their own merit. His expressed opinion was that they needed to give sexual favors or be a relative of someone (nepotism) in order to get a professional job. This

negative opinion of female professional includes female police officers including the Plaintiff.

102. State the date of the alleged incident involving Sergeant Nelson as set forth in paragraph 63 of the complaint.

A. 102. The incident involving Sergeant Nelson occurred on September 19, 1998 between 19:00 – 21:00 hours. Dante Spadoni, Joseph Spinnetto, and Paul Hamel also witnessed the Sergeant's use of pornography.

104. Identify the "male subordinates" who treated female officers in a demeaning and humiliating manner" as set forth in paragraph 65 of the complaint.

A.104. The subordinates of the Chief of Police are officers with the titles of Captain, Lieutenant, and Sergeant. Personnel in these positions were supervisors of the Plaintiff.

106. Identify each act by a male subordinate which you contend constituted treatment "in a demeaning and humiliating manner" as set forth in paragraph 65 of the complaint.

A. 106. Paragraph 65 describes individual acts of James Russo while he was Chief of Police. By virtue of his position as Chief, he influenced subordinate officers. Chief of Police gave tacit permission to supervisory personnel, named as Defendants in this case, to continue to engage in behavior that created a hostile and discriminating work environment for the Plaintiff. Tacit permission is given when policy makers, and their agents, fail to act to correct violations of the law, fail to provide redress and instead abdicate their responsibility to the Massachusetts Commission Against Discrimination.

107. Identify each comment by Chief russo which you contend "stigmatized female officers, including yourself" as set forth in paragrtaph 65 of the complaint.

A. 107. Chief Russo required female officers to have lunch with him. The females were required to pick up Chief Russo, chauffer him to lunch, be his luncheon companion, and then chauffer him back to work. On February 23, 1997, at the Citizens forum, Chief Russo remarked "These are not the good old days when we didn't have ti hire females." On another occasion, he commented to a group of four (4) female officers: "What is this a WIC meeting."

111. Identify the "four (4) female officers" to whom you are referring in paragraph 69 of the complaint.

A.111. The four (4) female officers referred to in paragrtaph 69 of the complaint are Mangino, Fish, Curcio and Downing.

118. If you contend that the vandalism of the assigned automobile as set forth in paragraph 73 of the complaint was caused by any employee of the City of Revere Police department, state the basis of this contention.

A. 118. Plaintiff contends that officers of the Revere Police Department caused the vandalism. The attack occurred during a period of intense hostility and close to the meeting date when female officers expressed to the Captains who conducted the meetings the hostile conduct they were experiencing.

119. If your answer to Interrogatory 118 is an affirmative of the contention, identify the employee(s) of the city of Revere Police Department who causdd or contributed to the vandalism asset forth in paragraph 73 of the complaint.

A. 119. The Plaintiff is also entitled to know the names and the identities of the officers who caused the vandalism. The Revere Police Department failed to investigate the serious and intentional damage done to its property. The names and identies of the officers who caused the vandalism remain unknown. The Department's failure to investigate or to release the result of any investigation constitutes a cover-up. <u>Gonsalves v City of New Bedford.</u>

120. If you contend that the vandalism of the assigned automobiles as set forth in paragraph 73 of the complaint was caused by any employee of the City of Revere other than an employee of the Police Department, state the basis of your contention.

A. 120. The Revere Police Department had a duty to investigate serious damage to its property. Its failure to investigate or to release the results of its investigation constitutes a cover-up. As a result of the Defendants failure, the Plaintiff has been unable to determine whether it was an employee of the City of Revere, other than the Police Department caused the vandalism and makes no such contention.

121. No change.

A. 121. No change.

141. If you witnessed the incident described in paragraph 83 of the complaint, describe in detail the facts and circumstances surrounding this incident and identify the persons who were a party thereto.

A. 141. Plaintiff, Terri Pechner-James did not witness the incidents described in paragraph 83.

151. Is the meeting with the Mayor alleged in paragraph 105 of the complaint the same meeting as the one alleged in paragraph 49 of the complaint.

A. 151. Both Plaintiffs met the Mayor on separate occasions. Sonia Fernandez met with the mayor once. Terri Pechner-James met with the Mayor on two separate occasions.

163. Identify the "male employees" to whom you are referring in paragraph 116 of the complaint.

A. 163. Joe Rizzutti, Officer Burns, and Officer McRae.

165. Identify "the Defendants" who have "intimidated, threatened, and coerced" you as set forth in paragraph 122 of the complaint.

A. 165. The policy makers of the City of Revere, Mayor Thomas Ambrosino and the City Council, their agents, Terrence Reardon, Chief of Police and his predecessors, James Russo, former Chief of Police, Roy Colannino, acting chief, Frederick Roland, acting chief Bernard Foster and Steven Ford, Michael Murphy, and Thomas Doherty, John Nelson and Salvatore Santoro.

Signed under pains and penalties of perjury

/s/ Terri Pechner-James
Terri Pechner-James