UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 03-12499 MLW

TERRI L. PECHNER-JAMES )
and SONIA FERNANDEZ )
    Plaintiffs )
)
VS. )
)
CITY OF REVERE, THOMAS )
AMBROSINO, MAYOR, CITY )
OF REVERE POLICE DEPT. )
TERRENCE REARDON, CHIEF )
OF POLICE, BERNARD FOSTER)
SALVATORE SANTORO, ROY )
COLANNINO, FREDERICK )
ROLAND, THOMAS DOHERTY )
JOHN NELSON, JAMES RUSSO )
MICHAEL MURPHY and )
STEVEN FORD )
    Defendants )

### PLAINTIFF, TERRI PECHNER-JAMES, ADDITIONAL SUPPLEMENTATION OF INTERROGATORIES

Pursuant to Federal Rules of Civil Procedure Rules 26 and 33, and Local Rule 26.5, Plaintiff, Terri Pechner-James, hereby responds to the following interrogatories designated by counsel for the Defendant, City of Revere, Thomas Ambrosino, Mayor, City of Revere Police Department, Terrence Reardon, Chief of Police. The Plaintiff is providing additional supplements to her responses in an effort to satisfy inquiries from the Defendants and comply with the order of the court. The Plaintiff received requests for supplements from the Defendants but said requests contained no case caption and were not signed by the attorney or the party making them as required by Rule 26. The Plaintiff hereby provides the additional supplements as follows: These responses are signed under pains and penalties of perjury and 'relate back' to her initial responses to these interrogatories.

31. Identify the "mostly male officers" referred to in paragraph 30 of your complaint.



A. 31. The Plaintiff observed that the officers present were male. She did not make a note of the name of each and every single officer present. The sex of the officers who witnessed the incident is secondary to the fact that Lieutenant Foster attacked and demeaned the Plaintiff in front of her fellow officers. The names of the officers who were changing shifts at the time of the incident can be determined from the duty rosters. These rosters were requested but not provided by the Defendants. The Plaintiff is entitled to these documents.

42. State the basis of the allegation that the incident described in paragraph 35-41 of your complaint "affected members of the Revere Police Department who became aware of the rumor" as set forth in paragraph 42 of the complaint.

A. 42. The sexual innuendo in paragraphs 35-41 was calculated to make the Plaintiff the object of ridicule in the eyes of her fellow workers and to cause her fellow workers to hold her in low esteem.

46. State the exact date, time and location, or the closest approximation you have thereof, for each occasion upon which you heard Lieutenant Santoro's remark about the length and size of his penis as set forth in paragraph 43 of the complaint.

A. 46. Lieutenant Santoro made this kind of remark frequently during the course of work at the Revere Police Department. The location is the Revere Police Department, the Plaintiff did not note the date of the month or the time of the day when he made those remarks.

47. For each incident identified in response to Interrogatory 46, state the substance of Lieutenant Santoro's remark about the length and size of his penis as set forth in paragraph 43 of the complaint.

A. 47. The substance of what Lieutenant Santoro said can be summarized as follows: My dick is 12 inches long and goes 12 inches deep. An anatomical improbability but sexually offensive nonetheless.

54. State the exact date, time and location or the closest approximation you have thereof, for each occasion upon which you heard "other male officers" make "sexually offensive remarks" as set forth in paragraph 44 of the complaint.

A. 54. This Plaintiff cannot recall the exact date, time and location upon which she heard other male officers make sexually offensive remarks.

56. For each incident identified in response to Interrogatory 54, identify all witnesses to the sexually offensive remarks" as set forth in paragraph 44 of the complaint.

A. 56. Interrogatory 54 does not identify any sexually offensive remarks.

58. Identify the person who instructed you to prepare warrants for the arrest of Christopher Daley as set forth in paragraph 45 of the complaint.

A. 58. Christopher Daley was arrested on outstanding warrants by Detective Brian Goodwin on March 13, 2001. The Plaintiff has no recollection of such instruction.

