UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 03-12499 MLW

TERRI L. PECHNER-JAMES )
and SONIA FERNANDEZ )
    Plaintiffs )
)
VS. )
)
CITY OF REVERE, THOMAS )
AMBROSINO, MAYOR, CITY )
OF REVERE POLICE DEPT. )
TERRENCE REARDON, CHIEF )
OF POLICE, BERNARD FOSTER )
SALVATORE SANTORO, ROY )
COLANNINO, FREDERICK )
ROLAND, THOMAS DOHERTY )
JOHN NELSON, JAMES RUSSO )
MICHAEL MURPHY and )
STEVEN FORD )
    Defendants )

## PLAINTIFF, SONIA FERNANDEZ, SUPPLEMENTATION OF INTERROGATORIES

Pursuant to Federal Rules of Civil Procedure Rules 26 and 33, and Local Rule 26.5, Plaintiff, Sonia Fernandez, hereby supplements the following interrogatories designated by counsel for the Defendant, City of Revere, Thomas Ambrosino, Mayor, City of Revere Police Department, Terrence Reardon, Chief of Police. The Plaintiff is supplementing her responses in an effort to satisfy inquiries from the Defendants. The Plaintiff received inquiries from the Defendants but said inquiries were not objections as defined by Rule 33 and they were not signed by the attorney making them. The Plaintiff hereby supplements her responses as follows: These responses are signed under pains and penalties of perjury and "relate back" to her initial responses to these interrogatories.

4. Reference is made to the last paragraph of page 11 of the complaint which states: Facts: Sonia Fernandez. The facts that give rise to the claim of Sonia Fernandez incorporate the paragraphs stated above and the events described in detail below: Identify each and every event alleged in paragraphs 17-79 of the complaint which you witnessed personally.

1

Document Produced by deskPDF Unregistered :: http://www.docudesk.com


PLAINTIFF'S EXHIBIT 5

A.4. Paragraphs 17-79 mainly detail the experiences of Terri Pechner-James. Paragraph 49 addresses the meeting of the Mayor and Sonia Fernandez and her claim of constructive discharge. Paragraph 50 addresses the double standard that the Plaintiffs, including Sonia Fernandez experienced for many years. Paragraph 51 addresses the formidable barriers to full participation created by the hostile environment. The Plaintiffs, including Sonia Fernandez, were harmed by its environment. Paragraph 73, 75, 77 address the "underwear incident" and the cruiser vandalism. Paragraph 73 includes Sonia Fernandez among the female officers who feared for her safety after the vandalism of the cruiser by fellow officers. Paragraph 74, Sonia Fernandez saw the women's leopard underwear on the bulletin board for many days. Paragraph 75 includes Sonia Fernandez among the females who experienced the Defendants deliberate indifference to the Department culture of hostility, humiliation and degradation. The phrase "paragraphs stated above" refers to paragraphs 1-15 and such paragraphs in 17-79 that are relevant to Sonia Fernandez.

5. Reference is made to the last paragraph of page 11 of the complaint which states: Facts: Sonia Fernandez. The facts that give rise to the claim of Sonia Fernandez incorporate the paragraphs stated above and the events described in detail below: Identify each and every event alleged in paragraph 17-79 of the complaint which you did not witness personally, but of which you were informed by a third party.

A.5. The phrase "paragraphs stated above" refers to paragraphs 1-15 and such paragraphs in 17-79 that are relevant to Sonia Fernandez. The phrase was not intended to and does not indicate any facts about Terri Pechner-James except that they are co-plaintiffs. Objection: Information by a third party to Sonia Fernandez about Terri Pechner-James constitutes inadmissible hearsay and is beyond the proper scope of discovery.

6. Reference is made to the last paragraph of page 11 of the complaint which states: Facts: Sonia Fernandez. The facts that give rise to the claim of Sonia Fernandez incorporate the paragraphs stated above and th events described in detail below: For each event alleged in paragraph 17-79 of the complaint which you did not witness personally, but of which you were informed by a third party, identify the third party who so informed you and the state the exact date, or the closest approximation you have thereof, upon which you were so informed.

A. 6. The phrase "paragraph stated above" refers to paragraphs 1-15 and such paragraphs 17-79 that are relevant to Sonia Fernandez. The phrase was not intended and does not indicate any facts about Terri Pechner-James except that they are coplaintiffs. Objection: Information by a third party to Sonia Fernandez about Terri Pechner-James is inadmissible hearsay and beyond the proper scope of discovery.

