UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TERRI PECHNER-JAMES and SONIA FERNANDEZ,<br>    Plaintiffs,<br><br>v.<br><br>CITY OF REVERE, THOMAS AMBROSINO, MAYOR, CITY OF REVERE POLICE DEPARTMENT, TERRENCE REARDON, CHIEF OF POLICE, BERNARD FOSTER, SALVATORE SANTORO, ROY COLANNINO, FREDERICK ROLAND, THOMAS DOHERTY, JOHN NELSON, JAMES RUSSO, MICHAEL MURPHY and STEVEN FORD,<br>    Defendants, | C.A. No. 03-12499-MLW |

**DEFENDANTS, CITY OF REVERE'S AND CITY OF REVERE POLICE
DEPARTMENT'S, OPPOSITION TO PLAINTIFFS' MOTION
<u>FOR SUMMARY JUDGMENT ON LESS THAN ALL ISSUES</u>**

NOW COME Defendants, City of Revere and City of Revere Police Department (the City), and hereby submit their opposition to Plaintiffs' Motion for Summary Judgment of Less Than All Issues (Docket Nos. 118, 119, 121, 122, 123 & 124).

**The Motion Fails to Comply With Fed.R.Civ.P. 11 and Must be Stricken**

With respect to a represented party, Fed.R.Civ.P. 11(a) states that "Every pleading, written motion, . . . shall be signed by at least one attorney of record in the attorney's individual name, . . .". Pursuant to Fed.R.Civ.P. 11(b), the attorney's signature constitutes a certification by the attorney that the pleading or written motion satisfies certain enumerated conditions. Obviously, then, if the attorney of record has not signed the subject pleading or written motion, then the required certifications have not been made and the pleading or written motion fails to comply with the rule.

In this case, the only attorney of record for the Plaintiffs is James Dilday, their former co-counsel Carlton Dasent having been disbarred (see Docket Nos. 51 and 82). Yet, a review of the pleadings constituting the instant motion reveals on their face that only two (2) of the six (6) pleadings were signed by Attorney Dilday, while the others were signed by someone else (compare the non-authentic signatures on Docket Nos. 118, 119, 123 and 124 with the authentic signatures on Docket Nos. 121 and 122. See also Docket No. 123 which contains a non-authentic signature on the pleading, but an authentic signature on the attached letter). Moreover, the last two of these pleadings purport to be "certifications" in the name of and by Attorney Dilday, yet they are obviously not signed by him.

This discrepancy was brought to the attention of Attorney Dilday (see Affidavit of Walter H. Porr, Jr., filed concurrently herewith (Porr Affidavit), Exhibit "K", pages 5 and 6), who responded as follows: "In reference to your letter dated March 2, 2006, I see no need to respond to your **non issues** regarding signatures. You are not authorized to determine whom I authorize to sign documents on my behalf. In addition, the issue you raised regarding Carlton Dasent has been summarily rejected by Magistrate - Judge (sic) Sorokin as a waste of time." Emphasis added. Porr Affidavit, Exhibit "L".[1]

In other words, Attorney Dilday admits that Docket Nos. 118, 119, 123 and 124 were not signed by him. Moreover, he does <u>not</u> deny the City's contention set forth in their letter (Porr Affidavit, Exhibit "K", pages 5 and 6) that these pleadings were in fact signed by disbarred attorney Carlton Dasent. **This is not a "non issue".** Fed.R.Civ.P. 11(a) and (b) makes the attorney's signature an issue. "The mandate of Rule 11, in a very real sense, is the cornerstone of our system of justice. When lawyers sign and file a pleading, they attest to the veracity of

---

[1] A comparison of the signature on this letter will reflect that it matches the signature on Dockets Nos. 121 and 122 and the letter attached to Docket No. 123. See generally Affidavit of Walter H. Porr, Jr. See also *Ryan v. United States*, 384 F.2d 379, 380 (1st Cir. 1967).

what they say and the court and opposing counsel should be able to rely on those representations. When lawyers fail to fulfill this important responsibility, they do violence to Rule 1, because every pleading they file becomes suspect, causing the Court and opposing counsel to search for the truth and take action necessary to set the record straight." *Young v. City of Providence*, 301 F. Supp. 2d 187, 197 (D.R.I. 2004) vacated on other grounds, 404 F.3d 33 (1st Cir. 2005).

