# EXHIBIT C

## Page 1

```
          IN THE UNITED STATES DISTRICT COURT
                       FOR THE
                DISTRICT OF MASSACHUSETTS


TERRI PECHNER-JAMES and
SONIA FERNANDEZ,
              Plaintiffs

VS.                          C.A. NO. 03-12499-MLW

CITY OF REVERE, THOMAS
AMBROSINO, MAYOR CITY OF
REVERE, POLICE DEPARTMENT,
TERRENCE REARDON, CHIEF,
BERNARD FOSTER, SALVATORE
SANTORO, ROY COLANNINO,
FREDERICK ROLAND, THOMAS
DOHERTY, JOHN NELSON, JAMES
RUSSO, MICHAEL MURPHY, and
STEVEN FORD,
              Defendants
```

   DEPOSITION of TERRI PECHNER-JAMES, taken at the request of the Defendants Foster, Santoro, Colannino, Roland, Doherty, Nelson, Russo, Murphy and Ford, pursuant to Rule 30 of the Federal Rules of Civil Procedure, before Michael Gruber, a notary public in and for the Commonwealth of Massachusetts, on January 10, 2006, commencing at 10:20 a.m., at the offices of Reardon, Joyce & Akerson, Esqs., 397 Grove Street, Worcester, Massachusetts.

## Page 2

A P P E A R A N C E S:

FOR THE PLAINTIFFS:

JAMES S. DILDAY, ESQ.
GRAYER & DILDAY, LLP
27 School Street  Suite 400
Boston, Massachusetts 02108


FOR THE DEFENDANTS CITY OF REVERE, AMBROSINO, REARDON:

PAUL CAPIZZI, ESQ., CITY SOLICITOR
WALTER H. PORR, JR., ESQ., ASST. CITY SOLICITOR
OFFICE OF THE CITY SOLICITOR
CITY HALL
281 Broadway
Revere, Massachusetts 01251


FOR THE DEFENDANTS FOSTER, SANTORO, COLANNINO, ROLAND, DOHERTY, NELSON, RUSSO, MURPHY AND FORD:

MICHAEL J. AKERSON, ESQ.
REARDON, JOYCE & AKERSON, P.C.
397 Grove Street
Worcester, Massachusetts 01605

## Page 3

                    I N D E X

         DEPONENT: TERRI PECHNER-JAMES

                                              PAGE

EXAMINATION BY MR. AKERSON                     13




              EXHIBITS

                                              PAGE

    1      21 Pages, Typewritten               90

    2      One Page, Typewritten              126

## Page 4

1   MR. AKERSON: My name is Michael
2   Akerson. I'm an attorney for a variety of
3   individual defendants in the above-captioned
4   matter.
5       I have scheduled this deposition of
6   Ms. James -- Terri Pechner-James -- on a variety
7   of occasions prior to today, none of which of
8   those depositions have gone forward.
9       This deposition that we're at today,
10  January 10, 2006, was set for earlier this month
11  in January, but it was continued due to Mr.
12  Dilday's unavailability. We scheduled it here
13  today at my office in Worcester.
14      All the parties -- relevant parties,
15  that is -- are present here with respective
16  counsel, along with the stenographer that our
17  firm has hired for the deposition.
18      Present in the conference room prior
19  to my beginning this on-the-record dissertation
20  were Attorney City Solicitor Paul Capizzi;
21  Assistant City Solicitor Walter Porr; Michael
22  Akerson, of the firm of Reardon, Joyce & Akerson;
23  Mr. Dilday, of Grayer & Dilday; Terri
24  Pechner-James; and Carlton Dasent, who is no

Page 5

1 longer an attorney of record in this case, or at
2 all with the Mass. Bar.
3     We spoke a few moments ago, Mr.
4 Dilday. Just to make sure I'm clear -- you
5 correct me if I'm mistaken; I put that burden on
6 you, sir -- I asked what Mr. Dasent's involvement
7 with this case was, and this deposition, given
8 his presence here today. I asked point blank if
9 he's employed by your firm, and you said no, he's
10 not employed by your firm.
11     MR. DILDAY: That's correct.
12     MR. AKERSON: I understand he's
13 currently actively not a lawyer in Massachusetts.
14 Correct?
15     MR. DILDAY: That is also correct.
16     MR. AKERSON: Okay. You had indicated
17 that Mr. James, the deponent's husband, had
18 planned to come to the deposition today, but was
19 unable to come, correct?
20     MR. DILDAY: That's correct.
21     MR. AKERSON: And as a result of that
22 you indicated that yesterday it was decided that
23 Mr. Dasent would be here to support and befriend
24 Ms. James during the course of the deposition,

