# EXHIBIT F

THE CITY OF REVERE, MASSACHUSETTS

281 Broadway
Revere, MA 02151

OFFICE OF THE CITY SOLICITOR
**Paul Capizzi**
**Walter H. Porr, Jr.**
**(781) 286-8166**
**(781) 286-8205 (FAX)**

Thomas G. Ambrosino
Mayor

February 22, 2006

James S. Dilday, Esq.
Grayer & Dilday, LLP
27 School Street, Suite 400
Boston, MA 02108

**Re:    Pechner-James, et al., v. City of Revere, et al.**

Dear Attorney Dilday:

This letter is written in response to the Motion for Summary Judgment materials you sent me under cover letter dated February 15, 2006, but which were not received in this office until February 21, 2006.

I begin with an overview of your clients' complaint. Based upon the factual allegations set forth in the complaint, each of your clients alleges that they are entitled to monetary damages for: Count I – Hostile Work Environment/Sexual Harassment (Racial Harassment – Fernandez only) in violation of Title VII and G.L. c. 151B; Count II – Constructive Discharge due to the violations alleged in Count I; Count III – Disparate Treatment in violation of Title VII and G.L. c. 151B; and, Count IV – Emotional Distress resulting from the violations alleged in Counts I, II & III. I will take these Counts in order.

**Count I – Hostile Work Environment/Sexual Harassment (Racial Harassment – Fernandez only)**

"The Supreme Court has outlined the tests a plaintiff must meet to succeed in a hostile work environment claim: (1) that she (or he) is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established. See Faragher, 524 U.S. at 787-89; Harris, 510 U.S. at 20-23; Meritor, 477 U.S. at 65-73." *O'Rourke v. City of Providence*, 235 F.3d 713, 728 (1st Cir. 2001)

"To establish her claim based on work environment ([G.L. c. 151B] § 1 [18] [b]), the plaintiff was required to demonstrate that she worked in a sexually hostile environment that unreasonably interfered with her work performance. To sustain that burden, she needed to

James S. Dilday, Esq.
February 22, 2006
Page 2

establish that the conduct alleged was sufficiently severe and pervasive to interfere with a reasonable person's work performance. This 'objective' reasonable person standard has been interpreted to mean that the evidence of sexual harassment is to be considered from the 'view of a reasonable person in the plaintiff's position.'" *Muzzy v. Cahillane Motors*, 434 Mass. 409, 411-412 (2001).

The administrative proceedings to which you refer did <u>not</u> "adjudicate" in any way, shape or form any of the foregoing elements of a Title VII claim or of a chapter 151B claim. To be sure, the administrative proceedings determined that each Plaintiff was entitled to a disability retirement, but that is all they determined. They did <u>not</u> make any subsidiary findings that they were the victims of sexual and/or racial harassment (unwelcome or otherwise); that this harassment was sufficiently severe or pervasive so as to alter the conditions of their employment and/or create a sexually or racially abusive work environment; that the conduct was objectively offensive, such that a reasonable person would find it hostile or abusive; and that a basis for employer liability for the findings just enumerated existed. In short, while each Plaintiff was found to suffer from work related Post Traumatic Stress Disorder, or the like, the underlying cause of their condition, though deemed to be work related, was not adjudicated. Specifically, for instance, there was no finding that the Post Traumatic Stress Disorder was caused by hostile work environment sexual harassment. Thus, as to Count I, the administrative proceedings are not a bar to the City's defending against your clients' claims and contending that they can not establish the requisite elements of such a claim, aside from the protected class element which is acknowledged.

### Count II - Constructive Discharge due to the violations alleged in Count I.

"To establish hostile work environment, plaintiffs like Suders must show harassing behavior 'sufficiently severe or pervasive to alter the conditions of [their] employment.' *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67, 91 L. Ed. 2d 49, 106 S. Ct. 2399 (1986) (internal quotation marks omitted); see *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 22, 126 L. Ed. 2d 295, 114 S. Ct. 367 (1993) ('[T]he very fact that the discriminatory conduct was so severe or pervasive that it created a work environment abusive to employees because of their . . . gender . . . offends Title VII's broad rule of workplace equality.'). Beyond that, we hold, to establish 'constructive discharge,' the plaintiff must make a further showing: She must show that the abusive working environment became so intolerable that her resignation qualified as a fitting response." *Pennsylvania State Police v. Suders*, 542 U.S. 129, ___, 124 S.Ct. 2342, 2347 (2004).

