# EXHIBIT H

# THE CITY OF REVERE, MASSACHUSETTS
281 Broadway
Revere, MA 02151



OFFICE OF THE CITY SOLICITOR

Paul Capizzi
Walter H. Porr, Jr.
(781) 286-8166
(781) 286-8205 (FAX)

Thomas G. Ambrosino
Mayor

February 24, 2006

James S. Dilday, Esq.
Grayer & Dilday, LLP
27 School Street, Suite 400
Boston, MA 02108

  Re: **Pechner-James, et al., v. City of Revere, et al.**

Dear Attorney Dilday:

  This letter is written in response to yours of February 23, 2006. In the third paragraph you state that my letter did "not address the detailed findings made by [DALA and PERAC]. These findings of fact made for the purposes of retirement disability cannot be relitigated in a Massachusetts court." In the second paragraph you state that "the Court must determine the import of the administrative findings of fact, the causation and the disability issues adjudicated by the administrative agencies."

  In the first place, I think my letter more than adequately addressed these issues, but I will nonetheless try again. As for DALA and PERAC, at best and at most, these agencies decided that the plaintiffs were entitled to service based disability retirements. Neither of these agencies decided that the plaintiffs entitlement to these disability retirements were based upon or caused by violations of Title VII or G.L. c. 151B. More to the point, neither of these agencies decided whether any of the named defendants in this case actually did the things that the plaintiffs have accused them of doing. Thus, your statement in the second paragraph of your letter that "the real issue is whether these already determined facts constitute violations of M.G.L. c. 151B § 4 and 42 U.S.C. § 2000(e)(2)" and your belief that this "is the only issued involved in these proceedings" utterly misses the point. The only fact which has already determined is the fact that each plaintiff was entitled to a service based disability. I repeat, neither agency determined that any of the named defendants actually did to the plaintiffs what they allege the defendants did.

  For instance, the DALA decision, which is exclusive to Plaintiff Pechner's case and which is proposed Exhibit 9 to the motion, involves 9 findings of fact. In sum these findings of fact are as follows: 1. That Pechner was a police officer; 2. That she complained about sexual harassment/hostile work environment during her six(6) years of employement; 3. That she "stopped working on or about March 14, 2001 and filed an injury report wherein she stated that her disability first began on that date and had resulted from a 'cumulative condition'"; 4. That she was treated by Dr. Keroack for the alleged sexual harassment; 5. That Dr. Keroack reported to Chief Reardon that she desired to return to work; 6. That Chief Reardon filed an involuntary

James S. Dilday, Esq.
February 24, 2006
Page 2

disability application on her behalf; 7. That the Revere Retirement Board denied the application; 8. That Dr. Keroack subsequently noted that she was declining mentally and physically; and 9. That Dr. Keroack eventually concluded that she could not return to work.

Here it must be noted that although the DALA decision acknowledges that Plaintiff Pechner "complained about sexual harassment" (finding 2), filed an injury report claiming cumulative trauma (finding 3) and was being treated for the alleged sexual harassment (findings 4, 8 and 9), NOWHERE in the DALA decision is there a finding of fact that she was actually being sexually harassed or victimized by a hostile work environment. It is one thing to acknowledge the claims being made, which is all the DALA decision did, while it is an entirely different thing to actually adjudicate the truthfulness of said claims. This the DALA decision did not do. In fact, the only thing the DALA decision did was remand the matter back to the Retirement Board for convening of a Regional Medical Panel because of new evidence which was not before the Board when it made its original decision, an original decision which the DALA decision explicitly states was correct at the time it was made (see page 4, first paragraph under the heading DECISION).

Turning to the PERAC decision for Plaintiff Pechner, proposed Exhibit 10, after checking a series of boxes which simply express conclusions but offer no specific basis therefore, the decision then includes a report by Dr. George M. Dominiak. In paragraph 2 of his report he summarizes Ms. James "reports" of "persistent abusive behavior by her superior and fellow officers." In paragraphs 3, 4 and 5, he summarizes Ms. James "reports" and "feelings" concerning how the "reported" abusive environment was affecting her. On page 2, he catalogues Ms. James "report" concerning her current symptoms. Based upon these "reports", he concludes that her "incapacity is such as might be the natural and proximate result of the personal (emotional) injury sustained or hazard undergone on account of which retirement is claimed." NOWHERE in this report does the Doctor purport to "adjudicate" the truthfulness of Plaintiff Pechner's "reports." Nor, for that matter, does the Doctor make any "findings of fact" that said "reports" are indeed "true."

