# EXHIBIT D

Case 1:03-cv-12499-MLW     Document 188-5     Filed 05/12/2006     Page 1 of 8

Pechner Deposition

Combative, Speeches and Diatribes

1.     Pages 609-610:

23     Q.   When did you do that?

24     A.   Because Patty Carey and Chuckie

1  Callahan didn't want anybody to see this

2  because they're the chief's people, and that's

3  it.  That's my answer.

4     Q.   When did you do that?

5     A.   I don't remember the date.

6     Q.   Was it in 1999?

7     A.   I don't remember the date.

8     Q.   Was it in 2000?

9     A.   You asked the question.  I answered

10  it.  Carry on.

11     Q.   Was it in 2001?

12     A.   (Witness shrugs.)

13        MR. DILDAY:  You have to give him a

14  verbal statement instead of the shrug.

15     A.   I answered.  I don't know when it

16  was.

2.    Page 658:

1    Q.   Did he call your children names

2  over a period of a couple years?

3    A.   Let's just say he didn't have the

4  best behavior on the job.  That's all.  I

5  mean --

6    Q.   My question was,  Did he call your

7  children names over a period of a couple of

8  years?

9    A.   Sure.

10    Q.   Okay.  And did this start in '96?

11    A.   Yes.

12    Q.   Did it continue in '97?

13    A.   He called them a couple -- probably

14  said it a couple times.  I don't know.  No.

15  Might not have been '97.

16    Q.   Did it happen in --

17    A.   All I know is that Officer John

18  Burns called my kids derogatory names.  I

19  don't remember the dates.  I don't remember

20  the time.  So you can go on to your next

21  question, because I don't know why it's not in

22  the complaint.  I don't know why he called my

2

23   kids the names he did.  Maybe he's got mental

24   problems too.

3.    Page 663:

2     Q.   All right.  How long before you got

3   pregnant with Kenisha had you met Mr. Todd?

4   How long had you known him?

5     A.   None of your business.  How do you

6   like that for an answer?

7     Q.   Well, I'd prefer a factual answer

8   that's responsive to the question.  Are you

9   refusing to answer?

10     A.   I'm refusing to answer.

4.    Pages 679-680:

12        MR. PORR:  Madam reporter, would

13   you mark the record.

14     A.   Because now all you want to know is

15   my sex -- I went through this with the police

16   department.  You're supposed to be

17   representing the mayor and the chief.  What my

18   sexual preference and my sexual -- who I had

19   sex with has nothing to do with you.  It's

20   none of your business.  It's none of this

3

21   case's business.  Because I was sexually

22   harassed on the job instead of doing an

23   investigation as to why I was sexually

24   harassed -- not only sexually harassed but

 1   sexually assaulted, you want to use who I had

 2   sex with, because I had sex, because I had a

 3   child when I was 16 years old, so I deserve to

 4   be sexually assaulted and harassed on the job?

 5      Q.   Are you done?

 6      A.   I hope you can come up with more

 7   than that.  Okay?

 8      Q.   Are you done?

 9      A.   I'm done.  I'm done.


5.     Pages 740-743:

23      Q.   The quote in your notes is

24   different from the quote in the January '99

 1   report and in your complaint.  Which one is

 2   accurate?

 3      A.   I'm confused.  Why don't you ask

 4   Officer Mangino, do a little investigative

 5   work and find out for yourself.

 6      Q.   Ms. Pechner, your notes from 2001

 7   have a quote.

4

8     A.   Stop trying to discredit me and get

9   the facts.  I mean, why don't you do a little

10   bit of investigative work, get the facts on

11   the case, and stop trying to discredit me.

12        That's what was said.  There's my

13   notes.  I wrote that down.  You have my notes

14   here.  You have this.  I mean, in all due

15   fairness, talk to Officer Mangino.  She'll be

16   more than happy to tell you.

17        I mean, I understand that you have

18   a job.  But, you know, I mean, in all due

19   respect, Attorney Porr, people are dying in

20   Iraq over this.  This is my civil rights here.

21   I mean, you know, this is ridiculous to ask

22   questions.

23        What about the questions that

24   matter in this case here?  I mean, that

1   personally attack me?  I mean, I'm not trying

2   to take your time up here, but you're talking

3   about an error here that says when the

4   department had all men, that was, of course,

5   back to the good old days.  That's what Chief

6   Russo said.

5

7          That's what we internalized as

8   females when we first got on that job.  We

9   also internalized that by the fact that there

10  were seven female officers and the male

11  officers, Kevin Colannino, were put in front

12  of us because of a seniority issue.

13         So we're taking the stuff as the

14  chief when we first get on the job that, hey,

15  look it, this is what the chief thinks, who is

16  now my husband, was in the union when I first

17  got on the job.

18         I got an earful from him because he

19  was in charge of when all this stuff was going

20  on when we had to file a grievance for our

21  seniority.  He heard the comments from Russo.

22  I'm not going to fabricate anything.  This is

23  a typo.  This is something that I made up.

24  This came from the captains.

1          I'm just simply saying to you why

2   don't you ask Officer Mangino.  I'm sure

3   she'll give you the answer.

4    Q.   Are you done?

5    A.   I'm done.

6          MR. PORR:  Motion to strike.  Mark

7   the record.

8      A.   The truth hurts.  And the truth

9   will always always prevail.  Okay?  So strike

10   whatever you want.

11     Q.   Are you done?

12     A.   I'm done.

13          MR. PORR:  Motion to strike.

14     A.   But I'm going to speak and say what

15   I want to say, whether it's your day or not.

16   I want you to know the truth and the truth is

17   going to prevail.  Win or lose.  So go ahead.

18   Go right ahead.

19     Q.   Are you done?

20     A.   I'm all set.