UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **TERRI PECHNER-JAMES and SONIA FERNANDEZ,**<br>    Plaintiffs,<br><br>v.<br><br>**CITY OF REVERE, THOMAS AMBROSINO, MAYOR, CITY OF REVERE POLICE DEPARTMENT, TERRENCE REARDON, CHIEF OF POLICE, BERNARD FOSTER, SALVATORE SANTORO, ROY COLANNINO, FREDERICK ROLAND, THOMAS DOHERTY, JOHN NELSON, JAMES RUSSO, MICHAEL MURPHY and STEVEN FORD,**<br>    Defendants, | C.A. No. 03-12499-MLW |

**DEFENDANT, POLICE CHIEF TERENCE REARDON'S,
OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL
FURTHER ANSWERS TO INTERROGATORIES**

COMES NOW Defendant, Police Chief Terence Reardon, and hereby submits his opposition to Plaintiffs'[1] motion to compel further answers to interrogatories.

I.

**THE DISCOVERY MOTION FAILS TO COMPLY
WITH LOCAL RULES 7.1(A)(2), 26.2(C) AND
37.1(B) AND THUS, CAN NOT BE CONSIDERED**

Plaintiffs' are making an "application for an order that compels the Defendant, Terence Reardon, to answer . . . interrogatories. . ." Docket No. 203. Thus, this is clearly a discovery

---

[1] Although the introductory paragraph of the motion suggests that this motion is being filed by both Plaintiffs, paragraph 2 of the motion states that "[t]he Plaintiff [singular] served the interrogatories attached as **Exhibit B**." Unfortunately, the motion neither specifies which Plaintiff, nor does it have the interrogatories attached despite their being referenced as Exhibit. Despite these anomalies, the interrogatories were related to Plaintiff Pechner only and thus, for purposes of this motion, Chief Reardon assumes that the moving party is Plaintiff Pechner. Equally puzzling is the reference to the interrogatories as Exhibit B, when there is no Exhibit A to the motion. The solution to the foregoing puzzle is found by reviewing the companion motion related to Mayor Ambrosino, Docket No. 202, to which Plaintiff's Counsel has attached Mayor Ambrosino's Answers as Exhibit "A" and Chief Reardon's Answers as Exhibit "B." Here again, Plaintiffs' Counsel's continuing inability to properly use the electronic filing system is causing an undue waste of time and energy when it comes to deciphering his pleadings.

motion. However, Plaintiffs' motion, like many of its predecessors (see Docket Nos. 140, 146, 148 and 202), reveals on its face that there was no pre-filing conference as required by Local Rule 7.1(A)(2). Thus, since there was no such conference, there can be and is no certification that such a conference took place, as also required by Local Rule 7.1(A)(2). Local Rule 26.2(C) states that "[t]he judicial officer shall not consider any discovery motion that is not accompanied by a certification, as required by LR 7.1(A)(2) and LR 37.1(B), that the moving party has made a reasonable and good-faith effort to reach agreement with opposing counsel on the matters set forth in the motion."

To quote this Court in this case: "This deficiency is especially glaring in light of the Court's disposition of Plaintiffs' earlier motion for an extension of time and is reason enough to deny the Motion. I note that this is not the first instance of counsel's failure to comply with the rules governing the discovery process in this matter. See Docket # 115 (Order imposing sanctions after counsel's failure to comply with the Court's Order regarding interrogatories)." Docket No. 166, Omnibus Discovery Order and Status Report, page 3, footnote 1. The footnote is related to the Court's finding that Plaintiffs and their counsel had failed to comply with Local Rule 7.1 regarding an expert witness motion (Docket No. 148).

Thus, the instant motion can not even be considered.

