UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TERRI PECHNER-JAMES and SONIA FERNANDEZ,<br>    Plaintiffs,<br><br>v.<br><br>CITY OF REVERE, THOMAS AMBROSINO, MAYOR, CITY OF REVERE POLICE DEPARTMENT, TERRENCE REARDON, CHIEF OF POLICE, BERNARD FOSTER, SALVATORE SANTORO, ROY COLANNINO, FREDERICK ROLAND, THOMAS DOHERTY, JOHN NELSON, JAMES RUSSO, MICHAEL MURPHY and STEVEN FORD,<br>    Defendants, | C.A. No. 03-12499-MLW |

**CITY DEFENDANTS' SIXTH STATUS REPORT**

**NOW COME** Defendants, City of Revere, City of Revere Police Department, Mayor Thomas Ambrosino and Police Chief Terence Reardon, and hereby submit their sixth status report.

**I.**

**PENDING MOTIONS**

The following motions are pending:

1. Defendant, City of Revere's, et al, motion for sanctions - Fernandez (Docket Nos. 182-185); opposed (Docket No. 187); supplemented (Docket Nos. 195-196); under advisement (Docket No. 199).

2. Defendant, City of Revere's, et al, motion for sanctions - Pechner (Docket Nos. 188-191 & 194); opposed (Docket No. 197); supplemented (Docket. No. 201); under advisement (Docket No. 199); second supplement (Docket No. 209).

Also pending at this time is Plaintiffs' "appeal" of the Court's Order on Plaintiff's Request to Enlarge the Period for Discovery (Docket No. 186); opposed (Docket No. 192).

The following motions have been withdrawn by the Plaintiff:

1. Motion to Compel Defendant Thomas Ambrosino to Answer Interrogatories (Docket No. 202); opposed (Docket Nos. 206-207); withdrawn (Docket No. 208).

2. Motion to Compel Defendant Terence Reardon to Answer Interrogatories (Docket No. 203); opposed (Docket Nos. 204-205); withdrawn (Docket No. 208).

NOTE:    Defendants' request for sanctions in the total amount of $1,500.00 (See Docket Nos. 204, 205, 206 and 207) are <u>NOT</u> withdrawn.  By the time Plaintiffs withdrew their procedurally defective and substantively meritless motions to compel, the damage had already been done and the time of Defendants' Counsel had already been wasted.  Thus, Defendants continue to assert their request for sanctions.

SECOND NOTE:    On June 15, 2006, City Defendants received a meet and confer invitation from Plaintiffs' Counsel indicating that he desired to meet and confer as a precursor to re-filing the above-referenced motions to compel.  See Exhibit "A" hereto.  Defendants' Counsel has responded, suggesting an in person meeting at Plaintiffs' Counsel's office on Friday, June 23, 2006.  See Exhibit "B" hereto.  Counsel for the parties have now talked by telephone and have scheduled a face to face meet and confer session at 12:00 P.M. on Tuesday, June 27, 2006, before the status conference to which this report is addressed.

## II.

## OUSTANDING DISCOVERY ISSUES

**A.    Overview of City Defendants' Discovery Approach:**

1. The Complaint.

In the immortal and prescient words of Judge Rya Zobel, United States District Judge for the District of Massachusetts: "Plaintiffs have rendered the court's task far more difficult and time consuming than necessary by ignoring the requirement of Fed.R.Civ.P. 8(e)(1) that a complaint's

averments be simple, concise and direct.  The blunderbuss approach of their 119-paragraph, 37-page complaint 'places an unjustified burden on the court and on the party who must respond to it because they are forced to select the relevant material from a mass of verbiage.'  5 Wright & Miller Federal Practice and Procedure § 1281 at 365 (1969)."  *Braintree Baptist Temple v. Holbrook Public Schools*, 616 F. Supp. 81, 84 n. 5, (D. Mass. 1984).

What was true in *Braintree* is true here.

2.     The Interrogatories.

Faced with "a mass of verbiage," the City Defendants understandably set out to distill the wheat from the chaff.  To do so, they propounded a set of interrogatories designed to ferret out many of the missing details from the "mass of verbiage," as well as to determine the substance, if any, behind it.

