UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TERRI PECHNER-JAMES and SONIA FERNANDEZ,<br>    Plaintiffs,<br><br>v.<br><br>CITY OF REVERE, THOMAS AMBROSINO, MAYOR, CITY OF REVERE POLICE DEPARTMENT, TERRENCE REARDON, CHIEF OF POLICE, BERNARD FOSTER, SALVATORE SANTORO, ROY COLANNINO, FREDERICK ROLAND, THOMAS DOHERTY, JOHN NELSON, JAMES RUSSO, MICHAEL MURPHY and STEVEN FORD,<br>    Defendants, | C.A. No. 03-12499-MLW |

**DEFENDANT, CITY OF REVERE'S, CITY OF REVERE POLICE DEPARTMENT'S, MAYOR THOMAS AMBROSINO'S AND POLICE CHIEF TERENCE READON'S, THIRD SUPPLEMENTAL <u>MEMORANDUM OF LAW RE: MOTION FOR SANCTIONS, DOCKET NO. 188</u>**

COME NOW Defendants, City of Revere, City of Revere Police Department, Mayor Thomas Ambrosino and Police Chief Terence Reardon, and hereby submit their third supplemental memorandum of law in support of their motion for sanctions re: Plaintiff Pechner-James (Pechner), Docket No. 188.

**I.**

**Plaintiff Pechner-James' Deposition Misconduct Has Not
Only Continued Unabated, But Has Become Markedly Worse**

**A.**   <u>**Background**</u>**:**

See Docket Nos. 188, 201 and 209. See also Discovery Order, May 22, 2006, Docket No. 199.

**B.     The June 22, 2006, Deposition Session:**

June 22, 2006, was the fourth deposition session where Counsel for these moving Defendants was given the opportunity to cross-examine Plaintiff Pechner. As will be more fully demonstrated herein, this deposition session was markedly worse than the others.

    1.     The Mental State of Plaintiff Pechner

Plaintiff Pechner's behavior at the deposition was so bizarre that it was frequently discussed on the record and the cross-examiner expressed his concern for her mental state. Exhibit "A" hereto are excerpts from the deposition transcript regarding this aspect of Plaintiff Pechner's behavior during the deposition.

    2.     Plaintiff Pechner's Unwillingness to Speak So That She Could Be Heard.

Aside from the general bizarreness set forth in Exhibit "A," more specifically, and throughout the deposition, Plaintiff Pechner dropped her voice to the point were it was barely audible. Repeated efforts to get her cooperation were met with resistance and scorn. Exhibit "B" hereto are excerpts from the deposition transcript regarding this aspect of Plaintiff Pechner's behavior during the deposition.

    3.     Prolonged Delays in Responding.

Throughout all of the deposition sessions with Plaintiff Pechner, she has frequently taken what both cross-examiners have felt was an inordinate amount of time to review documents and respond to questions. Up to this point, the cross-examiners have not identified this as a significant issue, though they have believed that Plaintiff Pechner's conduct may have been deliberate. Three times during her deposition on June 22, 2006, Plaintiff Pechner took such a long time to respond that an observation to that effect was placed on the record. Exhibit "C"

hereto are excerpts from the deposition transcript regarding this aspect of Plaintiff Pechner's behavior during the deposition.

  4.  The Combativeness, Non-Responsiveness, Evasiveness, and Argumentativeness Was at an All Time High.

**THE RED HERRING SYNDROME** -- Plaintiff Pechner's abusive deposition behavior can properly be labeled the Red Herring Syndrome. Question after question evoked grandiose assertions of criminal misconduct, malfeasance, harassment, discrimination, etc., on the part of one or more employees of the Revere Police Department in response. Plaintiff Pechner's 21 pages of single spaced notes were frequently the catalyst for her far flung, wide ranging and full scale attacks in this regard. A copy of said notes is attached hereto as Exhibit "D." Yet, time after time, the cross-examiner had to spend large chunks of deposition time chasing after each of these Red Herrings, only to find that there was no basis in fact for their assertion and that Plaintiff Pechner was simply being evasive, argumentative, combative and the like. Attached hereto as Exhibit "E" is an excerpt of the deposition testimony reflecting Plaintiff Pechner's continued abusive behavior in this regard.

  5.  **THE FAULT DOES NOT LIE WITH THE CROSS-EXAMINER**

Plaintiff Pechner and her counsel would have this Court believe that the acrimonious nature of the deposition sessions involving Plaintiff Pechner are the fault of the cross-examiner. The following excerpt from the June 22, 2006, deposition session will put this false accusation to rest forever.

  <u>Pages 1750 - 1751</u>

  8  **MR. PORR: I'm sorry. We need to**

  9 **stop for a minute. Mr. Dilday stepped away**

  10 **from the table and is on his cell phone.**

11        (Off the record from 12:50 P. M. to

12   12:52 P. M.)

13        MR. DILDAY:  You could have kept on

14   going.

15        MR. PORR:  Mr. Dilday, we just --

16   on the record, we just came off a brief break

17   while you took a cell phone call.  You had

18   stepped away from the table, and you indicated

19   that I could have continued.  I appreciate

20   you're extending that courtesy, but

21   professionally I don't think I could continue.

