UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 03-12499 MLW

| | |
|---|---|
| TERRI L. PECHNER-JAMES | ) |
| and  SONIA FERNANDEZ | ) |
|     Plaintiffs | ) |
| | ) |
| VS. | ) |
| | ) |
| CITY OF REVERE, THOMAS | ) |
| AMBROSINO, MAYOR, CITY | ) |
| OF REVERE POLICE DEPT. | ) |
| TERRENCE REARDON, CHIEF | ) |
| OF POLICE, BERNARD FOSTER | ) |
| SALVATORE SANTORO, ROY | ) |
| COLANNINO, FREDERICK | ) |
| ROLAND, THOMAS DOHERTY | ) |
| JOHN NELSON, JAMES RUSSO | ) |
| MICHAEL MURPHY and | ) |
| STEVEN FORD | ) |
|     Defendants | ) |

## AFFIDAVIT OF TERRI PECHNER-JAMES IN OPPOSITION TO SIXTH STATUS REPORT

I, Terri Pechner-James, duly sworn depose and say:

1. On April 7, 2006, I arrived at 10:00 am for my deposition. Attorney Michael Akerson conducted the deposition. He started at 10:15 a.m. and he suspended it at about 5:00 p.m.

2. I considered that I had attended one whole day of deposition. All parties seemed to be in agreement with both the beginning and the end of the deposition.

3. On May 5, 2006, I arrived at the offices of Reardon, Joyce & Akerson, PC at 397 Grove Street, Worcester, MA at 10:00 am.

4. I was deposed by Walter Porr for an entire day. The deposition started at 10:15 am because Attorneys Dilday, Poor and Vigliotti were in a 7.1 conference for the first fifteen (15) minutes of the deposition.

5. On May 19, 2006, I arrived at 1:00 p.m at Revere City Hall for my deposition. No one was present. Attorney Michael Akerson arrived at 1:30 p.m; Attorney Dilday arrived at 1:45 p.m. This deposition was suspended by Attorney Akerson at 4:42 p.m.

6. On May 25, 2006, I arrived at 10:00 a.m. at the Offices of Reardon, Joyce & Akerson P.C at 397 Grove Street, Worcester, MA. The deposition began at 10:08 a.m. Atty Walter Porr conducted the deposition and suspended it at 5:00 p.m. I was deposed for an entire day.

7. On May 30, 2006, I arrived at 10:00 a.m in Worcester. he deposition commenced at 10:40 a.m. Attorney Akerson conducted the deposition. He suspended the deposition at 4:30 p.m.

8. On June 7, 2006, I arrived at 10:00 a.m. at the offices of Reardon, Joyce & Akerson P.C. The weather and road conditions made travel extremely difficult. There was constant rain and flooding in many places. Prior to the arrival of my counsel, I apologized to Attorney Porr for any inappropriate remarks that I may have make to him or about his family. He appeared to accept my apology. He has not changed his conduct toward me and he is still seeking sanctions against me for the deposition of May 5, 2006.

9. My counsel arrived at 11:00 a.m. Attorney Porr conducted the deposition. He noted that "Miss James was here right on the dot at 10:00". He noted that :there has been an offer to go until 6:00 to make up for the lost hour, and I think we'll just play it by ear and see how the day plays out."

10. After the lunch break, Attorney Porr had the following discussion with my attorney Dawne Thorne:
>Attorney Porr stated: We are back on the record. And before we get started, we re reconvening after our lunch break, and we started an hour late, and Miss Thorne at the beginning of the session offered to go until 6:00 to make up for the missing hour. And then during lunch break, defense counsel discussed that, and that the weather is deteriorating or continuing to be bad, and on top of that, my oldest daughter and son-in-law are in from California, so we want to go ahead and stop at five to give us a decent shot at getting back to Boston, the weather being what it is, and so that I can spend some time with my daughter and son-in law in from California this week.

11. It was my impression that on April 11, 2006, the court had given two and one half days more to Attorney Porr and three-quarters of a day to Attorney Akerson for additional depositions.

12. Attorney Porr had deposed me for a full, uninterrupted day on May 5, 2006, and he deposed me again on May 25, 2006 for a full day. My understanding was that on June 7, 2006, I had completed two full days of deposition and that this day was to be one-half day. I was present at 10:00 am. Attorney Porr began the deposition at 11:00 a.m. and suspended it at 4:44 p.m.

13. At the end of this deposition I felt that I had completed more than the two and one-half days of additional depositions that the court had ordered.

14. On June 22, 2006, I again appeared at Revere City Hall where I was deposed by Attorney Porr. The deposition began at 9:00 am and ended at 1:00 p.m as planned.

15. I have attended every deposition ordered by the court and the depositions agreed to by the parties. Despite Attorney Porr's abusive and confrontational manner, I have not been late or missed a single deposition.

16. There was an episode during the deposition on June 7, 2006 that exemplifies the less than professional manner in which Attorney Porr has always treated me and the confrontational manner that he adopts during my depositions. During this deposition he asked me:
    Did you ever see any of the anonymous letters being referenced there?

I answered :No

He asked: Did officer Mangino ever tell you about the fliers or letters?
I answered: She's got a book, you'll have to ask her.
He asked: My question was did she ever tell you about it?

17. Before I could answer the question, he responded:"Thats a yes or no question, Miss James. It is a yes or no question. " At this point he was leaning across the table, his pen was a few inches from my face.

18. Later in the deposition he acknowledged: I will tell you that you picked up my tone of voice accurately. The aggressive, antagonistic, and abusive manner of Walter Porr have caused me great emotional distress.

19. During the deposition on June 22, 2006, Attorney Porr again leaned across the table in an aggressive and confrontational manner, pointed his pen at my face during examination. My counsel, on this occasion, asked him to restrain himself and not point his pen at my face.

20. Attorney Porr is not seeking answers to his questions; he is seeking the answers that he needs. On June 7, 2006, he asked me the following questions:
    Q. What is your disability?
    A. Post traumatic disorder.
    Q. And is that post traumatic stress disorder making it difficult for you to answer simple and direct questions?
    A. Yes.
    Q. Okay.
    A. Yes.
    Q. So from now on, if your PTSD is making it hard for you to answer questions,

      Come up under the net and tell me that, all right?
      A. Okay.
      Q. But you have to understand that if your PTSD is making it difficult for you to ask questions, I may have to reask the very same question to get the answer I need

21. The answers that he needs may not be the answers that I provided but I have attended every deposition and responded to his questions. I have answered several thousand questions asked by Attorney Porr. Many of those questions were asked by Attorney Akerson, in the presence of Attorney Porr. I have provided answers to best of my ability.

Signed under pains and penalties of perjury.


/s/Terri Pechner-James
Terri Pechner-James