# EXHIBIT B

VOL. VI PG. 898

```
 1            IN THE UNITED STATES DISTRICT COURT

 2              FOR THE DISTRICT OF MASSACHUSETTS

 3
      TERRI PECHNER-JAMES
 4    and SONIA FERNANDEZ,
         Plaintiffs
 5                                       VOLUME VI
      VS.                   C.A. NO. 03-12499-MLW
 6
      CITY OF REVERE; THOMAS
 7    AMBROSINO, MAYOR; CITY OF
      REVERE POLICE DEPARTMENT,
 8    TERRENCE REARDON, CHIEF;
      BERNARD FOSTER, SALVATORE
 9    SANTORO, ROY COLANNINO,
      FREDERICK ROLAND, THOMAS DOHERTY,
10    JOHN NELSON, JAMES RUSSO,
      MICHAEL MURPHY, and STEVEN FORD,
11       Defendants

12

13

14

15         CONTINUED DEPOSITION of TERRI

16    PECHNER-JAMES taken at the request of the

17    defendants pursuant to Rule 30 of the Federal

18    Rules of Civil Procedure before Nancy A.

19    Diemdowicz, Registered Merit Reporter, a

20    notary public in and for the Commonwealth of

21    Massachusetts, on May 25, 2006, commencing at

22    10:08 A.M. at the offices of Reardon, Joyce &

23    Akerson, 397 Grove Street, Worcester,

24    Massachusetts.
```

McCARTHY REPORTING SERVICE   WORCESTER, MA
(508)753-3889 (IN MASS) 1-800-564-3889

VOL. VI PG. 899

```
 1

 2   A P P E A R A N C E S:

 3
     FOR THE PLAINTIFFS:
 4
     JAMES S. DILDAY, ESQ.
 5   GRAYER & DILDAY LLP
     27 School Street
 6   Boston, Massachusetts 02108

 7
     FOR THE DEFENDANTS, CITY OF REVERE; THOMAS
 8   AMBROSINO, MAYOR; CITY OF REVERE POLICE
     DEPARTMENT, TERRENCE REARDON, CHIEF:
 9
     WALTER H. PORR, JR., ESQ.
10   Office of the City Solicitor
     City Hall
11   281 Broadway
     Revere, Massachusetts  01251
12

13   FOR THE DEFENDANTS, BERNARD FOSTER, SALVATORE
     SANTORO ROY COLANNINO, FREDERICK ROLAND,
14   THOMAS DOHERTY, JOHN NELSON, JAMES RUSSO,
     MICHAEL MURPHY AND STEVEN FORD:
15
     MICHAEL J. AKERSON, ESQ.
16   REARDON, JOYCE & AKERSON, P. C.
     397 Grove Street
17   Worcester, Massachusetts 01605

18

19

20

21

22

23

24
```

VOL. VI PG. 900

```
 1              I N D E X

 2         DEPONENT:  TERRI PECHNER-JAMES

 3                                          PAGE

 4

 5   CONTINUED EXAMINATION BY MR. PORR      901

 6

 7

 8

 9

10              EXHIBITS

11                                          PAGE

12   15.  Patient History & Physical Exam   910

13   16.  Affidavit - Exhibit 18            922

14   17.  Affidavit - U.S. District Court   923

15   18.  Photocopy of Photograph          1007

16   19.  Photocopy of Photograph          1011

17   20.  Photocopy of Photograph          1013

18   21.  Memorandum dated 12/21/98        1073

19   22.  Sonia Fernandez Supplementation  1136

20        of Interrogatories

21

22

23

24
```

VOL. VI PG. 901

```
 1           MR. PORR:  We're back on the record
 2   with the deposition of Terri Pechner.
 3   CONTINUED EXAMINATION BY MR. PORR:
 4        Q.   Good morning, Ms. Pechner.
 5        A.   Good morning.
 6        Q.   You understand that you're still
 7   under oath?
 8        A.   Yes, I do.
 9        Q.   Okay.  Have you taken any
10   medication this morning?
11        A.   Yes, I have.
12        Q.   What have you taken?
13        A.   Synthroid and Paxil.
14        Q.   The Synthroid, is that an
15   artificial thyroid type medication?
16        A.   Yes.
17        Q.   All right.  And the Paxil you take
18   for what condition?
19        A.   PTSD.
20        Q.   Okay.  How are you feeling this
21   morning?
22        A.   Lousy.
23        Q.   Okay.  And when you say "lousy,"
24   what do you mean by that?
```

