# EXHIBIT C

```
1           UNITED STATES DISTRICT COURT
              DISTRICT OF MASSACHUSETTS
2


3

    TERRI PECHNER-JAMES
4   and SONIA FERNANDEZ,

5        Plaintiffs,
                                    VOLUME VIII
6   VS.                       C.A. NO. 03-12499-MLW

7
    CITY OF REVERE; THOMAS
8   AMBROSINO, MAYOR; CITY OF
    REVERE POLICE DEPARTMENT,
9   TERRENCE REARDON, CHIEF;
    BERNARD FOSTER, SALVATORE
10  SANTORO, ROY COLANNINO,
    FREDERICK ROLAND, THOMAS DOHERTY,
11  JOHN NELSON, JAMES RUSSO,
    MICHAEL MURPHY, and STEVEN FORD,
12
         Defendants.
13

14

15     CONTINUED DEPOSITION of SONIA FERNANDEZ taken

16  at the request of the defendants pursuant to

17  Rule 30 of the Federal Rules of Civil Procedure

18  before Dawn J. Cormier Bourn, a notary public in

19  and for the Commonwealth of Massachusetts, on

20  June 21, 2006, commencing at 9:17 a.m. at the

21  Revere City Hall, 281 Broadway, Revere,

22  Massachusetts.

23

24
```

COPY

```
 1    A P P E A R A N C E S :

 2

      FOR THE PLAINTIFF:
 3
      DAWNE H. THORNE, ESQ.
 4    GRAYER & DILDAY
      27 School Street
 5    Boston, Massachusetts   02108

 6
      FOR THE DEFENDANT, CITY OF REVERE; THOMAS
 7    AMBROSINO, MAYOR; CITY OF REVERE POLICE
      DEPARTMENT, TERRENCE REARDON, CHIEF:
 8
      WALTER H. PORR, JR., ESQ., and
 9    PAUL CAPIZZI, ESQ.
      Office of the City Solicitor
10    City Hall, 281 Broadway
      Revere, Massachusetts  01251
11

12    FOR THE DEFENDANTS, BERNARD FOSTER, SALVATORE
      SANTORO, ROY COLANNINO, FREDERICK ROLAND,
13    THOMAS DOHERTY, JOHN NELSON, JAMES RUSSO,
      MICHAEL MURPHY AND STEVEN FORD:
14
      JOHN K. VIGLIOTTI, ESQ.
15    REARDON, JOYCE & AKERSON
      387 Grove Street
16    Worcester, Massachusetts   01605

17

18

19

20

21

22

23

24
```

1

2

3

4                    I N D E X

5         DEPONENT:   SONIA FERNANDEZ

6                                                    PAGE

7    FURTHER EXAMINATION BY MR. PORR              1520

8

9

10

11

12                    EXHIBITS

13                                                   PAGE

14   45    ANSWERS TO INTERROGATORIES              1531

15   46    HANDWRITTEN NOTES                       1533

16   47    JULY 6, 1998 NOTE                       1577

17   48    SEPTEMBER 11, 1998 NOTE                 1585

18   49    SEPTEMBER 22, 1998 NOTE                 1597

19   50    OCTOBER 2, 1998 NOTE                    1599

20

21

22

23

24

```
 1              SONIA FERNANDEZ, PREVIOUSLY SWORN.
 2                          - - - - -
 3              MS. THORPE:  I know we're 15 minutes
 4      late, so do you want to go 15 minutes later?
 5              MR. PORR:  Okay.
 6                          - - - - -
 7      FURTHER EXAMINATION BY MR. PORR:
 8         Q.     So we're back on the record with
 9      Ms. Fernandez.  Good morning.
10         A.     How are you?
11         Q.     Good, thank you.  How about yourself?
12         A.     Tired.
13         Q.     Having trouble sleeping?
14         A.     Yeah.
15         Q.     Still?
16         A.     Yeah.
17         Q.     Take any medication today?
18         A.     Nothing.
19         Q.     All right.  Aside from tired, are you
20      feeling okay?
21         A.     Yeah.  Yes, sorry.  Yes.
22         Q.     Madam reporter asked me before we
23      started to ask you to speak up.
24         A.     Okay.  I'm sorry.  You know what it
```

