## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **TERRI PECHNER-JAMES and SONIA FERNANDEZ,** | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **C.A. No. 03-12499-MLW** |
| | ) | |
| **CITY OF REVERE, THOMAS AMBROSINO, MAYOR, CITY OF REVERE POLICE DEPARTMENT, TERRENCE REARDON, CHIEF OF POLICE, BERNARD FOSTER, SALVATORE SANTORO, ROY COLANNINO, FREDERICK ROLAND, THOMAS DOHERTY, JOHN NELSON, JAMES RUSSO, MICHAEL MURPHY and STEVEN FORD,** | ) ) ) ) ) ) ) ) ) | |
| **Defendants,** | ) | |

### CITY DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' OPPOSITION TO CITY DEFENDANTS UNSOLICITED SIXTH STATUS REPORT

**NOW COME** Defendants, City of Revere, City of Revere Police Department, Mayor Thomas Ambrosino and Police Chief Terence Reardon (City Defendants), and hereby move the Court to strike Plaintiffs' opposition to City Defendants Unsolicited Sixth Status Report (Docket No. 214) and in support hereof state as follows:

### PLAINTIFFS' OPPOSITION PLEADING VIOLATES FEDERAL RULES OF CIVIL PROCEDURE, RULE 12(f)

Federal Rules of Civil Procedure, Rule 12(f) states in relevant part that "the court may order stricken from any pleading any . . . immaterial, impertinent, or scandalous matter."

In Docket No. 214, page 3, paragraph no. 10, Plaintiff Pechner states that she "has experienced intense and very personal abuse from Assistant City Solicitor of the City of Revere, Walter H. Porr, Jr. Esq." No evidence is presented in support of this charge. No citation to the record is submitted in support of this charge. In the absence of any proof, the charge is "immaterial, impertinent and scandalous."

In Docket No. 214, page 3, paragraph no. 11, Plaintiff Pechner states that "On May 5, 2006, Walter H. Porr, provided the most glaring example of his abusive behavior. At page 721, of that deposition, he asked the Plaintiff whether she had pregnancies other than the ones that resulted in the birth of her three children." In truth, Plaintiff Pechner has had five (5) pregnancies, only three (3) of which have resulted in live births. See Exhibit "A" hereto and more particularly Exhibit 15 attached thereto. More to the point, this question is not only ripped out of context from the deposition itself, it is also ripped out of context from this litigation. Issues related to maternity leave policies, or the lack thereof, in conjunction with sexual harassment policies, or the lack thereof, and Plaintiff's sexual harassment complaint are all intertwined. See e.g. Docket No. 216, page 2, second paragraph: "The Plaintiffs were hired into a Department that still does not have a maternity leave policy . . ." Thus, issues related to maternity, particularly as reflected in Plaintiff Pechner's medical records which the Court ordered released to the Defendants, are legitimate areas of inquiry. Thus, here again, the charge is "immaterial, impertinent and scandalous."

In Docket No. 214, page 3, paragraph no. 13, Plaintiff Pechner states that on May 22, 2006, "[t]he court further instructed Walter H. Porr to refrain from that (sic) pursuing that line of questioning." This is a blatantly false statement. The Court's Discovery Order bearing that date, Docket No. 199, page 2, paragraph no. 3, states: "Defense counsel shall not inquire into the Plaintiffs' sexual relationships absent prior approval of the Court." The Court said nothing about questioning the Plaintiff about her medical records which the Court itself had released to the Defendants. Thus, here again, the charge is "immaterial, impertinent and scandalous."

In Docket No. 214, page 3, paragraph no. 14, Plaintiff Pechner states that "[o]n May 25, 2006, Walter H. Porr **opened** that deposition with more questions about abortions and miscarriages. Despite the courts (sic) explicit instructions, Walter H. Porr asked the plaintiff specifically: 'Have

you had any miscarriages?'"  Emphasis added.  This is another blatantly false statement.  The relevant deposition excerpts are attached hereto as Exhibit "A."  As the Court will observe, the testimony for the deposition session of May 25, 2006, begins at page 901.  Page 901 through the middle of page 907 is devoted to Plaintiff Pechner's mental and physical health and determining whether or not she can proceed with the deposition itself.  Beginning at page 907, line 11, the following examination ensues:

