# EXHIBIT A

VOL. IV PG. NO.  550

```
 1           IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF MASSACHUSETTS
 2

 3   TERRI PECHNER-JAMES
     and SONIA FERNANDEZ,
 4      Plaintiffs
                              VOLUME IV
 5   VS.            C.A. NO. 03-12499-MLW

 6   CITY OF REVERE; THOMAS
     AMBROSINO, MAYOR; CITY OF
 7   REVERE POLICE DEPARTMENT,
     TERRENCE REARDON, CHIEF;
 8   BERNARD FOSTER, SALVATORE
     SANTORO, ROY COLANNINO,
 9   FREDERICK ROLAND, THOMAS DOHERTY,
     JOHN NELSON, JAMES RUSSO,
10   MICHAEL MURPHY, and STEVEN FORD,
        Defendants
11

12

13

14       CONTINUED DEPOSITION of TERRI

15   PECHNER-JAMES taken at the request of the

16   defendants pursuant to Rule 30 of the Federal

17   Rules of Civil Procedure before Nancy A.

18   Diemdowicz, Registered Merit Reporter, a

19   notary public in and for the Commonwealth of

20   Massachusetts, on May 5, 2006, commencing at

21   10:15 A.M. at the offices of Reardon, Joyce &

22   Akerson, 397 Grove Street, Worcester,

23   Massachusetts.

24
```

McCARTHY REPORTING SERVICE  WORCESTER, MA
(508)753-3889 (IN MASS) 1-800-564-3889

```
                                              VOL. IV PG. NO.  551



 1   A P P E A R A N C E S:

 2
     FOR THE PLAINTIFFS:
 3
     JAMES S. DILDAY, ESQ.
 4   GRAY & DILDAY LLP
     27 School Street
 5   Boston, Massachusetts 02108


 6
     FOR THE DEFENDANTS, CITY OF REVERE; THOMAS
 7   AMBROSINO, MAYOR; CITY OF REVERE POLICE
     DEPARTMENT, TERRENCE REARDON, CHIEF:
 8
     WALTER PORR, ESQ.
 9   PAUL CAPIZZI, ESQ.
     Office of the City Solicitor
10   City Hall, 281 Broadway
     Revere, Massachusetts  01251
11

12   FOR THE DEFENDANTS, BERNARD FOSTER, SALVATORE
     SANTORO, ROY COLANNINO, FREDERICK ROLAND,
13   THOMAS DOHERTY, JOHN NELSON, JAMES RUSSO,
     MICHAEL MURPHY AND STEVEN FORD:
14
     MICHAEL AKERSON, ESQ.
15   REARDON, JOYCE & AKERSON, P. C.
     397 Grove Street
16   Worcester, Massachusetts 01605

17

18

19

20

21

22

23

24


               McCARTHY REPORTING SERVICE  WORCESTER, MA
                  (508)753-3889 (IN MASS) 1-800-564-3889
```

VOL. IV PG. NO. 552

```
 1                I N D E X
 2         DEPONENT:  TERRI PECHNER-JAMES
 3                                              PAGE
 4
 5   EXAMINATION BY MR. PORR                     554
 6
 7
 8
 9
10                 EXHIBITS
11                                              PAGE
12   8.   1996 Calendar                          594
13   9.   Memorandum dated 1/14/99               597
14   10.  Photocopy of Photograph                617
15   11.  Affidavit of Compliance, MCAD          652
16   12.  1997 Calendar                          744
17   13.  Answers to Interrogatories             756
18
19
20
21
22
23
24
```

McCARTHY REPORTING SERVICE  WORCESTER, MA
(508)753-3889 (IN MASS) 1-800-564-3889

VOL. IV PG. NO.  553

```
 1         QUESTIONS WITNESS REFUSED TO ANSWER
 2
 3
 4            Page 663 - Lines 2 -4
 5            Page 664 - Lines 14-15
 6            Page 664 - Lines 22-23
 7            Page 678 - Lines 7-10
 8            Page 678 - Lines 20-22
 9            Page 679 - Lines 3-5
10            Page 681 - Lines 7-9
11            Page 721 - Lines 7-9
12            Page 721 - Lines 14-15
13            Page 730 - Lines 5-9
14            Page 744 - Lines 4-5
15
16
17
18
19
20
21
22
23
24
```

