# EXHIBIT D

VOL. IX PG. 1567

```
 1            IN THE UNITED STATES DISTRICT COURT

 2              FOR THE DISTRICT OF MASSACHUSETTS

 3
    TERRI PECHNER-JAMES
 4  and SONIA FERNANDEZ,
       Plaintiffs
 5                              VOLUME IX
    VS.              C.A. NO. 03-12499-MLW
 6
    CITY OF REVERE; THOMAS
 7  AMBROSINO, MAYOR; CITY OF
    REVERE POLICE DEPARTMENT,
 8  TERRENCE REARDON, CHIEF;
    BERNARD FOSTER, SALVATORE
 9  SANTORO, ROY COLANNINO,
    FREDERICK ROLAND, THOMAS DOHERTY,
10  JOHN NELSON, JAMES RUSSO,
    MICHAEL MURPHY, and STEVEN FORD,
11     Defendants

12

13

14

15        CONTINUED DEPOSITION of TERRI

16  PECHNER-JAMES taken at the request of the

17  defendants pursuant to Rule 30 of the Federal

18  Rules of Civil Procedure before Nancy A.

19  Diemdowicz, Registered Merit Reporter, a

20  notary public in and for the Commonwealth of

21  Massachusetts, on June 22, 2006, commencing at

22  9:15 A.M. at the City Hall, 281 Broadway,

23  Revere, Massachusetts.

24
```

VOL. IX PG. 1568

```
 1   A P P E A R A N C E S:

 2
     FOR THE PLAINTIFFS:
 3
     JAMES S. DILDAY, ESQ.
 4   GRAY & DILDAY LLP
     27 School Street
 5   Boston, Massachusetts 02108

 6
     FOR THE DEFENDANTS, CITY OF REVERE; THOMAS
 7   AMBROSINO, MAYOR; CITY OF REVERE POLICE
     DEPARTMENT, TERRENCE REARDON, CHIEF:
 8
     WALTER H. PORR, JR., ESQ.
 9   PAUL CAPIZZI, ESQ.
     Office of the City Solicitor
10   City Hall
     281 Broadway
11   Revere, Massachusetts  01251

12
     FOR THE DEFENDANTS, BERNARD FOSTER, SALVATORE
13   SANTORO ROY COLANNINO, FREDERICK ROLAND,
     THOMAS DOHERTY, JOHN NELSON, JAMES RUSSO,
14   MICHAEL MURPHY AND STEVEN FORD:

15   MICHAEL J. AKERSON, ESQ.
     REARDON, JOYCE & AKERSON, P. C.
16   397 Grove Street
     Worcester, Massachusetts 01605
17

18

19

20

21

22

23

24
```

VOL. IX PG. 1569

```
 1              I N D E X

 2        DEPONENT:  TERRI PECHNER-JAMES

 3                                         PAGE

 4

 5   EXAMINATION BY MR. PORR              1570

 6   EXAMINATION BY MR. AKERSON           1751

 7

 8

 9

10

11              EXHIBITS

12                                         PAGE

13   42.  Deposition Excerpt, Volume VII   1583

14   43.  2000 Calendar                    1698

15

16

17

18

19

20

21

22

23

24
```

McCARTHY REPORTING SERVICE   WORCESTER, MA
(508)753-3889 (IN MASS) 1-800-564-3889

VOL. IX PG. 1570

```
 1          MR. PORR:  We're back on the record
 2   with Ms. James' continuing deposition.
 3
 4   EXAMINATION BY MR. PORR:
 5      Q.   Good morning, Ms. James.
 6      A.   Good morning.
 7      Q.   How are you this morning?
 8      A.   Good.
 9      Q.   I'm sorry?
10      A.   Good.
11      Q.   You're going to have to speak up,
12   please, both because of the air conditioners
13   that are running and so madam reporter can
14   hear you and also so I can hear you.
15      A.   Okay.
16      Q.   Is that going to be a problem?
17      A.   No.
18      Q.   It might help if you take your
19   hands down from your mouth, too.  It's just a
20   suggestion.  Are you on any medication today?
21      A.   Yes.
22      Q.   What have you taken?
23      A.   Klonopin, Xanax, Paxil, and
24   Synthroid.
```

VOL. IX PG. 1587

```
 1   confusion about it as I tried to be more
 2   specific.  So let me ask you to turn to
 3   page 1560.
 4           (Cell phone rings.)
 5           THE WITNESS:  I'm sorry.  It's my
 6   daughter.  They're in finals, so she wants to
 7   know if I can go and meet her.
 8           (Off-the-record discussion.)
 9      Q.   Okay.  So I'm going to hand you
10   Exhibit 3, which is the complaint, and I'm
11   turning to page 4, and I'm just going to
12   revisit this chronology real quick with the
13   documents in front of us.
14           First off, although the complaint
15   on its face in paragraph 18 says July 5 of
16   '97, we've determined that's July 5 of '99,
17   correct?
18      A.   Correct.
19      Q.   Okay.  So chronologically speaking,
20   the first entry in terms of time related to
21   Lieutenant Foster begins on paragraph 19 with
22   the August 24, '97 date, correct?
23      A.   Correct.
24      Q.   Okay.  And that's the first time
```

