# EXHIBIT E

```
 1            UNITED STATES DISTRICT COURT
                DISTRICT OF MASSACHUSETTS
 2

 3

   TERRI PECHNER-JAMES
 4 and SONIA FERNANDEZ,,

 5      Plaintiffs,
                                    VOLUME III
 6 VS.                      C.A. NO. 03-12499-MLW

 7

   CITY OF REVERE; THOMAS
 8 AMBROSINO, MAYOR; CITY OF
   REVERE POLICE DEPARTMENT,
 9 TERRENCE REARDON, CHIEF;
   BERNARD FOSTER, SALVATORE
10 SANTORO, ROY COLANNINO,
   FREDERICK ROLAND, THOMAS DOHERTY,
11 JOHN NELSON, JAMES RUSSO,
   MICHAEL MURPHY, and STEVEN FORD,
12
        Defendants.
13

14

15      CONTINUED DEPOSITION of SONIA FERNANDEZ taken

16 at the request of the plaintiff pursuant to Rule

17 30 of the Federal Rules of Civil Procedure before

18 Dawn J. Cormier Bourn, a notary public in and for

19 the Commonwealth of Massachusetts, on May 12,

20 2006, commencing at 10:43 A.M. at the offices of

21 Reardon, Joyce & Akerson, 397 Grove Street,

22 Worcester, Massachusetts.

23

24                                              ORIGINAL
```

```
 1   A P P E A R A N C E S :

 2
     FOR THE PLAINTIFF:
 3
     JAMES S. DILDAY, ESQ.
 4   GRAYER & DILDAY
     27 School Street
 5   Boston, Massachusetts   02108

 6
     FOR THE DEFENDANT, CITY OF REVERE; THOMAS
 7   AMBROSINO, MAYOR; CITY OF REVERE POLICE
     DEPARTMENT, TERRENCE REARDON, CHIEF:
 8
     WALTER H. PORR, JR., ESQ., and
 9   PAUL CAPIZZI, ESQ.
     Office of the City Solicitor
10   City Hall, 281 Broadway
     Revere, Massachusetts   01251
11

12   FOR THE DEFENDANTS, BERNARD FOSTER, SALVATORE
     SANTORO, ROY COLANNINO, FREDERICK ROLAND,
13   THOMAS DOHERTY, JOHN NELSON, JAMES RUSSO,
     MICHAEL MURPHY AND STEVEN FORD:
14
     MICHAEL AKERSON, ESQ., and
15   JOHN K. VIGLIOTTI, ESQ.
     REARDON, JOYCE & AKERSON
16   387 Grove Street
     Worcester, Massachusetts   01605
17

18

19

20

21

22

23

24
```

## INDEX

DEPONENT: SONIA FERNANDEZ

|   |   | PAGE |
|---|---|---|
| FURTHER EXAMINATION BY MR. PORR | | 441 |

## EXHIBITS

| | | | PAGE |
|---|---|---|---|
| 6 | JANUARY 1999 MEETING NOTES | | 486 |
| 7 | AFFIDAVIT | | 567 |
| 8 | AFFIDAVIT | | 568 |
| 9 | NOVEMBER 3 LETTER | | 599 |
| 10 | LETTER FROM THE CHIEF | | 602 |
| 11 | TERRI PECHNER-JAMES' ANSWERS | | 650 |

```
 1            SONIA FERNANDEZ, PREVIOUSLY SWORN.
 2                        - - - - -
 3   FURTHER EXAMINATION BY MR. PORR:
 4        Q.    Good morning, Ms. Fernandez.
 5        A.    Good morning, Mr. Porr.
 6        Q.    All right.  Before we get started on
 7   your deposition, I want to just cover a few
 8   things.
 9              First off, you realize that you were
10   placed under oath when the deposition process
11   started and you're still under oath today?
12        A.    Yes.
13        Q.    Okay.  And that oath obligates you to
14   answer my questions truthfully.  You understand
15   that?
16        A.    Yes, sir.
17        Q.    All right.  Madam reporter is taking
18   everything down.  You seem to be soft-spoken.  It
19   might be helpful if you kept your voice up, make
20   it easier for her; all right?
21        A.    I'm sorry.  I thought I was talking
22   loud because of the hearing aids.
23              Okay.  Is this better?  Can you hear
24   me?
```

1      Q.     And obviously you passed?

2      A.     Yes, I did.

3      Q.     Let me show you what's been marked as

4  Exhibit 4 to your prior deposition and again just

5  ask you to quickly take a look at that, and when

6  you have, look up.

7      A.     (Pause in testimony while reviewing

8  document.)

9      Q.     The Exhibit 4 that I put in front of

10 you --

11             (Recess taken from 11:28 a.m. to

12 11:31 a.m.)

13     Q.     Back on the record.

14             You've now had a chance to look at

15 Exhibit 4; correct?

16     A.     Correct.

17     Q.     And you recognize that as the

18 complaint you filed with the Massachusetts

19 Commission Against Discrimination?

20     A.     Correct.

21     Q.     Is the letter issue that we've just

22 been discussing, event, call it what you will, is

23 that listed in the MCAD complaint?

