# EXHIBIT H

```
 1            UNITED STATES DISTRICT COURT
                DISTRICT OF MASSACHUSETTS
 2

 3

    TERRI PECHNER-JAMES
 4  and SONIA FERNANDEZ,

 5       Plaintiffs,
                                    VOLUME VIII
 6  VS.                    C.A. NO. 03-12499-MLW

 7
    CITY OF REVERE; THOMAS
 8  AMBROSINO, MAYOR; CITY OF
    REVERE POLICE DEPARTMENT,
 9  TERRENCE REARDON, CHIEF;
    BERNARD FOSTER, SALVATORE
10  SANTORO, ROY COLANNINO,
    FREDERICK ROLAND, THOMAS DOHERTY,
11  JOHN NELSON, JAMES RUSSO,
    MICHAEL MURPHY, and STEVEN FORD,
12
         Defendants.
13

14

15      CONTINUED DEPOSITION of SONIA FERNANDEZ taken

16  at the request of the defendants pursuant to

17  Rule 30 of the Federal Rules of Civil Procedure

18  before Dawn J. Cormier Bourn, a notary public in

19  and for the Commonwealth of Massachusetts, on

20  June 21, 2006, commencing at 9:17 a.m. at the

21  Revere City Hall, 281 Broadway, Revere,

22  Massachusetts.

23

24
```

COPY

```
 1    A P P E A R A N C E S :

 2

      FOR THE PLAINTIFF:
 3
      DAWNE H. THORNE, ESQ.
 4    GRAYER & DILDAY
      27 School Street
 5    Boston, Massachusetts   02108

 6
      FOR THE DEFENDANT, CITY OF REVERE; THOMAS
 7    AMBROSINO, MAYOR; CITY OF REVERE POLICE
      DEPARTMENT, TERRENCE REARDON, CHIEF:
 8
      WALTER H. PORR, JR., ESQ., and
 9    PAUL CAPIZZI, ESQ.
      Office of the City Solicitor
10    City Hall, 281 Broadway
      Revere, Massachusetts   01251
11

12    FOR THE DEFENDANTS, BERNARD FOSTER, SALVATORE
      SANTORO, ROY COLANNINO, FREDERICK ROLAND,
13    THOMAS DOHERTY, JOHN NELSON, JAMES RUSSO,
      MICHAEL MURPHY AND STEVEN FORD:
14
      JOHN K. VIGLIOTTI, ESQ.
15    REARDON, JOYCE & AKERSON
      387 Grove Street
16    Worcester, Massachusetts   01605

17

18

19

20

21

22

23

24
```

```
 1
 2
 3
 4                    I N D E X
 5          DEPONENT:  SONIA FERNANDEZ
 6                                               PAGE
 7   FURTHER EXAMINATION BY MR. PORR             1520
 8
 9
10
11
12                    EXHIBITS
13                                               PAGE
14    45    ANSWERS TO INTERROGATORIES           1531
15    46    HANDWRITTEN NOTES                    1533
16    47    JULY 6, 1998 NOTE                    1577
17    48    SEPTEMBER 11, 1998 NOTE              1585
18    49    SEPTEMBER 22, 1998 NOTE              1597
19    50    OCTOBER 2, 1998 NOTE                 1599
20
21
22
23
24
```

```
 1           SONIA FERNANDEZ, PREVIOUSLY SWORN.
 2                       - - - - -
 3           MS. THORPE:  I know we're 15 minutes
 4   late, so do you want to go 15 minutes later?
 5           MR. PORR:  Okay.
 6                       - - - - -
 7   FURTHER EXAMINATION BY MR. PORR:
 8      Q.    So we're back on the record with
 9   Ms. Fernandez.  Good morning.
10      A.    How are you?
11      Q.    Good, thank you.  How about yourself?
12      A.    Tired.
13      Q.    Having trouble sleeping?
14      A.    Yeah.
15      Q.    Still?
16      A.    Yeah.
17      Q.    Take any medication today?
18      A.    Nothing.
19      Q.    All right.  Aside from tired, are you
20   feeling okay?
21      A.    Yeah.  Yes, sorry.  Yes.
22      Q.    Madam reporter asked me before we
23   started to ask you to speak up.
24      A.    Okay.  I'm sorry.  You know what it
```

1      A.    I don't know.

2      Q.    Did it just drop there or did some of

3 the other women say something about it?

