UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 03-12499 MLW

| | |
|---|---|
| **TERRI L. PECHNER-JAMES** | ) |
| and  **SONIA FERNANDEZ** | ) |
|     **Plaintiffs** | ) |
| | ) |
| **VS.** | ) |
| | ) |
| **CITY OF REVERE, THOMAS** | ) |
| **AMBROSINO, MAYOR, CITY** | ) |
| **OF REVERE POLICE DEPT.** | ) |
| **TERRENCE REARDON, CHIEF** | ) |
| **OF POLICE, BERNARD FOSTER** | ) |
| **SALVATORE SANTORO, ROY** | ) |
| **COLANNINO, FREDERICK** | ) |
| **ROLAND, THOMAS DOHERTY** | ) |
| **JOHN NELSON, JAMES RUSSO** | ) |
| **MICHAEL MURPHY and** | ) |
| **STEVEN FORD** | ) |
|     **Defendants** | ) |

**PLAINTIFFS COUNSEL'S REQUEST FOR BEST EVIDENCE AND
STATEMENT OF DILIGENT SEARCH**

**Background:**

The Plaintiff, Sonia Fernandez, is one of two members of a group of seven female officers who were hired by the Revere Police Department on September 12, 1995. The Plaintiffs successfully completed the training required of police officers.  They pursued professional development during their tenure as police officers.  Four of the officers who were hired on September 12, 1995 left the Department. Three of those officers filed complaints with the Massachusetts Commission Against Discrimination (MCAD); prior to the filing, they had met with and informed the Mayor that harassment and discrimination in the Department had made it impossible for them to continue to work there.

1

These two Plaintiffs commenced their cause of action in the Suffolk Superior Court-Case No. 03-4685G. The Defendants, in an exercise of forum-shopping, removed the complaint to the U.S. District Court.

Their complaints state the following causes of action: (1) Hostile work environment/sexual/racial; (2) Constructive Discharge; (3) Disparate Treatment; (4) Infliction of Emotional Distress. The Plaintiffs were hired into a Department that still does not have a maternity leave policy, did not have a sexual harassment policy at the time of their employment; has not mechanism or policy for providing redress for sexual or racial discrimination and no facilities for the exclusive use of female officers.

The Plaintiffs have been adjudicated as having post traumatic stress disorder (PTSD) as a result of their experiences at the Revere Police Department. They both receive disability retirement benefits.

Paragraph 96 of the Plaintiffs complaint states the following:

> 96. The "underwear incident" appeared to be an escalation of a 1998 when Plaintiff and other female officers observed a penis drawn on the chalk board located by the communication room.

Both Plaintiffs and other officers witnessed and confirmed the drawing of the penis on the chalk board of the Revere Police Department. On June 21, 2006, Sonia Fernandez was being deposed by Attorney Porr; she was accompanied by Attorney Thorne. During the deposition, Sonia Fernandez responded to a series of questions about Lynn Malatesta's notes.

At the end of the deposition, counsels for the Defendants erroneously concluded that (1) a copy of Lynn Malatesta's notes was responsible for the drawing of the penis on the chalk board and (2) that the copy of her notes was in the possession of Attorney Dilday, who was not present at the deposition. At a hearing on June 27, 2006, the court requested that Attorney Dilday provide the Defendants with a copy of Lynn Malesta's notes that the

Defendants claim are in his possession. Attorney Dilday represented to the court that he did not have the notes and did not recall ever seeing Lynn Malatesta's notes. This memorandum and affidavits attached underscore Attorney Dilday's position.

