UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 03-12499 MLW

| | |
|---|---|
| **TERRI L. PECHNER-JAMES** | ) |
| and  **SONIA FERNANDEZ** | ) |
|     **Plaintiffs** | ) |
| | ) |
| VS. | ) |
| | ) |
| **CITY OF REVERE, THOMAS** | ) |
| **AMBROSINO, MAYOR, CITY** | ) |
| **OF REVERE POLICE DEPT.** | ) |
| **TERRENCE REARDON, CHIEF** | ) |
| **OF POLICE, BERNARD FOSTER** | ) |
| **SALVATORE SANTORO, ROY** | ) |
| **COLANNINO, FREDERICK** | ) |
| **ROLAND, THOMAS DOHERTY** | ) |
| **JOHN NELSON, JAMES RUSSO** | ) |
| **MICHAEL MURPHY and** | ) |
| **STEVEN FORD** | ) |
|     **Defendants** | ) |

**PLAINTIFFS OPPOSITION TO DOCKET NO. 234 AND DEFENDANTS
REQUEST FOR SANCTIONS**

<u>Introduction:</u>

Docket No. 234 is the Defendants latest pleading that seeks to multiply litigation and avoid the issues that are central to the above-captioned case. The issues are clear. The hostile work environment maintained by the Defendants; their failure to investigate as a standard operating procedure constitute a basis for municipal liability in this Circuit.   See **<u>Broderick v Evans</u>**,  Case  No. 02-11540 RGS(jury verdict for Plaintiff on City of Boston's failure to investigate (April 27, 2006).  The Defendants have no maternity leave policy, had no sexual harassment policy when the Plaintiffs joined the Department, they had no separate facilities for the exclusive use of the female officers and members of the public and they failed to investigate the complaints of the Plaintiffs as a matter of custom and usage.

They failed to investigate the vandalism of all eight (8) tires of vehicles driven by female officers, they failed to investigate complaints of sexual harassment filed by female officers, they failed to investigate sexually offensive pictures and articles of female clothing placed in highly visible places in the Department, they failed to investigate racially offensive caricatures of African-American being prepared and circulated in the Department. The Plaintiffs and Kathy Fish brought their complaints directly to the Defendant, Thomas Ambrosino. He took no action. He told them to file complaints with the Massachusetts Commission Against Discrimination (MCAD).  The liability of the Defendants is demonstrably clear.

The Defendants have no defense; they stated no defense, they have never claimed to have a defense. The majority of the two-hundred and thirty-four (234) docket entries were filed by the Defendants. Their pleadings are replete with motions for sanctions and they are devoid of defenses against their liability. The Defendants strategy has been clear for some time.  They have managed to use the discovery process to subvert the issues and to divert attention from their liability in this case. The excessive number of pleadings and docket entries in this case tells the story.

In **Broderick v Evans**, Docket No. 02-11540 RG , **Docket No. 70** reads ( JURY VERDICT in favor of plaintiffs against the City of Boston and Paul Evans).  Absent from that docket is the multiplication of discovery pleadings that have caused the docket entries in this case to exceed two hundred (200). Discovery, in this case, is not complete. No trial date has been set. Docket No. 234 is seeking sanctions against Terri Pechner-

James and Sonia Fernandez based on erroneous and confused statements made by Sonia Fernandez.

**Background:**

The Plaintiffs are two members of a group of seven (7) female officers who were hired by the Revere Police Department on September 12, 1995. The Plaintiffs successfully completed the training required of police officers; they pursued professional development during their tenure as police officers.

Four of the seven (7) officers who were hired on September 12, 1995 left the Department. Three officers, including the Plaintiffs, filed complaints of discrimination against the Revere Police Department with the Massachusetts Commission Against Discrimination (MCAD). All three officers met with the Mayor of the City of Revere, prior to filing their MCAD complaint. He encouraged them to file their complaint with the Massachusetts Commission Against Discrimination. (MCAD).

The Plaintiffs commenced their cause of action in the Suffolk Superior Court on September 30, 2003. They filed a Verified Complaint that stated the following causes of action: (1) Hostile Work Environment/Sexual/Racial; (2) Constructive Discharge; (3) Disparate Treatment; (4) Emotional Distress.

