UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**TERRI PECHNER-JAMES and
SONIA FERNANDEZ, Plaintiffs,**

v.                                                    C.A. No. 03-12499-MLW

**CITY OF REVERE, THOMAS AMBROSINO,
MAYOR, CITY OF REVERE POLICE
DEPARTMENT, TERRENCE REARDON,
CHIEF OF POLICE, BERNARD FOSTER,
SALVATORE SANTORO, ROY COLANNINO,
FREDERICK ROLAND, THOMAS DOHERTY,
JOHN NELSON, JAMES RUSSO, MICHAEL
MURPHY and STEVEN FORD,**
          **Defendants,**

## PLAINTIFFS POSITIONS AS TO CONTESTED ISSUES ON RESPONSES PROVIDED BY DEFENDANT, TERRENCE REARDON

Pursuant to the Court's Order of October 23, 2006, the Plaintiffs state below their position as to each contested Responses to Interrogatories provided by Defendant, Terrence Reardon:

Interrogatory No.2: Plaintiffs Position in Response.

Chief Reardon is a long-term employee of the Revere Police Department. He had been a Lieutenant in that department prior to being appointed chief of police by the policymakers of the City of Revere. The purpose of this interrogatory is to determine the extent of the Chief's training, experience and sensitivity in matters that relate to sexual harassment and matters of discrimination.

The extent of the Chief's knowledge and training is directly related to the "standard operating procedure" of the City of Revere and to the "longstanding practice" and customs of the municipality in handling matters of discrimination and sexual harassment. The answer to this interrogatory is not just relevant it is admissible. It is important because (1) in order to determine liability, the court must consider "the relevant legal

material including the state and local positive law, as well as the custom and usage having the force of law. Jett v Dallas Independent School District, 49 U.S. 701, 737 citing City of St. Louis v Praprotnik, 485 U.S. 112 (1988); and (2) the jury must decide whether the policymaker acquiesced in a longstanding practice or custom which constitutes the "standard operating procedure" of the City of Revere.

As a long-term employee and now Chief of the Revere Police Department, Terrence Reardon's knowledge, experience, training and sensitivity to sexual harassment and discrimination is admissible and crucial to the fact finder's determination. The central issue in this case is municipal liability. Determining who is a policymaker is a legal question to be resolved by the trial judge. See Jett, supra. and Docket No. 136.

Terrence Reardon's response to Interrogatory No. 2. is crucial to the establishment of municipal liability. This Interrogatory is not just "calculated to lead to the discovery of evidence"; it requires information that is relevant, admissible and essential to municipal liability. Mayor Thomas Ambrosino placed the training and the professional experience of Terrence Reardon at the center of this Interrogatory. Mayor Ambrosino stated in response to his Interrogatory No. 18:

> **I do not directly supervise the Revere Police Department. That function is trusted to the Chief of Police. I rely upon the Chief of Police, a trained law enforcement professional with amny years of experience, to operate the Police Department in accordance with the law.**

Defendant, Thomas Ambrosino, a policymaker of the City of Revere, has not only conferred authority upon Terrence Reardon but he has stated that he relied upon his "many years of experience and his training as a law enforcement professional." The Mayor's clear reliance on the Chief's training and experience has increased the importance of the nature and substance of the Chief's training, the period during which he received his training, the name and address of the schools that provided the training, the nature and substance of the training offered by each school, and any certificates he may have received from such school.

This information is particularly important because Terrence Reardon, for many years, held the position of Lieutenant and other supervisory positions in the Revere Police Department. In addition, in his supervisory capacity, he worked closely with Kathy Fish and was familiar with the Plaintiffs and their cases prior to being appointed Chief of Police. The Defendant's present answer constitutes a non-response.

Interrogatory No. 3: Plaintiffs Position In Response

This Interrogatory seeks limited information about the chief's training in matters that involve sexual harassment. The present response intentionally evades the question and is non-responsive. It is the same response that the Defendant provided to Interrogatories 1,2,4,5,6,7,8,9, and 12.

