**TIME SHEET-TERRI PECHNER-JAMES**

| | | |
|---|---|---|
| 3-15-01 | Meeting with client; discussed recent discharge from RPD; possible sexual harassment complaint | 2.5 |
| 3-16-01 | Telephone conference with client;discussed investigation prac tices of RPD; importance of investigation in her case. | 1.1 |
| 3-17-01 | Telephone conference with client about witnesses to incident at RPD | 0.5 |
| 3-19-01 | Reviewed facts of MCAD complaint | 1.1 |
| 3-20-01 | Reviewed with client RPD's lack of investigation procedures; also reviewed report of Chief colannino from Sgt. Nelson, Cafarelli amd Picardi | 1.1 |
| 3-21-01 | Partial review of client's medical records from MGH | 0.5 |
| 3-21-01 | Partial review of clients medical records from other providers | 0.5 |
| 3-23-01 | Partial review of psychiartric records from Dr. Keroack | 0.5 |
| 3-23-01 | Partial review of psychiatric records from other mental health providers | 0.5 |
| 3-24-01 | Telephone conference with client; discussed medical, psychiatric records and MCAD complaint | 0.75 |
| 3-26-01 | Prepared draft of complaint based on review of medical, psychiatric and MCAD information | 2.5 |
| 3.27-01 | Meeting with client to discuss possible legal remedies including disability benefits | 2.1 |
| 3.28.01 | Work session with associates to discuss legal remedies available to client | 2.1 |
| 3-29-01 | Meeting with client to discuss being carried as injured on the job | 1.5 |
| 3-3-01 | Meeting with client; discussion of potential claim and application process | 0.75 |
| 4-2-01 | Reviewed with client request for leave of absence | 1.1 |
| 4-3-01 | Meeting with client;discussed application for Indemnification of Medical Bills and Application for Continuation of Wages | 1.5 |
| 4-5-01 | File review and Telephone Conference;pending harassment complaint and request to be carried as injured on duty | 1.25 |

| | | |
|---|---|---|
| 4-7-01 | Case and document review of  requirements indemnification and"past practices of RPD in such cases. | 0.5 |
| 4-9-01 | Research-union contract with RPD | 1.1 |
| 4-10-01 | Conference with client | 1.1 |
| 4-11-01 | Research-requirement under MGLc 41 Sec. 111F;110 and clients application | 2.5 |
| 4-13-01 | Meeting with client; leave of absence request;preparation of correspondence | 1.1 |
| 4-14-01 | Telephone conference;final version of leave of absence request | 0.5 |
| 4-16-01 | Meeting; addressed details of Leave w/oLoss of Pay & IndemnificationApplication | 1.1 |
| 4-17-01 | Telephone conference with client after meeting with mayor; discussed meeting and necessity of filing application for leave | 1.1 |
| 4-18-01 | Meeting with client; medical information review, MCAD complaint review;response to anticipated negative response from the city | 1.1 |
| 4-19-01 | Conference with client; discussed substance and procedure of requested amendment to MCAD complaint | 0.5 |
| 4-19-01 | Conference with client after filing Sec. 111F benefits | 0.5 |
| 4-20-01 | Conference with client;discussed responses from Chief Colannino and stressful acts by the RPD | 0.5 |
| 4-21-01 | Discussion; new details about facts that pertain to amended complaint | 0.5 |
| 4-23-01 | Telephone conference; legal and administrative alternatives in the event of negative responses from Mayor and Chief | 0.5 |
| 4-24-01 | Meeting with client to review Mayor's letter dated 4-23-01 denying leave | 1.1 |
| 4-24.01 | Review and Preparation of meeting with client | 0.25 |
| 4-25-01 | Review of forms, statutes and case law on Involuntary Retirement Disability; reviewed application forms in prepara tion of filing | 1.1 |
| 4-25-01 | Client discussed her meeting with Chief Colannino about Sec 111 F Benefits | 0.5 |

| | | |
|---|---|---|
| 4-26-01 | Meeting with client to discuss Mayor's letter dated 4-23-01 denying leave with pay | 1.1 |
| 4-27-01 | Discussed Chief Conannino's request for medical data and the Mayor's denial of leave with pay | 2.1 |
| 4-27-01 | Preparation for meeting | 0.25 |
| 4-30-01 | Review of medical data in light of Chief's request and review of procedural remedies in light of Mayor's denial | 0.75 |
| 4-30-01 | Conference with client; client discussed Capt Chaulk being in charge of investigation and no report and no results. | 0.75 |
| 5-1-01 | Meeting with client; discussed seeking disability claim through formal process | 1.1 |
| 5-2-01 | Meeting with client; discussed basis of disability claim; review documents on PTSD with client | 1.1 |
| 5-3-01 | Telephone conference; discussed and prepared Correspondence to Roy Colannino on disability claim | 0.5 |
| 5-4-01 | Conference with client; discussed contents of Colannino's response and counsel's letter to Colannino | 0.75 |
| 5-4-01 | Drafted and mailed letter to Colaninno | 0.25 |
| 5-7-01 | Conference; correspondence and documents to be provided to the Mayor | 0.75 |
| 5-9-01 | Discussed with client letter from Dr. Keroack dated 4-3-01 and letter dated 4-27-01 from Susan P. Rudman | 1.5 |
| 5-10-01 | Discussed response to Mayor's denial of Sec 111F benefits | 0.75 |
| 5-12-01 | Conference with distressed client about Mayor's denial; discussed denial of parity between physical and mental disabilities | 0.75 |
| 5-14-01 | Meeting, detailed discussion about meeting with Mayor on April 17, 2001 | 1.5 |
| 5-14-01 | Preparation for meeting | 0.5 |
| 5-15-01 | Research in preparation for Preliminary Injunction based on Sec 111F benefits | 1.5 |
| 5-16-01 | Conference with client about seeking injunction based on denial of Sec 111F benefits | 0.5 |
| 5-17-01 | Prepared summary of conference and research | 0.5 |

| 5-18-01 | Prepared first draft of injunction against City | 2.5 |
|---|---|---|
| 5-19-01 | Discussed first draft of injunction with client | 0.75 |
| 5-21-01 | Preparation for meeting with client on PTSD; denial of benefits by Mayor, Union and review of legal remedies | 1.75 |
| 5-22-01 | Meeting with client; discussion of legal remedies; failure of official investigation; denial of review; need for private investigation to substantiate personal experience | 1.5 |
| 5-23-01 | Review of private investigation and other issues discussed with client | 0.75 |
| 5-24-01 | Meeting to discuss administrative process; details of administrative process and need to exhaust the process | 0.75 |
| 5-25-01 | Research; DALA, PERAC, and MCAD agencies important to client's case | 1.5 |
| 5.26-01 | Discussion of each agency and its role in determination of client's case | 0.75 |
| 5-28-01 | Meeting; discussed time deadlines, statute of limitations and other prerequisites; discussed filing injunction if all else failed | 2.5 |
| 5-28-01 | Preparation for meeting | 0.5 |
| 5-29-01 | Meeting; discussed need for ongoing medical treatment, need for medical prescription drugs to treat Trauma; discussed importance of medical records and obtaining copies of said records | 1.75 |
| 5-30-01 | Review of current medical records; review of client's work records | 1.1 |
| 5-31-01 | Meeting with client; reviewed appeal procedures; discussed kathy Fish and other officers with experiences similiar to hers | 1.5 |
| 6-1-01 | Conference; discussed with client Chief Colannino's request for a meeting | 0.75 |
| 6-1-01 | Conference; client called with agenda for meeting | 0.5 |
| 6-1-01 | Reviewed client's request, advised client not to attend meeting without counsel; advised client that counsel would send letter of representation to Colanninno. | 0.75 |
| 6-2-01 | Conference on propriety of calling client at home when she | |

|  |  |  |
|---|---|---|
|  | is represented by counsel | 0.5 |
| 6-4-01 | Meeting;  letter of denial dated 6-1-01from Chief Colannino stating that "purely psychological disorders are normally not considered as work-related". Remedies available | 1.5 |
| 6-5-01 | Conference; discussed with client letter to be sent to police department; also financial and other threats being made against her husband by the RPD | 0.75 |
| 6-6-01 | Research of disability statutes; review of parity provisions; review and analysis of work related conditions | 0.5 |
| 6-7-01 | Conference about RPD and officers who have received leave with pay | 0.5 |
| 6-8-01 | Conference; need for written correspondence to City; need for legal support; City's decisions causing great stress | 0.5 |
| 6-11-01 | Conference; loss of employment, financial stress; City's pressure on her and husband; personal and financial stress | 0.5 |
| 6-12-01 | Conference; tense communications between client and RPD; need to address again the need for RPD to communicate directly with counsel; review documents | 0.75 |
| 6-13-01 | Meeting; possible return to active duty discussed as resolution; departmental reluctance to provide docu mentation and information; discussed ways of obtaining said documents and information | 1.75 |
| 6-13-01 | Preparation for todays meeting with client | 0.5 |
| 6-15-01 | Conference; discussed correspondence received from and sent to Chief Colannino; discussed complaint filed by MCAD | 1.16 |
| 6-18-01 | Prepared final version of letter to Chief Colannino, MCAD, discussing future status of client and future pattern of communication between the parties. | 0.75 |
| 6-18-01 | Conference; notified client that correspondence had been sent to parties discussed | 0.5 |
| 6-19-01 | Conference with MCAD | 0.25 |
| 6.19-01 | Conference; discussed MCAD complaint; discussed RPD and harassment of husband | 0.25 |
| 6-19-01 | Discussed complaint No: 01132261 filed by husband; her amendment; possible resolution or prosecution of complaint | 1.1 |

| | | |
|---|---|---|
| 6-20-01 | Conference; financial impact of actions by RPD | 0.75 |
| 6-22-01 | Review of case file; MCAD complaint and Sec 111F and Sec 100 | 0.5 |
| 6-25-01 | Review of medical and psychiatric records, including Dr. Keroack's opinion of 6-15-01 and 6-3-02 | 0.75 |
| 6-27-01 | Preparation for assisting client with Involuntary Retirement Application | 1.25 |
| 7-2-01 | Office conference on client's application | 0.5 |
| 7-2-01 | Conference; client called with questions on application | 0.5 |
| 7-2-01 | Review of "occupational burnout" and "emotional stress" diagnosis by client's physician; reviewed Public Safety Injury Report filed by client on 4-19-01;reviewed documents support the "cumulative condition" that caused the client's disability. | 1.1 |
| 7-5-01 | Reviewed the role of Meditrol,Inc.and it determination of disability; also reviewed opinion of Susan P. Rudman | 0.75 |
| 7-6-01 | Conference; discussed possibility of "return to work" as mentioned by the RPD and Dr. Keroack. | 0.75 |
| 7-9-01 | Discussed with client expected response from RPD after meditrol review | 0.5 |
| 7-9-01 | Prepare motion to amend-draft-MCAD complaint | 1.1 |
| 7-11-01 | Conference; Meditol responded; RPD sent letter requesting additional information;discussed additional responses;also formulated responses to RPD | 1.1 |
| 7-11-01 | Prepare Afffidavit for Motion to Amend | 0.75 |
| 7-11-01 | Reviewed Motion and Affidavit | 0.75 |
| 7-12-01 | Conference with client; review of RPD letter; | 0.25 |
| 7-13-01 | Associate conference, client conference re:Amended Complaint | 3.1 |
| 7-16-01 | Discussed with client her conference with Dr. Keroack; also discussed the meaning of "foreseeable future" as stated by the RPD; discussed clients current condition | 1.5 |
| 7-17-01 | Completed final version of Amended MCAD complaint Order, Affidavit | 2.1 |
| 7-18-01 | Client called prior to her hospital visit;reported same migraine she used to have while employed by the RPD | 0.5 |

| | | |
|---|---|---|
| 7-19-01 | Conference;results of hospital visit; Dr. Keroack's opinion, demand by City for response by 7-20-01; also discussed stress, abuse, harassment, the ongoing effect of the City's conduct that continues to cause migraines and trips to emergency room | 1.5 |
| 7-19-01 | Associate conference; status of case | 0.5 |
| 7-23-01 | Conference; discussion of extensive and thorough medical exam conducted by M.G.H on 7-18-01 | 0.5 |
| 7-24-01 | Conference with Al Balestro regarding status of case; | 0.5 |
| 7-24-01 | Client conference; discussed advice by Dr Keroack to drop case; discussed stress, mental pressure, financial pressures; client's decision to pursue case to trial | 1.1 |
| 7-25-01 | Conference; discussed results of tests by MGH; client concerned by increased dosage needed to combat headaches; | 0.5 |
| 7-27-01 | Reviewed medical records that client provided from MGH and Dr. Keroack; evaluated records for possible disability claim | 1.1 |
| 7-30-01 | Discussed with client possible disability claim; discussed meeting with Keroack tomorrow | 0.5 |
| 8-1-01 | Discussed with client the future of her employment; discussed the essential tasks of o police office as stated in guidelines provided by RPD | 1.1 |
| 8-1-01 | Discussed "foreseeable future" and the requirements of the disability statute | 0.5 |
| 8-1-01 | Discussed the relationship of "panic attacks" and the "essential tasks"; also discussed practical effect of return to work | 0.75 |
| 8-2-01 | Conference with client | 0.25 |
| 8-3-01 | Reviewed medical records from MGH and Dr. Keroack; discussed status of MCAD complaint;mailed cover letter Order, Motion,Amended Complaint,Affidavit of Compliance. | 1.75 |
| 8-6-01 | Discussed standards that govern disability for both client and husband; 72% of current wages required by statute; parity required by law between physical and psychological (PTSD) injuries | 0.75 |
| 8-6-01 | Discussed the standards applied by the City of Revere; highlighted the difference in the state and the city standards; City's rejection of state policy | 0.5 |

| | | |
|---|---|---|
| 8-8-01 | Reviewed correspondence of 6-15-01 by Dr. Keroack and correspondence of Chief Colannino 6-1-01 and related 7-11-01 documents; developed laymans explanation of how PTSD is disabling and entitled to parity | 1.1 |
| 8-10-01 | Discussed review with client in anticipation of response from RPD | 0.5 |
| 8-13-01 | Reviewed clients MGH records fro Aug, July, and June 2001 | 0.5 |
| 8-14-01 | Review of letter of 8-13-01 from RPD to Dr. Keroack signed by Frederick Roland; briefly discussed scheduled meeting with Keroack and MCAD amended complaint | 0.75 |
| 8-15-01 | Reviewed with client letter dated 8-13-01from RPD; addressed the concerns raised by the correspondence (1) forseeable future (2) essential tasks(3)panic attacks and impact on essential tasks(4)importance in correspondence and disability criteria. | 1.1 |
| 8-17-01 | Discussed impact of medication on any decision to return to the RPD; also discussed meting with Keroack on 8-14-01 and options discussed | 1.5 |
| 8-20-01 | Client called to say she discussed return to work with Dr. Keroack; he thinks she can return in 6 months;she is uncertain; needs to meet to discuss situation | 0.75 |
| 8-22-01 | Review of medical files from MGH | 1.1 |
| 8-22-01 | Review of medical notes from Dr. Keroack | 0.5 |
| 8-22-01 | Review of correspondence and documents from RPD | 1.1 |
| 8-23-01 | Review of underwear incident of Feb-Mar 2001 | 0.5 |
| 8-23-01 | Review of vandalism report of 2-7-99 | 0.5 |
| 8-23-01 | Review of Application w/oLoss of Pay-4-19-01 | 0.5 |
| 8-23-01 | Review of Application for Indemnification-4-19-01 | 0.5 |
| 8-24-01 | Review of Mayor's denial of leave | 0.5 |
| 8-24-01 | Review of Chief Colannino's Response to Injured-4-29-01 | 0.5 |
| 8-24-01 | Review of this offices response to Chief Colannino | 0.5 |
| 8-24-01 | Review of Chief Colannino's Response to Injured 4-29-01 | 0.5 |
| 8-27-01 | Preparation and meeting with client to discuss department decisions and client's options | 1.1 |
| 8-29-01 | Review of RPD Report dated 1-14-99 about sexual harassment within RPD | 1.1 |
| 8-29-01 | Review of reports of Sgt Cafarelli & Picardi on 3-12-01 incident | 1.1 |
| 8-31-01 | Conference with MCAD | 0.25 |

| | | |
|---|---|---|
| 8-31-01 | Reviewed with client medical records and medical opinions | 0.5 |
| 8-31-01 | Reviewed correspondence from City and RPD | 0.5 |
| 8-31-01 | Reviewed MCAD complaint and amended complaint | 0.5 |
| 8-31-01 | Reviewed Client's complaint and reports of sexual harassment generated by the RPD | 0.75 |
| 8-31-01 | Discussed alternatives, retirement, Title VII action, MCAD complaint, state and federal courts | 1.25 |
| 10-2-01 | Conference;client discussed medical appointment with Dr. Pisinski; debriefing seminars causing both emotional and physical pain | 0.75 |
| 10-3-01 | Discussed clients letter to Union representative, John Murphy | 0.5 |
| 10-11-01 | Discussed clients letter requesting to be examined by City's medical oficer; letter requested parity for PTSD; camparison with Boston and Salem-cities that recognize parity; discussed her visit to OnSite Academy | 1.1 |
| 10-25-01 | Discussed City's Response dated 10-24-01 to Union rep.; Charles Callahan | 0.5 |
| 10-23-01 | Discussed City's response dated10-22-01; response to client's letter dated 10-11-01. | 0.5 |
| 10-19-01 | Conference; discussed letter dated 10-18-01 from Patricia Carey, Secretary of the Union | 0.5 |
| 11-8-01 | Discussed MCAD letter dated 11-7-01 scheduling conferences in 4 related cases | 0.5 |
| 11-12-01 | Discussed letter from G. Cashman dated 11-9-01 moving client to 3rd Step | 0.5 |
| 11-22-01 | Discussed hearing conducted by Mayor on 11-21-01 | 0.5 |
| 12-18-01 | Meeting with client in preparation for filing TRO; discussed history of case from date of hire in September 1995; lost wages, discussed witnesses; role of mayor and Capt Roland; PTSD and role of Onsite Academy-Valerie and Doug Hayden; also meeting with Dr. Keroack | 2.5 |
| 12-21-01 | Filed CA-01-5837-H; served parties-mayor and Frederick Roland, acting chief; | 1.5 |
| 12-28-01 | Discussion of stress and medical visits to MGH during December 2001 | 0.5 |
| 1-5-02 | Conference; client went to MGH on 1-4-02; pregnancy confirmed about impact of case on health and pregnancy | 0.5 |

| | | |
|---|---|---|
| 1-8-02 | Conference; client had appointment with Dr. Keroack; still has headaches;concerned about stress, child and stress medication | 0.5 |
| 1-10-02 | Reviewed pleadings on injunction; prepared for court hearing | 1.1 |
| 1-11-02 | Reviewed MCAD complaint; reviewed medical records of MGH; reviewed RPD correspondence | 1 |
| 1-15-02 | Hearing on preliminary injunction;discussed case with attorney for Frederick Roland and Mayor Ambrosino; argued case in court before judge Walker | 2.1 |
| 1-15-02 | Post hearing meeting with client; review for possible appeal | 0.75 |
| 1-19-02 | Reviewed memorandum of decision denying Motion for Preliminary Injunction by Judge Joseph M. Walker | 0.5 |
| 1-19-02 | Researched Packaging  Industries Group, Inc. v Cheney 380 Mass 609, 616 (1980) cited in  Judge Walker's denial | 1.1 |
| 1-22-02 | Conference; detailed discussion of denial with client; reviewed with client evidence considered by court: Dr. Keroack's opinion of 4-3-01and PTSD diagnosis; opinion of Dr. Rudman; Dr. Keroack's letter of June 15, 2001 to Chief Colannino; Dr. Keroack's second letter dated October 29, 2001 to Chief Colannino; other documents supporting diagnosis of PTSD. | 2.1 |
| 1-24-02 | Office consultation with associates on possible responses to court's denial of injunction;possible remedies available to client | 1.1 |
| 1-28-02 | Discussion with client about appeal and other remedies also discussed best available choices | 0.75 |
| 1-29-02 | Research; studied state remedies pursuant to G.L.c.151B | 2.1 |
| 1-29-02 | Summary of research | 0.5 |
| 1-30-02 | Research; federal Title VII remedies and case law | 1.5 |
| 1-30-02 | Summary of research | 0.5 |
| 1-31-02 | Research' studies administrative remedies; G.L.c. 32 and applicable Code of Massachusetts regulations | 2.1 |

| | | |
|---|---|---|
| 1-31-02 | Summary of research; | 0.5 |
| 1-31-02 | Associate conference about strategy; identification of appropriate remedies; establishing priorities | 1.5 |
| 2-5-02 | Conference; discussed with client options available after denial of injunction | 0.5 |
| 2-5-02 | Conference; client concerned about Terrence Reardon being new chief of police of RPD; concerned; sees denial of injunction as rejection of PTSD; needs to examine feasibility of returning to work | 1.1 |
| 2-6-02 | Conference;  examined with client the return-to-work option; discussed doctor's concern about level of medication; also discussed current level of anxiety and impact on ability to return to traumatic environment | 1.1 |
| 2-7-02 | Conference; discussed difference between husband's application which is based on physical disability and client's application based on PTSD | 1.1 |
| 3-4-02 | Conference; client called concerned about husband; pregnancy and retirement board | 0.5 |
| 3-5-02 | Reviewed the implementation of administrative, state and federal remedies available to the client | 1.1 |
| 3-26-02 | Conference; client discussed move to Florida; husband has been approved for Sec. 111F disability benefits; discussed pursuit of Florida home | 1.1 |
| 5-20-02 | Conference; discussed letter from Chief Reardon to Dr. Keroack dated 5-17-02 re:client's ability to return to work; discussed pregnancy, discussed baby due date-by end of June; discussed plans for Florida move | 1.1 |
| 5-23-02 | Conference; discussed meeting with Dr. Keroack on 5-13-02; discussed RRB letter of 5-20-02 granting husband disability; also discussed award of Sec. 111F benefits to husband | 0.75 |
| 7-9-02 | Conference; discussion of clients physical condition; discussed visit to Dr. Keroack; also the importance of his professional opinion in support of her Involuntary application | 1.5 |
| 7-17-02 | Conference; discussed Chief Reardon's filing of Involuntary Application for her and its contents | 0.75 |
| 7-20-02 | Reviewed letter from Chief Reardon dated 7-17-02 in support of client's Involuntary Application | 0.5 |

| | | |
|---|---|---|
| 7-20-02 | Reviewed Summary of Facts by Chief Reardon | 0.75 |
| 7-20-02 | Reviewed Addendum Sheet: Medical Data-Dr. Keroack dated 6-30-02; reviewed reports:Keroack 6-30-01; Dr.Keroack 10-29-0;RPD dated 8-13-01;RPD dated 7-11-01 Dr. Keroack dated 6-15-01; and Dr. Keroack dated 4-3-01 | 1.1 |
| 7-24-02 | Conference; discussed chief's application, doctor's opinion; concerned about panic attacks in and around RPD and it personnel | 1.1 |
| 7-26-02 | Case review with associate; assessed medical date; assessed adequacy of the chief's Involuntary Application | 0.75 |
| 7-31-02 | Conference; client reported discussion with Dr. Keroack re: impact of litigation on PTSD | 0.5 |
| 7-31-02 | Conference; discussion about sale of Massachusetts house | 0.75 |
| 7-31-02 | Conference; discussion-impact of sharing space with husband's parents | 0.5 |
| 7-31-02 | Legal rights and concerns arising out of sharing space | 0.5 |
| 7-31-02 | Conference about relocating to Florida | 0.5 |
| 7-31-02 | Discussion about Dr. Rudman, other doctors and move to Fla. | 0.5 |
| 8-7-02 | Conference; client called;discussed medical develop ments discussed at appointment with Dr. Keroack | 0.5 |
| 9-4-02 | Review client's letter to Mayor Ambrosino dated 9-1-02 re:sexual harassment complaint; reviewed complaint with client | 1.1 |
| 9-6-02 | Conference; client met with Dr. Keroack to discuss effects of PTSD; medication; reviewed husband's award of disability | 0.75 |
| 9-10-02 | Review of clients medical and psychiatric records; review of application filed by Chief Reardon on 7-17-02; prepared for hearing on 9-11-02 | 1.5 |
| 9-11-02 | Attended hearing on involuntary retirement application with client; represented client at hearing. | 3.1 |
| 9-11-02 | Reviewed file in preparation of hearing on involuntary retirement application | 0.75 |
| 9-12-02 | Reviewed file and case after hearing; examined medical opinions provided by Dr. Keroack | 1.1 |

