**EXHIBIT – C – Request for Protective Order on Excessive Pleadings by Defendants**

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

### CIVIL ACTION NO. 03-12499 MLW

| | |
|---|---|
| **TERRI L. PECHNER-JAMES** | ) |
| **and  SONIA FERNANDEZ** | ) |
| **Plaintiffs** | ) |
| | ) |
| **VS.** | ) |
| | ) |
| **CITY OF REVERE, THOMAS** | ) |
| **AMBROSINO, MAYOR, CITY** | ) |
| **OF REVERE POLICE DEPT.** | ) |
| **TERRENCE REARDON, CHIEF** | ) |
| **OF POLICE, BERNARD FOSTER)** | |
| **SALVATORE SANTORO, ROY** | ) |
| **COLANNINO, FREDERICK** | ) |
| **ROLAND, THOMAS DOHERTY** | ) |
| **JOHN NELSON, JAMES RUSSO** | ) |
| **MICHAEL MURPHY and** | ) |
| **STEVEN FORD** | ) |
| **Defendants** | ) |

## TERRI L. PECHNER-JAMES AND  SONIA FERNANDEZ REQUEST FOR A PROTECTIVE ORDER

**NOW COMES** the Plaintiffs, Terri Pechner-James and Sonia Fernandez,  and hereby request that this court grant them a protective order pursuant to Fed. R. Civ. P. 26 (c) to protect them from the  annoyance of multiplication of pleadings, the burdensome monetary demands, the embarrassment of repeated questions about pregnancies, abortions, miscarriages, sexual histories and sexual relationships. The Assistant City Solicitor has used the latitude granted by the Court to oppress the Plaintiffs by the multiplication of litigation with defective pleadings and burdensome monetary demands. He knows that these Plaintiffs are disabled, impaired by their experiences as employees of his client. He knows the source of the Plaintiffs incomes. He knows that this monetary

demands place an undue burden on them. Plaintiffs hereby request the protection of this Court pursuant to Fed. R. Civ.P. 26(c ).

**Background:**

The Plaintiffs are  members of a group of seven (7)  female officers who were hired by the Revere Police Department on September 12, 1995. The Plaintiffs successfully completed their training; they pursued professional development during their tenure as police officers until they were constructively discharged from their employment. Pennsylvania State Police v Suders, 542 U.S. 129 (2004) (325 F.3d 432, vacated and remanded.)

A majority of the female officers hired on September 12, 1995 have been constructively discharged from the Revere Police Department. Three of these officers filed complaints with the Massachusetts Commission Against Discrimination (MCAD).  These officers met with Mayor Thomas Ambrosino prior to filing their complaints with the MCAD. The officers informed the Mayor that harassment and discrimination in the Revere Police Department had made it impossible for them to continue to work there. Pennsylvania State Police v Suders, 542 U.S. 129 (2004) (325 F.3d 432, vacated and remanded.)
.
The Defendant Terrence Reardon, was a Lieutenant in the Revere Police Department prior to his appointment as Chief of Police. He was a Lieutenant at the time of his appointment as Chief of Police of the City of Revere. **Exhibit 1.**   He was a Lieutenant during the time that the Plaintiffs served as officers of the Revere Police Department. These Plaintiffs commenced their cause of action in the Suffolk Superior Court-Case No: 03-4685G in October 2003; they made service on the Defendants in November 2003; the Defendants answers were due on December 1, 2003; the Defendants did not file an answer until February 27, 2004.   The Defendants, in an obvious exercise of forum-shopping, removed the Plaintiffs complaint to the U.S. District Court: **Docket No. 1.- Notice of Removal.**

**Plaintiffs Complaint**

The Plaintiffs complaint states the following causes of action: (1) Hostile Work Environment/Sexual/Racial; (2) Constructive Discharge; (3) Disparate Treatment; (4) Infliction of Emotional Distress. The Plaintiffs were hired into a Department that still does not have a maternity leave policy, did not have a sexual harassment policy at the time of their employment; still has no mechanism or policy for providing redress for sexual or racial discrimination, and still has no facilities for the exclusive use of female officers.

The Defendants have no defense; they have stated no defense; they have never claimed to have a defense. They have used the discovery process to increase the cost of litigation, to demand thousands of dollars from the Plaintiffs,  to annoy and embarrass the Plaintiffs with inappropriate and personal questions about sexual relations, abortions and miscarriages.  The excessive number of pleadings and docket entries in this case tells the story. **Docket No. 238** is the latest example of the Defendants use of excessive pleadings. **Docket  No. 238** is described as a Supplemental Memorandum In Support re: 188 and 182. This filing consists of a cover page and a fifteen (15) page decision from the United States Court of Appeals. Docket No. 238 is not a  motion; it is not a memorandum;  it is an "Additional Paper" as defined by Local Rule 7.1(b)(1) and Local Rule 7.1(a)(3) infra. This Additional Paper was filed without leave of court. Its arguments and holding do not support  Docket Nos. 188 and 182.

