UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

C.A. NO. 03-12499 MLW

```
---------------------------------
TERRI I. PECHNER-JAMES and    )
SONIA FERNANDEZ,              )
            Plaintiffs        )
                              )
V.                            )
                              )
CITY OF REVERE, et al.,       )
            Defendants        )
---------------------------------
```

MOTION OF PLAINTIFF, TERRI I. PECHNER-JAMES, TO
DISSOLVE ALLEGED ATTORNEY'S LIEN OF CARLTON J.
DASENT AND TO ORDER ENFORCEMENT OF THE PARTIES' SETTLEMENT
NEGOTIATED WITH MAGISTRATE-JUDGE MARIANNE B. BOWLER

The plaintiff, Terri I. Pechner-James (Pechner-James), hereby moves that the Court: (1) dissolve the attorney's lien of Carlton J. Dasent (Dasent), filed on October 29, 2007, and (2) order enforcement of the parties settlement negotiated with Magistrate-Judge Marianne B. Bowler on September 27, 2007. As grounds therefor, Pechner-James states:

1. On September 27, 2007, James-Pechner and her counsel met with the defendants and their counsel in Judge Bowler's courtroom for the purpose of mediating the above-captioned action.[1] At the mediation, and in the presence of Judge Bowler, Pechner-James agreed to accept $100,000 to settle the case, and her present counsel, Attorneys Unitt, Sacco, and Malaguti of the

---

[1] Plaintiff, Sonia Fernandez's mediation was conducted separately.

Crest Group, LLC, agreed to waive their written contingent fee agreement and split a 25% contingent fee award from the settlement award with prior counsel, Attorneys James S. Dilday. Attorney Dilday had previously co-represented Pechner-James with Carlton J. Dasent until Mr. Dasent was disbarred on June 12, 2005.[2]

2. In order to confirm that the settlement was acceptable to prior counsel, Judge Bowler telephoned Attorney Dilday from a speaker phone in her lobby, in the presence of Pechner-James and Attorneys Unitt and Sacco, and asked Attorney Dilday if he would agree to split with the Crest Group a total fee of $25,000. Dilday so agreed.

3. On that conference call Attorney Dilday did not state that he and Mr. Dasent now were somehow working under separate fee agreements or that he lacked full authority to settle the fee portion of the settlement. Nor did Attorney Dilday suggest that it would be necessary to include Mr. Dasent in the fee division conversation. The two of them had worked in tandem throughout the case and were clearly agents for each other in terms enforcement of the contingent fee agreement. Everyone at the mediation understood that Attorney Dilday and Mr. Dasent would work out their division of the $12,500 between the two of

---

[2] A copy of Mr. Dasent's on-line Massachusetts Board of Bar Overseers Attorney Status Report (showing disbarment) is attached as Exhibit "A."

2

them just as would Attorneys Unitt and Sacco. Attorney Dilday did nothing to suggest that this was not the case. Indeed, it would have been absurd for Pechner-James to settle the case without a full resolution of the attorneys' fees.

4. It is beyond dispute that Attorney Dilday and Mr. Dasent held themselves out to be co-counseling the case throughout the litigation. Attached as Exhibit "B" is a copy of the contingent fee agreement executed by Mr. Dasent and Ms. Pechner-James, which identifies Attorney Dilday and Attorney Dilday as co-counsel. Specifically, its terms demonstrate that Attorney Dilday and Mr. Dasent agreed *to share any contingent fee awarded*. It lists them as having the same address and same telephone number. Moreover, the Complaint they filed in this action also lists them as having the same address and same telephone number; the signature page of that Complaint is attached as Exhibit "C."

5. Pechner-James made various payments by check for costs throughout the litigation and, although made to Attorney Dilday or then-Attorney Dasent, payments were made at Attorney Dilday's office for work that was performed by both attorneys. Attached as Exhibit "D" is a copy of various checks - both front and back - showing that they were deposited into the same account.

6. The belief of everyone participating in the mediation that Attorney Dilday had the authority to settle the entire

3

claim for attorneys' fees for both him and Mr. Dasent was reasonable and based on the conduct of Attorney Dilday and Mr. Dasent. Based on the agreement reached at mediation and Attorney Dilday's agreement reached over the telephone, counsel for Pechner-James signed a Stipulation of Dismissal with the Court on October 2, 2007.

7. Counsel for Pechner-James received the $100,000 settlement check and were ready to distribute the Dilday-Dasent portion when, shockingly, Dasent filed a Notice of Attorney's Lien with the Court on October 29, 2007. Even more shocking, however, was the fact that, a month after he had agreed to split the attorneys' fees with the Crest Group, *Dilday filed the attorney's lien documents on Dasent's behalf*. Attached as Exhibit "E" is a copy of the Notice of Electronic Filing showing the Notice of Attorney's Lien "transaction" being filed by "Dilday, James on 10/29/2007 at 1:15 PM EDT." Perhaps most shocking of all, however, is that the amount of the lien exceeds the entire amount of the settlement.[3]

---

[3] Furthermore, the paperwork supporting the lien clearly shows: (1) Mr. Dasent claims to have performed legal work that is duplicative of work that Attorney Dilday already claimed to have performed in his attorney's lien materials; (2) Mr. Dasent is seeking a lien *in this case* for work that clearly is unrelated to this case; (3) Mr. Dasent is seeking a lien for work he claims to have performed after he was disbarred on June 6, 2006; and (4) the notices of lien and supporting paperwork of Mr. Dasent and Attorney Dilday are very similar in terms of style and substance.

