840 CMR: PUBLIC EMPLOYEE RETIREMENT ADMINISTRATION

(5) At the election of the member and employer, the member's physician and employer's physician, may be present and may answer questions from the panel during the decision making process of the panel. Neither physician shall otherwise participate in the decision making process of the panel.

(6) If a member is unable to attend any scheduled medical panel examination the member shall notify the Commission and may request that the examination be rescheduled. The Commission will ordinarily grant requests for rescheduling only for extenuating circumstances such as death in the family or hospitalization or serious illness of the member, provided that appropriate documentation of such is provided to the Commission. If a request for rescheduling is denied by the Commission, and the applicant fails to appear at the scheduled examination, the member shall reimburse the Commission for the costs of that examination. Reimbursement may be waived if the Commission finds that there was just cause for the member's failure to appear.

(7) <u>Confidentiality</u>. Since the principal purpose of the examination is to discuss and evaluate the physical condition or mental health of the member, attendance at the examination shall be limited to the member and the medical panel physician(s), the employee's physician and the employer's physician. The member's attorney and the employer's attorney may attend the examination. The member may permit the presence of other individuals, provided that their presence will not disrupt the examination. No document received during the examination shall be made available to the public except as may be required by other laws and regulations applicable to such records.

(8) <u>Certification of Panel Findings</u>. The medical panel shall report its findings and recommendations to the Commission on certificates supplied by the Commission within 60 days after completing the examinations. Within five days of receiving a properly completed medical panel or physician report, the Commission shall forward the report to the retirement board for appropriate action.

(9) Restoration to Service of Sworn Members of the State Police. The restoration to service process for sworn members of the State Police is provided for in G.L. c. 32, § 26. Retirees who would be restored to positions of sworn State Police Officers are to be evaluated once each year during the first two years after retirement, once every three years thereafter, or at any time upon written request. Any retiree who has been retired for disability under the provisions of G.L. c. 32, §§ 6, 7, or 26 for more than ten years, and has during such time complied with the evaluation requirements, shall not be required to participate in any further evaluations. The Commission's comprehensive medical evaluation and restoration to service process may involve examinations by four physicians. A single physician may examine the retired State Police Officer in the comprehensive medical evaluation process and three physicians in the restoration to service process. Two of the three physicians in the restoration to service examination will be selected by the Commission and the third physician will be the State Police Surgeon. All physicians involved in the process must consider the Massachusetts State Police Officer's Medical Fitness Standards and Essential Task List, the Massachusetts State Police Academy Physical Fitness and Preparation Guide, and Physical Training Protocol when determining if a retiree is able to meet all of the Massachusetts State Police requirements.

8/27/04

840 CMR: PUBLIC EMPLOYEE RETIREMENT ADMINISTRATION

If the retiree completes the Commission's restoration to service process and is found able to perform the essential duties of his or her job, the medical reports are forwarded to the Colonel of the State Police. The Colonel makes the final determination with regard to a retiree's restoration to service.

(10) <u>Re-evaluation of Retiree Able to Perform the Essential Duties of His or Her Position</u>. When a retiree is found able to perform the essential duties of the position from which he or she retired, the Commission will notify the retiree, the retirement board, the employer, and the Commonwealth's Division of Human Resources. Some time may pass before a position becomes available and the retiree is actually restored to service. In the interim, a Commission case manager and a physician selected by the Commission will monitor the retiree's medical status. Every six months, the retiree will be asked to complete and return a health questionnaire to the Commission. The retiree will also be re-evaluated by a comprehensive medical evaluation physician upon any significant change in his or her medical condition and before returning to work. The goal is to assess the retiree's medical readiness to return to work and to minimize the possibility of missing a retraining opportunity.

10.16: <u>Modification of Retirement Allowance and Fair Amount of Outside Earnings and Potential Earnings Pursuant to M.G.L. c. 32, § 8(3)</u>

    (1) For purposes of 840 CMR 10.16, "regular compensation" means, regular compensation which would have been payable during the preceding year had the member continued in service in the grade held by him at the time he was retired.

    (2) For purposes of 840 CMR 10.00, "potential earnings" shall mean:
        (a) For a disability retiree who has been found able to return to his position, the amount that would have been received had he or she been reinstated to active service.
        (b) For a disability retiree who has completed a rehabilitation program, an amount that the member can potentially earn will be determined as a part of the rehabilitation program, after consideration of a disability retiree's functional capacity, age, education, and experience.

    (3) The Commission shall review all medical panel reports filed with respect to disability retirees, all earnings information submitted under M.G.L. c. 32, § 91A, and all reports submitted as the result of the completion of a rehabilitation program.

