Exhibit U- Atty Collins Treatise on the chief's Guide to Injured on duty. Chapter 2

Case 1:03-cv-12499-MLW     Document 286-27     Filed 01/23/2008     Page 1 of 9

Addendum Sheet
To the
Employer's Statement Pertaining to a
Member's Application for Disability Retirement

In the Matter of:

Terri Pechner-James
SS# 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

Copy of Atty. John Collin's Treatise on the Chief's Guide to Injured on Duty

# Chapter 2 - Psychological Incapacity

*At least where a physical injury initially is also involved, a police officer is entitled to receive Section 111F benefits for a psychological incapacity.*

*At the time Section 111F was enacted, there is no doubt that one of its principal motivations was to protect police and fire personnel from the effects of the physical dangers of their work. To date, no appellate court decision has recognized a purely psychological disability as coming under §111F. Perhaps that is because the courts are waiting until the legislature decides to expand the scope of the law. It could be that the "right" case has not yet presented itself. In any event, at present IOD leave appears to be available only to workers who experience a physical injury, at least initially.*

In the 1979 Appeals Court case of *English v. Board of Selectmen of Watertown*, the court held that the plaintiff firefighter was entitled to continue to receive Section 111F leave for his back in-

jury even though his back pain had subsided to a point at which the pain had only a psychiatric basis and no longer an orthopedic one.[1] The court ruled that Section 111F benefits are available to covered employees who suffer from mental or nervous disorders arising out of employment, where such injuries are the result of physical trauma.[2] It also noted an orthopedic surgeon's opinion that the firefighter's disability was not orthopedic and that he should be evaluated by a psychiatrist was not a finding by a *municipally designated physician* that incapacity no longer existed.

The applicability of Section 111F to mental and nervous disorders arising out of employment in the absence of physical trauma is less clear now than it was at the time of the court's *English* decision. Part of the Workers' Compensation Act was amended in 1985 to prohibit similar benefits under the workers' compensation system. M.G.L. c. 152, § 59 provides, "No mental or emotional disability arising principally out of a bona fide personnel action, including a transfer, promotion or demotion, or termination, except such action which is the intentional infliction of emotional harm, shall be deemed to be a personal injury within the meaning of this chapter."[3]

M.G.L. c. 152, § 59, in effect, overruled *Kelly's Case*[4], which had been decided earlier in the same year. In *Kelly*, the plaintiff was an employee who had an emotional breakdown as a result of being told that she would be laid off from one department and transferred to another department. The court had held that the employee's breakdown was a compensable injury arising out of and in the course of her employment within the meaning of the Workers' Compensation Act.

While police officers are not covered under M.G.L. c. 152,[5] provisions of the Workers' Compensation Act are often used to interpret M.G.L. c. 41, § 111F. Thus, the provisions of M.G.L. c. 152, § 59, or the policy underlying the statutory change, arguably could apply to applications for benefits under M.G.L. c. 41, § 111F. If so, this would effectively bar police officers from entitlement to Section 111F benefits for a purely psychological incapacity. Certainly this might be the case if the psychological incapacity resulted solely from a personnel action such as a shift change or reassignment to a different specialist position. However, as the court points out in *English*, police officers may be entitled to Section 111F benefits for psychological incapacity that is causally related to physical injuries arising from their employment.

In the 1998 decision of *Sugrue v. Contributory Retirement Appeals Board*, the Massachusetts Appeals Court upheld the denial of an application for a disability retirement involving alleged work related stress.[6] The court concluded that the cumulative stress created by the retiree's humiliating encounters and job conflicts with his superiors was not an identifiable condition that was common and necessary to all or a great many occupations. Also, it ruled that the lower court had properly rejected the contention that the retiree's psychiatric condition was the natural and proximate result of a "personal injury" he had sustained by reason of exposure to an uncommon identifiable condition while in the performance of his duties.

# POST TRAUMATIC STRESS DISORDER

The most recent versions of the psychologist's "bible" of recognized disorders, DSM IV, lists Post Traumatic Stress Disorder (PTSD) as an officially recognized psychological illness. It specifies the following diagnostic criteria:

A. The person has experienced an event that is outside the range of usual human experience and that would be markedly distressing to almost anyone, e.g., serious threat to one's life or physical integrity; serious threat or harm to one's children, spouse, or other close relatives and friends; sudden destruction of one's home or community; or seeing another person who has recently been, or is being, seriously injured or killed as the result of an accident or physical violence.

B. The traumatic event is persistently re-experienced in at least one of the following ways:

1. Recurrent and intrusive distressing recollections of the event (in young children, repetitive play in which themes or aspects of the trauma are expressed)
2. Recurrent distressing dreams of the event
3. Sudden acting or feeling as if the traumatic event were recurring (includes a sense of reliving the experience, illusions, hallucinations, and disassociative (flashback) episodes, even those that occur upon awakening or when intoxicated)
4. Intense psychological distress at exposure to events that symbolize or resemble an aspect of the traumatic event, including anniversaries of the trauma

C. Persistent avoidance of stimuli associated with the trauma or numbing of general responsiveness (not present before the trauma), as indicated by at least three of the following:

1. Efforts to avoid thoughts or feelings associated with the trauma
2. Efforts to avoid activities or situations that arouse recollections of the trauma
3. Inability to recall an important aspect of the trauma (psychogenic amnesia)
4. Markedly diminished interest in significant activities (in young children, loss of recently acquired developmental skills such as toilet training or language skills)
5. Feeling of detachment or estrangement from others
6. Restricted range of affect, e.g., unable to have loving feelings
7. Sense of a foreshortened future, e.g., does not expect to have a career, marriage, or children, or a long life

