EXHIBIT V

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

TERRI PECHNER-JAMES and          CIVIL ACTION NO : 03-12499MLW
SONIA FERNANDEZ

V

CITY OF REVERE ET AL

## PLAINTIFFS MEMORANDUM ON MUNICIPAL LIABILITY

The purpose of this memorandum is to provide the court with the legal theories and factual framework to support Plaintiffs claim of municipal liability.

**Introduction:**

Determining who is a policymaker for a municipality, in this case City of Revere, is "a legal question to be resolved by the trial judge before the case is submitted to the jury." Jett v Dallas Independent School District, 49 U.S. 701, 737. The court should consider, in making this decision, "the relevant legal materials including the state and local positive law, as well as the custom and usage having the force of law." Id at 737 [citing City of St. Louis v Praprotnik, 485 U.S. 112 (1988). The jury must then decide whether the decisions of the policymakers "caused the deprivation of rights…by acquiescence in a longstanding practice or custom which constitutes the "standard operating procedure" of the local governmental entity. A single decision of a policymaker may establish municipal policy binding the City. Pembauer v City of Cincinnati, 475 U.S. 469 (1986).

Policy making authority may be delegated only when a subordinate's discretionary powers are not limited by the official policy and are not subject to review. Propratnik at 112; Mandel v Doe, 888 F2d 783 (11 Cir. 1989). The court should look to the positive law of the state and municipality in determining who has policy making authority. A city may "spread policymaking among various areas." Pembauer at 1300. The Ninth Circuit

held that a Sheriff had policymaking authority over training peace officers in the use of force while the sheriff did not have final policy making authority in personnel matters. Davis v Macon County, 927 F.2d 1473 (9th Cir)

(1) Identifying the Relevant Policymaker or Policymakers

The leading case in this Circuit on the issue of municipal policymaker or policymakers is Gonsalves v City of New Bedford, 939 F. Supp. 915 (1996). The Court in Gonsalves established the interlocking but separate roles of the judge and the jury in identifying the policymakers in a particular case. The Court stated:

> It is the duty of the court to interpret state law and decide before instructing the jury who the policymaker is for the purpose of the City's business at issue in this case. Citing Jett.

The Court concluded:

> In deciding who the final policymaker is, Jett instructs the court to look at the relevant positive law and also to the custom in the City of New Bedford.

The court, in this case, must look to the relevant positive law and also to the custom in the City of Revere to identify the policymaker or policymakers for the area of the City's business at issue in this case. Each Plaintiff states four counts. Each count is based upon injuries caused by their supervisors in the Revere Police Department; the legal basis of their complaint is M.G.L.c. 151B § 4 and its parallel federal provision 42 U.S.C 2000(e)-2.

(2) Policymaking can be shared and can vary with the area of responsibility in question.

The First Circuit ruled in Bardonaro v McLoed, 871 F2d 1151, 1161 (1st Cir. 1989) that both the Mayor and the Chief of Police were policymakers for the city regarding law enforcement matters. The United States Supreme Court stated the same principle in Praprotnik at 126. This Court ruled in Gonsalves v City of New Bedford, supra. that

2

policymaking in <u>Gonsalves</u> was shared between the New Bedford City Council and the Mayor. Id at 917.  The Mayor and the City Council  shared responsibility   for civil rights violations and for other  violations of 42 U.S.C. § 1983 in the <u>Gonsalves</u> case.

<u>(3) The jury's role</u>

It is for the jury to decide whether the policymaker or policymakers decision has caused the deprivation of rights at issue by policies which affirmatively command that those violations occur or by acquiescence in a long-standing practice or custom which constitutes the "standard operating procedure" of the local entity. This is the role of the jury after the  Court has identified the final policymakers.

Plaintiffs have filed four counts seeking damages based upon M.G.L.c. 151B § 4 and U.S.C § 2000(e)-2.  Their injuries were caused by the City of Revere and its acquiescence in and its deliberate indifference to long standing practices or customs on the issues of sexual and racial harassment.

