**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**TERRI PECHNER-JAMES and SONIA FERNANDEZ,**
**Plaintiffs,**

**v.**

**CITY OF REVERE, THOMAS AMBROSINO, MAYOR, CITY OF REVERE POLICE DEPARTMENT, TERRENCE REARDON, CHIEF OF POLICE, BERNARD FOSTER, SALVATORE SANTORO, ROY COLANNINO, FREDERICK ROLAND, THOMAS DOHERTY, JOHN NELSON, JAMES RUSSO, MICHAEL MURPHY and STEVEN FORD,**
**Defendants.**

**C.A. No. 03-12499-MLW**

**DEFENDANTS, CITY OF REVERE'S AND MAYOR THOMAS AMBROSINO'S, OBJECTIONS AND MOTION TO STRIKE THE AFFIDAVIT OF SONIA FERNANDEZ**

NOW COME Defendants, City of Revere and Mayor Thomas Ambrosino, and hereby submit their objections to and motion to strike the Affidavit of Sonia Fernandez (Docket No. 284).

**Objections and Motion to Strike**

Defendants object to the affidavit *in toto* on the grounds that it is irrelevant. According to Fed. R. Evid. 402, "[e]vidence which is not relevant is not admissible." In order to be admissible, the proposed evidence must have a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

The essence of Plaintiff's motion for summary judgment is that certain administrative agency decisions have res judicata effect such that the issues of disability, permanence, causality, and loss of employment have already been determined and that the only issue left for resolution

is "whether the Defendants' conduct satisfies the four counts of Plaintiff's complaint." See Plaintiff's Motion for Summary Judgment, Docket No. 284. See also Plaintiff's Memorandum in Support, Docket No. 286, pages 16-20. Taking her motion on its face, then, the only "evidence" necessary would be the subject administrative agency decisions themselves. Since Plaintiff's affidavit is not relevant to the issues presented by her motion, it must be stricken.

**Specific Objections By Paragraph**

Fed. R. Civ. P. 56(e) states in relevant part that "[s]upporting . . . affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." As more fully demonstrated herein, the instant affidavit fails to comply with this rule in many and significant respects.

4. I was one of a group of seven (7) female officers who were hired by the Revere Police Department at the same time. Most of my fellow female officers are no longer employed by the Revere Police Department. Three (3) female officers, including myself, filed discrimination complaints with the Massachusetts Commission Against Discrimination (MCAD) based on the hostile environment of the Revere Police Department.

**Objection. Irrelevant.**

6. I pursued my professional objectives in spite of the hostile work environment of the Revere Police Department.

**Objection. Lack of foundation. Assumes facts.**

8. I was a new recruit at the time of the meeting. Chief Russo confronted me with a letter from an anonymous party. That letter accused me of drug use, accused my family of

criminal activities. I was alone during this meeting with the Chief. I had no legal representation at this meeting. I did not want to have my interrogation by the Chief to be recorded but the Chief decided to record it. **Paragraph 104 of Plaintiff's Verified Complaint.** The Chief never provided me with a copy of the interrogation.

**Objection. Irrelevant.**

9. I felt intimidated by the meeting and the interrogation; I feared for my new career. I knew that allegations of drug use and criminal conduct, even untrue, could derail my career and damages my reputation.

**Objection. Irrelevant.**

10. Chief Russo ended the interrogation by referring me to Dr. Barry who was a consultant for the Revere Police Department. Dr. Barry did not substantiate the allegations of Chief Russo.

**Objection. Irrelevant. Moreover, the statement mischaracterizes the allegations contained in the anonymous letter as the Chief's, as opposed to the letter writer's.**

11. Chief Russo was the highest ranking of my superiors in the Police Department. His conduct, as the Chief, affected my perception of myself and the hostility that I experienced in the Department.

**Irrelevant. Moreover, the second sentence is incomprehensible.**

12. The Citizen's Academy is a public relations forum conducted by the Department. This forum gives the Chief and other supervisors an opportunity to introduce new and subordinate officers to the general public.

**Objection. Irrelevant.**

18. The lack of departmental support that is crucial to police work was absent from my relationship with the superior officers. Captain Roland was one of my superiors. On one occasion in May 1996, he called me at home and instructed me to appear at Shirley Avenue to translate. He did not inform me that I was being called to a homicide scene.

**Objection. The statement contains facts on which Plaintiff Fernandez is not competent to testify, and assumes facts.**

20. Captain Roland's decision placed me, as a police officer, in danger by summoning (sic) to a homicide scene without proper information, uniform or weapon.

