**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

**CIVIL ACTION NO. 03-12499 MLW**

| | |
|---|---|
| TERRI L. PECHNER-JAMES ) | |
| and  SONIA FERNANDEZ ) | |
|     Plaintiffs ) | |
| ) | |
| VS. ) | |
| ) | |
| CITY OF REVERE, THOMAS ) | |
| AMBROSINO, MAYOR, CITY ) | |
| OF REVERE POLICE DEPT. ) | |
| TERRENCE REARDON, CHIEF ) | |
| OF POLICE, BERNARD FOSTER ) | |
| SALVATORE SANTORO, ROY ) | |
| COLANNINO, FREDERICK ) | |
| ROLAND, THOMAS DOHERTY ) | |
| JOHN NELSON, JAMES RUSSO ) | |
| MICHAEL MURPHY and ) | |
| STEVEN FORD ) | |
|     Defendants ) | |

**PLAINTIFF, SONIA FERNANDEZ, RESPONSE TO  ORDER OF APRIL 1, 2008 AND OPPOSITION TO DEFNDANT THOMAS AMBROSINO'S MOTION FOR SUMMARY JUDGMENT (DOCKET NO:37)**

**Background:**

The Defendant, Thomas Ambrosino, filed -Docket No: 37 -Motion For Summary Judgment by Thomas Ambrosino.  The Plaintiff filed a response to Docket No: 37. The Plaintiff filed a Motion for Summary Judgment with Supporting documents: **Docket Nos: 284, 285, and 286.** The Plaintiff incorporates her earlier response to Docket No: 37; she also incorporates her Statement of Material Facts, the statement of concise statement, the Affidavit of Sonia Fernandez and all the documents and exhibits filed in support of her Motion For Summary Judgment in response to Docket No: 37.

The Magistrate-Judge entered 'Report and Recommendations, it recommended that the Court allow the motion for summary judgment requested in Docket Nos: 37 . Objections to the Report and Recommendations were due by October 26, 2005. The

Plaintiff filed the objection required by Rule 72; the court recorded the Plaintiff's objection on October 20, 2005. The Plaintiff also filed **Docket No: 97**-**Memorandum on Municipal Liability;** the court recorded this memorandum on October 20, 2005.

Chief Judge Wolf denied the Report and Recommendations of the Magistrate-Judge in **Docket No: 136**; the court recorded the Report and Recommendation on March 20, 2006. Discovery has been completed since Judge Wolf's decision in **Docket No: 136**. Co-Plaintiff, Terri Pechner James has settled her case-Docket No: 271.  Plaintiff, Sonia Fernandez, has filed : Motion for Summary Judgment & Affidavit-**Docket No: 284**; Statement of Material Facts-**Docket No: 285**; Memorandum in support of Plaintiff's Motion For Summary Judgment with Supporting Exhibits-**Docket No: 286**; the court recorded these pleadings on January 23, 2008.

The municipal Defendants have filed their own separate motion for summary judgment. The Defendants have responded to Plaintiff's Motion For Summary Judgment, and Plaintiff has replied to their responses. On March 20, 2008, the Magistrate-Judge requested "courtesy copies of all papers related to the motions for summary judgment (including motions, memoranda in support or in opposition, affidavits, exhibits, statements of facts, etc.) in Clerk's Office no later than Thursday, March 27, 2008. The documents should be clearly labeled: "**COURTESY COPIES-NOT FOR DOCKETING**"  The Plaintiff provided a timely courtesy copy to the court.

On April 1, 2008, the Magistrate-Judge issued the following electronic ORDER:
> On January 23, 2008, the City of Revere and its Police Department filed a summary judgment (Docket No: 281). Within the motion, defendants state that Mayor Thomas Ambrosino and Chief Reardon "are reasserting their own previously filed motions for summary judgment, dated March 30, 2005, and February 28, 2005, respectively." The motions previously filed by Ambrosino and Reardon were DENIED by Chief Judge Wolf on March 20, 2006 (Docket No: 136). In his Order, Chief Judge Wolf stated, "If municipal liability remains an issue in this case, the court will have to identify the final policy maker or policymakers for the City of Revere. At this point, Ambrosino or Reardon or both could be an official policymaker. It is, however, not possible to make this determination on the present record. Therefore, it is not appropriate to dismiss Ambrosino or Reardon in their official capacities". Now that discovery is closed,

both Ambrosino and Reardon apparently wish to renew their motions for summary judgment. The Court will consider the motions renewed insofar as they relate to the claims by Plaintiff Fernandez. The motions shall be incorporated by reference into Docket No: 281.