62. Identify the "relevant times" to which you are referring in paragraph 48 of the complaint.

A. 62. The relevant time is the time period during which Roy Colannino held the title of Captain, and then Acting Chief of Police. As Acting Chief of Police he would by ordinance, be an agent of the policymakers. The relevant time for Frederick Roland would be the period during which he held the title of Captain in the Revere Police and the period when he was Acting Chief of the Department. As Acting Chief he would also be an agent of the policy makers during that period. These Defendants held these positions during the period of the Plaintiff's employment. The Plaintiff does not have the precise date of each appointment or period of service but the court can take judicial notice that the exact dates these Defendants held the titles are within the custody, control and records of the Defendant, City of Revere.

63. State the exact time, date, and location, or the closest approximation you have thereof for you meeting with the mayor as set forth in paragraph 49 of the complaint.

A. 63 On April 17, 2001, at 2:00 p.m., the Plaintiff had a meeting with Mayor Ambrosino. She discussed her complaint to the Massachusetts Commission Against Discrimination. She informed him of the instances of sexual harassment that she had experienced. The Mayor explained that he had no faith in the administration of the police department. He advised the Plaintiff to let the Massachusetts Commission Against Discrimination handle the case.

64. State the exact date, time, and location, or the closest approximation you have thereof, for your meeting with Captain Roland as set forth in paragraph 49 of the complaint.

A. 64. On April 26, 2001, at 12:30 pm Plaintiff entered the rear of the police station where Captain Roland was just entering his vehicle with the chiefs secretary, Connie Anderson. Ms. Anderson stated: "Oh Terri, I have the letter that the chief wanted you to have, you need to sign it." The Plaintiff and Ms Anderson went into the station and retrieved the letter. After retrieving the letter, the Plaintiff also asked Captain Roland if she could speak with him. The Plaintiff asked Captain Roland for a copy of the letter that Christopher Daley wrote in regard to the events of March 13, 2001. Captain Roland replied that he knew nothing about any investigation or letter, he told her that she would have to speak with Captain Gerald Chaulk. The Plaintiff asked again for the letter. Captain Roland replied: No. Walked away. On October 11, 2001, the Plaintiff sent a letter to Captain Roland requesting an appointment to be examined by the City of Revere's doctor. She also requested information on her sexual harassment complaint. On

October 24, 2001, Captain Roland sent a letter in response to her request. On September 5, 2001, the Plaintiff again requested from Captain Roland any and all information that pertained of the investigation of her sexual harassment complaint based on the events of March 13, 2001. Captain Roland was acting chief of police at the time. She received no response. The way in which the Revere Police Department handled the Plaintiff's complaint is the direct consequence of the deliberate indifference and the failure of the policymakers of the City of Revere to establish policies and procedures for the proper investigation of sexual harassment complaints.

70. State the basis for your allegation that the "denial of leaves of absence with pay was not an isolated act of disparate treatment" as set forth in paragraph 50 of the complaint.

A. 70. The policy relied upon to deny the plaintiff's request was submitted by the Defendants to the Division of Administrative Appeals during the hearings on Plaintiff's disability hearings. **See Attached Exhibit A.** The Defendants did not state that this policy was in general use but relied upon it to justify the denial of leave to the Plaintiff. Lieutenant Foster using walking routes as punishment, Lieutenant Foster denying radio usage as punishment, Lieutenant Foster placing in Plaintiff's file a negative report of an incident that did not occur on his shift and of which he was not the officer in charge. These are example of practices and procedures that were created and applied in a disparate manner.

75. For each act of "disparate treatment" identified in response to Interrogatory 74, state the exact date, time and location for each act or the closest approximation you have thereof.

A. 75. The location of the Plaintiff's experiences was at the Revere Police Department. The Plaintiff has no recollection of the exact date and time of each act or the closest approximation thereof. Some acts are practices that are still on-going.

79. Identify the "superior officers" to whom you are referring in paragraph 51 of the complaint.

A. 79. The superior officers are named as Defendants in the complaint and who were superior in rank to the Plaintiff, Terrence Reardon, Bernard Foster, Salvatore Santoro, Frederick Roland, Thomas Doherty, John Nelson, James Russo, Michael Murphy and Steven Ford. The Mayor is a policy maker of the City of Revere and is not named as a superior officer.