12. Identify the Revere Police Officer who looked at you and asked you if you were working as an undercover hooker that night as set forth in paragraph 83 of the complaint.

A. 12. Plaintiff heard and remembers the comment; she does not remember the name of the officer who made the comment.

Document Produced by deskPDF Unregistered :: http://www.docudesk.com

14. Identify the other officers in the scene who commented on your diminished status as set forth in paragraph 83 of the complaint.

A. 14. Lt Wallace commented to the Plaintiff about the absence of her gun. He instructed her to always wear my gun to the scene of an active homicide. Sgt. Picardi also noticed that Plaintiff was not wearing a gun; he agreed with Lt. Wallace that Plaintiff should not respond to an active crime scene without a gun.

15. State the exact dates, times and locations, or the closest approximation you have thereof, for each occasion during 1996 and 1997 that Lieutenant Ford routinely made personal and hostile comments about your physical appearance, hair and weight as set forth in paragraph 84 of the complaint.

A. 15. Lieutenant Ford was at the Revere Police Department when he made his remarks. The plaintiff did not record the exact date and time of day. On or about July 1997, Lieutenant Foster heard one of Lt Ford's remarks and verbally reprimanded him.

17. Identify each and every person who witnessed or overheard each and/or any of Lieutenant Ford's hostile comments as set forth in paragraph 84 of the complaint.

A. 17. Lt. Foster, Sgt. Picardi and Captain Roland heard Lt Ford's "cockroach" comment. John Burke also heard these comments and remarked to Lt Ford –you are really trying to get sued.

21. Identify the persons who caused or contributed to the events or incidents which occurred on or before June 24, 1997, which caused you to go to the hospital as set forth in paragraph 85 of the complaint.

A.21. The job stress that caused the Plaintiff to go to the hospital was cumulative. James Russo, when he was chief of the Revere Police Department caused the Plaintiff great stress when he insisted that she come to his office while she was a candidate at the academy and when she first started her job as a police officer. The recorded interviews and the anonymous letters accusing the Plaintiff of drug abuse and being suicidal were extreme stressful events. Lt. Ford's "cockroach" and "sewerage people" comments.

22. Identify the hospital to which you went on June 24, 1997, as set forth in paragraph 85 of the complaint.

A. 22. East Boston Community Health Center.

24. Identify all health care professionals who you contend made a diagnosis that your "loss of appetite, sleeplessness, and crying spells" was caused by the events or incidents which occurred on or before June 24, 1997, which caused you to go to the hospital as set forth in paragraph 85 of the complaint.

3

Document Produced by deskPDF Unregistered :: http://www.docudesk.com

A.24. Nancy Aronoff was a social worker at the East Boston Community Health Center.

27. Identify the persons who caused or contributed to the events or incidents which occurred on or before November 11, 1997, which caused you to go to the hospital as set forth in paragraph 85 of the complaint.

A.27. Objection: It is immaterial that Thomas Ambrosino did not become Mayor until 2000 and Terrence Reardon was not appointed chief until January 2002. The Defendants argument, in almost all its interrogatories, appears to be only a vehicle to make these two assertions. These assertions do not alter the liability of the policymakers of the City of Revere. Between September 21, 1995 when the Plaintiff was hired and November 11, 1997, the Plaintiff had experienced two examinations by the Chief of Police, negative insinuations about her character, called names by Lt. Ford, forced to work with substandard conditions, experience almost being passed over by a ranking officers son for a Spanish speaking position. The Mayor of the City of Revere is a policy maker and the Chief of Police is his agent. The rules of procedure allow for the substitution of parties who succeed public officials.

30. Identify all health care professionals who you contend made a diagnosis that your "work-related stress" was caused by the events or incidents which occurred on or before November 11, 1997, which caused you to go to the hospital as set forth in paragraph 85 of the complaint.

A. 30. Nancy Aronoff was a social worker at the East Boston health Center.

31. With reference to paragraph 86 of the complaint, state the dates during which you received counseling from the North Suffolk Counseling Services of Chelsea, Massachusetts.