Moreover, Attorney Dilday's position that he may authorize whomsoever he wants to sign his pleadings and motions also misses the point. Rule 11 requires that pleadings and motions on behalf of represented parties be signed **by attorneys**. Attorney Dilday has no authority to unilaterally abrogate this requirement. See *Blossom v. Blackhawk Datsun, Inc.*, 120 F.R.D. 91, 101 (D. Ind. 1988) ("[W]here counsel whose name appears on a pleading fails to sign a pleading, but later comes into court and ratifies and adopts *the signature of co-counsel* as his own, the requirements of Rule 11 of the Federal Rules of Civil Procedure have been found to have been satisfied. Pavlak v. Duffy, 48 F.R.D. 396, 398 (D. Conn. 1969)." Italics added. In other words, assuming that an attorney's signature may be affixed by proxy, *the proxy who affixes the signature must also be an attorney*.

In this case, the motion itself (Docket No. 118), the memorandum in support of the motion (Docket No. 119), the Certificate of Compliance Pursuant to Local Rule 7.1 (Docket No. 123) and the Certificate of Service (Docket No. 124) have all been signed by someone else, that someone else most likely being Mr. Dasent. It is the City's position that these pleadings are functionally unsigned since Attorney Dilday's letter (Porr Affidavit Exhibit "L") can only be read as conceding that he did not sign them and there is no indication that the proxy who did was a member of the bar of this court, or of any other court for that matter. According to Fed.R.Civ.P. 11(a), "[a]n unsigned paper shall be stricken unless the omission of the signature is

3

corrected promptly after being called to the attention of the attorney . . ." This omission was called to Attorney Dilday's attention on March 2, 2006. Porr Affidavit, Exhibit "K". By his letter dated March 7, 2006 (Porr Affidavit, Exhibit "L"), Attorney Dilday has communicated in no uncertain terms that he has no intention of correcting this omission. Thus, the motion must be stricken.

### The Motion Fails to Comply With Local Rule 7.1 and Must be Stricken

Local Rule 7.1 states that "[n]o motion shall be filed unless counsel certify that they have conferred and have attempted in *good faith* to resolve or narrow the issues." Italic added. As has already been demonstrated above, the "Certificate of Compliance" filed in this case (Docket No. 123) does <u>not</u> contain the authentic signature of Attorney Dilday, although curiously enough the letter attached thereto does. Be that as it may, the focus of this aspect of the City's argument centers on the *good faith* requirement of Local Rule 7.1 and on the Plaintiffs' Notice of Motion Pursuant to Local Rule 7.1 (Docket No. 121) which is related thereto.

On February 15, 2006, Attorney Dilday mailed to the City the motion package which was subsequently filed with the Court. See attachment to Docket No. 123. The Notice of Motion Pursuant to Local Rule 7.1 eventually docketed as Docket No. 121 was a part of that package. On the face of this pleading, Attorney Dilday asserts that it is being sent "for the purpose of meeting and conferring as stated by [Local Rule 7.1]. *Since this is a serious requirement*, attached to this Statement you will find a copy of <u>Naviant Marketing Solutions, Inc. v Larry Tucker, Inc</u>. No. 02-3201 (2003) from the Third Circuit Court of Appeals." Italic added. The City agrees with Attorney Dilday that Local Rule 7.1's good faith meet and confer obligation is a "serious requirement." Ironically, or not, it is his failure to take this requirement "seriously" which forms the basis of this aspect of its opposition.

4

After receiving the instant motion package, the City responded with a lengthy and detailed letter outlining how the Plaintiffs' motion failed to demonstrate that it could satisfy its fundamental premise (essentially issue preclusion on the basis of collateral estoppel/res judicata). Porr Affidavit, Exhibit "F". This response invited Attorney Dilday to essentially respond in kind. Id. at p. 5 ("In conclusion, your letter requests that we meet and confer on these issues. If, after you have reviewed this letter, there are issues which you believe remain to be discussed, I expect that I will be here to respond to your call during regular business hours.")