Page 6

1 correct?
2     MR. DILDAY: That is correct.
3     MR. AKERSON: Now, given that Mr.
4 Dasent is not a lawyer with an appearance on this
5 case, he's not an employee of your firm --
6 therefore he has no connection to this case other
7 than as a friend to Ms. James -- I voiced my
8 objection off the record, and I'm echoing the
9 same objection now, while the record is being
10 produced.
11     MR. PORR: And for the record, the City
12 of Revere and the city defendants that the city
13 solicitor's office represents joined and do join
14 in that objection.
15     MR. AKERSON: Okay.
16     MR. DILDAY: And, for the record, from
17 Ms. Pechner-James' side, it's her opinion that
18 she wanted to have somebody here for moral
19 support. Her husband could not come. She has a
20 bond with Mr. Dasent. She wanted him just to be
21 sitting here. Mr. Dasent will take no part in any
22 of the activities at the deposition, and his
23 sitting in the room would in no way be
24 detrimental to the deposition, and it's her

Page 7

1 conclusion that if she cannot have somebody with
2 her for moral support she will not take part in
3 the deposition.
4     MR. AKERSON: Okay. And I would like to
5 further say, Mr. Dilday, are you her counsel of
6 record in the civil suit?
7     MR. DILDAY: Clearly I am her attorney
8 of record.
9     MR. AKERSON: Okay. This may seem
10 obvious, but you're sitting here in the
11 conference room across from me and next to Ms.
12 James.
13     MR. DILDAY: Absolutely.
14     MR. AKERSON: Okay. I don't think it's
15 proper -- what I said before, on the record, and
16 for other reasons -- that Mr. Dasent sit in on
17 the deposition, given that he's not a lawyer,
18 he's not an employee of your firm. In my
19 understanding as an attorney, in 15 years,
20 friends are not allowed into depositions, which
21 is sworn testimony in a serious legal matter. If
22 Ms. James want to take periodic breaks in order
23 to befriend or talk to Mr. Dasent I would allow
24 that. We have a kitchen area where Mr. Dasent

Page 8

1 could sit down with a bottle of water, which
2 we'll be happy to provide, and then Ms. James can
3 go speak with him during the breaks in the
4 proceedings. That's my offer to you.
5     MR. DILDAY: I understand. And I will
6 confer with her one more time.
7     MR. AKERSON: Okay. Because taking it
8 the next step, if you will, today is the day for
9 the deposition, and if we don't go forward today
10 we'll have to ask Judge Sorokin for his input on
11 how to handle discovery matters.
12     Thank you.
13     MR. DILDAY: If we don't go forward
14 today doesn't mean that we cannot go forward. As
15 I stated clearly for the record, Ms. James is
16 concerned about being here without some moral
17 support other than her counsel. As I told you
18 before, she had hoped to have her husband with
19 her. He could not come because of some
20 baby-sitting duties.
21     Now, my question to you is, if she
22 brought her husband would you move to exclude him
23 also?
24     MR. PORR: I would, because he may very

Page 9

well be a material witness. He's a former officer of the same police department. He himself filed a complaint against that police department. And so I would certainly object to his presence because of that. I would not want his testimony tainted.

    MR. DILDAY: He would have access to her grand jury minutes anyway once she gets them. He would be able to read them with her, so he would have access to her testimony regardless of whether he would be here or not. So your objection doesn't mean much.

    MR. PORR: It does in the context, though, that during the course of the deposition if he was present during breaks and whatnot he could potentially influence her testimony, given what he's learning from her sitting in the chair.

    I understand he could read the transcript later. I fully understand that, and I'm aware of that. So I can't create a fail-safe situation that's going to protect from the potential that witnesses will influence each other's testimony. But at least in the deposition

Page 10

context, while it is ongoing, the whole purpose, as I understand the rules, is to provide at least some basis of integrity for the system so that the witness who is testifying is testifying without the potential for undue influence by others with no real standing in the case and no real legal authority to impact the case.

    So I would have an objection to Mr. James' presence, given those considerations which aren't present at the moment, because he's not here, so it's academic.

    MR. DILDAY: Your objection goes beyond Mr. Akerson's possible objection.

    MR. AKERSON: It's a different issue. Mr. Porr was just referencing if Mr. James was here at the deposition.

    MR. PORR: Mr. James and Mr. Dasent are in entirely different categories.

    MR. DILDAY: True.

    MR. PORR: So my objection on a general level is the same as to both in terms of their presence in the deposition context.

    Mr. James goes even farther, given his

Page 11

own prior employment with the City of Revere and all the issues related to him, and the fact that he, unlike Mr. Dasent, may very well be a witness in this case, just depending on how things shape up when the client goes to trial, as soon as it does.