"The elements for proof of constructive discharge have been discussed in a number of cases decided by Federal and State appellate courts, . . . and there is general agreement on the elements pertinent to a decision in this case. See, e.g., [Turner v. Anheuser-Busch, Inc., 7 Cal. 4th 1238 (1994)] at 1247. See also Slack v. Kanawha County Hous. & Redevelopment Auth., 188 W. Va. 144, 153 (1992) (collecting cases). In a frequently cited decision, the United States Court of Appeals for the First Circuit has stated that in order for a constructive discharge to be found, 'the trier of fact must be satisfied that the new working conditions would have been so

James S. Dilday, Esq.
February 22, 2006
Page 3

difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.' Alicea Rosado v. Garcia Santiago, 562 F.2d 114, 119 (1st Cir. 1977). The test is met if, based on an objective assessment of the conditions under which the employee has asserted he was expected to work, it could be found they were so difficult as to be intolerable. See Turner v. Anheuser-Busch, Inc., supra at 1248. See also Vega v. Kodak Caribbean, Ltd., 3 F.3d 476, 481 (1st Cir. 1993); Aviles-Martinez v. Monroig, 963 F.2d 2, 6 (1st Cir. 1992); Pena v. Brattleboro Retreat, 702 F.2d 322, 325 (2d Cir. 1983).

A single, isolated act of an employer (or an agent of the employer) usually will not be enough to support a constructive discharge claim. Thus, evidence of a single unfavorable performance review or even of a demotion generally will not be deemed sufficient to support a claim. See Turner v. Anheuser-Busch, Inc., supra at 1247. 'In order to amount to a constructive discharge, adverse working conditions must be unusually "aggravated" or amount to a "continuous pattern" before the situation will be deemed intolerable.' Id." *GTE Prods. Corp. v. Stewart*, 421 Mass. 22, 34-35 (1995).

Your clients' constructive discharge claims are necessarily predicated upon proving their hostile work environment claims. In the absence of a hostile work environment, there can be no claim for constructive discharge. Moreover, under *Suders*, a hostile work environment is not enough, in addition, your clients "must show that the abusive working environment became so intolerable that her resignation qualified as a fitting response." Likewise, under *GTE Prods. Corp.* the "adverse working conditions must be unusually 'aggravated' or amount to a 'continuous pattern' before the situation will be deemed intolerable." In any event, the administrative proceedings upon which your clients rely did not "adjudicate" whether your clients' "retirements" meet the conditions of a constructive discharge.

### Count III – Disparate Treatment in violation of Title VII and G.L. c. 151B

"When there is no direct evidence of discrimination, Title VII claims are analyzed under the well-worn test set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973), and two subsequent Supreme Court cases, Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981); and St. Mary's Honor Center v. Hicks, 509 U.S. 502, 125 L. Ed. 2d 407, 113 S. Ct. 2742 (1993). Under this analytical scheme, the employee bears the initial burden of raising an inference of discrimination by making a prima facie showing of possible discrimination. See McDonnell Douglas, 411 U.S. at 802-05. Generally speaking, in a race discrimination claim this requires the plaintiff to establish that: (1) he was a member of a protected class; (2) he was subject to an adverse employment action; (3) he was qualified for the job; and (4) for the same or similar conduct he was treated differently than similarly situated employees. See id. at 802.

"With respect to the fourth element, a plaintiff should be able to provide comparative evidence in order to raise an inference that others similarly situated to him in all relevant respects were treated differently by the employer. See Conward v. The Cambridge School Committee,

James S. Dilday, Esq.
February 22, 2006
Page 4

171 F.3d 12, 20 (1st Cir. 1999); see also Thomas v. Digital Equipment Corp., 702 F. Supp. 22, 25 (D. Mass. 1988) (in disparate treatment cases, the plaintiff must show he was treated differently from similarly situated employees)." *Wyse v. Summers*, 100 F. Supp. 2d 69, 76 (D. Mass. 2000).

"It is boilerplate, in disparate treatment cases, that the absence of any showing that the plaintiff was treated differently from similarly situated employees requires a finding for the defendant." *Thomas v. Digital Equipment Corp.*, 702 F. Supp. 22, 25 (D. Mass. 1988).