Turning to the PERAC clarification for Plaintiff Pechner, proposed Exhibit 12, this document makes no "findings of fact" and none of the questions which it answers are in any way dispositive of any issues in this case.

Turning to the PERAC decision for Plaintiff Fernandez, proposed Exhibit 11, after checking a series of boxes which simply express conclusions but offer no specific basis therefore, the decision then includes a report by Dr. Thomas Sciascia. In paragraph 3 of his report he states that the "patient reports that the work environment was always 'unfriendly'." In paragraph 5 of his report he states that during the October 2001 to January 2002 time frame that the "patient report[ed] that the work environment hostility remained unchanged" and that "there [was] litigation pending regarding her work situation", obviously referring to the MCAD complaint filed in March of 2001, and not this instant litigation which was not filed until 2003.

James S. Dilday, Esq.
February 24, 2006
Page 3

      The last paragraph of page 1 of the Doctor's report is crucial and I repeat it in full. "The patient reports that in the course of her work she experienced multiple gruesome events. She described in detail one event in which an individual shot himself in the head and she was at the crime scene. The patient reports that, as a result of these work related experiences, she began to experience nightmares, intrusive thoughts, and episodes of anxiety during which she relived the experience of being at the crime scenes."

      Based upon the foregoing report, Dr. Sciascia and the panel reached the following conclusion: "The panel concluded that the said incapacity is such as might be the natural and proximate result of the personal injury sustained or hazard undergone on account of which retirement is claimed. *The panel based this conclusion on the specific work related 'gruesome' events that the patient experienced.*" Italics added.

      NOWHERE in this report does the Doctor purport to "adjudicate" the truthfulness of Plaintiff Fernandez's "reports." Nor, for that matter, does the Doctor make any "findings of fact" that said "reports" are indeed "true." More to the point, the only indication of any issue related to the conduct of the defendants is that the work environment was "unfriendly." And in this regard, it was the "'gruesome' events that the patient experienced" and <u>not</u> the "unfriendly" work environment that was the cause of the injury that justified her retirement.

      Thus, in light of the elements which your clients must prove to sustain each of their claims, elements which I reviewed in detail in my prior letter, I fail to see how any of the agency decisions upon which you are relying can be of any help to them. In the first place, neither agency "adjudicated" any of your clients' current claims or any of the discrete elements to sustain their burden of proving said claims.

      Indeed, if you really believe that the "findings of fact, disability determination and causation determination cannot be relitigated" (your letter, page 1, paragraph 2), then you MUST dismiss Plaintiff Fernandez's case because the PERAC determined that her disability was due to the *specific work related 'gruesome' events that the patient experienced*", and nothing else, necessarily defeats her claims.

      In conclusion, while I recognize and agree that the mere "fact that we represent opposing sides of the same case and advocate opposing opinions does not mean that the Plaintiffs (sic) case does not have merit" (your letter, page 2), I can not agree that the mere fact that you subjectively believe that your clients' case has merit and that "you have an obligation to represent them by pursuing all legal avenues open to [you]" means that you can ignore the law and pursue meritless issues such as your res judicata claim in the proposed motion. Fed.R.Civ.P 11 clearly indicates that meritless motions are not a "legal avenue open to [you]." My letter of the 22nd, and this letter as well, should make it abundantly clear that the res judicata claim is a non-starter and no amount of "belief" in the merits of your clients' claims can or will change that reality.

James S. Dilday, Esq.
February 24, 2006
Page 4


    If, after you have reviewed this letter, there are issues which you believe remain to be discussed, I am available to respond to your call during regular business hours as indicated in my prior letter.

    Thank you for your attention to this matter.

                                    Sincerely,

                                    Walter H. Porr, Jr.
                                    Assistant City Solicitor


CC:    Attorney Michael Akerson