**II.**

**THE DISCOVERY MOTION FAILS TO COMPLY
WITH FEDERAL RULES OF CIVIL PROCEDURE
37(a)(2)(B) AND THUS, CAN NOT BE CONSIDERED**

Plaintiffs' discovery motion also fails to demonstrate on its face that there was any compliance with Federal Rule of Civil Procedure 37(a)(2)(B) which also requires certification of

a meet and confer process prior to the filing of any motion to compel. Again, this failure means that the motion may not even be considered since this requirement is a mandatory prerequisite.

### III.

### THE DISCOVERY MOTION IS PROCEDURALLY DEFECTIVE AND THUS, CAN NOT BE CONSIDERED

Plaintiffs' discovery motion also fails to comply with Local Rule 37.1(B)(1), (3) and (4) in that there is no explanation for the failure to conduct the discovery conference; there is no articulation of "[t]he nature of the case and the facts relevant to the discovery matters to be decided;" and, the text of each disputed interrogatory and the text of the response thereto is not set forth in the motion. Although the motion purportedly attaches the interrogatories as Exhibit B, they are NOT in fact so attached.

While the motion purports to articulate "the moving party's position as to each contested issue," (Local Rule 37.1(B)(5)), it does so in a vacuum.

### IV.

### CHIEF REARDON'S ANSWERS AND OBJECTIONS WERE VALID AND PROPER

**A.     Context is Everything:**

First and foremost, it must be remembered that Chief Reardon was not appointed the Chief of Police until **January of 2002**. See Docket Nos. 29, 30 and 138. Plaintiff Pechner had already walked off the job some ten (10) months earlier on March 13, 2001. Complaint, ¶¶ 16, 78 and 79. The only thing which Chief Reardon did concerning Plaintiff Pechner was submit an application for disability retirement on her behalf in the summer of 2002. See Docket Nos. 29, 30 and 138. THE COMPLAINT MAKES ABSOLUTELY NO ALLEGATIONS WHATSOEVER THAT CHIEF REARDON DID ANYTHING ACTIONABLE TO PLAINTIFF PECHNER PRIOR TO HIS BECOMING CHIEF.

The Chief is not being sued in his personal capacity. Docket No. 136. The Plaintiff's statement that "[t]his trial judge has identified this Defendant and the Mayor as policymakers" (motion, page 2, last paragraph) grossly overstates and oversimplifies the case. Plaintiff's assertion that "[t]he court can take judicial notice of the fact that during this period [the entire time of his employment by the City of Revere], Terrence (sic) Reardon was a ranking officer of the Department" (Motion, page 4, last paragraph) is also a gross overstatement.[2] Chief Reardon did not walk onto the job as a "ranking officer of the Department." Moreover, Federal Rules of Evidence 201(d) states that judicial notice shall be taken "if requested by a party **and supplied with the necessary information**." Emphasis added. Here, Plaintiff provides no information whatsoever except the bald and erroneous assertion of her counsel.

Plaintiff continues, stating that "[d]uring the decades that Terrence (sic) Reardon was an official[3] of the Revere Police Department, the Department had no sexual harassment policy, . . ." Motion, page 2, paragraph 6. In fact, such a policy was promulgated on April 1, 1999, nearly three years prior to Chief Reardon's appointment to the office of Chief of Police.

**B.    The "Stock Response":**

In paragraph no. 3 on page 2 of the motion, Plaintiff identifies what she calls Chief Reardon's "stock response." Plaintiff then repeatedly asserts throughout the motion that "[I]t is intentionally evasive and deliberately non-responsive to provide this stock answer to such an important question", or words to that effect. See e.g., Motion, page 3, last paragraph and pages

---

[2]  In paragraph 5 of the motion found on page 2, Plaintiff states that Chief Reardon "was a ranking officer in the Revere Police Department, prior to his appointment as Chief of Police." Likewise, in the third paragraph on page 3 of the motion, Plaintiff states that "Terrence (sic) Reardon was, for many years, a ranking officer in the Revere Police Department . . ." While these statements are closer to the mark, they still fail to accurately detail what ranks Chief Reardon held and when.