In its Order on Motion for Sanctions (Docket No. 115), the Court, after reciting the long and tortured history surrounding the City's efforts to obtain responses to interrogatories that had been the subject of a stipulation between the parties, observed that "[n]o further litigation of the interrogatory issue will be fruitful.  The City embarked on this course in order to save litigation expense and focus the depositions; this path has not achieved that reasonable goal, however.  The focus of discovery is on the discovery of information; **the City can acquire the information that they (sic) seek in their (sic) interrogatories through their (sic) depositions of the plaintiffs.**"  Docket No. 115, page 6, emphasis added.  See also Defendants' Fourth Status Report, Docket No. 160, page 4.

In other words, the Court's order recognized that Plaintiffs discovery abuse had effectively rendered one authorized form of discovery virtually useless.

3

3. The Depositions.

The original motion for additional time for the Plaintiffs' depositions (Docket No. 59) was premised upon the belief that the interrogatories would be answered in good faith and thereby expedite the deposition process. As the Court's order (Docket No. 115) made clear, that did not happen. See Defendants' Fourth Status Report, Docket No. 160, page 4. As the Court's order also made clear, however, the reason that that did not happen was exclusively the fault of the Plaintiffs. See Docket No. 115, page 4, subparagraph A.2.c: "Under the totality of the circumstances, including the difficulties that defendants encountered in obtaining answers to interrogatories, the City Defendants have established good cause for leave to take a total of two and one-half days of deposition of each Plaintiff."

Finally, the Court also "note[d] that the allegations in the verified complaint are serious ones stretching over a several year period involving a number of specific events as well as allegations of formal or informal policies in violation of the law." See Docket No. 115, page 4, subparagraph A.2.c. Thus, the City Defendants deposition approach has necessarily been geared towards addressing that reality.

In particular, the City Defendants have created an outline of the complaint in chronological order and have proceeded in a chronological fashion to go from the beginning to the end of the complaint. Interspersed within this framework are the 21 pages of notes created by Plaintiff Pechner which are also chronological in nature,[1] along with heavily annotated calendars for 1996, 1997, 1998 (months of January and December only), 1999 and 2000 (Pechner). Added to the foregoing are documents generated either by the Plaintiffs (i.e., their MCAD complaints, etc.), their health care providers (extensive medical records) and/or the City of Revere and its police department( i.e., the

---

[1] For the record, Plaintiff Fernandez has a few pages of notes, but they are not nearly as complete and detailed as Plaintiff Pechner's notes.

December 1998 meeting memo between management and a representative of the females on the department and the January 1999 seven (7) page report of the meeting between management and all of the females on the department – see complaint, ¶¶ 72 and 91 and Exhibit D).   Moreover, each Plaintiff is potentially a percipient witness to events involving the other Plaintiff.  Thus, as Counsel for the City Defendants has worked his way through the Complaint and related documents, he has frequently asked questions about allegations being made by the co-Plaintiff to determine to what extent the deponent is a witness to those alleged events.

To date, the City Defendants' progress is as follows: [2]

Plaintiff Pechner

May 5, 2006 (Scheduled 10:00 a.m. to 5:00 p.m. / only half day counted pending ruling of Court of request for full day – see Docket No. 199, page 1, last paragraph and page 2, paragraph # 2) – Basic background information and then a focus on September 95, the time of hiring – Complaint, ¶ 14 - through February of 97 – Complaint, ¶¶ 66-69.

May 25, 2006 (Scheduled 10:00 a.m. to 5:00 p.m. / Actual time – 3 hours) – Resume with February of 97 and end on July of 98 – Complaint, ¶ 96.

June 7, 2006 (Scheduled 10:00 a.m. to 5:00 p.m. / Actual time – 5.50 hours) – Resume with July of 98 and end on April of 99 (Pechner note events which are dated between Complaint, ¶¶ 73 and 93 (2/7/99 vandalism incident) and Complaint, ¶ 18 (although the Complaint places this date as 7/5/97, Plaintiff Pechner has testified, and her notes are consistent on this point, that the ¶ 18 incident occurred on 7/5/99).)