22        MR. DILDAY:  Okay.

23        MR. PORR:  When the plaintiff, the

24   opposing party's counsel has to step away from

1    the table, I can't in good faith keep asking

2    questions.

3         MR. DILDAY:  I understand and I

4    appreciate that.

5         MR. AKERSON:  I agree with

6    Mr. Porr, particularly in light of some of the

7    testimony that's come out previously and some

8    of the attitudes and demeanor with regard to

9    Mr. Porr's questioning, I think it's

4

    10  appropriate for Mr. Porr to not inquire of the

    11  plaintiff, even though you, Mr. Dilday, agreed

    12  with it.

Emphasis added.

IF the deposition cross-examiner was as abusive, unprofessional and acrimonious as the Plaintiff and her counsel would have this Court believe, THEN PLAINTIFF'S COUNSEL WOULD NEVER HAVE STEPPED AWAY FROM THE DEPOSITION TABLE AND ALLOWED THE EXAMINATION TO CONTINUE OUTSIDE HIS PRESENCE.

<u>Actions speak louder than words, and Attorney Dilday's action of stepping away from the deposition table with the mental state that he was willing to let the examination continue without him being their to "protect" his client tells the Court all it needs to know in this regard.</u>[1]

## II.

### MEANINGFUL SANCTIONS MUST BE IMPOSED

These moving Defendants propose the following sanctions in the following order:

1.        Dismissal.

2.        Alternative No. 1 to dismissal – Plaintiff Pechner is precluded from testifying at trial or submitting any of her deposition testimony or any affidavit from herself in opposition to any Defendants motion for summary judgment.

---

[1]    Of course, the other action which speaks louder than words is Attorney Dilday's non-action. At no time has Plaintiff Pechner, through counsel, sought a protective order pursuant to Federal Rule of Civil Procedure, Rule 26(c), to be protected from "annoyance, embarrassment [or] oppression." One is here reminded of the quintessential example of such non-action proving the truth of the matter. *"Is there any point to which you would wish to draw my attention?" "To the curious incident of the dog in the night-time."* **"The dog did nothing in the night-time." "That was the curious incident,"** *remarked Sherlock Holmes.* -- Arthur Conan Doyle, in the short story Silver Blaze.

3. Alternative No. 2 to dismissal – Plaintiff Pechner is precluded from testifying at trial or submitting any of her deposition testimony or any affidavit from herself in opposition to any Defendants motion for summary judgment with respect to the subject matter of the questions set forth in Exhibits "C", "D" and "E" to Docket No. 188, Exhibit "A" to Docket No. 201, Exhibits "E" and "G" to Docket No. 209 and Exhibit "E" hereto.

4. If neither dismissal nor Alternative No. 1 to dismissal is adopted by the Court, then these moving Defendants seek an additional deposition day *each* to make up for the abusive deposition conduct of May 25 and 30 and June 7 and 22, 2006.

5. Monetary Sanctions:

| | | |
|---|---|---|
| May 5, 2006: | $ 5,800.00 | |
| May 25, 2006: | $ 2,908.65 | |
| June 7, 2006: | $ 2,204.50 | |
| June 22, 2006: | $ 2,125.30 | (Deposition Time: 9:00 a.m. to 1:00 p.m. (4 hours X $250.00/hour) = $1,000.00, plus Transcript: $ 1,125.30.  See Exhibit "F" hereto. |
| Total: | $13,038.45 | |

For the Defendants, **CITY OF REVERE,
CITY OF REVERE POLICE DEPARTMENT,
MAYOR THOMAS AMBROSINO, AND
POLICE CHIEF TERENCE REARDON**
By their Attorneys,


 /s/ Walter H. Porr, Jr.
Paul Capizzi, Esq., City Solicitor
BBO#:  646296
Walter H. Porr, Jr., Esq., Assistant City Solicitor
BBO#:  659462
City Hall, 281 Broadway
Revere, MA 02151
781-286-8166

Dated:  June 23, 2006.

**CERTIFICATE OF SERVICE**

      I, Walter H. Porr, Jr., Assistant City Solicitor and counsel of record for the Defendants, City of Revere and the City of Revere Police Department, hereby certify that I have electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. I caused to be served upon counsel of record, at the address stated below, via the method indicated, a true copy of same:

| | |
|---|---|
| James S. Dilday, Esq. | Michael J. Akerson, Esq. |
| Grayer & Dilday, LLP | Reardon, Joyce and Akerson, P.C. |
| 27 School Street, Suite 400 | 397 Grove Street |
| Boston, MA 02108 | Worcester, MA 01605 |
| Attorneys for the Plaintiffs | Attorneys for Defendants |
| Via CM/ECF e-mail | Bernard Foster, Salvatore Santoro, Roy Colannino, Frederick Roland, Thomas Doherty, John Nelson, James Russo, Michael Murphy, and Steven Ford |
| | Via CM/ECF e-mail |

                                                                /s/ Walter H. Porr, Jr.
                                                           Walter H. Porr, Jr.,

Dated: June 23, 2006