 1      A.   Fear of retaliation.
 2      Q.   Is that your guess, or did someone
 3  tell you that?
 4      A.   No.  Someone told me that.
 5      Q.   Who?
 6      A.   I can tell you that Officer
 7  Malatesta doesn't want to come forward with
 8  her complaints because she was afraid of
 9  retaliation.
10      Q.   Okay.  Did Officer Malatesta tell
11  you that she specifically did not reference
12  this drawing at the January '99 meeting
13  because she was afraid of retaliation?
14      A.   Again, I don't remember what
15  somebody mentioned at the meeting.  Officer
16  Malatesta told me she was afraid to mention
17  incidents because she was afraid of Lieutenant
18  Foster.
19      Q.   Okay.
20      A.   And afraid of retaliation.  She was
21  afraid that Lieutenant Foster -- as a matter
22  of fact, Officer Malatesta had told me that
23  she would be a witness in this case, and at
24  that time, when we first filed, she had given

VOL. VI PG. 1149

```
 1   me her notes, and I think we had touched on it
 2   before.
 3            She wanted to speak up regarding
 4   the case.  She wanted to speak to my
 5   investigator.  However, she was going for a
 6   job with Secret Service and decided that
 7   Lieutenant Foster was going to give her a good
 8   reference and that she would choose to have
 9   her reference over standing by us with this
10   case.
11       Q.   When did you learn that?
12       A.   I was in Florida so -- I don't -- I
13   don't remember the exact date.
14       Q.   Who told you?
15       A.   She did.
16       Q.   Did she tell you in person?  Over
17   the phone?  Via e-mail?  Via a letter?
18       A.   She told me in person.
19       Q.   Okay.  Was she visiting you in
20   Florida, or were you visiting up here?
21       A.   I was visiting here.  She told me
22   via instant message.
23       Q.   So it wasn't face to face?
24       A.   It was several times we talked
```

VOL. VI PG. 1150

```
 1   about it.
 2        Q.    Face to face?
 3        A.    No.  We talked about it face to
 4   face; we talked about it when I was in
 5   Florida.
 6        Q.    Via instant messaging?
 7        A.    Yeah.
 8        Q.    Okay.  And when did you first start
 9   talking about it?
10        A.    After she decided to recant her
11   statement that she had given to the private
12   investigator.
13        Q.    What statement are you talking
14   about?
15        A.    Statement of facts about the
16   harassment.
17        Q.    Which private investigator?
18        A.    Private investigator that I hired.
19        Q.    What's his name?
20        A.    John McFarb (phon).
21        Q.    And when did she give him a
22   statement?
23        A.    I don't recall the date.
24        Q.    It was a written statement?
```

VOL. VI PG. 1151

```
 1      A.    It was a written statement.
 2      Q.    Do you have a copy of that
 3   statement?
 4      A.    I don't believe so.
 5      Q.    Did you give Mr. Dilday a copy of
 6   the statement?
 7      A.    There was a statement that was
 8   crossed out, and she sent a letter stating
 9   that at this time -- I don't remember.  She
10   recanted her statement and there was really no
11   statement.
12      Q.    Have you seen that letter, the
13   recanting letter?  Simple question.  Yes or
14   no.  Have you seen the letter recanting the
15   statement?
16      A.    Yes, I have.
17      Q.    Okay.  When's the last time you saw
18   it?
19      A.    I don't recall.
20      Q.    Where did you see it?
21      A.    I don't remember.
22      Q.    Did the investigator show it to
23   you?
24      A.    I don't remember.  It was a couple
```

VOL. VI PG. 1152

```
 1   years ago.  I don't remember.  I saw -- saw
 2   it.  I remember speaking to Lynn like it was
 3   the back of my hand.
 4        Q.   Was the letter addressed to you or
 5   addressed to the investigator?
 6        A.   I don't -- I don't remember.
 7        Q.   Okay.  Does your investigator have
 8   a copy of her letter?
 9        A.   You could ask him.  I mean --
10        Q.   Do you know?
11        A.   No.
```