1    Q.    Are these notes that we're looking at,
2  Exhibit 46, are they in your handwriting?
3    A.    Yes.
4    Q.    And it looks like the original was on
5  standard school notebook paper?
6    A.    Yes.
7    Q.    When did you write these notes?
8    A.    I used it -- well, I wrote them when
9  they happened.
10   Q.    So did you keep a notebook where you
11 started recording notes of events that happened
12 concerning the Revere Police Department?
13   A.    You mean like a diary?
14   Q.    I guess I was asking, do these notes
15 all come from the same notebook?
16   A.    I don't know.  I don't think so.
17   Q.    Okay.  Are these all of your notes?
18   A.    Yes, I believe so.
19   Q.    All right.  So as you sit here now,
20 there's no reference to the chalkboard drawing
21 referred to in Paragraph 96 in the complaint in
22 these notes?
23   A.    I know where I saw it, the date.
24   Q.    Okay.  Where?

```
 1        A.    Officer Malatesta, her notes.
 2        Q.    You've seen Officer Lynn Malatesta's
 3   notes?
 4        A.    Yes, I have.
 5        Q.    Where did you see those notes?
 6        A.    In my attorney's office.
 7        Q.    Mr. Dilday has them?
 8        A.    I believe so.
 9        Q.    When did you last see Officer Lynn
10   Malatesta's notes in Mr. Dilday's office?
11        A.    Years ago.
12        Q.    Can you be a little more precise in
13   terms of how many years ago?
14        A.    Two or three.
15        Q.    Do you know how Mr. Dilday came about
16   a copy of Officer Lynn Malatesta's notes?
17        A.    I don't know if she gave me a copy or
18   if she gave Officer James a copy.
19        Q.    Okay.  When you say Officer James, you
20   mean Terri?
21        A.    Terri.
22        Q.    The only reason I ask for the
23   distinction is because there's Officer Mark James
24   as well.
```

```
 1        A.     Sorry.
 2        Q.     Had you seen Lynn Malatesta's notes
 3   prior to seeing them in Mr. Dilday's office?
 4        A.     Yes.
 5        Q.     When did you first see Lynn
 6   Malatesta's notes?
 7        A.     I don't remember.
 8        Q.     What was the occasion that resulted in
 9   you seeing Lynn Malatesta's notes the first time?
10        A.     I can tell you the reason she showed
11   me.
12        Q.     Sure.
13        A.     They were -- when I went and I didn't
14   know what to do with Lieutenant Foster, they told
15   me that they would be a witness for me if I
16   needed one.
17        Q.     Who is the "they" that you're talking
18   about here?
19        A.     Lynn Malatesta, Julie Malvarosa.
20        Q.     Was this at some sort of a meeting the
21   women were having?
22        A.     No, no, just a general conversation we
23   had at the station.
24        Q.     And Lynn had these notes with her at
```

```
 1   the time?
 2        A.   No, no.  I don't know if she brought
 3   them to work and I read them in the cruiser or if
 4   she gave me a copy of them.  I don't remember.
 5        Q.   How many pages of notes did Lynn have?
 6        A.   Lynn has a lot of pages.
 7        Q.   More than 10?
 8        A.   Yes.
 9        Q.   More than 20?
10        A.   Possibly.
11        Q.   As many as 30?
12        A.   I don't know.
13        Q.   As many as 50?
14        A.   No, I don't think 50.
15        Q.   Okay.  So somewhere between 20 and 30?
16        A.   I think so.
17        Q.   Handwritten?
18        A.   I don't remember.
19        Q.   Because we've got 21 pages of notes
20   from Terri Pechner which are typed, and then we
21   have a few pages of notes from you which are
22   handwritten.
23        A.   I think she wrote them.  I think she
24   wrote them.
```

```
 1        Q.    Eight-and-a-half by 11 size paper?
 2   Normal size paper?
 3        A.    Like your notebook.
 4        Q.    Like my note pad?
 5        A.    Yes.
 6        Q.    Single spaced?
 7        A.    Yes.  I would say yes.
 8        Q.    Okay.  Do you recall the time period
 9   that the notes covered?
10        A.    What do you mean?
11        Q.    The notes, were they in chronological
12   order?
13        A.    Yes.  She's very detailed like that.
14        Q.    And did they start, for instance, back
15   in September of '95 or February of '96 and go in
16   chronological order until some end date?
17        A.    Yes.
18        Q.    Do you recall the date the notes
19   started?
20        A.    No.  I don't remember.
21        Q.    Did they cover anything that occurred
22   at the academy?
23        A.    I don't know.
24        Q.    You went to the academy with Lynn;
```