> Q.     Okay.  Have you reviewed anything related to this case between the last time I got to question you on May 5th and today?
>
> A.     Can you ask that again?
>
> Q.     Have you reviewed anything related to this case between May 5th, the last time I got to question you, and today?
>
> A.     I've taken a look at your deposition that you claim you didn't ask whether or not I had an abortion.
>
> Q.     So that was the May 5th deposition transcript?
>
> A.     Correct.
>
> Q.     When did you look at that?
>
> A.     I don't -- I don't know when I got it.
>
> Q.     A week ago?  Two weeks ago?
>
> MR. DILDAY:  I don't know when I gave it to you to look at.
>
> Q.     If you don't recall, that's fine.  I'm just asking --
>
> A.     I don't recall when he gave it to me.
>
> Q.     And, again, let me explain.  When a witness says they don't recall, attorneys, like myself, will frequently ask a follow-up question designed to see if we can help trigger recall or if we can give you some parameters that you can say, you know, it was last week but it wasn't two weeks ago, or something to that effect.  And that's all I'm doing is I'm just trying to see if I can get some definition, some more clarity, when I ask those kind of questions.  Did you read the whole transcript?

3

A.      No.

Q.      Okay.  What did you read for?  Were you looking for something in particular?

A.      Yeah.  The fact that you -- your line of questioning was completely unacceptable.

Q.      Okay.

A.      And the fact that you said you told Sonia that -- and Jimmy that you did not say that I had an abortion.

Q.      All right.  Did you find in the deposition transcript where I asked that question?

A.      I found where you asked had I had any other pregnancies, other than the three that I now have.

Q.      Okay.  And why did you interpret that as a question about abortion?

A.      Because one would lead that to believe that if you have seven children, Attorney Porr, and you either have a miscarry or you have an abortion.  So, you know, I think that's absolutely none of your business and has nothing to do with the case.

Q.      Have you had any miscarriages?

A.      I'm not answering that question.

Several things are evident here.  First, it was the Plaintiff who chose to make an issue out of the question about the number of pregnancies she had experienced.  Second, when confronted about why she interpreted the question the way she did, <u>as asking directly about abortions and only abortions</u>, she then indicated that the question could be interpreted as asking about miscarriages as well.  But since the Plaintiff had interpreted the question as only asking about abortions, the next logical question in light of her miscarriage response was to ask if she had had any miscarriages – <u>the obvious inference being that she had not, given her reaction to the original question in the first instance</u>.  Third, the Court had ordered that Plaintiff's medical records regarding her care and treatment by Dr. Kerouac, her Ob/Gyn, be released to the Defendants.  These records reflected that Plaintiff Pechner had in fact, as of 2001, been pregnant four (4) times, though as of that time, she had

only two children.  Fourth, Plaintiff Pechner continues to harp upon the lack of a maternity leave policy as a fact/issue dispositive of her employment discrimination claim – "The Plaintiffs were hired into a Department that still does not have a maternity leave policy . . ." Docket No. 216, page 2, second paragraph.  Fifth, points three and four identified immediately above were the immediate subject of discussion and testimony after the miscarriage question, (Deposition excerpt pages 910-914), a fact conveniently ignored by the Plaintiff.

As further proof that the statement is blatantly false, Plaintiff asserts in Docket 216 at page 7 that "[d]uring the May 25, 2006 deposition, *after a brief introduction*, the first substantive question that the Assistant City Solicitor asked the Plaintiff was "**Have you had any miscarriages?"** **Exhibit 15** p. 909."  Bold and italics added.  <u>Why the change from "opened" to "after a brief introduction</u>???  The Court will recall that at the Status Conference of June 27, 2006, Counsel for City Defendants began to respond to this, and many other, gross mischaracterizations of the record contained in Docket No. 214.  The Court stopped Counsel and indicated that since there were no record citations to back-up the claim, the Court would not consider it.  After the hearing and before they had left the courtroom, Counsel for the City Defendants approached Plaintiff's Counsel about this, and other mischaracterizations, in Docket No. 214.  A letter memorializing this conversation was sent the next day.  A true and accurate copy of the same is attached hereto as Exhibit "B."  Thus, Plaintiff's change from "opened" in Docket No. 214 to "after a brief introduction" in Docket No. 216, is no accident, but rather a very telling admission of untruthfulness.