VOL. IV PG. NO. 554

```
 1           MR. PORR:  All right.  This is
 2   Friday, May 5, 2006.  It's approximately
 3   10:15 A. M.  We are on the record for the
 4   fourth deposition session of Terri Pechner in
 5   the matter of Pechner v City of Revere, et al,
 6   and I'll be starting the City's
 7   cross-examination today.
 8           And just for the record, we're
 9   starting at 10:15 because prior to the
10   deposition Mr. Dilday, myself, and John
11   Vigliotti on behalf of the individual officer
12   defendants, conducted a conference under local
13   Rule 7.1 regarding the missed deposition of
14   Sonia Fernandez yesterday.
15           For the record, counsel and the
16   witness were present at ten, as required by
17   the court's order.  We just were delayed
18   because of the 7.1 conference.
19
20   EXAMINATION BY MR. PORR:
21      Q.   So good morning, Ms. Pechner.  How
22   are you today?
23      A.   Good.  Thank you.
24      Q.   And I trust that you know I'm Walt
```

VOL. IV PG. NO. 555

1   Porr, assistant city solicitor for the City of
2   Revere.  I represent the City, the Police
3   Department, the current police chief, Terrence
4   Reardon, and Mayor Thomas Ambrosino in this
5   case.  Is that correct?
6       A.   I didn't know you represented the
7   police department.
8       Q.   Okay.  Well, I do.  I have the two
9   entity parties, the City and the department,
10  and then I have the two current officials -
11  the mayor and the current chief - and that's
12  who I represent in this case.
13           And I'm going to start the City's
14  cross-examination, or at least those
15  defendants I collectively will call them the
16  City today.
17      A.   Can I just say, maybe I'm a little
18  bit confused, but I was under the assumption
19  that the Akerson's firm was representing the
20  police officers and you were representing the
21  City.  So basically what you're saying is you
22  represent both the City and the police
23  officers that are named?
24      Q.   I do not represent any of the named

VOL. IV PG. NO. 556

 1   officers.  I only represent the City, the City
 2   police department, the current mayor, Thomas
 3   Ambrosino, and the current chief, Chief
 4   Reardon.  All the other named parties are
 5   represented by Mr. Akerson's firm.
 6              MR. DILDAY:  Can we go off the
 7   record for a minute?  Let me take her outside
 8   for one second.
 9              MR. PORR:  Oh, sure.
10              (Off-the-record discussion from
11   10:18 A. M. to 10:24 A. M.)
12              MR. DILDAY:  To go back on the
13   record, it was my understanding that this
14   deposition today would have been the ending of
15   the individual police officers' deposition
16   conducted by Mr. Akerson based upon the
17   statements made in court that he had maybe
18   one-half to three-quarters of a day.
19              So as I understand it now,
20   Mr. Akerson, you've completed your deposition
21   of this young lady?
22              MR. AKERSON:  Who said that?  No.
23   No, sir.  Mr. Porr is going to ask some
24   questions today.  I still stand by the court

VOL. IV PG. NO.   557

1   order that I do have -- the judge gave me a

2   day left.

3         MR. DILDAY:  Well, I would object

4   on the record to the out-of-order process,

5   because it was my understanding that we would

6   go through Mr. Akerson's questioning, and when

7   he was completed, then Mr. Porr would start

8   with his.

9         MR. AKERSON:  I don't know where

10  you're getting that from, Jim.  I don't know

11  of any rule, policy, practice, norm,

12  requirements.  I've been jammed up this week

13  with work, so I asked Mr. Porr if he could

14  start with his and I'll convene when I have

15  more time.

16        As I told you, last night I was at

17  a hearing which I was expecting to last a

18  couple of weeks at night, nighttime weeks.  So

19  I asked Mr. Porr.  I have not waived anything

20  in terms of my one day.  I'm still going to

21  act in conformance with the judge's order.