VOL. IX PG. 1693

 1      A.    Yeah.  I'm sure.  I don't remember.
 2  I don't remember what occurred.
 3      Q.    Okay.  But I want to make sure I
 4  understand you.  Are you saying "I'm sure"
 5  meaning "I'm sure there must have been other
 6  events, but I don't remember," or are you just
 7  saying "I don't remember"?
 8      A.    I don't remember.
 9      Q.    Okay.  Okay.  There's a March 9,
10  2000 entry on page 15 of your notes.  Take a
11  look at that.  It carries over to the next
12  page.
13            MR. DILDAY:  Can we take a
14  five-minute break?
15            MR. PORR:  Oh, sure.
16            (Recess taken from 11:33 A. M. to
17  11:52 A. M.)
18            MR. PORR:  We're back on the
19  record.
20      Q.    And before we resume, Ms. Pechner,
21  I notice -- I'm sorry.  Ms. James.  Please
22  forgive me because I've looked at so many
23  records that have your maiden name versus your
24  married name, that's the name that sticks in

VOL. IX PG. 1725

 1  sworn in as a police officer.  Okay?

 2      Q.    Okay.  Would you prefer we move to

 3  a different room?

 4      A.    You know what?  I just want to get

 5  the depositions over with.

 6            MR. CAPIZZI:  I've raised this with

 7  Mr. Dilday about not doing them here because

 8  of the allegations made.  He prefers this for

 9  his convenience.  That's why we're here.

10  Mr. Akerson's depositions are supposed to be

11  conducted in Worcester.

12            We're doing it here as a

13  convenience to both Mr. Dilday and his

14  clients.  I've had a brief discussion about

15  this in the past.  I just want that known on

16  the record.

17      Q.    Okay.

18            (Off-the-record discussion between

19  Mr. Dilday and the witness.)

20      Q.    I'm trying to nail down because I'm

21  entitled to nail down the basis for your

22  statement that Captain Colannino got Kevin

23  Colannino's name at the top of the list, and

24  you said because "his boy Russo" did it, and I

VOL. IX PG. 1750

 1     A.    I don't remember.
 2     Q.    Well, wait a minute.  It says, "I
 3  am well aware of this incident because I was
 4  the reporting officer."  Do you see that?
 5     A.    There you go.  You answered your
 6  own question.
 7     Q.    So what did --
 8           MR. PORR:  I'm sorry.  We need to
 9  stop for a minute.  Mr. Dilday stepped away
10  from the table and is on his cell phone.
11           (Off the record from 12:50 P. M. to
12  12:52 P. M.)
13           MR. DILDAY:  You could have kept on
14  going.
15           MR. PORR:  Mr. Dilday, we just --
16  on the record, we just came off a brief break
17  while you took a cell phone call.  You had
18  stepped away from the table, and you indicated
19  that I could have continued.  I appreciate
20  you're extending that courtesy, but
21  professionally I don't think I could continue.
22           MR. DILDAY:  Okay.
23           MR. PORR:  When the plaintiff, the
24  opposing party's counsel has to step away from

VOL. IX PG. 1759

```
 1   in the fall of 2005?
 2        A.    Yes.
 3        Q.    Using that date as a point of
 4   reference, since the restraining order by
 5   Mr. James against you, have you had any
 6   contact with Mr. James, again, Richard James?
 7        A.    Since he's taken the restraining
 8   order out?
 9        Q.    Since the restraining order, yes,
10   ma'am.
11        A.    Yes.
12        Q.    Do you have any information right
13   now that you could tell me that Lieutenant
14   Bernard Foster was aware of the allegation
15   that Roy Colannino stole property from the
16   Zayre's tent sale?
17        A.    No.
18        Q.    Do you know if Roy Colannino paid
19   money or paid by credit card for any property
20   from the Zayre tent sale?
21        A.    No.
22              MR. AKERSON:  I'm all set with this
23   witness, Mr. Porr.
24              MR. PORR:  One or slightly after,
```

VOL. IX PG. 1760

```
 1   so I guess we're done for the day.
 2           MR. DILDAY:  Okay.  Thank you,
 3   gentlemen.
 4           MR. AKERSON:  I state for the
 5   record that given a couple pending motions, I
 6   deem this deposition to be suspended, not
 7   concluded.
 8           MR. PORR:  Yes.  I agree.
 9           MR. DILDAY:  And for the record, I
10   deem it to be concluded, and that's based upon
11   the number of times that Ms. James has been to
12   various depositions, which I counted either
13   nine or ten separate appearances at
14   depositions.
15           MR. PORR:  Yeah.  And just for the
16   record, I trust you realize that the mere
17   number of times the witness has to appear at a
18   deposition may have nothing to do with whether
19   or not the deposition is in any way excessive.
20           In other words, depending upon the
21   nature of the claims, the amount of claims,
22   all the issues involved in the case, just
23   because there's been nine different sessions
24   doesn't necessarily mean that, you know, it's
```

VOL. IX PG. 1761

1  been excessive.

2       MR. DILDAY:  Doesn't mean that
3  they're not excessive either.

4       MR. PORR:  No.  I understand that.
5  It just means there's been nine sessions.

6       MR. DILDAY:  True.  We agree on
7  that.

8       MR. PORR:  Okay.  Fair enough.

9       MR. AKERSON:  Lastly, to conclude
10  this, what I deem to be a suspended
11  deposition, I also add to Mr. Porr's comments
12  that the depositions have started late and
13  ended early at excessive rates throughout my
14  view.  I think that will be addressed with
15  Judge Sorokin as well.  Thank you for coming.

16

17

18   (The deposition then adjourned at 1:03 P. M.)

19

20

21

22

23

24