24     A.     I don't think so.

```
 1        Q.    Not anymore.  I just wonder why anyone
 2   would move to El Monte.
 3        A.    It was beautiful there.
 4              MR. DILDAY:  Off the record.
 5              (Discussion held off the record.)
 6        Q.    What I'm looking for is sort of
 7   painting a general picture here, not tons and
 8   tons of detail, but when you moved to Essex
 9   Street in Chelsea, you had your son and your
10   daughter with you at that time?
11        A.    Yes.
12        Q.    Has your son George Junior lived with
13   you since he was born?
14        A.    Of course.  He's my son.
15        Q.    No, I understand that, but you and
16   George Senior split up?
17        A.    Oh, yeah.
18        Q.    And George Junior stayed with you as
19   opposed to going with George Senior?
20        A.    Oh, he would never get my kids.
21        Q.    I understand.
22        A.    Sorry.  There are good dads and then
23   there are okay dads and then there are no-good
24   dads.
```

```
 1    was there for everybody, all three shifts.
 2        Q.    Perhaps more like a designated hitter,
 3    I guess, to use another baseball analogy.
 4        A.    I was an extra body to put me wherever
 5    somebody was out.
 6        Q.    So they needed a gap filler, and you
 7    volunteered?
 8        A.    I didn't really want it, though.
 9        Q.    Okay.  Fair enough.  All right.  So
10    let me -- all right.
11              MR. PORR:  Mr. Dilday, I'm about ready
12    to shift back into the complaint and start
13    looking at some specific paragraphs.  It's 12:30.
14    How do we feel about a lunch break?
15              MR. DILDAY:  We might as well do it
16    now.
17              MR. PORR:  All right.  Take an hour.
18              (Lunch recess taken from 12:27 p.m. to
19    1:40 p.m.)
20              MR. PORR:  Real quick, back on the
21    record.
22              Mr. Dilday, I've sent a couple letters
23    over about the interrogatories that you sent in
24    October, specifically October 25th of last year,
```

1          A.    He called me a cockroach.
2          Q.    I understand that, but that didn't
3    happen until sometime later?
4          A.    True.
5          Q.    Is the behavior of Lieutenant Ford
6    reflected in Paragraph 84?
7          A.    Where are you?
8          Q.    I'm looking at the first sentence of
9    Paragraph 84.
10              MR. DILDAY:  Go ahead.  Excuse me just
11   one second.
12              MR. PORR:  We're going to take a
13   break.
14              (Recess taken from 3:12 p.m. to
15   3:22 p.m.)
16         Q.    Okay.  The question that I was dealing
17   with was the first paragraph, the first sentence
18   of Paragraph 84 talking about Lieutenant Ford's
19   comments in '96 and '97.  Is that referenced in
20   your MCAD complaint?  Is that included in your
21   MCAD complaint?
22         A.    (Pause in testimony while reviewing
23   document.)
24               No.

```
 1   police officer also?
 2         A.    No, no, no.
 3         Q.    She was outside of law enforcement?
 4         A.    Right.  It was in the news.  It's a
 5   long time ago.  I don't recall exactly what it
 6   was.
 7               (Recess taken from 4:22 p.m.
 8   to.4:25 p.m.)
 9               MR. PORR:  You just mentioned you had
10   a very bad headache, and I don't want to be
11   asking you questions at a time where you feel
12   like, because of the headache and everything
13   else, you're just not able to give me good
14   answers.  Do you follow?
15               THE WITNESS:  Okay.
16               MR. PORR:  It's not fair to you, and,
17   of course, the other problem is, if you give me
18   an answer that's inaccurate or somehow misleading
19   or whatever because you're not feeling well and
20   your head is bothering you and I think something
21   is, you know, I think something is true that's
22   not or I think something is whatever, it causes
23   some confusion.
24               So if you're at a point where you
```

```
 1   don't feel you really could or should continue,
 2   feel free to say that.  We can deal with that.
 3            MR. VIGLIOTTI:  I didn't say anything.
 4            THE WITNESS:  You don't have to.  I
 5   can tell by looking at you.
 6            MR. CAPIZZI:  Is John giving you a
 7   headache?  You can tell us.
 8            MR. DILDAY:  Say how you feel.
 9            THE WITNESS:  Honestly, I really do
10   have a really bad headache.  My back hurts and I
11   do have a real bad headache.
12            MR. VIGLIOTTI:  My suggestion would
13   be, there's probably a half hour left, to tag it
14   on the other half day that's coming up.
15            MR. DILDAY:  Yeah, why don't we do
16   that?
17            THE WITNESS:  I didn't hear nothing.
18   Can you tell me?  Because I can't hear him.
19            MR. PORR:  I didn't quite understand
20   him either.
21            MR. DILDAY:  Let's start at 12:30
22   then.
23            MR. PORR:  We'll start at 12:30 then
24   on the 16th.
```

```
 1              THE WITNESS:  Yeah.
 2              MR. PORR:  12:30 on the 16th.
 3              THE WITNESS:  I will be there.
 4              MR. PORR:  Fine.  We will start at
 5    12:30 on the 16th.  That resolves it.
 6              (Deposition suspended at 4:26 p.m.)
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
```