4      A.    I'm almost certain the girls talked

5 about it, but I don't know what was -- I don't

6 remember what was said.

7      Q.    And my follow-up question where I was

8 going was, did you kind of tune-out given the

9 fact that it involved Sean Randall's brother and

10 you had a good working relationship with Sean?

11     A.    Possibly.

12     Q.    So until I brought up Todd Randall's

13 name and asked you about any incident involving

14 Terri Pechner and Todd Randall, you did not

15 connect this November 19, 1998 entry with Todd

16 Randall independently?

17     A.    I believe I was asked this already

18 before during one of the depositions.

19     Q.    Oh, okay.  Must have been one of the

20 sessions I missed.

21     A.    (Nods head.)

22         MR. VIGLIOTTI:  (Nods head.)

23     Q.    Okay.  All right.

24         (Discussion held off the record.)

```
 1    him by sight today?
 2         A.    No.
 3         Q.    Have you ever talked to Mr. Barker
 4    about this incident?
 5         A.    I don't know him.
 6         Q.    Well, no, I understand.
 7         A.    No.
 8         Q.    Do you know if Terri Pechner knew
 9    either Mr. Barker or Mr. Daley prior to her
10    becoming a Revere police officer?
11         A.    It says in her notes that she did.
12         Q.    Aside from her notes?
13         A.    I don't know.
14         Q.    Do you know the nature and extent of
15    her relationship with either of those gentlemen?
16         A.    I do not.
17               (Discussion held off the record.)
18         Q.    Okay.  Let me show you what we've
19    previously marked as Exhibit 28.
20               Are you doing okay?
21         A.    Yeah.  My back hurts a little bit, but
22    it's okay.
23         Q.    Do you need to take a break?
24         A.    No.
```

```
 1    female matrons?
 2         A.    No.
 3         Q.    So as of December of '98, in the
 4    absence of having matrons on staff, who was
 5    available to perform the matrons' duties, things
 6    that matrons --
 7         A.    The females.
 8         Q.    And these are duties that are
 9    specifically delegated that need to be performed
10    by females given the circumstances; correct?
11         A.    Correct.
12         Q.    So was the complaint here more in the
13    nature of you need to hire some matrons so that
14    we don't have to do those duties?
15         A.    Yes, I think so.
16         Q.    All right.
17              MR. PORR:  Go off the record for a
18    minute.
19              (Discussion held off the record.)
20              MR. PORR:  We just briefly had an
21    off-the-record discussion of the deposition
22    schedule.
23              Today we were supposed to go 9:00 to
24    noon.  As the record will reflect, we got going
```

1  at about 9:20, and it's now about 12:20, 12:25.
2  There's no way we can finish four additional
3  hours today, which is what I estimate the court
4  ordered two-and-a-half days it would take in
5  terms of completing those two-and-a-half days.
6              Ms. Thorne has obligations this
7  afternoon.  Mr. Dilday has obligations this
8  afternoon.  And so we're going to go ahead and
9  finish up for the day, and we'll reschedule the
10 remaining four hours later.
11             MR. VIGLIOTTI:  While we're on the
12 record, there was reference in the record to
13 notes in the possession of Mr. Dilday.  I believe
14 these individual defendants in discovery
15 requested any notes or correspondence relating to
16 the facts of this case, which those notes have
17 not been produced, nor was an objection filed.
18             I am asking for copies of those, if
19 you can bring it to Mr. Dilday's attention.  I
20 just want that on the record in regards to those
21 notes.
22             MR. PORR:  Lynn Malatesta's notes?
23             MR. VIGLIOTTI:  Lynn Malatesta's
24 notes, which it doesn't sound like there's an

1  attorney-client privilege.  Testimony was given
2  here today regarding those notes, so I'd ask you
3  to relay that message to Mr. Dilday that I am
4  requesting those notes.
5           MS. THORPE:  I will definitely relay
6  that message.  This is the first I've heard of
7  Ms. Malatesta's notes, so -- .
8           MR. VIGLIOTTI:  Me, too.
9           MR. PORR:  Good enough.  Thank you.
10          (Deposition concluded at 12:25 p.m.)