**Argument:**

The deposition of June 21, 2006 was conducted at Revere City Hall, Revere, Massachusetts. It began at 9:17 am and ended at 12:25 pm. It is recorded in Vol. VII- Sonia Fernandez 6-21-2006. Page No. 1517 – 1687. See **Attached Exhibit 2**

The questions regarding the drawing of the penis on the chalk board in the Revere Police Department began on page 1533. The exchange between Sonia Fernandez and Attorney Porr is stated below:

> Q. Okay. Could you look through those notes and tell me if there's any reference to the chalk board drawing alleged in paragraph 96?
>
> A. Okay.(Pause in testimony while reviewing document.) No, I don't see it.
>
> p. 1533

After a few more preliminary questions, Attorney Porr asked her:
> Q. All right. So as you sit here now, there's no reference to the chalkboard drawing referred to in Paragraph 96 in the complaint in these notes?
>
> A. I know where I saw it, the date.
> Q. Okay. Where?
>
> p. 1534

She continued:
> A. Officer Malatesta, her notes.
> Q. You've seen Officer Lynn Malatesta's notes?
> A. Yes, I have.
> Q. Where did you see those notes?

>A. In my attorney's office.
>
>Q. Mr Dilday has them?
>
>A. I believe so.
>
>Q. When did you last see Officer Lynn Malatesta's notes in Mr. Dilday's office?
>
>A. Years ago.
>
>Q. Can you be a little more precise in terms of how many years ago?
>
>A. Two or three.
>
>Q. Do you know how Mr. Dilday came about a copy of Officer Lynn Malatesta's notes?
>
>A. I don't know if she gave me a copy or if she gave Officer James a copy.
>
>Q. Okay. When you say Officer James, you mean Terri.
>
>A. Terri.
>
>Q. The only reason I ask for the distinction is because there's Officer Mark James as well.
>
> p. 1535

In this exchange on p. 1535, Sonia Fernandez responds to Attorney Porr's rhetorical **question: "Mr. Dilday has them?** with a statement of tentative belief. She believed that she saw Lynn Malatesta's notes in Attorney Dilday's office about two or three years prior to the date of questioning. She does not know how he got the notes and she does not say that she reviewed or discussed the notes with Attorney Dilday in his office. Sonia Fernandez' responses do not confirm the conclusion implied by Attorney Porr's question. The questions and responses on p. 1536 do not place Attorney Dilday in possession; the questions and responses on p. 1535 also did not place him in possession.

The exchanges on p. 1536 state as follows:

>A. Sorry.
>
>Q. Had you seen Lynn Malatesta's notes prior to seeing them in Mr. Dilday's office?
>
>A. Yes.
>
>Q. When did you first see Lynn Malatesta's notes?
>
>A. I don't remember.

Q. What was the occasion that resulted in you seeing Lynn Malatesta's notes the first time?

A. I can tell you the reason she showed me.

Q. Sure.

A. They were…when I went and I didn't know what to do with Lieutenant Foster, they told me that they would be a witness for me if I needed one.

Q. Who is "they" that you're talking about here?

A. Lynn Malatesta, Julie Malvarosa.

Q. Was this a t some sort of meeting the women were having ?

A. No, no, just a general conversation we had at the station.

Q. And Lynn had these notes with her at (end of page 1536) the time?

The questions and the responses on this page (p. 1536) do not place Attorney Dilday in possession of Lynn Malatesta's notes.  Sonia Fernandez responded to the last question on p. 1536 as follows:

A. No, no. I don't know if she brought them to work and I read them in the cruiser or if she gave me a copy of them. I don't remember.

The questions and responses contained in pages 1537, 1538, and 1539 confirm the following facts:

1. Sonia Fernandez does not know whether Lynn Malatesta's notes were handwritten or typed; p. 1537

2. She does not know whether the notes were 10 pages, 20 pages, 30 pages or 50 pages; and p. 1537

3. She does not recall the dates included in the notes; she does not know when the events begin and when they ended. p. 1538 -1539.

On page 1537, Attorney Porr asked the following questions and Sonia Fernandez provided the responses stated below:

Q. How many pages of notes did Lynn have?

A. Lynn has a lot of pages.

Q. More than 10?

5

> A. Yes
>
> Q. More than 20?
>
> A. Possibly.
>
> Q. As many as 30?
>
> A I don't know.
>
> Q. As many as 50?
>
> A. No, I don't think 50.
>
> Q. So, somewhere between 20 and 30?
>
> A. I think so.