The Plaintiffs were hired by a City and into a Police Department that still does not have a maternity leave policy, did not have a sexual harassment policy, did not have facilities for the exclusive use of females and had no mechanism for providing redress for sexual or

racial discrimination. The Plaintiffs lost their employment, their livelihood, their sense of professional standing in their community and their opportunity to have careers as police officers. The custom and practices of the Defendants disabled the Plaintiffs. Their disability has been adjudicated; they both receive disability benefits.

**Facts:**

Plaintiff, Sonia Fernandez, was first deposed on March 21, 2006. Her last deposition was June 21, 2006. During this period, she has attended a total of eight (8) depositions. She has been deposed for thirty-one (31) hours. The present controversy began during her most recent deposition on June 21, 2006. She was being deposed by the Assistant City Solicitor of the City of Revere. She was accompanied by Attorney Dawne Thorne of Grayer & Dilday.

This deposition was conducted at Revere City Hall, Revere, Massachusetts which shares the same premises as her former place of employment. It began at 9:17 am; it ended at 12:25 pm. The entire deposition is recorded in Vol VII – Sonia Fernandez- 6-21-06. Pages 1517-1687. Excerpts from this transcript are attached as **Exhibit 1.**

The Assistant City Solicitor asked Sonia Fernandez a question about Paragraph 96 of the complaint. That paragraph states as follows:

> 96. The "underwear incident" appeared to be an escalation of a 1998 incident when Plaintiff and other females officers observed a penis drawn on the chalk board located by the communication room.

4

At page 1533 of the transcript, the following exchange between the Assistant City Solicitor and Sonia Fernandez took place:

> Q. Okay. Could you look through those notes and tell me if there's any reference to the chalk board drawing alleged in paragraph 96?
>
> A. Okay. (Pause in testimony while reviewing document) No. I don't see it.
>
> Page 1533

After a few more preliminary questions, the following exchange took place:

> Q. All right. So as you sit here, now, there is no reference to the chalk board drawing referred to in Paragraph 96 in the complaint in the notes.

The question was narrow and specific. Sonia Fernandez could have answered the question: *No, I don't see it*. The same answer she provided to the earlier question would have been responsive to this question. Instead, exhausted after almost thirty (30) hours of stressful depositions, retraumatized by (1) revisiting the premises of her former employment; (2) intense questioning during a concentrated period about the distressing events of her experience at the Revere Police Department; and (4) the sometimes hostile, overbearing and intimidating manner, particularly of the Assistant City Solicitor, Sonia Fernandez volunteered a non-responsive, confused, imprecise and factually erroneous statement. She stated:

> A. I know where I saw it, the date.
>
> Q. Okay, Where?
>
> A. Officer Malatesta's notes.

> Q. You've seen Officer Lynn Malatesta's notes.
>
> A. Yes, I have.
>
> p. 1534

This answer was non-responsive. The Assistant City Solicitor did not mark the record, seek the usual motion to strike, or file the usual motion for sanctions and award of expenses. Instead, the Assistant City Solicitor took advantage of Sonia Fernandez fragile condition and used her condition to craft a most craven and shameful attack on Attorney Dilday. He did not use his follow-up questions to provide identifying information for these "notes".

At the end of his questioning, the only two facts that emerge are (1) a frightened, anxious, intimidated, and emotionally exhausted Sonia Fernandez identified "Lynn Malatesta's notes" as the basis of something that she personally experienced and observed; and (2) that at unidentified times, she saw these "notes" twice; once, in a cruiser, maybe, by Lynn Malatesta, and a second time, in Mr. Dilday's office, never by Mr. Dilday. There are no times, no dates; there is no description whether typewritten or handwritten, no title heading, no information by which one could identify these "notes." The questions of the Assistant City Solicitor did not seek identifying information that would help either Sonia Fernandez, Attorney Dilday or anyone else identify and find these "notes". The only objective was to have Sonia Fernandez implicate her counsel, Attorney Dilday in the possession of the notes of a non-party, Lynn Malatesta, as a basis for filing this motion.