Interrogatory No. 4: Plaintiffs Position In Response

Damages, satisfaction of judgment, legal fees and costs are both relevant and admissible in any civil action. The information requested by this Interrogatory would be admissible in Phase Two of this trial. Fed. R. Civ. P. 26 takes a very broad approach with respect to what information is discoverable. See Rule 26(b)(1)(in depth discussion of the scope of discovery) confirms that discoverable information need not be admissible, only relevant. The information requested by Interrogatory No. 4 is both relevant and admissible. The present response intentionally evades the question and is non-responsive. It is the same response that the Defendant provided to Interrogatories 1,2,3,5,6,7,8,9, and 12.

Interrogatory No. 5: Plaintiffs Position In Response

This interrogatory also seeks information that is relevant to the issues of damages, satisfaction of judgments and legal fees and costs. It requires an answer that is different than his response to Interrogatories 1,2,3,4,6,7,8,9, and 12.  This evasive answer constitutes a non-response by the Defendant.

Interrogatory No.6: Plaintiffs Position In Response

This interrogatory also seeks information that is relevant and admissible on the issue of damages and satisfaction of judgments. The present response intentionally evades the

question and is non-responsive. It is the same response that the Defendant provided to Interrogatories 1,2,3,4,5,7,8,9, and 12.

Interrogatory No.7: Plaintiffs Position In Response

The civilian complaints that are the subject of Interrogatory No.7 would have been filed against Terrence Reardon, not in his personal capacity, but as an officer of the Revere Police Department. Any complaint filed during Terrence Reardon's long tenure with the Revere Police Department would indicate the Defendant's experience with complaints. They would also give us some information on how the municipality handled such complaints. The present response intentionally evades the question and is non-responsive. It is the same response that the Defendant provided to Interrogatories 1,2,3,4,5,6,8,9, and 12.

Interrogatory No.8: Plaintiffs Position In Response

This interrogatory seeks information about the Defendant's involvement in lawsuits that arise from sexual harassment and other forms of discrimination. As a "trained law enforcement professional" with many years of experience in the Revere Police Department, a response to this interrogatory would provide a look at the "standard operating procedure" of the Department. It would also provide an example of the longstanding practice, the customs and the usage of the Defendants in handling such matters. The present response intentionally evades the question; it is a non-response. It is the same response that the Defendant provided to Interrogatories 1,2,3,4,5,6,7,9, and 12.

Interrogatory No. 9: Plaintiffs Position In Response

The Plaintiffs were examined by Dr. Barry at the request of the Revere Police Department before they commenced their employment. The purpose of this exam was to determine whether the Plaintiffs were mentally fit to be police officers. The purpose of this interrogatory is to determine if the Defendant underwent the same kind of examination and also to determine his sensitivity to psychiatric and mental health issues. The present response intentionally evades the question; it is a non-response. It is the same response that the Defendant provided to Interrogatories 1,2,3,4,5,6,7,8, and 12.

Interrogatory No.12: Plaintiffs Position in Response

The answer to this question usually goes to the credibility of the party being questioned. The present answer is neither affirmative or negative. It is evasive. It repeats the same stock answer as all the previous questions except No.10 and No. 11. The present response constitutes a non-answer.

Interrogatory No. 13: Plaintiffs Position In Response

The Defendant has provided answers to this interrogatory that are almost identical to the initial and supplemental responses provided by Thomas Ambrosino to his Interrogatory No. 9. This Interrogatory seeks information about the investigatory process of the Revere Police Department.

The Defendant has instead provided information about the MCAD, the City Solicitor's Office and other entities. He evaded the question both in his initial and his supplemental answers. The heart of this case is municipal liability. It is clear that Terrence Reardon, like Chief Benoit in Gonsalves v City of New Bedford, 939 F. supp. 915 (1996) has displayed a deliberate indifference toward the Plaintiffs injuries and that he acted in accordance with the "custom and usage of the City of Revere.

The City of Revere has a municipal structure like the City of New Bedford; it has a Plan B Charter. Chief Reardon, like Chief Benoit, was appointed by the mayor an confirmed by the city council. The City Council was informed of this case by the mayor in executive session on April 30, 2001. The municipality that conferred authority upon him, is aware of this case, is aware of his actions and of his failure to act. See College-Town.

This interrogatory seeks answers to whether was a thorough investigation and the nature of that investigation. The initial response attempted to use the MCAD to evade the question; the supplemental response attempted to use the MCAD and the City Solicitor to, once again, evade answering the question about the investigation.