| | | |
|---|---|---|
| 9-12-02 | Examined application filed by Chief Reardon; examined medical data submitted with application; detailed review of facts; comparison with medical records | 2.1 |
| 9-13-02 | Review of documents in preparation of clients appeal; search and collection of all documents related to case; examined records; | 2.1 |
| 9-13-02 | Conference; discussed some documents found; requested clients history of events based on her notes; | 0.75 |
| 9-13-02 | Examined RPD report of 1-7-99; medical data from Dr. Keroack dated 6-30-02, 10-29-01, 6-15-01, 4-3-01 and RPD reports dated 8-13-01 and 7-11-01 | 0.75 |
| 9-13-02 | Conference with client to discuss selected documents; | 0.5 |
| 9-13-02 | Associate conference to discuss use and application of selected documents | 0.75 |
| 9-16-02 | Reviewed some Department records in support of sexual harassment claim; | 1.5 |
| 9-16-02 | Reviewed Department records in support of disability claim-Vandalism report dated 2-7-99; Underwear Incident report-2-28-01 & 3-20-01; officers letter to Mayor Ambrosino dated 9-1-02;officers MCAD complaint and other statement of facts | 1.5 |
| 9-16-02 | Selected application for indemnification for expenses dated 4-19-01;        application for Leave w/o loss of pay dated 4-19-01; Mayor Ambrosino's  Response to Leave Request of 4-23-01      ;reviewed relevant statute | 0.75 |
| 9-17-02 | Selection and xeroxing of documents prior to labelling | 0.5 |
| 9-17-02 | Reviewed documents examined on 9-12-02;included List of Exhibits-Involuntary Retirment Application; Letter from Chief Reardon dated 7-17-02; Letter to RRB from Chief Reardon; Summary of Facts by Chief Reardon-Addendum Sheet, Medical Data-Addendum Sheet | 1.5 |
| 9-18-02 | Reviewed documents for inclusion in List of Exhibits.  Selected:Chief Colannino's Response to Injured on Duty Request4-25-01, Atty Dilday's Letter to Chief Colannino's Denial 5-4-01; Chief Colannino's Response To injured on Duty Request dated 6-1-01 | 0.75 |
| 9-18-02 | Discussed documents; selected most suitable choices | 0.25 |
| 9-18-02 | Selection, organizing and copying documents prior to labeling | 0.5 |

| | | |
|---|---|---|
| 9-18-02 | Research of G.L.c. 32 and regs relevant to Involuntary Retirement Application; reviewed statures and appeal prerequisites | 1.5 |
| 9-19-02 | Reviewed client's letter dated 9-1-02 together with RPD report of 1-7-99; statement from Christopher Daley, statement from John Barker, statement from Sergeant Cafarelli, statement from Sergeant Picardi dated 12-7-01 | 1.1 |
| 9-19-02 | Selection, organizing and copying documents prior to addition to Exhibit List | 0.75 |
| 9-19-02 | Conference with client about additional documents needed and comprehensive history of her employment, including list of all superior officers and positions held during period of employment | 0.75 |
| 9-19-02 | Collection of medical records; reviewed available medical records from MGH and Dr. Keroack | 0.75 |
| 9-19-02 | Discussed state of medical records with client and records needed for possible appeal | 0.5 |
| 9-19-02 | Selection of medical records for inclusion in List of Exhibits | 0.5 |
| 9-20-02 | Research; copied and read Plymouth County v CRAB; copied and read other decisions from DALA & CRAB | 1.1 |
| 9-20-02 | Conference with client; re: RRB and its possible action based on DALA hearing of 9-11-02 | 0.25 |
| 9-20-02 | Creation of Exhibit List-itmes 1-27; creation of Other Medicals List-items 28-42 | 0.75 |
| 9-20-02 | Sorting and arranging in numerical order Exhibits for submission | 1.1 |
| 9-23-02 | Reviewed medical notes from 1998 | 0.5 |
| 9-23-02 | Reviewed work records and notes from 1998 | 0.5 |
| 9-23-02 | Reviewed medical records and medical notes from 1999 | 0.5 |
| 9-23-02 | Reviewed work records and client's notes from 1999 | 0.5 |
| 9-23-02 | Reviewed medical notes from 2000 | 0.5 |
| 9-23-02 | Reviewed work records and notes from 2000 | 0.5 |
| 9-23-02 | Reviewed medical records from 2001 | 0.5 |
| 9-23-02 | Reviewed work records and client notes from 2001 | 0.5 |

| 9-24-02 | Review exhibit list; reviewed work records, client notes made draft statement of facts | 0.5 |
|---|---|---|
| 9-25-02 | Reviewed medical records from 1996 | 0.5 |
| 9-25-02 | Reviewed work records and client notes from 1996 | 0.5 |
| 9-25-02 | Reviewed medical records from 1997 | 0.5 |
| 9-25-02 | Reviewed records and client notes from 1997 | 0.5 |
| 9-27-02 | Conference; client called to discuss yesterday's appointment with Dr. Keroack | 0.5 |
| 9-27-02 | Discussed panic attack at presence of Police Chief at a party that she attended; discussed he conversation with Sgt Amy O'Hara; Sgt tried to make her feel comfortable; told her she was a good cop. | 0.75 |
| 9-27-02 | Discussed disability retirement process; discussed Dr. Rudman's treatment; also identified other police officers with the same or similar experiences | 1.5 |
| 9-30-02 | Research; issue of permancy; reviewed statutes and administrative decisions. | 1.1 |
| 9-30-02 | Research; issue of medical panel; reviewed statutes and Code of Mass regualtions; reviewed appeal procedure and finality of DALA & PERAC decisions | 1.1 |
| 9-30-02 | Research; G.L.c. 32 and G.L.c.7; review of legal prerequisites for client's disability | 1.1 |
| 10-1-02 | Conference' client called to discuss meting with dr Keroack; discussed marriage and RPD police issues | 0.75 |
| 10-16-02 | Conference; discussed client's visit to Dr. Keroack on 10-15-02 | 0.75 |
| 10-9-02 | Conference; discussed visit to Dr. Keroack on 10-8-08;change of medication caused by increased stress | 0.75 |
| 10-25-02 | Reviewed decision of RRB to deny the Chief's Application for Involuntary Retirement of client | 0.5 |
| 10-25-02 | Conference;reviewed denial with client;discussed need to appeal; discussed deadline and process of appeal | 0.75 |
| 10-25-02 | Conference;discussed meeting with Dr. Keroack on 10-24-02 | 1.1 |

| | | |
|---|---|---|
| 10-26-02 | Conference;discussed emotional impact of denial by RRB; discussed its aggravating effect, her reaction and state of mind | 1.5 |
| 10-28-02 | Research; reviewed G.L.c 32 Sec 16; made outline for successful appeal; | 0.75 |
| 10-28-02 | Prepared draft for appeal of denial;researched documents required for appeal | 0.75 |
| 10-29-02 | Research; reviewed John Collins treatise-Chief's Guide To Injured On Duty-Psychological Incapacity; docuemnt relied upon by RRB for denial of PTSD and other psychological disorders in violation of state law | 1.1 |
| 10-29-02 | Identified the eight (8) cases relied upon by John Collins in this chapter of his treatise | 0.5 |
| 10-30-02 | Copied English v Board of Selectmen of Watertown, 8 Mass App 736, 397 N.E.2d 1112 (1979) | 0.25 |
| 10-30-02 | Detailed review and reading of English | 0.75 |
| 10-30-02 | Researched English v Board of Selectmen and cases cited therein | 1.75 |
| 10-30-02 | Shepardized cases compiled during research | 0.75 |
| 10-30-02 | Researched Sec. 111F submitted by RPD | 0.75 |
| 10-31-02 | Reviewed Fitzgibbons Case, 373 N.E.2d 1174, 1177(1978 | 0.75 |
| 10-31-02 | Reviewed current version of G.L.c. 152 Sec 59; compared language relied in the treatise with the current statute | 1.1 |
| 10-31-02 | Read Kelly'sCase, 394 Mass 684(1985) | 0.75 |
| 10-31-02 | Researched Kelly's case and the cases cited therein | 1.5 |
| 10-31-02 | Reviewed current G.L.c. 152 Sec 59, Kelly's Case and Chief's Guide To Injured on Duty | 0.5 |
| 10-31-02 | Noted statutory changes to G.L.c 152 Sec 59; noted legally incorrect basis of the treatise of John Collins | 0.5 |
| 10-31-02 | Reviewed amended statute; examined impact on both caselaw and statutes relied upon by the treatise | 0.75 |
| 11-1-02 | Read the only case cited in PTSD section of treatise; | |

|  |  |  |
|---|---|---|
|  | Hughes v City of Malden, Superior Court Department<br>11-4-94 | 0.75 |
| 11-1-02 | Reviewed facts of clients case after reading Hughes | 0.5 |
| 11-1-02 | Prepared response; Hughes was inconclusive on PTSD;<br>does not support position of RPD | 0.75 |
| 11-1-02 | Read Sugrue v CRAB, 45 Mass. App. Ct.1,<br>694 N.E.2d 391 (1998) | 0.75 |
| 11-1-02 | Read Eyssi v City of Lawrence, 416 Mass 194,<br>618 N.E.2d 1358 | 0.75 |
| 11-1-02 | Noted Collins acknowledgement that "police officers"<br>are not covered under M.G.L.c. 152; treatise inapplicable<br>to case | 0.25 |
| 11-1-02 | Reviewed Sugrue and made notes; this 1998 case<br>replaced by more recent cases | 0.5 |
| 11-1-02 | Prepared summary of PTSD section of treatise | 0.25 |
| 11-4-02 | Read Marcoux v Town of Bellingham, Worcester<br>Superior Court Department, August 22, 1996 | 0.75 |
| 11-4-02 | Reviewed facts of clients case | 0.5 |
| 11-4-02 | Marcoux,like Hughes, inconclusive;compared both cases<br>noted that neither case supported position taken by RPD | 0.75 |
| 11-4-02 | Prepared notes necessary for administrative appeal and<br>civil action | 0.75 |
| 11-5-02 | Comprehensive review of defense provided by RPD;<br>caselaw, treatises and current state of the law | 1.5 |
| 11-6-02 | Conference; discussed with client her notice of appeal;<br>client had filed appeal in timely manner on October 22, 2002 | 0.5 |
| 11-6-02 | Conference; discussed clients appointment with<br>Dr Keroack;depression, loss of employment,<br>medical treatment prescribed | 0.75 |
| 11-6-02 | Conference; discussed loss of identity, avoidance of<br>social contact and other factors resulting from loss of<br>employment | 1.5 |
| 11-6-02 | Conference; established wages at end of employment;<br>discussed promotions, pay increases,commendations<br>received during employment; interruption of her studies<br>in Criminal Justice by work stress | 1.1 |

| | | |
|---|---|---|
| 11-6-02 | Conference;discussed rescue of two civilians on 10-6-01; clients professional response when 1995 Range Rover careened off Gen Edwards bridge into 8ft of water; client discussed training as police officer, also techniques used to save the lives of two civilians who were underwater | 1.5 |
| 11-7-02 | Research; prepared draft notes on clients loss of employment, depression, loss of identity, loss of income and disability application | 0.75 |
| 11-22-02 | Conference; client called to discuss visit to Dr. Keroack on 11-22-02; expressed discouragement and frustration because of negative responses to her case | 0.75 |
| 12-10-02 | Conference; discussed appointment with Dr. Keroack on 12-9-02 | 0.5 |
| 12-11-02 | Review of Kathy Fish's MCAD complaint | 0.5 |
| 12-11-02 | Reviewed response of RPD to Kathy Fish's MCAD complaint | 0.75 |
| 12-12-02 | Reviewed clients MCAD complaint and union grievance | 0.5 |
| 12-12-02 | Reviewed City's response to client's MCAD complaint; | 0.3 |
| 12-12-02 | Reviewed Union's response and decision | 0.5 |
| 12-12-02 | Research; analyzed Department's three (3) defenses; | 0.75 |
| 12-12-02 | Reviewed section of response on General Assessment and Specific Allegations | 0.25 |
| 12-12-02 | Research; analyzed sections of defense that related to the roles of Chief Russo, Chief Colannino, Lieutenant Santoro Captain Roland and Sergeant Goodwin | 1.5 |
| 12-12-02 | Analyzed sections 1 and 2 making special note of the social interactions" stated in the defense and claimed by the Department | 0.5 |
| 12-12-02 | Analyzed sections 1 and 2; listed the rationaizations provided in lieu of an investigation | 0.5 |
| 12-13-02 | Research; reviewed section of City's Response To MCAD Complaint entitiled: The Request for Sexual Harassment Policy, Female Bathroom and Maternity Policy | 0.5 |
| 12-13-02 | Analyzed section with particular emphasis on Sexual Harassment Policy and admitted absence of maternity leave policy | 0.5 |
| 12-13-02 | Analyzed Responsibilities of Supervisors | |

| | | |
|---|---|---|
| | Regarding Sexual Harassment provided as part of<br>City's response and attached as Exhibit A | 0.75 |
| 12-13-02 | Read Amended Sexual Harassment Policy issued 8-3-00 | 0.5 |
| 12-13-02 | Read and Analyzed Sexual Harassment Policy dated<br>4-1-99 and Amended Policy | 1.5 |
| 12-16-02 | Reviewed Sections 1.4.1 to 1.4.4 of Sexual Harassment<br>Policy | 0.5 |
| 12-16-02 | Reviewed Sections 1.4.5 to 1.4.9 of Sexual Harassment | 0.5 |
| 12-16-02 | Reviewed Sections 1.4.10 to 1.4.12 of Sexual Harassment<br>Policy | 0.5 |
| 12-16-02 | Reviewed Sexual Harassment Complaint Form attached<br>as Exhibit | 0.05 |
| 12-17-02 | Reviewed EMS Consultant report attached as Exhibit to<br>RPD's response | 0.75 |
| 12-17-02 | Reviewed G.L.c.41 Sec. 100 attached as Exhibit to<br>RPD's response | 0.25 |
| 12-17-02 | Analyzed sections of RPD's response captioned: Underwear<br>on Bulletin Board; noted admission of "poor taste" but no<br>statement of investigation | 0.75 |
| 12-17-02 | Analyzed section of RPD's response captioned:Slashing of<br>Tires. noted inaccurate time of incident; noted vandalism<br>attributed to "prankster" 'disgruntled citizens", "minor<br>accident" but no mention of investigation | 0.75 |
| 12-18-02 | Reviewed MCAD complaint, response of RPD, made<br>notes in preparation for Statement of Facts | 1.1 |
| 12-19-02 | Conference;client called to discuss case; change of<br>medication by Dr. Keroack on 12-10-02;raised<br>questions about logistics of moving to Fla. | 0.5 |
| 12-19-02 | Conference;client called to discuss how the stress<br>of job loss is affecting her family relationships | 0.5 |
| 12-19-02 | Research; reviewed medical records from Dr. Keroack<br>dated 12-9-02;12-10-02; reviewed records that indicate<br>clients level of distress | 0.5 |
| 12-20-02 | Conference;discussed appointment with Dr.Keroack of<br>12-19-02 | 0.75 |
| 12-20-02 | Reviewed medical records, reviewed clients notes indicating<br>the distress, depression, and burdensome nature of | |

| | | |
|---|---|---|
| | continuing to deal with the disability process and the RPD | 0.75 |
| 12-23-02 | Research; read and analyzed complaint of Katherine Fish dated 1-29-01 to John Murphy, Teamster Representative | 0.5 |
| 12-23-02 | Reviewed letter from George Cashman, President of the Teamsters dated 2-8-01 concerning complaint of Kathy Fish dated 1-29-01 | 0.1 |
| 12-23-02 | Reviewed letter from Geroge Cashman, President of the Teamsters dated 2-16-01 to Mayor Ambrosino | 0.1 |
| 12-23-02 | Investigation of Sexual Harassment Complaint by Kathy Fish against Lt Foster by Lt. Dennis Collyer | |
| 12-23-02 | Read and analyzed Complaint and Summary of Investigation sections; noted report concluded"There is evidence that the punishment may have been unfairly harsh in some respects" | 0.5 |
| 12-23-02 | Read and analyzed Details of Investigation section; noted minimal or non-existent reference to Department's Sexual Harassment Policy | 0.75 |
| 12-23-02 | Read and analyzed Conclusion section; report noted evidence of less than perfect supervisory practice"; report also noted the "hostility" that existed between the parties;"hostility" and "friction" between Officer and supervisor recognized | 0.75 |
| 12-23-02 | Reviewed Sexual Harassment Complaint submitted by Kathy Fish on 10-23-00 on Complaint Form provided by RPD-Addendum 1 | 0.3 |
| 12-23-02 | Reviewed Addendum 2 | |
| 12-23-02 | Reviewed schedules for January, February, March, July, August and September 2000 attached to RPD's response | 0.3 |
| 12-30-02 | Read and analyzed report from Capt Fred Roland and Capt Chaulk to Chief James Russo dated 12-21-98 | 0.3 |
| 12-30-02 | Read and analyzed report from Capt Roland and Capt Chaulk Re: Sexual Harassment Complaints dated 1-14-99 to Chief James Russo | 0.5 |
| 12-30-02 | Noted report's description of Lt. Santoro's conduct toward female officers; reviewed details of Lt. Santoro's treatment of complaints made by female officers; interpreted reports for inclusion of Statement of Facts | 0.5 |

| | | |
|---|---|---|
| 12-30-02 | Reviewed reports detailed description of Sgt. Goodwin and his treatment of female officers in the RPD; inter preted report in prpeparation for Statement of Facts | 0.5 |
| 12-30-02 | Reviewed reports detailed description of Sgt Doherty and his treatment of female officers; examined his biased policies on swearing as applied to female officers in preparation for inclusion in Statement of Facts | 0.5 |
| 12-30-02 | Reviewed report's detailed description of Sgt Doherty and the incident that involved female Officers Curcio, Malatesta, and Fish | 0.5 |
| 12-30-02 | Reviewed report's detailed description of Sgt Doherty's comments that involved the sports commentator | 0.5 |
| 12-31-02 | Reviewed report's detailed description of Officer Crevoiserat's treatment of female officers; not a supervisor but a fellow officer whose mistreatment of female officers contributed to the hostile environment experienced by the Plaintiffs | 0.5 |
| 12-31-02 | Considered and noted that Crevoiserat was beneficiary of schedule changes that adversely affected female officers | 0.25 |
| 12-31-02 | Conference;client explained incident with Officer Burns and the parentage of her children | 0.25 |
| 12-31-02 | Reviewed reports detailed description of Sgt Nelson's viewing of a magazine centerfold in the presence of Officer Malatesta | 0.25 |
| 12-31-02 | Reviewed reports description of Sgt Papasodora's conduct regarding female officers and prisoners | 0.25 |
| 12-31-02 | Reviewed reports detailed description of Lt For's biased conduct toward females and Hispanics | 0.3 |
| 12-31-02 | Reviewed reports detailed description of Chief Russo's comments at the Citizens Police Academy; also comments about "crocheting"; also about "WIC" comment | 0.5 |
| 12-31-02 | Reviewed conclusion of Report; noted Captain Roland and Capt Chaulk's observation that "female officers have legitimate complaints"; also noted recommendation that "errant behavior" be corrected. | 0.5 |
| 1-2-03 | Research;G.L.c.151B Sec.4 discrimination based on sex: | |

|  |  |  |
|---|---|---|
|  | read statute and annotated cases; outlined standards to be applied to discrimination cases | 0.5 |
| 1-2-03 | Researched the "terms, conditions and privileges of employment"; read annotated cases. | 0.5 |
| 1-2-03 | Researched statute of limitations and the elements of prima facie case of discrimination | 0.5 |
| 1-3-03 | Researched G.L.c. 258 for statutory requirements of Plaintiffs Notice of Claim and requisite time limits | 0.5 |
| 1-3-03 | Researched 42 USC 2000e-2-Unlawful employment practices | 0.5 |
| 1-6-03 | Research; read and analyzed 42 USC 2000e-2(a)(1)&(2) (1) to fail or refuse to hire; (2) deprive or otherwise adversely affect "; read statutes and annotated cases | 1.1 |
| 1-6-03 | Reviewed facts of client's start of employment for purposes,professional commendations, and hostile work experiences | 0.75 |
| 1-7-03 | Prepared draft of paragraphs 1-4 of the Statement of Facts for document to be submitted at hearing | 0.75 |
| 1-7-03 | Reviewed clients notes and documents for facts relating to the hostile environment created by Lt Foster | 0.75 |
| 1-8-03 | Reviewed the events of 7-5-97 concerning use of television | 0.25 |
| 1-8-03 | Reviewed events of 8-24-97-cancellation of wedding invitation; angry outbursts and walking routes as punishment | 0.25 |
| 1-8-03 | Reviewed events of 8-26-97 effect of punishment program on client's health | 0.25 |
| 1-8-03 | Reviewed events of 9-2-97-appointment with Lt Foster and Ford about chain of command and client's efforts to obtain relief | 0.5 |
| 1.8-03 | Reviewed circumstances surrounding clients transfer as remedy to punishment program | 0.25 |
| 1-8-03 | Reviewed events of August 7, 1999; inside assignment | 0.25 |
| 1-8-03 | Reviewed events of August 10, 1999-deprivation of privilege announced by Lt. Foster to other members of RPD | 0.25 |

| | | |
|---|---|---|
| 1-8-03 | Reviewed events of 8-13-99-disparate treatment | 0.25 |
| 1-9-03 | Reviewed events of 6-26-01-Lt. Murphy's demeaning comments | 0.25 |
| 1-9-03 | Reviewed events of 12-11-98 involving Lt Santoro, Daley and Barker | 0.5 |
| 1-9-03 | Reviewed Lt Santoro's behavior as stated in report of 1-14-99 | 0.75 |
| 1-9-03 | Reviewed events of March 12, 2001-conduct of Det Goodwin, statements of Daley and Barker | 0.75 |
| 1-10-03 | Reviewed events in which Sgt Goodwin attempted to undermine the confidence and the credibility of female officers | 0.5 |
| 1-10-03 | Reviewed Sgt Doherty's practice of double standard | 0.25 |
| 1-10-03 | Reviewed events of April 18, 1997 involving Officers Curcio, Fish and Malatesta and Sgt Doherty | 0.5 |
| 1-10-03 | Reviewed Sgt Nelson's viewing of centerfold in the presence of the public and female officer | 0.5 |
| 1-10-03 | Reviewed Sgt Doherty's loud and offensive 1998 comments about the female sports reporter | 0.25 |
| 1-11-03 | Reviewed events of 2-23-97-Chief's comments and treatment of Officer Mangino | 0.5 |
| 1-11-03 | Reviewed two reports dated 12-21-98 and 1-4-99 both directed to Chief Russo by Capts Chaulk and Roland | 0.75 |
| 1-11-03 | Reviewed Chief Russo's comments about WIC mothers in reference to police officers | 0.25 |
| 1-13-03 | Reviewed events of 2-26-01 to 3-2-01-the Underwear Incident-reviewed both reports and clients statements | 0.5 |
| 1-13-02 | Reviewed client's application for Sec 111F benefits for inclusion in List of Exhibits | 0.25 |
| 1-14-03 | Reviewed medical notes from MGH dated: 7-21-98, 8-6-98,8-4-98,8-13-98,10-22-99,11-23-99, 12-27-99,1-6-00,5-3-00,6-3-00,9-18-00,5-26-00 selected medical notes for inclusion in List of Exhibits | 1.1 |
| 1-14-03 | Numerically organize and prepare List of Exhibits | 0.5 |
| 1-15-03 | Conference;discussed paragraphs 1 and 2 of the | |

|          |                                                                                                                                                                                                                      |      |
|----------|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|------|
|          | Statement of Facts with client                                                                                                                                                                                       | 0.5  |
| 1-15-03  | Reviewed events of 3-13-01 with client, including the details of her termination                                                                                                                                     | 0.25 |
| 1-15-03  | Discussed letters of commendation, citations and acknowledgements received that were work related                                                                                                                    | 0.25 |
| 1-15-03  | Client discussed how she thought workplace hostility caused her PTSD                                                                                                                                                  | 0.5  |
| 1-15-03  | Discussed with client her MCAD complaint                                                                                                                                                                              | 0.25 |
| 1-15-03  | Discussed with client the City's Response to her MCAD complaint and the Exhibits                                                                                                                                      | 0.5  |
| 1-15-03  | Reviewed with client Dr. Keroack's opinions of 4-30-01,6-15-01, and 6-30-02                                                                                                                                           | 0.5  |
| 1.15-03  | Explained to client the legal significance and the specific requirements of M.G.L.c 151B Sec 4 and 42 USC 2000e-2                                                                                                     | 0.75 |
| 1-15-03  | Reviewed with client the provisions of G.L.c. 32 that govern disability                                                                                                                                               | 0.55 |
| 1-15-03  | Compared the requirements of the statutes with the condition of the medical documents in the file                                                                                                                    | 0.5  |
| 1-15-03  | Reviewed with client the basis of the decision that was being appealed                                                                                                                                                | 0.35 |
| 1-16-03  | Completed Statement of Facts section of appeal; appeal was titled Terri James, Petitioner v Revere Retirement Board, Div of Administrative Law Appeals, Docket No. CR-02-1308                                          | 0.75 |
| 1-16-03  | Drafted section of Statement of Fact that are based on Lt Foster and LT Murphy                                                                                                                                        | 0.75 |
| 1-17-03  | Reviewed criteria for medical opinion requested from Dr Keroack for DALA appeal hearing to be held on 2-4-03                                                                                                           | 0.5  |
| 1-17-03  | Discussed facts of the case with client; encouraged client to prepare more detailed chronological account of events that occured during employment                                                                    | 0.5  |
| 1-17-03  | Discussed medication for PTSD; discussed her anxiety at seeing Sgt Murphy in Marshalls; attributed chronic headache, irritable bowel syndrome and internal distress to her experiences with RPD;matters she also discussed with Dr. Keroack | 0.5  |