 The Defendants failed to state any reasons why **Docket 238** is relevant or why it should be included on the Docket of this case.  **Docket 238** is one of several supplemental pleadings, that the Defendants filed without leave of court.   **Docket No. 238** violates Local Rule 7.1(b)(3).  It support  two motions which are moot.  Those motions have not yet been terminated or dismissed.  The motions survive only as  burdensome and oppressive monetary demands placed  by the Assistant City Solicitor.

**<u>Applicable Law:</u>**

Local Rule 7.1(b)(1) states:

A party filing a motion shall at the same time file a memorandum of reasons, including citation of supporting authorities, why the motion should be granted. Affidavits and other documents setting forth or evidencing facts on which the motion is based shall be filed with the motion.

Local Rule 7.1(b)(3) states as follows:

Additional Papers: All others not filed as indicated in subsections (b)(1) and (2), whether in the form of a reply brief or otherwise may be submitted only with leave of court.

Fed. R. Civ. P. 11(c )(1)(A) states the following:

By Motion: A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific  conduct alleged to violate subdivision (b). It shall be served as provided in Rule 5 but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation or denial is not withdrawn or appropriately corrected.

**(1) An excessive number of pleadings were filed in this case.  Most of these pleadings are an attempt to support  baseless motions; the pleadings that were not filed with leave of court violate Local Rule 7.1(b)(3).**

The excessive number of pleadings that the Assistant City Solicitor has filed in this case stands in stark contrast to the number of pleadings filed in **Broderick v Evans**, Docket No. 02-11540 RGS**. Docket No. 70** reads **(JURY VERDICT in favor of Plaintiffs against the City of Boston and Paul Evans).** Absent from that docket is the multiplication of discovery pleadings and the rank abuse of the Local and Federal Rules of Civil Procedure.  Discovery in this case is not complete. Depositions of the Plaintiffs have been suspended, not terminated.  The Defendants have still not fully answered the very small number of  Interrogatories(44) that the Court ordered them to answer on May 1, 2006 **Docket No. 181**. The depositions of the Mayor and the Chief are yet to be completed. In addition, the Assistant City Solicitor has refused to provide the Plaintiffs with their personnel records. **Exhibit 2**.

The following docket entries are illustrative of the excessive pleadings filed by the Assistant City Solicitor.

1**. Docket No. 182.** The Defendants filed a Motion for Sanctions against Sonia Fernandez on May 5, 2006; it was accompanied by three (3) exhibits. That docket entry was followed by **Docket No. 183-**Affidavit of Paul Capizzi and **Docket No. 184-**Affidavit of Walter H. Porr. These entries were followed by a Certification of Consultation signed by Walter H. Porr-**Docket No. 185**. These pleading were unnecessary. The Plaintiff, Sonia Fernandez, had agreed to additional depositions. She completed an unprecedented eight depositions before the suspension of depositions. The Plaintiff, Sonia Fernandez, filed an opposition to Defendants motion-**Docket No 187.**  This motion is moot except that the Assistant City Solicitor has made an exorbitant, unjustified and oppressive financial demand upon the Plaintiff, Sonia Fernandez.

2. **Docket No. 196**.  The Defendants filed a Supplemental Affidavit of Walter H. Porr against Sonia Fernandez on May 18, 2006. On the same day, the Assistant City Solicitor filed a Supplemental Memorandum-**Docket No. 195.**  These docket entries 195 and 196 constitute "additional papers". They were submitted without "leave of court" as required by Local Rule 7.1(b)(3). These documents contain no certification that **Docket No. 195** and **Docket No. 196** were filed with leave of court.

3. **Docket No. 188.**  The Defendants filed a Motion for Sanctions against Terri Pechner-James; it was accompanied by eight (8) exhibits. On the same day, the Defendants filed an Affidavit of Walter H. Porr-**Docket No. 189** and a Certificate of Consultation-**Docket No. 190**.  This motion was unnecessary. The Plaintiff has been punctual and attended every deposition scheduled for her. She has attended an unprecedented nine depositions and complied with the orders of the court. The issues germane to the depositions were resolved by conference. The responses she provided were consistent with her diagnosis of Post Traumatic Stress Disorder (PTSD). This motion is moot except that the Assistant City Solicitor has made an oppressive and burdensome monetary  demands upon the Plaintiff, Terri Pechner-James.  The Assistant City Solicitor can state no valid reason why this motion which has now become moot should not be withdrawn, terminated or dismissed.