4

8. It appeared to the Crest Group that Attorney Dilday and Mr. Dasent were implementing some type of scheme to obtain more than the $12,500 they had agreed to on September 27, 2007. The Crest Group was not sure whether Attorney Dilday and Mr. Dasent were looking to achieve this by reaching the Crest Group's share of the attorney's fees settlement or by seeking more from Pechner-James's share of the settlement. Given the harsh sanctions for releasing "liened" funds, M.G.L. Ch. 221 § 51, Attorney Dilday's action caused the Crest Group to leave the entire $100,000 in an IOLTA account and seek clarification as to its ethical obligations from the Board of Bar Overseers. Attorney Sacco was advised to release to the client two-thirds of the award immediately,[4] which the Crest Group did, and then sort out the issue of attorney's fees without unduly burdening the client.

9. On November 1, 2007, despite having thrown the agreement on attorneys' fees into disarray two days earlier by filing an attorney's lien on Mr. Dasent's behalf, Attorney Dilday wrote to the Crest Group demanding immediate release of the $12,500. A true and accurate copy of that letter is attached as Exhibit "F." Amazingly, Attorney Dilday, who filed

---

[4] The logic of Bar Counsel was that under no circumstances could the attorneys together take attorneys' fees from the client in excess of the one-third contemplated under the respective contingent fee agreements.

5

the Dasent lien himself, now stated that he did "not speak for Carlton Dasent, and he is not a party to this release of claims. . . ."

10.  Attorney Dilday and Mr. Dasent are not being forthright in terms of the settlement agreement reached, and in terms of the attorney's lien they filed on October 29, 2007. The Crest Group would like to release the $12,500 to Attorney Dilday and Mr. Dasent, and pay out the remainder of the settlement to Pechner-James, but the recent actions of Attorney Dilday and Mr. Dasent make it clear that they are working together (without admitting it) to acquire fees in excess of that agreed to, either from the Crest Group's share of the attorneys' fees or from Pechner-James herself.  The Crest Group hereby offers to pay the $12,500 immediately if both Attorney Dilday and Mr. Dasent release it, its attorneys and Pechner-James from any claim for additional fees.

WHEREFORE, the plaintiff, Terri I. Pechner-James, hereby respectfully requests that the Court:

1.  Determine that Attorney Dilday had the authority, apparent or actual, to settle the question of attorneys' fees on behalf of Mr. Dasent;

2.  Determine that Attorney Dilday did, in fact, agree to settle any claim he and Mr. Dasent might have for

attorneys' fees for a total of $12,500, and that such settlement is enforceable; and

3. Dissolve the attorney's lien in favor of Mr. Dasent.

If the Court is not inclined to enforce the agreement made by Attorney Dilday to settle claims for attorneys' fees as the plaintiff requests a full evidentiary hearing with testimony from Attorney Dilday and Mr. Dasent to resolve the following issues: (1) reconciliation of Mr. Dasent's claimed legal work that is duplicative of Attorney Dilday's claimed legal work; (2) Mr. Dasent's claim that he is entitled to a lien in this case for work that clearly is unrelated to this case; and (3) Mr. Dasent's claim that he is entitled to a lien for work he claims to have performed after he was disbarred on June 12, 2005.

In addition, Pechner-James would like to examine in such a hearing the issue whether Attorney Dilday and Mr. Dasent are entitled to any attorneys' fees whatsoever. This Court ordered that an economist's report prepared for Pechner-James demonstrating over $1 million in lost earnings be kept out of evidence altogether because Attorney Dilday and then-Attorney Dasent, after multiple warnings, failed to produce the report in a timely fashion to opposing counsel during discovery.[5] The

---

[5] To add insult to injury, Pechner-James paid approximately $5,000 for that report and related costs.

Massachusetts Appeals Court case of *Kourouvacilis v. American Fed. Of State, Cty. & Munic. Employees*, 65 Mass. App. Ct. 521, 532, *appeal denied*, 446 Mass. 1108 (2006), suggests that an attorney is not entitled to a fee when his conduct in the case "impaired the value of the client's cause of action or otherwise imperiled the client's right to relief." The inability to get that report into evidence severely damaged Pechner-James's case and substantially reduced her settlement demand at mediation.

                                             Respectfully submitted,
                                             By Plaintiff's Attorneys:

                                           /s/ Peter Unitt
                                           _____
                                           Patrick Sacco, B.B.O. No.:659168
                                           Peter Unitt, B.B.O. No.:661941
                                           **The Crest Group, L.L.C.**
                                           600 West Cummings Park,
                                           Ste. 1000
                                           Woburn, Massachusetts 01801
January 2, 2008                         Ph(781)933-2122