    (4) If the Commission finds that:
        (a) a retired member is engaged or is able to engage in gainful occupation, and
        (b) that the annual rate of his actual or potential earnings is less than his regular compensation as defined in this subdivision, but is more than the difference between such regular compensation plus the sum of $5,000, and the normal yearly amount of his retirement allowance, the yearly amount of his pension shall be reduced, and if his actual or potential earnings are more than such regular compensation, his pension shall be suspended.
    (5) If the Commission finds that a member has submitted earnings information pursuant to M.G.L. c. 32, § 91A indicating earnings in excess of regular compensation as defined by this regulation, the member's pension shall be reduced or suspended and shall not be reinstated or increased for a period of one year unless a report of a medical panel finds that the mental or physical condition of such member has deteriorated. If the annual rate of his earnings should later be changed, the yearly amount of his pension shall be further modified by reinstating, increasing, reducing, or suspending it, as the case may be.

8/27/04

840 CMR: PUBLIC EMPLOYEE RETIREMENT ADMINISTRATION

(6) For purposes of 840 CMR 10.00 and M.G.L. c. 32, § 8(3) the fair amount that a member retired for disability pursuant to M.G.L. c. 32, § 6 or 7 may earn or may potentially earn shall be annually adjusted for inflation. To accomplish this, the Commission will determine the increase in the consumer price index in the same manner as determined for purposes of M.G.L. c. 32, § 102 and shall increase by that amount the $5,000 referred to in 840 CMR 10.16(4) be used in calculating the modification of a disability retiree's allowance pursuant to M.G.L. c. 32, § 8(3). Each year the Commission will issue an advisory to the retirement boards that will identify the increase for the following year and describe the method used to arrive at the increase. Any increases applied to the $5,000 shall be permanent and any future increases will be applied to the permanent amount from the prior year.

10.17: Evaluation For Rehabilitation Pursuant to M.G.L. c. 32, § 8(1)(a)

(1) The Commission, may require any member retired for disability under the provisions of M.G.L.c. 32, §§ 6 and 7 to participate in an evaluation to determine whether the member is able to perform the essential duties of the position from which he retired or a similar job within the same department for which he is qualified without a medical or vocational rehabilitation program, or whether such member's return to his former or similar job within the same department would likely be expedited by participation in a medical or vocational rehabilitation program. The retirement board shall provide such information as the Commission shall require to assist it in determining whether a member shall be required to participate in a rehabilitation evaluation.

(2) The Commission may require an evaluation once per year during the first two year period next succeeding the date of retirement and once in each three year period thereafter, or at any time upon the written request by any disability retiree. The Commission may excuse a member from an evaluation if it determines that such examination is unwarranted based on the catastrophic nature of the member's illness or injury. Any such determination must be in writing. No member will be evaluated more frequently than once in any 12 month period.

(3) If the Commission determines that a retiree's return to active service might be expedited by participation in a medical or physical rehabilitation program, the retiree will be required to participate in a rehabilitation evaluation. The Commission shall schedule an appointment or appointments with rehabilitation evaluation specialists. The member shall be given 14 days notice of the time(s) and place(s) of the evaluation(s). Notice shall also be given to the retirement board.

(4) A rehabilitation evaluation shall include mental or physical examinations, vocational testing, meetings, and consultations with medical professionals, including the member's treating physician and vocational rehabilitation counselors as determined necessary by the rehabilitation evaluation specialist.

8/27/04

840 CMR: PUBLIC EMPLOYEE RETIREMENT ADMINISTRATION

(5) If a retired member refuses, without good cause to submit to any evaluation, the Commission shall notify the appropriate retirement board and his rights in and to the pension, M.G.L. c. 32, §§ 6 and 7 shall promptly be terminated by the board. The member shall first be given written notice and an opportunity to be heard by the board with respect to such termination.

10.18: Rehabilitation Pursuant to M.G.L. c. 32, § 8

(1) If following a rehabilitation evaluation pursuant to 840 CMR 10.17, the Commission determines that a retired member may benefit from rehabilitation program and that such a program is cost effective, the Commission shall advise the retirement board of its determination.

(2) The board shall provide the member with a rehabilitation program consisting of services appearing on a list of services approved by the Commission. All rehabilitation programs will include a determination of the member's potential earnings, taking into account the member's functional capacity, age, education, and experience. The retirement board shall pay the costs of the program (less any amounts payable under insurance policies of the member and less any scholarships or grants otherwise available.).

(3) Any member who is unreasonably denied access to such program may appeal such denial to the Contributory Retirement Appeal Board.

(4) If a retired member fails to complete a rehabilitation program without good cause, his rights in and to the pension provided for in M.G.L. c. 32, § 6 or 7 shall immediately be suspended.

(5) Upon completion of the rehabilitation program the Commission will notify the retirement board that a medical panel examination will be scheduled to determine if the member can perform the essential duties of the position from which he or she retired.

(6) The Commission will appoint a medical panel to examine the member to determine the scope of the member's physical capabilities in light of the completed rehabilitation program and whether the member is able to perform the essential duties of his or her job or the essential duties of a similar job within the same department given the member's condition.