D. Persistent symptoms of increased arousal (not present before the trauma), as indicated by at least two of the following:

1. Difficulty falling or staying asleep
2. Irritability or outbursts of anger
3. Difficulty concentrating
4. Hypervigilance
5. Exaggerated startle response
6. Physiologic reactivity upon exposure to events that symbolize or resemble an aspect of the traumatic event (e.g., a woman who was raped in an elevator breaks out in a sweat when entering any elevator)

E. Duration of the disturbance (symptoms in B, C, and D) of at least one month.

**Specify delayed onset** if the onset of symptoms was at least six months after the trauma.

---

There are no appellate level court decisions involving PTSD (or other purely psychological disorders.) While some Superior Court decisions have involved the issue, their outcomes were often ambiguous at best. In the 1992 case involving the Town of Sterling, the Superior Court rejected an officer's claim that he actually suffered from PTSD. The Town's witnesses, a psychologist and a psychiatrist, both concluded that the officer's claim was a fabrication. The officer also claimed that the Chief's actions in disciplining him caused him stress. Although the Town also objected to the claim on the basis that §111F does not cover purely psychological situations, the court never had to rule on that issue since it found the officer was not disabled.

A 1994 Superior Court Case involving a Malden firefighter apparently was settled before a court ruling was rendered on the employee's PTSD claim.[7] The firefighter claimed that he experienced panic attacks, memory

loss of basic job functions, and fear of entering burning buildings. he stated that these symptoms developed over a two year period following a "backdraft explosion" which sent flames rolling over his head. The fire trapped two other firefighters in the building and the employee rescued these individuals.

There were conflicting psychological reports. One concluded that the employee suffered from PTSD. Another found that the disability was not work related. The City did not argue that §111F does not cover purely psychological disabilities. Therefore, faced with conflicting factual issues, the court declined to dismiss the suit and was prepared to allow a trial before a jury. The case was settled before trial so no ruling resulted.

Another Superior Court case involving a firefighter's claim for IOD for stress also resulted in no decision from the court.[8] Following a disagreement of how a vacancy in the Lieutenant's position should be filled, one candidate left work for two weeks from the "stress." The court dismissed the case on a procedural ground, concluding that it lacked jurisdiction. This is because the collective bargaining agreement incorporated c. 41, §111F by reference. Therefore, the firefighter was required to proceed through the grievance procedure to arbitration. he had filed this court case upon learning from the Town that it denied his grievance and would submit the same to arbitration.

## *PRACTICE POINTERS*

Chiefs should not approve a request for 111F leave for stress or other purely psychological complaints. Even if certain psychological difficulties are found sufficiently disabling for retirement law purposes, this does not require them to be given identical treatment under § 111F. To date, no appellate level court decision in Massachusetts has interpreted § 111F as providing for paid leave for a purely psychological "injury" regardless of how disabling it might be. Reportedly, the insurance company which provides most of the coverage to municipalities for 111F benefits will not reimburse a city or town for wages or medical bills where the claim is solely psychological.

It is possible that a court may rule that certain psychological situations are compensable under § 111F, even without the need for an initial physical trauma of some sort. For example, Post Traumatic Stress Disorder (PTSD) following the extraction of badly burned or injured children from a car wreck or house fire might be the kind of psychological disability a court will find covered by Section 111F. Conversely, it is unlikely that a

court will grant paid leave to an employee who is suffering from stress resulting from interpersonal conflicts with the chief or co-workers or even the job in general. Rather than attempting to create a precedent in guessing at what a court might do, chiefs should deny all purely psychological claims for 111F benefits and let the courts or legislature do their jobs.

## *TYPICAL SCENARIOS*

### *Example*

*An employee's spouse calls to say that a police officer will not be reporting for work due to "stress." She tells you that the individual is under a doctor's care and it is unclear how long he/she will be out of work.*

### *Suggestion*

The chief should explain that the employee is entitled to use accrued sick leave for a psychological condition that renders him/her unable (unfit) to work. The chief should request that some written confirmation of the employee's condition and the expected duration of absence be prepared by the doctor or counselor. If the collective bargaining agreement addresses the subject of doctors' notes, this should be followed.

In the event an application for IOD leave is filed, the chief should consult labor counsel and inform the Selectmen, Manager or Mayor. Remind them that, to date, no appellate level court decision has ruled that a purely psychological disability (i.e. one that did not have a physical origin) is covered by §111F.

An application for 111F leave based on psychological disability should not be approved by the chief. This is the case regardless of the cause of such disability. Unless and until the courts rule that certain non-physical "injuries" are covered by §111F, a chief or municipal employer is justified in denying such requests.

The chief could also point out to the employee, family and union that an application for a disability retirement might be considered. While "stress" does not appear to qualify for IOD leave, it reportedly has served as the basis for the approval of disability retirement applications.

[1] *English v. Board of Selectmen of Watertown*, 8 Mass. App. 736, 397 N.E.2d 1112 (1979)

[2] 397 N.E.2d at 1114 (*quoting Fitzgibbon's Case*, 373 N.E.2d 1174, 1177 (Mass. 1978)

[3] *Larson on Workers' Compensation*, section 42.23(3) (1991]

[4] 394 Mass. 684, 477 N.E.2d (1985)

[5] *Eyssi v. City of Lawrence*, 416 Mass. 194, 618 N.E.2d 1358 (1993).

[6] *Sugrue v. Contributory Retirement Appeals Board*, 45 Mass. App. Ct. 1, 694 N.E. 2d 391 (1998)

[7] *Hughes v. City of Malden*, Middlesex Superior Court Department, November 4, 1994.

[8] *Marcoux v. Town of Bellingham*, Worcester Superior Court Department, August 22, 1996.