The Revere Police Department did not have a sexual harassment policy or procedure when the Plaintiffs began their employment with the Revere Police Department; the department did not have a maternity leave policy; it did not and still may not have bathroom facilities for female officers and female members of the public. These deficiencies demonstrate the habitual and longstanding indifference practiced by the policymakers. Whether these issues and the issues resolved in the  prior state adjudication constitute violations of M.G.L.c. 151B § 4 and 42 U.S.C. § 2000(e)-2 are properly within the province of the jury.

<u>(4) The Defendants Sexual Harassment Policy of 1999 supports the identification of the policymaker(s).</u>

The Defendants finally published a sexual harassment policy dated April 1, 1999. The Defendants Sexual Harassment Policy  Section 14.6 provides for contacting the

Appointing Authority [Mayor/City Council] or designee, under appropriate circumstances thereby recognizing the role of the elected officials of the City of Revere.

The document lists the following as examples of sexual harassment:

> I. Displaying sexual suggestive pictures, objects, cartoons or posters**. [See Paragraphs 62, 63, 64] of Plaintiffs complaint.**

> M. Sexual epithets, jokes, written or oral references to sexual conduct, gossip regarding one's sex life; comments on an individual's body, comments about an individual's sexual activity, deficiencies or prowess. **[See Paragraphs 35, 36-47] of Plaintiffs complaint.**

> N. Language in another's p[resence or conduct even if not directed to said individual-once it is known that [s]he objects**. [See Paragraphs 52-64 & Paragraphs 70-77] of Plaintiffs complaint.**

The violations described in the Policy manual occurred and are described in detail in the Plaintiffs complaint. The Defendants remain indifferent to these violations. Their denial continues, up to and including their responses to these pleadings. The Defendants remain committed to denial and deliberate indifference, even in the face of state adjudications and overwhelming evidence of violations of their own stated policies.

<u>(5) The legal structure of the Plan B charter of the City of Revere placed the responsibility for the Plaintiffs injuries squarely upon th elected officials of the city.</u>

It is an undisputed fact that the City of Revere adopted a Plan B form of government. It is also an undisputed fact that the Plan B form of government was in effect when the plaintiffs began their employment and when they were discharged. **(See Mayor Thomas Ambrosino's Statement of Undisputed Facts and Attachments.)** The City of New Bedford also has a Plan B charter. That form of government was in effect when the events of <u>Gonsalves v City Of New Bedford</u> occurred. The Mayor and the City Council

of the City of Revere have the same relationship under the Plain B charter as the Mayor and the City Council in <u>Gonsalves</u>. The Mayor of the City of Revere is an elected official, the Mayor of the City of New Bedford is an elected official. The members of the Revere City Council are elected officials, the members of the New Bedford City Council are elected officials. The Chief of Police, in both cities, is appointed by their respective Mayors and confirmed by their respective City Councils.

Plan B Charters provide the following in M.G.L.c 43 :

> Section 58. There shall be a mayor, elected by and from the qualified voters of the city, who shall be the chief executive officer of the city.

> Section 59. The legislative powers of the city shall be vested in a city council. One of its members shall be elected by the council annually as its president.

The Revere Regulations provide the following:

2:09.10    Mayor-Powers and duties generally.
           The Mayor shall have the general powers and perform the duties as set forth in the charter and under the General Laws, or as may be prescribed by the provisions of this revision and other ordinances adopted by the city council.

2.60.30    Chief of Police
           A. The chief of police shall have the general charge and supervision of all officers and patrolmen and other personnel of the police department, shall have the precedence and control of the same whenever engaged in the same service and shall report forthwith to the mayor any violation of duty on the part of any member of the department.