**Objection. The statement contains facts on which Plaintiff Fernandez is not competent to testify.**

21. After I arrived at the homicide scene, I noted that Officer Arcos and Officer Kevin Colannino, both of whom the Department had certified as Spanish-speaking, had not been summoned to the scene as translators.

**Objection. Irrelevant and assumes facts.**

23. Other supervisors commented on the inherent dangerousness of my position. Both Lieutenant Wallace and Sergeant Picardi agreed that Captain Roland placed me in a dangerous position at a homicide scene without a gun or uniform.

**Objection. Allegations contained in this statement are not made on personal knowledge and are based on inadmissible hearsay.**

24. The Shirley Avenue incident is not the only occasion that a supervisor placed me in a dangerous situation without proper equipment or support.

**Objection. The statement contains facts on which Plaintiff Fernandez is not competent to testify, and assumes facts.**

25. During the winter months of 1997, Captain Chaulk assigned me to "walking routes" at the Northgate Shopping Center. One winter night he ordered me to exit the cruiser and to walk, unaccompanied and without peer supporting the parking lot of the shopping center. **Paragraph 7 of Plaintiff's Verified Complaint.**

**Objection. Irrelevant.**

30. I have hearing loss. This fact was known to the Department when I was employed. It has been confirmed by several medical authorities including Beth Israel Deaconess Medical Center; that Center stated in a report dated July 11, 2000: "Additionally, the patient has decreased hearing in each ear which has been attributed to lead paint ingestion as a child. The left ear has a greater hearing loss than the right." **Exhibit D.**

**Objection. Plaintiff's statements contained in treatment notes are irrelevant and inadmissible. Further, evidence of medical conditions and the results of physical examinations are inadmissible in the absence of expert medical testimony. Since Plaintiff has disclosed no medical expert witnesses in this case and has no expectation of producing any such experts, such evidence is entirely incompetent and inadmissible.**

33. Lieutenant Foster also made hostile remarked that were personal in nature. On February 28, 2000, he entered the radio room where I was working and told me, angrily, to "pick up my hair." He remarked: "What do you think? You're special?" He further ordered me to get my hair off my shoulders or get it cut. I found his remark unrelated to my work, hostile in tone and personal in nature.

**Objection. Minor reprimands of this nature are entirely irrelevant.**

34. I was not the only female officer who experienced the hostility of the Revere Police Department. On January 7, 1999, I attended a meeting at the Revere Beachmont station.

The female patrol division requested this meeting. The purpose of this meeting was to bring to the attention of the Department the collective experiences of the female patrol division.

**Objection to the extent that allegations contained in this statement are not made on personal knowledge and are based on inadmissible hearsay.**

35. The meeting confirmed that other female officers were experiencing hostility and harassment from supervisors at the Revere Police Department. On January 14, 1999, Captain Chaulk and Captain Roland prepared a written report of that meeting. **Verified Complaint Exhibit D.**

**Objection. Allegations contained in this statement are not made on personal knowledge and are based on inadmissible hearsay.**

36. I read the report. The report reflected the content of the meeting. It documented that the other female officers were also experiencing hostility and harassment from the Revere Police Department.

**Objection. The document it refers to speaks for itself.**

37. After the meeting of January 7, 1999, I learned that two cruisers, one assigned to Terri Pechner-James and the other assigned to Lyn Curcio at night. The cruisers had been parked at the International House of Pancakes. All eight (8) tires had been slashed.

**Objection. Allegations contained in this statement are not made on personal knowledge and are based on inadmissible hearsay. Moreover, the alleged incident is irrelevant to any issue in the case.**

38. The report of this incident was traumatic. I felt intimidated by such a violent night attack on the automobile of fellow officers. My feeling of intimidation was increased because of the response of the Department.

**Objection. Allegations contained in this statement are not made on personal knowledge, are based on inadmissible hearsay, and assume facts. Moreover, the alleged incident is irrelevant to any issue in the case.**

39. I do not know the identities of the vandals. The Department also did not tell us that they investigated the incident or that they made a good faith effort to find the vandals. My feeling of insecurity and vulnerability as a female police officer was increased because the Department seemed indifferent to an obvious threat to lives of female police officers and deliberate damage to their property.

**Objection. Allegations contained in this statement are not made on personal knowledge, are based on inadmissible hearsay, and assume facts. Moreover, the alleged incident is irrelevant to any issue in the case.**

42. During the summer of 1996, the Revere Police Department had a softball match against the Saugus Police Department. Sergeant Picardi was on the Revere Police team. A member of the Saugus team said that he heard that Revere had a lot of women on the force. Sergeant Griffin agreed and added that "this one (referring to Sgt. Picardi) is fucking the Spanish one (referring to me)." This insensitive statement by one of my superiors in the Department was extremely distressing to me.