**1. The Mayor of the City of Revere and the Revere City Council are the policymakers of this municipality.**

Determining who is a policymaker for a municipality is a "legal question to be resolved by the trial judge before the case is submitted to the jury". <u>Jett v Dallas Independent School District</u>, 49 U.S. 701, 737. The relevant legal materials include the "state and local positive law" as well as the "custom and usage" having the force of law." Id at 737 [citing <u>City of St. Louis v Praprotnik</u>, 485 U.S. 112 (1988). A single decision of a policymaker may establish municipal liability binding the City. <u>Pembauer v City of Cincinnati</u>, 475 U.S. 469 (1986). **Docket No: 97-Memorandum on Municipal Liability.**

The positive law of the Commonwealth of Massachusetts-M.G.L.c 43 § 56-61 and the positive law of the City of Revere-Regulations 2:09:10 and 2:60:30. The positive law makes it clear that the Mayor and the City Council are the policymakers. The positive law of the City of Revere, like the positive law of the City of New Bedford, [See <u>Gonsalves v City of New Bedford</u>, 939 F. Supp. 915 (1996)] clearly establish that the Mayor and the City Council are the policymakers and the chief of Police executes the orders of the Mayor. **See Docket No: 97.** The positive law of both the Commonwealth of Massachusetts and the City of Revere place the liability for the Plaintiff's injury squarely on the policymakers of the City of Revere.

The legal structure of the Plan B charter utilized by both the City of Revere and the City of New Bedford placed the liability squarely on the elected officials of the City. It is undisputed that the City of Revere adopted a Plan B form of government and that form of government was in effect when the Plaintiff began and was constructively discharged from her employment. **(See Mayor Thomas Ambrosino's Statement of Undisputed Facts and Attachments) Docket No: 97.** The City of New Bedford also

has a Plan B Charter. That was the form of government that was in effect when the events of <u>Gonsalves</u> occurred and when <u>Gonsalves v City of New Bedford</u>, supra was decided. The provisions of a Plan B charter are stated in M.G.L.c. 43 § 56-61; they are attached to the Plaintiff's Motion For Summary Judgment-**Docket 284 Exhibit L.** These charters provide the following:

> Section 58. There shall be a Mayor, elected by and from the qualified voters of the city, who shall be the chief executive officer of the city.

> Section 59. The legislative powers of the city shall be vested in a city council. One of its members shall be elected by the council annually as its president.

The City of Revere Regulations are even more detailed and specific. They provide the following:

| | | |
|---|---|---|
| 2:09.10 | Mayor-Powers and duties generally. | |

The Mayor shall have the general powers and perform the duties as set forth in the charter and under the General Laws, or as may be prescribed by the provisions of this revision and other ordinances adopted by the city council.

2.60.30   Chief of Police

A. The chief of police shall have general charge and supervision of all officers and patrolmen and other personnel of the police department, shall have precedence and control of the same whenever engaged in the same service and shall report forthwith to the mayor any violation of duty on the part of any member of the department.

E. The chief shall comply with and execute the orders of the mayor.

4

In addition, on October 11, 2001, the Massachusetts Senate and the House of Representatives in General court assembled passed Senate Bill 1886-an Act Providing Requirements for appointment of the Chief of Police of the City of Revere which exempted the chief of Police from chapter 31 of the General Laws (civil service system). **See Affidavit of Walter H. Porr, Jr. and copy of the Massachusetts advance Legislative Service 2001 Mass ALS 102 attached. Docket 97.**

This legislation underscores both the status of the Chief of Police and his employers, the Mayor and the Revere City Council. The Chief of Police is an agent of the Mayor; he is required to "comply with and execute the orders of the mayor. The Chief of Police is not elected by the people of the City of Revere. He is accountable directly to the Mayor who appointed him and the City Council that confirmed him. **Docket No:97**

Chief Reardon, the present Chief of Police in the City of Revere, like his counterpart Chief Benoit in Gonsalves, is an appointed official. He has a duty to "report forthwith to the mayor any violation of duty on the part of any member of the department." The Chief of Police is an agent, an employee, who is responsible to the policymakers, the Mayor and the City Council. He executes the policy or custom of the municipality. The execution of the "custom" of the municipality injured the Plaintiff. The administrative negligence of the Chief and his Department implemented the "custom" of the City of Revere. **See Plaintiff's Affidavit Attached to Plaintiff's Motion For Summary Judgment and Docket No:251.**