81. Identify the "male officers" to whom you are referring in the third sentence of paragraph 51 of the complaint.

A.81. A correct paraphrase of paragraph 51 would state that the police officer who occupied the position of Chief of Police gave tacit permission to supervisory personnel, named as Defendants in this case, to continue to engage in behavior that created a hostile and discriminating work environment for the Plaintiff. Tacit permission is given when

4

policy makers and their agents fail to act to correct violations of the law and instead abdicate their responsibility to the Massachusetts Commission Against Discrimination.

88. Identify the "female officers" who Sergeant Doherty "deliberately embarrassed, screamed at, made remarks about their abilities and conduct and did not treat in the same manner he treated male officers" as set forth in paragraph 52 of the complaint.

A. 88. The officers set forth in paragraph 52 are Curcio, Fish, Malatesta and the Plaintiff, Terri Pechner-James.

95. State the exact date, time and location or the closest approximation you have thereof, for each incident when Sergeant Doherty threatened a female officer with dismissal as impliedly set forth in paragraph 54 of the complaint.

A.95. Sergeant Doherty made these statements to female police officers at the at the location of the Revere Police Department. He made these remarks to Curcio, Fish and Malatesta when he conducted a line-up of female police officers who were reported to him as having used profanity. The Plaintiff does not recall the exact date or time of day. He made similar remarks to the Plaintiff during her work at the Revere Police Department.

101. If you contend that Sergeant Doherty expressed a negative opinion of your professional ability as implied in paragraph 61 of the complaint, state the basis of your contention.

A. 101 Sergeant Doherty's comments about the female sports commentator during the world series implied very strongly that females, including the Plaintiff, are unqualified for professional jobs and they are unable to obtain those jobs on their own merit. His expressed the opinion was that they needed to give sexual favors or be a relative of someone (nepotism) in order to get a professional job. This negative opinion of female professional includes female police officers including the Plaintiff.

104. Identify the "male subordinates" who treated female officers in a demeaning and humiliating manner" as set forth in paragraph 65 of the complaint.

A.104. The male subordinates of the Chief of Police named in the complaint are Bernard Foster, Salvatore Santoro, Frederick Roland, Thomas Doherty, John Nelson, James Russo, Michael Murphy and Steven Ford.

106. Identify each act by a male subordinate which you contend constituted treatment "in a demeaning and humiliating manner" as set forth in paragraph 65 of the complaint.

A. 106. Paragraph 65 describes individual acts of James Russo while he was Chief of Police. By virtue of his position as Chief, he influenced subordinate officers. Chief of Police gave tacit permission to supervisory personnel, named as Defendants in this case, to continue to engage in behavior that created a hostile and discriminating work

5

environment for the Plaintiff. Tacit permission is given when policy makers, and their agents, fail to act to correct violations of the law, fail to provide redress and instead abdicate their responsibility to the Massachusetts Commission Against Discrimination.

119. If your answer to Interrogatory 118 is an affirmative of the contention, identify the employee(s) of the city of Revere Police Department who caused or contributed to the vandalism asset forth in paragraph 73 of the complaint.

A. 119. The Plaintiff is also entitled to know the names and the identities of the officers who caused the vandalism. The Revere Police Department failed to investigate the serious and intentional damage done to its property. The names and identities of the officers who caused the vandalism are unknown to the Plaintiff.

120. If you contend that the vandalism of the assigned automobiles as set forth in paragraph 73 of the complaint was caused by any employee of the City of Revere other than an employee of the Police Department, state the basis of your contention.

A. 120. The Plaintiff does not contend that the vandalism of the assigned automobiles was caused by an employee of the City of Revere other than an employee of the Police Department.

121. If your answer to Interrogatory 120 is an affirmative of the contention, identify the employee(s) of the City of Revere who caused or contributed to the vandalism set forth in paragraph 73 of your complaint.

A. 121. The answer to 120 is not affirmative.

151. Is the meeting with the Mayor alleged in paragraph 105 of the complaint the same meeting as the one alleged in paragraph 49 of the complaint.

A. 151. Terri Pechner-James met with the Mayor on two separate occasions.

Signed under pains and penalties of perjury

/s/ Terri Pechner-James
Terri Pechner-James