A.31. Objection: The North Suffolk Counseling Services indicate that they began treating the plaintiff on April 14, 2003. Their treatment began almost 8 years after she began her employment with the Defendants and almost two years after she first left the Defendants employ. They are of questionable relevance relevance and are not likely to lead to discoverable evidence. The Defendants have refused to provide the medical records of Dr. Barry of Stoneham who examined the plaintiff before she joined the Academy, before she began her employment as a police officer and provided medical treatment during the period of her employment at the Revere Police Department.

38. State the basis for your allegation that in the winter of 1997 you were placed on walking routes more frequently than the male members of the Department as set forth in paragraph 87 of the complaint.

A.38. Captain Chaulk and Michael Murphy were mostly responsible for the walking route assignments. Captain Chaulk was the officer who ordered Plaintiff out of the cruiser and gave the cruiser to Officer Kelly who appeared to clearly inebriated. The Plaintiff

Document Produced by deskPDF Unregistered :: http://www.docudesk.com

brought the number of walking routes to the attention of the assigners. They acknowledged but brushed it off as being good for the Plaintiff.

39. State the exact date, or the closest approximation you have thereof, for the date to which you are referring when you state that on one occasion, that winter, the Captain ordered you out of a cruiser and placed you of 1997 as set forth in paragraph 87 of the complaint.

A. 39. The interrogatory as edited is incomprehensible. Paragraph 87 of the complaint states December 15, 1997 as the date that Captain Chaulk placed the Plaintiff on walking route at the Northgate Shopping Center.

44. State the exact date, or the closest approximation you have thereof, for the date to which you are referring when you state that prior to your withdrawal you requested a leave of absence with pay as set forth in paragraph 88 of the complaint.

A. 44. On or about March 18, 2001, the Plaintiff requested sick leave

45. State the basis for your allegation that being offered a leave of absence without pay constituted disparate treatment of you as set forth in paragraph 88 of the complaint.

A.45. Plaintiff requested sick leave because of the injury she suffered on the job. She received a leave of absence. The latter was without pay and was the equivalent of a termination. <u>Pennsylvania State Police v Suders</u> (2004). Its impact on the Plaintiff was that of termination. The policy relied upon to deny Plaintiff's request was submitted by the Defendants to the Division of Administrative Appeals (DALA). **See Attached Exhibit A.** The Defendants did not state that this policy was in general use but they relied upon it to justify the denial of sick leave to the Plaintiff.

48. State the basis for you allegation that you were unable to return to your usual work in an environment free from sexual hostility as set forth in paragraph 88 of the complaint.

A.48. By October 2001, the Plaintiff had been diagnosed with Post Traumatic disorder (PTSD). She was unable to perform her duties as a police officer. The Chief ordered her to return to work. Plaintiff physically returned to work but was never allowed to performed the regular duties of a police officer. The environment in the Revere Police Department was the same as it was before she went on leave.

49. Identify the supervisors who referred to Hispanics as Spics and African-Americans as Niggers as set forth in paragraph 90 of the complaint.

A. Officer Burke heard the remarks that Lieutenant Ford made about the Plaintiff. More important than the names of individual supervisors is the fact that the Defendants have a duty to provide employees with an environment free of this kind of racially offensive conduct. The Defendants, having failed to prevent this conduct now attempt, by the use of this Interrogatory, to shift the burden of investigation to the Plaintiff. Defendants need

Document Produced by deskPDF Unregistered :: http://www.docudesk.com

to shift the burden is the direct result of their own deliberate indifference to the Plaintiff's right to a workplace free of such racially offensive conduct. If, in fact, they cannot identify the supervisors, it is solely because they failed to investigate an obvious violation of the Plaintiff's right to a work place free of such racially offensive conduct. Gonsalves v City of New Bedford (1996).

50. Identify the coworkers who referred to Hispanics as Spics and African-Americans as Niggers as et forth in paragraph 90 of the complaint.

51. State the exact dates, or the closest approximation you have thereof, for the dates upon which either a supervisor or coworker referred to Hispanics as spics and African Americans as Niggers as set forth in paragraph 90 of the complaint.

A.51. The Plaintiff did not record the exact date and time of the racial slurs and offensive remarks but she noted the great emotional distress and discomfort they caused her.

52. State the exact dates, or the closest approximation you have thereof for the dates upon which or during which the altered booking photo was circulated within the Revere Police Department as set forth in paragraph 90 of the complaint.