Indeed, the City received a response, but apparently from someone other than Attorney Dilday. Porr Affidavit, Exhibit "G". This response stated in relevant part:

> We agree and we have stated in our motion that the Court must determine the import of the administrative findings of fact, the causation and the disability issues adjudicated by the administrative agencies. Both DALA and PERAC have the statutory authority to make findings of fact, to determine disability issues and to determine causation. I do not think that we disagree on these basic legal propositions. The principle of stare decisis requires these findings of fact, disability determination and causation determination cannot be relitigated. See also 28 U.S.C 9 1738. Contrary to your assertions, the real issue is whether these already determined facts constitute violations of M.G.L.c. 15 1B 9 4 and 42 U.S.G. 5 2000(e)(2) and we believe that is the only issue involved in these proceedings.
>
> Your letter does not address the detailed findings made by these agencies. These findings of fact made for the purposes of retirement disability cannot be relitigated in a Massachusetts court. The findings of facts are res judicata for any other proceedings in state or federal courts. Your statement substantially understates the significance of the administrative determinations. Your letter does not address the res judicata effect of the findings of fact and the causation made by these administrative agencies. Your letter also does not address the importance of 28 U.S.C. 5 1738 and the principles of comity that federal courts grant to state adjudications. We disagree with your assertion that the administrative determinations of disability are unrelated to the facts of this case.

5

Since someone was of the opinion that the City had "not address[ed] the detailed findings made by" DALA and PERAC, the City responded once again with a lengthy and detailed letter outlining how the Plaintiffs' motion failed to demonstrate that it could satisfy its fundamental premise. Porr Affidavit, Exhibit "H". This response invited Attorney Dilday to once again respond in kind. Id. at p. 4 **("**If, after you have reviewed this letter, there are issues which you believe remain to be discussed, I am available to respond to your call during regular business hours as indicated in my prior letter.**")**

Notwithstanding two factually and legally detailed letters that put someone on notice, by any reasonable objective standard, that the proposed motion had no merit, someone caused it to be filed with the Court on February 28, 2006. Porr Affidavit, Exhibit "I". Despite the fact that the City received ECF notice that the motion had already been filed, on March 2, 2006, the City initiated one last attempt to meet and confer with Plaintiffs' counsel regarding its filing. Porr Affidavit, Exhibit "K". In particular, the City stated:

> . . . Why did someone file the motion for summary judgment rather than respond to my letter of February 24? Certainly, you had that letter by Monday, February 27 or Tuesday, February 28 at the latest. More to the point, both of my letters engaged your proposed motion on substantive grounds and with an in depth analysis looking at the issues from opposite sides of the same coin. Moreover, my letter of February 24 engaged the misconceptions in the letter from your office dated February 23, which certainly justified a further response from you prior the (sic) filing of the motion.
>
> What is particularly of concern about the foregoing is that as part of your Local Rule 7.1 compliance, you served upon this office a document entitled Notice of Motion Pursuant to Local Rule 7.1, to which you attached a copy of a case entitled *Naviant Marketing Solutions, Inc. v. Larry Tucker, Inc.*, 339 F.3d 180 (3rd Cir. 2003). . . .
>
> Turning, then, to *Naviant*, I note that on page 186 of the opinion the Court, in reviewing the perfunctory effort at meeting and