    MR. AKERSON: I believe, also, Mr. James may be a witness to the purported damage claim, given that he's the spouse of the deponent today.

    MR. PORR: So your question in the hypothetical, if we reconvene at another date would we object to Mr. James, and my answer to that is yes, for the same reasons we object to Mr. Dilday's presence --

    MR. DILDAY: Dasent.

    MR. PORR: I'm sorry. Mr. Dasent's presence -- my apologies -- plus the other reasons already articulated.

    MR. DILDAY: Let me go off the record and speak to Ms. James again, and I'll be back.

    MR. AKERSON: Okay. Go off the record, then.

    (Short recess.)

Page 12

    MR. DILDAY: We're going to go forward.

    MR. AKERSON: Just note for the record that we're going to move forward with the deposition today, January 10. Mr. Dasent is not in the room.

    Mr. Dilday, do you know where he went? Did he leave the building?

    MR. DILDAY: No, he's still in the building.

    MR. AKERSON: I just was going to take a quick break. I'll -- if he's --

    MR. DILDAY: I don't know what he's going to do.

    MR. AKERSON: Okay.

    (Short recess.)

Page 13

1　　　　　STIPULATION
2　　　The parties stipulate that all
3　objections except as to the form of the
4　question and all motions to strike are
5　reserved until the time of trial. The
6　deponent reserves the right to read and
7　sign the transcript.
8
9　　　　TERRI PECHNER-JAMES,
10　having been satisfactorily identified
11　by the production of her State-issued
12　photo identification, and duly sworn by
13　the Notary Public, was examined and
14　testified as follows:
15
16　EXAMINATION BY MR. AKERSON:
17
18　　Q. Good morning. Can you please state
19　your full name for the record?
20　　A. Terri James.
21　　Q. Do you prefer to be called Ms. James?
22　　A. Yes.
23　　Q. I introduced myself earlier this
24　morning. That's the name you -- you said your

Page 14

1　name is Terri James, so I'll call you Ms. James
2　in this deposition, unless there's an objection
3　from you.
4　　　As I mentioned earlier, I represent a
5　variety of individual defendants who you've
6　brought -- you and Sonia Fernandez have brought a
7　lawsuit against. Are you aware of that?
8　　A. Mm-hmm.
9　　Q. Just general background. To help the
10　stenographer, you need to answer with words.
11　　A. Okay.
12　　Q. It's difficult -- I understand it's
13　difficult -- to take down mm-hmm or a head shake.
14　If I remind you, please don't think I'm being a
15　pain. It's to get the stenographic record
16　accurate, okay?
17　　A. Sure.
18　　Q. Couple of other ground rules
19　generally.
20　　　If you don't understand a question I'm
21　asking or you want me to repeat it or say it
22　louder please let me know, and I will do so. And
23　I will also assume that you understand my
24　question unless you tell me you don't.

Page 15

1　Is that acceptable?
2　　A. Yes.
3　　Q. If you need to take a break, we have a
4　bathroom here and, as I mentioned earlier, we
5　have some water. Please let me know if you need
6　to take a break, okay?
7　　A. Sure.
8　　Q. I'm going to ask you some general
9　background questions, if you could just bear with
10　me, to try to get some of it on the record.
11　　　Where are you currently living?
12　　A. Georgetown. Georgetown.
13　　Q. Georgetown, okay. Do you own a home in
14　Georgetown?
15　　A. No.
16　　Q. Just to be clear, that's a town in
17　Massachusetts, Georgetown, Mass.?
18　　A. Yes.
19　　Q. Who are you living with currently in
20　Georgetown?
21　　A. My husband and my children.
22　　Q. Are you renting an apartment there?
23　　A. Yes.
24　　Q. You mentioned your husband. I believe

Page 16

1　his name is Mark James?
2　　A. Yes.
3　　Q. When did you get married?
4　　A. May of 2001.
5　　Q. Do you recall the date?
6　　A. Twelfth?
7　　Q. Twelfth?
8　　A. Thirteenth? Twelfth.
9　　　MR. DILDAY: It's okay. It will be
10　okay.
11　　Q. Okay, you mentioned you have two
12　children. What are their names and ages, please?
13　　A. I have three children.
14　　Q. Excuse me, three children.
15　　A. Kenisha is my daughter's name,
16　K-e-n-i-s-h-a. She's 16. Ricky is my middle son.
17　He's 14. And Katelyn is my youngest. She's three.
18　K-a-t-e-l-y-n.
19　　Q. K-a-t-e-l-y-n?
20　　A. Yes.
21　　Q. Thank you for spelling that.
22　　　Your husband, Mark James, he's the
23　father of Katelyn?
24　　A. Yes.