"A plaintiff must prove four elements to establish a case of disparate treatment under Mass. Gen. Laws ch. 151B § 4: (a) membership in a protected class; (b) harm; (c) discriminatory animus; and (d) causation. Lipchitz v. Raytheon Co., 434 Mass. 493, 502, 751 N.E.2d 360 (2001); MacCormack v. Boston Edison Co., 423 Mass. 652, 662-63, 672 N.E.2d 1 (1996). When interpreting Mass. Gen. Law ch. 151B, '[the Court] may look to the interpretations of Title VII of the analogous Federal statute; [the Court is] not, however, bound by interpretations of the federal statute in construing [the] State statute.' College-Town, Div. of Interco, Inc. v. Mass. Comm'n Against Discrimination, 400 Mass. 156, 163, 508 N.E.2d 587 (1987)." *Cosme v. Salvation Army*, 284 F. Supp. 2d 229, 235 (D. Mass. 2003).

Your clients' disparate treatment claims are predicated upon allegations to the effect that they were denied leaves with pay on the same terms and conditions as male employees (complaint, paragraphs 116 & 134) and that they were treated differently in terms of their disability retirements than unspecified "others" (complaint, paragraph 119 & 137). Clearly none of these claims, or the constituent elements of said claims as identified above, were "adjudicated" by the administrative proceedings upon which your clients rely. Moreover, the Magistrate Judge has recommend that Mayor Ambrosino's motion for summary judgment on the paragraph 116 and 119 claims be granted. In addition, the Revere Retirement Board is a separate legal entity which your clients have not named in this lawsuit and for which no EEOC or MCAD exhaustion has been undertaken.

### Count IV – Emotional Distress

"[T]he elements of a cause of action for intentional infliction of emotional distress include: '(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; . . . (2) that the conduct was "extreme and outrageous" . . .; (3) that the actions of the defendant were the cause of the plaintiff's distress; . . . and (4) that the emotional distress sustained by the plaintiff was "severe". . . .' Simon v. Solomon, supra at 95, quoting Agis v. Howard Johnson Co., 371 Mass. 140, 144-145 (1976)." *Haddad v. Gonzalez*, 410 Mass. 855, 871 (1991).

Here again, the administrative proceedings your clients rely upon did <u>not</u> "adjudicate" these elements of their emotional distress claims. Moreover, in the employment context, "the exclusivity provision of the workers' compensation act also precludes an action against an

James S. Dilday, Esq.
February 22, 2006
Page 5

employer for negligent and intentional infliction of emotional distress arising out of sexual harassment in the workplace." *Doe v. Purity Supreme*, 422 Mass. 563, 566 (1996)

In the final analysis, the administrative proceedings which are at the heart of the res judicata claim in your clients' proposed motion simply can not carry the burden you impose upon them. In this regard, I would reiterate what I said at the outset and have said in the City's pleadings opposing your Rooker-Feldman "Request", "To be sure, the administrative proceedings determined that each Plaintiff was entitled to a disability retirement, but that is all they determined."

Finally, I must observe that I am surprised that you are still trying to bootstrap a conclusive finding of liability for a variety of statutory and tort based claims from the limited findings made in your clients' retirement proceedings. Clearly, those proceedings did not and could not adjudicate substantive legal claims of the order being made in the instant litigation. That you either refuse to acknowledge or accept this reality, or are incapable of doing so, raises troubling concerns which perhaps explain your mishandling of the defendants' discovery requests in this matter such that you have now been sanctioned and have been ordered to appear in Court with your clients in an effort to remedy this mishandling. Be that as it may, in light of the fact that your proposed motion is clearly without merit for the reasons set forth above, and indeed in some of our prior correspondence, should you persist in filling the motion, I will seek not only monetary sanctions, but also whatever substantive sanctions may also be available, under Rule 11 and any other applicable rule.

In conclusion, your letter requests that we meet and confer on these issues. If, after you have reviewed this letter, there are issues which you believe remain to be discussed, I expect that I will be here to respond to your call during regular business hours. Please note, that we close at noon on Fridays and that on Mondays and Wednesdays I leave at 3:00 pm to attend classes at Suffolk University Law School.

Thank you for your attention to this matter.

Sincerely,

Walter H. Porr, Jr.
Assistant City Solicitor

CC:    Attorney Michael Akerson