[3]  Official??? Does Plaintiff mean employee??? Does Plaintiff mean "ranking officer"??? See footnote 2.

4

4-5, *passim*. The short answer to this ridiculous assertion is that Plaintiff asked so many patently objectionable questions that they all deserved the same response.

Interrogatory No. 1: Although Plaintiff indicates that Chief Reardon gave the "stock" answer to interrogatory No. 1 (Motion, page 2, paragraph 3), she does not address the matter further. For the record, in addition to his name, Interrogatory No. 1 sought Chief Reardon's **"height, weight, eye color, hair color, race, and date of birth."** Even assuming for sake of argument that Chief Reardon was still in the case in his individual capacity, HOW COULD THESE QUESTIONS BE EVEN REMOTELY PROPER UNDER FED.R.CIV.P. 26???

Interrogatory No. 2: This interrogatory seeks the identification of "**all** employment held from [Chief Reardon's] seventeenth birthday until the present," with 12 subcategories of questions related thereto. Again, putting the interrogatory in context, it is objectionable. Plaintiff states that "[t]his interrogatory is designed to address the Chief's training, experience and sensitivity in matters that relate to sexual harassment and matters of discrimination." Motion, page 2, last paragraph. Plaintiff goes on to assert that for purposes of municipal liability, "[t]he Chief's knowledge, experience, training and sensitivity to these matters is crucial to making this determination." Motion, page 3, second paragraph. But here again, there are no allegations in the complaint that Chief Reardon engaged in sexual harassment or discrimination of any kind, or that he allowed others to do so, either before or after he was made Chief. Thus, the objection was valid and proper.

Interrogatory No. 3: This interrogatory seeks information related to sexual harassment training of Chief Reardon which is essentially duplicative of Interrogatory No. 2. For the same reasons as set forth above, the objection was valid and proper. Moreover, in response to Plaintiff's Second Request for Production of Documents, the City of Revere provided copies of

5

sexual harassment training materials that included Chief Reardon as Exhibit "B." Thus, the objection was valid and proper.

Interrogatory Nos. 4, 5 and 6: These interrogatories all seek personal information regarding Chief Reardon's assets, purportedly in order to assist in satisfying any judgment which may be rendered in this case. BUT IF CHIEF REARDON WILL NEVER BE PERSONALLY LIABLE TO EITHER PLAINTIFF, THEN BY WHAT AUTHORITY DOES PLAINTIFF PROPOSE TO COLLECT FROM HIM SHOULD THE CITY OF REVERE BE FOUND LIABLE??[4] Thus, the objection was valid and proper.

Interrogatory Nos. 7, 8 and 12: These interrogatories seek information as to whether or not Chief Reardon was ever the subject of a civilian complaint, a defendant in "**any**" civil suit, or ever arrested or convicted of **"any crime whatsoever"**. Emphasis added. Their obvious overbreadth notwithstanding, Plaintiff's explanation for why these inquiries are even remotely relevant (Motion, page 4, last paragraph and page 5, first and fourth paragraphs) defy comprehension. Needless to say, the objection was valid and proper.

Interrogatory No. 9: This interrogatory sought information about whether or not Chief Reardon had "ever been treated and/or evaluated by a psychiatrist, psychologist or any other mental health worker?" To ask the question is to demonstrate its patently objectionable nature. Thus, the objection was valid and proper.

---

[4] Does Plaintiff and her Counsel seriously contend that Chief Reardon could be personally liable for a judgment against the City in this case?? Their motion suggests that they do. But how on earth could they possibly adhere to such a belief, and reasonably so, when the case law is so painfully clear that "[a] suit against a public official in his official capacity is a suit against the governmental entity itself." *Surprenant v. Rivas*, 424 F.3d 5, 19 (1st Cir. 2005) (citing *Wood v. Hancock County Sheriff's Dep't*, 354 F.3d 57, 58 n.1 (1st Cir. 2003) and *Nereida-Gonzalez v. Tirado-Delgado*, 990 F.2d 701, 705 (1st Cir. 1993))