---

[2]   Here, two basic differences in approach to the depositions by the defense camp should be noted.  For their part, the attorneys for the individual officer defendants have divided the deposition responsibilities between Attorney Akerson (Plaintiff Pechner) and Attorney Vigliotti (Plaintiff Fernandez).  Assistant City Solicitor Porr has conducted the deposition examination of both Plaintiffs for the City Defendants.  Additionally, Attorneys Akerson and Vigliotti have generally organized their examination by asking about the allegations related to each individual defendant they represent, one at a time, regardless of chronological niceties, whereas Assistant Solicitor Porr has followed a more chronological approach, regardless of named defendant niceties.

June 22, 2006 (9:00 a.m. to 1 p.m. / Actual – to be seen) – Resume with Pechner notes of April 99, move next to 7/5/99 incident, Complaint, ¶ 18, and then . . . . . . . .

Plaintiff Fernandez

May 12, 2006 (Scheduled 10:00 a.m. to 5:00 p.m. / Actual time 3 hours) – Basic background information and then a focus on September 95, the time of hiring – Complaint, ¶ 14 - through February of 97 – Complaint, ¶¶ 66-69.

May 16, 2006 (Scheduled 1:00 p.m. to 5:00 p.m. / Actual time 3.5 hours) – Resume with February of 97 and end on August of 97 – Complaint, ¶¶ 19 – 23.

June 2, 2006 (Scheduled 1:00 p.m. to 5:00 p.m. / Actual 4 hours) – Resume with September 1, 1997 – Complaint, ¶ 90 and end on May 19, 1998 – Fernandez medical records.

June 21, 2006 (Scheduled 9:00 a.m. to 12:00 p.m. / Actual – to be seen) – Resume with matter from June of 98, move next to Complaint, ¶ 96, incident from July of 98, and then . . . .

**B.     Status of the Depositions:**

1.     Plaintiff Pechner's Deposition.

Counsel for the City Defendants was able to depose Plaintiff Pechner on May 5 and 25 and June 7, 2006. The outcome of those deposition sessions is before the Court pursuant to the sanctions motion referenced above. Since the filing of the second supplemental memorandum (Docket No. 209), Plaintiff's Counsel has affirmed her availability for deposition on June 22, 2006. Frankly, given her prior deposition behavior, coupled with the fact that the Court has so far refrained from intervening, Defendants' Counsel is not optimistic that the deposition session will be as productive as it should be.

To date, and notwithstanding the issues related to the above-referenced pending motion, approximately 13.5 hours of deposition time with Plaintiff Pechner has enabled the cross-examiner

6

to cover background information, the beginning of Plaintiff Pechner's employment in September of 95 and reach April of 99 (some 43 months). While the calculation can only be imprecise given the lack of uniformity of events and dates, this pace nonetheless translates to approximately 20 minutes per month or 3 months per hour. Thus, *if* this pattern holds true to form, the June 22 deposition session which is scheduled for four (4) hours should cover about 12 months, or from April of 99 to March of 2000.

At this rate, another four (4) hours should cover April of 2000 to March of 2001 when Plaintiff Pechner filed her MCAD complaint and walked off the job – Complaint, ¶¶ 11, 16, 78 and 79. Four (4) hours more should cover April of 2001 to March of 2002 – although Plaintiff Pechner was off the job this entire period, there are some relevant documents related to this time frame which are germane to the issues in this case. Another four (4) hours should cover April of 2002 to March of 2003, during which time the Chief's disability retirement application was pending. A final four hours should cover April of 2003 to March of 2004, during which time the disability retirement was adjudicated and Plaintiff Pechner was retired with back-pay – Complaint, ¶¶ 110, 114 and 117 and Exhibits A and B. Without taking into consideration damages claims, this amounts to another 16 hours, or two hours more than two days as defined under the Federal Rules of Civil Procedure.

Thus, at a minimum, the City Defendants should be given two and one-half more days to finish the deposition of Plaintiff Pechner. Of course, if she would stop her abusive deposition behavior, it would not have taken this long to begin with and the City Defendants would not need as much additional time to fully examine her on all of her allegations and damage claims.