1  correct?
2     A.  Yes, yes.
3     Q.  And that was roughly September of '95
4  until roughly February of '96?
5     A.  Yes.
6     Q.  And then you and Lynn and the rest of
7  those academy graduates went to work as police
8  officers for the city as opposed to being cadets
9  at the academy in February of '96?
10    A.  Right.
11    Q.  Assuming then that the notes picked up
12 with anything that may have happened once you got
13 here working for the City of Revere in February
14 of '96, and you indicated they seemed to go in
15 chronological order, do you know the end date for
16 the notes that you saw?
17    A.  They're probably still going.
18    Q.  All right.  So your recollection is
19 that Lynn showed you a copy of her notes at least
20 once while you were still working for the Revere
21 Police Department?
22    A.  Yes.
23    Q.  You have since seen the notes in
24 Attorney Dilday's office?

```
1       A.      I did.
2       Q.      Have you seen them any other time?
3       A.      No.
4       Q.      When you looked at Lynn's notes at
5    Attorney Dilday's office, were you looking at a
6    document that was consistent with what you had
7    seen before?
8       A.      Sorry.  No.
9       Q.      What was different?
10      A.      Oh, you mean when I saw her notes
11   again?
12      Q.      Yeah.
13      A.      They looked exactly the same.  I'm
14   sorry.
15      Q.      That's fine.
16              What I was looking for, had Lynn added
17   any additional pages since the last time you had
18   seen them?
19      A.      Oh, I don't remember.
20      Q.      Because presumably there's a gap in
21   time between when you first saw them and when you
22   next saw them?
23      A.      Right.
24      Q.      Do you know what that gap is?  A
```

```
 1   couple years?
 2        A.   Possibly.
 3        Q.   All right.  And that's what I'm
 4   getting at.  You said a moment ago Lynn is
 5   probably still taking notes.
 6        A.   Yes.
 7        Q.   So I would assume that when you first
 8   saw the notes they were complete up to that time?
 9        A.   Right.
10        Q.   And then a couple years later you saw
11   them in Attorney Dilday's office, and what I was
12   wondering is, did you see additional notes you
13   hadn't seen before covering that gap?
14        A.   No.  No.  If they were there, I didn't
15   read them.
16        Q.   So have you -- go ahead.
17        A.   If I did read them, I don't remember.
18        Q.   Okay.
19        A.   I'm being honest.
20        Q.   That's fine.
21             And let me back up and just double-
22   check.  Have you seen the notes more than twice?
23        A.   I saw them twice.
24        Q.   Lynn showed them to you once.
```

```
 1    Attorney Dilday showed them to you once.
 2         A.    I don't know if I brought them to him
 3    or if Terri brought them to him.
 4         Q.    No, I understand.
 5         A.    I saw them in his office.
 6         Q.    Right.  So, again, Lynn showed you her
 7    notes once, and then next you saw them in
 8    Attorney Dilday's office?
 9         A.    Yes.
10         Q.    Okay.  And so it's your recollection
11    going back to Paragraph 96 that the date of this
12    incident, July of '98, you may be taking that
13    from Lynn's notes?
14         A.    Yes.
15         Q.    Okay.  Now, you indicated that you saw
16    this drawing?
17         A.    Yes.
18         Q.    Tell me the circumstances that led to
19    you seeing the drawing.  What was going on?
20         A.    You don't want me to describe it to
21    you?
22         Q.    I'm sorry?
23         A.    You don't want me to describe it, do
24    you?
```

1       Q.      Sure.

2               Let me show you No. 116.  Question 116

3   dealt with the allegations of Paragraph 63 and 64

4   involving this incident with Sergeant Nelson;

5   okay?  And it asks to state the exact date or the

6   closest approximation you have thereof of the

7   alleged incident involving Sergeant Nelson.

8               And then the answer I have here is,

9   "The incident involving Sergeant Nelson occurred

10  on September 19, 1998, between 1900 and 2100

11  hours, or between 7:00 and 9:00 p.m."

12              Do you recall where you got that

13  information from?

14      A.      Lynn's notes.

15      Q.      All right.  Turning to Exhibit 6,

16  which are the notes from the January meeting the

17  women had in '99, at Lines 194 to 203 this

18  incident is talked about; correct?

19      A.      Yes.

20      Q.      Do you recall who brought this up at

21  the meeting?

22      A.      Had to be Officer Malatesta.

23      Q.      Well, that's a logical assumption.  I

24  would agree with you logically one would assume

1  at about 9:20, and it's now about 12:20, 12:25.
2  There's no way we can finish four additional
3  hours today, which is what I estimate the court
4  ordered two-and-a-half days it would take in
5  terms of completing those two-and-a-half days.
6           Ms. Thorne has obligations this
7  afternoon.  Mr. Dilday has obligations this
8  afternoon.  And so we're going to go ahead and
9  finish up for the day, and we'll reschedule the
10 remaining four hours later.
11          MR. VIGLIOTTI:  While we're on the
12 record, there was reference in the record to
13 notes in the possession of Mr. Dilday.  I believe
14 these individual defendants in discovery
15 requested any notes or correspondence relating to
16 the facts of this case, which those notes have
17 not been produced, nor was an objection filed.
18          I am asking for copies of those, if
19 you can bring it to Mr. Dilday's attention.  I
20 just want that on the record in regards to those
21 notes.
22          MR. PORR:  Lynn Malatesta's notes?
23          MR. VIGLIOTTI:  Lynn Malatesta's
24 notes, which it doesn't sound like there's an

1    attorney-client privilege.  Testimony was given
2    here today regarding those notes, so I'd ask you
3    to relay that message to Mr. Dilday that I am
4    requesting those notes.
5              MS. THORPE:  I will definitely relay
6    that message.  This is the first I've heard of
7    Ms. Malatesta's notes, so -- .
8              MR. VIGLIOTTI:  Me, too.
9              MR. PORR:  Good enough.  Thank you.
10             (Deposition concluded at 12:25 p.m.)