Thus, here again, the charge is "immaterial, impertinent and scandalous."

In Docket No. 214, page 4, paragraph no. 15, Plaintiff Pechner states that "[h]e [Walter H. Porr] then proceeded to spend the first six (6) pages of that deposition asking the Plaintiff about miscarriages and pursuing topics that the court instructed him not to pursue."  Again, this is yet

another blatantly false statement.  As Exhibit "A" will amply demonstrate, the first seven (7) pages of the deposition session were devoted to Plaintiff Pechner's mental and physical health and determining whether or not she can proceed with the deposition itself.  Thus, once more, the charge is "immaterial, impertinent and scandalous."

In Docket No. 214, page 4, paragraph no. 16, Plaintiff Pechner states that "Walter H. Porr's pursuit of this information was not only a direct violation of the court's instructions but it was an attempt to harass, annoy and embarrass the Plaintiff."  Here again, this statement is blatantly false particularly since (1) Plaintiff herself initiated the line of inquiry; (2) the Court released Plaintiff's medical records to the Defendants related to this line of inquiry; and, (3) the Court's Dicovery Order of may 22, 2006, in no way prohibited this line of inquiry.  Thus, once again, the charge is "immaterial, impertinent and scandalous."

In Docket No. 214, page 4, paragraph no. 17, Plaintiff Pechner states that "Walter H. Porr later in the deposition of May 25 2006 tried to make a tenuous but unconvincing connection between his forbidden line of questioning and the Defendants lack of sexual harassment policy.  This connection is a fig leaf designed only to hide his violation of the court's order."  Yet again, this statement is blatantly false.  First, no citation to the record is submitted in support of this charge.  Second, the record will reflect that the connection being made by the Plaintiff, and hence being inquired about by the Defendants, was between pregnancies and the alleged lack of a maternity leave policy.  See Exhibit "A", transcript page 911, line 24 to page 914, line 23.  See also Docket No. 216, page 2, second paragraph:  "The Plaintiffs were hired into a Department that still does not have a maternity leave policy . . ."  Third, there was no violation of any court order.  Thus, here too, the charge is "immaterial, impertinent and scandalous."

As an officer of the court, City Defendants' Counsel is entitled to the protection of the Court from these continuous and unsubstantiated attacks against his character and his person.  The fact that the Court refused to take Docket No. 214 up at the hearing of June 27, 2006, while appreciated, does nothing to stop the abuse or correct the record and purge it of these constant and baseless attacks.

WHEREFORE, the premises being considered, City Defendants moves the Court to strike the Plaintiffs' Opposition to City Defendants' Unsolicited Sixth Status Report in its entirety for the reasons set forth above.  Furthermore, once so stricken, City Defendants request that the pleading be sealed and made inaccessible absent further order of the Court.


For the Defendants
By their Attorneys,


 /s/  Walter H. Porr, Jr
Paul Capizzi, Esq., City Solicitor
BBO#:  646296
Walter H. Porr, Jr., Esq.
Assistant City Solicitor
BBO#:  659462
City Hall, 281 Broadway
Revere, MA 02151
781-286-8166

Dated:  July 7, 2006.

## CERTIFICATE OF SERVICE

I, Walter H. Porr, Jr., Assistant City Solicitor and counsel of record for the Defendants, City of Revere, City of Revere Police Department, Mayor Thomas Ambrosino and Police Chief Terence Reardon, hereby certify that I have electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. I caused to be served upon counsel of record, at the address stated below, via the method indicated, a true copy of same:

| | |
|---|---|
| James S. Dilday, Esq. | Michael J. Akerson, Esq. |
| Grayer & Dilday, LLP | Reardon, Joyce and Akerson, P.C. |
| 27 School Street, Suite 400 | 397 Grove Street |
| Boston, MA 02108 | Worcester, MA 01605 |
| Attorneys for the Plaintiffs | Attorneys for Defendants |
| Via CM/ECF e-mail | Bernard Foster, Salvatore Santoro, |
| | Roy Colannino, Frederick Roland, |
| | Thomas Doherty, John Nelson, |
| | James Russo, Michael Murphy, |
| | and Steven Ford |
| | Via CM/ECF e-mail |

  /s/  Walter H. Porr, Jr.
Walter H. Porr, Jr.,

Dated:  July 7, 2006