22        MR. DILDAY:  So my objection is on

23  the record.  You can continue.

24        MR. PORR:  I think we had a

VOL. IV PG. NO.  617

```
 1   newspaper article?
 2       A.    I don't have a copy of the
 3   newspaper article.  I have a copy of the
 4   photocopy that was at the -- the original copy
 5   that was on the bulletin board.
 6       Q.    Okay.
 7             MR. PORR:  Mr. Dilday, do you have
 8   a copy of that document?
 9             MR. DILDAY:  I don't know what
10   you're talking about.  I didn't see the notes.
11             MR. PORR:  It's the newspaper
12   article that was then doctored, if you will,
13   from August of '96.
14             MR. DILDAY:  I'm pretty sure that I
15   do.
16             MR. PORR:  I have not seen it and I
17   suspect it would have been well within a
18   number of document production requests.
19             THE WITNESS:  If we can take a
20   break, I'd be more than happy to get it for
21   you.
22             MR. PORR:  Oh, lovely.  Why don't
23   we do that.  Thank you.
24             (Off-the-record discussion from
```

VOL. IV PG. NO.  618

```
 1              11:44 A. M. to 11:54 A. M.)
 2
 3              (Deposition Exhibit No. 10 marked.)
 4       Q.     All right.  We're back on the
 5   record.  Ms. Pechner, let me hand you what
 6   I've had marked as Exhibit 10 and ask you to
 7   confirm that that's an accurate copy of the
 8   photograph referenced in the first
 9   paragraph on page 4 of your notes which are
10   Exhibit 1.
11       A.     Yes.
12       Q.     Okay.  And you have the original
13   sitting next to this marked exhibit, correct?
14       A.     That's a photocopy.
15       Q.     Do you have anything more original
16   than the photocopy?
17       A.     I may have the original.  I don't
18   know if --
19       Q.     Okay.
20       A.     I've moved a couple times so...
21       Q.     Understood.
22       A.     This has been in my book, my
23   binder.
24              MR. PORR:  Off the record,
```

VOL. IV PG. NO.  641

```
 1      A.    I don't know.
 2            MR. PORR:  Okay.  Mr. Dilday, I'm
 3   getting to a point where I'm going to sort of
 4   shift gears, and it's 12:20.  Do we want to
 5   take our lunch break?
 6            MR. DILDAY:  I don't care.  What do
 7   you think?
 8            MR. PORR:  I'm asking.
 9            MR. DILDAY:  I guess, are you
10   saying that if you shift gears you'll be
11   caught in something -- yeah, let's do it.
12   From 12:20 to what?  1:15, 1:20?
13            MR. PORR:  Please.
14            MR. DILDAY:  Okay.
15            (Luncheon recess taken from
16            12:20 P. M. to 1:33 P. M.)
17            MR. PORR:  We're back on the record
18   after our noon recess.
19      Q.    Ms. Pechner, we've been talking
20   about events during calendar year 1996, and I
21   wanted to finish up on that period of time
22   before I move on to other questions.  In
23   particular, I want to talk about a different
24   event.  Something we haven't talked about yet.
```

VOL. IV PG. NO. 694

```
 1   right-knee injury?
 2       A.    Yeah.
 3       Q.    There's no IOD reference for the
 4   28th or 29th.  Were they days off?
 5       A.    I don't know.
 6       Q.    If you want to take a break, please
 7   speak up.
 8       A.    Sure.  I just want to grab a
 9   tissue.
10             MR. PORR:  Shall we take five?
11             MR. DILDAY:  Yeah.
12             (Recess taken from at 2:30 P. M. to
13             2:42 P. M.)
14             MR. PORR:  Back on the record.
15       Q.    Would you turn in the calendar to
16   July -- the week of July 1 to 7.  Ah.  You got
17   it.  The second -- there's a big triangle
18   around the number two.  Does that represent
19   something?
20       A.    Triangle?
21       Q.    Yeah.
22             MR. DILDAY:  Right there.
23       A.    I'm scribbling.  Maybe it did in
24   '96.  I don't know.
```