This exchange does not confirm the size of the notes and it does not place them in the possession of Attorney Dilday. Attorney Porr continued to question Sonia Fernandez:

> Q. Handwritten?
>
> A. I don't remember.
>
> Q. Because we've got 21 pages of notes from Terri Pechner which are typed, and then we have a few pages from you which are handwritten.
>
> A. I think she wrote them. I think she wrote them.

At the end of page 1537, Attorney Porr has provided no mechanism for identifying the notes as belonging to Lynn Malatesta and no data on whether these notes were handwritten or typed and a vague description of some document that may be 20, 30 or even 50 pages.

In page 1538, Attorney Porr, tried to identify the dates and the time period covered by these notes. This attempt is no more successful than his attempt to identify the notes themselves at p. 1537. The following exchanges are recorded on p. 1538-1539:

> Q. Eight-and-a half by 11 size paper? Normal size paper?
>
> A. Like your notebook.
>
> Q. Like my note pad?
>
> A. Yes.
>
> Q. Single spaced?
>
> A. Yes. I would say yes.

Q. Okay. Do you recall the time period that the notes covered?

A. What do you mean?

Q. The notes, were they in chronological order?

A. Yes. She's very detailed like that.

Q. And did they start, for instance, back in September '95 or February '96 and go in chronological order until some end date?

A. Yes.

Q. Do you recall the date the notes started?

A. I don't remember.

Q. Did they cover anything that occurred at the academy?

A. I don't know.

Q. You went to the academy with Lynn; correct.

A. Yes, yes.

Q. And that was roughly September of '95 until roughly February of '96?

A. Yes.

Q. And then you and Lynn and the rest of those academy graduates went to work as police officers for the city as opposed to being cadets at the academy in February of '96?

A. Right.

Q. Assuming then that the notes picked up with anything that may have happened once you got here working for the City of Revere in February of '96, and you indicated they seemed to go in chronological order, do you know the end date for the notes that you saw?

A. They're probably still going.

Q. All right. So your recollection is that Lynn showed you a copy of her notes at least once while you were still working for the Revere Police Department?

A. Yes.

Q. You have since seen the notes in Attorney Dilday's office?

At the end of these two pages, Attorney Porr has assumed but has established neither a chronology, a start date nor an end date for these notes. The phrase: **"at least once while you were still working for the Revere Police Department"** covers a period of

approximately seven (7) years that began on September 12, 1995 and ended on or about October 2002. It is unclear from this exchange when Sonia Fernandez saw the note in Attorney Dilday's office. On page 1540, the nature, content and location of these notes became even more confused as Attorney Porr tried unsuccessfully to establish a chronology. The exchanges on page 1540 read as follows:

> A. I did.
>
> Q. Have you seen them any other time?
>
> A. No.
>
> Q. When you looked at Lynn's notes at Attorney Dilday's office, were you looking at a document that was *consistent* with what you had seen before?
>
> A. Sorry. No.
>
> Q. What was different?
>
> A. Oh, you mean when I saw her notes again?
>
> Q. Yeah.
>
> A. They looked exactly the same. I'm sorry.
>
> Q. That's fine. What I was looking for, had Lynn added additional pages since the last time you had seen them?
>
> A. Oh, I don't remember.

The subsequent questions are based upon a presumption by Attorney Porr. Unfortunately, the responses Sonia Fernandez provides do not support his presumption. The exchange is as follows:

> Q. Because presumably there's a gap in time between when you first saw them and when you next saw them?
>
> A. Right
>
> Q. Do you know what the gap is? A couple years?
>
> A. Possibly.
>
> Q. All right. And that's what I'm getting at. You said a moment ago Lynn is probably still taking notes.
>
> A. Yes.
>
> Q. So I would assume that when you first saw the notes they were complete up to that time?

>A. Right
>
>Q. And then a couple years later you saw them in Attorney Dilday's office, and what I was wondering is, did you see additional notes you hadn't seen before covering the gap?
>
>A. No. no. If they were there, I didn't read them.
>
>Q. So have you…go ahead.
>
>A. If I did read them, I don't remember.
>
>Q. Okay.
>
>A. I'm being honest.
>
>Q. That's fine. And let me back up and just double-check. Have you seen the more notes more than twice?
>
>A. I saw them twice.
>
>Q. Lynn showed then to you once. Attorney Dilday showed them to you once.