6

The Defendants strategy is rather obvious. They elicited enough information from Sonia Fernandez to file this motion for sanctions; they did not provide enough information for her, her counsel or anyone else to identify or find these elusive "notes". Lynn Malatesta is not a party to this action. She is one of the seven (7) female officers who began their employment with the Revere Police Department. She is still an employee of the Revere Police Department. Her notes can be requested or subpoenaed. Plaintiffs counsel has offered to pursue the path that is most acceptable to the court.

The Assistant City Solicitor, in a series of leading questions, shifted the focus away from the "hostile environment" epitomized by the large penis drawn on the chalk board. He chose instead to focus on Lynn Malatesta and whatever notes she may have prepared from her personal observations and experiences. Her notes did not create the chalk board penis; the existence of the penis on the chalk board can be independently confirmed by many members of the Revere Police Department, including Sonia Fernandez who saw the drawing on the board.  P. 1534 – 1535.

This emphasis on Lynn Malatesta is both disingenuous and self-serving. Lynn Malatesta is not a party to this action; there is no doubt that the drawing of the penis was on the chalk board outside the communication room at the Revere Police Department. The Defendants claim that they were pursuing a date for the incident so that they could make a statute of limitations argument that is contrary to Massachusetts law. The Defendants do not allege that there is anything in the notes that would be helpful to them. On the contrary, the information in Lynn Malatesta's notes may prove helpful to the Plaintiffs;

7

the notes may confirm and support many of the incidents contained in the Plaintiffs complaint. The issue of the notes is as a "weapon" that is being used to attack Attorney Dilday.  The Defendants have no defense, they have never claimed to have a defense.  It is hard to see how notes of a non-party that Defendants claim may provide information helpful to the Plaintiff can cause injury to the Defendants.

**Argument:**

The Defendants present motion for sanctions is a twelve-page document that cites seven (7) cases. This motion is similar to the motion these Defendants filed earlier I this case at Docket No. 100. The cases cited in this motion were also cited in Docket No. 100. These case are listed below:

1. United States v Procter & Gable, Co., 356 U.S. 677, 682 (1958)

2. Klonski v Mahlab, 156 F3d 255, 269 (1st Cir. 1998)

3. Melo-Tone Vending, Inc. v Sherry, Inc., 39 Mass. App. Ct. 315, 320 (1995)

4. National Hockey League v Metro Hockey Club, Inc., 427 U.S. 639, 643 (1976)

5. Torres-Vargas v Periera, 431 F.3d 389, 393 (1st Cir. 2005)

6. Strom v American Honda Motor Co. Inc. 423 Mass 330, 335 (1996)

7. Rosario v Gonsalves, 140 F. 3d 312, 315 (1st Cir. 1998)

The Plaintiffs responded to the Defendants earlier motion in Docket No. 107. These cases have no relevance to the facts of the case. They do not support sanctions against counsel who never had possession or control of the notes of a non-party.

**The Defendants motion states no claim against Terri Pechner-James.**

The first deposition in this case was held on January 10, 2006. Terri Pechner-James was deposed at the offices of Reardon, Joyce & Akerson, P.C. 397 Grove Street Worcester, Massachusetts 01605. She arrived promptly at 10:00 am. The deposition started at 10:20 am; it ended at 4:00 pm. She has attended a total of nine (9) depositions; she has been deposed for forty three (43) hours.

The transcript of her first deposition on January 10, 2006 record a line of questioning in which she establishes the record and note taking practices she learned in the Department. The deposition transcript- **Exhibit 2-** records the following exchanges between Attorney Akerson and Plaintiff, Terri Pechner-James:

    Q. What is the purpose of the calendar, ma'am?

    A. Had a calendar since I got out of…one thing they taught us in the academy is to carry a book with you so that you can out dates and times.

    Q. By that do you mean in terms of when you are scheduled to work, any extra jobs or training classes you have?

    A. Yes.

Attorney Akerson then asked the following questions to which the plaintiff provided the following responses:

> Q. Are there notations in the diary regarding, in this case, Lieutenant Foster and his interactions and his treatment with you?
>
> A. Yes
>
> Q. And you indicated that was something you learned at the police academy, to keep a calendaring system when you're working as a police officer.
>
> A. Yes.