The Defendant recommended the Plaintiffs for Involuntary Disability Retirement based on a diagnosis of Post-Traumatic Stress Disorder (PTSD) caused by events that occurred during their employment at the Revere Police Department. The present response to this interrogatory makes it appear that the Defendant made his recommendation without conducting an "investigation of the circumstances" that injured the Plaintiffs.

Interrogatory No. 14: Plaintiffs Position In Response
The Defendant did not provide a supplemental response to this interrogatory. This interrogatory specifically asks the Defendant to provide the results of any independent investigation conducted by the Department. He is now Chief of a Department where he also served as a Lieutenant. This interrogatory asks about an independent investigation. Any such records would now be under his control as Chief. He has provided a non-response about reviewing medical records. The evasive nature of this answer constitutes a non-response.

Interrogatory No.15: Plaintiffs Position In Response
The Defendant's initial answer relied upon information "provided…in a prior discovery response." Defendant failed to identify the prior discovery response. The supplemental answer was longer and even more evasive. He evades answering the question by accusing the Plaintiffs of "unwarranted invasion" and "unwarranted and intrusive fishing exhibition." The evasive nature of this answer constitutes a non-response.

Interrogatory No. 16: Plaintiffs Position In Response
The Defendant did not provide a supplemental response. This response is a direct admission that the Defendant's office conducted no independent investigation, produced no reports and that the Defendant did not act to change the "standard operating procedure." The evasive nature of this answer is a non-response and a tacit admission of a failure to investigate.

Interrogatory No. 17: Plaintiffs Position In Response

The Defendant did not provide a supplemental response. The Defendant admits that no report of the incident was prepared. The response: "None made by me or my staff" is deliberately misleading. It implies that reports were generated and that there were no inaccurate statements made in those reports by him or his staff. In fact, no investigations were done and no reports were prepared. This response was an attack on the Plaintiff, Terri Pechner-James; it provided no answer to the question. The evasive nature of this answer constitutes a non-response.

Interrogatory No. 18: Plaintiffs Position In Response
The interrogatory is seeking to establish whether as a result of an investigation, the Chief of Police and/or the Revere Police Department made any conclusions about violations of law. The initial response evaded the question. It relied on a conclusion by the City Solicitor, a conclusion based on no investigation.

The supplemental answer is contradictory and confusing. The Defendant states: "I did not make an independent determination." He does not state that any investigations were conducted but relied instead on positions taken by other parties. His conclusion, without investigation, by the City Solicitor that "no rules, regulations, order or policies of the Revere Police Department or any laws of the Commonwealth or the United States have been violated" constitutes advocacy not a conclusion based on an investigation. This answer is even more evasive than the initial response; these answers together constitute a non-response.

Interrogatory No. 21: Plaintiffs Position In Response
This interrogatory seeks information about the mechanism used to investigate complaints of sexual harassment and other forms of discrimination. "Attorney-client privilege" and "work product protection" are distinct and separate and neither one prevents the disclosure sought by this interrogatory.

In federal courts where the federal common law of privilege applies, the proponent of a privilege has the burden of proving its applicability. Logan v Commercial Union Ins. Co.,

93 F.3d 971 (7th Cir. 1996); Coastal States Gas Corp v Department of Energy, 199 U.S. app. D.C 272, 617 F. 2d 854, 862 (Fed. Cir. 1980). The federal agency, like the Defendant in this case, failed to sustain its burden of proff for its various claims of privilege. The Coastal court started: "We remind agencies once again, that the burden is on them to establish their right to withhold information from the public and they must supply the court with sufficient information to allow us to make a reasoned determination that they were correct" Id at 862. The Defendant in this case has asserted both the attorney-client privilege and the work-product protection in a blanket fashion but he has not sustained the burden of proof and he has not supplied sufficient information in his responses to allow the court to make a reasoned determination that he is correct in his assertion.

> A party relying on the work product protection to forestall discovery must demonstrate the applicability of the protection, just as the proponent of the attorney-client privileges must do so. And, as in this case, when the attorney-client privilege is invoked, the work-product protection must be specifically raised and demonstrated rather than asserted in a blanket fashion. Edna Selan Epstein, The Attorney-Client Privilege and the Work Product Doctrine, Fourth Edition citing Shiner v American Stock Exch, 28 FRD 34, 35 (S.D.N.Y. 1961).