| 1-21-03 | Drafted paragraphs 23-35 of Statement of Facts-Lt Santoro; reviewed statement of Daley, reviewed statement of Barker, reviewed report dated 12-21-98 and 1-14-99 in prpeparation for drafting | 1.5 |
|---|---|---|
| 1-21-03 | Drafted paragraphs 36-39 of Statement of Facts-Sgt Goodwin reviewed reports to Chief Russo dated 121-98 and 1-14-99 in preparation for drafting | 0.75 |
| 1-22-03 | Conference; client discussed filing Voluntary Disability Retirement Application as backup to the Involuntary Application filed by Chief Reardon | 0.5 |
| 1-22-03 | Conference; client discussed requirements and procedure for Voluntary petition which she filed on 2-20-2003 | 0.5 |
| 1-22-03 | Conference;discussed both the new Voluntary and the appeal of the Involuntary application filed by Chief Reardon | 0.5 |
| 1-23-03 | Drafted paragraphs 40 -51 Statement of Facts-Sgt Doherty; analyzed reports to Chief Russo dated 12-198 and 1-14-99 in preparation for drafting | 0.75 |
| 1-23-03 | Drafted paragraphs 52-54 Statement of Facts-Sgt John Nelson; analyzed reports to Chief Russo dated 12-1-98 and 1-14-99 in preparation for drafting | 0.5 |
| 1-24-03 | Drafted paragraphs 55-59-Statement of Facts-Chief Russo; reviewed and analyzed reports to Chief Russo dated 12-1-98 and 1-14-99 provided by Captains Chaulk and Roland; also reviewed Chief's comments about "crocheting" and the "WIC" meeting | 0.75 |
| 1-24-03 | Drafted paragraph 60-69 Statement of Facts Underwear Incident-reviewed reports to Chief Russo dated 12-1-98 and 1-14-99; also reviewed reports dated February 26, 2001 and March 20, 2001 | 0.75 |
| 1-27-03 | Conference; discussed with client decision on Involuntary application, hearing held 9-11-02 | 0.5 |
| 1-27-03 | Conference; discussed hearing scheduled for 2-4-03; discussed Physicians Statement attached to her Voluntary Application;discussed use of the same Statement in support of the appeal to be heard on 2-4-03 | 0.75 |

| | | |
|---|---|---|
| 1-27-03 | Discussed content of Physician's Statement dated 1-22-03 with client; examined details in preparation for hearing and to determine whether it met the criteria required for disability | 1.1 |
| 1-28-03 | Completed the Statement of Facts, the assembly of 46 Exhibits | 0.75 |
| 1-28-03 | Reviewed and made copies of assembled documents to be introduced at the hearing | 0.75 |
| 1-29-03 | Conference; discussed assembled folder with client | 0.5 |
| 1-29-03 | Discussed evidentiary need for the Statement of Facts and Exhibits | 0.5 |
| 1-29-03 | Reviewed facts of case with client and husband in preparation for hearing on 2-4-03 | 1.5 |
| 1-30-03 | Reviewed file and additional medical documents | 0.75 |
| 1-30-03 | Reviewed events of 1995 to 1996 | 0.5 |
| 1-30-03 | Reviewed events of 1997 | 0.5 |
| 1-30-03 | Reviewed events of 1998 | 0.5 |
| 1-30-03 | Reviewed events of 1999 | 0.5 |
| 1-30-03 | Reviewed events of 2000 | 0.5 |
| 1-30-03 | Reviewed constructive discharge and other events of 2001 | 0.5 |
| 1-31-03 | Conference; reviewed events of 1995-1996 with client in preparation for hearing | 0.5 |
| 1-31-03 | Conference; reviewed events of 1997; discussed the importance of this hearing in breaking the cycle of previous negative decisions | 0.5 |
| 1-31-03 | Conference; reviewed events of 1998 with client in preparation for hearing | 0.5 |
| 1-31-03 | Conference; reviewed events of 1999 with client in preparation for hearing | 0.5 |
| 1-31-03 | Conference; reviewed events of 2000 with client in preparation for hearing | 0.5 |
| 1-31-03 | Conference; reviewed events leading to constructive discharge in 2001 | 0.5 |
| 2-1-03 | Reviewed Statement of Facts, caselaw and Exhibits | |

|  |  |  |
|---|---|---|
|  | in preparation for hearing | 0.5 |
| 2-1-03 | Review of the Physician's Statement Form provided by PERAC; review of permanency standard | 0.25 |
| 2-1-03 | Review of the relationship of PERAC and DALA and administrative procedure, reviewed section on Aggravation of Presxisting Condition | 0.5 |
| 2-1-03 | Final review and collation of numbered exhibits | 0.25 |
| 2-1-03 | Final review of Statement of Facts to be inserted each folder | 0.25 |
| 2-1-03 | Preparation of folders for distribution | 0.5 |
| 2-3-03 | Conference; reviewed completed package with client in preparation for hearing on 2-4-03 |  |
| 2-3-03 | Reviewed medicals-Exhibits 28-42 with client in preparation for hearing | 0.75 |
| 2-3-03 | Reviewed documents in support of client's position on Department's conduct Exhibits 1-9 with client in preparation for hearing | 0.75 |
| 2-3-03 | Reviewed professional opinions from Dr. Rudman and Keroack-Exhibits10-11 | 0.5 |
| 2-3-03 | Reviewed documents in support of client's position on Department conduct-Exhibit 12-18 | 0.75 |
| 2-3-03 | Reviewed with client in preparation for hearing Exhibits 19-27 | 0.75 |
| 2-4-03 | Reviewed Exhibit 44 with client and discussed standard of permanency; also discussed aggravation of pre-existing condition | 0.5 |
| 2-4-03 | Representation at DALA Hearing; submitted folder reviewed submission by City | 1.5 |
| 2-4-03 | Assisted ALJ in preparing Exhibit List to be adopted for the administrative record | 0.75 |
| 2-4-03 | Presentation of client's position to ALJ | 0.75 |
| 2-4-03 | Discussed hearing procedures with client at conclusion of session; also discussed post hearing remedies; made appointment for 2-6-03 | 0.5 |

| | | |
|---|---|---|
| 2-4-03 | Conference with Ira Zaleznik, Esq.counsel<br>for the City of Revere,RRB and RPD | 0.25 |
| 2-5-03 | Conference with associate to discuss DALA<br>& PERAC appeal procedure and civil action | 0.75 |
| 2-5-03 | Conference with client; reviewed appeal and other<br>post hearing remedies available from DALA<br>decision;discussed requirements of civil action<br>for discrimination aginst the City of Revere<br>and the Police Department | 0.75 |
| 2-6-03 | Conference; discussed with client a summary of<br>hostile work environment as defined by the<br>SJC in CollegeTown v MCAD | 0.75 |
| 2-6-03 | Conference; discussed with client summary of<br>unlawful discrimination and constructive discharge<br>as stated in 42 USC 2000e-2(1)and (2) | 0.75 |
| 2-6-03 | Conference;discussed "disparate treatment";<br>request client to review notes and records for<br>instances of disparate treatment | 0.75 |
| 2-7-03 | Research;read any analyzed MGLc.151B Sec4<br>and case law | 0.75 |
| 2-7-03 | Research; read and analyzed CollegeTown v MCAD,<br>400 Mass 156(1987); strict liability ruling<br>of SJC and legislative intent; harassment by supervisors<br>(on whom authority is conferred)creates strict liability | 0.75 |
| 2-7-03 | Research; read and analyzed Burlington Industries<br>v Ellerth for federal guidance; employer liable for<br>supervisor | 0.75 |
| 2-7-03 | Research; read and analyzed Faragher v The City of<br>Boca Raton; also for federal guidance; employer<br>liable for supervisor | 0.75 |
| 2-10-03 | Researched GLc 151B Sec3A-Massachusetts<br>requirement that employers have policies against<br>sexual harassment, requirement of education and<br>training programs; examined the conduct of City<br>for compliance | 0.75 |
| 2-10-03 | Examined Sexual harassment Policy published by<br>City in 1999; also examined Amended Policy<br>published in 2000; noted absence of policy prior<br>to 1999; also noted paucity of training programs<br>and absence of documented attendance at such<br>programs | 0.75 |

| | | |
|---|---|---|
| 2-11-03 | Examined Burlington Industries v Ellerth and Faragher v The City of Boca Raton to determine whether defenses apply to this case; cases subject to review by US Supreme court and defenses do not apply here | 1.5 |
| 2-11-03 | Research; statute of limitations for filing civil action; client can file timely action in both state and federal courts | 0.5 |
| 2-12-03 | Prepared draft of Notice of Claim pursuant to GLc. 258 for the municipality of Revere | 0.5 |
| 2-12-03 | Prepared-draft complaint to be used with Notice of Claim; prerequisite to filing suit | 1.5 |
| 2-12-03 | Prepared draft of settlement memorandum | 0.75 |
| 2-13-03 | Researched causes of action for Notice of Claim and Complaint | 0.75 |
| 2-13-03 | Identified (1)Hostile environment/sexual harassment state law; (2)Hostile environment/sexual hasassment federal law;(3) Infliction of Emotional distress; and (4)Disparate Treatment | 0.75 |
| 2-14-03 | Drafted Notice; drafted Fact section of Notice of Claim | 0.5 |
| 2-15-03 | Researched damages issue; researched the statutory damages allowed by federal statutes for Title VII claims | 0.75 |
| 2-15-03 | Rechecked statute GLc.258 to verify standards required of Notice of Claim and the prerequisites to filing a cause of action | 0.25 |
| 2-16-03 | Researched Stathos v Bowden, 514 F.Supp. 1288(1981); plaintiffs complaint for disparate treatment in pay is not dis missed under GLc 151B and federal statutes; case allowed to proceed to trial | 0.75 |
| 2-16-03 | Researched Monell v Department of Social Services of the City of New York, 436 US 658 (1978); read case for purposes of minicipal liability; Monroe v Pape overruled; municipality are "persons; 532 F2d reversed | 1.5 |
| 2-16-03 | Gonsalves v City of New Bedford, 939 F. Supp. 915 (1996) read case for purposes of minicipal liability; policymakers create liability by their deliberate indifference and failure to investigate; Mayor and City Council final policymakers | 1.1 |
| 2-16-03 | Reasearched footnotes of Gonsalves; read Bordanaro v McLoed, 871 F2d 1151 (1989); policymaking authority in First circuit can be shared | 0.5 |

| 2-16-03 | Pembauer v City of Cincinnati, 475 US 469 (1986); read Pembauer; final policymaking cannot be delegated; policy makers cannot escape liability | 0.75 |
|---|---|---|
| 2-16-03 | City of St. Louis v Praprotnik, 485 US 112 (1988); read Praprotnik, reinforced the idea that policymaking can be shared | 0.75 |
| 2-16-03 | Jett v Dallas Independent School District, 7 F.3d 1241(1993); read Jett(on remand) policymakers,  not superintendent, liable; similarly, policymakers, not city attorney, held liable in Joiner v City of Ridgland, 669 F. Supp 1362 (1987); similarly, police commission, not police chief, held liable in Coming Up, Inc. v San Francisco 830 F.Supp 1302(1993) | 2.25 |
| 2-18-03 | Conference with client about her decision to file a Voluntary Application for Disability Retirement | 0.5 |
| 2-18-03 | Briefly reviewed application to be filed on 2-20-03 | 0.25 |
| 2-18-03 | Reviewed Dr. Keroack's letter of January 22, 2003 included with application | 0.25 |
| 2-18-03 | Review of rules governing Voluntary procedure and discussion with client | 0.5 |
| 2-18-03 | Discussion of impact of Voluntary Application on pending appeal of Involuntary Application to be heard by DALA on 2-4-03 | 0.25 |
| 2-19-03 | Started final version of Notice of Claim; prepared FACTS section; checked dates and times and parties; | 0.5 |
| 2-19-03 | Prepared Count 1-checked elements of prima facie case and damages section | 0.5 |
| 2-19-03 | Prepared Count 2-checked elements of prima facie case and relevant damages | 0.5 |
| 2-19-03 | Prepared Count 3-checked elements of prima facie case and damages section | 0.5 |
| 2-19-03 | Prepared Count 4-checked elements of prima facie case and relevant damages | 0.5 |
| 2-19-03 | Final review of Notoce of Claim | 0.75 |
| 2-20-03 | Prepared, copied and attached selected Exhibits that were incorporated into the Notice of Claim | 0.5 |
| 2-21-03 |  Forwarded copies of Notice of Claim to associates and client | 0.5 |

| | | |
|---|---|---|
| 2-21-03 | Printed copies of Notice of Claim; made folders for documents | 0.5 |
| 2-22-03 | Made revisions to NOC, made copies of changes | 0.5 |
| 2-24-03 | Conference with client; revised 4 paragraphs at the request of client | 0.75 |
| 2-25-03 | Delivered Notice of Claim and Exhibits to Sheriffs Office on Bromfield Street for service on the City of Revere | 1.1 |
| 2-25-03 | Prepared press releases with copy of NOC and Exhibits | 1.1 |
| 2-26-03 | Conference with Boston Herald | 0.25 |
| 2-26-03 | Conference with Boston Globe | 0.25 |
| 2-27-03 | Returned call to Boston Herald | 0.25 |
| 2-28-03 | Conference with client about press release to Boston Globe | 0.3 |
| 2-28-03 | Conference with client about press release to Boston Herald | 0.3 |
| 2-28-03 | Conference with client about Channel 7's request for on camera interview | 0.3 |
| 3-3-03 | Reviewed letter and prehearing memorandum on CR-02-1308 Terri James v Retirement Board sent by Ira Zaleznik,Esq-attorney for RRB-4 point memorandum and 18 exhibits | 0.5 |
| 3-3-03 | Reviewed Appeal and Prehearing memorandum for purposes of preparing press realeases | 0.25 |
| 3-3-03 | Reviewed the list of superior officers of the RPD prepared by  client | 0.25 |
| 3-3-03 | Reviewed facts of case and client's notes | 0.5 |
| 3-3-03 | Identified supervisors for purposes of selecting Defendants for the civil action | 0.5 |
| 3-4-03 | Drafted the paragraphs 1-10 that described the ranks of the client's supervisors at the RPD | 0.75 |
| 3-4-03 | Reviewed M.G.L.c.258 Sec.4; c.214 Sec 1;c.12 Sec 11I; and 42 USC 2000e-2 for the purposes of drafting paragraph 12 of Plaintiffs complaint | 0.75 |

| | | |
|---|---|---|
| 3-4-03 | Prepared preliminary draft of paragraph 12 of client's complaint-Applicable Law | 0.75 |
| 3-5-03 | Reviewed history and facts of client's case; prepared preliminary draft of Background section of complaint | 0.5 |
| 3-5-03 | Prepared preliminary draft of the first section of Settlement Proposal, including topic headings: date of birth, date employment commenced, age on date of discharge, annual salary at discharge, benefit package-25%, total compensation,calculation of damages | 0.75 |
| 3-5-03 | Preliminary draft of Facts section to be used for Settlement Proposal; | 0.25 |
| 3-6-03 | Completed press release with bullets for the Boston Globe and the Boston Herald | 0.75 |
| 3-6-03 | Prepared Notice of Claim and the Exhibits for review by both the Boston Globe and the Boston Herald | 0.5 |
| 3-6-03 | Conference with Marie Szaniszlo of the Boston Herald | 0.25 |
| 3-6-03 | Conference with the Boston Globe-MetroNorth Section | 0.25 |
| 3-7-03 | Researched strict liability and 100% liability under both State and federal law; shepardized College-Town, Ellerth & Faragher; also Suders(pending) | 1.5 |
| 3-10-03 | REviewed DALA decision in CR-02-1308; ALJ Burke reversed RRB decision; case remanded for the purpose of convening regional medical panel | 0.5 |
| 3-10-03 | Read and analyzed summary section of DALA decision; appeal was timely and made pursuant to requisite statute G.L.c.32 Sec.16(4);Exhibits 1,6,7 examined; 45 exhibits reviewed | 0.5 |
| 3-10-03 | Reviewed with associate appeal procedures encompassed in G.L.c.32 and options available to client at the expiration of the appeal period | 0.5 |
| 3-11-03 | Reviewed Findings of Fact stated by ALJ in decision of 3-7-03; noted Finding No. 2-hostile environment and gender discrimination, ?Finding No.3 "cumulative condition" and use of Exhibits 4,12,13 and 15; noted causation of client's condition. | 0.75 |
| 3-11-03 | Reviewed Exhibit 11 and Finding No.4 documenting the hostility of the environment at RPD,the effect on the client, and the medical confirmation of PTSD by Exhibit 11 | 0.75 |
| 3-11-03 | Reviewed Finding No.5 and Exhibit No.5 documenting | |

| | | |
|---|---|---|
| | client's genuine desire to return to work at RPD | 0.25 |
| 3-11-03 | Reviewed Finding No.6 and Exhibit 6 and Exhibit 1-4 documenting client's"significant emotional distress" and causal relationship to "post traumatic stress disorder" | 0.5 |
| 3-11-03 | Reviewed No.7 and Exhibit 6; noted declining medical condition though not enough for referral to medical panel | 0.25 |
| 3-11-03 | Reviewed Finding 8 and Exhibit 11; noted continuing decline sufficient to affect return to work | 0.5 |
| 3-11-03 | Reviewed Finding 9 and Exhibit 11; noted medical support for "crippling anxiety";"increased insomnia and fatigue", and inability to be "out in public even to buy gasoline and groceries." | 0.25 |
| 3-11-03 | Reviewed Finding 9, Exhibit 11,and Essential Duties of Police Officer;noted medical conclusion that client at this time" has experienced loss of her ability to perform her duties as a police officer | 0.25 |
| 3-11-03 | Reviewed Finding 9 and Exhibit 11; noted medical conclusion that client's loss of job and loss of identity as a police officer has "resulted in a significant insult to Officer James identity and self worth | 0.25 |
| 3-11-03 | Reviewed Finding 3 and the "cumulative condition", Finding 2 and its conclusion of "hostile and abusive work environment and gender discrimination", Finding 6 and its conclusion of "significant emotional stress" and "post traumatic disorder, Finding 9 and Exhibit 11-noted establishment of a causal relationship between "the reported sexualized behaviors" within the RPD and the client's inability "to return to any form of duty within the Police Department" | 1.5 |
| 3-11-03 | Review of final conclusion of "Decision"; reversal and remand for purpose of convening regional medical panel | 0.25 |
| 3-12-03 | General review of  DALA decision,current status of her case, the impact of the DALA decision on the case with client prior to her departure for Florida | 0.5 |
| 3-12-03 | Reviewed Findings of Fact 1,2 and 3 with client discussed "hostile environment and gender discrimination" discussed"cumulative condition" and causal relationship and the import of Exhibits 4,12,13,and 15 | 0.3 |

| | | |
|---|---|---|
| 3-12-03 | Reviewed Findings of Fact No4, and Exhibit 11 in which Dr. Keroack confirms her inability to work and the effect of the hostile work environment | 0.25 |
| 3-12-03 | Reviewed Findings of Fact No.5 and Exhibit 5; discussed with client the issue of her genuine desire to return to work and the unavailability of opportunity to return to work | 0.25 |
| 3-12-03 | Reviewed with client Findings of Fact No 6 and Exhibits 1-4; discussed client's"significant emotional distress"; and her continuing experieince of emotional distress in dealing with city of Revere; also her continuing need for medication for PTSD | 0.3 |
| 3-12-03 | Reviewed with client Findings of Fact No.7 and Exhibit 6;discussed with client her present condition, contrasted that condition with her condition at the time of Exhibit 6 | 0.3 |
| 3-12-03 | Reviewed with client Findings of Fact No.8 and Exhibit 8;client confirmed the experiencedocumented by Dr. Keroack in Exhibit 11; discussed desire but inability to return to work | 0.3 |
| 3-12-03 | Reviewed with client findings of Fact No. 9 and Exhibit 11; client described "crippling anxiety" experienced at Marshall's and other public places where she encountered former colleagues, discussed increased insomnia and fatigue and medical treatment for conditions | 0.5 |
| 3-12-03 | Reviewed Findings of Fact No. 9 and Exhibit 11; client described her job loss, loss of identity, loss of income, departmental betrayal,inability to function as a police officer,loss of self-worth;also reviewed with client report from OnSite Academy dated 1-2-03, the conditions that triggered her visit to the Academy;examined with her how that report supported Dr. Keroack's opinion and the DALA findings. | 1.5 |
| 3-12-03 | Reviewed Finding No.3, No.2,No.6,No.9 and Exhibit 11; discussed her disability, its causation and the sense of loss caused by "never being able to return to any form of duty within the Police Department | 0.75 |
| 3-12-03 | Reviewed final conclusion of DALA;explained remand, reversal and the function of the regional medical panel; the procedures for appeal, expiration of appeal and the improved prospects of getting her case to the medical panel | 0.75 |

| | | |
|---|---|---|
| 3-13-03 | Reviewed press release faxed to Lynn Item on 3-9-03, reviewed story in Lynn Item of 9-26-95 on the "historic hiring" by the City of Revere; article about the seven female police officers hired by the RPD | 0.5 |
| 3-13-03 | Reviewed press release faxed toChannel 56 newsroom; also Notice of Claim plus reports to Chief Russo dated 12-21-98 | 0.25 |
| 3-13-03 | Reviewed Mass State Police Daily Administrative Log in which client reported bullet hole from pellet gun in rear bumper of mini-van | 0.25 |
| 3-14-03 | GeneralReview of Medical StatementSupporting Request for Accidental Disability via PERAC by Dr. Keroack;statement also faxed to office of the counsel for the RPD;statement prepared for client's voluntary petition | 0.25 |
| 3-14-03 | Reviewed introduction, personal history, family history and mental health history of the report | 0.3 |
| 3-14-03 | Reviewed page 3 of report and noted medical observation that "Officer Pechner-James had not yet made the association between her existing work related stresses and their contribution to her deteriorating condition | 0.3 |
| 3-14-03 | Reviewed twelve symptoms described by the doctor and the medications prescribed | 0.3 |
| 3-14-03 | Reviewed page 3 and the worsening of the clients mental and physical health; reviewed the five bullet-points of her physical condition; also reviewed the bullet points on her medical condition | 0.5 |
| 3-14-03 | Reviewed page 4; noted the diagnosis of "complex PTSD that results from chronic, repetitive, non-life threatening traumatic events that occur over extended periods of time"; reviewed diagnosis and medication described | 0.5 |
| 3-14-03 | Reviewed page 5; noted causal relationship between the position taken by ranking officials within the Department" and the "irreparable harm to Officer Pechner-James' ability to resume her duties within the Revere Police Department. Furthermore, I do not believe that Officer Pechner-James can ever return to the Revere Police Department in any official capacity." | 0.5 |
| 3-14-03 | Also reviewed conclusion that "As a result of these combined illnesses, it will not be possible for Officer Pechner-James to ever return to work as a Revere Police Officer | 0.25 |

| | | |
|---|---|---|
| 3-14-03 | Causal relationship established; "Officer Pechner-James has experienced sustained and repetitive trauma as a direct result of harassment within the work environment at the Revere Police Department." This has resulted in the development of several related illnesses within Officer Pechner-James life." | 0.3 |
| 3-17-03 | Followup fax to Boston Herald, Marie Szaniszlo; faxed DALA decision of 3-7-03 in favor of client, copy of Mayor's letter denying leave, copy of office letter in response | 0.25 |
| 3-17-03 | Reviewed DALA decision of 3-7-03 in preparation for regional medical panel hearing | 0.25 |
| 3-17-03 | Started review and selection of documents and exhibits for submission to regional medical panel | 0.25 |
| 3-17-03 | Review G.L.c.32 Sec 16(4) | 0.25 |
| 3-18-03 | Reviewed and updated Statement of Facts for presentation to medical panel | 0.5 |
| 3-18-03 | Reviewed Exhibits 1-9 for inclusion in List of Exhibits for the medical panel | 0.5 |
| 3-18-03 | Reviewed Exhibits 10-18 for inclusion in List of Exhibits for the medical panel, including medical opinions from Dr. Susan Rudman, and Dr. Keroack | 0.5 |
| 3-18-03 | Reviewed Exhibits 19-27 for inclusion in the List of Exhibits for medical panel | 0.5 |
| 3-18-03 | Reviewed Exhibits 28-36-Medical Notes-for inclusion in List of Exhibits for medical panel | 0.3 |
| 3-18-03 | Reviewed Exhibits 37-46; included Addemdum:DALA's decision on appeal dated 3-7-03; Dr. Keroack's medical opinion dated 2-18-03 and reviewed in detail on 3-14-03 | 0.75 |
| 3-19-03 | Reviewed Stipulation of Dismissal in Pechner-James v Roland,Acting Chief, Revere Police Dept et al #SUCV 2001-05837H | 0.25 |
| 3-19-03 | Secured consent for Stipulation from Paul Capizzi, Esq. for Consented to Stipulation | 0.25 |
| 3-19-03 | Preliminary Review of notice of appeal filed by client with DALA on 11-5-02; also started review of eighteen exhibits prepared for DALA by the City | 0.3 |
| 3-19-03 | Reviewed in detail Exhibits 1-5:Letter dated 10-30-02 from | |

|  | Off. James to CRAB, Notice of Retirement Board Action on Disability Retirement Application dated 10-30-02, Certified Letter dated 7-17-02 from Chief Reardon to Off. James letter dated 7-17-02 from Chief Reardon to Off. James, letter dated 7-17-02 from Chief Reardon to RRB, |  |
|---|---|---|
|  |  | 0.75 |
| 3-19-03 | Reviewed Exhibits 6-10; Involuntary Retirement Application dated 7-17-02; Fair Summary of Facts of Chief Reardon, letter dated 4-25-01from Chief Colannino to Officer Pechner-James, letter dated 6-1-01 from Chief Colannino to Off Pechner-James with enclosure, Addendum Sheet to the Involuntary Retirement Application-Injury Report | 0.75 |
| 3-19-03 | Reviewed Exhibits 11-14; Application for Indemnification of Medical Bills/Application for Continuation of Wages, Application for Indemnification Under G.L.c.41 Sec 100, Application For Leave Without Loss of Pay Under G.L.c.41 Sec 111F, Addendum Sheet To the Involuntary Retirement Application Medical Data | 0.75 |
| 3-19-03 | Updated statement of facts in preparation for medical panel hearing | 0.25 |
| 3-20-03 | Reviewed in detail medical panel folder,client;s PERAC Application and its List of Exhibits |  |
|  | Detailed review of Members Application dated 2-5-03; review statement of applicant duties section | 0.25 |
| 3-20-03 | Detailed review of Employment History-major employment Police Officer | 0.25 |
| 3-20-03 | Detailed review of Statement About Your Background, Qualifications & Recent Pysical Activities; noted Medical Rehabilitation Activities section; included Dr. Keroack OnSite Academy and Dr. Rudman | 0.25 |
| 3-20-03 | Detailed review of Reason For Accidental disability; both personal injury and hazard checked as causes | 0.25 |
| 3-20-03 | Detailed review of dates: List of dates from 8-21-96 to 3-13-01; answer to length of time exposed:The six years I spent on the job | 0.1 |
| 3-20-03 | Detailed review of Description of Incident/Hazard:Continual sexual comments and harassment;hostile environment and inappropriate behavior-all consistent with Medical data and Involuntary Application | 0.25 |
| 3-20-03 | Detailed review of Incident Reports; Report to Mayor Ambrosino and MCAD listed in 2 slots provided; check records for accuracy of dates | 0.25 |