The Assistant City Solicitor has attempted to supplement **Docket No. 182 and Docket No. 188** with several Status Reports and Memorandums. These subsequent filings constitute "additional papers"; they require "leave of court" prior to being filed. The Assistant City Solicitor has requested no such leave and provided no certification that he has obtained leave of court.

1**. Docket No. 193**.   The Assistant City Solicitor filed this Status Report on May 17, 2006.  This document is not  a motion. It is not  filed in accordance with Local Rule 7.1; it bears no Certificate of Consultation and there is no evidence that it was requested by the court or filed with leave of court.

2. **Docket No. 198.** The Assistant City Solicitor filed this  Status Report accompanied by three (3) Exhibits on May 19, 2006. This document is not a motion. It was not filed in accordance with Local Rule 7.1; it bears no Certificate of Consultation and there is no evidence that it was requested by the court or filed with leave of court.

3. **Docket No. 201.** On May 31, 2006, the Assistant City Solicitor filed this Memorandum of Law. This Memorandum of Law constitutes "additional papers". It was ostensibly filed in support of **Docket No. 188** but it was filed nineteen (19) days later without leave of court.

4. **Docket No. 209.**  On June 14, 2006, the Assistant City Solicitor filed a Second Memorandum of Law ostensibly in support of **Docket No. 188.**  He attached thirteen (13) exhibits. This docket entry, like prior docket entries, contained no certification that it was filed with leave of court.

5. **Docket No. 210**.  On June 15, 2006, the Assistant City Solicitor filed his "Sixth Status Report." This report was accompanied by three exhibits; it is not a motion; it contained no certification that this status report was either requested by the court or was filed with leave of court.

6. **Docket No. 211.**  On June 23, 2006, the Assistant City Solicitor filed his "Third Memorandum in Support of Docket No. 188. He attached six exhibits. This Third memorandum, like its predecessors, contained no certification that it was requested by the court or filed with leave of court.

7. **Docket No. 220**.  On July 7, 2006, the Defendants filed a Reply to Response re Docket No. 188 and Docket No. 182. This "Reply" is  a motion. It contained no certification of consultation pursuant to Local Rule 7.1.  It contained no certification that this "Reply" was either requested by the court or filed with leave of court.

8. **Docket No. 238**. On August 15, 2006, the Defendants filed another Supplemental Memorandum in Support of **Docket No. 188** and **Docket No. 182.** This docket entry, like the other entries ostensibly filed for this purpose, contained no certification that it was requested by the court or that it was filed with leave of court.

**(2) Docket No. 182 and 188 fail as motions for discovery sanctions; the supplemental pleadings fail as Additional Papers because they were not filed with leave of court as required by Local Rule 7.1(b)(3).**

Local Rule 7.1(b)(1) states:

> A party filing a motion shall at the same time file a memorandum of reasons, including citation of supporting authorities, why the motion should be granted. Affidavits and other documents setting forth or evidencing facts on which the motion is based shall be filed with the motion.

Local Rule 7.1(b)(3) states as follows:

> Additional Papers: All others not filed as indicated in subsections (b)(1) and (2), whether in the form of a reply brief or otherwise may be submitted only with leave of court.

On May 5, 2006, the Assistant City Solicitor filed a Motion for Sanctions against Sonia Fernandez- **Docket No. 182**. Sonia Fernandez filed an opposition to this motion-**Docket No. 187**. Plaintiffs counsel resolved the scheduling the issues that resulted from a compressed deposition schedule. The Defendants have been able to conduct in excess of eight depositions of Sonia Fernandez on issues that were subject to prior adjudication. Yet, the Assistant City Solicitor has continued to file additional pleadings. On May 17, 2006, he filed a Supplemental Certificate of Consultation-**Docket No. 194;** on May 18, 2006, he filed a Supplemental Memorandum- **Docket No. 195**; on the same day he filed a Supplemental Affidavit **Docket No. 196**; on August 15, 2006, he filed yet another Supplemental Memorandum **Docket No. 238**

The Assistant City Solicitor has subjected the Plaintiff, Terri Pechner-James, to an even greater number of excessive pleadings. On May 12, 2006, the Assistant City Solicitor filed a motion for sanctions against Terri Pechner-James. **Docket No. 188**. On May 31, 2006, the Assistant City Solicitor filed the first memorandum on this motion-**Docket No. 201**. On June 14, 2006, he filed a Second Memorandum with thirteen (13) exhibits on this motion-**Docket No. 209**. On June 23, 2006, he filed his Third Memorandum with six (6) exhibits on his motion -**Docket No. 211**. On June 30, 2006, he filed a document entitled Response to Motion Re:188-**Docket No. 216**. On August 15, 2006, he filed yet another Supplemental Memorandum Re: 188 and 182-**Docket No. 238.** These supplemental

memorandums have all been submitted in violation of Local Rule 7.1(b)(3). They were filed in support of a motion that has no factual or legal basis.