(7) If a member fails to appear at any required examination without good cause, all his rights in and to the retirement allowance provided for in M.G.L. c. 32, § 6 or 7 shall be terminated by the board. The member shall first be given written notice and an opportunity to be heard by the board with respect to such termination.

10.19: Rehabilitation Pursuant to M.G.L. c. 32, § 21

(1) Voluntary rehabilitation programs for disability retirees shall be developed in cooperation with the State Human Resources Division and the Industrial Accident Board and made available to any disability retiree seeking rehabilitation.

8/27/04

840 CMR: PUBLIC EMPLOYEE RETIREMENT ADMINISTRATION

(2) Upon receipt of a request for rehabilitation from a disability retiree, the Commission shall provide an evaluation to determine whether the member might benefit from a medical or vocational rehabilitation program approved by the Commission. The Commission may require any such member to be examined and evaluated by a physician qualified to render rehabilitation services and/or by a vocational counselor selected by the Commission. The physician and/or both shall recommend the need for and nature of any such rehabilitation program. If the Commission determines that such member might benefit from any such program, it shall so notify such member and the retirement board.

(3) The board shall provide the member with a rehabilitation program consisting of services appearing on a list approved by the Commission of public or private rehabilitation agency(ies) having rehabilitation programs suitable for such member. The member shall meet with the agency selected and shall cooperate in the design of a suitable rehabilitation program. All rehabilitation programs will include a determination of the member's potential earnings, taking into account the member's functional capacity, age, education, and experience.

(4) If the board determines that the retired member may benefit from such rehabilitation program, and that the program is reasonable in its terms and cost, the board shall approve and offer to provide and pay for such program (less any amounts payable under insurance policies of the member and less any scholarships or grants otherwise available.) The retirement board shall submit the rehabilitation program designed for the member, including detailed cost estimates, to the Commission for review.

(5) If the board determines that the retired member shall be denied access to a rehabilitation program, the board shall so advise the member in writing, detailing its reasons for the denial. The member may appeal the board's denial to the Commission. The appeal must be in writing and must be filed with the Commission within 15 days of the board's denial. The Commission shall review the matter and make its determination within 60 days of receipt of the member's appeal. If after review the Commission determines that such member might benefit from such rehabilitation program, the Commission shall approve and offer to to provide and pay for such program.

(6) If the Commission approves the rehabilitation program offered by the board, the Commission shall reimburse the board for the costs of the program.

(7) The retirement allowance of a member participating in a rehabilitation program approved by the Commission shall be not be reduced or modified pursuant to M.G.L. c. 32, § 8(3) or § 91A on account of actual or potential earnings arising out of such rehabilitation program.

10.20: Essential Duties

In connection with all applications for disability retirement and evaluations, re-evaluations or re-examination of disability retirees in connection with restoration to active service or participation in a rehabilitation program, a determination of the essential duties of the relevant job or position shall be made. The determination of what constitutes an essential duty of a job or position is to be made by the employer, based on all relevant facts and circumstances and after consideration of a number of

8/27/04

840 CMR: PUBLIC EMPLOYEE RETIREMENT ADMINISTRATION

factors. The employer will identify and delineate the duties the employer deems to be essential to the job or position under consideration.

The term "essential duties" as used in M.G.L. c. 32 and in all regulations promulgated by the Commission shall mean those duties or functions of a job or position which must necessarily be performed by an employee to accomplish the principal object(s) of the job or position. The essential duties of a position are those which bear more than a marginal relationship to the position. In making the determination as to whether a function or duty is essential, the employer shall consider and provide documentation to include, but not be limited to:

(a) The nature of the employer's operation and the organizational structure of the employer;
(b) Current written job descriptions;
(c) Whether the employer requires all employees in a particular position to be prepared to perform a specific duty;
(d) The number of employees available, if any, among whom the performance of the job function can be distributed;
(e) The amount of time that employees spend performing the function;
(f) Whether the function is so highly specialized that the person in the position was hired for his or her special ability to perform the function;
(g) The consequences of not requiring the employee to perform the function;
(h) The actual experience of those persons who hold and have held the position or similar position; and
(i) Collective bargaining agreements.

If the State Human Resources Division has promulgated or promulgates a list or description of essential duties for a position that is consistent with those of the member's position, the employer shall submit such list or description as the essential duties for the position in question.

10.21: Failure to Provide Information or Documents, Violation of Regulations

If a member of the retirement system willfully fails to provide information or documents required by the provisions of M.G.L. c. 32 or by 840 CMR 10.00, his or her allowance may be suspended until such information or documents are provided. Failure to provide information or documents required by 840 CMR 10.00 by any person, employer, governmental unit, retirement board, retirement board member or other entity shall be considered a violation of 840 CMR 10.00.

REGULATORY AUTHORITY

840 CMR 10.00: M.G.L. c. 7, § 50; c. 32, §§ 6, 8 and 21.

8/27/04