           E. The chief shall comply with and execute the orders of the mayor.

5

In addition, on October 11, 2001, the Massachusetts Senate and the House of Representatives in General Court assembled passed Senate Bill 1886- An Act Providing Requirements for Appointment of the Chief of Police of the City of Revere which exempted the chief of Police from chapter 31 of the General laws (civil service system).. **See Affidavit of Walter H. Porr, Jr. and copy of the Massachusetts advance Legislative Service 2001 Mass ALS 102 attached.**

This legislation underscores the status of the Chief of Police in the City of Revere. The official who holds this position is an agent of the Mayor; he is required to "comply and execute the orders of the mayor", he is not protected by or subject to the provisions of the civil service system, he is not elected by the people of the City of Revere, he is accountable directly to the mayor who appointed him and the City Council that confirmed him.

Chief Reardon, the present Chief of Police, like his predecessors, is an appointed official; he was appointed by the present Mayor, Thomas Ambrosino and confirmed by the City Council. **Senate Bill-Section 2.** Any Chief of Police, like Defendant, Thomas Ambrosino or Chief Benoit in Gonsalves has a duty to "report forthwith to the mayor any violation of duty on the part of any member of the department." It was the Plaintiffs and officer, Kathy Fish, not the chief of Police, who reported the violations of their stated policy to the Mayor.

(6) The strict liability for employers established by the Supreme Judicial Court in College Town is consistent with this Court's ruling in Gonsalves.

The holding of strict liability in College Town, Div. of Interco., Inc. v Massachusetts Commission Against Discrimination, 400 Mass. 156, 508 N.E.2d 587 (1987) is consistent with this Court's ruling in Gonsalves v City Of New Bedford. The Mayor of the City of Revere appoints the Chief of Police, the City Council confirms the appointment. The Mayor and the City Council are clearly the employers of the Chief of Police. They confer upon him, by ordinance and otherwise, his authority over the personnel and departmental affairs.

6

The Supreme Judicial Court in College Town held that the employer is strictly liable for discrimination committed by those on whom it conferred authority. Id at 165. The Court also held that strict liability is consistent with the legislative intent of M.G.L.c 151B § 4 cited by the Plaintiffs in their complaint. The Mayor and the City Council of the City of Revere are liable for their own indifference, See Gonsalves v City of New Bedford, supra. and strictly liable See College Town, Div. of Interco., Inc. v Massachusetts Commission Against Discrimination, supra. for the injuries caused by those upon whom they conferred authority, including the chiefs of Police and the supervisory personnel of the department.

**Conclusion:**

The Mayor and the City Council of the City of Revere are liable for Plaintiffs injuries because of their deliberate indifference to the long standing practice of ignoring sexual harassment in the Revere Police Department. This deliberate indifference created the environment that caused the Plaintiffs injuries and the deprivation of rights stated in the Plaintiffs complaint. The policymakers are also strictly liable for the injuries caused by the Revere Police Department upon which they conferred authority.

The Mayor, as appointing authority, had both the power and the responsibility to review whether the legally necessary policies existed and whether they were being implemented and followed. The Revere City Council, the confirming authority, had both the power and the responsibility to investigate whether the appropriate policies existed and whether they were being properly implemented and followed. Neither policymaker fulfilled the legal requirement.

The City of Revere, like the City of New Bedford, has a legal structure that :

(1) gave the Chief of Police supervision of all officers, patrolmen and other personnel of the department; and

(2) required that the chief report to the Mayor any violation of duty on the part of the members of the department.

The Chiefs did not have the right, under state law and the ordinances of the City of Revere, to ignore the Plaintiffs complaints. Nonetheless, the Chiefs, as part of their standard operating procedure, consistently ignored their responsibility to report violations to their employer. It was the Plaintiffs and officer Kathy Fish who reported violations to the Mayor. The policymakers, Mayor and City Council, are therefore liable for their practice of deliberate indifference and strictly liable for the actions of the Plaintiffs supervisors in the Revere Police Department.

TERRI PECHNER-JAMES and
SONIA FERNANDEZ
By their attorney


_____
James S. Dilday, Esq.
27 School Street, Suite 400
Boston, MSA 02108
(617) 227-3470