**Objection. Allegations contained in this statement are not made on personal knowledge and are based on inadmissible multilevel hearsay.**

46. I sought professional help in my effort to keep my job and to cope with the hostility of the environment in which I worked. At the North Suffolk Mental Health Association, I was treated by several professionals. The notes from the Association confirm that as late as April 7, 2003, I was suffering from "Chronic Depression and numbness," "insomnia," "mood

instability" and eating instability." **Exhibit F-North Suffolk Mental Health Association-11 items.**

**Objection. Plaintiff's self-serving statements contained in treatment notes are irrelevant and inadmissible. Medical diagnoses and opinions are inadmissible in the absence of expert testimony. Since Plaintiff has disclosed no medical or psychiatric expert witnesses in this case and has no expectation of producing any such experts, such opinions are entirely incompetent and inadmissible. Moreover, in the absence of expert testimony as to the cause of such symptoms, they are irrelevant.**

47. The notes from the Association will confirm that on April 14, 2003, that (sic) I complained of "crying spells, anger/irritability." The Notes also confirm that I experienced "multiple acts of hostility (racial slurs against Hispanic people, against Chelsea residents." The (sic) also reveal that I felt "belittled, mocked, and harassed due to [my] hearing disability."

**Objection. Plaintiff's self-serving statements contained in treatment notes are irrelevant and inadmissible.**

48. The Notes also reveal that I "felt overwhelmed by being sent into dangerous situations alone." This kind of treatment is commonly referred to as departmental betrayal.

**Objection. Plaintiff's self-serving statements contained in treatment notes are irrelevant and inadmissible. Further, statements and opinions concerning what Plaintiff terms "departmental betrayal" are inadmissible in the absence of expert testimony. Since Plaintiff has disclosed no expert witnesses in this case and has no expectation of producing any such experts, such statements and opinions are entirely incompetent and inadmissible.**

49. The Notes also confirm that I witnessed routine police tragedies, mutilated bodies and children dying in a fire; these tragedies were "all made worse by [my] colleagues coping

mechanism of "disrespectful" humor which was disrespectful to crime victims. Police work, even the tragedies, did not disable me. It was the persistent "disrespectful" attitude even when expressed as humor that made the environment of the Revere Police Department an impossible place in which to work.

**Objection. Plaintiff's self-serving statements contained in treatment notes are irrelevant and inadmissible.**

50. The Association Notes of April 14, 2003, confirm that I was diagnosed with panic, anxiety and moderate case of Post Traumatic Stress Disorder. I received therapy and medication for my diagnosed conditions.

**Objection. Medical diagnoses and opinions are inadmissible in the absence of expert testimony. Since Plaintiff has disclosed no medical or psychiatric expert witnesses in this case and has no expectation of producing any such experts, such opinions are entirely incompetent and inadmissible. Moreover, in the absence of expert testimony as to the cause of the alleged symptoms and conditions, they are irrelevant.**

51. I was also treated by doctors and psychotherapists at the Beth Israel Deaconess Medical Center/Healthcare Associates, 3390 Brookline Avenue, Boston, MA 022115. I was treated by the Medical Center during 2000 and 2001. Their Notes are attached as **Exhibit G-Beth Israel Deaconess Medical Center-Notes 14 items.**

**Objection. Plaintiff's self-serving statements contained in treatment notes are irrelevant and inadmissible. Medical diagnoses and opinions are inadmissible in the absence of expert testimony. Since Plaintiff has disclosed no medical or psychiatric expert witnesses in this case and has no expectation of producing any such experts, such opinions**

**are entirely incompetent and inadmissible. Moreover, in the absence of expert testimony as to the cause of such symptoms, they are irrelevant.**

52. The notes of Geoffrey S. Gilmartin, M.D., and Gila Kreigel, M.D. dated January 5, 2000 confirm that I was diagnosed with Panic Attacks; it also confirms that I was suffering from increased stress. The report confirmed that the doctors prescribed medication and discussed the "importance of maintenance of supportive network" to counteract the negative effect of my negative work environment.