This Court recently restated the doctrine of municipal liability in Kosilek v Nelson, C.A. 92-12820-MLW, 2000 U.S. Dist. LEXIS 13355 (2000). Municipal liability attaches when the unconstitutional conduct of the employees of a municipality implements or executes a municipal policy or custom. Gonsalves v City of New Bedford, 939 F. Supp. 915, 916 (D. Mass.1996)(citing *Monell v Department of Social Services*, 436 U.S. 658,694, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978). As explained in Gonsalves:

> This means that the actions of subordinate officials alone cannot create municipal liability. Rather, the City is potentially liable for the conduct of its final policymaker or policymakers concerning the conduct in question.

Id.(citing *Monell*, 436 at 692; *City of St. Louis v Praprotnik,* 485 U.S. 112, 123, 99 L. Ed.2d 107, 108 S. Ct. 915 (1988).

In determining who the final policymaker is for a municipality, the court must examine both the relevant state law and also the customs or policies of the municipality. Id(citing Jett v Dallas Independent School District, 491 U.S. 701, 737, 105 L.Ed.2d 598, 109 S. Ct. 2702 (1989); Praprotnik, 485 U.S. 126; Bordarnaro v McLoed, 871 F.2d 1151, 1161 (1st Cir. 1989).

> Once the final policymaker(s) are identified, it is for the jury to decide whether the policymaker or policymakers' decisions have caused the deprivation of rights at issue by policies which affirmatively command that those violations occur or by acquiescence in a longstanding practice or custom which constitutes the "standard operating procedure" of the local governmental entity.
> 939 F. Supp. at 916-17(citing Jett, 491 U.S. at 737)

The "custom and usage" of the City of Revere, its standard operating procedure is clearly stated by both Chief Reardon and Thomas Ambrosino in their Supplemental Responses to Interrogatories attached as **Exhibit T** to Plaintiff's Motion for Summary Judgment. The Plaintiff's Interrogatory 4.f. asked the following information:

> 4. During your term of office as mayor of the city of Revere, were you or city officials informed of any complaints of sexual harassment made by police officers of the City of Revere. If yes, state:

> f. What if anything did you or other officials do regarding each complaint;

The Mayor's Supplemental Answer established clearly the "custom" of deliberate indifference which the municipality displayed in dealing with cases of sexual harassment. It is clear from the Mayor response to Interrogatory 4.f that he had actual knowledge of

6

the complaints of Kathy Fish, Terri Pechner-James and Sonia Fernandez [the latter two being referred to as the Plaintiff's herein]. It is clear from the response that the Mayor was quite satisfied to abdicate their his responsibility and to have them pursue "their claims through the appropriate legal forum". The Mayor's response states, in relevant part, the following:

> **S.A. Further answering 4.f above, …spoken directly with Ms. Pechner-James and Ms. Fernandez both in the presence of their attorney, James Dilday, and independently, and told them that if the command staff found no merit to their allegations they would have to pursue their claims through the appropriate legal forum. In, addition, I informed the City Council of Plaintiff's complaint in an Executive Session on April 30, 2001.**

The Mayor's Supplemental Answer clearly demonstrates the "custom" of the municipality. He had actual knowledge of the client's complaint; he informed the City Council on April 30, 2001 in an Executive Session. The "custom and usage" of both the Mayor and the City Council appears to be to neglect the Plaintiff's complaint and leave the Plaintiff to seek redress in "the appropriate legal forum."

**2. Administrative negligence can rise to the level of deliberate indifference.**

The Plaintiff's Affidavit and Statement of Material Facts filed in support of her Motion For Summary Judgment-**Docket Nos: 284, 285 and 286** document the Plaintiffs efforts and her frustration in seeking relief from the administrative mechanism of the municipality, including Mayor Ambrosino.