A.52. The case Number of the person whose photo was altered are: 66439,66396. His date of birth is 12-10-69. The Plaintiff did not record the exact date and time of the circulation. She noted the acute distress she experienced as the material was circulated throughout the Department.

53. Identify the persons who created the altered booking photo was circulated within the Revere Police Department as set forth in paragraph 90 of the complaint.

A.53. The Plaintiff is also entitled to know the names of the members of the Revere Police Department who created and circulated **Exhibit H**. More important than the names, however, is the creation of **Exhibit H** within the Revere Police Department and the circulation of **Exhibit H** within the Department. The individual creators and the circulators of **Exhibit H** are the agents of the policy makers of the City of Revere. This racially offensive material could only be created, circulated and remain uninvestigated because of the deliberate indifference of the policy makers. The policy mkaers cannot shift their duty to investigate Department conduct to the Plaintiff who was new officer of the Revere Police Department. Gonsalves v City of New Bedford. (1996) If, indeed, the Defendants do not know the names of the creators and circulators of **Exhibit H**, their lack of knowledge is due only to their own failure to investigate.

54. Identify the persons who circulated the altered booking photo within the Revere Police Department as set forth in paragraph 90 of the complaint.

A. 54. The Plaintiff is entitled to a workplace free of racially offensive materials such as **Exhibit H.** Agents of the policy makers of the City of Revere violated the Plaintiff's right. More important that the names of the perpetrators is the fact that such egregious

Document Produced by deskPDF Unregistered :: http://www.docudesk.com

and racially offensive material was circulated within the Revere Police Department and that the matter remains uninvestigated. If, indeed, the Defendants do not know the names of their personnel who circulated this offensive material, their lack of knowledge is due solely to their own deliberate indifference and their failure to investigate. The Defendants, policymakers, cannot, by this interrogatory shift their duty to investigate to a former junior officer of the Revere Police Department.

62. If you contend that the vandalism of the assigned cruiser as set forth in paragraph 93 of the complaint was caused by any employee of the City of Revere Police Department, state the basis for this contention.

A. 62. Plaintiff restates and reiterates the initial response to the original interrogatory. Plaintiff supplements her response by stating that the vandalism was caused by employees of the City of Revere Police Department.

63. If your answer to Interrogatory 62 is an affirmative of the contention, identify the employees of the City of Revere Police Department who caused or contributed to the vandalism set forth in paragraph 93 of the complaint.

A.63. The Plaintiff is entitled to a workplace that is free of intimidation. That right was violated when two police cruisers, assigned to female officers were vandalized about the same time and on the same night. More important than the names of the employees who caused or contributed to the vandalism set forth in paragraph 93 of the complaint is the fact that such a flagrant, brazen and public vandalism of two pieces of Department property occurred and the matter remains uninvestigated and the perpetrators unidentified. If, indeed, the Defendants do not know which employees of the City of Revere Police Department caused or contributed to the vandalism, that lack of knowledge is due solely to their failure to investigate this very flagrant and brazen vandalism of Department property. The failure to investigate was particularly egregious because it intimidated the Plaintiff even though her assigned cruiser was not vandalized. The Defendants cannot, by this interrogatory, shift the burden if investigation of this event and identification of the perpetrators to a former junior officer of the Revere Police Department.

64. If you contend that the vandalism of the assigned cruiser as set forth in paragraph 93 of the complaint was caused by any employee of the City of Revere other than an employee of the Police Department, state the basis of this contention.

A.64. This Interrogatory is a red herring. The Plaintiff has made no such contention

65. If your answer to Interrogatory 64 is an affirmative of the contention, identify the employees of the City of Revere who caused or contributed to the vandalism set forth in paragraph 93 of the complaint.

A. 65. The Plaintiff made no such contention.

Document Produced by deskPDF Unregistered :: http://www.docudesk.com

69. Identify the persons who hung women's underwear on the bulletin board in the guard room of the Revere Police Department as alleged in paragraph 94 of the complaint.

A.69. Plaintiff is entitled to a workplace free of sexual harassment. This incident took place after April 1, 1999 when the Defendants published a Sexual Harassment Policy. This incident violated not only the Plaintiff's statutory right to a harassment free work place but it also violated the Defendants newly published Policy. More important than the names of the officers of the Revere Police department who hung the underwear on the bulletin board is the fact that the Defendants allowed the offending article of clothing to be displayed for days, then failed to investigate. If, in fact, the Defendants do not know the identities of their agents who are responsible, it is solely because of their own deliberate indifference. They failed to investigate.