6

> conferring undertaken by the moving attorney, observed that it was "unable to discover in the record before [it] that [movant's counsel] ever made a *good faith* effort to confer with defense counsel to resolve discovery disputes." Italics in original. Further on page 186 the Court observed that "[t]he District Court found that '[movant's] counsel, in its zeal, at times proliferated and complicated the discovery disputes through numerous and lengthy submissions and with an approach best-characterized as "shoot first and find out later."'" Thus, the Court concluded that "[t]here was hardly a 'good faith . . . attempt[] to confer with the party not making the disclosure in an effort to secure the disclosure without court action.' (Citation omitted). In *Cannon v. Cherry Hill Toyota*, 190 F.R.D. 147 (D.N.J. 1999), the Court held that sending a fax and demanding a response the next business day and threatening to file a motion to compel *is a token effort rather than a sincere effort*." Italics added.
>
> While the *Naviant* case is clearly a discovery case, you yourself chose to invoke it in the context of Local Rule 7.1. Frankly, I concur that it is instructive in this regard and agree with your implication that Local Rule 7.1 imposes a requirement of "good faith" and that a "token effort rather than a sincere effort" fails to comply with the rule. Thus, if for no other reason than failure to comply with Local Rule 7.1, I am asking that you withdraw the motion and engage in a sincere effort to evaluate what has been said in our letters of February 22 and 24, together with what is said below.

Three things are significant here. First, while Attorney Dilday clearly initiated the Local Rule 7.1 meet and confer process, there is no indication that he was the one who actually engaged in the meet and confer process itself. The only letter from his office which was part of the meet and confer process (Porr Affidavit, Exhibit "G") was signed by some one other than himself and there is no indication that he ever read or considered either the letter from the City which preceded it or the one which followed it. No doubt Attorney Dilday would argue that his March 7, 2006, letter indicates that he has done so now, but that is *after the fact* and thus of no value in complying with the meet and confer obligation *prior* to filing the motion in the first instance.

Second, despite the fact that Attorney Dilday reminded the City that the meet and confer requirement was a "serious" one, attaching the *Naviant* case to the reminder to drive that message home, he himself failed to live up to its terms. He, himself, did not respond to the City's first meet and confer letter and in response to the City's second, some one filed the motion anyway. In the language of *Naviant*, this was nothing more than a "perfunctory effort at meeting and conferring undertaken by the moving attorney" and there is nothing "in the record before [this Court] that [movant's counsel] ever made a *good faith* effort to confer with defense counsel to resolve" and narrow the issues as required by Local Rule 7.1. Thus, as in *Naviant*, the effort undertaken here was "a token effort rather than a sincere effort."

Third, this is not the first, or even the second or third or fourth, time that Attorney Dilday has made either no effort at all or only a token effort to meet and confer under Local Rule 7.1. See Docket Nos. 10 (Order of Judge Wolf finding non-compliance); 40 (City opposition demonstrating that underlying motion failed to comply); 70 (motion for Rule 11 sanctions documenting Plaintiff's non-compliance); 75 (City motion collecting and cataloguing pattern of non-compliance); and, 77 (City motion to strike demonstrating that motion it seeks to strike failed to comply).

In light of the foregoing, the motion must be stricken for failing to comply with Local Rule 7.1.

### The Motion is Without Merit and Should Be Denied

The Plaintiffs' motion is dependent upon the following rubric: (1) Plaintiffs were awarded disability retirements and whatever findings of fact/decisions were made during that process are binding upon the City (and presumably the Plaintiffs as well) here and (2) Presumably these now incontrovertible facts/decisions entitle the Plaintiffs to summary judgment

8

upon all of their claims. As will be more fully demonstrated herein, neither prong of this rubric can be satisfied by either Plaintiff.

A.     **The Purported Findings of Fact by PERAC and DALA Are NOT Binding:**

1.     PERAC Made No "Findings of Fact" and Issued No "Decisions".

There are three PERAC documents submitted in support of the Plaintiffs' motion. See Docket No. 122, List of Exhibits, Exhibit Nos. 10, 11 and 12. See also Docket No. 119, Memorandum in Support, pages 4-7.

Exhibit Nos. 10 and 11 are identical in form, though different in substance in that Exhibit 10 concerns Plaintiff Pechner and Exhibit 11 concerns Plaintiff Fernandez. Both of these Exhibits are multi-page documents consisting of a PERAC cover letter (1 page); a PERAC data sheet (1 page); a Regional Medical Panel Certificate (3 pages); and, a medical opinion letter (4 pages – Pechner; 3 pages - Fernandez).