C.    **The Non-Stock Responses:**

On page 2 of the interrogatories, Plaintiff identified the word *Incident* as follows: The term shall refer to the entire transaction between Terri Pechner-James defendants (sic) and the Revere Police Department during the period of her employment, September 1, 1995 to **March 12, 2001**. Interrogatory Nos. 14, 23 and 24 specifically refer to the March 12, 2001, date. Interrogatory Nos. 16, 17, and 20 refer to the "incident" and, thus, presumably also reference the March 12, 2001, date. Interrogatory Nos. 18 and 19 impliedly refer to the incident and, thus, by said implication also reference the March 12, 2001, date.

Two things are here relevant: First, Chief Reardon was not appointed Chief until January of 2002 and was <u>not</u> involved in responding to Plaintiff Pechner's MCAD complaint. Second, the City Solicitor's office directed what investigation it deemed necessary regarding the MCAD complaint.

Interrogatory No. 13 sought information about any investigation by the Revere Police Department concerning the end of Plaintiff Pechner's employment. If, by that question, Plaintiff meant when she walked off the job on March 13, 2001, the Chief responded that the matter was turned over to the City Solicitor's office who responded to her MCAD complaint which had been filed the day before on **March 12, 2001**. If, by that question, Plaintiff meant her disability retirement which formally terminated her status as an employee of the City of Revere, then the Chief responded that he submitted her retirement application after her doctor stated that she was not capable of returning to the job.

Interrogatory No. 14 sought information in follow-up to interrogatory No. 13 regarding any documents that Chief Reardon reviewed related to Plaintiff Pechner's end of employment. The Chief responded that the only documents he reviewed were the medical records submitted

7

with her retirement package. Remembering that he was not Chief in March of 2001 when she walked off the job, and did not become Chief until ten (10) months later, Chief Reardon had nothing to say about the MCAD investigation and the documents generated as a result thereof.

Interrogatory No. 15 sought the names, residential addresses, badge numbers and districts for the Revere Police Officers on duty on the night of March 13, 2001. Remembering that this interrogatory is being answered in excess of five (5) years after the date in question, Chief Reardon resorted to the provisions of Fed.R.Civ.P. 33(d) and indicated that a copy of the shift schedule for the night in question had already been produced to Plaintiff.

Interrogatory No. 16: Chief Reardon answered this interrogatory without objection. Plaintiff's argument regarding the same (Motion, page 6, fourth full paragraph) is incomprehensible.

Interrogatory No. 17: Chief Reardon answered this interrogatory without objection. Plaintiff's argument regarding the same (Motion, page 6, last paragraph) is incomprehensible.

Interrogatory No. 18: Chief Reardon answered this interrogatory without objection. Plaintiff's argument regarding the same (Motion, page 7, first full paragraph) is incomprehensible.

Interrogatory No. 19: Chief Reardon answered this interrogatory without objection. Plaintiff's argument regarding the same (Motion, page 7, third paragraph) is incomprehensible.

Interrogatory No. 20: Chief Reardon answered this interrogatory without objection. Plaintiff's argument regarding the same (Motion, page 7, last paragraph) is incomprehensible.

Interrogatory No. 21: Chief Reardon interposed an objection based upon attorney-client and attorney work product privileges and, without waiving said objection, answered the

interrogatory to the fullest extent that he could. Plaintiff's argument regarding the same (Motion, page 8, first and second full paragraphs) is incomprehensible.

Interrogatory No. 22: Chief Reardon interposed an objection based upon overbreadth, burdensomeness and oppressiveness and, without waiving said objection, answered the interrogatory to the fullest extent that he could. Plaintiff's argument regarding the same (Motion, page 8, last two paragraphs) is incomprehensible.

Interrogatory No. 23: Chief Reardon interposed an objection based upon attorney-client and attorney work product privileges and, without waiving said objection, answered the interrogatory to the fullest extent that he could. Plaintiff's argument regarding the same (Motion, page 9, first and second full paragraphs) is incomprehensible.