**NOTE**: Plaintiff Pechner consistently seeks to blame the cross-examiner for her deposition conduct. See Docket No. 209, page 5, footnote 3 and Exhibit "I." However, as noted above (see footnote 2), the common denominator between the Pechner and Fernandez depositions is that the

7

City Defendants are represented by the same cross-examiner. Moreover, as noted above (see subsection II.A.3) the cross-examiner is following the same chronological outline with both Plaintiffs and is thus asking them the same basic line of questions. Yet, whereas the Fernandez depositions have gone forward without problem (except for late arrivals and early departures), the Pechner depositions have featured a combative witness. The reason is not the cross-examiner. See Exhibit "C" hereto, excerpt from the Deposition of Sonia Fernandez, Vol VI, page 1074, line 14 – page 1075, line 16. INDEED, Plaintiff Fernandez was so eager to affirm that the cross-examiner's conduct was not a problem that she cut him off before he could finish the question.

      2.      Plaintiff Fernandez's Deposition.

To date, approximately 10.5 hours of deposition time with Plaintiff Fernadez has enabled the cross-examiner to cover background information, the beginning of Plaintiff Fernandez's employment in September of 95 and reach May of 98 (some 33 months). While the calculation can only be imprecise given the lack of uniformity of events and dates, this pace nonetheless translates to approximately 20 minutes per month or 3 months per hour. Thus, *if* this pattern holds true to form, the June 21 deposition session which is scheduled for three (3) hours should cover about 9 months, or from June of 98 to February of 99 – Complaint, ¶¶ 70 – 73 and 89, 91 - 93.

The remaining four (4) hours of court ordered time should cover from March of 99 to February of 2000 – Complaint, ¶¶ 110 - 101.

At this rate, the 13 months from March of 2000 to March of 2001 when Plaintiff Fernandez filed her MCAD complaint and took a leave of absence – Complaint, ¶ 11 - would take approximately four and one-half hours. Plaintiff Fernandez was on unpaid leave from March of 2001 until October 2001. The only allegations in the complaint relative to this time-frame are that Plaintiff Fernandez alleges that she asked for paid leave as was done for male employees which was

8

denied – Complaint, ¶ 134 – and, that she was ordered back to work before she was physically able and before she was cleared by her doctors – Complaint, ¶¶ 128, 131 and 139. These allegations could be covered in one and one half hours. That leaves from November of 2001 until September of 2002 when Plaintiff Fernandez suffered a physical injury on the job that, along with her emotional trauma related to "gruesome events" (see Docket No. 129, pages 14 – 15), resulted in her disability retirement. This time-frame could be covered in one hour. Not taking into consideration plaintiff Fernandez's damage claims, this amounts to one additional deposition day over and above that already subject to court order.

       Thus, at a minimum, the City Defendants should be given one and one-half more days to finish the deposition of Plaintiff Fernandez.

> For the Defendants
> By their Attorneys,
>
>  /s/ Walter H. Porr, Jr
> Paul Capizzi, Esq., City Solicitor
> BBO#: 646296
> Walter H. Porr, Jr., Esq.
> Assistant City Solicitor
> BBO#: 659462
> City Hall, 281 Broadway
> Revere, MA 02151
> 781-286-8166

Dated: June 15, 2006.

**CERTIFICATE OF SERVICE**

  I, Walter H. Porr, Jr., Assistant City Solicitor and counsel of record for the Defendants, City of Revere, City of Revere Police Department, Mayor Thomas Ambrosino and Police Chief Terence Reardon, hereby certify that I have electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. I caused to be served upon counsel of record, at the address stated below, via the method indicated, a true copy of same:

| | |
|---|---|
| James S. Dilday, Esq. | Michael J. Akerson, Esq. |
| Grayer & Dilday, LLP | Reardon, Joyce and Akerson, P.C. |
| 27 School Street, Suite 400 | 397 Grove Street |
| Boston, MA 02108 | Worcester, MA 01605 |
| Attorneys for the Plaintiffs | Attorneys for Defendants |
| Via CM/ECF e-mail | Bernard Foster, Salvatore Santoro, |
| | Roy Colannino, Frederick Roland, |
| | Thomas Doherty, John Nelson, |
| | James Russo, Michael Murphy, |
| | and Steven Ford |
| | Via CM/ECF e-mail |

                    /s/  Walter H. Porr, Jr.
                   Walter H. Porr, Jr.,

Dated: June 15, 2006