VOL. IV PG. NO.  749

```
 1   the January 1999 meeting, which have been
 2   marked as Exhibit 9, are more reliable than
 3   your notes of the same event which is
 4   Exhibit 1?
 5        A.   I don't know.
 6        Q.   Okay.  If you don't know which is
 7   more reliable, why did you opt for the January
 8   '99 quote in your verified complaint of 2003?
 9             MR. DILDAY:  Objection, again.
10             MR. PORR:  Noted, counsel.
11        A.   I didn't write the complaint.
12        Q.   You signed the complaint, didn't
13   you?
14        A.   Sure did.
15        Q.   And you signed the complaint under
16   pain and penalty of perjury, didn't you?
17        A.   Yes, I did.
18        Q.   And you did so swearing that --
19        A.   Ooh.  I'm scared.  Ooh.  I need a
20   break.  I'm scared.  I need to take a break.
21   Serious, I need to take a break.  I'm scared.
22             MR. PORR:  For the record, before
23   Ms. Pechner said she was scared, she made a
24   motion with her hands up and waving them back
```

VOL. IV PG. NO.   750

 1   and forth which I interpreted as mocking my
 2   previous question.  I guess we'll take a
 3   break.
 4           (Recess taken from 3:51 P. M.
 5            to 4:02 P. M.)
 6           MR. DILDAY:  I'd like to go on
 7   record asking that we break at about 4:45 and
 8   for -- reason is that I'm about an hour's
 9   drive to my house.  My wife is out of the
10   country.  Her 90-year-old mother lives with us
11   and the caretaker wants me to be no later than
12   six.  Last night I didn't get home until 8:30,
13   and I was admonished that I should be home by
14   six tonight because she has some duties to
15   perform of her own.
16           MR. PORR:  Last question and
17   answer, please.
18           (The record was read by the
19   reporter as requested.)
20      Q.   Ms. Pechner, when you signed the
21   complaint under the pains and penalties of
22   perjury, you knew you were attesting to the
23   truthfulness of the facts in that complaint,
24   correct?

VOL. IV PG. NO.   758

1   112 right below the question?
2        A.    Correct.
3        Q.    Okay.  The answer is the date of
4   the incident stated in paragraph 69,
5   February 23, '97.  Do you see that?
6        A.    I do.
7        Q.    Okay.  So you put the date of the
8   WIC comment as the same date as the Citizens
9   Academy comment?
10       A.    I see that.
11       Q.    Okay.  Did they, in fact, happen on
12  the same day?
13       A.    I believe that's a typo error.
14       Q.    Okay.  You signed these
15  interrogatory responses under penalty of
16  perjury, didn't you?
17       A.    We are all human here.  There are
18  human errors.  You also stood up in the court
19  under the pains and penalties of perjury and
20  said you didn't make Ma Barker a derogatory
21  comment, so let's not go there.  I mean, I'm
22  telling you that it's maybe an error and
23  humans make errors.
24       Q.    Are you done?

VOL. IV PG. NO.  759

```
 1       A.    I'm done.
 2             MR. PORR:  Motion to strike.  Mark
 3   the record, please.
 4       A.    Has your wife ever cheated on you?
 5       Q.    Are you done?
 6             MR. DILDAY:  Terri, please, don't
 7   say that.
 8       A.    Has your wife ever had an abortion?
 9             MR. DILDAY:  Terri, stop.
10             THE WITNESS:  My past is the past.
11             MR. DILDAY:  Maybe we should break.
12             THE WITNESS:   My past is the past.
13             MR. PORR:  Mr. Dilday, I concur.
14             THE WITNESS:  My past is the past
15   and you know what?  If he goes to law school
16   that long to --
17             MR. PORR:  Go ahead and go off the
18   record.
19             (Off-the-record discussion.)
20
21
22             (The deposition then adjourned.)
23
24
```

McCARTHY REPORTING SERVICE   WORCESTER, MA
(508)753-3889 (IN MASS) 1-800-564-3889