At the end of page 1541, there is still no information by which these notes could be identified. Attorney Porr's question: "Attorney Porr showed them to you once?" was designed to place Attorney Dilday in possession of these notes.

Sonia Fernandez did not confirm his presumption. She responded: "I don't know if I brought them to him or if Terri brought them to him." Page 1542.  The exchanges that followed on page 1542 confirm only that Sonia Fernandez claim to have seen the notes in Attorney Dilday's office. She does not attribute any knowledge or personal involvement to Attorney Dilday. The exchange reads as follows:

>Q. No, I understand.
>
>A. I saw them in his office.
>
>Q. Right. So, again, Lynn showed you her notes once, and then next you saw them in Attorney Dilday's office?
>
>A. Yes.

This exchange is repetitious. What does the phrase "saw them in Attorney Dilday's office mean."  The exchange does not provide any information by which these notes can be identified. After eleven (11) pages of questions, the following facts are clear:

    1. The notes sought have not been identified other than as "Lynn Malatesta's notes."

    2. It is not clear whether these notes are typed or written?

    3. It is not clear whether Sonia Fernandez has a copy of the notes.

    4. It is not clear whether Terri James has a copy of these notes.

    5. It is not clear that anyone gave Attorney Dilday a copy of these notes.

    6. It is not clear that Attorney Dilday ever saw the notes. Sonia said that she saw the notes in his office.

    7. Neither a beginning nor an ending date was identified.

<u>Conclusion: The best evidence, pursuant to Fed. R. Evid.1002   would be the original document created by Lynn Malatesta herself.</u>

At the end of that deposition on June 21, 2006, Attorney Vigliotti stated the following on page 1687:

    MR. VIGLIOTTI: While we are on the record, there was a reference in the record to notes in the possession of Mr. Dilday. I believe these individual defendants in discovery requested any notes or correspondence relating to the facts of this case, which those notes have not been produced, nor was an objection filed.

    I am asking for copied of those, if you can bring it to Mr. Dilday's attention. I just want that on the record in regards to those notes.

MR. PORR: Lynn Malatesta's notes?

MR. VIGLIOTTI: Lynn Malatesta's notes, which it doesn't sound like there's an attorney-client privilege. Testimony was given here today regarding those notes.

Ms. THORNE: …This is the first I've heard of Ms. Malatesta's notes, so…

MR. VIGLIOTTI: Me, too.

                                                                                              p. 1687-1688

The copies of Lynn Malatesta's notes was unknown to all parties prior to this deposition. Sonia Fernandez identified these notes but failed to provide enough detail to identify these notes. The leading questions asked by Attorney Porr and the responses provided by Sonia Fernandez are by themselves insufficient to identify these notes. Attorney Dilday

does not have them in his possession, he has not seen them. **Exhibit 1.** He did not receive them from Sonia Fernandez. **Exhibit 1**. He did not receive them from Terri Pechner-james. **Exhibit 1**. Sonia Fernandez did not testify that she gave the notes to Attorney Dilday. **Exhibit 2.** Lines 1542 Lines 2-3.

The large drawing of a penis on the chalk board in the communication room of the Revere Police Department existed independently of these notes. The drawing was visible not only to the Plaintiffs and other members of the Revere Police Department but also to the public. The existence of this drawing was an expression of the hostile work environment of that Department.

The copy of Lynn Malatesta's notes sought by the Defendants may, no doubt, confirm this particular incident and the hostile environment of the Revere Police Department. These notes are not in the possession of the Plaintiffs or Attorney Dilday. Neither Lynn Malatesta nor her notes created the drawing of a penis on the chalk board in the communication room. This incident occurred because of the environment created by the Defendants. The document sought is a copy. It is not in the possession or under the control of Attorney Dilday. The best evidence of this document would be the original notes kept by Lynn Malatesta. Fed. R. Evid. 1002.

Sonia Fernandez
By her attorney

/s/ James S. Dilday, Esq.
James S. Dilday, Esq.