On page 56 of the same deposition, the exchange between Attorney Akerson and the Plaintiff, Terri Pechner-James provides further detail on the importance and the widespread use of the note-taking system in the Department:

> Q. I'm sorry.
>
> A. My notes.
>
> Q. I'm not trying to be cute. What did you mean when you stated being tortured?
>
> A. My calendars go from when I was in the academy. I started…when I worked in CID, one of the things I learned from my superior officers in CID was to always keep a personal book of incidents that happened on the job.
>
> Q. Who in CID told you to do that?
>
> A. Sergeant Pisano, Sergeant Borgioli.
>
> Q. So you started keeping, if I may call it a diary, of all your personal notes, after your temporary assignment to CID.
>
> A. No, before that. Before my temporary assignment.
>
> Q. Did you keep a journal for your first year and a half on the Revere Police Department?

>A. Yes.
>
>Q. What is the method in which you kept notes? Did you do it on a daily occasion, to prepare these notes you're referencing, your personal notes?
>
>A. When I worked? Is that…I mean..
>
>Q. I'm just trying to figure out…
>
>A. There was really no rhyme.
>
>Q. Every night would you sit down at a computer or note pad and write them out? That's what I am trying to figure out. What was the method of you note-taking?
>
>A. When I went to school, I wrote down when I had school. If I took a day off, I wrote down when I took a day off. Got in an accident, I wrote down about my accident. If something happened. I'd write it down.

The deposition transcript states on p. 58:

>Q. At some point you changed the format and typed your handwritten notes?
>
>A. Yes
>
>Q. When was that done?
>
>A. 2001 when I filed a complaint with the MCAD.

Plaintiff, Terri Pechner-James, acquired her note-taking skill by instruction and experience in the Department; she kept her own records and made her own notes in accordance with the Department's policy. Lynn Malatesta presumably acquired her note-taking skill by instruction and experience in the Department, she evidently kept her own records and made her own notes. Presumably all officers of the Revere Police Department have records and notes that can confirm facts contained in the Plaintiffs

complaint. Lynn Malatesta is no different. Sonia Fernandez did not state in her deposition that Terri Pechner-James had possession or control of Lynn Malatesta's notes and Defendants provide no evidence of such possession in their motion.

**Conclusion:**

Both the United States Supreme Court and the First Circuit have clearly articulated the doctrine of municipal liability.  That doctrine creates municipal liability where the deliberate indifference of the policymakers demonstrated by a failure to investigate caused injury to Plaintiffs. The Plaintiffs have provided the Defendants and their counsel with a Memorandum On Municipal Liability and included a detail discussion of the doctrine in their Motion For Summary Judgment On Less Than All Issues. Docket Nos 118-122.  The Defendants multiplication of litigation are clearly attempts to avoid the central issues of this case.

The Defendants and their counsel have intentionally and without substantial justification ignored the decisions of the United States Supreme Court and those of the First Circuit. They have no defense against municipal liability as defined by Gonsalves v City of New Bedford, 939 F. Supp. 915 (1996); Broderick v Evans, Case No. 02-11540 RGS; Bardonaro v McLoed, 871 F. 2d 1151, 1161 (1st Cir. 1989). Their repeated motions multiply litigation, increase the number of docket entries and constitute a distraction from the central issues of the case.

Plaintiffs' counsel has never met Lynn Malatesta; he does not know Lynn Malatesta; he has never received documents or notes from Lynn Malatesta. See Plaintiffs' Counsel Affidavit - Docket No 232.  He sent a letter confirming these facts to counsel for the Defendants. Counsel for the Defendants have attached that letter as **Exhibit A** to their motion. The Defendants have provided no case law or legal authority to support their contention that Plaintiffs attorney can be considered as having possession and control of notes that belong to a non-party whom he does not know and has never seen. This motion is clearly another diversion. The Defendants motion should be dismissed and the court should impose upon the Defendants such sanctions as, in its discretion, it deems just and proper.


Terri Pechner-James and
Sonia Fernandez
By their attorney

/s/ James S. Dilday, Esq.
James S. Dilday, Esq.