The Defendant has not demonstrated that the underlying facts that the interrogatory seeks is covered by either the attorney-client privilege or the work-product protection. The response to this interrogatory seems to be based on the mistaken idea that everything a lawyer knows is either privileged or part of his work product. The Defendant has relied upon a mistaken idea and provided a non-response.

Interrogatory No. 22. Plaintiffs Position In Response
This interrogatory seeks to determine, from the Chief of Police, the breath of the investigation that his office conducted. The Defendant has again asserted the attorney-client privilege and work product protection in a blanket fashion. Attorney-client privilege protects from discovery the "communication" between client and attorney but

not the underlying facts; the work product protection also cannot be asserted to prevent disclosure of underlying facts. See Attorney-client Privilege And Work Product Doctrine, supra. at p. 448.  In Casson Constr. Co. Inc. v Armco Steel Corp., 91 F.R.D 376 (D. Kan 1980), a default judgment was entered against a party that stonewalled discovery. The refusal to respond was based on a faulty raised and unsupported claim of attorney-client privilege and work-product protection from discovery. The ork product protection served as no shield from discovery as to facts that the attorney had learned, persons from whom the facts had been learned, or the existence of documents, even though the documents in chich the attorney may have set down that knowledge might be protected from discovery by virtue of the work product doctrine. Id at 489.

This interrogatory is directed to the Chief of Police. His unsupported claim of attorney-client privilege and work product protection are not a protection from discovery. This Defendant, like the party in Casson is stonewalling discovery and he should be defaulted. The shift schedule attached contained the name of some police officers. It contained no contact information. In the supplemental answer, the Defendant tried to use M.G.L.c. 66 as another shield to avoid discovery. This Defendant should be defaulted for filing such a non-response.

Interrogatory No. 25: Plaintiffs Position In Response
This interrogatory seeks details about the investigation of Plaintiffs complaint. It seeks to identify the investigation that was conducted, not by the Defendants, but by law enforcement officials. Unlike Interrogatory No. 23, the focus of this interrogatory is outside, not inside the Department. Once again, without citing caselaw or procedural authority, the Defendant makes a blanket assertion of both attorney-client privilege and work-product protection.

He then follows this blanket assertion with an initial answer and a supplemental answer that is completely non-responsive to the question. This interrogatory has six (6) subparts. The Defendant attempts to answer each subpart in his supplemental. The responses did not address the role of the outside investigator. He responses serve only to confirm the

lack of serious consideration that the Defendant gave to the Plaintiffs complaints. Both the initial and the supplemental responses evade the objective of the interrogatory and provide a non-response to this interrogatory.

Interrogatory No. 26. Plaintiffs Position In Response

This interrogatory encompasses a period of time "since September 12, 1995 (beginning of Plaintiffs employment) and five (5) years prior to that date. It seeks to identify all complaints of sex, race, and other kinds of discrimination brought against the Revere Police Department during this discrete period. The interrogatory seeks information about complaints brought against the Department as opposed to individual officers (See Interrogatory No. 22).

This interrogatory is divided into subparts (a-h). A response to this interrogatory would establish the "standard operating procedure" of the Defendants in handling discrimination complaints based on sex, race and other protected classifications. The Defendant has failed to answer the interrogatory. His initial answer was: "This interrogatory exceeds the number of interrogatories allowed under Fed. R. Civ. P. 33(a). His supplemental answer is based on information and belief.

It is a reasonable conclusion based on the Defendant's failure to respond to Interrogatories 22 and 26 that (1) there is a longstanding practice or custom that allows such complaints to go to the MCAD; (2) to have the City Solicitor filed routine denials; (3) to fail to conduct any investigation or to seek help in conducting an investigation. The Plaintiffs are entitled to a default judgment based on the Defendant's non-response to this interrogatory.

/s/ James S. Dilday_____
James S. Dilday, BBO# 124360
Grayer & Dilday, LLP
27 School Street Suite 400
Boston, MA 02108
(617)227-3470