| | | |
|---|---|---|
| 3-20-03 | Detailed review of Witness Data: Listed James Picardi and Joseph Cafarelli in the two slots provided; wrote in GVB Security and Investigative Corp, John F.McCabe,Investigator | 0.25 |
| 3-20-03 | Detailed review of other actions taken:noted denial of Sec. 111F benefits | 0.1 |
| 3-20-03 | Detailed review of Emergency Medical Treatment:MGH Emergency&Boston Emergency-Dr. Peters Listed | 0.1 |
| 3-20-03 | Detailed review of Hospital&Medical Facilities:MGH listed for fatigue, sleeplessness, IBS, stress and headache;also listed OnSite Academy for PTSD | 0.25 |
| 3-20-03 | Detailed review of Physicians:Dr. Wald, Dr.Elizabeth Miller listed for IBS, headaches and sleeplessness; Dr. Keroack listed for everything;Dr.Rudman listed for PTSD | 0.25 |
| 3-20-03 | Detailed review of Primary treating Physician:Dr. Keroack his notes and the notes of the other identified medical providers | 0.75 |
| 3-26-03 | Filed Stipulation of Dismissal-time stamped with Clerk of Suffolk superior Court at 12:20pm;signed by attorneys for client and City | 0.5 |
| 3-28-03 | Discussed with office associate the prerequisites that had been met for the filing of civil action; discussed Notice of Claim, the time requirement and the preparation of civil complaint | 0.75 |
| 3-31-03 | Reviewed portions of complaint already drafted | 0.25 |
| 3-31-03 | Reviewed notes prepared by client, checked facts and compared statements with documents | 0.5 |
| 3-31-03 | Drafted Caption of Case for filing in the Superior Court of the Commonwealth of Massachusetts | 0.25 |
| 3-31-03 | Drafted section of Parties to be used in Complaint | 0.25 |
| 3-31-03 | Reviewed client notes on the named Defendants | 0.75 |
| 3-31-03 | Drafted section on Defendants for Verified Complaint | 0.75 |
| 4-1-03 | Reviewed MGLc.151B Sec.4and 42 USC 2000e-2 compared prerequisites for liability | 0.75 |
| 4-1-03 | Drafted Paragraph 12-Applicable Law including both Massachusetts and Federal Law | 0.75 |
| 4-1-03 | Reviewed doctrine of strict liability;CollegeTown v MCAD; | |

| | | |
|---|---|---|
| | Burlington Industries v Ellerth, and Faragher v City of Boca Raton | 0.75 |
| 4-1-03 | Drafted Paragraph 13 including references to federal and state case law | 0.75 |
| 4-2-03 | Reviewed client's notes in preparation for drafting Paragraph 14 of the complaint | 0.5 |
| 4-2-03 | Reviewed events, start of work at RPD, MCAD complaint, instances of hostility and abuse and DALA decision of 3-7-03 | 0.5 |
| 4-2-03 | Drafted portion of Paragraph 14 that pertained to Terri Pechner-James | 0.75 |
| 4-2-03 | Drafted Paragraph 15 based on review of events | 0.25 |
| 4-2-03 | Reviewed previous draft of paragraphs 16-33 on Lt Foster | 0.25 |
| 4-2-03 | Reviewed client's detailed notes on Lt Foster, organized new paragraph structure, checked facts, dates and events, completed draft of paragraphs 16-33 | 1.5 |
| 4-2-03 | Reviewed draft of Paragraph 34 | 0.05 |
| 4-2-03 | Reviewed clients detailed notes on Michael Murphy, checked facts and dates, completed draft of paragraph 34 on Michael Murphy | 0.75 |
| 4-2-03 | Reviewed prior draft of paragraphs 35 to 51and reviewed client's notes and Department's reports for conduct of Lt Santoro | 0.25 0.75 |
| 4-3-03 | Reviewed client's notes, statements of John Barker and Christopher Daly given to the detective agency, reviewed all Santoro related information that contri buted to the clients constructive discharge from her employment | 0.5 |
| 4-3-03 | Drafted paragraphs on Lt Santoro based on review of material | 0.75 |
| 4-4-03 | Reviewed prior draft of paragraphs 48 to 51 | 0.25 |
| 4-4-03 | Reviewed client's notes on Chief Colannino and Captain Roland | 0.5 |
| 4-4-03 | Reviewed actions of Roy Colannino, as chief and his responses to female oficers complaints; reviewed actions of Captain Roland and the reports that he filed with Chief Russo but that were binding on Russo's successors, also reviewed Roland's investigation | 0.75 |

| | | |
|---|---|---|
| 4-4-03 | Made draft of paragraphs 48-51 based on review of materials | 0.75 |
| 4-7-03 | Reviewed previous draft of Paragraphs 52-61 | 0.25 |
| 4-7-03 | Reviewed clients notes for events and conduct that involved application of double standard, the incidents of 4-18-97 with Curcio. Malatesta and Fish, review of public comments | 0.75 |
| 4-7-03 | Drafted paragraphs 52-61 of complaint | 1.25 |
| 4-8-03 | Reviewed prior draft of paragraphs 62 to 64 on Sgt Nelson | 0.25 |
| 4-8-03 | Reviewed pornography incident that involved Sgt Nelson and its effect on female police officers and the public | 0.5 |
| 4-8-03 | Drafted paragraphs 62 to 64 on Sgt Nelson | 0.5 |
| 4-9-03 | Reviewed prior draft of paragraphs 65 to 69 | 0.25 |
| 4-9-03 | Reviewed Revere Ordinance 2:60:030 and the responsibilities of the Chief of Police; noted Chief's duty to comply and execute orders of the Mayor | 0.5 |
| 4-9-03 | Reviewed duties of the Chief, responsibility to the Mayor, reports provided to him by Capts Roland and Chaulk analyzed duties and all reports in preparation for drafting paragraphs 65 to 69 | 0.5 |
| 4-9-03 | Drafted paragraphs 65 to 69 including quotations from Chief James Russo | 0.75 |
| 4-10-03 | Reviewed prior draft of Paragraphs 70 to 79 | 0.25 |
| 4-10-03 | Reviewed provisions of M.G.L.c. 149 Sec 105D; reviewed the scope of maternity leave, analyzed the relationship between this statute and G.L.c.151B Sec4 | 0.5 |
| 4-10-03 | Reviewed the client's notes as they relate to the Underwear Incident, reviewed in their entirety both reports of the underwear incident, also reviewed both reports submitted to Chief Russo by Capts Chaulk and Roland | 0.5 |
| 4-10-03 | Drafted paragraphs 70 to 79 | 0.75 |
| 4-11-03 | Researched front pay award / front pay damages for hostile work environment/sexual harassment | 0.5 |
| 4-11-03 | Researched CollegeTown and doctrine of strict liability in Massachusetts | 1.1 |

| 4-11-03 | Researched damages for Constructive Discharge,back pay mitigated by disability payment if successful,back pay damages,front pay damages, front pay and back pay | 0.75 |
|---|---|---|
| 4-11-03 | Researched damages for Disparate Treatment, back pay, front pay, back and front pay damages and attorneys fees as permitted by 42 USC 2000e-2 5(k) | 0.75 |
| 4-11-03 | Researched damages for Infliction of Emotional Distress, attorneys fees pursuant to 42 USC 2000e-2 5(k) | 0.5 |
| 4-14-03 | Drafted List of Attachments of available Exhibits A,C,D,E,F,and H | 0.25 |
| 4-15-03 | Review Local rules of Court particularly Local Rule 7.1 and 56.1 | 0.5 |
| 4-15-03 | Read Irish Lesbian and Gay Organization v Rudolph Guiliani, 143 F.3d 638(1998) for procedural preclusion; standard of review and res judicata | 0.75 |
| 4-15-03 | Reviewed Agreement Between Teamsters Local 25 And City of Revere for the period 7-1-97 to 6-30-00;reviewed dates of client's employment; reviewed Article 8, Article 9: Grievance Procedure and Arbitration, Article 9;Paying Police Detail | 0.75 |
| 4-15-03 | Review client's use of Grievance Procedure and correspondence from George Cashman, President;noted role of Paying Police Details in Police Compensation | 0.5 |
| 4-15-03 | Reviewed 1997 DOJ docuement:Law Enforcement Management and Administrative Statistics:Data For Individual State and Local Agencies with 100 or more officers; evidence that City of Revere provides:Educational Incentive,Hazardous Duty and Shift Differential pay | 1.5 |
| 4-16-03 | Review of 840 CMR 6:00:Standard Rules for Disclosure of Information promulgated by PERAC pursuant to M.G.L. c.7 Sec 50(a) and 50(n); applicable sections 6:01 to 6:14 | 1.5 |
| 4-16-03 | Review of 840 CMR 10:00:Standard Rules For Disability Retirement promulgated by PERAC under the authority of MGLc 7 Sec 50 and MGLc 32 Sec 6 and 21;sections applicable to both client and employer 10:01 and 10:21 | 1.5 |
| 4-16-03 | Reviewed Sexual Harassment Policy amended in 2000 in preparation for finalizing complaint | 0.5 |
| 4-17-03 | Reviewed Legislative Act required for New Bedford to satisfy judgment in Gonsalves v City of New Bedford, 939 F.Supp 915 (1996):An Act Relative to The | |

|  |  |  |
|---|---|---|
|  | Financing Of Final Judgment By The City of New Bedford Sections 1-3 | 0.5 |
| 4-17-03 | Review of US Supreme Court Rule 35 on Substitution of Public Officers | 0.25 |
| 4-17-03 | Researched 6 Moore-Federal Practice-Substitution of Parties Section 25:10, 25:45 | 0.75 |
| 4-17-03 | Reviewed USCS Fed Rules App Proc R. 43-Substitution of Parties:Automatic Substitution:Automatic Substitution of Officeholders | 0.25 |
| 4-17-03 | Researched 6 Moore's Federal Practice: Substitution of Parties:Sec 343.11 - 343.13 | 0.75 |
| 4-17-03 | Researched Kincaid v Rush, 670 F.2d 737 (1982)-Substitution is procedural,does nto affect other issues | 0.25 |
| 4-17-03 | Reviewed USCS Federal Rules Civ Proc R. 25 Substitution of Parties | 0.25 |
| 4-17-03 | Researched 6 Moore Federal Practice: Substitution of Parties Sec 25.02, 25.10-25-14,25.16,25.17, 25.20 25.30-25.33, 25.35-25-37, 25.40-25.45 | 1.5 |
| 4-18-03 | Reviewed Comm of Mass Police Officer Task List Sec A:Patrol&Incident Response, SectionB:Traffic Enforcement, Section C: Investigations; D:Arrest-Related Activities, E: Evidence-Property Management, F: Record and Report management, G:Court, H:Community Relations; reviewed client's notes for familiarity with and performance of tasks | 0.3 |
| 4-18-03 | Read and analyzed Horgan v CRAB in preparation for Medical Panel appearance by client,Cambridge Retirement Board upheld by Superior Court | 0.5 |
| 4-18-03 | Read and analyzed Evans v CRAB in preparation for Medical Panel appearance | 0.5 |
| 4-18-03 | Read and analyzed Blanchette v CRAB; analysis of personal injury" to include "mental or emotional disability where predominant contributing cause of such disability is an event or series of events occurring within any employment"; preparation for Medical Panel hearing | 0.5 |
| 4-21-03 | Read and anzlyzed Sugrue v CRAB again; preparation for Medical Panel hearing | 0.5 |
| 4-21-03 | Read Suders v Easton-3rd Circuit-No:01-3512,decided 4-16-03;issues of sexual harassment/hostile environment |  |

| | | |
|---|---|---:|
| | tangible employment action and constructive discharge | 0.75 |
| 4-21-03 | Researched "tangible employment action" and "materially adverse employment action", the latter,an element of Title VII | 0.5 |
| 4-21-03 | Ellerth & Faragher (1998)US Supreme Court create strict liability for employers;Ellerth 524 US at 765, Faragher 524 US at 807 | 0.75 |
| 4-21-03 | Preliminary comparison of Ellerth/Faragher and CollegeTown analysis of the bases for strict liability doctrine | 0.5 |
| 4-22-03 | Reviewed Local Rule 56.1 and its requirement of concise statement, reference to affidavits, deposition and other documents; reviewed the standards required of opposition: concise statement, page reference to affidavits, depositions and other documentation | 0.25 |
| 4-22-03 | Noted:admission of moving party's facts unless controverted by non-movig party in Rule 56.1 | 0.1 |
| 4-23-03 | Reviewed Fed. R. Civ. P. 56-Standard for Granting or Denying Summary Judgment; reviewed meaning of Genuine Issue,Controlling Legal Standards, Material Facts Appropriate as a matter of law | 0.25 |
| 4-23-03 | Reviewed Anderson v Liberty Lobby,Inc. 477 US 242 (1986) | 0.5 |
| 4-23-03 | Reviewed and researched Torres-Rosado v Rotger-Sabat, 335 F3d 1 (2003) | 0.5 |
| 4-23-03 | Reviewed and researched Celotex v Catrett, 477 US 317 -1986 | 0.5 |
| 4-23-03 | Reviewed burden on non-moving party in summary judgment mere denials insufficient. First Nat'l Bank v Cities Serv Co 391 US 253(1968) | 0.75 |
| 4-24-03 | Reviewed what non-moving party must show by affidavit, deposition testimony or otherwise; reviewed Millar v Houghton, 115 F3d 348 (1997), Rule 56(e) and Anderson v Liberty Lobby, supra | 0.75 |
| 4-24-03 | Reviewed form of Motion and mandatory requirement that non-moving party" submit a "counterstatement" | 0.25 |
| 4-24-03 | Reviewed AM Capens Co v American Trading & Production Corp, 202 F3d 469(2000) | 0.5 |
| 4-24-03 | Also reviewed Jackson v Finnegan, 101 F3d 145(1996) in support of principle that all facts not disputed by counterstatement are admitted | 0.5 |

| | | |
|---|---|---|
| 4-25-03 | Reviewed Rule 56(d) for Partial Summary Judgment on liability alone; also reviewed Russell v Enterprise Rent A Car of Rhode Island, 160 F Supp2d 239(DRI 2001)for procedural requirements | 0.75 |
| 4-28-03 | Reviewed "Law of the Case" doctrine and partial summary judgment adjudication; reviewed Palmer v Fox Software, Inc.107F3d 415(6th Cir 19970 | 0.75 |
| 4-28-03 | Reviewed Burkhart v Washington Metro Area Transit Authority 112 F3d 1207(1997) for dispositive nature of such motion | 0.75 |
| 4-30-03 | Review requirements of Affidavits in Summary Judgment and Rule 56(e); reviewed requirements:Sworn, Personal Knowledge and Specific Admissible Facts | 0.25 |
| 4-30-03 | Review Adickes v SH Kress & Co, 398 US 144(1970; unsworn affidavit insufficient | 0.5 |
| 4-30-03 | Reviewed Automatic Radio MFG Co v Hazeltine Inc 339 US 827(1950) for standards required of affidavits | 0.5 |
| 4-30-03 | Specific facts-not conclusory statement required; reviewed Moore v JB Hunt Transport Inc 221 F3 944(2000) | 0.25 |
| 5-1-03 | Conference with co-counsel on Press Release about the DALA decision of 3-7-03;analyzed impact of future favorable decisions for client's case | 0.3 |
| 5-1-03 | Press wants court development before publishing; conference with associate about filing complaint at end of 180 days required by Notice of Claim statute | 0.3 |
| 5-1-03 | Reviewed both reports prepared by Dr. Keroack, report dated 2-18-03 and 1-22-03; preparation for medical panel hearing | 0.3 |
| 5-1-03 | Reviewed statement of events prepared by client and consisting of 21 pages in preparation for medical panel hearing | 0.75 |
| 5-1-03 | Reviewed Statement of Facts after review of clients statement | 0.5 |
| 5-1-03 | Revised and updated list of exhibits to be included in submission to medical panel | 0.5 |
| 5-2-03 | Reviewed 1-29-03 report from ONSite Academy | 0.25 |

| | | |
|---|---|---|
| 5-2-03 | Reviewed CRAB decision in Plymouth County v CRAB(appealed) for inclusive definition of personal injury". | 0.5 |
| 5-2-03 | Reviewed work-related facts that triggered Newman's depression, compared Newman's experiences with client's experiences | 0.3 |
| 5-2-03 | Reviewed procedural role of regional medical panel, its evaluation of Newman, noted medical panel unanimous decision | 0.25 |
| 5-2-03 | Reviewed  regional medical panel decision to certify Newman's disability to Plymouth County Retirement Board | 0.25 |
| 5-2-03 | Also reviewed the causation(natural and proximate result) of Newman's disability-"work stress.";made comparisons with client's "work stress " and present disability | 0.25 |
| 5-2-03 | Reviewed Newman's appeal to CRAB pursuant to GLc.32 Sec 16(4) and CRAB denovo hearing; made comparisons to client's request | 0.25 |
| 5-2-03 | Noted DALA magistrate made specific findings of fact; also noted CRAB's decision to accept DALA's findings and medical panel findings as basis for award of disability in Newman's favor; discussed with associate a strategy whereby the DALA's findings and the medical panel decision could result in an award of disability for the client | 0.75 |
| 5-5-03 | Read and analyzed Namay v CRAB, 19 Mass AppCt 456 1985 in preparation for medical panel hearing | 0.5 |
| 5-5-03 | Reviewed standards for disability as discussed in Kelly's case 394 Mass 684(1985)-stemmed from "a single work-related events or series of events." | 0.5 |
| 5-5-03 |  Reviewed other standard-product of gradual deterioration; read Zerofski's case, 385 Mass 590(1982) | 0.75 |
| 5-5-03 | Reviewed Blanchette v CRAB again to identy standards and prepare for medical panel | 0.5 |
| 5-5-03 | Read and analyzed Adams v CRAB,414Mass at 360(1993) for court's deference to CRA's experience in the area of disability and its function in applying the provisions of MGLc.32 Sec 6(1), 7 et seq. | 1.5 |
| 5-6-03 | Compared Newman's lack of pre-existing mental or emotional illness with client's corresponding lack of pre-existing mental and emotional illness; read reports by | |

| | | |
|---|---|---|
| | Dr. Keroack | 0.5 |
| 5-6-03 | Reviewed mental incapacity of candidate in Blanchette with Newman and with client;compared standards used in Blanchette with standards in Plymouth | 0.75 |
| 5-7-03 | Reviewed use of standard "common to all or a great many professions"; reviewed Sugrue again | 0.25 |
| 5-7-03 | Reviewed Appeals Court conclusion-based on medical facts, facts found by the magistrate, supported by CRAB's determination and the role of traditional deference | 0.75 |
| 5-7-03 | Reviewed Vinal v CRAB, 13 Mass App. Ct 85 (1982) for comparison and contrast with Blanchette and Plymouth | 0.75 |
| 5-7-03 | Compared "major depression" of Newman, "mental incapacity" in Blanchette with position of RPD and its use of the treatise by John Collins | 0.75 |
| 5-8-03 | Office conference with associate; discussed recognition of major depression" in Plymouth, mental incapacity in Blanchette; deference to CRAB decisions by courts | 0.75 |
| 5-8-03 | Reviewed exhibits 1-7 with associate for the purpose of determining whether administrative prerequisites for unani mous decision from medical had been met | 0.5 |
| 5-8-03 | Reviewed exhibits 8-27 with associate for the purpose of documenting instances of hostility and the deficient response by the RPD | 0.75 |
| 5-8-03 | Reviewed exhibits 28-42 with associate for the purpose of documenting the physical and emotional impact of the actions of the RPD | 0.75 |
| 5-8-03 | Reviewed DALA decision of 3-7-03; Dr. Keroack's opinion of 2-18-03, Mass General Notes dated 8-14-97 and MGH Notes dated 7-10-01; created addendum for presentation to medical panel | 0.5 |
| 5-9-03 | Read analyzed in detail CollegeTown,Div of Interco. Inc v MCAD; review of employment discrimination prohibited by GLc. 151B Sec 4(1); applies to terms,conditions or privileges of employment; encompasses a work environment pervaded by abuse and harassment. p.161-162 | 0.75 |
| 5-9-03 | Reviewed full participation in the workplace;reviewed offensive comments and other conduct that created barrier against full and untrammeled participation in the workplace; the definition of discrimination includes these activities pursuant to MGLc 151B Sec 4 p.162 | 0.75 |

| | | |
|---|---|---|
| 5-903 | Review section on award of damages; damages permitted and interest calculated from time proceeding commenced p. 169-170 | 0.5 |
| 5-9-03 | Reviewed standard of review applied by the SJC to MCAD administrative decision governed by MGLc. 30A Sec 14(7) substantial evidence | 0.5 |
| 5-9-03 | Reviewed authority of MCAD award of interest; MGLc.151B Sec.5 grants broad authority including award of interest | 0.25 |
| 5-9-03 | Reviewed MGLc 231 Sec 6B for interest rate to be used in calculating interest;noted commencement of proceedings was the period from which interest should be awarded | 0.5 |
| 5-12-03 | Reviewed effects of harassment in CollegeTown;noted in particular "harassment by supervisor stigmatizes an employee", "relects an attitude that the employee is not considered equal to other employees", reviewed client's notes on treatment by Lt Foster, evaluated client's treat ment and the evidence of stigmatization. | 0.75 |
| 5-12-03 | Reviewed implied threat of harassment in CollegeTown; noted that such harassment carries implied threat that supervisor will punish resistance through exercising supervisory powers"; reviewed clients notes and statement of facts, evaluated Lt Foster's threats and punishment program in light of College-Town | 0.75 |
| 5-12-03 | Reviewed employer liability for sexual harassment of subordinates committed by supervisors; noted consistent policy applied by MCAD          p.166 | 0.5 |
| 5-12-03 | Noted SJC deference to MCAD; read School Comm of Wellesley v Labor Relations Comm'n, 378 Mass 112 (1978) on judicial deference to administrative agency decision | 0.75 |
| 5-12-03 | Reviewed holding of CollegeTown; employer had conferred on supervisor substantial authority over his subordinates; by terms of MG:c 151B Sec 4, CollegeTown is liable for discrimination by the supervisor p. 167 | 0.75 |
| 5-13-03 | Compared Meritor Savings Bank FSB v Vinson with College Town | 0.5 |
| 5-13-03 | Compared Ellerth&Faragher with CollegeTown | 0.75 |
| 5-13-03 | Compared Vernett v Hough, 627 F Supp 587(1979) and commentator's proposal that"employer should be strictly liable" for sexual harassment by supervisors | 0.5 |
| 5-13-03 | Reviewed earlier cases of "strict liability" for tangible job | |

|  |  |  |
|---|---|---|
|  | detriment under Title VII; Henson v Dundee and Tidwell v American Oil Co [682 F2d 897 & 332 F.Supp 424'82&'71] | 1.5 |
| 5-14-03 | Reviewed Gonsalves v City of New Bedford; examined case for basis of municipal liability;case is not Title VII;compared strict liability of CollegeTown and Ellerth/Faragher with Gonsalves | 0.5 |
| 5-14-03 | Reviewed again standard of deliberate indifference with strict liability | 0.5 |
| 5-14-03 | Reviewed Sexual Harassment Policy adopted in 1999, in particular Section 1.4.3-Examples of Sexual Harassment, reviewed section F-Refusing to take action,compared to deliberate indifference, section G: Inquiries into ones sexual experiences,compared with conduct of Det Goodwin and Lt Santoro, SectionI:Displaying sexually suggestive pictures, objects, cartoons or posters compared Sgt Nelson and his use of pornography, section K:Verbal harassment or abuse-making reference to person's physical characteristics, compared Lt Santoro's comments about Patty Carey and other officers, sectionM comments about an individual's sexual activity deficiencies or prowess; compared with client's notes and prepared statement of facts | 1.5 |
| 5-14-03 | Reviewed Section 1.4.8-Formal Proceedings; read and analyzed process; compared written process with client's experience of the RPD use of this process | 0.25 |
| 5-14-03 | Reviewed Sections 1.4.1 1.4.2-Background & Definitions | 0.25 |
| 5-15-03 | Reviewed MGLc43 Sec 56 on Plan B charters for the City of Revere and City of New Bedford | 0.25 |
| 5-15-03 | Reviewed MGLc 43 Sec 58: Mayor- chief executive officer; election every two years; tenure two years unless changed by Legislature;compared powers and responsibilities with Mayor of New Bedford | 0.25 |
| 5-15-03 | Reviewed MGLc 43 Sec 59:City council, number, election and tenure; 11 member council; divided between ward and at-large members; compared Revere structure with structure of New Bedford | 0.5 |
| 5-15-03 | Reviwed Revised Ordinances of City of Revere:Chapter 2:09 Mayor, compared with similar ordinance in New Bedford | 0.3 |
| 5-15-03 | Reviewed Revised Ordinances of the City of Revere: Ch2:12 City Council;compared with Gonsalves and similar ordinance in New Bedford | 0.5 |
| 5-15-03 | Reviewed Revised Ordinances of the City of Revere:Ch2:60 030 Chief of Police-Sec A-E; compared with Gonsalves |  |