Both Plaintiffs, Terri Pechner-James and Sonia Fernandez have completed a total of almost twenty depositions. They have both been adjudicated with Post Traumatic Stress Disorder (PTSD). They have attended the depositions and provided responses that are appropriate for their condition. The motions contained in Docket No. 182 and 188 are moot except for the Assistant City Solicitor's burdensome and oppressive monetary demands for thousands of dollars. This demand is particularly egregious because, the Assistant City Solicitor knows that the Plaintiffs only source of income is the disability retirement benefits they receive as a result of his clients failures.

 The Assistant City Solicitor knows that his clients have no defense; he has stated no defense; he has never claimed to have a defense.  In lieu of a defense he is using the discovery process to increase the Plaintiffs cost of litigation, to demand thousands of dollars from the Plaintiffs,  to annoy and embarrass the Plaintiffs with inappropriate questions about sexual relations, abortions and miscarriages.

Despite the fact that the Assistant City Solicitor's request for sanctions in **Docket No. 188** has neither a factual nor a legal basis, he has not withdrawn nor terminated that motion.  Instead, on June 14, 2006, the Assistant City Solicitor has submitted several supplements to his baseless motion. He filed an (unsolicited) memorandum-**Docket No. 209** without the court approval required by Local Rule 7.1(b)(3). On June 23, 2006, he again attempted to bolster his baseless motion against Terri Pechner-James with an (unsolicited) third memorandum-**Docket No. 211**. This third memorandum was also submitted without leave of court as required by Local Rule 7.1(b)(3).  The Assistant City Solicitor's motion against Sonia Fernandez-**Docket 182,** was equally without factual or legal basis. It should be withdrawn or terminated.  Even though,  **Docket No. 188** and **No. 182** have been superseded by events and have been rendered moot, the Assistant City Solicitor has  filed numerous  "status reports" in addition to the 'supplemental'

9

memorandums discussed earlier. These pleadings are all governed by Local Rule 7.1(b)(3); they fail because they were not submitted with leave of court.

### (3) Status Reports are Additional Papers that require leave of court pursuant to Local Rule 7.1(b)(3).

In addition, the Assistant Solicitor has filed  several unsolicited **"Status Reports**."  On May 17, 2006, the Assistant City Solicitor filed a Status Report on behalf of all Defendants, even the Defendants not represented by his office – **Docket No. 193**. On May 19, 2006, he filed another Status Report with three (3) exhibits on behalf of all Defendants, even the Defendants, not represented by his office -**Docket No. 198**.  On June 15, 2006, he filed his Sixth Status Report with three (3) exhibits-**Docket No. 210.**

In the period between May 5, 2006 and May 18, 2006, the Assistant City Solicitor filed a motion, a supplemental memorandum and a supplemental affidavit on Sonia Fernandez. In addition, he conducted several depositions of Sonia Fernandez.

In the period between May 12, 2006 and June 30, 2006, the Assistant City Solicitor filed a motion, three (3) memorandums, nineteen (19) exhibits and three (3)  unsolicited (3) Status Reports. In addition, he conducted contentious and controversial depositions with the Terri Pechner-James.

His repeated requests for sanctions, his excessive pleadings, the excessive docket entries and the ad hominem attacks on the Plaintiffs, particularly, Terri Pechner-James all combine to emphasize the fact that the Assistant City Solicitor knows that his clients do not have a defense. The Defendants  failed to investigate incidents that injured the Plaintiffs.  They failed to investigate the hostile environment that the Plaintiffs experienced.  They have failed to acknowledge that their failures caused the Plaintiffs disability.

 The Defendants have  failed to acknowledge the departmental betrayal the Plaintiffs experienced; they have failed to acknowledge the injury it caused the Plaintiffs. They

have consistently failed to acknowledge the   Plaintiffs loss of  income, loss of professional opportunity and loss of career benefits. These losses were caused by the personnel upon whom the Defendants conferred authority. <u>College Town  Inc., Div. of Interco v Massachusetts Commission Against Commission</u>,  508 N.E. 2d 587, 400 Mass. 156 (1987).   Neither the Defendants nor the Assistant City Solicitor has provided a defense.  The status reports, like the supplemental memorandums, are Additional Papers that do not fall within the parameters of Local Rule 7.1(b)(1) and were not filed with "leave of court" as required by Local Rule 7.1(b)(3). These excessive pleadings are all designed to obscure the reality that the Defendants have no defense.