**Same objection as to ¶ 51.**

53. Page 14 of **Exhibit G** confirms that my "psychiatric symptoms" affected my ability to gain weight.

**Objection. Plaintiff's self-serving statements contained in treatment notes are irrelevant and inadmissible. Medical opinions concerning symptoms and their effects are inadmissible in the absence of expert testimony. Since Plaintiff has disclosed no medical or psychiatric expert witnesses in this case and has no expectation of producing any such experts, such opinions are entirely incompetent and inadmissible. Moreover, in the absence of expert testimony as to the cause of such symptoms, they are irrelevant.**

54. Dr. Marlene Millman on page 14 of **Exhibit G** confirms on July 11, 2000, that my "insomnia" and "panic attacks" dated back to the time that I began work as a police officer. The report confirmed my statement "I don't want to go to work anymore." Her notes confirm my feeling of hopelessness and helplessness during this period. Her report also confirmed my hearing loss: "the left ear [having] greater loss than the right."

**Objection. Plaintiff's self-serving statements contained in treatment notes are irrelevant and inadmissible.**

55. Dr. Millman's report also confirmed that I was experiencing a "Major depressive disorder, Panic Disorder without agoraphobia. She also listed Job Stress as part of her diagnoses.

**Objection. Plaintiff's self-serving statements contained in treatment notes are irrelevant and inadmissible. Dr. Millman's opinions concerning diagnoses are inadmissible in the absence of expert testimony. Since Plaintiff has disclosed no medical or psychiatric expert witnesses in this case and has no expectation of producing any such experts, Dr. Millman's statements and opinions are entirely incompetent and inadmissible. Moreover, in the absence of expert testimony as to the cause of such diagnoses, they are irrelevant.**

56. On March 23, 2001, Dr. Millman wrote me a summary of my treatment. She stated that I as diagnosed on July 2000 with a Major Depressive Disorder and that on February 12, 2001 I still met the criteria for Major Depressive Disorder and Panic Disorder without agoraphobia. **Exhibit G-Page 31.** She wrote this summary because I requested it in support of my request to Mayor Ambrosino for leave with pay. The Mayor denied my request.

**Objection. Dr. Millman's opinions concerning diagnoses are inadmissible in the absence of expert testimony. Since Plaintiff has disclosed no medical or psychiatric expert witnesses in this case and has no expectation of producing any such experts, Dr. Millman's statements and opinions are entirely incompetent and inadmissible. Moreover, in the absence of expert testimony as to the cause of such diagnoses, they are irrelevant.**

57. On March 28, 2001, I visited with Dr. Jason Merola and Leonor Fernandez as part of a follow-up. Dr. Merola noted that my "insomnia, weight loss, anxiety and depressive symptoms" were continuing. He noted and I observed that my weight had fallen from 101.2 to 99.2. His notes reflect my experience of having difficulty at work and having difficult sleeping through the night.

**Objection. Plaintiff's self-serving statements contained in treatment notes are irrelevant and inadmissible. Further, Dr. Merola's findings concerning Plaintiff's medical condition and symptoms are inadmissible in the absence of expert testimony. Since Plaintiff has disclosed no medical or psychiatric expert witnesses in this case and has no expectation of producing any such experts, Dr. Merola's findings are entirely incompetent and inadmissible. Moreover, in the absence of expert testimony as to the cause of such findings, they are irrelevant.**

58. On April 3, 2001, my Social Worker, Elsie Parilla, L.I.C.S.W. described in her report my Presenting Problem as follows: "I am a police officer in the city of Revere and I have been harassed because of my poor hearing, my gender and race." **Exhibit G-Page 43.**

**Objection. Plaintiff's self-serving statements contained in treatment notes are irrelevant and inadmissible.**

59. Her report reflects my experience that "a series of incidents have caused her quite a bit of distress which include the hanging of a set of panties on the clip board of the police station where she works." Her report correctly reflected that I was "the only [Latina] police officer that works there."

**Objection. Plaintiff's self-serving statements contained in treatment notes are irrelevant and inadmissible.**

60. Her report included a reference to my experience with Lieutenant Ford when he stated "all Latinos were still considered cockroaches." She accurately reflected my feelings when I stated to her that I was "uncomfortable, felt alienated and started to feel that I was [not ] being made part of the police force."