It is clear from the Mayor's Supplemental Answers that the supervisory officials and the Mayor had been placed on actual notice of the conditions that injured the Plaintiff. (See also Plaintiff's Affidavit **Docket No: 285**) The supervisory officials were negligent and the Mayor, by his own admission, instructed the Plaintiff to take her complaint to the "appropriate legal forum." "When a supervisory official is placed on actual notice…administrative negligence can rise to the level of deliberate indifference.." Kosilek v Nelson, C.A. 92-12820 MLW, 2000 U.S. Dist. LEXIS 13355 citing <u>Barrie v Grand County, Utah,</u> 119 F. 3d. 862, 868-69 (10th Cir. 1997). Actual knowledge creates

deliberate indifference. The municipality, including the Mayor, had actual knowledge of the hostile work environment experienced by the Plaintiff. Mayor Ambrosino conduct is similar to the conduct of the Mayor of New Bedford in <u>Gonsalves.</u> The Court in <u>Gonsalves</u> stated:

> The Mayor [of New Bedford] did not review whether investigations of alleged misconduct were being conducted thoroughly and impartially. Nor did the mayor review whether Chief Benoit was reporting all violations to him. Id at 918

Mayor Ambrosino's conduct, by his own admission, is the same as the Mayor of New Bedford. Mayor Ambrosino explicitly stated that he left the responsibility for review and investigation to the "command staff" and the Plaintiff could seek redress from the "appropriate legal forum." Mayor Ambrosino's admitted abdication of statutory responsibilities is a statement of the "custom" of the City of Revere; the negligent manner in which the administration of the City, including the Mayor, treated the Plaintiff's complaints demonstrates "deliberate indifference." The Plaintiff was disabled, lost her employment, was brought back to the job but demoted and not restored to the essential duties of her job.

Chief Terrence Reardon's Answer, Supplemental Answer and Further Supplemental Answer further confirm the "custom" of the City and the "deliberate indifference" of the City's administration. Chief Reardon in his response to Interrogatory No:21 stated conclusively:

> I have no idea if any documents were provided to the Mayor….there would be no record of such in the ordinary course of business.

In his Further Supplementary Answer, he stated

> I did not provide the Mayor with any documents concerning Plaintiff's employment with the City of Revere.

**Exhibit T- Mayor Ambrosino and Chief Terrence Reardon Further Supplemental Answers to First Set of Interrogatories**

The Mayor stated that he informed the City Council in a meeting in executive session on April 30, 2001 of the Plaintiff's complaint. The City Council also had actual notice of the Plaintiff's discrimination complaint from the Mayor, it had notice of the Plaintiff's

8

lawsuit from the Boston Globe. The Boston Globe reported the filing of the plaintiff's lawsuit in an article by Angelica Medaglia, on October 26, 2003. **See Attached**. The Boston Herald in an article by Marie Szanizlo reported the filing of the Plaintiff's complaint; the Revere Journal in an article by Seth Daniels also reported the filing of the Plaintiff's lawsuit.  The Plaintiff filed Civil Action; 03-4685G in October 2001; this document was served upon the City of Revere. The City Council had notice of the plaintiff's complaint of discrimination and her lawsuit. The City Council of the City of Revere, like Mayor Ambrosino, in accordance with its "custom" engaged in "deliberate indifference" and took no action.

> The Plaintiff incorporates fully and in their entirety the contents of **Docket Nos: 284, 285, and 286** into this response as if fully stated herein. The Plaintiff also incorporates the concise statement pursuant to Local Rule 56.1 previously submitted and also states the following:
>> The municipality-City of Revere [Mayor and City Council] are liable because the custom of the municipality, the deliberate indifference of the policy makers injured the Plaintiff.
>>
>> The motion-Docket No:37-that the Defendant, Thomas Ambrosino seeks to reinstate has as its central argument:  **"She alleges incidents that largely occurred prior to defendant Ambrosino's appointment as Mayor in 2002."**

This argument is repeated throughout the Defendants motion. This argument, like the argument advanced by Chief Reardon, is based on denial of individual responsibility. The argument is unavailing because it has already been determined that Mayor Ambrosino is not being sued in his individual capacity.

> In the proceedings before the Magistrate Judge, plaintiffs clarified that neither Ambrosino nor Reardon is being sued in his individual capacity.
> **Docket No: 136-Memorandum and order by WOLF, D.J.**

Docket No: 37 in its present and reinstated form fails to comply with the requirements of Local Rule 56.1 and Fed. R. Civ. P. 56 and should be denied again for that reason alone. The Plaintiff has argued in her Motion  For Summary Judgment-**Docket Nos: 284, 285,**

9

**286** that it is the "custom" of the municipality, the "deliberate indifference" of its policymaker(s) that constitute the basis of municipal liability, not the tenure of the most recent Mayor. See <u>Gonsalves</u>, supra.