70. State the basis of the identification of the persons named in response to Interrogatory No.69.

A.70. The Plaintiff restates and reiterates her response to Interrogatory No.70.

73. State the exact date, or the closest approximation you have thereof, for the date in 1998 on which you observed a penis drawn on the chalk board located by the radio communication room as set forth in paragraph 96 of the complaint.

A.73. The closest approximation is on or about July 1998.

75. Identify the persons who drew the penis on the chalk board located by the radio communication room as set forth in paragraph 96 of the complaint.

A.75. The Plaintiff is entitled to a work place free of offensive sexual images like a chalk drawing of an erect penis in the process of ejaculation, with little chalk marks representing the sperm. The names of the individuals(s) who placed this offensive drawing on the chalk board where it was highly visible to both the public and the Department is less important than the fact that the Defendants never investigated or attempted to identify the perpetrators of this offensive drawing. If, in fact, the Defendants cannot identify its employees responsible for this act, their lack of knowledge is due solely to their deliberate indifference and their failure to investigate. Gonsalves v City of New Bedford, (1996).

79. Identify the officer in charge of roll call referred to in paragraph 99 of the complaint.

A. 79. Lieutenant Ford was the officer in charge that day.

80. Identify the white female officers to whom you are referring in paragraph 100 of your complaint.

Document Produced by deskPDF Unregistered :: http://www.docudesk.com

A.80. Lyn Malatesta, Terri Pechner-James and Kathy Fish all wore their down to see if Lt Foster would make the same remark to them. He did not. Off. Malvarosa always wore her hair down. Lt Foster never approached her.

81. Identify the other male officers to whom you are referring in paragraph 100 of the complaint.

A.81 Sgt. Randall

98. Identify the "male offers injured on the job" who were given "paid leave" as set forth in paragraph 105 of the complaint.

A. 98. The Plaintiff was relying on custom and practice in the Department. During the period of her employment, there were many officers, whose names she does not recall, who were on leave with pay after being injured on the job.

99. For each male officer identified in response to Interrogatory No.98, describe in detail the date and circumstances of their injury which resulted in their receiving paid leave.

A. 99. The Plaintiff restates and reiterates the initial response to this interrogatory. The response to interrogatory 98 also applies here.

102. Do the allegations of paragraph 105 of the complaint describe the same incident or events as alleged in paragraph 88 of the complaint.

A. 102. The Plaintiff restates and reiterates the initial response to this interrogatory. Objection: The hostile work environment is not an event; it is a condition that became so intolerable that Plaintiff could no longer work at the Revere Police Department. Pennsylvania State Police v Suders (2004).

116. If you answer to interrogatory No. 113 is in the affirmative, state the exact date, or the closest approximation you have thereof, of the alleged incident involving Sergeant Nelson as set forth in paragraph 63 of the complaint.

A. 116. The incident involving Sergeant nelson occurred on September 19, 1998 between 19:00 and 21:00 hours.

117. State the basis for your allegation that Lieutenant Santoro's behavior towards you was hostile as set forth in paragraph 131 of the complaint.

A. 117. This Interrogatory is based on a misreading of the paragraph 131. The term Plaintiff in paragraph 131 is a reference to Terri Pechner-James, Co-Plaintiff of Sonia Fernandez. Paragraph 131 contains a list of actions by supervisors in the Revere Police department: Roy Colannino, Frederick Roland, Thomas Doherty, John Nelson and practices like racial slurs and racial caricatures. This combination of supervisors and practices created a hostile work environment. Lieutenant Santoro's behavior toward

9

Document Produced by deskPDF Unregistered :: http://www.docudesk.com

CoPlaintiff, Terri Pechner-James was known in the Department and was part of the environment in which the Plaintiff worked. Paragraph 131 should be read in its entirety.

123. Identify the male employees to whom you are referring in paragraph 134 of the complaint.

A. 123. The Plaintiff requested the same leave as any other injured officer, male or female. Objection: The Defendant, by taking paragraph 134 out of context, seeks response to a contention that the Plaintiff did not make.

Signed under pains and penalties of perjury

*Sonia Fernandez*
Sonia Fernandez, Plaintiff

Document Produced by deskPDF Unregistered :: http://www.docudesk.com