A review of these documents reflects that the only action taken by PERAC was (1) to review and determine that the Medical Panel Certificate was in order and then (2) to forward that Certificate to the Revere Retirement Board for action. See Exhibits 10 and 11, page 1. Thus, PERAC made no "findings of fact" and issued no "decisions". Indeed, the only thing PERAC did was forward the "expert opinion" of the Medical Panel to the local retirement board.

Here, an interesting and intriguing feature of the Regional Medical Panel Certificates must be noted. On page two of the pre-printed certificate, there is a footnote associated with item No. 3 which reads: "*PLEASE NOTE: When constructing your response to the question of causality (#3) in accidental disability narrative reports, your opinion must be stated in terms of medical *possibility* and not in terms of medical *certainty*." Italic added, underline added to "not". As this Court is well aware, medical expert opinion testimony on causation of injury is

9

usually expressed in terms of reasonable medical probability/certainty, <u>not</u> possibility.  See *Sevigny's Case*, 337 Mass. 747, 749 (1958) (Physician's testimony that "there is a possible causal relationship between the infection and the development of acute leukemia in this case" was found to be no more than speculation or conjecture).  Compare with *Licciardi v. TIG Ins. Group*, 140 F.3d 357, 365 (1st Cir. 1998) ("Dr. Morgan was testifying as a medical expert, offering opinions based on 'reasonable medical certainty,' and the jury undoubtedly took all of his testimony to be based on his expert knowledge.")  See further Black's Law Dictionary 1294 (8th ed. 2004) (which defines "reasonable medical probability" or "reasonable medical certainty" as those terms are used in tort actions as "a standard requiring a showing that the injury was more likely than not caused by a particular stimulus, based on the general consensus of recognized [scientific] thought" as cited in *Burke v. Town of Walpole*, 405 F.3d 66, 91 (1st Cir. 2005).  See also *Foley v. Kibrick*, 12 Mass. App. Ct. 382, 385 (Mass. App. Ct. 1981) ("[W]here the causation between an accident and the resulting physical or psychological ramifications is not a matter of common knowledge, the proof must rest on expert medical testimony.  Sevigny's Case, 337 Mass. 747, 749 (1958).  Casey's Case, 348 Mass. 572, 574 (1964).  Hale's Case, 4 Mass. App. Ct. 769 (1976).")

Indeed, the ultimate opinion of each Regional Medical Panel as set forth in their report is found in the last section thereof which is entitled "Conclusions" (Pechner) and "Impression" (Fernandez).  As to each Plaintiff, the Medical Panel expresses an opinion that the Plaintiffs respective incapacities are "such as *might* be the natural and proximate result of the personal (emotional) injury sustained or hazard undergone on account of which retirement is claimed."  Exhibits 10 and 11, emphasis added.  Thus, as an initial matter, it appears that the Medical Panel opinion would necessarily fail to qualify as admissible expert opinion under Fed.R.Evid. 702.

See *United States v. Schneider*, 111 F.3d 197, 201 (1st Cir. 1997) ("Finally, if the evidence is expert testimony, it must meet the further requisites of scientific reliability and helpfulness to the jury. Fed. R. Evid. 702; Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589-91, 125 L. Ed. 2d 469, 113 S. Ct. 2786 (1993).")

Finally, Exhibit 12, related to Plaintiff Pechner only, offers nothing of substance more definitive than Exhibit 10, and, with respect to the PERAC cover letter, is no different in form as well. Thus, PERAC made no "findings of fact" and issued no "decisions" in this context either.

2.      The DALA "Findings of Fact" Are Irrelevant.

In Plaintiff Pechner's case, the Revere Retirement Board originally denied the involuntary disability retirement application submitted by Chief Reardon. See Docket No. 122, Exhibit 9, page 1. Plaintiff Pechner's appeal resulted in nine (9) factual findings by the Administrative Magistrate. Id., pages 2-4. See also Docket No. 119, Memorandum in Support, page 2-4.