Interrogatory No. 24 sought the names of the persons who were on duty on the night of March 12, 2001. Remembering that this interrogatory is being answered in excess of five (5) years after the date in question, Chief Reardon resorted to the provisions of Fed.R.Civ.P. 33(d) and produced a copy of the shift schedule for the night in question.

Interrogatory No. 25: A variant of interrogatory No. 23, Chief Reardon interposed an objection based upon attorney-client and attorney work product privileges and, without waiving said objection, answered the interrogatory to the fullest extent that he could. Plaintiff's argument regarding the same (Motion, page 9, last two paragraphs) is incomprehensible.

Interrogatory No. 26: This interrogatory exceeded the number allowed by Fed.R.Civ.P. 33(a) and, inasmuch as Plaintiff failed to obtain relief as provided by Fed.R.Civ.P. 33(a) by stipulation or leave of court (for the record, Plaintiff never asked), Chief Reardon was within his rights to refuse to answer.[5]

---

[5] Plaintiff finds it "ironic" that Chief Reardon objected to Interrogatory No. 26 as exceeding the allowed number when she was required to answer well in excess of that amount. Okay, it's ironic. Life is full of irony. The irony

9

## V.

## Request for Monetary Sanctions

Pursuant to Fed.R.Civ.P. 37(a)(4)(B), Chief Reardon seeks an award of attorney's fees for this patently unjustified motion.  The continuing failure of Plaintiff and her counsel to meet and confer as required by the rules has been amply demonstrated in this case (see Sections I and II, supra) and continues unabated with not only this motion, but also with its companion related to Mayor Ambrosino, Docket No. 202.  Added to that are also the procedural deficiencies of this and the companion motion, which make it infinitely more difficult to address them on their merits.

And speaking of merit, there is absolutely no merit to this motion whatsoever.  None.  No justification, much less "substantial justification," exists for this motion.  Its utter lack of merit is patent.  Accordingly, Chief Reardon seeks sanctions in the amount of $1,000.00 as set forth in the affidavit of Walter H. Porr, Jr., filed concurrently herewith.

      For the Defendant, **CHIEF TERENCE REARDON**,
By his Attorneys,

        /s/ Walter H.  Porr, Jr.
Paul Capizzi, Esq., City Solicitor
BBO#:  646296
Walter H. Porr, Jr., Esq., Assistant City Solicitor
BBO#:  659462
City Hall, 281 Broadway
Revere, MA 02151
781-286-8166

Dated:  June 1, 2006.

---

here is that Chief Reardon's Counsel obtained both a stipulation and court order allowing for the excess number of interrogatories, whereas Plaintiff's Counsel did not.

**CERTIFICATE OF SERVICE**

  I, Walter H. Porr, Jr., Assistant City Solicitor and counsel of record for the Defendants, City of Revere and the City of Revere Police Department, hereby certify that I have electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system.  I caused to be served upon counsel of record, at the address stated below, via the method indicated, a true copy of same:

| | |
|---|---|
| James S. Dilday, Esq. | Michael J. Akerson, Esq. |
| Grayer & Dilday, LLP | Reardon, Joyce and Akerson, P.C. |
| 27 School Street, Suite 400 | 397 Grove Street |
| Boston, MA 02108 | Worcester, MA 01605 |
| Attorneys for the Plaintiffs | Attorneys for Defendants |
| Via CM/ECF e-mail | Bernard Foster, Salvatore Santoro, |
| | Roy Colannino, Frederick Roland, |
| | Thomas Doherty, John Nelson, |
| | James Russo, Michael Murphy, |
| | and Steven Ford |
| | Via CM/ECF e-mail |

| | |
|---|---|
| |  /s/  Walter H. Porr, Jr. |
| Dated:  June 1, 2006 | Walter H. Porr, Jr., |