|  | and position of Chief of Police in the City of New Bedford | 0.5 |
|---|---|---|
| 5-16-03 | Collated and organized all the documents prepared for delivery to the medical panel | 1.5 |
| 5-16-03 | Made three separate packages-one for each member of the medical panel | 1.5 |
| 5-16-03 | Reviewed all copies; case law in preparation for conference with client who is returning for medical panel hearing on 6-13-03 | 0.75 |
| 5-16-03 | Discussed final package with associate; reviewed medical and psychological data crucial to the unanimous panel decision | 0.5 |
| 5-19-03 | Reviewed Gonsalves v City of New Bedford for role of judge and jury in the phases of the trial | 0.75 |
| 5-19-03 | Reviewed Bordonaro v McLoed; compared basis of liability with basis of liability in Gonsalves | 0.5 |
| 5-19-03 | Reviewed Pembauer; compared holding with CollegeTown and Ellerth Faragher | 0.5 |
| 5-19-03 | Reviewed Propratnik for different liability sharing formula than Bardonaro but different basis than Gonsalves | 0.5 |
| 5-19-03 | Reviewed Jett for reinforcement of holding that policy makers ar liable not employees or subordinates | 0.5 |
| 5-19-03 | Reviewed Joiner and Coming Up, Inc; additional reinforcement that policymakers are liable not employees | 0.75 |
| 6-9-03 | Client returned for Medical Panel hearing; reviewed Statement of Facts with client; highlighted changes and improvements | 0.75 |
| 6-9-03 | Reviewed facts and chronology in client's 21 page statement and checked against statement of facts for accuracy and omission | 0.5 |
| 6-9-03 | Reviewed medical records with client; discussed symptoms cause and medication prescribed | 0.5 |
| 6-9-03 | Reviewed medical records in Addemdum-discussed symptoms, cause and medication prescribed | 0.25 |
| 6-9-03 | Reviewed with client Exhibit 1-12 in preparation for hearing | 0.3 |
| 6-9-03 | Reviewed with client Exhibits 12-27 in preparation for |  |

|  |  |  |
|---|---|---|
|  | hearing | 0.5 |
| 6-9-03 | Reviewed with client the elements of permanency, her mental and physical condition | 0.3 |
| 6-10-03 | Researched Kerr Selgas v American Airlines, Inc 1st Cir. No 96-1117(1-13-97);issue front pay; front pay and reinstatement both allowed under Title VII; both remedies cannot compensate for same period of time | 0.75 |
| 6-10-03 | Researched Brown v Scott Paper Worlwide Co;issue-supervisors who discriminate held individually liable compared with CollegeTown that held only employers liable for acts of supervisors; contrast to 9th circuit-individuals are not"employers" under Title VII | 0.75 |
| 6-10-03 | Brown v Scott Paper: issue definition of "employer" under Washington law; "employer" defined by state law as :any person acting in the interest of an employer directly or indirectly who employs eight or more persons compared with Mass definiton of employer | 0.75 |
| 6-11-03 | Reviewed Ellerth;issue-no need for tangible job detriment in order to pursue lawsuit against employer; employer presumptively liable | 0.75 |
| 6-11-03 | Reviewed Faragher; issue-employer is liable even if employer lacks notice; | 0.75 |
| 6-11-03 | Reviewed client's case for "offensive remarks and gestures" and tangible job detriment; compared client's case with Ellerth | 0.25 |
| 6-11-03 | Reviewed client's case for use if anti-harassment policy; examined RPD's lack of defense;reviewed client's complaint of sexual harassment; compared client's case to Faragher for compliance with any prerequisite that may have been necessary | 0.75 |
| 6-12-03 | Researched Minger v Reinhard Distributing Co. Inc; issue attorneys fees; court affirmed award of attorneys fees even when jury found sexual harassment but declined to award damages | 0.5 |
| 6-12-03 | Analyzed Minger court policy rationale; failure to fully compensate attorneys who represent plaintiffs in discrimination claims will discourage actions whose primary effects are vindication of citizens right to be free of discrimination and the deterrence of unlawful discrimina-tory conduct; legislative intent of statute | 0.5 |
| 6-12-03 | Researched Pollard v E.I dupont; identified issues of front pay,back pay, reinstatement, compensatory and |  |

| | | |
|---|---|---|
| | punitive damages under Title VII and 42 USC 1981 | 0.5 |
| 6-12-03 | Reviewed folders prepared for medical panel hearing | 0.3 |
| 6-12-03 | Reviewed case and arguments prior to preparing client for hearing | 0.3 |
| 6-13-03 | Client preparation and review of documents, testimony,and arguments prior to hearing | 1.5 |
| 6-13-03 | Attended medical panel hearing with client; assisted client during questioning by the doctors of the medical panel | 2.5 |
| 6-13-03 | Office meeting with client after medical panel hearing; discussed responses provided to medical panel including traumatic events, ability to return to work and desire to escape RPD and its environment | 1.5 |
| 6-16-03 | Returned to analysis of Pollard v E.I duPont;issue -hostile work environment in violation of title VII;Pollard's hostile work environment resulted in medical leave of absence for psychological assistance; compared the effect of Pollard's environment to the environment of client | 0.5 |
| 6-16-03 | Analyzed District Court's award of $300,000 in compen satory damages under 42 USC Sec 1981(a)(b)(3); issue: cap on compensatory damages placed by Sec 1981(a)(b)(3) | 0.75 |
| 6-16-03 | Analysis of Sec 706(g); language of newly authorized Sec 1981(a) remedies, in the 1991 Act, were in addition to Sec 706(g) remedies | 0.5 |
| 6-16-03 | Analysis of the court's holding in Pollard, the accomplish ment of legislative intent; resolution of split among the circuits | 0.5 |
| 6-17-03 | Reviewed article by Jeff Harley: Supreme Court Removes Cap on Front Pay in Discrimination Cases; analysis: distinction between sexual harassment and gender based discrimination;Pollard was harassed because she was a woman doing what was traditionally considered a man's job | 0.75 |
| 6-17-03 | Analysis of the environment in Pollard; court described wretched indifference to an employee who was slowly drowning in an environment that was completely unacceptable, while her employer sat and watched;"; reviewed client's notes and made comparisons of the client's environment in which she was slowly drowning | 0.75 |
| 6-17-03 | Reviewed article:FrontPay awards in Title VII Discrimination Cases Not Capped by Laura Licht; analyzed procedural steps of case; read analysis of court's staturoty interpre- | |

|  |  |  |
|---|---|---|
|  | tation that revealed congressional intent | 1.25 |
| 6-18-03 | Reviewed article: Front Pay Not Subject to Damage Caps by Angela H. Myers; analyzed history of remedies for sex discrimination-1964 traditional remedies of injunction, reinstatement, lost benefits, and attorneys fees | 0.5 |
| 6-18-03 | Analysis of 1972 congressional expansion of the act to include equitable remedies | 0.5 |
| 6-18-03 | Analysis of 1991 congressional expansion; allowed compensatory and punitive damages; statutory cap of $300,000 for 500 or more employees;conflict between circuits caused by conflicting interpretation of 1991 statute | 0.5 |
| 6-18-03 | Analysis of court's resolution of circuit's conflict; traditional remedies insufficient award; cap limited congressional intent; examined how other appellate courts had excluded front pay from the statutory cap examined resolution of conflict | 1.25 |
| 6-19-03 | Proposed meeting with City Solicitor to resolve case prior to expiration of Notice of Claim and filing of civil action | 0.5 |
| 6-19-03 | Researched jury awards in other jurisdictions; hostile environment cases:Glendale,Calif-jury case 8 men 4 women award $3.5 million to 3 female officers on 6-3-03; Off. J. Franke-$1,361,250, Off Kate Freiders $850,000, and Off. Renae Kerner $1,305,176 | 1.5 |
| 6-19-03 | Jury award- Iowa $81 Million to 47year old UPS employee; driver poked her in the breast, UPS failed to listen,shunned her,excluded her from meetings, gave menial assignments, jury awarded $500,000 in compensatory damages, $80.2 Million in punitive damages | 0.75 |
| 6-19-03 | Jury award in New Jersey, federal jury awarded female airline pilot $875,000;Continental failed to adequately respond to repeated complaints about pornography left in cockpit by male pilots; compared Blakey v Continental Airlines, Inc DCNJ No. 93-2194(1997) with conduct of Sgt Nelson | 1.5 |
| 6-23-03 | Reviewed article:Appeals Court decison in Suders v Easton No.01-3512(2001) for inclusion in materials for City Solicitor | 0.5 |
| 6-23-03 | Analysis:Constructive discharge functional equivalent of actual termination; analyzed client's job experience to determine whether employer made working environment so intolerable that client was forced to resign; client meets criteria-no defense available to RPD; analyzed court's conclusion"constructive discharges and terminations " both |  |

|  |  |  |
|---|---|---|
|  | constitute significant change in employment status; cause same type of economic harm | 0.75 |
| 6-23-03 | Analysis:3rd Circuit and 8th circuitboth hold constructive discharges are tangible employment actions; 2nd and 6th Circuits disagreed; US Supreme Court to decide | 0.5 |
| 6-24-03 | Reviewed CollegeTown, Ellerth & Faragher for inclusion in proposal to City Solicitor | 1.1 |
| 6-25-03 | Reviewed client's case for personal and work data to prepare Damages section for Terri James: DOB:4-29-73; Date of Employment:9-21-95;Age at Commencement of Employment"22 years, Wage During Employment:$42,900 Benefit Package-25%; Annual Employment Benefits $53,625; Back Pay $120, 656.25; Front Pay $1,930,500 | 1.5 |
| 6-25-03 | Calculating total damages including emotional distress | 0.25 |
| 6-26-03 | Drafted statement: The Defendants Liability is !00% under State and Federal Law; included CollegeTown, Ellerth, Faragher and Suders v Easton | 1.25 |
| 6-30-03 | Drafted and assembled final version of Statement for the City Solicitor including appropriate Table of Contents | 0.75 |
| 7-7-03 | General review of the provisions of 840 CMR 10:00-Standard Rules of Disability Retirement in its entirety | 1.1 |
| 7-7-03 | Detailed review of Sec 10.04:Standard For Decision, Findings of Fact-standards to be used by PERAC and by (any) retirement board including RRB | 0.75 |
| 7-7-03 | Detailed review of 4 mandatory findings:(a) inability to perform the essential duties of his position;(b)inability likely to be permanent;(c) causation:natural and proximate result of a personal injury sustained or hazard undergone while in the performance of duties;(d)conclusion:member should be retired | 0.75 |
| 7-7-03 | Detailed review of "permanency";review of provisions of 10.14(1)(b);criteria required in 10.04(2);(a) whether nature of injury can be expected to improve over a reasonable period of time;(b)whether nature of injury is such that it could be expected to improve with medical treatment or rehabilitation;reviewed standards and applicability to this case | 1.25 |
| 7-7-03 | Detailed review of "natural and proximate result" and the 3 presumptions that apply; examined presumptions for applicability to client's condition | 0.75 |
| 7-7-03 | Detailed review of 10.04(4)&(5) and their subsections; |  |

|  |  |  |
|---|---|---|
|  | examined these provisions for applicability to client's diagnosis | 0.75 |
| 7-8-03 | Detailed review of 10.05: Proceedings, Parties; Representation; Record; the term proceedings encompass the "accidental disability retirement" that involves the client 1(a) | 0.5 |
| 7-8-03 | Detailed review of 10.05(2):Parties, client is party under her voluntary application, she is also party under the Involuntary Application filed by Chief Reardon; Chief Reardon is also party to the proceedings and bound by outcome of proceedings | 0.75 |
| 7-8-03 | Detailed review of 10.05(3) Representation:client represented by counsel at the retirement board and in all proceedings;retirement board also represented by Ira Zaleznik,Esq. | 0.75 |
| 7-8-03 | Detailed review of 10.05(4):Record:section underlined importance of documentary evidence, testimonial evidence and record keeping in proceeding; reviewed the use of evidence and records in this case | 0.75 |
| 7-8-03 | Detailed review of 10.06: Proceedings for Ordinary or Accidental;requirement of filing with retirement board and employer;checked procedure utilized by client; client filed both with RRB and employer | 0.5 |
| 7-9-03 | Detailed review of 10:06(1)Voluntary Retirement;reviewed M.G.L.c.32 Sec 6 that governs client and her voluntary application | 0.5 |
| 7-9-03 | Detailed review of 10.06 and M.G.L.c.32Sec 7 that governs the accidental application filed by Chief Reardon | 0.5 |
| 7-9-03 | Detailed review of the documentation required by 10-06(1) and provided by client in connection with her application for Voluntary Retirement:(a)sworn statement of intent to retire;(b)certificate from licensed medical doctor;(c)written authorization for release of information from IRS&DOR in accordance with M.G.L.c.32Sec6(1) and 7(1); (d)requirement of Form 10-3;(e)required statement of job duties and client's inability to perform said duties;(f)statement of client's education, training,employment history and off-duty physical activities;(g)authorization for release of client medical records;reviewed application for criteria | 1.25 |
| 7-9-03 | Detailed review of records covered by authorizations: (1)records of members personal physician and of physician submitting certificate required by 840 CMR 10.06(1)(b); (2)records of all physicians or medical instutions examining or treating the client for the personal injury |  |

|         | | |
|---------|-----------------------------------------------------------------|------|
|         | upon which this disability is based; also reviewed discovery procedures in the Federal Rules. (4)records of all physical exams performed within the five-year period prior to the application;(5)client's workmen's compensation records, also any records sumbitted in connection with M.G.Lc.41 Sec 111F bebefits; client does not have former, reviewed latter; (5) client's medical records for the last five years; reviewed application for criteria;(6)insurance claim or accident report for the last five years in connection with the personal injury sustained(PTSD) or hazard undergone (hostile work environment)upon which the application is based | 1.5 |
| 7-9-03  | Detailed review of 10.06(1)(h); further authorizations-client provided authorizations to permit physicians and medical institutions described in 10.06(1)(g)(2) for the purpose of explaning records, treatment performed or statement or prognosis | 0.5 |
| 7-9-03  | Compared discovery provisions of 840 CMR 10.06(1(a-h) with the discovery provisions of Fed. R. Civ.P. | 1.5 |
| 7-10-03 | Detailed review of 10.06(2):Involuntary Retirement:procedure for head of department filing for member who has become totally and permanently unable to perform the essentail duties of her job;MGLc32 Sec7 and Form 10-2A reviewed; Form 10-7 also available to department head; review of process used by Chief Reardon | 1.25 |
| 7-10-03 | Detailed review of 10.07: 15 days for department head to file statement with RRB;Chief Reardon had 15 days to provide application to RRB | 0.5 |
| 7-10-03 | Preliminary review of 10.07(1):Department Head or employer's statement and its component parts | 0.5 |
| 7-10-03 | Compared provisions of 10.06(1) with 10.07(1); compared the requirements of voluntary v involuntary applications | 1.5 |
| 7-10-03 | Reviewed Chief Reardon's obligation under (a) to provide "job description of client's job and description of client's duties and responsibilities; reviewed documents actually provided | 0.75 |
| 7-10-03 | Reviewed Chief Reardon's obligation under (b) to identify the essential duties of the position of police officer in the RPD;reviewed list of essental duties provided by RPD | 0.75 |
| 7-10-03 | Reviewed Chief Reardon's obligation under (c) to describe physical and mental requirements for becoming a police officer | 0.5 |

| | | |
|---|---|---|
| 7-10-03 | Reviewed Chief Reardon's obligation under (d) to provide (1)medical records in the client's file that relate to client's physical condition at the time of the commencement of her employment in 1995; inspected that record to determine if there was a pre-employment examination; Sec (d) also required in service physical examinations; inspected application to determine if Chief Reardon included the inservice physical examinations-the Department would have custody of those records; also all medical records that relate to her PTSD; reviewed all records actually provided by Chief Reardon | 1.5 |
| 7-10-03 | Reviewed Chief Reardon's obligation under (e) to provide records of the client's education and training and her qualifications for the job;reviewed records actually provided by Chief Reardon;reviewed education and training that client actually undertook during her employment | 0.75 |
| 7-10-03 | Reviewed Chief Reardon's obligation under (f) to provide a statement that described the specific duties that the client was unable to perform as a result of her disability; reviewed chief's statement, client's statement and examined causation of disability | 1.5 |
| 7-10-03 | Reviewed Chief Reardon's obligation under (g); he did state the client was unable to perform the essential duties of her job; reviewed Involuntary Application for disability and its causation | 0.5 |
| 7-10-03 | Reviewed Chief Reardon's application for compliance with section (h); examined events and hazard undergone, disability claimed, reviewed application for the reports, statements and the information that relate to the cause of her disability | 0.75 |
| 7-10-03 | Noted that client is "member";position classified under civil service | 0.1 |
| 7-10-03 | Reviewed Chief Reardon's Involuntary Application for compliance with(j) and examined application and found no claim or evidence of misconduct | 0.5 |
| 7-10-03 | Reviewed 10.08(1):Medical Panel,Formation And Instruction to Panel;reviewed obligation of retirement board to petition the Commission and the Commission's duty to schedule a medical examination of the client by a regional medical panel;reviewed client's file for RRB request and appointment of medical panel by Commission;also reviewed medical panel hearing which it scheduled for June 13, 2003 | 1.5 |
| 7-10-03 | Reviewed 10.08(2):noted medical panel was requested by RRb as a result of DALA decision of 3-7-03;DALA | |

|  |  |  |
|---|---|---|
|  | provided copy of 3-7-03 decision along with request for appointment of a medical panel;RRB failed to make voluntary request allowed by 10.08(1) | 0.75 |
| 7-11-03 | Reviewed 10.08(3);review composition of medical panel; 3  unassociated physicians as defined by MGLc.32 Sec 6(3); Susannah Sherry, M.D.-Psychiatrist, George Dominiak, MD-Psychiatrist, Mark Friedman,MDInternist Panel coordinator:George Dominiak;examined hearing of 6-10-03 for compliance with 10.08(3) | 0.75 |
| 7-11-03 | Reviewed Sec 10.08(4); meeting of medical panel required by this section to be held within 60 days of appointment; separate exams not necessary, exam held within 60 day period | 0.3 |
| 7-11-03 | Reviewed 10.08(5);reviewed alternate exam procedure; one examination held at 575 Mount Auburn Street,Suite 201, Cambridge, MA 02138 on 6-13-03 at 2:30 pm; procedures of 10.08(5) not needed for this case | 0.5 |
| 7-11-03 | Reviewed 10.08(6);reviewed section for the thoroughness of the information provided to each panel member; preliminary review of 10.09(1) for opportunity to conduct investigation of facts relied upon | 0.5 |
| 7-11-03 | Reviewed subsections(a-f)describing documents to be pro vided to panel: (a)statement of client's physicians (b)statement of client's duties as police officer (c)statement from Chief Reardon, as department head (d) client's statement of personal injury (e)injury reports filed by RRB and the City examined documents provided to the medical panel in support of client's claim; reviewed documents that contradicted client's claim;reviewed C.30A and its evidentiary standards | 1.75 |
| 7-11-03 | Reviewed 10.08(7); prevention of bias by excluding certificates and naratives prepared for prior medical panels, no copies of decisions of DALA or PERAC exclusion of all evidence of bias | 0.75 |
| 7-11-03 | Reviewed 10.08(8);X-Rays, EKG tracings available to be provided if required for PTSD diagnosis | 0.5 |
| 7-12-03 | Reviewed 10.09 sec 1-3; Investigation;Denial;Appeal; reviewed procedure for denial and appeal which was used in this case prior to DALA decision of 3-7-03 | 0.5 |
| 7-12-03 | Reviewed 10.10: Examination by Medical Panel:Sec.1 Notice-14 days notice for medical panel examination; |  |

| | | |
|---|---|---|
| | also reasonably convenient time and place requirement; examined client's case for 14 day notice and convenient time of 2:30 pm and convenient place:575 Mount Auburn Street, Suite 201, Cambridge, MA 02138 | 0.5 |
| 7-12-03 | Reviewed 10:10(2); Examination; reviewed examination of 6-13-03 for complaince with this section;  three physicians were present;alternative procedure not necessary;reviewed substance of examination | 0.5 |
| 7-12-03 | Reviewed 10.10(3) Medical Tests; "non-invasive" or other tests were considered necessary by the medical panel; section does not apply. | 0.1 |
| 7-12-03 | Reviewed 10.10.(4); Representation; in accordance with due process;"member's physician and employer's physician provided with opportunity to attend each examination; noted employer elected not to attend examination hearing conducted by panel, received submissions | 0.5 |
| 7-12-03 | Reviewed 10.10(5); Rescheduling of Examination:medical panel did not need to reschedule; section did not apply | 0.1 |
| 7-12-03 | Reviewed 10.10(6):Application for Involuntary under c. 32 Sec16; employer would be responsible for default; section does not apply; client appeard at the time and place set by the Commission | 0.5 |
| 7-12-03 | Reviewed 10.10(7); Confidentiality: client's physical and mental health records protected by this section; client's attorney permitted to attend,did attend hearing; employer's attorney permitted to but did not attend medical panel hearing | 0.5 |
| 7-12-03 | Reviewed 10.10(8);Documents Submitted to the Medical Panel; This provision give RRB copies of the client's submissions; the Commission provided the RRB those documents. RRB's subsequent claim that it never received document-not valid; review process notice to RRB | 0.5 |
| 7-12-03 | Reviewed 10.10(9);Certification of Panel Findings:Noted process: within 60 days after 6-13-03, medical panel must report findings and recommendations to RRB through Commission; panel has to use certificate provided by Commission; noted medical panel paid by commission; Commission has 5 days after getting report from panel to send it to RRB | 0.75 |
| 7-12-03 | Reviewed requirements of thecontent of medical panel certification;physician shall certify(1)whether the client is unable to perform the essential duties of her job; (2)whether her inability is likely to be permanent; (3)whether disability is such as might be the natural | |

|  |  |  |
|---|---|---|
|  | and proximate result of the accident or hazard undergone on accout of which the retirement is claimed. Examined the required content and identified the injury and causation analysis | 1.75 |
| 7-12-03 | Reviewed requirements of narrative statement by panel coordinator; requirements-names,addresses of all persons attending examination, list of all documents and list of medical tests ordered by panel;reviewed list of documents presented to medical panel | 0.75 |
| 7-14-03 | Reviewed dates reports expected and timelines established by the regulations;medical panel examination-6-13-03;60 days by 8-13-03; Commission to send RRB medical panel report within 5 days after receipt; RRB has obligation to notify client of medical panel findings within 30 days of receipt | 1.25 |
| 7-14-03 | Reviewed 10.11(2); examined right of RRB to seek"addition-al information or further clarification";noted Commission had duty to assist RRB in obtaining whatever information RRB deemed necessary | 0.75 |
| 7-14-03 | Reviewed 10.11(3);reviewed procedures in the event panel precludes retirement;examined remedies of further examination, new examination, new panel; procedure for denials;notice to all parties pursuant to 840CMR 10.13(3); noted prerequisites of due process observed-right to appeal and adequate notice required. | 1.25 |
| 7-14-03 | Reviewed 10.11(4);RRB has right to determine whether or not to approve the application even if the medical panel permits retirement. RRB can make independent decision; Noted right of RRB to separate decision and separate hearing.Hearing requested by client-compulsory;hearing by RRB,without request-optional;all hearings-optional and compulsory-require notice,must be conducted in accordance with 10.12, affording ample due process | 1.5 |
| 7-15-03 | Preliminary review of 10.12-Hearing by Retirement Board; examined section for due process;(1)notice(2)ample discovery(3)opportunity for all sides to be heard in con duct of hearing | 0.75 |
| 7-15-03 | Review of 10.12(1): 30 days notice of time,place and issues; backup provisions in the event of delay;amendment to afford all parties reasonable opportunity to prepare and present evidence and argument;examined notice provision for adjudicatory level of due process | 0.75 |
| 7-15-03 | Reviewed 10.12(2)Discovery:Parties and authorized representatives can examine,copy,photocopy document or record of hearing;hearing is ordered,discovery takes |  |