**(4)The Defendants motions for Rule 11 sanctions fail;  they do not fall within the scope of subdivision (b).  These 'supplements' are "additional papers"filed without leave of court.**

The Assistant City Solicitor filed two separate motions for sanctions pursuant to Rule 11. Rule 11(b) establishes the standard that documents which are regulated by Rule 11 must meet. The Rule 11(c)(B)(1)  requires that the motion "shall describe the specific conduct alleged to violate subdivision (b)."  The Assistant City Solicitor's  first such motion is recorded at Docket No. 70.  This motion fails to "describe the specific conduct" that the Assistant City Solicitor alleges "violates subdivision (d)" of Rule 11. Docket 70, in its first paragraph, "refers to and incorporates by reference" the Assistant City Solicitor's "opposition" to the Plaintiffs Request For Rooker-Feldman ruling. Docket Nos. 53, 54, 55, 56.  The second paragraph of Docket No. 70 alleges, without proof, a failure to comply with Local Rule 7.1. The rest of Docket No. 70 deals with Local Rule 7.1 and purported violation of "Mass. Rules of Professional Conduct Rule 3.3." Docket No. 70 describes no specific conduct, states no proof and provides no evidence of a violation of Fed. R. Civ. P. 11(b) in the Plaintiffs Request recorded at Docket Nos. 53, 54, 55, and 56. The Court has ruled on the Plaintiffs request but made no finding that the Request violated Rule 11(b). Docket No. 240.  This motion fails as a Rule 11 motion for sanctions.

The most recent such motion is recorded in Docket No. 163, 164 and 168. The Assistant City Solicitor filed this motion after the Plaintiffs filed their Motion for Summary Judgment on Less Than all Issues pursuant to Fed. R. Civ. P. 56(c)-Docket Nos 118-124. This motion for sanctions fails to describe the "specific conduct alleged to violate subdivision (b)."

Docket No. 163 contains one sentence that alleges a violation of Fed. R. Civ. P. 11(a); there are no statements that allege a violation of Rule 11(b). Four subheadings in Docket No. 163 refer to the Plaintiffs Motion For Summary Judgment. The remainder of Docket No. 163 appear to be a supplementary opposition to the motion for summary judgment but it states no violation of Rule 11(b) and describes no specific conduct as the basis of such violation. Docket No. 163, 164 and 164, like Docket No. 70, fails as a motion for Rule 11 sanctions.

**(5) The Assistant City Solicitor has used intentionally defective pleadings to increase the cost of the Plaintiffs litigation; he seeks to defend a case of indefensible discrimination by the use of these defective pleadings.**

These motions are not isolated instances. The Assistant City  Solicitor has, on prior occasions, intentionally filed defective pleadings that lacked the statutory prerequisites for the purpose of  harassing the Plaintiffs and attacking their counsel. On February, 28, 2006, the plaintiffs filed a Motion For Summary Judgment On Less Than All Issues pursuant to Fed. R. Civ. P. 56(e)-**Docket Nos. 118-124.**  Fed. R. Civ. P. 56(e) requires that the adverse party "must set forth specific facts showing that there is a genuine issue for trial".  If the adverse party does not so respond, summary judgment shall be entered against the adverse party. Rule 56 ( c). Similarly, Local Rule 56.1 requires a "concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried.."

The Assistant City Solicitor, counsel for the adverse party, deliberately failed to file the "concise statement of material facts" required by Local Rule 56.1.  He filed an opposition-Docket Nos. 129-134. His response failed to include the "concise statement of

material facts' required by Local Rule 56.1 and "specific facts showing that there is a genuine issue for trial" required by Fed. R. Civ. P. 56(e). He defied both the Local and the Federal Rules.  Instead, the Assistant City Solicitor submitted his own affidavit-**Docket No. 134**. That affidavit was not based on fact. It included conjecture, speculation, and innuendo. The statements were not supported by personal knowledge.  The Assistant City Solicitor failed to "set forth such facts as are admissible in evidence". His affidavit failed to show affirmatively that the Assistant City Solicitor  was "competent to testify to the matters stated."    It included unsubstantited attacks on the  Plaintiffs, their counsel and his office. Conspicuously absent from Docket Nos. 129-134 were any statements that meet the requirements of the Federal Rules of Civil Procedure 56(e) and the Local Rule of Civil Procedure 56.1.

The Defendants motion for sanctions recorded at Docket No. 70 and 163 are similar to the Assistant City Solicitor's response in Docket Nos. 129-134. These pleadings are all procedurally defective.  They appear to have been filed in bad faith.  They fail to meet even the basic requirements of the applicable procedural rule.  The defects are obvious and  intentional.  Nonetheless, Plaintiffs still have an obligation to incur the costs of researching , preparing  and filing responses to these defective pleadings.