**Objection. Plaintiff's self-serving statements contained in treatment notes are irrelevant and inadmissible.**

61. As a result of my experiences, it became impossible to continue to perform the essential duties on my job. Mayor Thomas Ambrosino offered me unpaid leave of absence. I was on unpaid leave of absence from March 2001 until October 2001. I suffered loss of revenue and severe financial distress followed. I lost my home during this period because of my inability to maintain mortgage payments. I was returned to the Department in October 2001 but I was not returned to the essential duties of my job as described in **Exhibit H-Police Officer Essential Tasks.**

**Objection. The documents in question speak for themselves. Plaintiff Fernandez's mischaracterization of the documents is inadmissible, not to mention grossly inaccurate. Moreover, Plaintiff's self-diagnosis is inadmissible as she is not competent to render expert opinion testimony as to her condition and its cause.**

62. On April 23, 2004, Chief Terrence Reardon, filed an Involuntary Retirement Application on my behalf. **Exhibit I-Involuntary Retirement Application.** The basis of the Employer filed application was that I was unable to perform the duties as stated in **Exhibit H** because of post traumatic stress disorder, and the anxiety, insomnia, and depression confirmed in the professional reports of my physicians and social workers.

**Objection. The document in question speaks for itself. Plaintiff Fernandez's mischaracterization of the document is inadmissible, not to mention grossly inaccurate. Moreover, Plaintiff is not competent to render expert opinion testimony as to her alleged condition and its cause.**

63. On August 13, 2004, at 11:30 a.m. a panel of three doctors appointed by the Public Employee Retirement Administration Commission (PERAC) examined me at the Sancta Maria Nursing Facility, 799 Concord Avenue, Cambridge, MA.

**Objection. The documents in question speak for themselves.**

64. The panel considered my testimony and the professional supporting information contained in Exhibits F & G, specifically the opinions of Dr. Jason Merola, Dr. Darlene Millman, and Dr. Christopher Harmon. These providers confirmed the causal connection between the hostile work environment of the Revere Police Department and the personal (emotional) injury that made me unable to perform the duties stated in **Exhibit H.**

**Objection. The documents in question speak for themselves. Plaintiff Fernandez's mischaracterization of the documents is inadmissible, not to mention grossly inaccurate. Moreover, Plaintiff has no personal knowledge of what the panel considered, and is not competent to render expert opinion testimony as to her alleged condition and its cause.**

65. The Medical Panel made a unanimous recommendation to PERAC. PERAC reviewed the findings of the medical panel certificate and on September 20, 2004, issued a decision that included the following findings: . . . ."

**Objection. The documents in question speak for themselves. Plaintiff Fernandez's mischaracterization of the documents is inadmissible, not to mention grossly inaccurate.**

66. The gruesome events referred to by PERAC are the same tragedies that I have referred to in paragraph 49. They are a routine part of police work. The events were "all made worse by [my] colleagues coping mechanism of "disrespectful" humor-disrespectful to crime victims." It was the disrespect, the isolation, the sense of departmental betrayal that caused my personal (emotional) injury.

**Objection. Plaintiff's self-serving statements contained in treatment notes are irrelevant and inadmissible. Moreover, Plaintiff's self-diagnosis is inadmissible as she is not competent to render expert opinion testimony as to her alleged condition and its cause.**

67. This personal (emotional) injury caused me to be unable to perform the essential duties of my job as a police officer. I lost my employment. I lost my career. I lost my identity and sense of self-worth. I lost the home I (sic) which I resided with my family during the time I was on unpaid leave.

**Objection. The documents in question speak for themselves. Plaintiff's Fernandez's mischaracterization of the documents is inadmissible, not to mention grossly inaccurate. Moreover, Plaintiff's self-diagnosis is inadmissible as she is not competent to render expert opinion testimony as to her alleged condition and its cause.**

68. The Post Traumatic Stress Disorder (PTSD) found by the psychiatric medical panel is a "personal injury." The Panel made its finding because the predominant contributing cause of this personal (emotional) injury is an event or series of events occurring within the Revere Police Department, the City of Revere and its authorized agents.

**Objection. The documents in question speak for themselves. Plaintiff Fernandez's mischaracterization of the documents is inadmissible, not to mention grossly inaccurate.**

69. The City of Revere did not serve me with a notice of appeal of PERAC's decision.

**Objection. Irrelevant.**

70. I filed a verified complaint in the Suffolk Superior Court on September 30, 2003. PERAC made its decision-**Exhibit J**-on September 20, 2004. The Defendants removed the complaint to the Federal District Court on December 11, 2003.

**True, but irrelevant.**

CITY OF REVERE and MAYOR THOMAS AMBROSINO,
By their attorneys,

/s/ Daniel E. Doherty____________
Paul Capizzi, City Solicitor
BBO#: 646296A
Daniel E. Doherty
Assistant City Solicitor
BBO#: 127010A
City Hall, 281 Broadway
Revere, MA 02151
(781) 286-8166

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, and that copies will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Daniel E. Doherty___________
Daniel E. Doherty

Dated: February 21, 2008