The Magistrate-Judge, in his order of April 1, 2008, cited language from Chief Judge Wolf's order-**Docket No: 136.** Chief Judge Wolf's order stated the standards to be applied in a case, such as this one, where municipal liability is an issue. The Court stated:

> As this court has written: [A] City is not liable on a respondeat superior basis for the constitutional torts of its employees. Rather [a] City is liable …only if it is proven that the unconstitutional conduct of its employees implements or executes a municipal policy or custom. This means that the actions of subordinate officials alone cannot create municipal liability. Rather [a] City is potentially liable only for the conduct of its final policymaker or policy makers concerning the conduct in question.
> <u>Gonsalves v City of New Bedford</u>, 939 F.2d 915 (D.Mass. 1995) citing <u>Monell v Department of Social Services</u>, 436 U.S. 658, 691-94(1978); <u>City of St. Louis v Propratnik,</u> 485 U.S. 112, 123, (1988). **Docket No: 136-Memorandum and Order by Wolf, D.J.**

The Plaintiff has addressed the issue of municipal liability in her Memorandum in Support of Her Motion for summary Judgment-Docket No:286. The caption :**The Mayor of Revere and the City Council are the policymakers of the municipality and are liable for the policy and practices that injured the Plaintiff**. The Plaintiff has also addressed the issue of municipal liability in **Docket No: 97-Municipal Liability**.

The Defendant, Thomas Ambrosino, relies on caselaw from 1937 and repeats throughout **Docket No: 37** that "She alleges incidents that largely occurred prior to defendant Ambrosino's appointment as Mayor in 2002." This argument and the 1937 case law cited by defendant Ambrosino is unavailing; both the argument and the caselaw have been overruled by the United States Supreme Court in <u>Monell v Department of Social Services,</u> 436 U.S. 658, 691-94 (1978) cited in **Docket No: 136**.

The "custom" of the City of Revere is demonstrated by both Mayor Ambrosino and Chief Reardon in answers to their Interrogatories. The "deliberate indifference" of

10

the municipality is also demonstrated by the inaction and abdication of responsibility stated by Mayor Ambrosino and Chief Reardon in said documents.

Chief Reardon, the present Chief of Police, like his predecessors and Chief Benoit in Gonsalves, is an appointed official. Chief Reardon was appointed by the present Mayor, Thomas Ambrosino and confirmed by the City Council. He has a duty to "report forthwith to the mayor any violation of duty on the part of any member of the department." The Chief of Police is an agent, an employee, who is responsible to the policymakers the Mayor and the City Council. He executes the policy or custom of the municipality. If the execution of the "custom" of the municipality injures the Plaintiff, the chief is not liable as a policymaker but his conduct and the conduct of his department remain subject to factual questions. Amadeo v Principal Mut. Life Ins. Co. 290 F. 3d 1152, 1159 (9th Cir. 2002). It is the policymakers who are liable for the Plaintiff's injury.

### 4.The "custom" of the City of Revere can be clearly determined from the Mayor Ambrosino and Chief Reardon's Supplemental To Interrogatories

Plaintiff, Sonia Fernandez, was sworn in as a Permanent Full Time Police Officer on September 21, 1995. Her appointment became effective September 24, 1995**. See Exhibit B** attached to her Motion for Summary Judgment. Her letter of appointment-**Exhibit B-** was signed by Mayor Haas, who was then the Mayor of the City of Revere. She was the first and the only Latina officer ever hired by the Revere Police Department. She was one of seven female officers hired on that same date. A small number of those officers remain.

The Defendants did not have a Sexual Harassment Policy at the time they hired the Plaintiff, a Sexual Harassment Policy dated April 1, 1999 was finally developed; it is included as an Exhibit in **Docket No: 286**;  the Defendants did not have and still do not have a Maternity Leave Policy.  The hostile work environment that the Plaintiff encountered has been documented in her Affidavit which is attached to her Motion For Summary Judgment-**Docket No: 284**. The Defendant was given an unpaid leave, in violation of Massachusetts law, from March 15, 2001 to September 30, 2001. **[Exhibit K-attached to Plaintiff's Motion for Summary Judgment].** When the Plaintiff

11

returned to work on October 1, 2001, she was not returned to her usual duties. She remained in that capacity until September 2002. The Defendants failure to return her to her usual duties constituted a demotion. Employers are strictly liable when this conduct culminates in a tangible employment action such as a discharge or demotion. Pennsylvania State Police v Suders, 542 U.S. 129 (2004).