In brief, these findings are that: 1. Pechner was a police officer; 2. She complained about sexual harassment/hostile work environment during her six (6) years of employment; 3. She "stopped working on or about March 14, 2001 and filed an injury report wherein she stated that her disability first began on that date and had resulted from a 'cumulative condition'"; 4. She was treated by Dr. Keroack for the alleged sexual harassment; 5. Dr. Keroack reported to Chief Reardon that she desired to return to work; 6. Chief Reardon filed an involuntary disability retirement application on her behalf; 7. The Revere Retirement Board denied the application; 8. After the denial of the disability retirement application, Dr. Keroack subsequently noted that she was declining mentally and physically; and 9. Dr. Keroack eventually concluded that she could not return to work.

Here it must be noted that although the DALA decision acknowledges that Plaintiff Pechner "complained about sexual harassment" (finding 2), filed an injury report claiming cumulative trauma (finding 3) and was being treated for the alleged sexual harassment (findings 4, 8 and 9), NOWHERE in the DALA decision is there a finding of fact that she was actually being sexually harassed or victimized by a hostile work environment. It is one thing to acknowledge the claims that Plaintiff Pechner was making, which is all the DALA decision did, while it is an entirely different thing to actually adjudicate the truthfulness of said claims. This the DALA decision did not do. In fact, the only thing the DALA decision did was remand the matter back to the Retirement Board for convening of a Regional Medical Panel because of new evidence which was not before the Board when it made its original decision (findings 8 and 9), an original decision which the DALA decision explicitly stated was correct at the time it was made. Docket No. 122, Exhibit 9, page 4, first paragraph under the heading <u>DECISION</u>.

Thus, there is absolutely nothing in the DALA findings of fact which could conceivably be relevant to the claims being made here.

    3.    Neither The PERAC or The DALA Actions are Binding in This Case.

Assuming for sake of argument that state administrative agency findings of fact and/or decisions can have *res judicata* effect, the question remains: What state agency or agencies findings/decisions can have this effect in the context of this case and what are the requirements which must be met in order for that effect to in fact be given to the appropriate agency's findings/decisions?

In the first place, in *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 463 (1982), the Supreme Court observed that "the EEOC may not consider a claim until a state agency having jurisdiction over employment discrimination complaints has had at least 60 days to resolve the

matter, § 706(c), 42 U. S. C. § 2000e-5(c)." In that case, the agency which had such jurisdiction was "the New York State Division of Human Rights (NYHRD), the agency charged with enforcing the New York law prohibiting employment discrimination. N. Y. Exec. Law §§ 295(6), 296(1)(a) (McKinney 1972 and Supp. 1981-1982)." *Id*. at 464. The Supreme Court ultimately determined that the findings of that agency were entitled to *res judicata* effect under 28 U.S.C. § 1738 in the context of a Title VII claim. Indeed, although the Plaintiffs cite *Kremer* in their Memorandum in Support (Docket No. 119, pages 9-11), they avoid citing or acknowledging that portion of its holding set forth above.

Obviously, in this case, the Massachusetts Commission Against Discrimination (MCAD) is the agency charged with enforcing the Massachusetts law prohibiting employment discrimination (see *Brunson v. Wall*, 405 Mass. 446 (1989)), and thus, it is only their decisions, and not the "decisions" of PERAC and DALA, which can have *res judicata* effect in this case. Once again, although Plaintiffs cite *Brunson* in their Memorandum in Support (Docket No. 119, page 13), they avoid citing or acknowledging that the Supreme Judicial Court has also recognized that MCAD is the agency charged with enforcing the Massachusetts law prohibiting employment discrimination and that it is their decisions which have *res judicata* effect.

Thus, as an initial matter, the Plaintiffs are attempting to apply *res judicata* effect to the wrong agencies and to the wrong decisions.

In the second place, as indicated above, PERAC itself made no findings of fact and reached no decisions with respect to the Plaintiffs' claims herein and the DALA findings of fact with respect to Plaintiff Pechner are simply irrelevant.