|          |                                                                                                                                                                                                              |      |
|----------|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|------|
|          | place;additonal discovery opportunities in 10.09(1);compared scope of discovery with Mass Rules of Civil Procedure;                                                                                          | 1.75 |
| 7-15-03  | Preliminary review of 10.12(3):Conduct of Hearing:(a)Presiding Officer(b)Continuances(c)Oaths,Rulings,Briefs (d)The Record(e)Executive Session(f)Evidence (g)Subpoenas.                                       | 0.5  |
| 7-15-03  | Examined emphasis on affording"all parties an opportunity to present all information and agument relevant to the proceeding                                                                                    | 0.3  |
| 7-15-03  | Presiding Officer:10.12(3)(a):Function of presiding officer to"assure parties the right to call and question witnesses and introduce exhibits and present argument,relevant to proceeding." Also orderly presentation of evidence and argument;make record of hearing;examined role of presiding officer for due process requirement | 0.75 |
| 7-15-03  | Continuances:10.12(3)(b):All changes require due notice to all parties; prior to decision,presiding officer can reconvene upon 10 days notice to all parties;examined notice requirement of reconvened hearing;noted due process observed in adjudicatory process | 0.75 |
| 7-15-03  | Reviewed 10.12(3)(c):Oaths Rulings,Briefs:Examined the procedural use of "the oath or affirmation to witnesses, ruling upon the admissibility of evidence, upon request for rulings, need for written briefs submitted by parties requested by presiding officer;examined the role of oaths, rulings and briefs in adjudicatory proceedings;compared their parallel use in civil proceedings | 1.25 |
| 7-16-03  | Reviewed 10.12(3)(d):The Record:Adjudicatory regulations require recording by electronic or stenographic means; record is part of hearing record;client had right to request copy of hearing record; client permitted to make own record as long as it doesnt interfere with conduct of hearing; reviewed notes taken at 3-7-03 hearing | 0.75 |
| 7-16-03  | Reviewed 10.12(3)(e):Executive Session:reviewed two-tiered system inpreparation for RRB hearing in the future; hearing to be held in executive session unless client requests open meeting;client did not request open meeting;first  tier:RRB must first convene open meeting, with proper notice, second tier:majority roll-call to go into executive session;RRB can reconvene in open session only if it announces before the executive session that it wiil reconvene in open session;examined section for due process and privacy concerns | 0.75 |
| 7-16-03  | General review 10.12(3)(f)Evidence:Read and assessed                                                                                                                                                          |      |

| | | |
|---|---|---|
| | sections 1-5 for compliance with GLC.30A | 0.5 |
| 7-16-03 | Reviewed in detailed (f)(1)General:Standard of Evidence:The kind of evidence on which reasonable persons are accustomed to rely in the conduct of serious affairs; compared this standard with the definition of "substantial evidence"as used in GLc30A and annotated cases | 0.75 |
| 7-16-03 | Reviewed (f)(2):Testimony.Stipulations:Availability of Witnesses provided to all parties;analyzed section for due process;telephone conferences permitted, stipulations use and other evidentiary tools within the discretion of presiding officer;assessed process for availability and reliability | 1.25 |
| 7-16-03 | Reviewed (f)(3):Documentary Evidence:Copies, excerpts and incorporation by reference;discretion of presiding officer conferred by legislation and embodied in regulations | 0.3 |
| 7-16-03 | Reviewed(f)(4):Taking notice of facts: Judicial notice standard same as courts;specialized knowledge of administrative agencies acknowledged by regulations; opportunity to contest facts so noticed | 0.5 |
| 7-16-03 | Review(f((5):Evidence to Be Part of Record:Emphasis on complete record noted; availability of complete record andopen for inspection to parties and authorized representatives; analyzed due process requirement of additional evidence andoportunity for rebuttal evidence;reviewed completeness of records | 0.75 |
| 7-21-03 | Reviewed 10.13:Decision:Examined time frames and notice requirements;written notice required;reviewed standards of M.G.L.c.32 Sec 7; 180 day limit from application to notification; noted time limit used in client's case | 0.75 |
| 7-21-03 | Reviewed 10.13(1)(e): Reviewed documents retirement board required to send to the Commission | 1.25 |
| 7-31-03 | Discussed with associate client's request to PERAC for a copy of medical panel decision of 6-13-03; reviewed medical panel application and notes; also reviewed process after receipt of medical panel decision | 0.75 |
| 8-4-03 | Reviewed letter from Barbara Phillips, General Counsel PERAC dated 7-31-03 sent to me at request of client | 0.3 |
| 8-4-03 | Preliminary review of enclosure sent by PERAC; (1)Memo Re:Review of Medical Panel Certificate (2)Applicant Information-CoverSheet(3)Regional Medical Panel Certificate(4)Certificate For Accidental Disability (5)Certification of Medical Panel Findings(6)Written Narative by Dr. Dominiak,panel chair, (7)signature of | |

|  |  |  |
|---|---|---|
|  | panel members | 0.5 |
| 8-4-03 | Reviewed in detail Memo and Applicant Information:Type of Disability:Accidental;PERAC ID:2003237650;Member Address at time of Medical Panel Decision:Cape Coral,FL Retirement Board:Revere;Occupation:Police; Employer: Chief Terrence Reardon;Regional Medical Panel Physician: Dr. Sherry, Dr. Friedman, Dr. Dominiak; Medicl Panel Speciality:psychiatric; Examination Location:575 Mount Auburn Street, Suite 201, Cambridge, MA 02138 Date:6-13-03; Time:2.30 pm; examined information for accuracy;examined information for compliance with 840 CMR 10.10 | 0.5 |
| 8-4-03 | Reviewed in detail Regional Medical Panel Certificate; examined certificate for name and PERAC ID and type of disability:Accidental; Panel certified membership job description:reviewed job description of Revere Police officer; panel certified that, prior to rendering a medical opinion it received and reviewed medical records identified on the Transmittal of Background information received on medical panel form; affirmed responses to both certifications | 0.75 |
| 8-4-03 | Reviewed in detail Regional medical panel certificate: examined certificate and records not listed on the Transmittal of Background Information To a Regional Medical panel Form, which thepanel reviewed; examined records. | 0.75 |
| 8-4-03 | Reviewed in detail Questions 1 and 2 on the Regional Medical Panel Certificate: Is the Member Mentally or Physically Incapable of performing The Essential Duties of His or Her Job as described in the Current Job Description? Second Question Is Said Incapacity Likely To Be Permanent? reviewed job description, reviewed definition of permanency in statute and rgulations; noted affirmative responses to both questions in this case | 1.5 |
| 8-4-03 | Reviewed Permanency in Certificate;(1)disability is permanent if it will continue for an indefinite period which is likely never to end even though at some remote unknown time recovery is possible;(2)Medical panel must consider disability to be permanent, if it cannot determine when client will no longer be disabled; examined both standards;compared stndards in certificate with lamguage of MGLc32 | 0.75 |
| 8-4-03 | Reviewed exception in Permanency:(1)recovery reasonably certain after a fairly definite time; review standard and noted requirement based on exam of 6-13-03;exclusion of future employment possibilities-no role in decision | 0.5 |
| 8-5-03 | Reviewed Certificate of Accidental Disability;Member& | |

|  |  |  |
|---|---|---|
| | PERAC ID same as Medical Panel Certificate;preliminary review of points A&Bto be considered in response to Question #3 | 0.5 |
| 8-5-03 | Detailed review of Points A&B;examined Point A for pesonal injury and causal connection to disability examined also hazard (hostility) undergone at the RPD during 6 years of employment | 0.5 |
| 8-5-03 | Reviewed part B: Examined standard used in part B; whether it more likely than not" is the standard;examined the personal injury, medical history, hazard undergone and client disability | 0.5 |
| 8-5-03 | Reviewed "basis of conclusion"; evidence met ad exceeded the standard and confimed causality | 0.25 |
| 8-5-03 | Noted Aggravation of Pre-Existing condition standard; if hazard or accident accelerated personal injury causation can still be established;examined principle of taking the client as you find him or her | 0.5 |
| 8-5-03 | Reviewed certification of majority opinion section of report; unanimous certification by all three physicians;examined certification that the findings and the narrative both express a professional medical opinion which was arrived at in a manner that was professional and independent;noted requirement to be free of undue influence;examined certification for complaince with MGLc30A, no minority opinion reported; no employer's physician reported | 1.25 |
| 8-6-03 | Preliminary review of narrative;Sections:History of Illness; Current Symptoms,Past Medical History;Medical Record Review, Examination,Relevant Personal and Family History, Diagnosis, Prognosis and Conclusions;signed by panel chair,Dr. Dominiak as required by 10.10(9) | 0.75 |
| 8-6-03 | Reviewed History of Illness section of Narrative; read first paragraph for age:30 years, length of service 6 years, nature of disability applied for:Accidental, basis for disability (PTSD), Depression and Anxiety, also related symptoms, IBS, migraine headaches and panic attacks, compared medical notes and history | 0.5 |
| 8-6-03 | Reviewed second paragraph;no past psychiatric history prior to work at RPD; persistent abusive behavior, discrimination and threatening behavior; narrative noted supervisors openly questioning prisoner about sexual relationship with client;use of graphic language and details noted;client's experience of crude, abusive, humiliating hurtful and invasive treatment;narrative noted tire-slashing and bullet-hole in bumper incidents;evidence of causal connection exceed the "more likely than not standard". | 1.25 |

| 8-6-03 | Reviewed third paragraph; narrative developed causal relationship between experiences in second paragaph and symptoms in this paragraph; anxiety, fear of retaliation from other police officers, genuine safety concerns leading her to move out of state, panic attacks, uncontrolled crying, depressed mood and hopelessness; narrative notes desire to return to work but unable to do so;also noted affirming report from Onsite Academy; used EMDR as treatment for PTSD | 0.75 |
|---|---|---|
| 8-6-03 | Reviewed fourth paragraph of narrative; additional symptoms loss of appetite, gastrointestinal discomfort and control; prescriptions described Zoloft, Tradazone for depression, anxiety and insomnia. | 0.5 |
| 8-6-03 | Reviewed summary of History:(1)client felt she could not perform safely because of anxiety and depression; (2)because of departmental betrayal she could not trust that she would be given adequate back-up when needed, reviewed cleint's notes and instances of departmental betrayal and hostility particularly by Lt. Foster | 0.75 |
| 8-7-03 | Reviewed Current Symptoms:No alcohol use; symptoms of anxiety, sleep disturbance, fearfulness for personal safety and safety of family;avoidance of public places and police related activities and shows; noted many current symptoms persist from prior experiences;migraine headaches and IBS persist;examined earlier symptoms | 1.5 |
| 8-7-03 | Reviewed documents from Dr. Keroack used by the panel; noted"complex PTSD, repetitive trauma of harassment" stated by Dr. Keroack, reinforced by Dr.Rudman; noted client's inability to return to work as a result of these symptoms;examined related documents | 1.25 |
| 8-7-03 | Reviewed Relevant Personal&Family History: Non-contributory; analyzed causation;analysis of the singular role of RPD in the causation of client's symptoms | 0.5 |
| 8-7-03 | Reviewed Diagnosis:Reviewed DSM IV ITR for definition of Anxiety Disorder NOS with features of PTSD;review of manual;also reviewed medical opinions of Dr. Keroack and Dr. Rudman; compared medical reports with criteria in DSM IV | 1.5 |
| 8-11-03 | Reviewed Prognosis:Noted client improvement away from environment of RPD;noted symptoms that will persist-sleep disturbance, irrational fears,avoidance and emotional numbing;symptoms will persist,made particular note of the prognosis that symptoms can be exacerbated by police environment;examined prognosis of permanency;inability to say when symptoms will end; review applicable | |

|  |  |  |
|---|---|---|
|  | regulations and statute on permanency | 0.75 |
| 8-11-03 | Preliminary review of Conclusions: 3 elements:Disability, Permanence,Causality;examined conclusions on all three headings,personal injury, disability and causation | 0.3 |
| 8-11-03 | Detailed review of Disability, analyzed summary of narrative; unanimous decision of 3 doctors;client incapable of perform- ing essential duties of job description;reason:Anxiety Disor- derNOS with features of PTSD and panic disorder;public safety concern;noted the particular importance of symptoms that interfere with her capacity to react safely in emergency situations; also noted departmental betrayal that resulted in her inability to trust fellow officers; reviewed list of essential duties and DSM IV-for criteria of PTSD | 1.5 |
| 8-11-03 | Review of Permanence: analyzed the conclusion of perma- nence;reviewed statute and regulations for standards that required end of symptoms as unknown or indefinite; examined conclusion that symptoms are likely to persist for an indefinite peiod of time even with continued treatment. | 0.75 |
| 8-11-03 | Review of Causality: Medical panel found no causality in client's clinical history;examined the causal basis provided by the panel; the client's disability was caused  by the injury she sustained and the hazard(hostile environment)she underwent during her employment;noted panel removed family history as cause of personal injury. | 0.75 |
| 8-11-03 | Final review of panel report, personal and PERAC ID, identifying details of report, panel certificate, transmittal questions 1&2 defining disability,permanency,personal injury,pre-existing condition, history of Illness, current symptoms,past medical history,medical record review, examined relevant personal and family history, diagnosis, prognosis and conclusion;reviewed 840 CMR 10:00 applicable sections | 0.75 |
| 8-12-03 | Reviewed MGLc 258 Sec 4 and Notice of Claim filed with the City of Revere in February 2003;reviewed matter for expiration of 180 day prerequisite for filing suit | 0.5 |
| 8-12-03 | Preliminary review of Notice of Claim, DALA decision, medical panel decision;evaluated state statutes, evaluated federal statutes;analyzed state statutes, analyzed the federal statutes, tried to determine the theories of liability available under state statutes and case law; also tried to determine the theories of liability available under federal statutes and case law; reviewed theories of recovery under state law and theories of recovery under federal law; analyzed advantage of pleading state statute and remedies only | 0.5 |
|  |  | 1.5 |

| 8-12-03 | Reviewed medical panel decision and procedural prerequisites for action by RRB;reviewed 10.11(4) for client's right to hearing; medical panel permitted retirement for disability claimed; retirement board has power to determine whether or not to approve application examined time requirements of hearing;board may, on its own hold a hearing; board must hold hearing upon request by client; examined client's options in the event that the RRB does not voluntarily hold a hearing on her disability retirement. | 1.25 |
|---|---|---|
| 8-12-03 | Reviewed 10.11(2) for further options including clarification that could be requested by board; such requests to be addressed to the Commission; assessed impact of request and delay on client's case, noted RRB's failure to notify client in the past | 0.5 |
| 8-13-03 | Reviewed 10.11 in its entirety; evaluated in detail the board's duty to approve or deny the Involuntary Application filed by Chief Reardon on behalf of the client;noted 10.11(4); compulsory hearing to be held by RRB must be conducted in accordance with 840 CMR 10.12 | 0.75 |
| 8-13-03 | Reviewed Notice of Claim; reviewed draft of complaint; reviewed state statutes MGLc 151B Sec4; c. 214 Sec 1 c.12 Sec 11I, and c. 258 Sec.4 | 0.75 |
| 8-13-03 | Further conference with associate on the effects of filing the client's case in Massachusetts Superior court based upon state remedies only | 0.5 |
| 8-13-03 | Conference with associate on the effects of adding Title VII; assessing the effects of moving case to federal court or the case being moved to federal court | 0.5 |
| 8-13-03 | Reviewed client's 21 page notes of events at the RPD; reviewed defendant's selected; reviewed notes for selection of additional defendants and possible removal of some named defendants | 0.5 |
| 8-13-03 | Identified City of Revere, City of Revere Police Department Thomas Ambrosino, present Mayor, Terrence Reardon present Chief of Police as defendants; also selected Bernard Foster,Salvatore Santoro, Roy Colannino,Frederick Roland, Thomas Doherty, John Nelson, James Russo, Michael Murphy and Steven Ford as defendants-supervisors upon whom the City had conferred authority;reviewed periods of supervision and the tenure of the client's employment | 1.25 |
| 8-14-03 | Reviewed Satisfaction of Prerequisites;prepared content of paragraph in a manner that would survive any defendant's | |

|         |                                                                                                                                                                                                                                                                                                                 |      |
|---------|-----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|------|
|         | motion to dismiss for failure to comply with c258 Sec 4;requirement of prerequisites, client's MCAD complaint, Notice of Claim, and client's satisfaction of these prerequisites all reviewed for compliance                                                                                                      | 0.75 |
| 8-14-03 | Reviewed MGLc151B Sec 4 and CollegeTown;examined client's right to workplace free from hostility, sexual harassment and other workplace harms; reviewed the nondelegable special relationship between employer and employer established by CollegeTown, incorporated into Applicable Law legal conclusion of CollegeTown; examined "strict liability"established by CollegeTown and evaluated it as basis for this suit | 0.75 |
| 8-14-03 | Reviewed MGLc 30A;examined the impact of administrative law on the DALA decision, the decision of the medical panel and the statutory deference to the findings of administrative decisions                                                                                                                       | 0.5  |
| 8-14-03 | Reviewed the impact of causality, disability and the hostile environment established by the administrative decisions of DALA on 3-7-03 and the medical panel on 6-13-03                                                                                                                                           | 0.5  |
| 8-15-03 | Reviewed MCAD complaint of Kathy Fish; reviewed experiences of hostile work environment by RPD reviewed parking ticket controversy with Lt. Foster; reviewed total number of female officers hired with her                                                                                                      | 0.5  |
| 8-15-03 | Reviewed draft of paragraph 14; amended paragraph 14 to include administrative determinations of DALA and PERAC;reviewed findings of fact, administrative standards used by the medical panel to support its findings                                                                                             | 0.75 |
| 8-15-03 | Reviewed principles of constructive discharge and their applicability in state law                                                                                                                                                                                                                               | 0.5  |
| 8-15-03 | Reviewed response of RPD to Kathy Fish's MCAD complaint; noted clearly intolerable conditions and also noted denials by RPD                                                                                                                                                                                       | 0.75 |
| 8-18-03 | Read comprehensive 21 page record of events prepared by client;detailed examination of hostile acts that involve Lt Foster;prepared new list of dates and events                                                                                                                                                 | 1.5  |
| 8-18-03 | Examined events of July 5, 1997 for the purpose of revising paragraph 18;reviewed the disparate treatment implicit in Lt Foster's treatment of client                                                                                                                                                            | 0.5  |
| 8-18-03 | Examined events of August 24, 1997;reviewed previous drafts and notes on paragtraph 19; reviewed client's personal record of the events of paragraph 19;examined the hostility clearly evident in the outbursts of Lt Foster                                                                                      | 0.75 |

| 8-18-03 | Examined the client's notes and the recorded stress and anxiety she experienced because of Lt Foster's hostility; examined client's medical history for the effects of stress and anxiety | 0.75 |
|---|---|---|
| 8-18-03 | Reviewed prior drafts of paragraphs 17 through 21;reviewed bonafide occupational qualifications" as defined by statute caselaw and as applied to the client by Lt. Foster;prepared revised drafts of paragraphs 17 through 21 | 1.5 |
| 8-18-03 | Reread paragraphs and checked quotations;used client's recorded notes as basis of comparison | 0.5 |
| 8-19-03 | Reviewed prior drafts of paragraph 22;checked client's notes for particulars of LT Foster's punishment program; examined events on or about August 26, 1997, examined the mechanics of Lt Foster's punishment program;noted the barriers to participation and the denial of opportunity to interact with and learn from other officers-this barrier created by Lt. Foster | 1.5 |
| 8-19-03 | Reviewed prior draft of paragraph 23;reviewed client's medical records and IBS diagnosis; reviewed client's notes for the details of her survival strategy;prepared revised draft of paragraph 23 | 0.75 |
| 8-19-03 | Revised paragraphs 24 and 25; reviewed client's notes for the events of 9-2-1997 and client's attempts to seek relief; reviewed details of the hostility expressed by Lts Foster and Ford;also reviewed the confrontation and the tense atmosphere created by the meeting that Lt Foster called | 1.25 |
| 8-19-03 | Reviewed client's notes and identified other humiliating remarks that Lt Foster addressed to client;in particular, noted Lt Foster's damaging but unsubstantiated accusation of drug use;examined "tangible job detriment" such an accusation by a supervisor, even if unsubstantiated,could have on the clients career; revised paragraph 26 | 1.25 |
| 8-20-03 | Reviewed structure of RPD;noted Capt Colannino, who was Chief for a while, was the superior of Lt.Foster; reviewed cleint's attempts to end the professional isolation caused by the punishment program; also reviewed client's attempts to remove obstacles to her full participation in the RPD; revised paragraph 27 | 0.75 |
| 8-20-03 | Reviewed events of October 12, 1997;reviewed client's notes;noted client's continuing struggle to achieve participation in the workplace; revised  28 and 29 | 0.5 |
| 8-20-03 | Reviewed client's notes on events of August 4, 1999; reviewed details of confrontation created by LT Foster; | |

|   | noted overt hostility by Lt Foster; also noted public nature of this particular expression of his hostile; noted shift of hostility from private meetings to public statements | 0.75 |
|---|---|---|
| 8-20-03 | Reviewed client's notes for events of August 12, 1999; reviewed public nature of Lt foster's efforts to isolate the client within the Department;reviewed his actions as a supervisor, for the stigma they created;also examined the public punishment and the deliberate denial of full participation in the work of the RPD;revised paragraph 31 | 0.5 |
| 8-20-03 | Examined events of August 13, 1999; compared events of August 13, 1999 with July 5, 1997;examined the continuing personal conflict over routine issues like the radio room and the department's television; revised paragraph 31;noted Lt Foster's use of his supervisory powers to deny client full participation in the RPD;also noted overt acts of disparate treatment | 1.1 |
| 8-21-03 | Examined the events that involve Lt Murphy;reviewed client's notes;noted Lt Murphy's condescending remark | 0.25 |
| 8-21-03 | Reviewed client's notes, departments reports and identified incidents that involve Lt Santoro | 0.5 |
| 8-21-03 | Reviewed events of 12-11-98; revised paragraphs 35 to 42 | 0.5 |
| 8-21-03 | Reviewed client's noteson John Barker;also notes on Christopher Daley;noted conversation between client supervisor and prisoners;reviewed in detail supervisor's questions about client having sexual intercourse with prisoners | 0.75 |
| 8-21-03 | Review client's notes and records for client's emotional reaction to the devastating experience; also reviewed client's notes for her use of the internal procedures at RPD; client reported incidents to Capts Roland and Chaulk | 0.75 |
| 8-21-03 | Revised paragraphs 35 to 42 for factual details, emotional responses of client, and the department's destruction of client's effectiveness | 0.5 |
| 8-22-03 | Checked client's notes for the events described in paragraphs 43 to 47;noted Lt Santoro's repeated remarks about his penis; noted client's efforts to get Santoro to take action with no success; noted department's indifference to client and other female officers | 0.5 |
| 8-22-03 | Detailed review of the events that precipitated the client's constructive discharge from the RPD; compared the sexual innuendo of the events of March 2001 with the events | |

|  | of December 1998;reviewed the prisoners statements that the dedective upstairs just asked if he ever screwed the client;noted the prisoner's observation that RPD seemed preoccupied with the sex life of the client;noted client's use of the internal reporting procedures; also noted emotional impact on client; her inability to finish her shift; her continued inability to perform the duties on the job | 1.5 |
|---|---|---|
| 8-25-03 | Reviewed client's notes;reviewed command structure of RPD; noted Roy Colannino was Chief, for a period of time; Capt Roland was a supervisor; examined the client's notes for actions that Chief Colannino and Capt Roland undertook to change the hostile environment that injured the client; client's notes confirm absence of actions and deliberate in difference;the notes confirm the positions in the RPD stated in paragraph 48 | 0.75 |
| 8-25-03 | Reviewed application for benefits, the denial, the City's offer for leave without pay;noted client's use of the internal reporting system despite department's inaction;revised paragraphs 49 to 51 | 0.75 |
| 8-25-03 | Reviewed client's notes; reviewed Department's report of December 1998 and January 1999;focused on the conduct of Sgt Doherty;noted use of double standard;reviewed the events of April 18,1997 and the manner in which he stigmatized female officers Curcio,Fish,and Malatesta;also reviewed his misogynistic comments about a particular female sports commentator;noted Sgt Doherty's contribution to the hostility of the RPD;made revisions | 1.5 |
| 8-25-03 | Reviewed Sgt Nelson's use of pornography and the Continental Airlines case when jury awarded damages to female airline pilot | 0.5 |
| 8-26-03 | Reviewed client's notes, department's memorandum and other documents that relate to the tenure of James Russo as Chief of Police; reviewed department report directed to Chief Russo form Capts Roland & Chaulk dated December 1998;also reviewed  department report dated January 1999 directed to Chief Russo from Capts Roland and Chaulk; noted that the hostile environment that constructively discharged the client persisted despite the fact that the Chief received notice of the hostility of the environment | 1.5 |
| 8-26-03 | Reviewed Citizens Academy incident;noted the Chief's deliberate snub of Officer Mangino;reviewed Chief's remark about "These are not the good old days when we didn't have to hire females; examined implication of Chief's comments, his actions on the reports he received;his deliberate indifference to the experiences of the client and other female police officers;selected quotes and revised |  |

| | | |
|---|---|---|
| | paragraphs | 0.75 |
| 8-26-03 | Noted Chief Russo's "WIC meeting" and "crocheting" revised paragraphs on Chief Russo | 0.75 |
| 8-27-03 | Preliminary review of paragraphs 70 through 79 and attachments | 0.5 |
| 8-27-03 | Noted indifference of department in that prior to April 1999 it had no maternity leave policy;reviewed MCAD complaint of Kathy Fish; reviewed MCAD complaint of client;analyzed department's responses to both complaints; the department admitts that it does not have and does not need to a maternity leave policy; | 0.75 |
| 8-27-03 | Included historical absence of both maternity leave and sexual harassment policies;revised relevant paragraphs | 0.5 |
| 8-27-03 | Reviewed details of January 14, 1999 report to Chief Russo; identified instances of hostile conduct toward female officers identified fear of reprisal, intimidation and fear of punishment as experiences common to the female officers of RPD; revised paragraphs 70,71, and 72 | 1.5 |
| 8-27-03 | Reviewed the notes and reports of the incident in which police cruisers assigned to female officers were vandalized; identified fear for physical safety as the prevailing emotion after the uninvestigated incident of vandalism; fear for physical safety also identified by medical panel and DALA as a cause of disability; | 0.75 |
| 8-27-03 | Reviewed report on "underwear incident"; reviewed details of female leopard patterned underwear on bulletin board for several days; not investigation; similar response to the vandalism incident;embarassment and humiliation noted as client's response to the latter incident | 0.5 |
| 8-27-03 | Identified client's last paycheck from RPD-3-13-01; reviewed DALA report;reviewed medical panel report; reviewed RRB's recalcitrance and failure to confirm or deny client's benefits despite state agency decisions; inaction deprives client of her both her benefits and her right to appeal; identified economic hardship on the client because of RRB's failure to confirm or deny; compared barriers created by her supervisors at the RPD to the barriers the RRB by its refusal to act on the client's application | 1.5 |
| 8-27-03 | Noted client had filed complaint with MCAD and satisfied prerequisite for filing civil action | 0.25 |
| 8-28-03 | Summary of case for support of client's Count 1 Hostile Work Environment/Sexual Harassment; | |