 The Assistant City Solicitor sought to have the Court impose a significant monetary burden on the Plaintiffs by demanding Seventy-Five Hundred ($7,500) Dollars (See Affidavit of Walter Porr, Jr-Docket No. 164) and One Thousand ($1,000) Dollars(See Affidavit of Walter H. Porr, Jr-Docket No. 71).   The intent of these filings is clear. The Assistant City Solicitor knows that the Plaintiffs have limited income.  He knows that they are disabled. He knows that they receive disability income as a result of the injury they suffered at the Revere Police Department. The monetary sanctions sought on Docket No. 164 and Docket No. 71 alone would be financially crippling. The monetary sanctions however, are not limited to amounts demanded in Docket No. 164 and Docket No. 71.

In Document 211, the Assistant City Solicitor lists the following monetary demands against Terri Pechner-James:

May 5, 2006          $5,800.00

May 25, 2006         $2, 908.65

June 7, 2006         $2,204.50

June 22, 2006        $2, 125.30

The total demanded in Document 211 is $13,038.45. He added an additional $1,125 for the deposition transcript-a total of $14, 163.75 in monetary costs from Terri Pechner-James alone.   In Docket No. 195, he demanded $1,280.60 from Sonia Fernandez; in Docket No. 182, he demanded $750.00 from Sonia Fernandez.

The intent of these filings is clear. The Assistant City Solicitor  seeks to defeat the Plaintiffs by increasing the cost of litigation. His multiplication of pleadings is intentional. His burdensome and oppressive monetary demands are intentional. His clients have no defense; they have stated no defense; that have never claimed to have a defense. In the absence of a defense, the Assistant City Solicitor's seeks to shift the focus from the policies of his clients to the personal lives of the Plaintiffs. He  seeks to turn the Plaintiffs into defendants.  He uses the depositions to  force  them to answer inappropriate questions about their sexual lives and histories.

 He seeks  to turn a serious case of indefensible gender discrimination on its head. He implies by his questions that this cause of action is about the Plaintiffs sex lives, private behavior, abortions and miscarriages.  He deliberately ignores the serious violations of state and federal statutes that prohibit gender discrimination.  He  deliberately confuses his clients policy of gender discrimination with the Plaintiffs personal sexual histories. This strategy is perverse. It makes a mockery of the language and intent of the Title VII statutes.

**(6) Plaintiffs counsel  correctly stated that the Plaintiffs were hired into a Department that did not have and still does not have a maternity leave policy; that is a statement of fact that the  Assistant City Solicitor cannot use to invade the personal lives the Plaintiffs.**

Plaintiffs counsel has observed, in pleadings filed with the court, that the **"Plaintiffs were hired into a Department that still does not have a maternity leave policy."** This statement is a fact. The Defendants have never denied this fact. That fact remains unchanged. That fact reflects the policy and the deliberate indifference of the Revere Police Department. It predates the employment of both Plaintiffs. Neither Plaintiff is responsible for the existence of the Defendants policy. The statement by Plaintiffs counsel is an accurate description of the past, present and continuing policy of deliberate indifference practiced by the Defendants. See <u>Gonsalves v City of New Bedford</u>, 939 F. Supp. 915(1996).

A statement of undeniable fact by the Plaintiffs counsel does not provide justification for the Assistant City Solicitor to abuse, harass and annoy the Plaintiffs with questions about abortions, miscarriages, sexual relationships and sexual histories as he states in **Docket No. 220**. Blaming the Plaintiffs for the hostile environment they experienced at the Revere Police Department is abusive behavior. Attempting to embarrass the Plaintiffs with repeated personal questions about abortions, miscarriages, sexual relationships and sexual histories cannot substitute for the Defendants continuing policy failures.

The May 5, May 25, and June 22, 2006 depositions of Terri Pechner-James are not "old news" as the Assistant City Solicitor contends in **Docket No.220 Page 12**. They contain the heart of his "defense". His intent is clear from his conduct during these depositions. On May 5, 2006, the Plaintiff attended a deposition at the Offices of Reardon, Joyce & Akerson, P.C. The deposition began at 10:15 am. The deposing attorney was the Assistant City Solicitor, Walter Porr. He asked 891 questions. The deposition was recorded in Vol. IV, the transcript began at Page No. 554; it ended on Page 759; it covered 205 pages.

The Assistant City Solicitor identified eleven instances in which the Plaintiff declined to answer inappropriate questions. They are listed below:

      Page 663     Lines   2-4

Page 664        Lines    14-15

Page 664        Lines    22-23

Page 678        Lines    7-10

Page 679        Lines    20-22

Pages 681       Lines    7-9

Pages 721       Lines    7-9

Pages 721       Lines    14-15

Pages 730       Lines    5-9

Pages 744       Lines    4-5

The questions and answers on which the Assistant City Solicitor based his request for sanctions in **Docket 188** is located at page 721 of Vol. IV- the deposition of May 5, 2006.