The Supplemental Answers To Plaintiff's First Set of Interrogatories provided by both Chief Terrence Reardon and Mayor Thomas Ambrosino are both attached to the Plaintiff's Motion For Summary Judgment as **Exhibit T.** These responses confirm the "custom" of the City of Revere. Plaintiff's Interrogatory No:4 asks the following of Mayor Ambrosino:

> 4. During your term of office as mayor of the City of Revere, were you or City officials informed of any complaints of sexual harassment made by police officers of the City of Revere. If yes, state:
>> a. When each complaint was made;
>> b. The name and address of each complainant;
>> c. To whom each complaint was made;
>> d. Where was each complaint made;
>> e. When you or other City officials were informed of each complaint;
>> f. What if anything you or other City officials did regarding each complaint.

The Mayor's response confirms that he had knowledge of at least three complaints, Kathy Fish, Terri Pechner-James and Sonia Fernandez. . His initial response, stated below, does indicates that he took no action; his response also indicates that the "custom" of the municipality was to have the City [Solicitor's Office] provide the legally required response to the MCAD.

> **A. I was informed of the complaints of Kathy Fish and the Plaintiffs herein. Copies of some of the relevant documents from Kathy Fish complaint have already been provided to Plaintiffs. Plaintiffs have copies of their own MCAD complaints and the documents generated in response thereto. The City of Revere responded to each of these complaints as required by law and the procedures of the MCAD**

12

The Mayor's Supplemental response stated below attempts to provide a more detailed answer to **4.f.** The Mayor claims to have spoken with "Captain Frederick Roland and other command staff"; he claims to "possibly" have spoken with "Acting Chief Roy Colannino". He provides no times, dates, nor does he state the standards used to determine that complaints were being "properly investigated;" he fails to state any review of the completed investigations.   The Mayor also states in this response the "custom" of abdicating the responsibility of his office and allowing the "command staff", many of whom may have been involved in the complaints, to determine the outcome of the investigation. The complainants only recourse would be to the "appropriate legal forum." The Supplemental Response states as follows:

> **S.A. Further answering 4.f. above, I spoke with Captain Roland and other command staff, possibly Acting Chief Roy Colannino, to see if the complaints were being properly investigated, and was satisfied that they were being properly investigated. I also had spoken directly with Ms. Pechner-James and Ms. Fernandez both in the presence of their attorney, James Dilday, and independently, and told them that if the command staff found no merit to their allegations they would have to pursue their claims through the appropriate legal forum. In addition, I informed the City council of Plaintiff's Complaint in an Executive Session on April 30, 2001. Although I cannot recall every other action I may have taken in regard to the complaints, I believe that some of the actions I took are mentioned in other filings in this case.**

This Supplemental Answer provides evidence that the policymaker, the Mayor and the City Council that he informed on April 30, 2001, engaged in their usual "custom" of informing each other but taking no action and leaving the Plaintiff's claim to be resolved through the "appropriate legal forum."

## Conclusion

Mayor Thomas Ambrosino and the Revere City Council are the policymakers. Together they are liable for the Plaintiff's injury because of their "custom" and the "deliberate indifference" of their conduct toward the Plaintiff.

The Defendant, Terrence Reardon, Chief of Police, is not a policymaker. He is a "subordinate official as defined by **Docket No: 136** and <u>Gonsalves v City of New Bedford,</u> 939 F. Supp. 915 (1996). His actions "alone cannot create municipal liability." The Plaintiff can voluntarily dismiss Terrence Reardon from the case. The voluntary dismissal has only claim preclusive effect against a "subordinate official" whose actions alone cannot bind the City of Revere. The dismissal does not, however, have issue preclusive effect. Chief Reardon's role as an agent or employee of the Defendants, his role in implementing the "custom" and his conduct that implemented the Defendant's policy of "deliberate indifference" can still be the subject to the factual determinations that have not been adjudicated by prior proceedings.

        Respectfully submitted,

        By her attorney,

        <u>/s/ James S. Dilday</u>_____
        James S. Dilday, BBO# 124360
        Dilday & Associates, LLC
        27 School Street, Suite 400
        Boston, MA 02108
        (617)227-3470

Dated: 4/22/08

## **Certificate of Service**

    I, James S. Dilday, hereby certify that I caused to be served a true copy of the foregoing document upon electronic filing via the CM/ECF Pacer system.

        <u>/s/ James S. Dilday</u>_____
        James S. Dilday

Dated: 4/22/08