Finally, to the extent that the Regional Medical Panels expressed opinions about the possibility of causation regarding Plaintiff's disability retirements, they too made no findings of

fact and nothing in Plaintiffs' motion even remotely suggests that there is any authority for the proposition that *res judicata* effect is given to Medical Panel opinions/findings (particularly opinions/findings not based upon reasonable medical certainty/probability). Indeed, it is the Retirement Board which ultimately determines whether or not the retirement will be approved and on what grounds. See 840 C.M.R. 10.11(4) and 10.13 attached as part of Exhibit 8 to Docket No. 122.

B.  **Sonia Fernandez is Not Entitled to Summary Judgment:**

The Medical Panel's opinion noted that Plaintiff Fernandez "report[ed] that the work environment was always '**unfriendly**' [and that she] attributed [her] symptoms to what she view[ed] as unfair reprimands for work related performance and an environment of 'harassment'." Exhibit 11, Opinion Letter, page 1, 3rd paragraph, emphasis added. It further noted that Plaintiff Fernandez "worked between October 2001 and January 2002. She report[ed] that the work environment hostility remained unchanged. . . . [She] report[ed] that there is litigation pending regarding her work situation." Exhibit 11, Opinion Letter, page 1, 5th paragraph. It then noted that Plaintiff Fernandez "report[ed] that in the course of her work she experience multiple gruesome events. She described in detail one event in which an individual shot himself in the head and she was at the crime scene. [She] report[ed] that as a result of these work related experiences, she began to experience nightmares, intrusive thoughts, and episodes of anxiety during which she relived the experience of being at the crime scenes." Exhibit 11, Opinion Letter, page 1, 7th paragraph. The Medical Panel's "Impression" was that Plaintiff Fernandez was permanently incapacitated due to Post traumatic Stress Disorder and that such "incapacity [was] such as might be the natural and proximate result of the personal injury sustained or hazard undergone on account of which retirement is claimed. ***The panel based this***

14

*conclusion on the specific work related 'gruesome' events that the patient experienced*." Exhibit 11, Opinion Letter, page 2, last paragraph, emphasis added; see also Memorandum in Support, page 6.

If, as Plaintiffs claim, they are "seek[ing] to apply res judicata in federal court to issues of disability, permanence, causality and loss of employment[ as] previously adjudicated in Massachusetts state administrative proceedings" (Memorandum in Support, page 7) and that these adjudications are binding and conclusive because they were never appealed (Memorandum in Support, pages 9-14 and page 21), then in Sonia Fernandez's case, the permanent disability which caused her to lose her employment was post traumatic stress disorder caused by the "gruesome" events which she experienced and <u>not</u> the "unfriendly" work environment.

More to the point, witnessing "gruesome" events is, unfortunately, an inescapable aspect of employment as a law enforcement officer. The fact that there is a strong likelihood that an officer will in fact witness "gruesome" events which cause personal (emotional) injury that results in disability and loss of employment does not mean, Plaintiff's assertion to the contrary notwithstanding (Memorandum in Support, page 9), that the employer is responsible in damages pursuant to 42 U.S.C. § 2000(e)(2) of M.G.L. c. 151B.

In this context, if any party is entitled to summary judgment, it is the City and, indeed, the City's cross-motion for summary judgment filed in conjunction herewith argues just that position. Accordingly, her motion must be denied.

C.     **Terri Pechner is Not Entitled to Summary Judgment:**

Having already demonstrated that the DALA "findings of fact" are irrelevant (supra, pages 11-13), the City will turn to the Medical Panel's opinion. In the second paragraph of said opinion, the Medical Panel writes that Plaintiff Pechner "*reports* persistent abusive behavior by

15

her superiors and fellow officers. She *alleges* discrimination and threatening behavior. . . . As an example she *related a story* of a prisoner who was someone Ms James knew as a friend from the past. He was *allegedly* questioned openly about having ever had a sexual relationship with Ms James and about graphic details regarding sexual behaviors with her. . . . She *alleges* there was no basis for the questioning. . . ." Exhibit 10, Opinion Letter, page 1, 2nd paragraph, italics added. Based upon Plaintiff Pechner's "reported allegations" the Medical Panel opined that she suffered from Anxiety Disorder NOS with features of PTSD and panic disorder and that this "incapacity [was] such as might be the natural and proximate result of the personal (emotional) injury sustained or hazard undergone on account of which retirement is claimed. There are no other likely causative factors apparent in Ms James' clinical history to substantiate an alternative etiology for the anxiety disorder." Exhibit 10, Opinion Letter, page 3.