| | | |
|---|---|---|
| | reviewed paragraphs 12 through 79 and paragraphs 104 through 107 which involves both parties | 0.5 |
| 8-28-03 | Reviewed and identified DALA decision of 3-7-03 and medical panel decision of 7-28-03 as Exhibits A&B; examined exhibits for their collateral estoppel and res judicata value as administrative decisions on the issues of injury and causation | 0.5 |
| 8-28-03 | Reviewed and identified RPD Sexual Harassment Report dated 12-21-98 as Exhibit C; reviewed and identified RPD Report dated 1-14-99 as Exhibit D; | 0.5 |
| 8-28-03 | Reviewed and identified both underwear incident reports as Exhibits E & F | 0.25 |
| 8-28-03 | Reviewed and identified Altered Booking Photograph of African American with skirt and spear; examined Exhibit for racially offensive content | 0.25 |
| 8-29-03 | Summary of facts to support claim of constructive dis-charge-Count II; selected Exhibits A&B in support of intolerable conditions,disability and causation;reviewed state law and theory of strict liability;reviewed applicable state statutes | 0.75 |
| 8-29-03 | Summary of facts to support claim of disparate treat-ment-Count III;selected Exhibits A&B in support of the impact of disparate treatment, disability and causation; reviewed applicable state statutes;MGLc.151B Sec 4(1) | 0.75 |
| 8-29-03 | Summary of facts to support claim of infliction of emotional distress;reviewed prima facie elements of emotional distress;selected conduct of Lt.Santoro, Sgt Dohery and the deliberate indifference of the City of Revere as demonstrations of extreme and outrageous conduct; also selected the findings of fact made by DALA and PERAC in support of this count | 0.75 |
| 8-29-03 | Reviewed all four (4) counts for applicability of federal statutes;selected 42 USC 2000e-2 Title VII as applicable to the facts of this case;compared MGLc.151B Sec 4 with federal statute;also reviewed Ellerth &Faragher; compared the federal-no employer defense-strict liability holding with holding of CollegeTown by the Mass. SJC | 1.5 |
| 9-2-03 | Amended Counts 1 through 4 to add federal statutes; also amended applicable law to add federal statutes and US Supreme Court cases Ellerth and Faragher and Suders v Easton appealed to the US Supreme Court | 1.5 |
| 9-2-03 | Researched Kerr Selgas v Am Airlines(97):issue:front pay; front pay is allowed under Title VII;client is entitle to front | |

|          |                                                                                                                                                                                                                                                       |      |
|----------|-------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|------|
|          | pay;reinstatement is allowed also but not an option for this client                                                                                                                                                                                    | 1.5  |
| 9-2-03   | Researched Brown v Scott Paper:Issue-supervisors who discriminate held personally liable under State of Washington law;CollegeTown held employers, not supervisors liable;compared strict liability of CollegeTown                                      | 0.75 |
| 9-2-03   | Researched Pollard v dePont: issue-front pay, back pay, reinstatement, compensatory damages and punitive damages under Title VII;front pay, back pay, compenstory damages and punitive damages applicable to all four(4) counts of client's complaint   | 0.75 |
| 9-2-03   | Analysis of theories of recovery:front pay-no cap;back pay-any period not included in disability award;compensatory damages-no cap, punitive damages-discretion of judge or jury                                                                        | 0.5  |
| 9-2-03   | Compared Pollard's experiences at duPont with client's experiences at RPD; hostile work environment in Pollard violated Title VII; hostile environment at RPD violated TitleVII hostile environment in Pollard resulted in medical leave of absence for psychological assistance;hostile environment RPD caused client's PTSD and forced her departure | 1.5  |
| 9-2-03   | Compared court's description of hostile environment in Pollard to DALA and PERAC description of hostile environment at RPD; Pollard court described a wretched indifference to an employee who was slowly drowning in an environment that was completely unacceptable;the employer sat and watched;DALA and PERAC findings support the conclusion of wretched indifference by the RPD while client was drowing in an an environment that was unacceptable and caused her disability | 1.5  |
| 9-3-03   | Researched Article on Front Pay Awards in Title VII Discrimination Cases by Laura Licht                                                                                                                                                                 | 1.1  |
| 9-3-03   | Researched Article on Front Pay by Angela H. Myers; analyzed Supreme Court's interpretation of 1991 statute; Court removed interpretation that placed cap on front pay; Pollard allows damages requested in this case                                    | 1.5  |
| 9-3-03   | Researched Article on the appeal of Suders v Easton; constructive discharge functional equivalent of actual termination                                                                                                                                | 0.75 |
| 9-3-03   | Researched damage awards in Glendale, Ca case-$3.5 Million; damages award against UPS in Iowa $500,000 in compensatory, $80.2 Million in punitive damages;$875,000 in Blakey v Continental in pornography case; reviewed client damage claims and made comparison with actual |      |

|  |  | awards | 1.5 |
|---|---|---|---|
| 9-3-03 | Read Article:Employers Can Be Held Liable For Sexual Harassment That Takes Place Without Their Knowledge by D.M. Moschos, Esq. | | 0.5 |
| 9-4-03 | Analyzed the two US Supreme Court decisions Ellerth & Faragher; analyzed Moschos' premise that employer can be strictly liable even in the absence of knowledge; the role of the supervisor is parallel to the role of the supervisor in CollegeTown | | 0.5 |
| 9-4-03 | Analysis of strict liability both in Mass and under federal law; employer is liable in all circumstances for the acts committed by those on whom the employer confers authority | | 0.5 |
| 9-4-03 | Analyzed the impact of the federal v the state statute of limitations; statute is six months in Massachusetts;client filed with the MCAD within that time period;300 days under federal law;one filing serves both purposes;examined how statute of limitations and prerequisites affect the filing of client's civil action. | | 1.5 |
| 9-4-03 | Examined the parameters of employer liability established by US Supreme Court as Moschos interprets them; employers automatically liable for sexual harassment by supervisors in all cases that involve "tangible employment action";tangible employment action defined as discharge, demotion, undesireable reassignment; | | 0.75 |
| 9-4-03 | Analyzed the facts for evidence of the employer defenses described by Moschos;(1)no policy prohibiting sexual harassment prior to April 1, 1999;(2)no evidence of appropriate supervisor training;(3)no complaint procedure available to harassed employee prior to April 1, 1999; (4)wretched indifference to the enforcement of policy and procedures after 1999. | | 1.5 |
| 9-5-03 | Examined Moschos' view of the impact of Mass Law; CollegeTown reinforces and explains strict liability in Mass; SJC clarified legislative intent;legislature intended that an employer be liable for discrimination committed by those upon whom it conferred authority | | 0.75 |
| 9-5-03 | Moschos examined legislative rationale;legislature intended to remove discriminatory barriers to full participation in the workforce;supervisors who create a sexually harassing work environment present a serious barrier to that goal; harassment by a supervisor stigmatizes an employee and appears to reflect an attitude of the employer that the employee is not considered equal to other employees..;reviewed client's notes and drafted | | |

|  | complaint for hostile environment created by Lt Foster | 1.5 |

9-5-03    Reviewed Moschos' analysis of the concept of "authority
conferred"; co-workers, outsiders can create sexual harass-
ment/hostile work environment; it is the authority conferred
by the employer that gives the supervisor the power to im
pose sexual harassment/hostile work environment on the
employee;reviewed the revised ordinances of the City of
Revere;for the appointment process of the Chief of Police;
reviewed the Plan B Charter for the powers of the mayor,
the city council;also reviewed their responsibility for the
Chief and the Police Department                                          1.5

9-8-03    Examined holding of Gonsalves v City of New Bedford, 939
F.Supp.915 (1996); the relevant policymakers for purposes
of determining whether to impose municipal liability were
city council and mayor; analysis of the basis of municipal
liability;(1)if policymakers were deliberately indifferent;(2)if
their indifference caused constitutional violations; analyzed
the elements of indifference:(1)if police chief ignored
complaints;(2)if he dismissed complaints that were
meritorious; examined facts of case; prior to April 1, 1999
no policy or mechanism existed for hearing or resolving
complaints; subsequent complaints were opposed and
denied;MCAD complaints opposed; request for Sec 111F
bebefits denied;disability application denied and resisted
despite PERAC decision;applied Gonsalves criteria to find
municipal liability of the City of Revere                                 1.5

9-8-03    Analyzed defendants in Gonsalves for the purpose of
comparison with the client and her codefendant;Gonsalves
defendants were the following:City of New Bedford,municipal
ity, John Bullard, Mayor, Richard Benoit, Chief of Police and
seven named officers; defendants in this case are the
following:City of Revere,municipality;Thomas Ambrosino,
Mayor, City of Revere Police Department, Thomas Reardon
Chief, James Russo, former chief, Roy Colannino, former
Acting chief, and seven other named officers; Gonsalves
involved a civilian; this case involves fellow police officers;
the general principles of Gonsalves apply to this case;                   0.75

9-8-03    Analysis of the municipal liability phase; the first issue is
identifying the policymakers:court concluded in Gonsalves
that the Plan B charter and the Rules & Regulations provide
that "the Mayor shall be the executive head and general
directing authority in control and management of the New
Bedford Police Department;analyzed Plan B for the City
of Revere, also examined the regulations; compared
statutory and regulatory structure for establishing municipal
liability for the City of Revere                                          1.5

9-8-03    Analyzed court's observation in Gonsalves that the mayor
failed to investigate;mayor in gonsalves did not review

whether investigations were being conducted thoroughly and impartially; mayor did not review whether Chief was reporting all violations to him; the city council also did not review matters; comparative analysis- mayor of Revere; Mayor admitted to client and other officers that he did not review whether investigations were being conducted thoroughly and impartially;mayor did not review whether police chief was reporting all violations to him; the city council did not review matters;reviewed comparison and concluded that minicipal liability can be established for the City of Revere                                                              1.5

9-8-03     Analyzed the final step for establishing municipal liability; (1)deliberate indufference established earlier;(2)causation estabished by medical and psychiatric evidence and confirmed by DALA & PERAC;client's injury caused by the deliberate indifference of municipality                    0.5

9-8-03     Reviewed client's notes under the date January 7, 1999; analyzed details of the meeting; noted that the Maternity Leave Policy was raised at that meeting; read department's response to Kathy Fish's complaint;no policy neded because the department had its own way of handling pregnancies and family leave issues                                  0.5

9-9-03     Read Kathy Fish's MCAD complaint and department's response; read client's notes about Bernadette (Foster) Downing,daughter of Lt.Foster; she became pregnant while a police officer; Commonwealth of Mass inspected facility; the quality of the air and general environment was not unsafe for a pregnant person; preliminary review of report; noted individual and personal maternity leave created for Bernadette Foster; noted the following in client's notes: (1)Bernadette was allowed to stay at her parents house in Revere instead of reporting to the office;(2)she was allowed to report to Revere High School instead of police station; noted standard operating procedure allowed to avoid adopting maternity leave policy.                               1.5

9-9-03     Reviewed client's notes; selected events dated December 6, 1999;client spoke with Roy  Colannino about her personal well-being; client explained that harassment had become intolerable; she explained she could not sleep, had stomach problems-IBS and migraine headaches;chief told her war stories but took no action to stop the hostility and harassment                                                  0.75

9-9-03     Reviewed client's notes; client visited Dr. Barry at the suggestion of Chief Colannino;Chief like Mayor directed 3rd client to 3rd parties;Chief sent her to DR. Barry;Mayor sent her to MCAD; neither party took action to end the harass ment                                                              0.5

| | | |
|---|---|---|
| 9-10-03 | Reviewed client's notes on events of 2-28-00; client referred to Incident number:233983-Underwear Incident; noted client observation that Paul Crevoiserat made long computer entry; Crevoiserat observed "underwear" 2 days earlier than Lt Foster claims to have seen it on the bulletin board; noted Lt Foster's report possibly inaccurate. | 0.5 |
| 9-10-03 | Reviewed client's notes for June 1998; client required by supervisors Sgt Goodwin & Lt Santoro to go for a ride; client was informed that Capt Chaulk and Colannino seem to think something unprofessional is going on between the 3 people in the car; Coalnnino had called Goodwin to his residence to speak to him about the matter; recorded client's anger and embarassment at rumors and sexual innuendo | 0.5 |
| 9-22-03 | Final revisions of complaint;checked sections on Parties jurisdiction and named plaintiffs | 0.5 |
| 9-22-03 | Checked and verified all defendants, municipal defendants, policymakers,Mayor, City of Revere, Chief of Police, Terrence Reardon, supervisors, Foster,Ford,Santoro,Roland Doherty,Nelson,Russo,and Murphy. | 0.5 |
| 9-22-03 | Checked prerequisites: service of notice of claim and its 180-day requirement;MCAD complaint filed for more than 180 days prior to filing;all prerequisites met | 0.5 |
| 9-22-03 | Checked section on Applicable state law and applicable federal law; checked cases cited in support of strict liability;CollegeTown-state case selected;Ellerth & Faragher federal case selected; also checked Suders v Easton as federal case; prepared section for filing | 0.75 |
| 9-22-03 | Checked the Background section; reviewed client's date of employment, date of termination,experience of hostility, denial of full participation in RPD,administrative decisions and client's disability based on PTSD | 0.75 |
| 9-22-03 | Read John McElhinney v Inhabittants of The Town of Tisbury et al. 565 F. Supp. 959 (1983);preliminary review of Sec 111F benefits | 0.75 |
| 9-22-03 | Detailed review of "parity" for psychological injury in Massachusetts; reviewed Begin's case where the SJC ruled that Begin's "acute anxiety state" did not constitute compensable injury; 1968 case remained law until 1978 | 1.5 |
| 9-23-03 | Preliminary review of Fitzgibbons and Albanese cases; SJC recognizes mental or emotional disorder as entiled to compensation;compared 1978 and 1979 cases with Treatise relied upon by the City of Revere in recent hearings; City's position based on overruled cases and statutes. | 1.5 |

| | | |
|---|---|---|
| 9-23-03 | Detailed review of Fitzgibbons Case,1978,374 Mass 633; client's case is not Sec 111F; holding that if employee is incapacitated by a mental or emotional disorder causally related to a series of specific stressful work-related incidents, employee is entitled to compensation; SJC recognized "mental and emotional disorder" as having parity with physical injuries;analysis of recognition of PTSD as compensable workplace injury under Mass law. | 1.5 |
| 9-23-03 | Detailed review of Albanese's Case;1979,378 Mass 14; re-viewed client's case and denial of benefits in light of Fitzgibbons and Albanese; reviewed client's DALA and PERAC cases;reviewed position taken by the City during the DALA and PERAC hearings;examined the validity of client's position as confirmed by medical and psychiatric evidence and findings of DALA and PERAC;examined client's position for accordance with Fitzgibbons and Albanese | 1.5 |
| 9-23-03 | Detailed review of the hostile actions of LT Foster in prepa-ration for filing verified complaint;specifically reviewed the events of August 10, 1999; the tension created by Lt Foster and Sgt Millerick was obvious; client wanted union representation because of repeated instances of hostility; LtFoster and client had exchanges about the punishment program; the negative statements that Lt Foster made in public about the client was discussed; analyzed notes for the tension and the hostility that are clearly evident in Lt Foster's accusations; Lt Foster's public statements and actions were undermining client in the department;despite reports and complaints, client recieved no relief; Lt Foster's practice of restricting the client's outside assignments; placing her in isolated assignments and restricting her interaction with other members of the department; analyzed his use of supervisory power to create an environment hostile to the client | 1.5 |
| 9-24-03 | Reviewed medical records from MGH and other providers that confirm IBS, migraine headaches, sleeplessness, loss of appetite; also reviewed emotional impact on hostility on client | 0.5 |
| 9-24-03 | Reviewed incidents of September 2, 1997;observed client's attempt to get relief from the hostile environment; noted distinct lack of success; noted hostility and intimidation by Lt Foster's use of unsubstantiated drug accusations | 0.75 |
| 9-24-03 | Reviewed incidents of August 4, 1999, observed Lt. Foster public treatment of client in a hostile manner;noted Lt Foster's use of his supervisory powers and position to stigmatize the client's workplace participation; the source of his prolonged hostility do not appear job-related | 0.75 |

| | | |
|---|---|---|
| 9-25-03 | Reviewed incident of August 10, 1999; observed Lt Foster's change of conduct after client made decision to file MCAD complaint; prior to her statement the Chief was providing no corrective to Lt Foster's abusive conduct; Lt Foster appears, by this action, to know that he denied the client the right to participate fully in her workplace; this is the conduct that the legislature intended to discourage | 0.75 |
| 9-25-03 | Reviewed incident of August 24, 1999;client had conversation with Capt Roland; she reported to him the hostile actions of Lt Foster; analyzed that report and Lt Foster's use of his supervisory powers to reprimand client unfairly and to try to intimidate her;Capt Roland prevented abuse in this instance;noted Lt Foster's continued hostility. | 1.25 |
| 9-25-03 | Reviewed incident of August 13, 1999; observed that client reported to the Chief  the hostile actions of Lt Foster; client reported how Lt Foster used his supervisory powers over the department television as an instrument of personal hostility toward the client;noted that the client's meritorious complaint to the department and to the Chief was ignored. | 0.75 |
| 9-25-03 | Reviewed incident of vandalism at IHOP;client and fellow female officer reported incident;no investigation of meritorious complaint; observed destruction of department property, safety issues and no investigation or response by the department | 0.75 |
| 9-26-03 | Reviewed section of complaint on Lt Santoro and compared content of paragraphs with client's notes;reviewed paragraph 34 on Lt Murphy and paragraphs 35 to 47. | 0.5 |
| 9-26-03 | Reviewed paragraphs 52 to 61; compared content of paragraphs with clients notes and conversations; Sgt Doherty was supervisor; reviewed incident with Officers Curcio, Fish and Malatesta; analyzed Sgt Doherty's use of his supervisory powers to stigmatize and demean female officers; reviewed his personal use of obscenity and his double standard as it applied to female officers. | 0.75 |
| 9-26-03 | Reviewed paragraphs 48 to 51; compared content of paragraphs with clients notes;both Chief Colannino and Capt Roalnd were supervisors who were aware of the hostility directed at client; paragraphs also record notice to Mayor | 0.5 |
| 9-26-03 | Reviewed paragraphs 62 to 64;compared content of paragraphs with client's notes and conversations about Sgt Nelsons use of pornography; reviewed the Continental Airlines case for award based on male use of pornography to harass female pilot | 0.5 |

| 9-26-03 | Reviewed paragraphs 65 to 69;compared content of para- graphs with client's notes; also noted actions and inaction by Chief Russo not included in paragraphs 65 to 69; reviewed reports to Chief Russo dated December 1998 and January 1999;meritorious complaints ignored | 0.75 |
|---|---|---|
| 9-26-03 | Reviewed paragraphs 70 to 79; reviewed report of January 1999 meeting addressed to Chief  Russo; report to be attached as Exhibit; reviewed underwear reports; compared Lt Foster's report with Off Crevoiserat's more detailed report; reviewed paragraph 78 for client's annual salary; brief history leading up to diagnosis of PTSD and confirmation of diagnosis by Regional Medical Panel report; medical panel decision to be attached as Exhibit in support of injury and causation. | 1.5 |
| 9-30-03 | Reviewed facts of Count 1;case law in Count 1 and damages in Count 1 in preparation for filing complaint; reviewed Exhibits A&B for injury and causation; reviewed CollegeTown for Massachusetts strict liability; reviewed Ellerth & Faragher for federal strict liability; reviewed Count 1 for damages; reviewed Pollard for its removal of cap on front pay damages | 1.5 |
| 9-30-03 | Reviewed facts selected for summary in Count II; reviewed case law Suders v Easton, No:01-3512(April 16, 2003) (3rd Circuit); case on appeal to US Supreme Court as Pensylvania State Police v Suders; the issue: constructive discharge; CollegeTown, Ellerth & Faragher created strict liability; Exhibits A&B established injury-causation; Suders v Easton eliminated defenses to constructive discharge; reviewed Count II for damages;reviewed Pollard for range of remedies; identified front pay, back pay, compensatory and punitive damages;reinstatement not available; front pay is with out cap; | 1.5 |
| 9-30-03 | Reviewed facts selected for Count III and Exhibits A&B; leave with pay was available for mental and emotional injuries upon proper application since 1978 and 1979; client made requsite application for Sec 111F benefits; re- viewed defendants denial based outdated Treatise used by the Defendants and a deliberate policy of not recognizing non-physical injuries;policy applied in 2000 -2001 violated parity established by the SJC in 1978-1979;identified defendants continued resistance to decisions of DALA and PERAC; identified defendants failure to confirm or deny the client's retirement application;defendants were engaged in continuing violation of state law and engaging in discrimi- nation; front pay is wiithout cap, client also seeks com- pensatory dmages and attorneys fees | 1.5 |
| 9-30-03 | Reviewed facts selected for Count IV of client's complaint; | |

|  | reviewed the standard that the defendants knew or should have known that their repeated conduct caused emotional distress; identified the notices given to Mayor Ambrosino, the Chief of Police;the findings of fact of the administrative agencies; the personal conduct of Lt.Santoro, Murphy and Doherty was intolerable and emotionally distressing; reviewed Dr. Keroack's medical opinion and Exhibits A&B and confirmed the injury caused by the emotional distress inflicted upon the client. | 1.5 |

| 9-30-03 | Reviewed damages; researched punitive damages; awarded in Title VII cases; award is within the discretion of the court or jury;identified available damages; front pay without cap; back pay,compensatory damages;reinstatement cannot be offered for period covered by back pay; reinstatement not practical in this case; prepared Client Affidavit for purpose of Verified Complaint. | 0.75 |

| 10-6-03 | Reviewed actions of the RRB since it received the medical panel report from PERAC on client's case; analyzed time-tables and requirements of 840 CMR 10.11; RRB had 30 days from receipt of the medical panel report to notify all parties including the client of the panel's findings; RRB failed since July to notify client of medical panel findings reviewed provisions of 840 CMR 10.11(1); reviewed letter addressed to PERAC by client requesting action from RRB; discussed written request with client;reviewed 10.12(2) for options open to and obligations of RRB. | 1.5 |

| 10-6-03 | Reviewed all four (4) counts of plaintiff's complaint; prepared complaint for filing in Superior Court on 10-8-03;final review of the parties and the Parties section of complaint;reviewed Prerequisites, MCAD filing;Notice of Claim-c.258 Sec 4; made determination of completeness;reviewed paragraphs 12 and 13; reviewed and compared MGLc.151B Sec 4 and 42 USC 200e-2;reviewed other state and federal statutes cited in paragrtaphs 12 | 1.25 |

| 10-6-03 | Analyzed College-Town and the strict liability standard; analyzed Ellerth & Faragher & Suders for federal strict liability standard; did analysis of both federal and state strict liability and applied standards to the facts and the findings in this case | 0.75 |

| 10-6-03 | Analyzed paragraph 14; reviewed the statutory language and case law for the "prolonged, severe, hostile and abusive" requirement included in the background of this case; also examined the case law for the role of intimidation humiliation and stigmatization;examined role of the supervisors who posed formidable barriers to client's partici-pation in the workplace;examined the diagnosis of PTSD; examined the elements of constructive discharge and the relationship to PTSD; examined the findings of DALA(not | |

|  |  |  |
|---|---|---|
|  | included in complaint) and PERAC 7-28-03; examined the inaction and the deliberate indifference of the policymakers of the City of Revere;examined the actions of those on whom policymakers conferred authority, the strict liability created and the constructive discharge inherent in the intolerable conditions | 1.5 |
| 10-7-03 | Reviewed Boston Herald story;compared press release with content of published story | 0.3 |
| 10-7-03 | Reviewed paragraph 16 and noted again client's meritorious service; reviewed newspaper account of client saving drowning civilians | 0.5 |
| 10-7-03 | Reviewed paragraphs 17 to 33; reviewed the events of 7-7-97 8-24-97, 8-26-97,9-2-97,10-12-97,8-4-99,8-7-99 8-12-99 and 8 reviewed Pollard; examined events on dates selected and compared the level of hostility with the level of hostility described in Pollard;also compared employer's"wretched indifference" that injured Pollard to the level of indifference that injured the Plaintiff. | 1.5 |
| 10-7-03 | Reviewed paragraph 34;client entitled to vacation time; request used as opportunity to stigmatize and give a negative interpretation to client's ability to be a police officer; review of paragraphs 35 to 47;review of the events of 12-11-98;also reviewed events of 3-12 to 3-13-01 examined sexual innuendo used as hostility; compared paragraphs 35 to 47 with the hostility described in Pollard; analysis of hostility not based on sexual advances but based on gender, plaintiff was female in a traditionally male environment; hostility in Pollard and this case caused the respective Plaintiffs mental and psychological injury | 1.5 |
| 10-7-03 | Reviewed paragraphs 48 to 51; two supervisors-Acting Chief Colannino and Capt Roland, notified on several occasions of the prolonged, severe, pervasive, hostile and abusive work environment; also reviewed the client's meeting with the Mayor; also reviewed the Mayor's meeting with Kathy Fish;reviewed City's response to client's MCAD complaint;analysis of supervisors and mayor's notice of, denial of and indifference to the hostile environment of the RPD; examined denial of Sec 111F benefits to all female officers who applied; analyzed disparate treatment implicit in these decisions after Fitzgibbons & Albanese; analyzed the constructive discharge implicit in the severe,pervasive, hostile and abusive work environment experienced by the Plaintiff; analyzed failure of leadership and failed policy making that allowed supervisors to impose barriers to client's full participation in the workplace. | 2.5 |
| 10-7-03 | Reviewed paragraphs 52 to 61;examined department report on 1-7-99, events of 4-18-97 and public remarks about |  |