The Assistant City Solicitor  at page 721 asked:

Have you had any other pregnancies other than the ones that resulted in the birth of your three children?

A. I am going to refuse to answer that question.

Porr: Would you mark the record, please.

Porr: How many other pregnancies did you have?

A. No one said I had any, but I don't think it is relevant to the case, so I'm going to refuse to answer any…

Porr: would you mark the record, please.

The Plaintiff appropriately refused to respond to  inappropriate questions. The motion in **Docket 188** were all based on  questions  related to abortions, miscarriages, sexual relationships and sexual histories. The Assistant City Solicitor tried to implicate the Court. He sought to use the Court to coerce the Plaintiffs into responding to inappropriate questions.  He requested the Court to impose monetary and other sanctions against both Plaintiffs **Docket No. 188 and 182.**   The Court, at a hearing on May 22, 2006, rejected

the Assistant City Solicitor's attempts to coerce responses to these questions.  The Court
his attempts.  It instructed him **"not to inquire into the Plaintiff's sexual relationships
absent prior approval of the Court**". **Docket No. 199**.

Despite the Court's order,  on May 25, 2006, (three days later) the first substantive
question that the Assistant City Solicitor asked the Plaintiff was: "**Have you had any
miscarriages?  Page 909** of May 25, 2006 deposition. In **Docket No. 220**, he continued
to justify his pursuit of information about abortions, miscarriages, sexual relationships
and sexual histories.   Whether the Plaintiff, Terri Pechner-James, had "pregnancies other
than those that resulted in the birth of her three children" is not a defense to municipal
liability. The Assistant City Solicitor appears to have a misogynistic approach to the
Plaintiffs, particularly, Terri Pechner-James. He responded to the courts order on May 22,
2006 by stating in open court that he has **"bankers boxes"** full of information that he
could show the court and later present to the jury. These "**bankers boxes"** would prove
that the Plaintiff, Terri Pechner-James, was not **"Mother Teresa."**  The Assistant City
Solicitor has no defense for his clients. He hopes that he can appeal to some misogynistic
prejudice in the court or the jury to exonerate his clients. The Plaintiffs has still not
received a copy of the content of the **"bankers boxes**" despite their repeated requests.

**(7) The Assistant City Solicitor, by his repeated requests for sanctions is attempting
to make the Court complicit in the kind of abuse and discrimination that he and his
clients have inflicted upon the Plaintiffs.**

The Plaintiffs, Sonia Fernandez and Terri Pechner-James, have both been disabled by
Post Traumatic Stress Disorder (PTSD). Their condition has been confirmed. Defendant,
Terrence Reardon, a Lieutenant in the Revere Police Department before he was appointed
Chief of Police, relied upon this diagnosis when he filed the involuntary disability
retirement applications for both Plaintiffs.  The Public Employee Retirement
Administration Commission (PERAC) relied upon this diagnosis in their award of
retirement disability benefits.  They both receive disability retirement benefits.

The Assistant City Solicitor has tried to create a defense by denying the existence of the Plaintiffs adjudicated condition. The Plaintiffs condition and the diagnostic criteria are described in the document listed below. The depositions that the Assistant City Solicitor conducted with Terri Pechner-James on May 5, May 25, and June 22, 2006 (**See Attached**) create a particularly vivid and disturbing picture of the impact of discovery abuse on an individual who has been adjudicated with Post Traumatic Stress Disorder (PTSD). **(See Also Docket No. 220 filed by Defendants)**

**The Diagnostic and Statistical Manual of Mental Disorders Fourth Edition. DSM IV-TR Exhibit 4** states the following:

**Diagnostic criteria for 309.81 Posttraumatic Stress Disorder:**

B. The traumatic event is persistently reexperienced in one (or more) of the following ways:

(1) recurrent and intrusive distressing recollections of the event, including images, thoughts, or perceptions.
(2) recurrent distressing dreams of the event.
(3) Acting or feeling as if the traumatic event were recurring (includes a sense of reliving the experience, illusions, hallucinations, and dissociative flashback episodes, including those that occur on awakening or when intoxicated).
(4) intense psychological distress at exposure to internal or external cues that symbolize or resemble an aspect of the traumatic event
(5) physiological reactivity on exposure to internal or external cues that symbolize or resemble an aspect of the traumatic event.