Plaintiff Pechner's non-specific "reports" of "persistent abusive behavior" by unnamed "superiors and fellow officers" and her "allegations" of "discrimination" are just that and nothing more. The one potentially specific example which she "relates" concerns an alleged interview which the interviewing officer(s) has/have stated under oath did <u>not</u> happen. See Docket No. 9, Exhibit 1, Affidavit of Brian Goodwin and Exhibit 3, Affidavit of Salvatore Santoro.

Thus, Plaintiff's assertion to the contrary notwithstanding (Memorandum in Support, page 9), there is nothing in the Medical Panel's opinion which could possibly result in a finding as a matter of law that the City is responsible in damages to Plaintiff Pechner pursuant to 42 U.S.C. § 2000(e)(2) of M.G.L. c. 151B. Accordingly, her motion must be denied.

**D.   There is No Basis For Municipal Liability on the Grounds Set Forth in the Instant Motion:**

In the first place, the motions for summary judgment of both Mayor Ambrosino and Police Chief Terence Reardon have been "granted" by the Magistrate Judge, subject to the

District Court's approval thereof. Docket No. 88. In this regard, the Court has made it clear that it treats these decisions as "law of the case". "Under this doctrine, a court should not reopen issues decided in earlier stages of the same litigation. Messenger v. Anderson, 225 U.S. 436, 444, 56 L. Ed. 1152, 32 S. Ct. 739 (1912)." *Agostini v. Felton*, 521 U.S. 203, 236 (1997). Thus, there is no basis for municipal liability as a result of the conduct of either Mayor Ambrosino or Police Chief Reardon.

Secondly, Plaintiffs' motion makes it clear that the basis for municipal liability being advanced here is the purportedly binding administrative decisions addressed above. Memorandum in Support, pages 20-21. As amply demonstrated above, these administrative decisions prove nothing and entitled Plaintiffs to nothing, at least in the context of this litigation. Thus, there is no basis for municipal liability based upon the mere fact that the Plaintiffs were retired for a work related disability.

For the Defendants, CITY OF REVERE and CITY OF REVERE POLICE DEPARTMENT,

By their Attorneys,

   /s/  Walter H. Porr, Jr.
Paul Capizzi, Esq., City Solicitor
BBO#: 646296
pcapizzi@rvere.org
Walter H. Porr, Jr., Esq.
Assistant City Solicitor
BBO#: 659462
wporr@revere.org
City Hall, 281 Broadway
Revere, MA 02151
781-286-8166

Dated: March 15, 2006.

**CERTIFICATE OF SERVICE**

  I, Walter H. Porr, Jr., Assistant City Solicitor and counsel of record for the Defendants, City of Revere and City of Revere Police Department, hereby certify that I have electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. I caused to be served upon counsel of record, at the address stated below, via the method indicated, a true copy of same:

| | |
|---|---|
| James S. Dilday, Esq. | Michael J. Akerson, Esq. |
| Grayer & Dilday, LLP | Reardon, Joyce and Akerson, P.C. |
| 27 School Street, Suite 400 | 397 Grove Street |
| Boston, MA 02108 | Worcester, MA 01605 |
| Attorneys for the Plaintiffs | Attorneys for Defendants |
| Via CM/ECF e-mail | Bernard Foster, Salvatore Santoro, |
| | Roy Colannino, Frederick Roland, |
| | Thomas Doherty, John Nelson, |
| | James Russo, Michael Murphy, |
| | and Steven Ford |
| | Via CM/ECF e-mail |

                /s/ Walter H. Porr, Jr.
                Walter H. Porr, Jr.,

Dated: March 15, 2006