|         |                                                                                                                                                                                                                                                                                                                                                                  |      |
|---------|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|------|
|         | sports commentator; analyzed the public conduct and public statements of Sgt Doherty;analyzed his conduct towards Curcio,Fish and Malatesta for stigmatization of female employees and female police officers in the RPD; analyzed Sgt Doherty's contribution to the hostility humiliation and degradation that permeated the RPD | 1.5 |
| 10-7-03 | Reviewed paragraphs 62 to 64; examined Sgt Nelson's use of pornography; reviewed Continental Airlines case in which female pilot received jury award; examined public use of pornography as stigmatization by supervisors of female officers in the RPD | 0.75 |
| 10-7-03 | Reviewed paragraphs 65 to 69; examined Chief Russo's comments of 2-23-97 for his inaction and indifference to the hostile environment experienced by client;analyzed Chief Russo's comments for the purpose of establishing the 'standard operating procedure' of the RPD;reviewed Pollard's standard of "wretched indifference";analyzed Chief Russo's conduct and his failure to act as evidence of wretched indifference". | 1.5 |
| 10-7-03 | Reviewed paragraphs 70 to 79; examined events of 1-7-99; 2-26-01,3-2-01,3-12  and 3-13-01; analyzed forst and second reports of Underwear Incident; analyzed the administrative decisons and their finding of facts; analyzed the finding of facts and their confirmation of the injury to client and its causation; also analyzed the reports as evidence of the culture of degradation, humiliation and hostility that is evident | 1.25 |
| 10-7-03 | Analyzed four (4) counts of plaintiff's complaint for summary of facts and for possible damages; analysis of Count1 for the purpose of summarizing selected instances of Hostile Work Environment/Sexual Harassment and damages available, front pay without cap,back pay, compensatory damages;analysis of Count II;examination of selected events that demonstrate constructive discharge; analysis of damages available, front pay without cap, back pay,compensatory damages;analysis of Count III; examination for the purpose of summarizing selected instances of disparate treatment and damages available, front pay without cap, back pay-no reinstatement,compensatory damages; analysis of Count IV;examination of the elements of and instances of infliction of emotional distress; examined damages available front pay without cap, back pay and compensatory damages | 3 |
| 10-8-03 | Filed complaint, attachments and Affidavit required for Verification with Suffolk Superior Court No:03-4685G; paid filing fee to Clerk; prepared Cover Sheet required by Court; made copies of complaint with attachements, purchase summonses for each defendant;completed | |

|  | essential parts of summonses. | 2.1 |
|---|---|---|
| 10-9-03 | Analysis of 840 CMR 10.11 and examination of RRB's failure to provide client with copy of medical panel report; examined RRB's deliberate failure to decide whether it needs additional information or whether it will request clarification; examined client's options after several months of inaction by RRB; examined regulations for possible sanctions available to client, to Commission, to other parties for deliberate delay by RRB | 1.5 |
| 10-9-03 | Analyzed 10.21 which requires "employer,governmental unit retirement board.."to provide information or documents required by 840 CMR 10:00; examined how conduct of RRB clearly violates provision | 0.75 |
| 10-9-03 | Conference with co-counsel,discussed option of seeking intervention of DALA and the pursuit of other remedies pursuant to MGLc.32 Sec 16(4); prepared and filed appeal with DALA. | 1.75 |
| 10-10-03 | Read and analyzed legal commentary:Damages Available Under WEFA and Title VII; examined subheading:Damages Under Title VII; analysis of argument: Title VII is the federal law that outlaws discrimination;examined compensatory damages not subject to cap-back pay, interest and front pay; 42 USC Sec 1981a(b)(2); | 0.75 |
| 10-10-03 | Analysis of front pay; front pay is awarded in lieu of reinstatement;front pay characterized as designed to compensate plaintiff for the immediate effects of unlawful termination or other forms of adverse employment action;distinguished front pay from loss of earning capacity awards;the latter designed to compensate a prevailing plaintiff for a lifetime of diminished earnings;analyzed  this case for the existence of both front pay, and loss of earning capacity;analyzed Williams v Pharmacia, Inc., 137 F3d 944(7th Cir. 1988) for other bases of recovery. | 1.5 |
| 10-10-03 | Analyzed standard for recovery of punitive damages; if plaintiff can prove that employer engaged in a discriminatory practice with malice or with reckless indifference to the federally protected rights of the plaintiff; examined the conduct of the municipality and the supervisors for reckless indifference and malice; 42 USC 1981a(b)(1) exempts governmental employer even though malice and reckless indifference exists | 1.25 |
| 10-10-03 | Examined recovery of attorneys and costs;42 USC 1988 (b)(c) provide for successful plaintiff to recover attorneys fees and costs; analyzed plaintiff's entitlement to attorneys fees and costs in this cause of action. | 0.5 |

| | | |
|---|---|---|
| 10-14-03 | Read and analyzed article:Sexual Harassment; Article Outline:Introduction,Prevalence, Effects,Laws Against Sexual Harassment;Supreme Court Opinions; Freedom of Speech Issues; Attitudes Towards Sexual Harassment ;preliminary review of article and its sections | 0.5 |
| 10-14-03 | Analysis of relevant section:In the WorkPlace;analysis of article's definition of Title VII and its purpose; Title VII prohibits sex discrimination by an employer with respect to compensation, terms, conditions or privileges of employment; analyzed guidelines of EEOC developed to enforce Title VII;examined guidelines:(unwelcome sexual advances,(2)request for sexual favors(3) verbal or physical sexual conduct under three (3) conditions (1) sub- mission to or rejection of such conduct is used as a basis for employment decisions, or (3)the conduct has the pur- pose or effect of unreasonably interferring with an individual's work performance or creating an intimidating, hostile, or offensive working environment; analyzed the facts of this this case in light of the US Supreme Court's interpretation of these guidelines. | 1.5 |
| 10-14-03 | Examined "key element"; wheher behavior is unwanted by the recipient; key element is "unwelcomed by the recipient." | 0.25 |
| 10-14-03 | Read and analyzed section:Supreme Court Opinions:history of U.S Supreme Court opinions in sexual harassment cases began in the mid-1980's; first cases defined sexual harassment; more recent cases defined the party liable or legally responsible;analysis of Meritor Savings Bank v Vinson; analyzed historical significance of Meritor; Meritor was first case to recognize as unlawful both types of harassment defined by EEOC guidelines:(1)harassment involvng a coercive tradeoff;(2) harassment that creates a hostile or intimidating environment;examined the facts of this case and applied the elements of (2); examined the unanimous conclusion-both types (1) and (2) were action- able under Title VII; Meritor acknowledged that victims of such harassment could sue their employer for monetary damages | 1.5 |
| 10-14-03 | Examined the facts of Meritor; female employee was invited dinner and to a motel by vice-president of bank; initially she refused, in fear of her job she finally agreed; vice-president made sexual demands during business and non-business hours; they had sex 40 to 50 times over the next few years; Lower court found relationship voluntary, sexual relationship unrelated to continued employment; US Supreme Court overruled; held employee might be able to show that actions of supervisor created hostile and intimidating environment; created analysis of how hostile and intimidating environment became inextricably intertwined with sexual harassment. | 1.5 |

10-15-03    Analyzed the differences between the trial court in Meritor,
            EEOC guidelines and US Supreme Court reasoning; trial
            court focused on: whether employee suffered tangible
            economic loss; US Supreme Court relied on EEOC
            guidelines regarding hostile work environment; analyzed
            Court's comparison of sexual harassment to racial
            discrimination; analyzed language: "sexual harassment
            which creates a hostile or offensive environment for
            members of one sex is every bit the arbitrary barrier to
            sexual equality at the workplace that racial harassment is
            to racial equality"; analyzed the shift in emphasis from
            individual action and economic loss to whether a hostile
            and offensive environment was created; US Supreme
            Court established new elements of harassment case.

10-15-03    Examined Court's caution and analysis required;
            Caution:Behaviors must be sufficiently severe and pervasive
            so as to "alter the conditions of [the victim's] employment
            and create an abusive working environment"; Analysis
            required: Not whether victim's participation was voluntary
            but whether sexual advances were unwelcome; employees
            had right to sue even if they did not resist harassment and
            even if they suffered no loss of tangible benefits; reviewed
            new legal basis and reasoning for such harassment claims                    1.5

10-15-03    Reviewed Harris v Forklift Systems(1993); supervisor
            sexually harassed employee by creating hostile working
            environment; analysis of how Harris applied Meritor:male
            supervisor insulted female employee, made unwelcome
            sexual innuendos,asked other female employees to remove
            coins from his front pocket; emphasis on environment,                       0.75
            includes experiences of other female employees who were
            not plaintiffs;

10-15-03    Compared trial court and US Supreme Court focus in Harris
            trial court concluded-although some of supervisor's
            comments offended employee and would offend reasonable
            woman, they were not severe enough to affect employee
            psychological well-being, to interfere with her work
            performance, or to create abusive or intimidating work
            environment;trial court dismissed case. US Supreme Court
            reversed. US Supreme court held so long as a reasonable
            person could perceive the environment ot be hostile or
            abusive, and the victim actually perceives it as such,
            damage to psychological well-being is not required;                         1.5

10-15-03    Analyzed other part of holding in Harris; it stated that
            conduct need not "seriously affect an employee's
            psychological well-being or cause employee to suffer
            injury in order to be actionalble under Title VII; examined
            proper standard stated by court; analyzed "middle path"
            chosen by court, "between conduct that is merely
            offensive and conduct that causes tangible psychological

|         |                                                                                                                                                                                                                                                                                                                                                                                                  |      |
|---------|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|------|
|         | injury; analyzed finding of facts made by DALA and PERAC their concusions support client position that Title VII requirements as stated in Harris were met.                                                                                                                                                                                                                                        | 1.5  |
| 10-16-03 | Analyzed Oncale v Sundowner Offshore Services(1998) for confirmation of Harris holding; US Supreme Court ruled unlawful sexual harassemnt could occur between members of the same sex; noted no trial in lower court, US Supreme court overruled trial court's automatic dismissal of case; examined Court's reiteration of Harris standard; analysis of standard that requires courts to assess alleged harass-ment from the perspective of a reasonable person consider-ing all the circumstances; reasonable person standard in Harris replaced standard relied upon by trial court; | 1.5  |
| 10-16-03 | Examined Harris and Oncale for definition for standard to be used to define sexual harassment; the reasonable woman in Harris and the reasonable person in Oncale replaced lower court reliance on "affecting psychological well-being" and interference with "work performance"; separated definition from liability; noted standard for liability still unclear. | 0.75 |
| 10-16-03 | Analysis of Meritor for employer liability; US Supreme Court applied general principles of agency; examined how general agency principles could be applied in cases of sexual harassment; analysis indicated that employees can be liable for certain wrongdoings by supervisory employees such employees are(agents); legal relationship between employer and employee is direct;compared special relation-ship between employer and employee same as College Town;reviewed Meritor's analysis that lower courts have generally found employers liable for sexual harassment when managers took tangible,job-related action-such as unwarranted termination or demotion; analyzed conflicts among circuits in the application of Meritor & Harris (1)rea-sonable person (2) limited role of wrongdoing; | 1.5  |
| 10-16-03 | Analysis of US Supreme Court clarification of employer liability when supervisors sexually harass employees by creating hostile work environment; liability even if no specific job related actions are taken against the victims; reviewed Ellerth & Faragher: the Court ruled that employers are potentially liable even if victim did not experience tangible retaliation" or was not denied benefits; compared job-related action" of Meritor & Harris with requirements of Ellerth & Faragher. | 1.5  |
| 10-16-03 | Analyzed the facts of Ellerth; she was female salesperson who had been continually harassed by a male supervisor; she testified that the supervisor touched her inappropriately she also testified that supervisor stated that he could make her life "very hard or very easy" at the company depending |      |

on whether she "loosened up" sexually; she did not suffer tangible job detriment for rejecting his advances;court concluded however that she had experienced a hostile work environment; analyzed facts of Faragher:she was female lifeguard; she was subjected to unwanted touching, she was subjected to ongoing and pervasive crude remarks, her supervisor made no specific sexual demands; compared ongoing and crude remarks in the RPD with the hostile environment experienced in Faragher.                                    1.75

10-17-03     Compared fact patterns of Ellerth & Faragher with facts of client's case; continual harassment, pervasive and crude remarks and a generally hostile work environment are present in all three (3) cases;                                          0.75

10-17-03     Analyzed holdings and exemptions in holdings and exemp-tions in holdings; court recognized that supervisory status is a factor, it helps supervisor harass employee;compared the role of the supervisor and the liability of the employer with CollegeTown's concept of "those upon whom authority has been conferred; this liability stands even if supervisor did not use his or her authority to take specific retaliatory actions.                                                              0.75

10-17-03     Analyzed defenses available to employer:(1)showing of reasonable care to prevent and promptly correct;examined client's case for prevention and prompt correction-defense does not apply here; (2)failure to adopt anti-harassment policy and effectively communicate; examined client's case: examined anti-harassment policy adopted 4 years after commencement of client's employment; examined RPD's lack of conferences and efforts to effectively communicate the policy to employees;-defense unavailable to RPD, department showed lack of reasonable care; (3)additional defense-employer must demonstrate client unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer-defense unavailable.                                                         1.5

10-17-03     Reviewed client's MCAD complaint; reviewed her notes from her meeting with the Mayor, reviewed commencement of employment 9-12-95; checked date the anti-harassment adopted; checked for any indication of efforts to communi-cate anti-harassment policy or other evidence of reasonable care; conclusion-no Ellerth-Faragher defenses available to defendants                                                       0.75

10-17-03     Analyzed Gebser v Lago Vista Independent School District (1998); court used "deliberately indifferent" as  the standard for liability in School District case; examined the Gonsalves case and the application of the "deliberately Indifferent" standard; school districts allowed more latitude than other employers but when student is harassed by teacher and

|  | | |
|---|---|---|
|  | official who has authority over teacher has knowledge, the deliberately indifferent" standard is used to find liability under Title VII; "deliberately indifferent" is the standard also applied in Gonsalves v City of New Bedford; Gebser validates the use of the "deliberately indifferent"standard to establish liability under Title VII. | 1.5 |
| 10-20-03 | Reviewed facts of appeal because of inaction of RRB; 3-14-01 petitioner filed injury report; 7-17-02 Chief files Involuntary Accidental Disability Application;basis of application "significant emotional distress"; also referenced post traumatic stress disorder"; RRB denied application on 10-23-02 without convening medical panel;late 2002 and early 2003 physician noted decline in medical and physical health; medical report of 1-23-03 confirmed crippling anxiety, increased insomnia and fatigue; physician confirms loss of identity and self-worth, increased depression and withdrawal;physician confirms deterioraton of physical and mental health and her inability to return to work; reviewed and confirmed facts on which DALA and Medical Panel relied. | 0.75 |
| 10-20-03 | Reviewed both reports of Dr. Keroack, the DALA decision of 3-7-03, the medical panel report of 7-28-03 and noted the panel's unanimous decision; examined RRB's decision not to attend or be represented by counsel or physician at the panel's hearing; reviewed findings of the panel:(1) client unable to perform essential duties of job; (2) incapacity likely to be permanent;(3) incapacity is proximate cause of emotional injury and basis for disability; analyzed PERAC's review and approval of panel certificate for completeness and substantial evidence; noted that PERAC forwarded completed certificate and attachments to RRB; also noted RRB's obligation to send copies to all parties | 1.5 |
| 10-20-03 | Conference with asociate on the value of an action in man-damus to require RRB to hold hearing required by statute and regulations; discussed RRB's verbal representation to client that they were going to request more information or seek clarification. | 0.5 |
| 10-20-03 | Reviewed provisions of 840 CMR 10.11(4); medical panel findings have permitted retirement for disability claimed; RRB has obligation to determine whether or not to approve the application; no timetable stated; obligation of RRB to hold hearing clearly stated; months after receipt of medical panel decison-no hearing held or scheduled to be held; RRB has obligation to hold hearings on any involuntary application when hearinf is requested by member;notice to be given as required by 10.12. | 0.75 |
| 10-20-03 | Conference with associate on implementation of remedies; | |

|  |  |  |
|---|---|---|
|  | researched availability of mandamus in administrative agencies; | 0.25 |
| 10-21-03 | Procedural review of retirement application: 10-6-03 client sent letter to PERAC because of inaction by RRB; 10-8-03 office filed appeal with CRAB because of inaction by RRB; 10-10-03-CRAB acknowledged receipt of appeal-hearing to be scheduled; analyzed procedural steps for action taken by RRB;reviewed MGLc32 Sec 16(4) and 840 CMR 10:00 to determine legal support for inaction; analyzed statute and regulations to determine time limits for (1) notifying parties, including the client, (2) seeking additional informa-tion; and (3) supporting the client's position of deliberate in-difference to her rights. | 1.5 |
| 10-22-03 | Reviewed appeal filed with PERAC on 10-8-03 to determine relief provided by MGLc. 32 Sec 16(4) and 840 CMR 10:00. | 0.3 |
| 10-22-03 | Procedural review of civil action: 03-4685G; complaint filed in Suffolk Superior Court 10-8-03; correspondence with Office of the Revere City Solicitor requesting that it accept service for Mayor Thomas Ambrosino and Police Chief Reardon;Service of parties who live in Essex County: 10-14-03-letter sent to Essex County Sheriff's office with summons and complaints including affidavits and exhibits for Thomas Doherty, Salvatore Santoro and James Russo | 1.5 |
| 10-27-03 | Procedural review of service of process on supervisors in 03-4685G; prepared summonses to accompany verified complaint, exhibits and affidavits; prepared sum-mons and copied complaints to be served on Michael Murphy,673 Washington Avenue,Revere, MA; Frederick Roland, 20 Putnam Road, Revere, MA;Thomas Ambrosino 97 Mill Street, REvere, MA;Roy Collannino, 5 Joseph Road, Revere, MA;Bernard Foster, 87 Goldie Street, Revere MA; provided all summonses and complaints to the Office of the Suffolk County Sheriff for service on the defendants. | 3.1 |
| 10-28-03 | Reviewed DALA'd finding of facts  3-7-03; reviewed Medical Panel report of 6-13-03 in preparation of pretrial memo for hearing on 12-9-03 at 11:00 am; prepared statement of facts for memo; 1st paragraph stated date of Involuntary Application 7-17-02; date client ended employment 3-14-01; 18 months since filing of Involuntary Application statute and regulations establish 180 days for decision on application; constructive discharge on 3-14-01; paragraph highlights deliberate inaction by RRB and the intentional disregard for the statute and regulations. | 0.9 |
| 10-28-03 | Reviewed prior PreHearing Memo filed by Ira Zaleznik, Esq. counsel for RRB and the defendants prior to the February 4 2003 hearing; reviewed medical report from Dr. Keroack |  |

|  |  |  |
|---|---|---|
|  | after October 23, 2002;reviewed the issue of permanency which was addressed at the February 4, 2003 hearing; reviewed Item 15 on the list of documents counsel for RRB provided to DALA:Addendum Sheet to the Involuntary Retirement Application:Copy of Atty John collins Treatise on the Chief's Guide to Injured on Duty; examined treatise for complaince with the present state of the law in Mass | 1.1 |
| 10-28-03 | Reviewed client's notes; also reviewed Chief's Application and its acknowledgement of "significant emotional distress" it referenced her diagnosis of PTSD; included in draft of 2nd paragraph the RRB's denial without convening a regional medical panel; reviewed Dr.Keroack's January and February 2003 reports; drafted 2nd paragaph to include the denovo hearing, Dr. Keroack's reports and DALA hearing of 2-4-03. | 0.75 |
| 10-28-03 | Reviewed DALA decision of 3-7-03 and its holding that the threshold criteria had been met for the convening of a Medical panel"; also made procedural note - the RRB did not appeal this decision; also included draft of paragraph 4 that the three (3) doctors of the medical panel convened, held a hearing and reached a unanimous decision; included in paragraph 4 the four conclusions of the panel: (1) client mentally incapable of performing the essential duties of her job; (2) the incapacity is likely to be permanent; (3) incapa- city is such as might be the natural and proximate result of emotional injury sustained or hazard undergone on account of which retirement is claimed; and (4) there was no other likely factor in Ms. james clinical history to explain the dsability. | 1.5 |
| 10-28-03 | Included in 4th paragraph the conclusion that both the client and the Commission have already provided the RRB with documents and information necessay to render a decision on the Involuntary Application submitted by the Chief; con- cluded hearing memorandum with two legal facts (1) sub- stantial evidence has been provided that client is unable to return to work at RPD, her condition has lasted for more than one year, she is disable by PTSD which is job-related; (2) more than 180 days have elapsed since 7-12-02 and RRB has made no decision. | 1.5 |
| 10-29-03 | Review of RRB's request for clarification;examined letter from Ira Zaleznik, Esq.counsel for RRB and the City of Revere; letter addressed to George M. Dominiak, MD 300 Mt Auburn St, Suite 300, Cambridge , MA; letter dated 11-18-03; Caption:Panel Examionation of Terri James:Request for Clarification; 1st paragraph confirms that Ira Zaleznik,Esq. represents the RRB on this retirement disability case; letter requests clarification of the medical panel of 6-13-03. | 0.5 |

| | | |
|---|---|---|
| 10-29-03 | Analyzed second paragraph and attempted to identify the disability issue on which clarification is sought; medical panel concluded that Ms. James' incapacity would be likely to persist for an indefinite period of time, even with continued treatment; issue presented by RRB:whether the nature of her condition itself precludes recovery in a definite period of time or whether the panel's opinion is based upon Ms. James receptiveness or lack of receptiveness to treatment; examined closely the wording of the paragraph and noted that the medical decription of the patient's decline is called a "shift" by the RRB; paragraph indicates a misunderstanding of the synptoms of PTSD. | 0.95 |
| 10-29-03 | Analyzed third paragraph and attempted to identify the disability issue on which clarification is sought; medical panel report raised the following extraneous issues: Mark James' disability retirement, civil action filed in Superior Court, newspaper report of lawsuit; report noted move to Florida as escape from hostile environment of Revere; analyzed "additional facts": found no criteria in MGLC32 or 840 CMR 10:00 that pertain to disability | 0.75 |
| 10-29-03 | Analyzed fourth paragraph and attempted to identify the disability on which clarification is being sought; examined RRB's claim that client's doctor"crossed the line from care-giver to partisan in assessing Ms James' claim"; also examined his final question:Did the panel consider any other sources or critically evaluate whether the history received was accurate?'; reviewed 840 CMR 10.10(4): Representation:...employer's physician allowed to be present and may ask questions from medical panel during the decision making process of the panel"; examined the narrative of medical panel; decison does not record the presence of employer's physician;employer's physician had the right (1) to disagree with the findings of the panel;(2)indicate disagreement by signing panel certificate in space provided; and (3) filing written statement with Commission within 10 days following the examination; examined medical panel certificate; examined space pro-vided; found no signature; Commission indicate no evidence of participation by employer physician; evaluated belated concerns expressed in paragraph 4. | 1.75 |
| 10-29-03 | Analyzed 5th pargraph: statement "the penal opinion concludes that "there are no other likely causative factors apparent in Ms James clinical history to substantiate an alternate etiology for anxiety disorder"; examined the four questions of this paragraph, noted that employer's physician could have provided appropriate answers: Ques,!:ws there any direct linkage established between incidents or series of incidents at work and the disability claimed-both Dr. Keroack's report and the medical panel narative established the linkage; Ques 2: were there any incidents at work | |

|  | reported that could have raised the level of stress to the extent to produce the gastrointestinal problems reported in 1998-Dr . Keroack, MGH records and the medical panel narative directly address this question;Ques 3: were the humiliating incidents reported....specifically linked to specific anxiety attacks or other problems requiring treatment by her providers?; -Dr. Keroack's opinion Dr Rudman's opinion and medical notes - MGH establish the causal connection sought;Ques.4 : were there such links or would the nature of Ms. James diagnosed condition not result in specific episodes requiring immediate treatment-this question is incomprehensible and may be based on a misunderstnding of PTSD | 2.5 |
|---|---|---|
| 10-29-03 | Analyzed 6th paragraph: this question is a direct affront to the medical panel's conclusion: "There are no other likely causative factors apparent in Ms. James clinical history to substantiate an alternate etiology for the anxiety disorder examined the premise of the 6th paragraph: without evidence or the opinion of an employer's physician, the paragraph implies that "marital discord, marital infidelity, childhood abuse or neglect, financial problems or other private factors" are the causation of client's disability; examined medical panel narrative and 840 CMR 10.11(4) to determine that employer's physician was available but not used by RRB. | 1.75 |
| 10-29-03 | Analyzed final paragraph and attempted to identify the disability issue on which clarification is sought; the disability found by the medical panel complies with the requirements of MGLc. 32 and 840 CMR 10.00; the questions posed by the RRB focusses on matters outside the scope of the statute, regulations and the decision of the medical panel; examined MGLc 32 Sec 16 and 840 CMR 10.04(1) for scope of disability required. | 1.5 |