C. Persistent avoidance of stimuli associated with the trauma and numbing of general responsiveness (not present before the trauma), as indicated by three (or more) of the following:
(1) efforts to avoid thoughts, feelings, or conversations associated with the trauma
(2) efforts to avoid activities, places, or people that arouse recollections of the trauma
(3) inability to recall an important aspect of the trauma
(4) markedly diminished interest or participation in significant activities
(5) feeling of detachment or estrangement from others
(6) restricted range of affect (unable to have loving feelings)
(7) sense of a foreshortened future (e.g. does not expect to have a career, marriage, children, or a normal life span)

D. Persistent symptoms of increased arousal (not present before the trauma), as indicated by two (or more) of the following:
(1) difficulty falling or staying asleep
(2) irritability or outbursts of anger

(3) difficulty concentrating
(4) hypervigilance
(5) exaggerated startle response

(1) Efforts to avoid thoughts, feelings, or conversations associated with the trauma, (2)efforts to avoid activities, places, or people that arouse recollections of the trauma, and (3) inability to recall an important aspect of the trauma as stated in **Section C** above are three of the experiences that occur when the Plaintiffs are being asked to repeatedly relive the traumatic experiences that lead to their disability.

The Plaintiffs are impaired. They are disabled. They are unable to pursue their employment. Their responses are appropriate but they are unable (obviously from the many motions filed by the Assistant City Solicitor) to prosecute their case in a manner that satisfies him. Numerous and detailed depositions have forced the Plaintiffs to relive traumatic events. These experiences have, of necessity, affected their adjudicated impairment. During her last deposition of Terri Pechner-James on June 22, 2006 the traumatic impact of these depositions was particularly noticeable. . **Exhibit 5.** The deposition took place at Revere City Hall. That building is in very close proximity to the Plaintiff's former place of employment. The venue of that deposition is a place that "arouse(d) recollections of the trauma."

The transcript of that deposition Vol. IX Page 1572 reflects that the Plaintiff, Terri Pechner-James was retraumatized. She experienced the deposition and its venue in the manner described in **Section C.** The Assistant City Solicitor noted the following, with great distress:

> I am getting a sense from the witness that she is not here. I know her body is sitting across the table from me, but the responses are flat, they are monotone, she is staring off into space, her voice is low. Id 1572.

The Assistant City Solicitor is clearly describing someone in a dissociated state. He makes similar observations of her mental state (**See Pages 5-10 and 13-14 of Docket 220);** he mistakenly attributes her mental state to Plaintiff's **"misdirection"**. **Docket No. 220 Page 5 Line 1.** He is unable or unwilling to recognize her responses as a symptom of Post Traumatic Stress Disorder (PTSD).

That deposition was conducted on the premises where she used to work; she encountered employees of the City of Revere. She arrived for her deposition early.   She was personally denied admission to the building by Mayor Thomas Ambrosino.  She was, on the occasion of that deposition, in circumstances that "arouse(d) recollections of the trauma."  The observations that the Assistant City Solicitor made at Page 1572 clearly describe a deponent with Post Traumatic Stress Disorder(PTSD). Her responses were appropriate.  She is responding to the stress of her circumstances and a concentrated period of stressful depositions. The Assistant City Solicitor, nonetheless,  filed his Third Memorandum Re:188 with six (6) exhibits on June 23, 2006 seeking sanctions, the day after he conducted the June 22, 2006 deposition of  the Plaintiff, Terri Pechner-James. **Docket No. 211.** He is asking the Court to punish the Plaintiffs for their disability.

### Conclusion

The Court has allowed the Assistant City Solicitor extraordinary latitude during discovery. That latitude has not led to a defense to the municipal liability of the Defendants as defined in <u>Gonsalves v City of New Bedford</u>, 939 F. Supp. 915 (1996). The Plaintiffs have provided almost four hundred responses to interrogatories. Plaintiff, Terri Pechner-James, has attended an unprecedented nine (9) depositions. Plaintiff, Sonia Fernandez, attended an unprecedented eight (8) depositions.

In <u>Sentry Insurance v Shivers</u>, 164 F.R.D. 255, 256. (D. Kansas 1996) the Court, while ruling for the Plaintiffs on the burden of proof, stated the following: " The court will generally not require a deponent to appear for a second deposition, however, absent some showing of a need or good reason for doing so." Lone Star Indus, v River's Bend Red-E-Mix, Inc., No. 90-2349-V, unpublished op. at 4 (D. Kan. Oct 6, 1992). "Scheduling a second deposition of the same person without a showing of good reason will generally support a finding of annoyance and undue burden or expense." TBG Inc. v Bendis, No. 89-2423-EEO, unpublished op. at 2-3 (D. Kan. Feb. 17, 1993).

For the reasons stated in this memorandum the Plaintiffs need and deserve the court's protection.  They therefore request  that this court enter the protective order requested.

_____
James S. Dilday, Esq.
27 School Street, Suite 400
Boston, MA 02108
(617) 227-3470